NOS. 23-3324 and 23-3417
(Consolidated with Nos. 21-4072, 22-3351, 23-3196 and 23-3366)

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

———————

AMERICAN ELECTRIC POWER SERVICE CORPORATION, ET AL.,

v.

FEDERAL ENERGY REGULATORY COMMISSION

———————

ON PETITION FOR REVIEW OF ORDERS OF
THE FEDERAL ENERGY REGULATORY COMMISSION

———————

OPENING BRIEF OF PETITIONER
OFFICE OF THE OHIO CONSUMERS' COUNSEL
IN NOS. 23-3324 AND 23-3417

BRUCE J. WESTON
CONSUMERS' COUNSEL
Angela O'Brien
Deputy Consumers' Counsel
**Office of the Ohio Consumers'
Counsel**
65 East State Street, 7th Floor
Columbus, Ohio 43215
(614) 466-8574 – Telephone
Angela.Obrien@occ.ohio.gov

Initial Brief:  JULY 31, 2023

Denise C. Goulet
Wendy Simon Pearson
McCarter & English, LLP
1301 K Street, N.W.
Suite 1000 West
Washington, DC 20005
(202) 753-3400
dgoulet@mccarter.com
wsimonpearson@mccarter.com

Special Counsel to the Ohio Office of
the Attorney General for the Office of
the Ohio Consumers' Counsel

## **RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

Under Rule 26.1(a) of the Federal Rules of Appellate Procedure and Circuit

Rule 26.1(a) of the United States Court of Appeals for the Sixth Circuit, the Office

of the Ohio Consumers' Counsel ("OCC") is not required to file a corporate

disclosure statement.

OCC is a state government agency and is the statutory representative of

approximately 4.5 million Ohio residential utility consumers in proceedings before

state and federal administrative agencies, including the Federal Energy Regulatory

Commission, and the courts.  No publicly held company has any ownership

interest in OCC.

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT .................................................. i

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES .......................................................................................... iv

STATEMENT REGARDING ORAL ARGUMENT ........................................................1

JURISDICTIONAL STATEMENT ...........................................................................2

STATEMENT OF THE ISSUES................................................................................5

STATEMENT OF THE CASE....................................................................................7

SUMMARY OF ARGUMENT ................................................................................12

STATEMENT REGARDING STANDING ..............................................................15

ARGUMENT ...........................................................................................................17

I.      STANDARD OF REVIEW ......................................................................17

II.     FERC's Orders Failing To Protect Ohio Consumers of ATSI and Duke from Paying for Unnecessary and Unlawful Transmission Rate Incentives Are Arbitrary, Capricious and Not Supported by Reasoned Decision-Making. ...............................18

A.    FERC correctly found that Ohio law mandates participation in an RTO by Ohio transmission utilities, and thus AEP Ohio and AEP Ohio Transmission are ineligible for the RTO Adder. ..............................................................18

B.    FERC acted arbitrarily, capriciously and without reasoned decision-making in failing to direct ATSI and DEO to remove the added profits from the transmission rates they charge their Ohio customers...............................................24

C.    FERC's reliance on how the rates were set (by settlement) as an excuse for not removing the added profits from consumer-funded rates is not based on reasoned decision-making and is an unexplained departure from precedent.......................28

1.    FERC approved charging ATSI and Duke consumers added profits when it approved settlements that explicitly recognized the added profits in transmission rates charged to Ohio consumers.................................................29

2.    Directing ATSI and Duke to remove the RTO Adder from the rates of their Ohio transmission customers would not disturb the overall bargain in the settlements..............................................................................................34

3.    FERC's statement that it cannot separate the base ROE and the RTO Adder in the ATSI and Duke settlements is internally inconsistent and an unexplained departure from FERC precedent. ....................................................37

4.    FERC's failure to provide relief for ATSI's and Duke's Ohio consumers is an unexplained departure from prior decisions granting single-issue complaint cases. .............................................................................................43

III.    FERC's Decision Allowing ATSI and Duke To Retain the RTO Adder Incentive in The Rates They Charge Ohio Consumers is Unduly Discriminatory........................49

IV.    CONCLUSION AND PRAYER FOR RELIEF ........................................................52

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements...............................................54

CERTIFICATE OF SERVICE ...................................................................................55

ADDENDUM .............................................................................................................56

# TABLE OF AUTHORITIES

## Court Cases

*Allegheny Defense Project, et al. v. FERC,*
 964 F.3d 1 (D.C. Cir. 2020) .................................................................. 4

*ANR Storage Co. v. FERC,*
 904 F.3d 1020 (D.C. Cir. 2018) ............................................................ 40

*BP Energy Co. v. FERC,*
 828 F.3d 959 (D.C. Cir. 2016) ......................................................... 18, 50

*Brusco Tug & Barge Co. v. NLRB,*
 247 F.3d 273, 278 (D.C. Cir. 2001) ............................................. 6, 17, 43

*Cal. Pub. Util. Comm'n v. FERC,*
 879 F.3d 966 (9th Cir. 2018) ................................. 8, 9, 19, 21, 22, 23, 27, 28, 35

*City of Detroit, Michigan v. Federal Power Comm'n*
 230 F.2d 810 (D.C. Cir. 1955) .............................................................. 27

*FERC v. Elec. Power Supply Ass'n,*
 136 S. Ct. 760 (2016) ...................................................................... 6, 17, 30

*Gulf South Pipeline Co., L.P. v. FERC,*
 955 F.3d 1001 (D.C. Cir. 2020) ....................................................... 41, 45

*Indus. Customers of Northwest Utils. v. Bonneville Power Admin.,*
 767 F.3d 912 (9th Cir. 2014) ............................................................... 42

*Me PUC v. FERC,*
 454 F.3d 278 (D.C Cir. 2006) .............................................................. 36

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,*
 463 U.S. 29 (1983) ........................................................................ 6, 17, 28

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,*
 545 U.S. 967, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2005) .................................. 42

*Neighborhood TV Co. v. FCC,*
 742 F.2d 629 (D.C. Cir. 1984) ....................................................... 6, 17, 28

*New England Power Gen. Ass'n. v. FERC*,
   881 F.3d 202 (D.C. Cir. 2018)....................................................18, 50

*NRG Power Mkgt, LLC v. Me. PUC*,
   558 U.S. 165 (2010) ..........................................................................44

*Okla. Gas & Elec. Co. v. FERC*,
   11 F.4th 821 (D.C. Cir. 2021)...................................................30, 31

*Scenic Hudson Preservation Conference et al. v. Federal Power
   Commission*,
   354 F.2d 608 (D.C. Cir. 1965) ..........................................................37

*Sierra Club v. EPA*,
   884 F.3d 1185 (D.C. Cir. 2018).........................................................40

*Sithe/Indep. Power Partners, L.P. v. FERC*,
   165 F.3d 944 (D.C. Cir. 1999)...............................................5, 17, 28

*Tejas Power Corp. v. FERC*,
   908 F.2d 998(D.C. Cir. 1990)............................................................34

*Tennessee Gas Pipeline Co. v. FERC*,
   860 F.2d 446 (D.C. Cir. 1988) ............................................................5

*W. Deptford Energy, LLC v. FERC*,
   766 F.3d 10 (D.C. Cir. 2014).............................................................40

*Williams Gas Processing-Gulf Coast Co. v. FERC*,
   475 F.3d 319 (D.C. Cir. 2006).........................................6, 17, 27, 43

## Administrative Cases

*Am. Elec. Power Serv. Corp., et al.*,
   Docket No. ER21-735-000, Letter Order (Feb. 16, 2021) .................47

*Duke Energy Ohio, LLC et al.*,
   Docket No. ER23-1045-000, Letter Order (Mar. 21, 2023)...............47

*Electric Transmission Incentives Policy Under Section 219 of the
   Federal Power Act*, 175 FERC ¶ 61,035 (2021) ...............................36

*Golden Spread Elec. Coop., Inc. v. Southwestern Pub. Serv. Co.*,
150 FERC ¶ 61,052 (2015)......................................................................45

*Office of The Ohio Consumers' Counsel v. Am. Elec. Power Serv.
Corp., et al.*,
181 FERC ¶ 61,214 (2022)..................................................................3, 4
183 FERC ¶ 61,034 (2023).....................................................................3

*North Carolina Electric Membership Corp., et al. v. Duke Energy
Progress, LLC,*
155 FERC ¶ 61,048 (2016).....................................................................45

*Pacific Gas and Electric Co.*,
178 FERC ¶ 61,175 (2022).....................................................................48

*PJM Interconnection, L.L.C.,*
104 FERC ¶ 1,124 (2003).......................................................................36
153 FERC ¶ 61,106 (2015)................................................................31, 41

*Pricing Policy*,
102 F.E.R.C. at 61,065..........................................................................36

*Promoting Transmission Investment through Pricing Reform, Order
No. 679,* FERC Stats. & Regs. ¶ 31,222, 116 FERC ¶ 61,057
("Order No. 679"), order on reh'g, Order No. 679-A, 117 FERC ¶
61,346 (2006), order on reh'g, 119 FERC ¶....................................7, 8

*The Dayton Power & Light Co.*,
176 FERC ¶ 61,025 (2021), *reh'g denied,* 178 FERC ¶61,102
(2022)............................................................. 9, 10, 20, 22, 23, 28, 39

*Virginia Elec. & Power Co.*,
123 FERC ¶ 61,098 (2008).....................................................................46

## Federal and State Statutes

Administrative Procedure Act
5 U.S.C. § 706(2)(A) .......................................................................17, 28

Federal Power Act
Section 3, 16 U.S.C. § 796(29) ...............................................................7

Section 201(b)(1), 16 U.S.C. § 825e ....................................................2
Section 205, 16 U.S.C. § 824d.....................................................30, 49
Section 206, 16 U.S.C. § 242e................................................2, 44, 50
Section 219, 16 U.S.C. § 824s................................................7, 20, 26
Section 306, 16 U.S.C. § 825e........................................................2, 44
Section 313, 16 U.S.C. § 825l..........................................................4, 5

Natural Gas Act section 19, 15 U.S.C. § 717r.................................4, 5

Ohio Revised Code
§4928.12........................................................ 1, 3, 9, 20, 23, 25, 39
§4911.02.............................................................................................15

**Regulations**

18 C.F.R.
§ 35.35(e) ..........................................................................................7
§ 385.206........................................................................................ 2
§ 385.602(g)(3) ..............................................................................34

**STATEMENT REGARDING ORAL ARGUMENT**

These cases involve inconsistent rulings by the Federal Energy Regulatory Commission ("FERC") failing to protect all Ohioans from subsidizing extra utility profits:  a Regional Transmission Organization ("RTO") Adder rate incentive. In his concurring opinion to the Complaint Order, FERC Commissioner Christie described the subsidy as "more 'FERC Candy' taken directly from consumers and redistributed to transmission owners.'"  R.41 (OCC Rehearing at 4), JA___, quoting R.39 (Concurring Opinion of Commissioner Christie at 2), JA___.

FERC's correct rulings in Docket No. EL20-1068-000 denied a request by The Dayton Power & Light Company ("DP&L") to charge its consumers the incentive for participating in an RTO.  FERC ruled that participation is not voluntary, but is mandated by Ohio law [Ohio Revised Code § 4928.12], and it was not just and reasonable to charge consumers higher rates. In Docket No. EL22-34-000, FERC similarly directed American Electric Power ("AEP") affiliates to remove the incentive from their rates charged to Ohio consumers.

However, FERC declined to direct American Transmission Systems, Inc. ("ATSI") and Duke Energy Ohio, LLC ("Duke") to remove the same subsidy from the rates charged to their Ohio consumers.  DP&L, AEP, ATSI, Duke and the Office of the Ohio Consumers' Counsel ("OCC") each sought review of these orders.  Oral argument will aid in consideration of this important consumer matter.

## JURISDICTIONAL STATEMENT

This Petition for Review challenges FERC's orders on appeal in Case Nos. 23-3196, 23-3324, 23-3366 and 23-3417.  FERC had jurisdiction below under sections 201(b)(1), 206 and 306 of the Federal Power Act ("FPA"), 16 U.S.C. §§ 824(b)(1), 824e and 825e.  On February 24, 2022, under FPA sections 206 and 306, and Rule 206 of FERC's Rules of Practice and Procedure, 18 C.F.R. § 385.206, OCC filed a complaint against AEP (on behalf of its affiliates Ohio Power Company ("AEP Ohio") and AEP Ohio Transmission, Inc., ("AEP Ohio Transmission")), ATSI (an affiliate of FirstEnergy Service Corporation or "FirstEnergy"), and Duke.  OCC's complaint alleged that the electric transmission rates they charge their Ohio consumers are unjust and unreasonable because they contained an incentive for which none of the utilities is eligible under FERC policy and precedent.  R.1 (Complaint), JA__.

This incentive allows the utilities to collect increased profits from consumers, in the form of a 50 basis point adder to the utilities' authorized return on equity ("ROE").  The added profits cost Ohio consumers more than $26 million annually, and are intended to encourage the utility to participate in a Transmission Organization, such as an RTO.  R.1 (Complaint at 1-2, 10, 13), JA___.  The incentive is referred to in this Brief as "the RTO Adder."

2

On December 15, 2022, FERC granted the relief OCC sought in its Complaint as to the AEP affiliates, ruling that AEP should not charge consumers added profits for participating in a transmission organization when Ohio Revised Code §4928.12 mandates that participation.  Yet FERC denied the consumers of ATSI and Duke the same relief even though they too are mandated by the same Ohio law to join an RTO, effectively allowing them to continue to charge their consumers for the incentive.  *Office of The Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp., et al.,* 181 FERC ¶ 61,214 (2022), R.39 (Complaint Order), JA___.

AEP and OCC separately and timely filed requests for rehearing on January 17, 2023.  R.40 (AEP Rehearing), JA__; R.41 (OCC Rehearing), JA___.  FERC issued the Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration on February 17, 2023.  R.46 (Rehearing Notice), JA___.  AEP timely filed its first Petition for Review in Case No. 23-3196 on March 8, 2023.  OCC timely filed its first Petition for Review in Case No. 23-3234 on April 14, 2023.  R.47 (OCC Petition for Review), JA___.

FERC on April 20, 2023 issued a further Order Addressing Arguments Raised on Rehearing, leaving its Order on Complaint intact.  *Office of The Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp., et al.*, 183 FERC ¶ 61,034 (2023), R.49 (Complaint Rehearing Order), JA___.  AEP timely filed its second

Petition for Review in Case No. 23-3366 on April 26, 2023.  OCC timely filed its

second Petition for Review in Case No. 23-3417 on May 9, 2023.

The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit" or

"Court") has jurisdiction over these Petitions for Review under section 313(b) of

the Federal Power Act, 16 U.S.C. § 825*l*(b), Rule 15(a) of the Federal Rules of

Appellate Procedure, and Sixth Circuit Local Rule 15(a).  In *Allegheny Defense*

*Project, et al. v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) ("*Allegheny Defense*"), the

United States Court of Appeals for the District of Columbia Circuit found FERC

has no authority under section 19 of the Natural Gas Act ("NGA"), 15 U.S.C. §

717r, to issue tolling orders that seek to extend the time for FERC action on

rehearing requests.  Thus, if FERC fails to act on rehearing requests within 30 days

of the filing of those pleadings, the FERC order is considered final for purposes of

appeal.  *Allegheny Defense*, 964 F.3d at 16.

Nevertheless, the Court also ruled that under NGA section 19, FERC

retained jurisdiction of the case for a period of days following the passage of the

rehearing deadline and could issue a further order addressing arguments on

rehearing within that timeframe.  *Id.*  Although *Allegheny Defense* interprets the

NGA, the United States Supreme Court has held that the FPA and NGA  are to be

interpreted *in pari materia*.[1]  FPA section 313 relating to judicial review of FERC

orders for electric utilities parallels the similar provisions in NGA section 19 for

natural gas utilities.

Thus, FERC's Rehearing Notice and Complaint Rehearing Order rendered

its orders in OCC's Complaint case final for the purposes of appeal under the FPA.

OCC has exhausted its administrative remedies.  OCC seeks by these petitions

review of FERC's Complaint Order, Rehearing Notice and Complaint Rehearing

Order, which disposed of all parties' claims in FERC Docket No. EL22-34-000

below.

## STATEMENT OF THE ISSUES

1. Whether FERC's failure to remove the RTO Adder from the transmission

rates charged to Ohio consumers of ATSI and Duke:

a. is arbitrary and capricious contrary to the *Administrative Procedure Act's*

*"arbitrary and capricious" standard, 5 U.S.C. § 706(2)(A), and Sithe/Indep.*

*Power Partners, L.P. v. FERC*, 165 F.3d 944, 948 (D.C. Cir. 1999) ("*Sithe/Indep.*

*Power Partners*");

---

[1]   *See Tennessee Gas Pipeline Co. v. FERC*, 860 F.2d 446, 454 (D.C. Cir. 1988)
("The Supreme Court has held that the Natural Gas Act and the Federal Power Act
are in all material respects substantially identical and constructions of one are
authoritative for the other.") (internal citations and quotation marks omitted).

b. fails the test for reasoned decision-making, as required by *FERC v. Elec. Power Supply Ass'n,* 136 S. Ct. 760, 782 (2016) ("*EPSA*") (FERC must have "examine[d] the relevant [considerations] and articulate[d] a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made," quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) ("*Motor Vehicle Mfrs. Ass'n*"); *see also Neighborhood TV Co. v. FCC*, 742 F.2d 629, 639 (D.C. Cir. 1984) ("*Neighborhood TV*") (the court must be able to "discern a reasoned path from the facts and considerations before the [agency] to the decision it reached."); and

c. represents an unwarranted and unexplained departure from precedent, contrary to the requirements of *Williams Gas Processing-Gulf Coast Co. v. FERC*, 475 F.3d 319, 326 (D.C. Cir. 2006) ("*Williams Gas Processing*") citing *Brusco Tug & Barge Co. v. NLRB*, 247 F.3d 273, 278 (D.C. Cir. 2001) ("*Brusco Tug & Barge*") ("[I]t is 'axiomatic that [agency action] must either be consistent with prior [action] or offer a reasoned basis for its departure from precedent.").

2. Whether FERC's failure to remove the RTO Adder from the transmission rates charged to the Ohio consumers of ATSI and Duke unduly discriminates against these Ohio consumers, contrary to the requirements of FPA sections 205 and 206, vis-à-vis the Ohio consumers served by DP&L, AEP Ohio and AEP Ohio Transmission who do not have to pay for these incentives.

6

## STATEMENT OF THE CASE

FPA section 219(a) requires FERC to implement a rule that provides transmission rate incentives to public utility transmission utilities for actions that will benefit consumers by "ensuring reliability and reducing the cost of delivered power by reducing transmission congestion." 16 U.S.C. §824s(a). Section 219(c) requires that "[i]n the rule issued under this section, the Commission shall, *to the extent within its jurisdiction,* provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization." 16 U.S.C. § 824s(c) (emphasis added). The FPA defines a Transmission Organization to be "a Regional Transmission Organization, Independent System Operator, independent transmission provider, or other transmission organization finally approved by the Commission for the operation of transmission facilities." 16 U.S.C. § 796(29); *see also* FERC regulations implementing that statute, 18 C.F.R. § 35.35(e).

In 2006, FERC implemented that rule in the form of Order No. 679. *Promoting Transmission Investment through Pricing Reform*, Order No. 679, FERC Stats. & Regs. ¶ 31,222, 116 FERC ¶ 61,057 ("Order No. 679"), *order on reh'g,* Order No. 679-A, 117 FERC ¶ 61,346 (2006), *order on reh'g*, 119 FERC ¶ 61,062 (2007). Order No. 679, *inter alia,* allows transmission utilities to apply for an RTO Adder, *i.e.,* the 50-basis point adder to their ROEs included in their transmission rates. Between 2008 and 2015, FERC granted the RTO Adders for

many utilities without considering the voluntariness requirement, including AEP Ohio, AEP Ohio Transmission, ATSI and Duke.  R.1 (Complaint at 10), JA___; R.39 (Complaint Order at PP 64-65), JA___.

In 2018, the United States Court of Appeals for the Ninth Circuit found that the Order No. 679 incentive for utilities to join Transmission Organizations like FERC-authorized RTOs and Independent System Operators ("ISOs"), has a voluntary participation requirement.  *Cal. Pub. Util. Comm'n v. FERC*, 879 F.3d 966 (9th Cir. 2018) ("*CPUC*") (citing Order No. 679-A, 117 FERC ¶ 61,345 at P 86).  The California Public Utility Commission ("CPUC") had requested that FERC disqualify a California utility, Pacific Gas & Electric Company ("PG&E"), from charging consumers for the RTO Adder on the basis that California law mandated the utility's participation in the California Independent System Operator ("CAISO"), a FERC-authorized RTO, thus making the utility ineligible under the Order No. 679 voluntary participation requirement of the rule.  *CPUC*, 879 F.3d at 971.  Based on FERC's description of the RTO Adders as "an inducement for utilities to join, and remain in, Transmission Organizations," the Ninth Circuit concluded that, because an incentive cannot induce behavior that is already legally mandated, "the voluntariness of a utility's membership in a transmission organization is logically relevant to whether it is eligible for an adder."  *CPUC*, 879 F.3d at 974-75.

In 2021, FERC applied the Ninth Circuit's ruling in *CPUC* and the voluntariness mandate in Order No. 679 to a proceeding brought before FERC by DP&L in FERC Docket No. ER20-1068-000.  DP&L requested that FERC authorize it to include the RTO Adder in its Ohio transmission rates.  Certified Index to the Record in Case Nos. 21-4072 *et al.,* R.2 (DP&L Application to Establish Incentive Rate Treatment), JA__; *see also The Dayton Power & Light Co.,* 176 FERC ¶ 61,025 (2021) ("*Dayton*"*)*, *reh'g denied,* 178 FERC ¶ 61,102 (2022) ("*Dayton Rehearing*"); and Certified Index to the Record, Case Nos. 21-4072 and 22-3351, R.42 (DP&L Order on Paper Hearing) and R. 51 (DP&L Order Addressing Arguments Raised on Rehearing).  FERC denied DP&L's request, finding that Ohio Revised Code § 4928.12 mandates that any transmission utility seeking to provide transmission in the state must join an RTO.  *Dayton*, 176 FERC ¶ 61,025 at P 14.  FERC found that, given Ohio law, DP&L did not qualify for the RTO Adder under FERC's current incentives policy because:  (1) Order No. 679 as interpreted in the Ninth Circuit case requires a showing of voluntary membership in such a Transmission Organization; and (2) DP&L's membership in a Transmission Organization is not voluntary because its participation in the RTO is mandated by Ohio law   *Id.* at PP 26-28, 54.

DP&L, AEP, Duke and FirstEnergy (ATSI's parent) appealed those orders to the Sixth Circuit in Case Nos. 21-4072 and 22-3351.  Certified Index to the

Record in Case Nos. 21-4072 and 22-3351, R.48 (Petition for Review by DP&L, AEP, FirstEnergy and Duke), JA___.  The Court consolidated those appeals with the appeals from OCC's Complaint in Sixth Circuit Case Nos. 23-3196 (AEP first Petition), 23-3324 (OCC first Petition), 23-3366 (AEP second Petition), and 23-3417 (OCC second Petition).  OCC protested DP&L's 2020 request for the RTO Adder in FERC Docket No. ER20-1068-000 and is an intervenor in the DP&L appeals.

In *Dayton,* FERC's denial of DP&L's request for the incentive resulted in lower transmission rates for its Ohio consumers.  DP&L is only one of four electric transmission utilities serving Ohio.  To protect the Ohio consumers served by the remaining three Ohio transmission utilities, OCC in 2022 filed the Complaint in FERC Docket No. EL22-34 against AEP (and its affiliates, AEP Ohio and AEP Ohio Transmission), ATSI and Duke.  R.1 (Complaint at 1, 10), JA__.  OCC argued that all Ohio transmission utilities are subject to the same Ohio law that mandates participation in an RTO, and none of the Ohio utilities' transmission rates charged to Ohio consumers should include a subsidy for them to comply with state law.  R.1 (Complaint at 8-9), JA at __.  The added profits cost Ohio consumers more than $26 million annually just to provide an incentive to do what Ohio law already mandates.  R.1 (Complaint at 13), JA___.

In the Complaint Order issued December 15, 2023, FERC accepted OCC's argument with respect to the AEP affiliates.  FERC found that their Ohio transmission rates contained the RTO Adder, but they were ineligible for the incentive due to the Ohio statutory mandate.  R.39 (Complaint Order at PP 62-63), JA_____.   FERC directed AEP Ohio and AEP Ohio Transmission to remove the RTO Adder from their Ohio transmission rates charged to consumers.  *Id.* at P 77, JA____.

FERC also found that ATSI's and Duke's Ohio transmission rates likewise contained the RTO Adder.  *Id.* at P 65, JA____.  No party contested that they too are subject to the same Ohio law as DP&L, AEP Ohio and AEP Ohio Transmission.  However, FERC did not direct ATSI and Duke to remove the RTO Adder from their Ohio transmission rates charged to consumers.  FERC instead found that ATSI and Duke were not similarly-situated to AEP Ohio and AEP Ohio Transmission because ATSI and Duke received their RTO Adders as part of comprehensive settlement agreements rather than in single-issue rate filings.  *Id.* at P 64, JA____.

 OCC and AEP each filed separate requests for rehearing on January 17, 2023.  R.41 (OCC Rehearing), JA_____; R.40 (AEP Rehearing).  On February 17, 2023, FERC denied both requests.  R.46 (Rehearing Notice).  AEP timely filed its Petition for Review in Case No. 23-3196 on March 8, 2023.  OCC timely filed its

Petition for Review in Case No. 23-3324 on April 14, 2024.  R47 (OCC Petition

for Review), JA___.  FERC then issued a substantive order denying both rehearing

requests on April 20, 2023.  R.49 (Complaint Rehearing Order), JA___.  AEP

timely filed its second Petition for Review in Case No. 23-3366 on August 26,

2023.  OCC timely filed its second Petition for Review in Case No. 23-3417 on

May 9, 2023.  These appeals are properly before the Court.

## SUMMARY OF ARGUMENT

**Issue 1:**  FERC's Complaint Order and Complaint Rehearing Order

directing the removal of an incentive from the transmission rates of some, but not

all, Ohio consumers are arbitrary, capricious and lacking in reasoned decision-

making.  FERC properly directed AEP Ohio and AEP Ohio Transmission to

remove the RTO Adder from the rates they charge their Ohio transmission

consumers because they, like DP&L, are mandated by Ohio law to participate in an

RTO.  Thus, they are ineligible for the incentive under FERC policy and precedent.

**Issue 1.a and 1.b:** FERC's rulings with respect to ATSI and Duke ignore

the Ohio law mandating all Ohio utilities, including ATSI and Duke, to join an

RTO in order to provide transmission services in Ohio.  FERC acknowledged that

the RTO Adders are in ATSI's and Duke's rates charged to their Ohio transmission

consumers.  Like DP&L, AEP Ohio and AEP Ohio Transmission, the RTO Adder

cannot and does not provide an incentive for ATSI and Duke to take action that

would benefit Ohio consumers because they too are already mandated by state law to participate in an RTO. The RTO Adders simply serve as an unjust and unreasonable bonus for compliance with Ohio law, to the detriment of Ohio consumers who subsidize the increased profits through their transmission rates

**Issue 1.c:** FERC's explanation for not directing ATSI and Duke to remove the RTO Adders from their rates is an unwarranted departure from its policy and precedent. FERC states that ATSI's and Duke's rates were set by settlements and that those settlements cannot be unwound by single-issue ratemaking. But this argument is inconsistent with FERC precedent allowing single-issue complaints against the utility profits that have been set by settlements, where the settlements specifically established the profits being challenged. It is also inconsistent with prior FERC rulings that allow single-issue challenges to black-box settlements when the settlement identifies the issue being challenged.

FERC has many times reviewed single-issue complaint cases challenging the authorized profits (ROE) consumers are charged under a settlement. But here, FERC incorrectly determined that it could not distinguish between the base profits and the added profits (RTO Adder) even though the settlements explicitly identified the added profits in ATSI's and Duke's rates. This ruling is especially arbitrary given that it is internally inconsistent with FERC's treatment of AEP

13

Ohio and AEP Ohio Transmission when it stated that the base profit is irrelevant to the question of the RTO Adder.

Here, the ATSI and Duke settlements both explicitly set forth the value of the RTO Adder.  FERC could easily distinguish the increased profits under the RTO Adder from the utility's base profit level as it did for AEP Ohio and AEP Ohio Transmission.  FERC's disparate treatment of ATSI's and Duke's Ohio consumers lacks reasoned decision-making.

FERC orders also are internally inconsistent.  On the one hand, FERC found that the justness and reasonableness of AEP Ohio and AEP Ohio Transmission's overall profits is irrelevant to the question of whether they are ineligible for the incentive. Yet on the other hand, FERC ruled that the overall reasonableness of the profits in ATSI's and Duke's rates is relevant to the question of whether the RTO Adder should be removed from the rates consumers are charged.  Internally inconsistent orders do not pass the muster of reasoned decision-making.

**Issue 2:**  FERC's rulings also are unduly discriminatory against Ohio consumers of ATSI and Duke vis-à-vis its treatment of the Ohio consumers of DP&L, AEP Ohio and AEP Ohio Transmission.  This undue discrimination violates FPA sections 205 and 206.  The only difference between the two sets of Ohio consumers is the manner in which FERC set the utilities' rates.

14

But this factor has no bearing on the main issues of whether the utilities are eligible for the incentive and whether inclusion of the incentive in their Ohio transmission rates is unlawful, unjust and unreasonable given Ohio law mandating RTO participation. The Court should remand FERC's rulings as to ATSI and Duke with directives to remove the added profits from the rates charged to their Ohio transmission consumers and direct ATSI and Duke to provide refunds for Ohio consumers back to February 24, 2022 – the refund effective date.

## STATEMENT REGARDING STANDING

OCC is the statutory representative of the interests of approximately 4.5 million Ohio residential utility consumers in proceedings before state and federal administrative agencies and the courts, under Ohio Revised Code §4911.02. OCC advocates to protect all Ohio consumers from unreasonable, unjust, and unlawful utility rates and charges.

FERC's orders have, in fact, caused immediate, concrete, and particularized injury to the Ohio consumers served by ATSI and Duke. The Orders leave ATSI's and Duke's Ohio customers subject to unjust, unreasonable and unduly discriminatory rates for electric transmission services in Ohio, contrary to FPA sections 205 and 206. The additional profits charged to consumers of ATSI and Duke are not an incentive because ATSI and Duke are required to participate in an RTO under Ohio law. The added profits merely create an unwarranted windfall to

15

ATSI and Duke shareholders at the expense of consumers who subsidize the windfall through the transmission rates they pay.

The RTO Adder needlessly increases the electricity rates that ATSI's and Duke's Ohio transmission customers must pay.  OCC estimated the amount of profit subsidy charged to consumers at more than $26 million annually.  R.1 (Complaint at 13), JA___.  This estimate is conservative, given that OCC quantified the amount based only on new investment in Ohio transmission infrastructure since 2010.  *Id.*  ATSI's and Duke's Ohio customers pay the RTO Adder not only on new infrastructure planned since 2010, but also on pre-2010 transmission investment.  *Id.*

ATSI and Duke continue to charge their Oho transmission customers each day, needlessly increasing Ohio consumers' electric transmission rates for unwarranted profits.  This harm can be redressed by remanding the matter to FERC with instructions to order the added profits removed from the rates of ATSI and Duke consumers in Ohio back to February 24, 2022, the refund effective date in the Complaint Order.  R.39 (Complaint Order at __),JA___.  The Court also should direct FERC to order ATSI and Duke to provide refunds back to the date of the filing of the Complaint, consistent with its authority to do so under FPA section 206.

# ARGUMENT

## I.    STANDARD OF REVIEW

The Court reviews FERC's orders under the Administrative Procedure Act's ("APA's") "arbitrary and capricious" standard.  5 U.S.C. § 706(2)(A); *Sithe/Indep. Power Partners,*, 165 F.3d at 948.  The Court may uphold FERC's rulings only if the agency has provided a reasoned decision by examining the relevant considerations and giving a satisfactory explanation for its action, "including a rational connection between the facts found and the choice made."  *EPSA,* 577 U.S. at  292, quoting *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43 (1983).  *See also Neighborhood TV,*, 742 F.2d at  639 (the court must be able to "discern a reasoned path from the facts and considerations before the [agency] to the decision it reached.").

Here, the Court is reviewing FERC's disparate treatment of ATSI's and Duke's Ohio transmission customers vis-à-vis the Ohio transmission customers served by DP&L, AEP Ohio and AEP Ohio Transmission.  The Court must determine whether FERC has set forth a sufficient explanation for its disparate treatment of Ohio consumers served by ATSI and Duke.  The Court also must consider whether FERC's rulings represent an unexplained departure from precedent, contrary to the requirements of *Williams Gas Processing*, 475 F.3d at 326, citing *Brusco Tug & Barge,* 247 F.3d at 278 ("[I]t is 'axiomatic that [agency

action] must either be consistent with prior [action] or offer a reasoned basis for its departure from precedent.'").

Finally, the Court must review whether FERC's disparate treatment of ATSI's and Duke's Ohio consumers vis-à-vis AEP Ohio and AEP Ohio Transmission's consumers is unduly discriminatory in violation of FPA sections 205 and 206. Similarly-situated customers must not be treated differently. *See, e.g., New England Power Gen. Ass'n. v. FERC*, 881 F.3d 202, 211 (D.C. Cir. 2018), citing to *BP Energy Co. v. FERC*, 828 F.3d 959, 968 (D.C. Cir. 2016) ("vacating finding of no undue discrimination where Commission identified differences between two natural-gas companies but failed to adequately explain why they provide a rational basis for the difference in treatment").

## II. FERC's Orders Failing To Protect Ohio Consumers of ATSI and Duke from Paying for Unnecessary and Unlawful Transmission Rate Incentives Are Arbitrary, Capricious and Not Supported by Reasoned Decision-Making.

### A. FERC correctly found that Ohio law mandates participation in an RTO by Ohio transmission utilities, and thus AEP Ohio and AEP Ohio Transmission are ineligible for the RTO Adder.

*[Standard of Review: FERC's orders are arbitrary and capricious where they are not supported by reasoned decision-making.]*

FERC's Complaint Order in Docket No. EL22-34-000 provides critical protections for Ohio retail consumers served by AEP Ohio and AEP Ohio Transmission. That Order directs these AEP Ohio affiliates to remove from the

18

transmission rates they charge to their consumers the unwarranted RTO Adder incentive granted in prior proceedings. R.39 (Complaint Order at PP 62-63), JA___. FERC properly found that Ohio law mandates that the AEP affiliates participate in an RTO. *Id.* Thus, FERC found that AEP Ohio and AEP Ohio Transmission "do not qualify for an RTO Adder under the Commission's incentives policy because Order No. 679, as interpreted in *CPUC,* requires a showing of voluntary membership in a Transmission Organization, which, as noted, they cannot make." R.39 (Complaint Order at P 63), JA___. FERC directed the AEP affiliates to remove the RTO Adder from Ohio consumers' rates and provide its consumers refunds back to February 24, 2022. R.39 (Complaint Order at PP 77,79), JA___.

In the Complaint, OCC also challenged the justness and reasonableness of continuing to allow ATSI and Duke to continue to charge consumers for the RTO Adder in their Ohio transmission rates. R.1 (Complaint at 10-11), JA___. ATSI and Duke also are transmission utilities serving Ohio consumers and are subject to the same Ohio law. R.1 (Complaint at P 10), JA___. But FERC failed to extend the same protection to ATSI's and Duke's Ohio consumers. R.39 (Complaint Order at P 64), JA___. FERC affirmed this ruling on rehearing. R.49 (Complaint Rehearing Order at PP 26-30), JA___.

FERC's rulings below and in *Dayton* find that two of the four transmission utilities serving Ohio cannot charge consumers added profits because Ohio law mandates their participation in an RTO.  R.39 (Complaint Order at PP 5, 63 ), JA___ (finding AEP Ohio and AEP Ohio Transmission ineligible for the RTO Adder); R.49 (Complaint Rehearing Order at PP 26-30), JA___ (affirming the Complaint Order); and *Dayton,* 176 FERC ¶ 61,025 at P 2; *Dayton Rehearing*, 178 FERC ¶ 61,102 at P 4 (finding DP&L ineligible for the RTO Adder).  These rulings establish that charging consumers for added profits in their Ohio transmission rates is no longer just and reasonable because Ohio law compels Ohio electric utilities to participate in an RTO.  R.39 (Complaint at P 63), JA___, citing *Dayton,* 176 FERC ¶ 61,025 at P 56 and Ohio Rev. Code, § 4928.12.  It is not just and reasonable to require Ohio consumers to pay incentives to a utility to do what is required by law.

FPA section 219(c) requires that "[i]n the rule issued under this section, the Commission shall, *to the extent within its jurisdiction,* provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization." 16 U.S.C. § 824s (emphasis added); R.39 (Complaint Order at P 61), JA__.  FERC properly recognized in Order No. 679 that FPA Section 219 does not create an *entitlement* to such incentives.  Instead, FERC found that it "implemented this [the FPA section 219] directive in Order No. 679, finding that an RTO Adder is

appropriate for entities that choose to remain members of a Transmission Organization because, in relevant part, continuing membership is 'generally voluntary.'"  R.39 (Complaint Order at P 61), JA___, citing Order No. 679, 116 FERC ¶ 61,057 at P 331.  FERC properly considered its transmission rate incentive policies in Order No. 679 when determining whether DP&L, AEP Ohio and AEP Ohio Transmission could charge consumers for the RTO Adder incentive.

FERC also properly relied on the United States Court of Appeals for the Ninth Circuit's opinion in *Cal. Pub. Util. Comm'n v. FERC,* 879 F.3d 966 (9th Cir. 2018) ("*CPUC"*) as support for its ruling relating to DP&L, AEP Ohio and AEP Ohio Transmission.  R.39 (Complaint Order at P 63), JA___.  The Ninth Circuit in *CPUC* found that FERC must consider whether a utility's membership in a Transmission Organization, or RTO, is voluntary in order for that utility to be eligible for a FPA section 219 RTO Adder incentive.  R.49 (Complaint Rehearing Order at P 4), JA___.

FERC noted that in the case underlying *CPUC*, it had summarily granted PG&E's request for an RTO Adder for its continuing membership in the California Independent System Operator ("CAISO"), a FERC-authorized RTO, without considering the voluntariness of that participation.  In that proceeding, the CPUC argued that PG&E was ineligible for the incentive because California law required PG&E to participate in CAISO.  R.49 (Complaint Rehearing Order at P 4), JA___.

21

The Ninth Circuit remanded the case to FERC to undertake the voluntariness review.

In relying on *CPUC* in its Complaint Rehearing Order to affirm its ruling as to AEP Ohio and AEP Ohio Transmission, FERC stated that:

> the presumption that a utility that has joined, and has ongoing membership in, a Transmission Organization is eligible for an RTO Adder may be rebutted by evidence that such membership is not voluntary.

R.49 (Complaint Rehearing Order at 4), JA__ (citations omitted). In applying that precedent to AEP Ohio and AEP Ohio Transmission, FERC found that "since an incentive cannot induce behavior that is already legally mandated, 'the voluntariness of a utility's membership in a transmission organization is logically relevant to whether it is eligible for an adder.'" R.39 (Complaint Order at P 83), JA___(citation omitted). In other words, FERC properly found that there must be a voluntary component of a utility's participation in an RTO for that utility to be eligible to charge consumers for added profits.

FERC first applied the Ninth Circuit's ruling in *CPUC* in *Dayton*. In the Complaint Rehearing Order, FERC affirmed that "given Ohio law, DP&L did not qualify for the RTO Adder under the Commission's current incentives policy. R.49 (Complaint Rehearing Order at P 6), JA___. This is because "(1) Order No. 679 as interpreted in *CPUC* requires a showing of voluntary membership in such a

Transmission Organization; and (2) Dayton's membership in a Transmission Organization is not voluntary because Ohio law requires it." *Id.*

In *Dayton*, FERC rejected DP&L's request to include the RTO Adder in the transmission rates it charges its Ohio consumers, reasoning that "the Ohio statute [Ohio Revised Code § 4928.12] mandates that an entity shall not 'own or control transmission facilities . . . unless [it] is a member of, and transfers control of those facilities to, one or more qualifying transmission entities' that complies with nine criteria, one of which is that the qualifying transmission entity be approved by the Commission." R.39 (Complaint Order at P 63), JA___. FERC correctly found in *Dayton* that the Ohio statutory definition of a "transmission entity" is in effect, an RTO. *Dayton,* 176 FERC ¶ 61,025 at PP 55-58.

In the Complaint case, FERC correctly found that: (a) it had authorized the RTO Adder for Ohio Power and AEP Ohio Transmission; and (b) the incentive was in the rates the AEP affiliates charged to Ohio consumers.  R. 39 (Complaint Order at P 62), JA___.  In applying its 2021 ruling in *Dayton* and the Ninth Circuit's 2018 ruling in *CPUC* to AEP Ohio and AEP Ohio Transmission, FERC found the inclusion of the previously authorized RTO Adder in AEP Ohio's and AEP Ohio Transmission's rates was no longer just and reasonable because membership was not voluntary but was mandated by Ohio law.  R.39 (Complaint Order at PP 63, 85), JA___; R.49 (Complaint Rehearing Order at P 43), JA___.

23

FERC properly directed AEP Ohio and AEP Ohio Transmission in Docket No. EL23-34-000 to remove the RTO Adder from their Ohio transmission rates and provide refunds to their consumers back to February 24, 2023. R.39 (Complaint Order at P 77, 79), JA___.

### B. FERC acted arbitrarily, capriciously and without reasoned decision-making in failing to direct ATSI and DEO to remove the added profits from the transmission rates they charge their Ohio customers.

*[Standard of Review:  FERC's orders are arbitrary and capricious if they are not supported by reasoned decision-making, and are unexplained departures from precedent.]*

The logic behind FERC's rulings applies equally to ATSI and Duke. These are the remaining two transmission utilities in Ohio who are charging Ohio consumers to subsidize added profits (RTO Adders) in their rates. FERC explicitly acknowledged that the RTO Adder is in the transmission rates charged by ATSI and Duke to their Ohio consumers. R.39 (Complaint Order at PP 9, 10 and 65), JA____. No party challenged the fact that Ohio law also mandates that ATSI and Duke, like DP&L, AEP Ohio and AEP Ohio Transmission, participate in an RTO to be eligible to provide transmission service in Ohio. Nevertheless, FERC did not direct ATSI or Duke to remove the RTO Adder from their rates. R.39 (Complaint Order at PP 64-65), JA___.  In other words, FERC declined to provide a remedy for the unjust and unreasonable transmission rates being paid by Ohio consumers served by ATSI and Duke.

The only relevant questions before FERC regarding ATSI and Duke should have been (a) whether ATSI and Duke have the RTO Adder in their Ohio transmission rates they are charging to consumers; and (b) whether ATSI and DEO are subject to the same Ohio law as DP&L and AEP.  Each of the fundamental predicates for FERC's directive to remove the added profits from the Ohio transmission rates charged to AEP Ohio and AEP Ohio Transmission consumers is just as true for ATSI and Duke.  FERC erred in not finding that all Ohio utilities, including ATSI and Duke, should not charge consumers added profits for belonging to an RTO when they are required to do so by Ohio law.  R.41 (OCC Rehearing at 9), JA___.

As with AEP Ohio and AEP Ohio Transmission, added profits cannot encourage ATSI or Duke to participate in an RTO. R.1 (Complaint at 8-11), JA___.  Ohio law states that "no entity shall own or control transmission facilities as defined under federal law and located in this state on or after the starting date of competitive retail electric service unless that entity is a member of, and transfers control of those facilities to, one or more qualifying transmission entities, as described in division (B) of this section, that are operational."  R.1 (Complaint at 8), JA___ (citing Ohio Rev. Code § 4928.12).  Unless ATSI and Duke joined an RTO, they would be ineligible to provide transmission service in Ohio.

Leaving the Adder in ATSI's and Duke's rates accomplishes nothing that benefits consumers. Instead, it allows ATSI and Duke shareholders to receive an unwarranted windfall for complying with Ohio law, at Ohio consumer expense. R.41 (OCC Rehearing at 17), JA___. Commissioner Christie correctly recognized the windfall that gives a utility an incentive to do what is already required by law. In his concurring opinion to the Complaint Order, he stated that "[a]n ROE Adder for RTO participation is 'by definition, a subsidy, as any ROE adder is – more 'FERC Candy' taken directly from consumers and redistributed to transmission owners.'" R.41 (OCC Rehearing at 4), JA___, quoting R.39 (Complaint Order, Concurring Opinion of Commissioner Christie at P 2), JA____.

It is also inconsistent with FPA Section 219(d). That provision of the statute authorizing the RTO Adder incentive requires that "[a]ll rates approved under the rules adopted pursuant to this section, including any revisions to the rules, are subject to the requirements of sections 824d and 824e of this title that all rates, charges, terms, and conditions be just and reasonable and not unduly discriminatory or preferential." R.43 (OCC Answer to AEP Rehearing at 10-11), JA____, citing 16 U.S.C. § 824s(d). FERC must, of necessity, consider whether the RTO Adder is still consistent with its authority to allow incentives, including case law determining when and under what conditions rate incentives charged to consumers can be considered just and reasonable. It failed to do so here.

FERC's ruling also is inconsistent with the Ninth Circuit Court of Appeals ruling finding that a voluntariness requirement for the RTO Adder incentive is mandated by Order No. 679. In *CPUC,* 879 F.3d 966 at 977, the Ninth Circuit found that "[t]he policy [Order No. 679] prohibits FERC from rewarding utilities for past conduct or for conduct which they are otherwise obligated to undertake." This logic also is consistent with long-held judicial precedent that "[i]f the Commission contemplates increasing rates for the purpose of encouraging exploration and development, or the ownership by pipeline companies of their own producing facilities, it must see to it that the increase is in fact needed, and is no more than is needed, for the purpose." *City of Detroit, Michigan v. Federal Power Comm'n*, 230 F.2d 810, 817 (D.C. Cir. 1955).   R.41 (OCC Rehearing at 8-9), JA___.  Allowing ATSI and Duke to continue to charge consumers for the extra profits (through the Adders) represents an unexplained departure from this precedent, and from Order No. 679, contrary to the requirements of *Williams Gas Processing,* 475 F.3d at 326.  There is no reasoned path from the facts found to the decision made.

**C. FERC's reliance on how the rates were set (by settlement) as an excuse for not removing the added profits from consumer-funded rates is not based on reasoned decision-making and is an unexplained departure from precedent.**

*[Standard of Review:  FERC orders must be based on reasoned decision-making, and must not be an unexplained departure from precedent.]*

The only explanation provided by FERC for its disparate treatment of Ohio utility consumers was that ATSI's and Duke's rates were set by settlement rather than by FERC directive in a separate, single-issue rate proceeding.  R.39 (Complaint Order at PP 60, 64), JA____.   That ruling is not supported by FERC precedent or reasoned decision-making, contrary to the APA's "arbitrary and capricious" standard.  5 U.S.C. § 706(2)(A), and *Sithe/Indep. Power Partners*, 165 F.3d at 948 ("The Commission must be able to demonstrate that it has 'made a reasoned decision based upon substantial evidence in the record'").  The courts must be able to "discern a reasoned path from the facts and considerations before the [agency] to the decision it reached." *EPSA,* 136 S. Ct. at 782, quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (1983) and *Neighborhood TV,* 742 F.2d at 639.

FERC has not provided a reasoned path from the facts to its decision allowing ATSI and Duke to continue to charge their consumers added profits in their Ohio transmission rates.  FERC's reason for refusing to apply the Order No. 679 voluntary participation policy, and the precedent set out in CPUC and *Dayton* to ATSI and Duke rests on the argument that FERC could not unscramble the

settlement rates for ATSI and Duke.  R.39 (Complaint Order at P 64), JA__; R.49

Complaint Rehearing Order at P 30), JA___.  But FERC's reasoning for its

disparate treatment of ATSI's and Duke's Ohio consumers is inconsistent with the

facts, internally inconsistent with FERC's ruling regarding AEP Ohio and AEP

Ohio Transmission, and inconsistent with FERC precedent.

1. <u>FERC approved charging ATSI and Duke consumers added profits when it approved settlements that explicitly recognized the added profits in transmission rates charged to Ohio consumers.</u>

FERC states that it did not explicitly grant the RTO Adder for ATSI and

Duke because "their rates were instead the products of comprehensive

settlements."  R.39 (Complaint Order P 60), JA___.  FERC further states that

unlike the RTO Adders for AEP Ohio and AEP Ohio Transmission, ATSI's and

Duke's "ROEs, including any adders, were each embedded in a comprehensive

settlement package submitted to the Commission to resolve a complex, multi-issue

dispute among those entities, their customers and other affected parties."  R.39

(Complaint Order at P 64); *see also* R.49 (Complaint Rehearing Order at P 27),

JA___.

The distinction FERC makes between RTO Adders authorized in single-

issue rate filings and those authorized in settlements is contrary to Order No. 679

authorizing utilities to seek the RTO Adder in the context of a FPA section 205

rate filing.  In Order No. 679, FERC allowed utilities to use one of two

mechanisms to request added profits for belonging to an RTO:  (1) by filing a

combination of a petition for declaratory order and a subsequent section 205 filing;

or (2) by filing only a section 205 rate case.  R.41 (OCC Rehearing at 10), quoting

Order No. 679, 116 FERC ¶ 61,057 at P 76, JA___.   AEP Ohio and AEP Ohio

Transmission chose the former route.  R.39 (Complaint Order at P 62),

JA___(citing *Am. Elec. Power Serv. Corp*., 124 FERC ¶ 61,306 at P 30 (___); *AEP*

*Appalachian Transmission Co., et al.*, 130 FERC ¶ 61,075 at P 21 (____)).  ATSI

and Duke chose the latter.  R.39 (Complaint Order at P 64), JA.___(citing *Duke*

*Energy Ohio, Inc.,* 151 FERC ¶ 61,029 at PP 10, 14 (2014); *PJM Interconnection,*

*L.L.C.,* 153 FERC ¶ 61,106 at P 3 (2015).

Under either mechanism, FERC's prior approval of the proposed rate change

is required.  FPA section 205 states that "[u]nless the Commission otherwise

orders, no change shall be made by any public utility in any such rate, charge,

classification, or service, or in any rule, regulation, or contract relating thereto,

except after sixty days' notice to the Commission and to the public".  16 U.S.C. §

824d.  In *Okla. Gas & Elec. Co. v. FERC*, 11 F.4th 821 (D.C. Cir. 2021), the D.C.

Circuit Court found that:

> The Commission must ensure regulated entities charge "just
> and reasonable" rates. As incorporated into the Federal Power
> Act, regulated entities are required to file with FERC
> "schedules showing all rates and charges ... and the
> classifications, practices, and regulations affecting such rates
> and charges." Once filed, "no change shall be made ... in any

> such rate, charge, classification, or service, or in any rule,
> regulation, or contract relating thereto, except after sixty days'
> notice to the Commission and to the public in another filing
> with FERC."

*Okla. Gas & Elec. Co. v. FERC*, 11 F.4th 821 at 829 (internal citations omitted).

Both ATSI and Duke filed to implement transmission formula rates in FPA section 205 rate proceedings.  In 2015, FERC authorized increased profits (ATSI's 50 basis point RTO Adder) to be charged to consumers in Docket No. ER15-303-000 *et al.*  R.1 (Complaint at 10), JA____, citing *PJM Interconnection, L.L.C.,* 153 FERC ¶ 61,106 (Letter Order dated October 29, 2015 accepting the Settlement Agreement and Offer of Settlement).  Section II.C.2 of the settlement states that "[a]ll ROE values in section II.C.1 are inclusive of any incentive adder for RTO participation."  R.1 (Complaint at 10, n.24), JA____, citing Settlement Agreement and Offer of Settlement at Section II.C.2 (Jly. 20, 2015), PJM Interconnection, L.L.C., *et al.,* Docket No. ER15-303-000 *et al.*[2]

In the Complaint Order, FERC relied on that settlement language in acknowledging that ATSI's rates include the increased profits charged to consumers for joining a regional transmission organization. RTO Adder.  R.39

---

[2] FERC relied on this Settlement Agreement in its orders on review, but the document is not part of the record below.  Nevertheless the Settlement Agreement is publicly available on FERC's e-library website at https://elibrary.ferc.gov/eLibrary/filedownload?fileid=01D4F0ED-66E2-5005-8110-C31FAFC91712.

(Complaint Order at P 65), JA___.  FERC acknowledged that "the ATSI settlement

stated that the agreed-upon ROEs were inclusive of any incentive adder for RTO

participation and that ATSI's affiliates testified in other proceedings that ATSI's

base ROE is 9.88%, rather than the 10.38% ROE contained in the ATSI

settlement." R.39 (Complaint Order at P 65 and n.132), JA___(citing the ATSI

Settlement Agreement and Offer of Settlement).  The difference between the base

profit level of 9.88% and 10.38% reflects the added profits of 50 basis points,

approved for charging to consumers.

　　　　Also in 2015, FERC authorized Duke to include the 50-basis point RTO

Adder in its transmission rates in Docket No. ER12-91-000.  R.1 (Complaint at

10), JA____, citing *Duke Energy Ohio, et al.,* 151 FERC ¶ 61,029 at PP 10, 14

(2015) ("*Duke*").  In the Complaint Order, FERC relied on the Duke settlement

language in acknowledging that "the parties in Duke's settlement agreed upon a

10.88% base cost of common equity *and a 50 basis point ROE adder*."  R.39

(Complaint Order at P 65, n.131), JA___ (citing to the Duke Settlement

Agreement) (emphasis added).  Section 3.3(a) of Duke's settlement agreement in

that case states:

> the return on common equity ("ROE") in the Duke
> Companies' revenue requirement for wholesale transmission
> service shall be a total of 11.38%, consisting of a 10.88%
> base cost of common equity and a 0.5% ROE adder as
> permitted by Commission policy for participation in a
> regional transmission organization (hereinafter, the

"Base/RTO ROE"), subject to the rights reserved in the
proviso of Section 3.3.b.

Duke Settlement Agreement at Article III, section 3.3(a) (Oct. 30, 2014), PJM

Interconnection, L.L.C., Duke Energy Ohio, Inc., *et al.,* Docket No. ER12-91-000

*et al.* [3]

Section 3.3(b) of the settlement agreement language referenced above

reserves the rights of the Settling Parties to challenge the RTO Adder in future

cases, explicitly stating that "the Settling Parties (or any of them) shall not be

precluded from making or supporting a filing to eliminate the 0.5% ROE adder if

the Duke Companies terminate their participation in an RTO before June 1, 2017."

*See* Duke Settlement Agreement at Article III, section 3.3(b), n.3 *supra*.

FERC relied on the language in these settlement agreements to acknowledge

that both explicitly included the RTO Adders in ATSI's and Duke's Ohio

transmission rates charged to consumers.  Although FERC did not authorize the

RTO Adders for Duke and ATSI in separate, single-issue rate filings, FERC

nevertheless did authorize the RTO Adders for ATSI and Duke in the context of

FPA section 205 rate cases, as allowed under Order No. 679.  The settlements in

---

[3] FERC relied on this Settlement Agreement in its orders on review, but the
document is not part of the record below. Nevertheless the Settlement Agreement
is publicly available on FERC's e-library website at
https://elibrary.ferc.gov/eLibrary/filedownload?fileid=01C801CD-66E2-5005-
8110-C31FAFC91712.

those proceedings produced rates that explicitly and separately included the RTO
Adder to be charged to consumers.  R.1 (Complaint at 10), JA____.

The rates in those settlements could not have been charged to consumers
without FERC's approval.  FERC is obligated to review all settlements to
determine whether the settlement and resulting rates to consumers are just and
reasonable.  *Tejas Power Corp. v. FERC*, 908 F.2d 998, 1003(D.C. Cir. 1990)
("Commission may approve uncontested settlement only 'upon a finding that the
settlement appears to be fair and reasonable and in the public interest," citing
FERC regulations, 18 C.F.R. § 385.602(g)(3)).  In approving the ATSI and Duke
settlements, FERC knew it was authorizing the RTO Adders for each utility to
charge its consumers.  R.41 (OCC Rehearing at 9-10), JA____.

2. <u>Directing ATSI and Duke to remove the RTO Adder from the rates of
   their Ohio transmission customers would not disturb the overall bargain
   in the settlements.</u>

FERC incorrectly states that in contrast to AEP Ohio and AEP Ohio
Transmission, ATSI's and Dukes' RTO Adders, "were agreed upon as part of
integrated, comprehensive settlements of the entire proceeding(s), and we cannot
know what, if anything, the parties agreed to in exchange for settling on those ROE
figures." R.39 (Complaint Order at P 64), JA___;  R.49 (Complaint Rehearing
Order at 28).  That argument is both inconsistent with FERC precedent and

internally inconsistent with FERC's rulings relating to AEP Ohio and AEP Ohio Transmission in the Complaint Order.

On rehearing, OCC pointed out that the inclusion of the RTO Adder in the ATSI and Duke settlement rates charged to consumers would not have been part of the various trade-offs made during settlement discussions.  That is because, before *CPUC* and prior to the ATSI and Duke settlements, FERC had always granted requests for inclusion of the RTO Adder in utility transmission rates charged to consumers.  R.41 (OCC Rehearing at 11), JA___; *see also* R.49 (Complaint Rehearing Order at P 23), JA___ (summarizing OCC's position).  OCC also pointed out on rehearing that "While those trade-offs could have gone either in the consumers' favor or the utility's favor, it is far more likely that consumers conceded to inclusion of the RTO Adders within the overall rates of return because FERC policy at the time pretty much allowed the RTO Adder for every utility that had joined an RTO."  R.41 (OCC Rehearing at 11), JA___.

FERC nonetheless rejected these arguments on rehearing with the blanket statement that "we do not know the precise trade-offs and concessions made by the parties to those proceedings."   R.49 (Complaint Rehearing Order at P 28), JA___. That decision is internally inconsistent with FERC's acknowledgement in the same paragraph that "if Duke and ATSI had sought an RTO Adder at that time (*i.e.*, prior to *CPUC*) outside the settlement context, an RTO Adder likely would have

been granted." *Id.* In other words, FERC confirmed that if consumers had tried to argue against the RTO Adders in the settlement agreements in 2014 and 2015, it would have been futile given FERC's admission that it likely would have granted those incentives anyway.

FERC was not at that time considering the voluntariness of participation in an RTO before granting such approvals, but rather was granting them routinely. *See, e.g., Me. PUC v. FERC*, 454 F.3d 278  at 289 (DC Cir. 2006) ("approval of the 50 point adder is consistent with FERC precedent, *see, e.g., PJM Interconnection LLC*, 104 FERC ¶ 61,124, at 61,435 (2003), and FERC's *Pricing Policy*, 102 F.E.R.C. at 61,065"). FERC corroborated its routine practice of granting the RTO Adder incentive prior to 2020 in the Supplemental Notice of Proposed Rulemaking ("NOPR") issued in 2021 in Docket No. RM20-10-000, *Electric Transmission Incentives Policy Under Section 219 of the Federal Power Act*, 175 FERC ¶ 61,035 at P 5 (2021). FERC's failure to recognize that consumers would have had little leverage in negotiating the RTO Adder in the ATSI and Duke complaint proceedings is belied by its own ruling in the Complaint Rehearing Order and in the Supplemental NOPR.

In the Complaint Rehearing Order, FERC also ignored OCC's argument that it was imperative at the time of the negotiations of the ATSI and Duke settlement agreements to include language memorializing the inclusion of the RTO Adders.

R.41 (OCC Rehearing at 11), JA___.  Both consumers and FERC had to make sure that the record was clear as to whether the utility's ROE included the RTO Adder. *Id.*  Absent such language, consumers would have had no ability to prove in a future case that the utility's rates already included added profits and that such profits should not be charged to consumers a second time.  R.41 (OCC Rehearing at 11), JA___.

FERC never responded to this argument in the Complaint Rehearing Order, contrary to precedent that requires FERC to address the major arguments before it. *See, e.g., Scenic Hudson Preservation Conference et al. v. Federal Power Commission*, 354 F.2d 608, 620 (D.C. Cir. 1965) (where FERC represents the public interest, its role "does not permit it to act as an umpire blandly calling balls and strikes for adversaries appearing before it . . . .").  Instead, "the right of the public must receive active and affirmative protection at the hands of the Commission." *Id.* at 620.  FERC erred in not addressing this argument, warranting a remand of these orders.

3. FERC's statement that it cannot separate the base ROE and the RTO Adder in the ATSI and Duke settlements is internally inconsistent and an unexplained departure from FERC precedent.

FERC's statement that it will not "revisit individual elements of settlements unless it is shown that they make the overall rate unjust and unreasonable" (R.49 (Complaint Rehearing Order at P 28), JA__) is arbitrary, capricious, internally

inconsistent with the Complaint Order and Complaint Rehearing Order,  and

inconsistent with precedent.  In the Complaint Order, FERC itself found that a

utility's base ROE is completely separate from its RTO Adder incentive.  FERC

justified removal of the RTO Adder from rates charged to consumers of AEP Ohio

and AEP Ohio Transmission, stating that it "determines a utility's eligibility for the

RTO Adder separately from its analysis of the utility's base ROE, subject to the

total ROE including the RTO Adder remaining within the zone of reasonableness."

R.39 (Complaint Order at P 61), JA_____.

　　　FERC rejected AEP Ohio and AEP Ohio Transmission's argument that

FERC should have considered the justness and reasonableness of the overall return

before directing them to remove the RTO Adder from consumers' rates.  R.39

(Complaint  Order at P 77), JA__.  FERC reasoned that "as the Commission found

in the Dayton Orders, the Commission's decision pertaining to the RTO Adder is

*irrelevant* to a utility's base ROE and financial integrity, credit ratings, and ability

to attract investment."  R.39 (Complaint Order at P 77), JA___ (emphasis added).

In other words, FERC separately distinguished between the added profit incentive

and the utility's base ROE when directing AEP Ohio and AEP Ohio Transmission

to remove the RTO Adders from the transmission rates charged to Ohio

consumers.

Thus, FERC incorrectly ruled in the Complaint Order that OCC had an obligation to demonstrate that ATSI's and Duke's currently authorized overall ROEs, including the base ROEs, were unjust and unreasonable.  R.49 (Complaint Rehearing Order at P 28), JA___.  FERC found for the AEP affiliates that it did not matter whether the current ROEs with the RTO Adder were still within a range of reasonableness, because Ohio law makes the AEP Ohio affiliates ineligible for the incentive.  R.39 (Complaint Order at P 77), JA___.  The same is true for ATSI and Duke.  R.41 (OCC Rehearing at 13), JA____.

FERC cannot have it both ways.  Either the RTO Adder is irrelevant to the determination of base ROE – as is the case in FERC's rulings relating to DP&L, AEP Ohio and AEP Ohio Transmission, or it is relevant to the overall reasonableness of the rates – as in the premise for FERC's rulings for ATSI and Duke.  FERC got it right for AEP Ohio and AEP Ohio Transmission, and in *Dayton*.

The logic underlying FERC's decision for DP&L, AEP Ohio and AEP Ohio Transmission is that where the RTO Adder can be separately distinguished from the base ROE, it can be removed from consumers' rates in a single-issue complaint proceeding.  That same premise underlies OCC's Complaint with respect to the RTO Adders in ATSI's and Duke's rates.

FERC's inconsistent treatment of consumers served by the Ohio utilities is arbitrary and capricious. *ANR Storage Co. v. FERC*, 904 F.3d 1020 at 1028 (D.C. Cir. 2018) (finding a FERC order with internally inconsistent rulings to be arbitrary and capricious) ("*ANR*"). In *ANR,* the D. C. Circuit Court of Appeals found that FERC's decision must give a "'reasoned analysis' to justify the disparate treatment of regulated parties that seem similarly situated, *W. Deptford Energy, LLC v. FERC,* 766 F.3d 10, 21 (D.C. Cir. 2014), and its reasoning cannot be internally inconsistent, *see, e.g., Sierra Club v. EPA,* 884 F.3d 1185, 1194-96 (D.C. Cir. 2018)."

It simply does not make sense that FERC cannot direct the utilities to remove the incentives that are explicitly identified in a settlement if the utilities no longer qualify for the incentive. There should be no requirement that a party must show that the entire ROE is unjust and unreasonable. Where FERC can distinguish between the base ROE and the RTO Adder, it has full authority to directly remove the RTO Adder while leaving the base ROE intact. FERC makes no effort to explain why this is true for AEP Ohio and AEP Ohio Transmission but not true for ASTI and Duke. FERC's conclusion that it cannot unscramble a settlement rings hollow here where both settlements explicitly and separately identify the base profits and the profit  RTO Adder components of rates charged to consumers.

40

FERC is incorrect in stating that "modifying individual components of settlement would undermine the certainty provided to settling parties and would be inconsistent with the Commission's longstanding policy of promoting settlements." R.49 (Complaint Rehearing Order at P 29), JA___.   FERC cited to *Duke Energy Ohio, Inc.*, 151 FERC ¶ 61,029 at P 14 (2015) and *PJM Interconnection, L.L.C*, 153 FERC ¶ 61,106 at P 3 (2015) for the proposition that approval of a settlement does not constitute approval of, or precedent regarding, any principle or issue in this proceeding.  R.49 (Complaint Rehearing Order at P 30 and n.78), JA___. But these arguments contradict FERC's routine policy of allowing challenges to settlement components that are specifically identified, without having to challenge all elements of the settlement.

FERC's general policy of stating that approval of settlements does not constitute approval of a principle or an issue reflects the black-box nature of most settlements.  *Gulf South Pipeline Co., L.P. v. FERC*, 955 F.3d 1001 (D.C. Cir. 2020) ("*Gulf South*").  In that case, the D.C. Circuit Court found that where a utility entered into a black-box settlement that did not specify the utility's rate of return, FERC reasonably used the utility's last authorized rate of return to determine rates.  *Gulf South*, 955 F.3d at 1014.  The Court explained that:

> In other words, parties to black box settlements agree to rates without identification or attribution of costs or adjustments for any particular component of those rates." *El Paso Nat. Gas Co.,*  132 FERC ¶ 61,139, ¶ 82 (Aug. 17, 2010). Because prices

are determined without specifying the component parts, no new rate of return is submitted to FERC for approval. Yet nothing compels parties to agree to black-box settlements. To the contrary, FERC has repeatedly encouraged parties to discuss rates of return when reaching settlements. *See* Rehearing Order at ¶ 28 ("Given this policy [of setting Section 7 rates based on the most recent approved rate of return], the Commission encourages companies and parties in rate cases to address concerns relating to the rate of return that should be used in calculating initial rates in future certificate proceedings."); *Transcon. Gas Pipe Line Co., LLC*, 156 FERC ¶ 61,022, ¶ 25 (July 7, 2016) (likewise advising parties to "use that opportunity to address issues of concern relating to the rate of return"). Other companies have heeded this advice. *See, e.g., E. Shore Nat. Gas Co.*, 138 FERC ¶ 61,050, ¶ 2 (Jan. 24, 2012) (specifying a rate of return in what was otherwise a black-box settlement).

*Id.*

Here, neither the ATSI nor the Duke settlements were black-box with respect to the RTO Adder.  As FERC acknowledges, both settlements explicitly state that the overall returns included the RTO Adder.  R.39 (Complaint Order at P 65), JA___.  Thus, FERC understood it approved settlements that explicitly included the RTO Adders as a separate rate component.

FERC has an obligation to explain inconsistent rulings.  *Indus. Customers of Northwest Utils. v. Bonneville Power Admin.,* 767 F.3d 912, 931 (9th Cir. 2014) ("Unexplained [agency] inconsistency is . . . a reason for holding an interpretation to be an arbitrary and capricious change from agency practice under the Administrative Procedure Act." quoting *Nat'l Cable & Telecomms. Ass'n v. Brand*

42

*X Internet Servs.*, 545 U.S. 967, 981, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2005).

FERC's failure to direct ATSI and Duke to remove the RTO Adder from their

Ohio transmission rates cannot be considered reasoned in light of the inconsistency

in its rulings regarding the AEP affiliates in the Complaint Order.  FERC's

decision not to direct ATSI and Duke to remove the RTO Adder from rates

charged to Ohio consumers is an unexplained departure from prior precedent.  That

is contrary to *Williams Gas Processing,* 475 F.3d 319 at 326, citing  *Brusco Tug &*

*Barge*, 247 F.3d 273 at 278.  The Court should remand the orders to FERC with

directives to require ATSI and Duke to remove the incentives from their rates.

> 4. <u>FERC's failure to provide relief for ATSI's and Duke's Ohio consumers
> is an unexplained departure from prior decisions granting single-issue
> complaint cases.</u>

The Court cannot consider as reasoned FERC's attempt to distinguish its

rulings relating to ATSI and Duke from its rulings relating to DP&L, AEP Ohio

and AEP Transmission.  FERC's ruling in this case that OCC was obliged to

demonstrate that ATSI's and Duke's overall rates were unjust and unreasonable is

inconsistent with its rulings in other cases granting challenges to rate components

that can be separately identified in the settlement.  FERC allows single-issue

challenges to base ROE when it is a separately stated value in the settlement.

There is no reason it cannot also allow single-issue challenges to one specific

component of the overall ROE, *i.e.,* the RTO Adder, when it too is separately

stated in a settlement.  R.43 (OCC Answer to AEP Rehearing at 9-10), JA___.

The fact that ATSI and Duke's current transmission rates were set by

settlement does not mean the settlement rates charged to consumers can never be

challenged.  *NRG Power Mktg., LLC v. Me. PUC*, 558 U.S. 165 (2010) . ("*NRG*

*Power Mktg.*").  In allowing challenges to settlements, the United States Supreme

Court stated that:

> The FPA authorizes "[a]ny person, electric utility, State,
> municipality, or State commission" to complain.  16 U.S.C. §
> 825e (emphasis added). FERC regulations similarly permit
> "[a]ny person [to] file a complaint seeking Commission action."
> 18 CFR 385.206(a) (2009) (emphasis added).

*NRG Power Mktg.* at 176, n.5.  That is especially true where, as here, those rates

contain a component FERC later found unjust and unreasonable. The fact that

ATSI and Duke received authority for their RTO Adders in a settlement of their

base ROE does not justify allowing them to retain an incentive in their rates for

which they are ineligible.

FERC has on many occasions set for hearing and/or settlement procedures a

complaint challenging only the ROE in a transmission formula rate.  R.41 (OCC

Rehearing at 12), JA___; R.43 (OCC Answer to AEP Rehearing at 9-10), JA___,

citing *North Carolina Electric Membership Corp., et al. v. Duke Energy Carolinas,*

LLC (Docket No. EL16-29-000) and *North Carolina Electric Membership Corp.,*

*et al. v. Duke Energy Progress, LLC* (Docket No. EL16-30-000), 155 FERC ¶

61,048 (2016) (setting for hearing a single-issue challenge to the ROE in

transmission formula rates that had been set by settlement).  FERC also has set for

hearing single-issue complaints challenging the ROE in wholesale power supply

contracts that had been set by settlement.  *See, e.g.,* R.43 (OCC Answer to AEP

Rehearing at 10 and n.29), JA__ citing *Golden Spread Elec. Coop., Inc. v.*

*Southwestern Pub. Serv. Co*., 150 FERC ¶ 61,052 (2015).

FERC's ruling also is inconsistent with the D.C. Circuit Court of Appeals'

ruling in *Gulf South*, in which the Court acknowledged the many cases in which

FERC attempts to get settling parties to specifically set out the ROE in a

settlement.  *Gulf South*, 955 F.3d at 1014.  While the Court in *Gulf South* did not

say the purpose for specifying ROE was to permit future single-issue complaint

challenges, that is certainly how FERC has proceeded when allowing single-issue

complaint challenges to ROE when it is specified in the prior settlement.

It is completely arbitrary and capricious for FERC to ignore its precedent.

FERC has granted single-issue complaints challenging the ROE set in a prior

settlement.  FERC should not ignore this precedent when determining whether  one

component of that ROE can be challenged in a single-issue complaint proceeding,

especially where that component – the RTO Adder – also has been specifically set

forth in the settlement.  FERC provided no explanation for why it cannot similarly

allow single-issue complaint cases to eliminate the RTO Adder approved in a prior settlement from a utility's transmission rates charged to consumers when the settlement similarly distinguishes the RTO Adder from the overall ROE.

Any concerns that a single-issue rate challenge may lead to cost under-recovery by the utility have no applicability in the context of the formula transmission rates used by ATSI and Duke. R.41 (OCC Rehearing at 12), JA___. The utilities' transmission rate formulas allow them to true up rates to actual costs each year, with the exceptions of ROE and depreciation. *See, e.g., Virginia Elec. & Power Co.*, 123 FERC ¶ 61,098 at P 16 (2008) ("These mechanisms allow the utility to recover its costs in a more timely manner while also protecting customers from inflated rates through the true-up process.").

Base ROE and depreciation often are the only stated values that cannot be changed without making an FPA Section 205 filing. *See ,e.g.,* PJM Open Access Transmission Tariff, Attachment H-21B (ATSI Formula Rate Implementation Protocols, section VIII.A setting ROE and depreciation as stated values); and Attachment H-22B (Duke Formula Rate Implementation Protocols, section 1.h setting ROE and depreciation rates as stated values).[4] ATSI's and Duke's formula rates and true-ups ensure that they are timely recovering each year any deviations

---

[4] Available on the PJM website at https://www.pjm.com/directory/merged-tariffs/oatt.pdf.

between estimated and actual costs for almost all elements of their cost of service requirements.  R.41 (OCC Rehearing at 12), JA___.

In fact, AEP Ohio and AEP Ohio Transmission routinely submit single-issue rate filings to allow recovery of increased depreciation rates.  *See, e.g., Duke Energy Ohio, LLC et al.*, Docket No. ER23-1045-000, Letter Order (Mar. 21, 2023) (accepting single-issue depreciation rate change to formula transmission rates);[5] *Am. Elec. Power Serv. Corp., et al.,* Docket No. ER21-735-000, Letter Order (Feb. 16, 2021) (accepting single issue depreciation rate changes to formula transmission rates).[6]

FERC's ruling in this case that it cannot separate the RTO Adder from the base ROE also is inconsistent with its findings in other ATSI proceedings in which it did separate out the base ROE and RTO Adder when examining settlement agreements for purposes of determining a Risk Premium dataset.  R.39 (Complaint Order at P 65) JA___ ("We also recognize . . . that ATSI's affiliates testified in other proceedings that ATSI's base ROE is 9.88%, rather than the 10.38% ROE contained in the ATSI settlement."); *see also* R.41 (OCC Rehearing at 12-13),

---

[5] Available on FERC's e-library website at
https://elibrary.ferc.gov/eLibrary/filedownload?fileid=72A2D897-342D-C3DE-9739-8705DCE00000

[6] Available at FERC's e-library website at
https://elibrary.ferc.gov/eLibrary/filedownload?fileid=020BCB9E-66E2-5005-8110-C31FAFC91712

JA\_\_\_; and R.32 (OCC Answer to AEP's and Duke's Answer and to ATSI's

Motion to Dismiss the Complaint at 9), JA\_\_\_, citing *Pacific Gas and Electric Co*.,

178 FERC ¶ 61,175 (2022) ("*PG&E*").

In *PG&E*, FERC determined the appropriate base ROE for PG&E in part

based on a risk premium approach that includes ATSI in the proxy group.[41]

FERC's order in *PG&E* states that the base ROE used for ATSI is premised on the

ATSI settlement in Docket No. ER15-303.   *PG&E,* 178 FERC ¶ 61,175 at P 217,

n.503 and P 227.   Appendix D to the order reflects that FERC included ATSI's

base ROE of 9.88% for the period January – May 2016, and 10.56% for the period

June – December 2015 in the proxy group used to calculate an appropriate risk

premium ROE for PG&E.  *Id.*, Appendices at D.2.  But the ROEs authorized for

ATSI in the settlement in Docket No. ER15-303 are 10.38% and 11.06%

respectively for those periods. This means that in *PG&E,* FERC adjusted ATSI's

settlement overall ROEs by subtracting 50 basis points to determine the base ROE,

and thus recognized the 50 basis point RTO Adder in ATSI's rates.

FERC also acknowledged that ATSI affiliates testified that they have the 50

basis point RTO Adder in their transmission rates in other proceedings.  R.39

(Complaint Order at P 65, n.132), JA\_\_\_\_, citing *Jersey Cent. Power & Light Co.*,

Docket No. ER20-227-000, Ex. No. JCP-207, at 5 (Oct. 30, 2019); *Jersey Cent.*

*Power & Light Co.*, Docket No. ER17-217-000, Ex. No. JCP-13, at 5 (Oct. 28,

2016); PJM Interconnection, L.L.C., Docket No. ER21-265-000, Ex. KTC-208, at 2 (Oct. 30, 2020) (listing an authorized return for ATSI as 9.88%); *see also* R.36 (Buckeye Power, Inc. Motion for Leave to Answer and Answer to ATSI and AEP Answers at 4-5), JA___ .

There is no logic in FERC's statement that it "found only that, on the record in this proceeding, OCC has not proven that the rates established pursuant to that settlement have become unjust and unreasonable." R.49 (Complaint Rehearing Order at P 30), JA___.  Whether FERC said so explicitly, its decision to not disturb ATSI's and Duke's rates has the effect of leaving an incentive in their rates for which they are ineligible.  This is inconsistent with FERC's rulings that the RTO Adder must be considered separate from the base ROE.  FERC's failure to do so is arbitrary and capricious, and an unexplained departure from precedent.

### III.    FERC's Decision Allowing ATSI and Duke To Retain the RTO Adder Incentive in The Rates They Charge Ohio Consumers is Unduly Discriminatory.

*[Standard of Review:  FERC's orders cannot unduly discriminate against similarly-situated entities.]*

FPA section 205 requires that "no public utility shall, with respect to any transmission or sale subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage . . . ."  16 U.S.C. § 824d.  FPA  section 206 similarly obligates FERC to fix any rate found on complaint or on FERC's own

49

investigation to be unjust, unreasonable, unduly discriminatory or preferential. 16

U.S.C. § 824e.  In *BP Energy Co. v. FERC*, 828 F.3d 959, 968 (D.C. Cir. 16), the

D. C. Circuit Court vacated a finding of no undue discrimination where the

Commission identified differences between two natural-gas companies but failed

to adequately explain why they provide a rational basis for the difference in

treatment. *See also New England Power Gen. Ass'n. v. FERC*, 881 F.3d 202 at 211

(D.C. Circuit 2018).  Here, FERC provided no adequate explanation for the

difference in treatment.

The type of mechanism use to set rates (*i.e.*, through settlement) bears no

nexus to the legal question of whether the utilities are still eligible for the RTO

Adder.  This is especially true where FERC acknowledges that the RTO Adder is

in ATSI's and Duke's Ohio transmission rates and where FERC can separately

determine the value of the incentive.  R.41 (OCC Rehearing at 8-11), JA__.  The

type of procedural forum in which the incentive is granted also bears no nexus to

the question of whether ATSI's and Duke's Ohio transmission rates are still just

and reasonable, given that they contain incentives for which the utilities are not

eligible.  *Id.*  FERC's decision to leave the RTO Adder in the rates of some Ohio

consumers while removing from the rates of other Ohio consumers is arbitrary and

capricious, fails the test for reasoned decision-making, and is unduly

discriminatory against Ohio consumers served by ATSI and Duke.  R.41 (OCC

Rehearing at 8), JA___.

The critical factors in this proceeding for eligibility for continued receipt of

the RTO Adder are (a) whether each of these Ohio utilities voluntarily joined an

RTO; and (b) whether their rates include an RTO Adder.  FERC applied this ruling

inconsistently to ATSI and Duke vis-à-vis AEP Ohio and AEP Ohio Transmission.

OCC satisfied the first prong of this inquiry with respect to ATSI and Duke. All

Ohio transmission utilities are mandated by Ohio law to participate in an RTO if

they want to be eligible to provide transmission service in the state.  R.1

(Complaint at 8-10), JA___.  Therefore, no Ohio transmission utility is eligible for

the RTO Adder.  OCC also satisfied the second prong of the test, *i.e.,* the

requirement that the RTO Adder is included in rates.   R.39 (Complaint Order at P

65), JA__.

DP&L, the AEP affiliates, ATSI and Duke are similarly-situated for

purposes of the important elements of the complaint.  It is unduly discriminatory

against Duke's and ATSI's Ohio consumers, contrary to FPA Sections 205 and

206, to not require removal of the RTO Adder from their rates when the Ohio

consumers of DP&L, Ohio Power and AEP Ohio Transmission are not required to

pay the RTO Adder.

FERC's reasoning for the disparate treatment that ATSI's and Duke's rates were set by settlement does not provide a rational basis for the difference in treatment.  R.41 (OCC Rehearing at 14-17), JA__; R.49 (Complaint Rehearing Order PP 33-34), JA___.  FERC routinely allows challenges to ROEs stemming from settlements in complaint cases.

## IV.   CONCLUSION AND PRAYER FOR RELIEF

The Court should remand FERC's decision to leave the RTO Adder in the rates of ATSI's and Duke's Ohio transmission customers with directions that FERC order the utilities to remove the RTO Adder from their Ohio transmission rates and provide refunds to their Ohio consumers back to February 24, 2022.

Respectfully submitted,

*/s/ Denise C. Goulet*
Denise C. Goulet
Wendy Simon Pearson
McCarter & English, LLP
1301 K Street, NW, Suite 1000 West
Washington, DC 20005
(202) 753-3400
dgoulet@mccarter.com
wsimonpearson@mccarter.com

Special Counsel to the Ohio Office of the Attorney General for the Office of the Ohio Consumers' Counsel

Denise C. Goulet is Admitted to the United States Court of Appeals for the Sixth Circuit
D.C. Bar # 496559

BRUCE J. WESTON
CONSUMERS' COUNSEL

Angela O'Brien, Deputy Consumers' Counsel
**Office of the Ohio Consumers' Counsel** 65
East State Street, 7th Floor
Columbus, Ohio 43215
(614) 466-8574 – Telephone
angela.obrien@occ.ohio.gov

Dated: July 31, 2023

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.      This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure "(Fed. R. App. P.") 32(a)(7)(B) because it contains 11,791 words (of the 13,000 words allotted Petitioners in this case) as determined by the word-counting feature of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. Rule 32(f) and Sixth Circuit Rule 32(b)(1).

2.      This brief complies with the typeface requirements of Fed. R. App. P. Rule 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

*/s/ Denise C. Goulet*
Denise C. Goulet
McCarter & English, LLP
1301 K Street, N.W.
Suite 1000 West
Washington, D.C. 20005
(202) 753-3400
dgoulet@mccarter.com

Special Counsel to the Ohio Office of the Attorney General for the Office of the Ohio Consumers' Counsel

Dated:  July 31, 2023

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing will be made electronically via CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated this 31st day of July, 2023

*/s/Denise C. Goulet*

 Denise C. Goulet
McCarter & English, LLP
1301 K Street, N.W.
Suite 1000 West
Washington, D.C. 20005
(202) 753-3400
dgoulet@mccarter.com

Special Counsel to the Ohio Office of the Attorney General for the Office of the Ohio Consumers' Counsel

**NOS. 23-3324 and 23-3417**
**(Consolidated with Nos. 21-4072, 22-3351, 23-3196 and 23-3366)**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

—————————

AMERICAN ELECTRIC POWER SERVICE CORPORATION, ET AL.,

v.

FEDERAL ENERGY REGULATORY COMMISSION

—————————

ON PETITION FOR REVIEW OF ORDERS OF
THE FEDERAL ENERGY REGULATORY COMMISSION

—————————

OPENING BRIEF OF PETITIONER
OFFICE OF THE OHIO CONSUMERS' COUNSEL
IN NOS. 23-3324 AND 23-3417

—————————

ADDENDUM

—————————

# ADDENDUM

**Statutes**

1. Administrative Procedure Act

   a. Scope of Review, 5 U.S.C.§ 706 . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

2. Federal Power Act

   a. Section 3, Definitions, 16 U.S.C. § 796 (29) . . . . . . . . . . . . . . . . . .  2

   b. Section 201, Declaration of Policy, 16 U.S.C. § 824  . . . . . . . . . . .  3

   c. Section 205, Rates and Charges, Schedules
      16 U.S.C. § 824d . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . .  6

   d. Section 206, Power of Commission To Fix Rates and Charges,
      16 U.S.C. § 824e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . .  10

   e. Section 219, Transmission Infrastructure Investment,
      16 U.S.C. § 824s . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

   f. Section 306, Complaints, 16 U.S.C. §
      825e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

   g. Section 313, Review of Orders, 16 U.S.C. §
      825l . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

3. Natural Gas Act

   a. Section 19, Rehearing and Review, 15 U.S.C. § 717r . . . . . . . . . . 19

4. Ohio Revised Code

   a. §4911, Consumers' Counsel – Powers and Duties . . . . . . . . . . . . . 22

   b. §4928.12, Qualifying Transmission Entities . . . . . . . . . . . . . . . . . . 23

**FERC Regulations**

1. 18 C.F.R. § 35.35e, Transmission Infrastructure Investment  . . . . . . . . . 26

2. 18 C.F.R. §385.206, Complaint Filings . . . . . . . . . . . . . . . . . . . . . . . . . . 27

3. 18 C.F.R. § 602, Submission of Settlement Offers . . . . . . . . . . . . . . . . . . . . 31

**Designation of Relevant FERC Documents for Joint Appendix** . . . . . . . . . . . 36

# Administrative Procedure Act, 5 U.S.C. § 706(2)(A)

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

**(1)**  compel agency action unlawfully withheld or unreasonably delayed; and

**(2)**  hold unlawful and set aside agency action, findings, and conclusions found to be—

**(A)**  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

**(B)**  contrary to constitutional right, power, privilege, or immunity;

**(C)**  in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

**(D)**  without observance of procedure required by law;

**(E)**  unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

**(F)**  unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

# FEDERAL POWER ACT, SECTION 3, 16 U.S.C. § 796(29)
## DEFINITIONS

**(29)** TRANSMISSION ORGANIZATION.

The term "Transmission Organization" means a Regional Transmission Organization, Independent System Operator, independent transmission provider, or other transmission organization finally approved by the Commission for the operation of transmission facilities.

# Federal Power Act Section 201, 16 U.S.C. § 824

**(a)  FEDERAL REGULATION OF TRANSMISSION AND SALE OF ELECTRIC ENERGY**

It is declared that the business of transmitting and selling electric energy for ultimate distribution to the public is affected with a public interest, and that Federal regulation of matters relating to generation to the extent provided in this subchapter and subchapter III of this chapter and of that part of such business which consists of the transmission of electric energy in interstate commerce and the sale of such energy at wholesale in interstate commerce is necessary in the public interest, such Federal regulation, however, to extend only to those matters which are not subject to regulation by the States.

**(b)  USE OR SALE OF ELECTRIC ENERGY IN INTERSTATE COMMERCE**

**(1)**  The provisions of this subchapter shall apply to the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce, but except as provided in paragraph (2) shall not apply to any other sale of electric energy or deprive a State or State commission of its lawful authority now exercised over the exportation of hydroelectric energy which is transmitted across a State line. The Commission shall have jurisdiction over all facilities for such transmission or sale of electric energy, but shall not have jurisdiction, except as specifically provided in this subchapter and subchapter III of this chapter, over facilities used for the generation of electric energy or over facilities used in local distribution or only for the transmission of electric energy in intrastate commerce, or over facilities for the transmission of electric energy consumed wholly by the transmitter.

**(2)**  Notwithstanding subsection (f), the provisions of sections 824b(a)(2), 824e(e), 824i, 824j, 824j–1, 824k, 824o, 824o–1, 824p, 824q, 824r, 824s, 824t, 824u, and 824v of this title shall apply to the entities described in such provisions, and such entities shall be subject to the jurisdiction of the Commission for purposes of carrying out such provisions and for purposes of applying the enforcement authorities of this chapter with respect to such provisions. Compliance with any order or rule of the Commission under the provisions of section 824b(a)(2), 824e(e), 824i, 824j, 824j–1, 824k, 824o, 824o–1, 824p, 824q, 824r, 824s, 824t, 824u, or 824v of this title, shall not make an electric utility or other entity subject to the jurisdiction of the

Commission for any purposes other than the purposes specified in the preceding sentence.

**(c)** **ELECTRIC ENERGY IN INTERSTATE COMMERCE**

For the purpose of this subchapter, electric energy shall be held to be transmitted in interstate commerce if transmitted from a State and consumed at any point outside thereof; but only insofar as such transmission takes place within the United States.

**(d)** **"SALE OF ELECTRIC ENERGY AT WHOLESALE" DEFINED**

The term "sale of electric energy at wholesale" when used in this subchapter, means a sale of electric energy to any person for resale.

**(e)** **"PUBLIC UTILITY" DEFINED**

The term "public utility" when used in this subchapter and subchapter III of this chapter means any person who owns or operates facilities subject to the jurisdiction of the Commission under this subchapter (other than facilities subject to such jurisdiction solely by reason of section 824e(e), 824e(f),[1] 824i, 824j, 824j–1, 824k, 824o, 824o–1, 824p, 824q, 824r, 824s, 824t, 824u, or 824v of this title).

**(f)** **UNITED STATES, STATE, POLITICAL SUBDIVISION OF A STATE, OR AGENCY OR INSTRUMENTALITY THEREOF EXEMPT**

No provision in this subchapter shall apply to, or be deemed to include, the United States, a State or any political subdivision of a State, an electric cooperative that receives financing under the Rural Electrification Act of 1936 (7 U.S.C. 901 et seq.) or that sells less than 4,000,000 megawatt hours of electricity per year, or any agency, authority, or instrumentality of any one or more of the foregoing, or any corporation which is wholly owned, directly or indirectly, by any one or more of the foregoing, or any officer, agent, or employee of any of the foregoing acting as such in the course of his official duty, unless such provision makes specific reference thereto.

**(g)** **BOOKS AND RECORDS**

**(1)** Upon written order of a State commission, a State commission may examine the books, accounts, memoranda, contracts, and records of—

**(A)** an electric utility company subject to its regulatory authority under State law,

**(B)** any exempt wholesale generator selling energy at wholesale to such electric utility, and

**(C)** any electric utility company, or holding company thereof, which is an associate company or affiliate of an exempt wholesale generator which sells electric energy to an electric utility company referred to in subparagraph (A),wherever located, if such examination is required for the effective discharge of the State commission's regulatory responsibilities affecting the provision of electric service.

**(2)** Where a State commission issues an order pursuant to paragraph (1), the State commission shall not publicly disclose trade secrets or sensitive commercial information.

**(3)** Any United States district court located in the State in which the State commission referred to in paragraph (1) is located shall have jurisdiction to enforce compliance with this subsection.

**(4)** Nothing in this section shall—

**(A)** preempt applicable State law concerning the provision of records and other information; or

**(B)** in any way limit rights to obtain records and other information under Federal law, contracts, or otherwise.

**(5)** As used in this subsection the terms "affiliate", "associate company", "electric utility company", "holding company", "subsidiary company", and "exempt wholesale generator" shall have the same meaning as when used in the Public Utility Holding Company Act of 2005 [42 U.S.C. 16451 et seq.].

# Federal Power Act, Section 205, 16 U.S.C. § 824d

**(a) JUST AND REASONABLE RATES**

All rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges shall be just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful.

**(b) PREFERENCE OR ADVANTAGE UNLAWFUL**

No public utility shall, with respect to any transmission or sale subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service.

**(c) SCHEDULES**

Under such rules and regulations as the Commission may prescribe, every public utility shall file with the Commission, within such time and in such form as the Commission may designate, and shall keep open in convenient form and place for public inspection schedules showing all rates and charges for any transmission or sale subject to the jurisdiction of the Commission, and the classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services.

**(d) NOTICE REQUIRED FOR RATE CHANGES**

Unless the Commission otherwise orders, no change shall be made by any public utility in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after sixty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the sixty days' notice herein

provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

**(e) SUSPENSION OF NEW RATES; HEARINGS; FIVE-MONTH PERIOD**

Whenever any such new schedule is filed the Commission shall have authority, either upon complaint or upon its own initiative without complaint, at once, and, if it so orders, without answer or formal pleading by the public utility, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the public utility affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect; and after full hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made at the expiration of such five months, the proposed change of rate, charge, classification, or service shall go into effect at the end of such period, but in case of a proposed increased rate or charge, the Commission may by order require the interested public utility or public utilities to keep accurate account in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts are paid, and upon completion of the hearing and decision may by further order require such public utility or public utilities to refund, with interest, to the persons in whose behalf such amounts were paid, such portion of such increased rates or charges as by its decision shall be found not justified. At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the public utility, and the Commission shall give to the hearing and decision of such questions preference over other questions pending before it and decide the same as speedily as possible.

**(f) REVIEW OF AUTOMATIC ADJUSTMENT CLAUSES AND PUBLIC UTILITY PRACTICES; ACTION BY COMMISSION; "AUTOMATIC ADJUSTMENT CLAUSE" DEFINED**

**(1)**    Not later than 2 years after November 9, 1978, and not less often than every 4 years thereafter, the Commission shall make a thorough

review of automatic adjustment clauses in public utility rate schedules to examine—

 **(A)** whether or not each such clause effectively provides incentives for efficient use of resources (including economical purchase and use of fuel and electric energy), and

 **(B)** whether any such clause reflects any costs other than costs which are—

  **(i)** subject to periodic fluctuations and

  **(ii)** not susceptible to precise determinations in rate cases prior to the time such costs are incurred.

Such review may take place in individual rate proceedings or in generic or other separate proceedings applicable to one or more utilities.

**(2)** Not less frequently than every 2 years, in rate proceedings or in generic or other separate proceedings, the Commission shall review, with respect to each public utility, practices under any automatic adjustment clauses of such utility to insure efficient use of resources (including economical purchase and use of fuel and electric energy) under such clauses.

**(3)** The Commission may, on its own motion or upon complaint, after an opportunity for an evidentiary hearing, order a public utility to—

 **(A)** modify the terms and provisions of any automatic adjustment clause, or

 **(B)** cease any practice in connection with the clause, if such clause or practice does not result in the economical purchase and use of fuel, electric energy, or other items, the cost of which is included in any rate schedule under an automatic adjustment clause.

**(4)** As used in this subsection, the term "automatic adjustment clause" means a provision of a rate schedule which provides for increases or decreases (or both), without prior hearing, in rates reflecting increases or decreases (or both) in costs incurred by an electric utility. Such term does not include any rate which takes effect subject to refund and subject to a later determination of the appropriate amount of such rate.

**(g)** **INACTION OF COMMISSIONERS**

> **(1)** **IN GENERAL**
>
>> With respect to a change described in subsection (d), if the Commission permits the 60-day period established therein to expire without issuing an order accepting or denying the change because the Commissioners are divided two against two as to the lawfulness of the change, as a result of vacancy, incapacity, or recusal on the Commission, or if the Commission lacks a quorum—
>>
>>> **(A)** the failure to issue an order accepting or denying the change by the Commission shall be considered to be an order issued by the Commission accepting the change for purposes of section 825l(a) of this title; and
>>>
>>> **(B)** each Commissioner shall add to the record of the Commission a written statement explaining the views of the Commissioner with respect to the change.
>
> **(2)** **APPEAL**
>
>> If, pursuant to this subsection, a person seeks a rehearing under section 825l(a) of this title, and the Commission fails to act on the merits of the rehearing request by the date that is 30 days after the date of the rehearing request because the Commissioners are divided two against two, as a result of vacancy, incapacity, or recusal on the Commission, or if the Commission lacks a quorum, such person may appeal under section 825l(b) of this title.

# Federal Power Act Section 206, 16 U.S.C. § 824e

**(a)**    **UNJUST OR PREFERENTIAL RATES, ETC.; STATEMENT OF REASONS FOR CHANGES; HEARING; SPECIFICATION OF ISSUES**

Whenever the Commission, after a hearing held upon its own motion or upon complaint, shall find that any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order. Any complaint or motion of the Commission to initiate a proceeding under this section shall state the change or changes to be made in the rate, charge, classification, rule, regulation, practice, or contract then in force, and the reasons for any proposed change or changes therein. If, after review of any motion or complaint and answer, the Commission shall decide to hold a hearing, it shall fix by order the time and place of such hearing and shall specify the issues to be adjudicated.

**(b)**    **REFUND EFFECTIVE DATE; PREFERENTIAL PROCEEDINGS; STATEMENT OF REASONS FOR DELAY; BURDEN OF PROOF; SCOPE OF REFUND ORDER; REFUND ORDERS IN CASES OF DILATORY BEHAVIOR; INTEREST**

Whenever the Commission institutes a proceeding under this section, the Commission shall establish a refund effective date. In the case of a proceeding instituted on complaint, the refund effective date shall not be earlier than the date of the filing of such complaint nor later than 5 months after the filing of such complaint. In the case of a proceeding instituted by the Commission on its own motion, the refund effective date shall not be earlier than the date of the publication by the Commission of notice of its intention to initiate such proceeding nor later than 5 months after the publication date. Upon institution of a proceeding under this section, the Commission shall give to the decision of such proceeding the same preference as provided under section 824d of this title and otherwise act as speedily as possible. If no final decision is rendered by the conclusion of the 180-day period commencing upon initiation of a proceeding pursuant to this section, the Commission shall state the reasons why it has failed to do so and shall state its best estimate as to when it reasonably expects to make such decision. In any proceeding under this section, the burden of proof to show that any rate, charge, classification, rule, regulation, practice, or contract is unjust, unreasonable, unduly discriminatory, or preferential shall be upon the Commission or the complainant. At the conclusion of any proceeding under

this section, the Commission may order refunds of any amounts paid, for the period subsequent to the refund effective date through a date fifteen months after such refund effective date, in excess of those which would have been paid under the just and reasonable rate, charge, classification, rule, regulation, practice, or contract which the Commission orders to be thereafter observed and in force: Provided, That if the proceeding is not concluded within fifteen months after the refund effective date and if the Commission determines at the conclusion of the proceeding that the proceeding was not resolved within the fifteen-month period primarily because of dilatory behavior by the public utility, the Commission may order refunds of any or all amounts paid for the period subsequent to the refund effective date and prior to the conclusion of the proceeding. The refunds shall be made, with interest, to those persons who have paid those rates or charges which are the subject of the proceeding.

**(c)    REFUND CONSIDERATIONS; SHIFTING COSTS; REDUCTION IN REVENUES; "ELECTRIC UTILITY COMPANIES" AND "REGISTERED HOLDING COMPANY" DEFINED**

Notwithstanding subsection (b), in a proceeding commenced under this section involving two or more electric utility companies of a registered holding company, refunds which might otherwise be payable under subsection (b) shall not be ordered to the extent that such refunds would result from any portion of a Commission order that (1) requires a decrease in system production or transmission costs to be paid by one or more of such electric companies; and (2) is based upon a determination that the amount of such decrease should be paid through an increase in the costs to be paid by other electric utility companies of such registered holding company: Provided, That refunds, in whole or in part, may be ordered by the Commission if it determines that the registered holding company would not experience any reduction in revenues which results from an inability of an electric utility company of the holding company to recover such increase in costs for the period between the refund effective date and the effective date of the Commission's order. For purposes of this subsection, the terms "electric utility companies" and "registered holding company" shall have the same meanings as provided in the Public Utility Holding Company Act of 1935, as amended.

**(d)    INVESTIGATION OF COSTS**

The Commission upon its own motion, or upon the request of any State commission whenever it can do so without prejudice to the efficient and proper conduct of its affairs, may investigate and determine the cost of the production or transmission of electric energy by means of facilities under the jurisdiction of the Commission in

cases where the Commission has no authority to establish a rate governing the sale of such energy.

**(e)**   **SHORT-TERM SALES**

**(1)**  In this subsection:

> **(A)**   The term "short-term sale" means an agreement for the sale of electric energy at wholesale in interstate commerce that is for a period of 31 days or less (excluding monthly contracts subject to automatic renewal).

> **(B)**   The term "applicable Commission rule" means a Commission rule applicable to sales at wholesale by public utilities that the Commission determines after notice and comment should also be applicable to entities subject to this subsection.

**(2)**  If an entity described in section 824(f) of this title voluntarily makes a short-term sale of electric energy through an organized market in which the rates for the sale are established by Commission-approved tariff (rather than by contract) and the sale violates the terms of the tariff or applicable Commission rules in effect at the time of the sale, the entity shall be subject to the refund authority of the Commission under this section with respect to the violation.

**(3)** This section shall not apply to—

> **(A)**   any entity that sells in total (including affiliates of the entity) less than 8,000,000 megawatt hours of electricity per year; or

> **(B)**   an electric cooperative.

**(4)**

> **(A)**   The Commission shall have refund authority under paragraph (2) with respect to a voluntary short term sale of electric energy by the Bonneville Power Administration only if the sale is at an unjust and unreasonable rate.

> **(B)**   The Commission may order a refund under subparagraph (A) only for short-term sales made by the Bonneville Power Administration at rates that are higher than the highest just and reasonable rate charged by any other entity for a short-term sale of electric energy in the same

geographic market for the same, or most nearly comparable, period as the sale by the Bonneville Power Administration.

**(C)** In the case of any Federal power marketing agency or the Tennessee Valley Authority, the Commission shall not assert or exercise any regulatory authority or power under paragraph (2) other than the ordering of refunds to achieve a just and reasonable rate.

# FEDERAL POWER ACT, SECTION 219, 16 U.S.C. § 824s
# TRANSMISSION INFRASTRUCTURE INVESTMENT

**(a)** RULEMAKING REQUIREMENT

Not later than 1 year after August 8, 2005, the Commission shall establish, by rule, incentive-based (including performance-based) rate treatments for the transmission of electric energy in interstate commerce by public utilities for the purpose of benefitting consumers by ensuring reliability and reducing the cost of delivered power by reducing transmission congestion.

**(b)** CONTENTS  The rule shall—

**(1)** promote reliable and economically efficient transmission and generation of electricity by promoting capital investment in the enlargement, improvement, maintenance, and operation of all facilities for the transmission of electric energy in interstate commerce, regardless of the ownership of the facilities;

**(2)** provide a return on equity that attracts new investment in transmission facilities (including related transmission technologies);

**(3)** encourage deployment of transmission technologies and other measures to increase the capacity and efficiency of existing transmission facilities and improve the operation of the facilities; and

**(4)** allow recovery of—

**(A)** all prudently incurred costs necessary to comply with mandatory reliability standards issued pursuant to section 824o of this title; and

**(B)** all prudently incurred costs related to transmission infrastructure development pursuant to section 824p of this title.

**(c)** INCENTIVES

In the rule issued under this section, the Commission shall, to the extent within its jurisdiction, provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization. The Commission shall ensure that any costs recoverable pursuant to this subsection may be recovered by such utility through the transmission rates charged by such utility or through the transmission rates

charged by the Transmission Organization that provides transmission service to such utility.

    **(d)** JUST AND REASONABLE RATES

All rates approved under the rules adopted pursuant to this section, including any revisions to the rules, are subject to the requirements of sections 824d and 824e of this title that all rates, charges, terms, and conditions be just and reasonable and not unduly discriminatory or preferential.

# FEDERAL POWER ACT, SECTION 306, 16 U.S.C. § 825e
## COMPLAINTS

Any person, electric utility, State, municipality, or State commission complaining of anything done or omitted to be done by any licensee, transmitting utility, or public utility in contravention of the provisions of this chapter may apply to the Commission by petition which shall briefly state the facts, whereupon a statement of the complaint thus made shall be forwarded by the Commission to such licensee, transmitting utility, or public utility, who shall be called upon to satisfy the complaint or to answer the same in writing within a reasonable time to be specified by the Commission. If such licensee, transmitting utility, or public utility shall not satisfy the complaint within the time specified or there shall appear to be any reasonable ground for investigating such complaint, it shall be the duty of the Commission to investigate the matters complained of in such manner and by such means as it shall find proper.

# Federal Power Act Section 313, 16 U.S.C. § 825l

**(a)**    APPLICATION FOR REHEARING; TIME PERIODS; MODIFICATION OF ORDER

Any person, electric utility, State, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person, electric utility, State, municipality, or State commission is a party may apply for a rehearing within thirty days after the issuance of such order. The application for rehearing shall set forth specifically the ground or grounds upon which such application is based. Upon such application the Commission shall have power to grant or deny rehearing or to abrogate or modify its order without further hearing. Unless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied. No proceeding to review any order of the Commission shall be brought by any entity unless such entity shall have made application to the Commission for a rehearing thereon. Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b), the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.

**(b)**    JUDICIAL REVIEW

Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States court of appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall forthwith be transmitted by the clerk of the court to any member of the Commission and thereupon the Commission shall file with the court the record upon which the order complained of was entered, as provided in section 2112 of title 28. Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do. The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction

of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts by reason of the additional evidence so taken, and it shall file with the court such modified or new findings which, if supported by substantial evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of the original order. The judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of title 28.

## (c)    STAY OF COMMISSION'S ORDER

The filing of an application for rehearing under subsection (a) shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order. The commencement of proceedings under subsection (b) of this section shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.

# NATURAL GAS ACT, SECTION 19, 15 U.S.C. § 717r
## REHEARING AND REVIEW

### (a) APPLICATION FOR REHEARING; TIME

Any person, State, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this chapter to which
such person, State, municipality, or State commission is a party may apply for a rehearing within thirty days after the issuance of such order. The application for rehearing shall set forth specifically the ground or grounds upon which such application is based. Upon such application the Commission shall have power to grant or deny rehearing or to abrogate or modify its order without further hearing. Unless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied. No proceeding to review any order of the Commission shall be brought by
any person unless such person shall have made application to the Commission for a rehearing thereon. Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b), the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.

### (b) REVIEW OF COMMISSION ORDER

Any party to a proceeding under this chapter aggrieved by an order issued by
the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall forthwith be transmitted by the clerk of the court to any member of the Commission and thereupon the Commission shall file with the court the record upon which the order complained of was entered, as provided in section 2112 of title 28. Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do. The

finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts by reason of the additional evidence so taken, and it shall file with the court such modified or new findings, which is supported by substantial evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of the original order. The judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of title 28.

## (c) STAY OF COMMISSION ORDER

The filing of an application for rehearing under subsection (a) shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order. The commencement of proceedings under subsection (b) of this section shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.

## (d) JUDICIAL REVIEW

### (1) IN GENERAL

The United States Court of Appeals for the circuit in which a facility subject to section 717b of this title or section 717f of this title is proposed to be constructed, expanded, or operated shall have original and exclusive jurisdiction over any civil action for the review of an order or action of a Federal agency (other than the Commission) or State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit, license, concurrence, or approval (hereinafter collectively referred to as "permit") required under Federal law, other than the Coastal Zone Management Act of 1972 (16 U.S.C. 1451 et seq.).

### (2) AGENCY DELAY

The United States Court of Appeals for the District of Columbia shall have original and exclusive jurisdiction over any civil action for the review of an alleged failure to act by a Federal agency (other than the Commission) or State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit required under Federal law, other than the Coastal Zone Management Act of 1972 (16 U.S.C. 1451 et seq.), for a facility subject to section 717b of this title or section 717f of this title. The failure of an agency to take action on a permit required under Federal law, other than the Coastal Zone Management Act of 1972, in accordance with the Commission schedule established pursuant to section 717n(c) of this title shall be considered inconsistent with Federal law for the purposes of paragraph (3).

### (3) COURT ACTION

If the Court finds that such order or action is inconsistent with the Federal law governing such permit and would prevent the construction, expansion, or operation of the facility subject to section 717b of this title or section 717f of this title, the Court shall remand the proceeding to the agency to take appropriate action consistent with the order of the Court. If the Court remands the order or action to the Federal or State agency, the Court shall set a reasonable schedule and deadline for the agency to act on remand.

### (4) COMMISSION ACTION

For any action described in this subsection, the Commission shall file with the Court the consolidated record of such order or action to which the appeal hereunder relates.

### (5) EXPEDITED REVIEW

The Court shall set any action brought under this subsection for expedited consideration.

# OHIO REVISED CODE § 4911.02
## CONSUMERS' COUNSEL – POWERS AND DUTIES

(A) The consumers' counsel shall be appointed by the consumers' counsel governing board, and shall hold office at the pleasure of the board.

(B)(1) The counsel may sue or be sued and has the powers and duties granted the counsel under this chapter, and all necessary powers to carry out the purposes of this chapter.

(2) Without limitation because of enumeration, the counsel:

(a) Shall have all the rights and powers of any party in interest appearing before the public utilities commission regarding examination and cross-examination of witnesses, presentation of evidence, and other matters;

(b) May take appropriate action with respect to residential consumer complaints concerning quality of service, service charges, and the operation of the public utilities commission;

(c) May institute, intervene in, or otherwise participate in proceedings in both state and federal courts and administrative agencies on behalf of the residential consumers concerning review of decisions rendered by, or failure to act by, the public utilities commission;

(d) May conduct long range studies concerning various topics relevant to the rates charged to residential consumers.

(C) The counsel shall follow the policies of the state as set forth in Chapter 4929. of the Revised Code that involve supporting retail natural gas competition.

# OHIO REVISED CODE § 4928.12
# QUALIFYING TRANSMISSION ENTITIES

(A) Except as otherwise provided in sections 4928.31 to 4928.40 of the Revised Code, no entity shall own or control transmission facilities as defined under federal law and located in this state on or after the starting date of competitive retail electric service unless that entity is a member of, and transfers control of those facilities to, one or more qualifying transmission entities, as described in division (B) of this section, that are operational.

(B) An entity that owns or controls transmission facilities located in this state complies with division (A) of this section if each transmission entity of which it is a member meets all of the following specifications:

(1) The transmission entity is approved by the federal energy regulatory commission.

(2) The transmission entity effects separate control of transmission facilities from control of generation facilities.

(3) The transmission entity implements, to the extent reasonably possible, policies and procedures designed to minimize pancaked transmission rates within this state.

(4) The transmission entity improves service reliability within this state.

(5) The transmission entity achieves the objectives of an open and competitive electric generation marketplace, elimination of barriers to market entry, and preclusion of control of bottleneck electric transmission facilities in the provision of retail electric service.

(6) The transmission entity is of sufficient scope or otherwise operates to substantially increase economical supply options for consumers.

(7) The governance structure or control of the transmission entity is independent of the users of the transmission facilities, and no member of its board of directors has an affiliation, with such a user or with an affiliate of a user during the member's tenure on the board, such as to unduly affect the transmission entity's performance. For the purpose of division (B)(7) of this

section, a "user" is any entity or affiliate of that entity that buys or sells electric energy in the transmission entity's region or in a neighboring region.

(8) The transmission entity operates under policies that promote positive performance designed to satisfy the electricity requirements of customers.

(9) The transmission entity is capable of maintaining real-time reliability of the electric transmission system, ensuring comparable and nondiscriminatory transmission access and necessary services, minimizing system congestion, and further addressing real or potential transmission constraints.

(C) To the extent that a transmission entity under division (A) of this section is authorized to build transmission facilities, that transmission entity has the powers provided in and is subject to sections 1723.01 to 1723.08 of the Revised Code.

(D) For the purpose of forming or participating in a regional regulatory oversight body or mechanism developed for any transmission entity under division (A) of this section that is of regional scope and operates within this state:

(1) The commission shall make joint investigations, hold joint hearings, within or outside this state, and issue joint or concurrent orders in conjunction or concurrence with any official or agency of any state or of the United States, whether in the holding of those investigations or hearings, or in the making of those orders, the commission is functioning under agreements or compacts between states, under the concurrent power of states to regulate interstate commerce, as an agency of the United States, or otherwise.

(2) The commission shall negotiate and enter into agreements or compacts with agencies of other states for cooperative regulatory efforts and for the enforcement of the respective state laws regarding the transmission entity.

(E) If a qualifying transmission entity is not operational as contemplated in division (A) of this section, division (A)(13) of section 4928.34 of the Revised Code, or division (G) of section 4928.35 of the Revised Code, the commission by rule or order shall take such measures or impose such requirements on all for-profit entities that own or control electric

transmission facilities located in this state as the commission determines necessary and proper to achieve independent, nondiscriminatory operation of, and separate ownership and control of, such electric transmission facilities on or after the starting date of competitive retail electric service.

## FERC REGULATIONS, SECTION 35.35(e), 18 C.F.R. § 35.35(e)
## TRANSMISSION INFRASTRUCTURE INVESTMENT

(e) *Incentives for joining a Transmission Organization.* The Commission will authorize an incentive-based rate treatment, as discussed in this paragraph (e), for public utilities that join a Transmission Organization, if the applicant demonstrates that the proposed incentive-based rate treatment is just and reasonable and not unduly discriminatory or preferential. Applicants for the incentive-based rate treatment must make a filing with the Commission under section 205 of the Federal Power Act. For purposes of this paragraph (e), an incentive-based rate treatment means a return on equity that is higher than the return on equity the Commission might otherwise allow if the public utility did not join a Transmission Organization. The Commission will also permit transmitting utilities or electric utilities that join a Transmission Organization the ability to recover prudently incurred costs associated with joining the Transmission Organization, either through transmission rates charged by transmitting utilities or electric utilities or through transmission rates charged by the Transmission Organization that provides services to such utilities.

# FERC REGULATIONS, RULE 206, 18 C.F.R. § 385.206
# COMPLAINTS

(a) *General rule.* Any person may file a complaint seeking Commission action against any other person alleged to be in contravention or violation of any statute, rule, order, or other law administered by the Commission, or for any other alleged wrong over which the Commission may have jurisdiction.

(b) *Contents.* A complaint must:

(1) Clearly identify the action or inaction which is alleged to violate applicable statutory standards or regulatory requirements;

(2) Explain how the action or inaction violates applicable statutory standards or regulatory requirements;

(3) Set forth the business, commercial, economic or other issues presented by the action or inaction as such relate to or affect the complainant;

(4) Make a good faith effort to quantify the financial impact or burden (if any) created for the complainant as a result of the action or inaction;

(5) Indicate the practical, operational, or other nonfinancial impacts imposed as a result of the action or inaction, including, where applicable, the environmental, safety or reliability impacts of the action or inaction;

(6) State whether the issues presented are pending in an existing Commission proceeding or a proceeding in any other forum in which the complainant is a party, and if so, provide an explanation why timely resolution cannot be achieved in that forum;

(7) State the specific relief or remedy requested, including any request for stay or extension of time, and the basis for that relief;

(8) Include all documents that support the facts in the complaint in possession of, or otherwise attainable by, the complainant, including, but not limited to, contracts and affidavits;

(9) State

(i) Whether the Enforcement Hotline, Dispute Resolution Service, tariff-based dispute resolution mechanisms, or other informal dispute resolution procedures were used, or why these procedures were not used;

(ii) Whether the complainant believes that alternative dispute resolution (ADR) under the Commission's supervision could successfully resolve the complaint;

(iii) What types of ADR procedures could be used; and

(iv) Any process that has been agreed on for resolving the complaint.

(10) Include a form of notice of the complaint suitable for publication in the Federal Register in accordance with the specifications in § 385.203(d) of this part. The form of notice shall be on electronic media as specified by the Secretary.

(11) Explain with respect to requests for Fast Track processing pursuant to section 385.206(h), why the standard processes will not be adequate for expeditiously resolving the complaint.

(c) *Service.* Any person filing a complaint must serve a copy of the complaint on the respondent, affected regulatory agencies, and others the complainant reasonably knows may be expected to be affected by the complaint. Service must be simultaneous with filing at the Commission for respondents. Simultaneous or overnight service is permissible for other affected entities. Simultaneous service can be accomplished by electronic mail in accordance with § 385.2010(f)(3), facsimile, express delivery, or messenger.

(d) *Notice.* Public notice of the complaint will be issued by the Commission.

(e) [Reserved]

(f) *Answers, interventions and comments.* Unless otherwise ordered by the Commission, answers, interventions, and comments to a complaint must be filed within 20 days after the complaint is filed. In cases where the complainant requests privileged treatment for information in its complaint, answers, interventions, and comments are due within 30 days after the complaint is filed.

In the event there is an objection to the protective agreement, the Commission will establish when answers will be due.

(g) *Complaint resolution paths.* One of the following procedures may be used to resolve complaints:

(1) The Commission may assign a case to be resolved through alternative dispute resolution procedures in accordance with §§ 385.604–385.606, in cases where the affected parties consent, or the Commission may order the appointment of a settlement judge in accordance with § 385.603;

(2) The Commission may issue an order on the merits based upon the pleadings;

(3) The Commission may establish a hearing before an ALJ;

(h) *Fast Track processing.*

(1) The Commission may resolve complaints using Fast Track procedures if the complaint requires expeditious resolution. Fast Track procedures may include expedited action on the pleadings by the Commission, expedited hearing before an ALJ, or expedited action on requests for stay, extension of time, or other relief by the Commission or an ALJ.

(2) A complainant may request Fast Track processing of a complaint by including such a request in its complaint, captioning the complaint in bold type face "COMPLAINT REQUESTING FAST TRACK PROCESSING," and explaining why expedition is necessary as required by section 385.206(b)(11).

(3) Based on an assessment of the need for expedition, the period for filing answers, interventions and comments to a complaint requesting Fast Track processing may be shortened by the Commission from the time provided in section 385.206(f).

(4) After the answer is filed, the Commission will issue promptly an order specifying the procedure and any schedule to be followed.

(i) *Simplified procedure for small controversies.* A simplified procedure for complaints involving small controversies is found in section 385.218 of this subpart.

(j) *Satisfaction.*

(1) If the respondent to a complaint satisfies such complaint, in whole or in part, either before or after an answer is filed, the complainant and the respondent must sign and file:

   (i) A statement setting forth when and how the complaint was satisfied; and

   (ii) A motion for dismissal of, or an amendment to, the complaint based on the satisfaction.

(2) The decisional authority may order the submission of additional information before acting on a motion for dismissal or an amendment under paragraph (c)(1)(ii) of this section.

# FERC REGULATIONS, RULE 602, 18 C.F.R. § 385.602
## SUBMISSION OF SETTLEMENT OFFERS

### § 385.602 Submission of settlement offers (Rule 602).

(a) *Applicability.* This section applies to written offers of settlement filed in any proceeding pending before the Commission or set for hearing under subpart E. For purposes of this section, the term "offer of settlement" includes any written proposal to modify an offer of settlement.

(b) *Submission of offer.*

(1) Any participant in a proceeding may submit an offer of settlement at any time.

(2) An offer of settlement must be filed with the Secretary. The Secretary will transmit the offer to:

(i) The presiding officer, if the offer is filed after a hearing has been ordered under subpart E of this part and before the presiding officer certifies the record to the Commission; or

(ii) The Commission.

(3) If an offer of settlement pertains to multiple proceedings that are in part pending before the Commission and in part set for hearing, any participant may by motion request the Commission to consolidate the multiple proceedings and to provide any other appropriate procedural relief for purposes of disposition of the settlement.

(c) *Contents of offer.*

(1) An offer of settlement must include:

(i) The settlement offer;

(ii) A separate explanatory statement;

(iii) Copies of, or references to, any document, testimony, or exhibit, including record citations if there is a record, and any other matters that the offerer considers relevant to the offer of settlement; and

(2) If an offer of settlement pertains to a tariff or rate filing, the offer must include any proposed change in a form suitable for inclusion in the filed rate schedules or tariffs, and a number of copies sufficient to satisfy the filing requirements applicable to tariff or rate filings of the type at issue in the proceeding.

(d) *Service.*

(1) A participant offering settlement under this section must serve a copy of the offer of settlement:

(i) On every participant in accordance with Rule 2010;

(ii) On any person required by the Commission's rules to be served with the pleading or tariff or rate schedule filing, with respect to which the proceeding was initiated.

(2) The participant serving the offer of settlement must notify any person or participant served under paragraph (d)(1) of this section of the date on which comments on the settlement are due under paragraph (f) of this section.

(e) *Use of non-approved offers of settlement as evidence.*

(1) An offer of settlement that is not approved by the Commission, and any comment on that offer, is not admissible in evidence against any participant who objects to its admission.

(2) Any discussion of the parties with respect to an offer of settlement that is not approved by the Commission is not subject to discovery or admissible in evidence.

(f) *Comments.*

(1) A comment on an offer of settlement must be filed with the Secretary who will transmit the comment to the Commission, if the offer of settlement was transmitted to the Commission, or to the presiding officer in any other case.

(2) A comment on an offer of settlement may be filed not later than 20 days after the filing of the offer of settlement and reply comments may be filed not later than 30 days after the filing of the offer, unless otherwise provided by the Commission or the presiding officer.

(3) Any failure to file a comment constitutes a waiver of all objections to the offer of settlement.

(4) Any comment that contests an offer of settlement by alleging a dispute as to a genuine issue of material fact must include an affidavit detailing any genuine issue of material fact by specific reference to documents, testimony, or other items included in the offer of settlement, or items not included in the settlement, that are relevant to support the claim. Reply comments may include responding affidavits.

(g) *Uncontested offers of settlement.*

(1) If comments on an offer are transmitted to the presiding officer and the presiding officer finds that the offer is not contested by any participant, the presiding officer will certify to the Commission the offer of settlement, a statement that the offer of settlement is uncontested, and any hearing record or pleadings which relate to the offer of settlement.

(2) If comments on an offer of settlement are transmitted to the Commission, the Commission will determine whether the offer is uncontested.

(3) An uncontested offer of settlement may be approved by the Commission upon a finding that the settlement appears to be fair and reasonable and in the public interest.

(h) *Contested offers of settlement.*

(1)

(i) If the Commission determines that any offer of settlement is contested in whole or in part, by any party, the Commission may decide the merits of the contested settlement issues, if the record contains substantial evidence upon which to base a reasoned decision or the Commission determines there is no genuine issue of material fact.

(ii) If the Commission finds that the record lacks substantial evidence or that the contesting parties or contested issues can not be severed from the offer of settlement, the Commission will:

(A) Establish procedures for the purpose of receiving additional evidence before a presiding officer upon which a decision on the contested issues may reasonably be based; or

(B) Take other action which the Commission determines to be appropriate.

(iii) If contesting parties or contested issues are severable, the contesting parties or uncontested portions may be severed. The uncontested portions will be decided in accordance with paragraph (g) of this section.

(2)

(i) If any comment on an offer of settlement is transmitted to the presiding officer and the presiding officer determines that the offer is contested, whole or in part, by any participant, the presiding officer may certify all or part of the offer to the Commission. If any offer or part of an offer is contested by a party, the offer may be certified to the Commission only if paragraph (h)(2)(ii) or (iii) of this section applies.

(ii) Any offer of settlement or part of any offer may be certified to the Commission if the presiding officer determines that there is no genuine issue of material fact. Any certification by the presiding officer must contain the determination that there is no genuine issue of material fact and any hearing record or pleadings which relate to the offer or part of the offer being certified.

(iii) Any offer of settlement or part of any offer may be certified to the Commission, if:

(A) The parties concur on a motion for omission of the initial decision as provided in Rule 710, or, if all parties do not concur in the motion, the presiding officer determines that omission of the initial decision is appropriate under Rule 710(d), and

(B) The presiding officer determines that the record contains substantial evidence from which the Commission may reach a reasoned decision on the merits of the contested issues.

(iv) If any contesting parties or contested issues are severable, the uncontested portions of the settlement may be certified immediately by the presiding officer to the Commission for decision, as provided in paragraph (g) of this section.

(i) ***Reservation of rights.*** Any procedural right that a participant has in the absence of an offer of settlement is not affected by Commission disapproval, or approval subject to condition, of the uncontested portion of the offer of settlement.

# DESIGNATION OF RELEVANT FERC DOCUMENTS
# FOR JOINT APPENDIX

**Sixth Circuit Court Case Nos. 23-3196, 23-3324, 23-3366 and 23-341**
**FERC Docket No. EL23-34-000**

| Record Entry No. From Certified Index to the Record | Description | Pages |
|---|---|---|
| R.1 | Complaint – Office of the Ohio Consumers' Counsel v. American Electric Power Service Corp., *et al.* (Feb. 24, 2022) | All |
| R.32 | Answer of Ohio Consumers' Counsel to Answer of American Electric Power Service Corporation, *et al.* (Apr. 15, 2022) | |
| R.36 | Motion for Leave to Answer and Answer of Buckeye Power, Inc. to ATSI and AEP Answers (May 13, 2022) | |
| R.39 | Order on Complaint, *Office of the Ohio Consumers' Counsel v. American Electric Power Service Corp., et al.,* 181 FERC ¶ 61,214 (2022) | All |
| R.40 | American Electric Power Service Corporation Request for Rehearing (Jan. 17, 2023) | All |
| R.41 | Ohio Consumers' Counsel's Request for Rehearing (Jan. 17, 2023) | All |
| R.43 | Ohio Consumers' Counsel's Motion for Leave to Answer and Answer to American Electric Power Service Corporation, *et al.*(Feb. 1, 2023) | |
| R.46 | Notice of Denial of Rehearing By Operation of Law and Proving for Further Consideration (Feb. 17, 2023) | All |
| R.47 | Petition for Review of the Office of the Ohio Consumers' Counsel (Apr. 14, 2023) | Pages 1 - 22 |
| R.49 | Order Addressing Arguments Raised on Rehearing, *Office of the Ohio Consumers'* | All |

| | *Counsel v. American Electric Power Service Corp., et al.,* 183 FERC ¶ 61,034 (2023) | |
|---|---|---|

**Sixth Circuit Case Nos. 21-4072 and 22-3351**
**FERC Docket No. ER20-1068-000**

| Record Entry No. From Certified Index to the Record | Description | Pages |
|---|---|---|
| R.2 | DP&L Application to Establish Incentive Rate Treatment (Feb. 25, 2020) | |
| R.42 | Order on Paper Hearing, *The Dayton Power and Light Co.,* 176 FERC ¶ 61,025 (2021) | All |
| R.48 | Petition for Review by DP&L, AEP, FirstEnergy and Duke (Nov. 22, 2021) | |
| R.51 | Order Addressing Arguments Raised on Rehearing, *The Dayton Power and Light Co.,* 178 FERC ¶ 61,102 (2022) | All |