**Nos. 21-4072, 22-3351, 23-3196, 23-3324, 23-3366, 23-3417**

---

IN THE
**United States Court of Appeals**

FOR THE SIXTH CIRCUIT

---

DAYTON POWER & LIGHT COMPANY, d/b/a AES OHIO;
AMERICAN ELECTRIC POWER SERVICE CORPORATION;
DUKE ENERGY OHIO, INC.; FIRSTENERGY SERVICE COMPANY,
*Petitioners,*

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent.*

---

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

---

**JOINT APPENDIX
VOLUME 2 OF 2
PAGES JA312 – JA610**

---

William M. Rappolt
Assistant General Counsel,
FERC
AES US SERVICES, LLC
4300 Wilson Blvd.
Arlington, VA 22203
(571) 533-9018

*Counsel for The Dayton Power
and Light Co. d/b/a AES Ohio*

Matthew E. Price
Zachary B. Cohen
JENNER & BLOCK LLP
1099 New York Avenue NW
Washington, DC 20001
(202) 639-6000

*Counsel for American Electric
Power Service Corp., in its own
name and on behalf of its public
utility affiliates Ohio Power Co. and
AEP Ohio Transmission Co., Inc.*

*Additional Counsel Listed On Inside Cover*

William M. Keyser
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-8186

*Counsel for American Electric
Power Service Corp., in its own
name and on behalf of its public
utility affiliates Ohio Power Co. and
AEP Ohio Transmission Co., Inc.*

Morgan E. Parke
P. Nikhil Rao
FIRSTENERGY SERVICE CO.
76 South Main Street
Akron, OH 44308
(330) 384-2422

Sanford I. Weisburst
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

*Counsel for FirstEnergy Service Company on behalf of and as agent for
American Transmission Systems, Inc.*

Matthew R. Christiansen
  General Counsel
Robert H. Solomon
  Solicitor
Carol J. Banta
  Senior Attorney
FEDERAL ENERGY REGULATORY
  COMMISSION
888 First Street NE
Washington, DC 20426
(202) 502-6433

*Counsel for Federal Energy
Regulatory Commission*

Maureen Willis
  Consumers' Counsel
Angela O'Brien
  Deputy Consumers' Counsel
OFFICE OF THE OHIO CONSUMERS'
  COUNSEL
65 East State Street, 7th Floor
Columbus, Ohio 43215
(614) 466-8574

*Counsel for Office of The Ohio
Consumers' Counsel*

Denise C. Goulet
Wendy Simon-Pearson
MCCARTER & ENGLISH, LLP
1301 K Street, N.W.
Suite 1000 West
Washington, DC 20005
(202) 753-3400

*Special Counsel to the Ohio
Office of the Attorney General
for the Office of the Ohio
Consumers' Counsel*

Cynthia S. Bogorad
David E. Pomper
Jeffrey M. Bayne
Lauren L. Springett
SPIEGEL & MCDIARMID LLP
1875 Eye Street, NW
Suite 700
Washington, DC 20006
(202) 879-4000

*Counsel for Buckeye Power, Inc.*

Heather M. Horne
DUKE ENERGY CORP.
1301 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20004
(202) 824-8009

Matthew A. Fitzgerald
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-4716

Noel H. Symons
Carrie Mobley
MCGUIREWOODS LLP
888 16th Street, NW
Suite 500
Washington, DC 20006
(202) 857-1700

*Counsel for Duke Energy Ohio, Inc.*

Dave Yost
  Ohio Attorney General
John H. Jones
  Section Chief
Thomas G. Lindgren
Lauren M. Williams
  Assistant Attorneys General
Public Utilities Section
30 East Broad St., 26th Floor
Columbus, Ohio 43215
(614) 466-4395

*Counsel for The Public Utilities
Commission of Ohio and Its
Office of The Federal Energy
Advocate*

Paul M. Flynn
Ryan J. Collins
WRIGHT & TALISMAN, P.C.
1200 G Street, N.W., Suite 600
Washington, DC 20005-3898
202-393-1200

*Counsel for PJM Interconnection,
L.L.C.*

# INDEX

# VOLUME 1

## *Dayton Power & Light Co.*, FERC Docket No. ER20-1068

Certified Index To The Record ............................................................. JA1

Application of the Dayton Power and Light Company to Establish Incentive Rate Treatment for Qualifying Transmission Projects Pursuant to Sections 205 and 219 of the Federal Power Act and Request for Waivers (filed Feb. 24, 2020), R.2 ...................................................................................... JA13

Order on Transmission Incentives, 172 FERC ¶ 61,140 (Aug. 17, 2020), R.14 .............................................................................. JA96

Motion To Lodge of PJM Interconnection, L.L.C. (filed Oct. 19, 2020), R.33 ...................................................................................... JA135

Order Addressing Arguments Raised on Rehearing, and Setting Aside Prior Order, in Part, 173 FERC ¶ 61,154 (Nov. 19, 2020), R.37 ........................................................................... JA158

Order Granting Clarification, Addressing Arguments Raised on Rehearing, and Setting Aside Prior Order, in Part, 174 FERC ¶ 61,119 (Feb. 18, 2021), R.41 ............................................... JA168

Order on Paper Hearing, 176 FERC ¶ 61,025 (July 15, 2021), R.42 ...................................................................................... JA173

Request for Rehearing of the Indicated Ohio Transmission Owners for the July 15, 2021 Order (filed Aug. 13, 2021), R.43 ........................................................................................... JA210

Request for Rehearing of the Dayton Power and Light Company for the July 15, 2021 Order (filed Aug. 13, 2021), R.44 ........................................................................................... JA243

Request for Clarification of PJM Interconnection, L.L.C. for the July 15, 2021 Order (filed Aug. 16, 2021), R.45 ........................ JA270

i

Notice of Denial of Rehearings by Operation of Law and Providing for Further Consideration, 176 FERC ¶ 62,136 (Sept. 16, 2021), R.47 ....................................................................... JA279

Order Addressing Arguments Raised on Rehearing, 178 FERC ¶ 61,102 (Feb. 17, 2022), R.51 ............................................... JA280

Petition for Review of the Dayton Power and Light Company, American Electric Power Service Corporation, Duke Energy Ohio, Inc. and FirstEnergy Service Co., No. 21-4072 (6th Cir. Nov. 16, 2021) .................................................................................. JA304

Petition for Review of the Dayton Power and Light Company, American Electric Power Service Corporation, Duke Energy Ohio, Inc. and FirstEnergy Service Co., No. 22-3351 (6th Cir. Apr. 18, 2022) .................................................................................. JA307

## VOLUME 2

### *Office of the Ohio Consumers' Counsel v. American Electric Power Service Corp.*, FERC Docket No. EL 22-34

Certified Index To The Record ......................................................... JA312

Complaint to Protect Ohio Consumers from Unreasonable Electric Transmission Charges and Request for Establishment of Refund Effective Date and Request for Expedited Processing of Complaint by Office of the Ohio Consumers' Counsel (filed Feb. 24, 2022), R.1 ................................ JA324

Answer of American Electric Power Service Corp. (filed Mar. 31, 2022), R.19 .................................................................................. JA353

Duke Energy Ohio, LLC Answer to Complaint of Office of the Ohio Consumers' Counsel (filed Mar. 31, 2022), R.20 ..................... JA393

Comments of PJM Interconnection (filed Mar. 31, 2022), R.24 ....................................................................................... JA411

Answer to American Electric Power Service Corporation's and Duke Energy Ohio's Answer and to American Transmission Systems, Inc.'s Motion to Dismiss the Complaint to Protect Ohio Consumers From Unnecessary Charges by Office of the Ohio Consumers' Counsel (filed Apr. 15, 2022), R.32 ..................... JA422

Motion for Leave to Answer and Answer of Buckeye Power, Inc. to ATSI and AEP Answers (filed May 13, 2022), R.36 ............. JA457

Order on Complaint, 181 FERC ¶ 61,214 (Dec. 15, 2022), R.39 ........................................................................................................ JA464

Request for Rehearing of American Electric Power Service Corporation of the December 15, 2022 Order (filed Jan. 17, 2023), R.40 ..................................................................................... JA503

Ohio Consumers' Counsel submits Request for Rehearing of the December 15, 2022 Order (filed Jan. 17, 2023), R.41 ................ JA528

Motion for Leave to Answer and Answer of Office of the Ohio Consumer's Counsel re Safeguarding Consumer Rate Refunds and Request for Rehearing of American Electric Power Service Corporation (filed Feb. 1, 2023), R.43 (filing rejected by FERC on procedural grounds) ........................................................ JA549

Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, 182 FERC ¶ 62,095 (Feb. 17, 2023), R.46 ......................................................................... JA574

Order Addressing Arguments Raised on Rehearing, 183 FERC ¶ 61,034 (Apr. 20, 2023), R.49 ................................................ JA575

Petition for Review of American Electric Power Service Corp., Case No. 23-3196 (6th Cir. Mar. 8, 2023) ........................................ JA599

Petition for Review by Office of the Ohio Consumers' Counsel, Case No. 23-3324 (6th Cir. Apr. 17, 2023) ...................................... JA601

Petition for Review by American Electric Power Service Corp., Case No. 23-3366 (6th Cir. Apr. 26, 2023) ........................................ JA604

Petition for Review by Office of the Ohio Consumers' Counsel,
Case No. 23-3417 (6th Cir. May 9, 2023) ........................................ JA608

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| American Electric Power Service Corporation, *et al*., | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Nos. 23-3196, 23-3324, |
| | ) | 23-3366 and 23-3417 |
| Federal Energy Regulatory Commission, | ) | (consolidated with 21-4072 |
| Respondent. | ) | and 22-3351) |

## CERTIFIED INDEX TO THE RECORD

Pursuant to the provisions of section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b), the provisions of 28 U.S.C. § 2112, and Rule 17 of the Federal Rules of Appellate Procedure, the Federal Energy Regulatory Commission hereby certifies that the materials listed and described below are:  (1) the orders complained of, "Order on Complaint," 181 FERC ¶ 61,214, issued December 15, 2022, "Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration," 182 FERC ¶ 62,095, issued February 17, 2023, "Order Addressing Arguments Raised on Rehearing," 183 FERC ¶ 61,034, issued April 20, 2023 in *Office of the Ohio Consumers' Counsel v. American Electric Power Service Corporation, et al.*, FERC Docket No. EL22-34; and (2) the complete record upon which such orders were entered.

**Record**
**Item No.**      **Description**

**Docket No. EL22-34**

1.        Filed By:  Office of the Ohio Consumers' Counsel
          Filed Date:  02/24/2022
          Accession No.:  20220224-5221
          Description:  Office of the Ohio Consumers' Counsel v. American
          Electric Power Service Corporation, American Transmission Systems,
          Inc. and Duke Energy Ohio, LLC under EL22-34.

2.        Issued By:  Secretary Of The Commission, FERC
          Filed Date:  02/25/2022
          Accession No.:  20220225-3075
          Description:  Combined Notice of Filings #1, February 25, 2022: This
          notice contains information concerning multiple filings received by
          FERC.

3.        Filed By:  Public Citizen, Inc.
          Filed Date:  02/28/2022
          Accession No.:  20220228-5004
          Description:  Motion to Intervene of Public Citizen, Inc. under EL22-
          34.

4.        Filed By:  Monitoring Analytics, LLC
          Filed Date:  02/28/2022
          Accession No.:  20220228-5124
          Description:  Motion to Intervene of the Independent Market Monitor
          for PJM under EL22-34.

5.        Filed By:  American Electric Power Service Corporation
          Filed Date:  03/02/2022
          Accession No.:  20220302-5080
          Description:  Unopposed Motion of American Electric Power Service
          Corporation for Extension of Time and Waiver of Period for
          Responses under EL22-34.

**JA313**

**Record
Item No.**     **Description**

6.              Filed By:  Old Dominion Electric Cooperative
                Filed Date:  03/07/2022
                Accession No.:  20220307-5156
                Description:  Motion to Intervene of Old Dominion Electric
                Cooperative under EL22-34-000.

7.              Filed By:  WIRES
                Filed Date:  03/08/2022
                Accession No.:  20220308-5004
                Description:  Motion to Intervene of WIRES under EL22-34.

8.              Issued By:  Secretary Of The Commission, FERC
                Filed Date:  03/08/2022
                Accession No.:  20220308-3027
                Description:  Notice Extending Comment Period re Office of the Ohio
                Consumers' Counsel v. American Electric Power Service
                Corporation, et al. under EL22-34.

9.              Filed By:  Edison Electric Institute
                Filed Date:  03/11/2022
                Accession No.:  20220311-5080
                Description:  Motion to Intervene of the Edison Electric Institute
                under EL22-34.

10.             Filed By:  American Municipal Power, Inc.
                Filed Date:  03/16/2022
                Accession No.:  20220316-5028
                Description:  Motion to Intervene of American Municipal Power, Inc.
                under EL22-34.

11.             Filed By:  Louisiana Public Service Commission
                Filed Date:  03/16/2022
                Accession No.:  20220316-5129
                Description:  Motion to Intervene of the Louisiana Public Service
                Commission under EL22-34.

| Record Item No. | Description |
|---|---|
| 12. | Filed By:  Xcel Energy Services Inc.<br>Filed Date:  03/16/2022<br>Accession No.:  20220316-5130<br>Description:  Motion to Intervene of Xcel Energy Services Inc. under EL22-34. |
| 13. | Filed By:  Industrial Energy Users – Ohio<br>Filed Date:  03/16/2022<br>Accession No.:  20220316-5119<br>Description:  Motion to Intervene of Industrial Energy Users - Ohio under EL22-34. |
| 14. | Filed By:  Public Utilities Commission of Ohio<br>Filed Date:  03/23/2022<br>Accession No.:  20220323-5005<br>Description:  Motion to Intervene of Public Utilities Commission of Ohio under EL22-34. |
| 15. | Filed By:  Pennsylvania Public Utility Commission<br>Filed Date:  03/24/2022<br>Accession No.:  20220324-5114<br>Description:  Motion to Intervene of the Pennsylvania Public Utility Commission under EL22-34. |
| 16. | Filed By:  American Electric Power Service Corporation<br>Filed Date:  03/28/2022<br>Accession No.:  20220328-5290<br>Description:  Motion of American Electric Power Service Corporation to Dismiss February 24, 2022 Compliant filed by the Office of Ohio Consumers' Counsel under EL22-34. |
| 17. | Filed By:  WIRES<br>Filed Date:  03/30/2022<br>Accession No.:  20220330-5101<br>Description:  Comment of WIRES in Response to the Complaint filed by the Office of the Ohio Consumers' Counsel under EL22-34. |

4

**JA315**

| Record Item No. | Description |
|---|---|

18.    Filed By:  MISO Transmission Owners
       Filed Date:  03/30/2022
       Accession No.:  20220330-5108
       Description:  Motion to Intervene of MISO Transmission Owners under EL22-34.

19.    Filed By:  American Electric Power Service Corporation
       Filed Date:  03/31/2022
       Accession No.:  20220331-5528
       Description:  Answer to Complaint of American Electric Power Service Corporation under EL22-34.

20.    Filed By:  Duke Energy Ohio, Inc.
       Filed Date:  03/31/2022
       Accession No.:  20220331-5529
       Description:  Answer to Complaint of Duke Energy Ohio, Inc. under EL22-34.

21.    Filed By:  Industrial Energy Users-Ohio
       Filed Date:  03/31/2022
       Accession No.:  20220331-5338
       Description:  Comments of Industrial Energy Users-Ohio under EL22-34.

22.    Filed By:  American Public Power Association
       Filed Date:  03/31/2022
       Accession No.:  20220331-5159
       Description:  Motion to Intervene of American Public Power Association under EL22-34.

23.    Filed By:  American Transmission Systems, Inc.
       Filed Date:  03/31/2022
       Accession No.:  20220331-5533
       Description:  Motion to Dismiss and Answer to Complaint of American Transmission Systems, Inc. under EL22-34.

5

| Record Item No. | Description |
|---|---|

24.      Filed By: PJM Interconnection, L.L.C.
Filed Date: 03/31/2022
Accession No.: 20220331-5543
Description: Comments of PJM Interconnection, L.L.C. under EL22-34.

25.      Filed By: Edison Electric Institute
Filed Date: 03/31/2022
Accession No.: 20220331-5548
Description: Comments of the Edison Electric Institute under EL22-34.

26.      Filed By: Northeast Ohio Public Energy Council
Filed Date: 03/31/2022
Accession No.: 20220331-5403
Description: Motion to Intervene and Comments of Northeast Ohio Public Energy Council regarding complaint against American Electric Power Service Corporation et al. under EL22-34.

27.      Filed By: Buckeye Power, Inc.
Filed Date: 03/31/2022
Accession No.: 20220331-5363
Description: Motion to Intervene and Comments in Support of Complaint of Buckeye Power, Inc. under EL22-34.

28.      Filed By: Public Utilities Commission of Ohio
Filed Date: 03/31/2022
Accession No.: 20220331-5273
Description: Comments of Public Utilities Commission of Ohio under EL22-34.

| Record Item No. | Description |
|---|---|

29.    Filed By:  Ohio Consumers' Counsel
Filed Date:  04/12/2022
Accession No.:  20220412-5236
Description:  Answer of the Office of Ohio Consumers' Council to American Electric Power Service Corporation's Motion to Dismiss the Complaint to Protect Ohio Consumers from Unnecessary Charges under EL22-34.

30.    Filed By:  Buckeye Power, Inc.
Filed Date:  04/12/2022
Accession No.:  20220412-5216
Description:  Answer of Buckeye Power, Inc. to the Motion to Dismiss of American Electric Power Service Corporation under EL22-34.

31.    Filed By:  Buckeye Power, Inc.
Filed Date:  04/15/2022
Accession No.:  20220415-5229
Description:  Motion for Leave to Answer and Answer of Buckeye Power, Inc. to American Electric Power Service Corporation, et al.'s March 31, 2020 Opposition to the Complaint under EL22-34.

32.    Filed By:  Ohio Consumers' Counsel
Filed Date:  04/15/2022
Accession No.:  20220415-5243
Description:  Answer of Ohio Consumers' Counsel to Answer of American Electric Power Service Corporation, et al. and Answer to Motion to Dismiss the Complaint by American Transmission Systems, Inc. to Protect Ohio Consumers from Unnecessary Charges under EL22-34.

33.    Filed By:  The Office of the Ohio Consumers' Counsel
Filed Date:  04/18/2022
Accession No.:  20220418-5473
Description:  Motion for Leave to Accept Answer of The Office of the Ohio Consumers' Counsel under EL22-34.

7

**JA318**

| **Record Item No.** | **Description** |
|---|---|

34.      Filed By:  American Transmission Systems, Inc.
Filed Date:  04/28/2022
Accession No.:  20220428-5404
Description:  Motion to Leave to Answer and Answer and Response of American Transmission Systems, Inc. to Answers filed by Office of the Ohio Consumers' Counsel et al. on April 15, 2022 under EL22-34.

35.      Filed By:  American Electric Power Service Corporation
Filed Date:  05/02/2022
Accession No.:  20220502-5353
Description:  Motion for Leave to Answer and Answer of American Electric Power Service Corporation under EL22-34.

36.      Filed By:  Buckeye Power, Inc.
Filed Date:  05/13/2022
Accession No.:  20220513-5148
Description:  Motion for Leave to Answer and Answer of Buckeye Power, Inc. to ATSI and AEP Answers under EL22-34.

37.      Filed By:  Pennsylvania Public Utility Commission
Filed Date:  08/01/2022
Accession No.:  20220801-5104
Description:  Request to Update Information of the Pennsylvania Public Utility Commission under AD16-16, et al.

38.      Filed By:  Jenner & Block LLP
Filed Date:  10/14/2022
Accession No.:  20221014-5056
Description:  Jenner & Block LLP submits Request to Update Service List under EL22-34, et al.

**Record**
**Item No.**      **Description**

39.        Issued By:  Secretary Of The Commission, FERC, Commissioners
           And Immediate Staff (The Commission)
           Filed Date:  12/15/2022
           Accession No.:  20221215-3089
           Description:  Order on Complaint re Office of the Ohio Consumers'
           Counsel v. American Electric Power etc. et al. under EL22-34.
           Commissioner Danly is concurring in part and dissenting in part with
           a separate statement attached. Commissioner Christie is concurring
           etc.

40.        Filed By:  American Electric Power Service Corporation
           Filed Date:  01/17/2023
           Accession No.:  20230117-5236
           Description:  American Electric Power Service Corporation submits
           Request for Rehearing of the December 15, 2022 Order under EL22-
           34.

41.        Filed By:  Ohio Consumers' Counsel
           Filed Date:  01/17/2023
           Accession No.:  20230117-5304
           Description:  Ohio Consumers' Counsel submits Request for
           Rehearing of the December 15, 2022 Order under EL22-34.

42.        Filed By:  American Transmission Systems, Inc.
           Filed Date:  02/01/2023
           Accession No.:  20230201-5217
           Description:  Motion for Leave to Answer and Proposed Answer of
           American Transmission Systems, Inc. to the Request for Rehearing of
           Office of Ohio Consumer's Counsel under EL22-34.

43.        Filed By:  Office of Ohio Consumers' Counsel
           Filed Date:  02/01/2023
           Accession No.:  20230201-5238
           Description:  Motion for Leave to Answer and Answer of Office of
           the Ohio Consumer's Counsel re Safeguarding Consumer Rate
           Refunds and Request for Rehearing of American Electric Power
           Service Corporation under EL22-34.

9

**JA320**

| Record Item No. | Description |
|---|---|

**44.**  Filed By:  American Transmission Systems, Incorporated
Filed Date:  02/01/2023
Accession No.:  20230201-5103
Description:  Notice of Entry of Appearance and Request to Update Service List of American Transmission Systems, Incorporated under EL22-34.

**45.**  Filed By:  American Electric Power Service Corporation
Filed Date:  02/13/2023
Accession No.:  20230213-5204
Description:  American Electric Power Service Corporation submits a Refund Report in Compliance with Order Issued December 15, 2022, under ER22-34.

**46.**  Issued By:  Secretary Of The Commission, FERC
Filed Date:  02/17/2023
Accession No.:  20230217-3010
Description:  Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration re Office of the Ohio Consumers' Counsel v. American Electric Power Service Corporation et al. under EL22-34.

**47.**  Filed By:  The Office of the Ohio Consumers' Counsel
Filed Date:   04/18/2023
Accession No.:  20230418-5152
Description:  Petition for Review filed in U.S. Court of Appeals for the Sixth Circuit of the Office of the Ohio Consumers' Counsel, et al. under EL22-34 (Case No. 23-3324).

**48.**  Issued By:  Secretary Of The Commission, FERC, Commissioners And Immediate Staff (The Commission)
Filed Date:  04/20/2023
Accession No.:  20230420-3071
Description:  Order Accepting Compliance Filing re Ohio Power Company et al. v. American Electric Power Service Corporation et al. under ER23-855 et al.

10

**JA321**

**Record**
**Item No.**          **Description**

49.          Issued By:  Secretary Of The Commission, FERC, Commissioners
             And Immediate Staff (The Commission)
             Filed Date:  04/20/2023
             Accession No.:  20230420-3096
             Description:  Order Addressing Arguments Raised on Rehearing re
             Office of the Ohio Consumers' Counsel v. American Electric Power
             Service Corporation et al. under EL22-34. Commissioner Danly is
             concurring in part and dissenting in part with a separate statement
             attached.


             In witness whereof I have hereunto subscribed and
             caused the seal of the Federal Energy Regulatory
             Commission to be affixed this 14th day of July, 2023, at
             Washington, DC.

                         /s/ *Kimberly D. Bose*
                         Kimberly D. Bose,
                         Secretary.

**CERTIFICATE OF SERVICE**

In accordance with Fed. R. App. P. 25(d) and Circuit Rule 25, I hereby

certify that on the 14th day of July 2023, I electronically filed the foregoing with

the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit

by using the CM/ECF system.  All participants in the case are registered CM/ECF

users and will be served by the CM/ECF system.


*/s/ Carol J. Banta*
Carol J. Banta
Senior Attorney


Federal Energy Regulatory
  Commission
888 First Street, NE
Washington, DC  20426
Tel.:  (202) 502-6433
Email:  carol.banta@ferc.gov

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| **Office of the Ohio Consumers' Counsel,** | ) | |
| **Complainant,** | ) | |
| | ) | |
| **v.** | ) | **Docket No. EL22-__-000** |
| | ) | |
| **American Electric Power Service Corporation,** | ) | |
| **American Transmission Systems, Inc. and** | ) | |
| **Duke Energy Ohio, LLC,** | ) | |
| **Respondents.** | ) | |

---

**COMPLAINT TO PROTECT OHIO CONSUMERS FROM UNREASONABLE**
**ELECTRIC TRANSMISSION CHARGES**
**AND**
**REQUEST FOR ESTABLISHMENT OF REFUND EFFECTIVE DATE**
**AND**
**REQUEST FOR EXPEDITED PROCESSING OF COMPLAINT**
**BY**
**OFFICE OF THE OHIO CONSUMERS' COUNSEL**

---

Bruce Weston
Ohio Consumers' Counsel

Larry Sauer
Deputy Consumers' Counsel
Office of the Ohio Consumers Counsel
65 East State Street, Suite 700
Columbus, Ohio 43215
(614) 466-9467 – Telephone
(614) 466-9475 – Facsimile
larry.sauer@occ.ohio.gov

Denise C. Goulet, Esq.
Barry Cohen, Esq.
McCarter & English, LLP
1301 K Street, N.W.
Suite 1000 West
Washington, D.C. 20005
(202) 753-3400 – Telephone
(202) 354-4652 – Facsimile
E-mail:  dgoulet@mccarter.com
               bcohen@mccarter.com

Special Counsel to the Ohio Office of the
Attorney General for the Office of the Ohio
Consumers' Counsel

February 24, 2022

## TABLE OF CONTENTS

**PAGE**

I.    COMMUNICATIONS ........................................................................3

II.    THE PARTIES...............................................................................4

    A.    The Office of the Ohio Consumers' Counsel ..........................4

    B.    Respondents ...............................................................5

III.    COMPLAINT ...............................................................................6

    A.    FERC Recently Rejected DP&L's Request for an RTO Participation Adder Transmission Incentive. ..........................................6

    B.    Ohio Law Mandates Transmission Owner Participation in an RTO in Order to Be Eligible to Provide Transmission Service in Ohio...................8

    C.    AEP, ATSI and Duke Are Subject to the Same Ohio Law that Compels DP&L's Participation in a Transmission Organization.....................10

    D.    The Current Formula Rates of AEP, ATSI and Duke that Include an RTO Participation Adder Are Excessive, Unjust, Unreasonable and Unduly Discriminatory for Consumers in Ohio................................11

    E.    Additional Information Required by Rule 206. .......................14

        1.    Basis for Complaint (18 C.F.R. §§ 385.206(b)(1) and (2)). .......14

        2.    Business, Commercial, Economic or Other Issues Presented (18 C.F.R. § 385.206(b)(3)). ...........................................15

        3.    Good Faith Estimate of Financial Impact or Burden on Consumers (18 C.F.R. § 385.206(b)(4)). ...........................................15

        4.    Practical, Operational, or Other Nonfinancial Impacts Imposed (18 C.F.R. § 385.206(b)(5)). ...........................................16

        5.    Whether the Issues Presented Are Pending in Other Proceedings (18 C.F.R. § 385.206(b)(6)). ...........................................16

        6.    Specific Relief or Remedy Requested (18 C.F.R. § 385.206(b)(7)).........16

        7.    Documents that Support the Facts in the Complaint (18 C.F.R. § 385.206(b)(8)). ...........................................17

i

8.    Whether Alternative Dispute Resolution Processes Were Used and Whether Those Processes Might Resolve the Dispute (18 C.F.R. § 385.206(b)(9)(i) and (ii)). ...........................................................17

9.    Form of Notice (18 C.F.R. § 385.206(b)(10)). ...........................................17

10.    Service (18 C.F.R. § 385.206(c)). .............................................................17

F.    Request for Establishment of Refund Effective Date and Statement Regarding "Fast Track Processing."...............................................................................20

IV.    CONCLUSION...........................................................................................21

UNITED STATES OF AMERICA
BEFORE THE
FEDERAL ENERGY REGULATORY COMMISSION

| | | |
|---|---|---|
| **Office of the Ohio Consumers' Counsel,** | ) | |
| **Complainant,** | ) | |
| | ) | |
| **v.** | ) | **Docket No. EL22-__-000** |
| | ) | |
| **American Electric Power Service Corporation,** | ) | |
| **American Transmission Systems, Inc. and** | ) | |
| **Duke Energy Ohio, LLC,** | ) | |
| **Respondents.** | ) | |

---

### COMPLAINT TO PROTECT OHIO CONSUMERS FROM UNREASONABLE ELECTRIC TRANSMISSION CHARGES
### AND
### REQUEST FOR ESTABLISHMENT OF REFUND EFFECTIVE DATE
### AND
### REQUEST FOR EXPEDITED PROCESSING OF COMPLAINT
### BY
### OFFICE OF THE OHIO CONSUMERS' COUNSEL

---

Ohio Transmission Owners (including the monopoly affiliates of American Electric Power Service Corporation, Duke Energy Ohio and FirstEnergy Corporation) are required by Ohio law to belong to a federally-approved regional transmission organization ("RTO"). Meanwhile, these Transmission Owners convinced FERC to allow them to charge consumers for an RTO Participation Adder, as a supposed *incentive* to join an RTO. In other words, the Transmission Owners are making consumers pay them higher profits to comply with Ohio law.

The Transmission Owners' incentive is as unnecessary a charge as it is creative ratemaking for higher profits. It has to go, and FERC should end it. FERC should require refunds of the extra profits charged to consumers as of the date of the filing of this complaint.

1

Pursuant to Sections 206 and 306 of the Federal Power Act ("FPA"), 16 U.S.C. §§ 824e and 825e, and Rule 206 of FERC's Rules of Practice and Procedure, 18 C.F.R. §§ 385.206 (2022), the Office of the Ohio Consumers' Counsel ("OCC") hereby files this Complaint. The Complaint is against American Electric Power Service Corporation ("AEP"), American Transmission Systems, Inc. ("ATSI"), and Duke Energy Ohio ("Duke") (collectively "Respondents"). OCC requests that FERC declare AEP, ATSI and Duke ineligible for the Order No. 679[1] transmission incentive known as the RTO Participation Adder. That unnecessary incentive provides, at consumer expense, a 50 basis point adder to a transmission owner's Return on Equity ("ROE") for participation in a Transmission Organization such as an RTO or an Independent System Operator ("ISO"). The incentive allows profits for nothing, at consumer expense.

Each Ohio Transmission Owner is required by Ohio law (Ohio Revised Code section 4928.12) to be a member of a FERC-approved transmission organization.[2] Their participation is not voluntary. OCC asks FERC to find that AEP's, ATSI's and Duke's wholesale transmission rates in Ohio are each excessive, and thus unjust and unreasonable. That is because they allow the RTO Participation Adder (extra profits charge) to be collected from consumers.

FERC should direct all three Respondents to modify their transmission formula rates to eliminate the RTO Participation Adder. By eliminating the extra profits charged to consumers, FERC will lower rates charged to consumers for wholesale transmission service in Ohio. Finally, FERC should set the refund effective date at the earliest possible moment, *i.e.*, as of the date of filing of this complaint. FERC also should direct the Ohio Transmission Owners to

---

[1] *Promoting Transmission Investment Through Pricing Reform,* Order No. 679, 116 FERC ¶ 61,057, *order on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345 (2006) ("Order No. 679").

[2] Ohio Rev. Code § 4928.12.

2

refund the difference between rates in effect on the date of the filing of this complaint and the lower rates sought in this complaint.

OCC requests that FERC expedite the processing of this complaint. The facts are not in dispute – each Respondent is authorized to charge its customers the RTO Participation Adder in its rates. The law is also not in dispute. Each Respondent is obligated by Ohio Revised Code section 4928.12 to join a Transmission Organization to be eligible to provide transmission service in the state. FERC recently protected consumers in a case involving The Dayton Power and Light Company ("DP&L"), ruling that the transmission owner is not eligible to charge consumers for the RTO Participation Adder.[3]

AEP, ATSI and Duke joined PJM many years ago. But even when they joined, they were all subject to the Ohio law mandating their participation in a Transmission Organization.  Their Ohio consumers deserve comparable protection to DP&L's Ohio retail consumers. FERC should act immediately to protect all Ohio consumers. FERC should terminate AEP's, ATSI's and Duke's eligibility to charge consumers the RTO Participation Adder in their formula transmission rates.  And FERC should direct them to modify and lower their rates to consumers accordingly. Expedited processing of this complaint is necessary for equitable treatment of the Ohio consumers of AEP, ATSI and Duke, who should be protected from excessive, unjust and unreasonable rates.

## I.    COMMUNICATIONS

Communications regarding this matter should be addressed to the following persons, who also should be designated for service on FERC's official service list:

---

[3] *The Dayton Power and Light Co.*, 172 FERC ¶ 61,140, *Order Addressing Arguments Raised on Rehearing, and Setting Aside Prior Order, in Part*, 173 FERC ¶ 61,154 (2020), *Order on Paper Hearing*, 176 FERC ¶ 61,025 (2021); *Order Addressing Arguments Raised on Rehearing*; 178 FERC ¶ 61,102 (2022) ("*Dayton*").

Bruce Weston
Ohio Consumers' Counsel

Larry Sauer
Deputy Consumers' Counsel
Office of the Ohio Consumers Counsel
65 East State Street, Suite 700
Columbus, Ohio 43215
(614) 466-1312 – Telephone
(614) 466-9475 – Facsimile
larry.sauer@occ.ohio.gov

Denise C. Goulet, Esq.
Barry Cohen, Esq.
McCarter & English, LLP
1301 K Street, N.W.
Suite 1000 West
Washington, D.C. 20005
(202) 753-3400 (Voice)
(202) 354-4652 (Fax)
E-mail:  dgoulet@mccarter.com
         bcohen@mccarter.com

Special Counsel to the Ohio Office of
the Attorney General for the Office of
the Ohio Consumers' Counsel

## II.    THE PARTIES

### A.    The Office of the Ohio Consumers' Counsel

Pursuant to Ohio Revised Code Chapter 4911, Complainant the Office of the Ohio

Consumers' Counsel is the statutory representative of the interests of approximately 4.5 million

Ohio residential utility customers in proceedings before state and federal administrative agencies

and the courts. OCC advocates positions and policies that will protect Ohio consumers from

unreasonable, unjust and unlawful utility rates and charges.

Ohio is a retail choice state. It allows electric customers to choose their energy supplier.

Both the retail marketers and the Ohio default service auctions (that procure power for those

Ohio consumers who do not switch to a marketer) depend on the PJM markets for power

supplies and index pricing. Ohio consumers depend on the competitiveness of PJM's markets to

protect them against unjust and unreasonable rates for electricity supplies. But transmission of

electricity remains a monopoly service subject to cost-based ratemaking. Because electric service

in Ohio is unbundled, the rates charged for the transmission service provided to these customers

are regulated by FERC. To protect Ohio consumers and make sure that transmission rates for

these customers are just and reasonable, FERC should extend its ruling in its recent decision in

4

**JA330**

*Dayton* to the transmission rates of all FERC-jurisdictional public utilities operating in Ohio. FERC's fair ruling protected DP&L's consumers.  Other Ohio consumers should now be similarly protected.

### B.    Respondents

Respondent AEP is a regulated public utility, primarily engaged in the generation, transmission, distribution and sale of electricity in multiple states across the Midwest. The states include, *inter alia*, Ohio, Indiana, Michigan, Kentucky, Tennessee, Virginia and West Virginia. AEP is headquartered in Columbus, Ohio.  AEP's transmission service and wholesale sales of power supply are subject to regulation by FERC under the Federal Power Act.

Respondent ATSI is a wholly-owned, direct operating subsidiary of FirstEnergy Transmission, LLC, which in turn is a wholly-owned subsidiary of FirstEnergy Corporation ("FirstEnergy").  ATSI is a regulated public utility primarily engaged in the transmission of electricity in Ohio, and in portions of Maryland, New Jersey, Pennsylvania, Virginia and West Virginia, and is headquartered in Akron, Ohio.  ATSI's transmission service is subject to regulation by FERC under the Federal Power Act.

Respondent Duke is a wholly-owned operating subsidiary of Duke Energy Corporation. It is a regulated public utility primarily engaged in the generation, transmission, distribution and sale of electricity in portions of Ohio, and is headquartered in Charlotte, North Carolina.  Duke's transmission service and wholesale sales of power supply are subject to regulation by FERC under the Federal Power Act.

5

**JA331**

### III.    COMPLAINT

#### A.    FERC Recently Rejected DP&L's Request for an RTO Participation Adder Transmission Incentive.

On July 15, 2021, FERC issued an order in Docket No. ER20-1068-000. FERC found that DP&L does not qualify for the transmission rate incentive that increases a transmission owner's Return on Equity for participation in a Regional Transmission Organization.[4]  FERC thus denied DP&L's request in that docket to include the RTO Participation Adder in its wholesale transmission rates.  And FERC ordered DP&L to refund the amounts it collected for this incentive while its requested rates were in effect subject to refund.[5]

FERC's decision in *Dayton* is premised on two findings. First, FERC found that Order No. 679, which authorizes the RTO Participation Adder incentive, as interpreted by the United States Court of Appeals for the Ninth Circuit in *California Public Utilities Commission v. FERC*,[6] requires a showing of *voluntary membership* in a Transmission Organization.[7]

Second, FERC found that  DP&L's membership in a Transmission Organization is *not* voluntary because Ohio law requires such participation.[8]  FERC found that section 219 of the Federal Power Act[9] requires that FERC implement, "consistent with its jurisdiction," regulations that provide incentives to transmitting utilities or electric utilities that join a Transmission Organization.  But the statute did not specifically address the question of the voluntariness of that participation.  However, in Order No. 679, FERC found that an RTO Participation Adder would

---

[4] *Dayton*, 176 FERC ¶ 61,025  at P 2.

[5] *Id.*

[6] *Cal. Pub. Util. Comm'n v. FERC*, 879 F.3d 966 (9th Cir. 2018) ("*CPUC*").

[7] *Dayton*, 176 FERC ¶ 61,025 at P 14.

[8] *Id.*

[9] 16 U.S.C. § 824s.

be "appropriate for entities that choose to remain members of a Transmission Organization because, in relevant part, continuing membership is 'generally voluntary.'"[10]

FERC in *Dayton* also noted that in *CPUC*, "the Ninth Circuit concluded that, because an incentive cannot induce behavior that is already legally mandated, 'the voluntariness of a utility's membership in a transmission organization is logically relevant to whether it is eligible for an adder.'"[11]  FERC noted the reasoning of the Ninth Circuit that "given the Commission's longstanding policy to award incentives to incent future behavior, an incentive cannot induce behavior that already is legally mandated."[12]  FERC added that "accordingly, while the Commission could provide an incentive for continued RTO membership, the utility's choice to remain in the RTO must be voluntary."[13]

FERC rejected DP&L's argument that its financial integrity, credit ratings and/or ability to attract investment would be threatened if FERC rejected the request for the RTO Participation Adder.  FERC reasoned that the base ROE preserves the utility's financial integrity and ability to attract capital. FERC also found that the RTO Participation Adder is intended only to recognize the benefits that can flow from participation in an RTO, thus encouraging utilities to participate in such an entity where they are otherwise not mandated to join.[14]

FERC found that Ohio law requires a utility that owns or controls transmission facilities in the state to be a member of, and transfer control of those facilities to, one or more operational "qualifying transmission entities" that embody nine criteria.[15]  FERC concluded that those

---

[10] *Dayton,* 176 FERC ¶ 61,025 at P 26, citing Order No. 679, 116 FERC ¶ 61,057 at P 331.

[11] *Dayton,* 176 FERC ¶ 61,025 at P 27, citing *CPUC*, 879 F.3d at 975.

[12] *Dayton*, 176 FERC ¶ 61,025 at P 27

[13] *Dayton*, 176 FERC ¶ 61,025 at P 28, citing *CPUC* at 977-78.

[14] *Dayton,* 176 FERC ¶ 61,205 at PP 29-30.

[15] *Id.* at PP 54-55.

criteria, which include that the transmission entity must be approved by FERC, effectively require the utility to be a member of a FERC-approved Transmission Organization.[16]  FERC also found that there are no other alternative arrangements through which DP&L could comply with the Ohio law without joining a FERC-approved Transmission Organization.[17]

In other words, any other qualifying transmission entity that would satisfy the requirements of the Ohio statute would also be a Transmission Organization under the FPA and FERC regulations.[18]  FERC then found that, under FPA section 219 and Order No. 679, eligibility for the RTO Participation Adder incentive is not limited to membership in an RTO or ISO.  FERC found it applies to membership in any Transmission Organization – an entity more broadly defined in the Order No. 679 regulations.[19]  On February 17, 2022, FERC issued its Order Addressing Arguments Raised on Rehearing affirming its decision in that case not to allow the RTO Participation Adder charge to DP&L's customers.[20]

### B.    Ohio Law Mandates Transmission Owner Participation in an RTO in Order to Be Eligible to Provide Transmission Service in Ohio.

Ohio Revised. Code section 4928.12 requires that:

(A) Except as otherwise provided in sections 4928.31 to 4928.40 of the Revised Code, *no entity shall own or control transmission facilities as defined under federal law and located in this state* on or after the starting date of competitive retail electric service *unless that entity is a member of, and transfers control of those facilities to, one or more qualifying transmission entities*, as described in division (B) of this section, that are operational.

(B) An entity that owns or controls transmission facilities located in this state complies with division (A) of this section i*f each transmission entity of which it is a member meets all of the following specifications*:

---

[16] *Id.*

[17] *Id.* at PP 54, 57.

[18] *Id.* at P 57.

[19] *Id.* at P 58.

[20] *Dayton Power and Light Co.*, 178 FERC ¶ 61,102 (2022).

(1) The transmission entity is approved by the federal energy regulatory commission.
(2) The transmission entity effects separate control of transmission facilities from control of generation facilities.
(3) The transmission entity implements, to the extent reasonably possible, policies and procedures designed to minimize pancaked transmission rates within this state.
(4) The transmission entity improves service reliability within this state.
(5) The transmission entity achieves the objectives of an open and competitive electric generation marketplace, elimination of barriers to market entry, and preclusion of control of bottleneck electric transmission facilities in the provision of retail electric service.
(6) The transmission entity is of sufficient scope or otherwise operates to substantially increase economical supply options for consumers.
(7) The governance structure or control of the transmission entity is independent of the users of the transmission facilities, and no member of its board of directors has an affiliation, with such a user or with an affiliate of a user during the member's tenure on the board, such as to unduly affect the transmission entity's performance. For the purpose of division (B)(7) of this section, a "user" is any entity or affiliate of that entity that buys or sells electric energy in the transmission entity's region or in a neighboring region.
(8) The transmission entity operates under policies that promote positive performance designed to satisfy the electricity requirements of customers.
(9) The transmission entity is capable of maintaining real-time reliability of the electric transmission system, ensuring comparable and nondiscriminatory transmission access and necessary services, minimizing system congestion, and further addressing real or potential transmission constraints.[21]

If AEP, ATSI and Duke did not belong to PJM or another qualifying FERC-approved transmission entity, they would be forbidden to own or control transmission facilities located in the state of Ohio. Thus, their participation in PJM or any other Transmission Organization, like DP&L's, is not voluntary.  AEP, ATSI and Duke are identically situated to DP&L on this issue. Just as FERC found DP&L ineligible for the RTO Participation Adder, it likewise should find that AEP, ATSI and Duke are ineligible for the RTO Participation Adder.  FERC should direct them to remove the Adder from their rates.  For the reasons explained by FERC in *Dayton* and

---

[21] Ohio Rev. Code, § 4928.12 (emphasis added).

by the Ninth Circuit in *CPUC*, it is unreasonable to incent Transmission Owner activity that is already required by Ohio law.

### C.    AEP, ATSI and Duke Are Subject to the Same Ohio Law that Compels DP&L's Participation in a Transmission Organization.

AEP, ATSI and Duke all directly, or indirectly through their affiliates, provide transmission service in Ohio. AEP serves Ohio consumers through its AEP Ohio affiliates. Those include Ohio Power Company (including Columbus Southern Power Company)  and AEP Ohio Transmission Company. ATSI provides transmission service in Ohio through Ohio Edison Company, The Toledo Edison Company and The Cleveland Electric Illuminating Company. Duke Energy Ohio directly serves Ohio retail consumers. All three are subject to Ohio Revised Code section 4928.12, just like DP&L.

FERC initially granted AEP, ATSI and Duke the right to include the RTO Participation Adder in their rates. But all those orders predate the Ninth Circuit's ruling in *CPUC* and FERC's ruling in *Dayton*.  In 2008 and 2010 respectively, FERC authorized AEP affiliates to include the 50 basis point RTO Participation Adder in their transmission formula rates in Docket Nos. ER08-1329-000 *et al.* and ER10-355-000 *et al.*[22]  In 2015, FERC authorized Duke Energy Ohio to include the 50-basis point ROE Adder in Docket No. ER12-91-000.[23]  Also in 2015, FERC authorized ATSI's 50 basis point RTO Participation Adder in Docket No. ER15-303-000 *et al.*[24]

---

[22] *American Electric Power Service Co.*, 124 FERC ¶ 61,306 at P 22 (2008) and *AEP Appalachian Transmission Co., et al.*, 130 FERC ¶ 61,075 at P 21 (2010).

[23] *Duke Energy Ohio, et al.*, 151 FERC ¶ 61,029 at PP 10, 14 (2015).

[24] *PJM Interconnection, L.L.C.*, 153 FERC ¶ 61,106 (2015), Letter Order dated October 29, 2015 accepting the Settlement Agreement and Offer of Settlement. Section II.C.2 of the Settlement provides for the RTO Participation Adder in ATSI's formula transmission rates.

There are no material differences between DP&L and the other Ohio transmission owners. AEP, ATSI and Duke should be prohibited from charging Ohio consumers the RTO Participation Rider just as DP&L is prohibited.

### D. The Current Formula Rates of AEP, ATSI and Duke that Include an RTO Participation Adder Are Excessive, Unjust, Unreasonable and Unduly Discriminatory for Consumers in Ohio.

Allowing AEP, ATSI and Duke to retain the RTO Participation Adder while denying DP&L the right to include such an incentive in its rates would unduly discriminate against Ohio consumers served by AEP, ATSI and Duke. This would be in violation of the anti-discrimination and undue preference provisions in sections 205 and 206 of the FPA.

FPA section 205(b) requires that "[n]o public utility shall, with respect to any transmission or sale subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage . . ."[25] FPA section 206(a) similarly states that:

> [w]henever the Commission, after a hearing held upon its own motion or upon complaint, shall find that any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order.[26]

It would be unduly discriminatory to charge Ohio retail consumers in the AEP, ATSI and Duke service territories more for their transmission services than the same electrical transmission service provided to consumers in the DP&L service territory because of the RTO Participation

---

[25] 16 U.S.C. § 824d(b).

[26] 16 U.S.C. § 824e(a).

11

Adder. These consumers should not be charged more simply because the Transmission Owners were authorized to charge for the RTO Participation Adder before the Ninth Circuit opinion in *CPUC* and before FERC's order in *Dayton*.  FERC should direct AEP, ATSI and Duke to remove the RTO Participation Adder incentive from their rates to Ohioans.

Further, allowing AEP, ATSI and Duke to retain what consumers paid for these unwarranted extra transmission profits (through formula transmission rates) would provide an unjust windfall to the Respondents' shareholders.  AEP, ATSI and Duke in Ohio are similarly-situated to DP&L. FERC should find that inclusion of an RTO Participation Adder in the wholesale transmission rates of these transmission owners is similarly unjust and unreasonable. Allowing AEP, ATSI and Duke to continue charging Ohio consumers for inflated profits by including the RTO Participation Adder in their rates would result in Ohio consumers paying rates well above AEP's, ATSI's and Duke's actual cost to provide service.

OCC does not have the data that would be needed to determine the financial effect of the overearnings by AEP, ATSI and Duke at the expense of Ohio consumers. It is possible to develop a ballpark estimate of the effect of the overearnings on the planned transmission investment approved by the PJM Board of Managers for Ohio over the past 11 years.  The Ohio Power Siting Board, in its recent report to the Ohio General Assembly, shows more than $10.6 billion in Ohio transmission infrastructure costs over that 11-year period.[27]

---

[27] Ohio Power Siting Board Report to the General Assembly Regarding the Power Transmission System at 5 (Nov. 18, 2021), *In the Matter of the Ohio Power Siting Board's Report to the General Assembly Regarding the Power Transmission System*, PUCO Case No. 21-796-EL-UNC ("Ohio Power Siting Board Report"), available at: https://dis.puc.state.oh.us/ViewImage.aspx?CMID=A1001001A21K18B61640F01982.



A reduction of 50 basis points in the ROE for the Ohio utilities, if these costs consisted of 50% capital investment, would save Ohio consumers over $26 million annually.[28]  This estimate does not include investment in rate base prior to 2010 – which is also significant. Thus, the actual savings to Ohio consumers from termination of the 50 basis RTO Participation Adder could be significantly higher.

Complying with a mandate does not warrant excessive profits at the expense of consumers. FERC should direct the Respondents to provide detailed data showing the impact on consumers in Ohio of a 50-basis point reduction in their ROEs.  After verifying these amounts as accurate, FERC should then require each Respondent to eliminate the unwarranted RTO Participation Adder charged to Ohio's consumers.

That is, FERC should act now to protect Ohio consumers from unjust and unreasonable rates.  FERC should direct these utilities to eliminate the Adder from their rates and lower their

---

[28] $10,595,000,000.00 x 0.005 = $52,975,000.00 x 0.5 = $ 26,487,500.00 annually (assuming the full construction of all approved projects).

rates. FERC should also require each transmission owner to provide refunds back to the date of the filing of this complaint.

Refunds are appropriate in this case. Ohio consumers have experienced significant increases in transmission service costs in recent years. The primary reason for these increases is the significant escalation in the cost of Supplemental Projects in PJM, including more than $7.5 billion over the past 11 years in Ohio.[29] These supplemental projects received no cost-of-service regulatory oversight in Ohio. The RTO Participation Adder significantly increases the cost of this investment for Ohio consumers, all to encourage behavior that is already required, *i.e.,* RTO participation, given the mandate in Ohio's law.

Consistent with its obligations under FPA sections 205 and 206, FERC should remedy this injustice to consumers. FERC should direct AEP, ATSI and Duke to eliminate the RTO Participation from their wholesale transmission rates, lower the rates of return included in their wholesale transmission rate formulas, and provide refunds as requested.

### E.    Additional Information Required by Rule 206.

In compliance with Rule 206, OCC submits the following information:

### 1.    Basis for Complaint (18 C.F.R. §§ 385.206(b)(1) and (2)).

The basis for the Complaint is that the currently authorized ROEs (profits) for AEP, FirstEnergy (ATSI) and Duke for transmission services include an unreasonable, unnecessary and pointless 50 basis point adder, at consumer expense. The adder supposedly is an incentive for their continued participation in PJM. But their participation in a Regional Transmission Organization is required by Ohio law. They should not get paid extra to do that which the law requires them to do.

---

[29] *See* Ohio Power Siting Board Report at 5.

Consistent with its ruling in *Dayton*, FERC should find against continuing the adder for AEP, FirstEnergy (ATSI) and Duke. They do not satisfy the requirements of Order No. 679 and judicial mandates that participation in an RTO must be voluntary for the utility to qualify for the RTO Participation Adder.

FERC should set the refund date for these unwarranted charges to consumers as the date of this complaint's filing at FERC.

### 2.    Business, Commercial, Economic or Other Issues Presented (18 C.F.R. § 385.206(b)(3)).

The business, commercial or economic issues presented by this Complaint include: (1) whether AEP, FirstEnergy (ATSI) and Duke are entitled under FPA section 219, FERC Order No. 679 and case precedent to include a 50 basis point RTO Participation Adder incentive in their wholesale transmission rates given that their participation is required by Ohio law? and (2) what is the just and reasonable replacement ROE (profit) to be charged to those customers served within the state of Ohio?

### 3.    Good Faith Estimate of Financial Impact or Burden on Consumers (18 C.F.R. § 385.206(b)(4)).

OCC does not have available the data needed to provide an exact calculation of the excessive charges being paid by Ohio consumers for the inclusion of the unnecessary RTO Participation in their transmission rates. However, based solely on PJM data (reporting expenditures of more than $10.6 billion in Ohio alone in just the last 11 years), OCC has estimated that rates and charges for Ohio consumers are excessive by millions of dollars annually. The amount of excess charges to consumers is significantly higher when existing plant in rate base as of 2010 is included in the estimate. FERC should direct the utilities to provide the actual data detailing the effect that a reduction of 50 basis points in their ROEs would have for consumers they serve in Ohio.

### 4. Practical, Operational, or Other Nonfinancial Impacts Imposed (18 C.F.R. § 385.206(b)(5)).

There are no practical, operational, or other nonfinancial impacts of the matter that is the subject of this Complaint.

### 5. Whether the Issues Presented Are Pending in Other Proceedings (18 C.F.R. § 385.206(b)(6)).

The issues presented by this filing are pending in an appellate proceeding filed in the United States Court of Appeals for the Sixth Circuit, *The Dayton Power and Light Co., et al. v. FERC*, Case No. 21-4072.  OCC is an intervenor in that docket.  In that proceeding, DP&L and other utilities filed a Petition for Review of FERC's Order on Paper Hearing in Docket No. ER20-1068, *Dayton Power and Light Co*., 176 FERC ¶ 61,025 (2021).  The Petition for Review remains pending before the Sixth Circuit.

### 6. Specific Relief or Remedy Requested (18 C.F.R. § 385.206(b)(7)).

OCC seeks rulings by FERC. FERC should find that the charge for an incentive for participation in an RTO in the transmission rates of AEP, FirstEnergy (ATSI) and Duke is unjust and unreasonable because their participation in PJM, or in any substitute RTO, is mandated by Ohio law. FERC also should establish just and reasonable replacement rates for transmission service in Ohio that exclude the RTO Participation Adder from customers' rates.

FERC should direct AEP, FirstEnergy (ATSI) and Duke to adjust their rates accordingly and provide credits or pay refunds to consumers, including interest calculated in accordance with 18 C.F.R. § 35.19a. The credits or refunds to consumers should be calculated and assessed for the period that begins with the date of the filing of this complaint as the start of the refund effective period.  Finally, FERC should establish the refund effective date at the earliest possible date, *i.e.,* the date of the filing of this complaint.

**7.      Documents that Support the Facts in the Complaint (18 C.F.R. § 385.206(b)(8)).**

The facts set forth in the complaint are supported by the FERC orders granting the RTO

Participation Adder to AEP, FirstEnergy (ATSI). The facts also are supported by FPA section

219, Order No. 679, the United States Court of Appeals for the Ninth Circuit's opinion in *CPUC*,

and FERC's orders in *Dayton*.

**8.      Whether Alternative Dispute Resolution Processes Were Used and Whether Those Processes Might Resolve the Dispute (18 C.F.R. § 385.206(b)(9)(i) and (ii)).**

OCC has not made use of the Enforcement Hotline, Dispute Resolution Service, tariff-

based dispute resolution mechanisms, or other informal dispute resolution procedures. OCC does

not believe the use of such processes would lead to resolution of the dispute.

**9.      Form of Notice (18 C.F.R. § 385.206(b)(10)).**

A form of notice of the filing of this Complaint, suitable for publication in the Federal

Register, is provided as Attachment A.

**10.      Service (18 C.F.R. § 385.206(c)).**

A copy of this filing is being served on this date on the following representatives of

American Electric Power, American Transmission Systems, Inc. and Duke Energy Ohio, LLC

designated as corporate officials for that company at https://www.ferc.gov/electric-matters-d:

**For American Electric Power:**

John C. Crespo
Deputy General Counsel
American Electric Power Service
Corporation
1 Riverside Plaza
Columbus, OH 43215-2373
Phone: 614-716-3727
Email: jccrespo@aep.com

Stacey L. Burbure
Senior Counsel
American Electric Power Service
Corporation
801 Pennsylvania Ave NW, Suite 735
Washington DC, 20004-2615
Phone: 202-383-3452
Email: slburbure@aep.com

Jessica A. Cano
Senior Counsel
American Electric Power Service
Corporation
1 Riverside Plaza
Columbus, OH 43215-2373
Phone: 614-401-9150
Email: jacano@aep.com

Christopher K. Duffy
Regulatory Case Manager
American Electric Power Service
Corporation
1 Riverside Plaza
Columbus, OH 43215-2373
Phone: 614-716-2319
Email: ckduffy@aep.com

**For American Transmission Systems, Inc.:**

Olenger Pannell
Vice President, Compliance and Regulated
Services and Chief FERC Compliance
Officer
FirstEnergy Service Company
76 South Main Street
Akron, OH 44308
Telephone: 330-384-2454
Email: pannello@firstenergycorp.com

Morgan E. Parke
Associate General Counsel
FirstEnergy Service Company
76 South Main Street
Akron, OH 44308
Telephone: 330-384-4595
Fax: 330-384-3875
Email: mparke@firstenergycorp.com

**For Duke Energy Ohio, LLC:**

Molly Suda
Associate General Counsel
Duke Energy Corporation
325 7th Street NW, Suite 300
Washington, DC 20004
Telephone: 202-824-8011
Email: molly.suda@duke-energy.com

Sheri May
Associate General Counsel
Duke Energy Corporation
139 E 4th Street
Cincinnati, OH 45202
Telephone: 513-287-4340
Email: sheri.may@duke-energy.com

**JA344**

In addition, a copy of this Complaint is being served on this date on the following

"affected regulatory agencies" pursuant to Commission Rule 206(c):

| | |
|---|---|
| Public Utilities Commission of Ohio<br>Docketing Division<br>180 East Broad Street, 11th Floor<br>Columbus, Ohio 43215-3793<br>(614) 466-4095 | Kentucky Public Service Commission<br>Office of the Executive Director<br>P. O. Box 615<br>211 Sower Boulevard<br>Frankfort, Kentucky 40602-0615<br>(502) 564-3940 |
| Indiana Utility Regulatory Commission<br>Attn:  Taquan Jones<br>Suite 1500 East<br>101 W. Washington Street<br>Indianapolis, Indiana 46204<br>(317) 233-6140 | Maryland Public Service Commission<br>Andrew S. Johnson, Executive Secretary<br>William Donald Shaefer Tower<br>6 St. Paul Street, 16th Floor<br>Baltimore, MD  21202<br>410-767-8067 |
| New Jersey Board of Public Utilities<br>Office of the Secretary – 609-292-1554<br>P. O. Box 350<br>44 S. Clinton Avenue<br>Trenton, NJ  08625 | Michigan Public Service Commission<br>Executive Secretary and the Attorney General<br>Public Service Division<br>7109 W. Saginaw Highway (Street Address)<br>Lansing, MI  48917<br>P. O. Box 30221 (Mailing Address)<br>Lansing, MI  48909<br>(517) 284-8140 |
| Public Utilities Commission of Pennsylvania<br>Secretary of the Commission<br>Keystone Building, 2nd Floor<br>400 North Street<br>Harrisburg, PA  17120<br>(717) 772-7777 | Virginia State Corporation Commission<br>Attn: Public Utility Regulatory Division<br>1300 East Main Street, 4th Floor<br>Richmond, VA  23219<br>(804) 371-9611<br>UtilityReg@scc.virginia.gov |

OCC is not aware of other entities that it "reasonably knows may be expected to be

affected by the complaint" on whom service would be required under Rule 206(c).

19

**JA345**

**F.      Request for Establishment of Refund Effective Date and Statement Regarding "Fast Track Processing."**

OCC hereby requests the establishment of a refund effective date pursuant to Federal

Power Act section 206(b), which states, in relevant part:

> Whenever the Commission institutes a proceeding under this section, the Commission shall establish a refund effective date. In the case of a proceeding instituted on complaint, the refund effective date shall not be earlier than the date of the filing of such complaint nor later than 5 months after the filing of such complaint.

OCC further requests that FERC establish the date of filing of the instant complaint as the refund

effective date under FPA section 206(b). This would be consistent with the Commission's long-

standing policy of providing maximum refund protection to customers.[30]

OCC is requesting "Fast Track processing" of this Complaint under Commission Rule

206(h). There are no facts and no law in dispute. Each Respondent is currently authorized to

charge consumers the RTO Participation Adder in its rates. Each is obligated by Ohio law to join

a Transmission Organization. And FERC recently ruled in *Dayton* that because Ohio law

compels DP&L's participation in an RTO, its participation is not voluntary, and thus it is not

eligible for the RTO Participation Adder.  AEP, ATSI and Duke are all members of PJM.  They

are all subject to the Ohio law mandating their participation in an RTO. Their Ohio consumers

deserve comparable treatment to DP&L's Ohio retail consumers. Expedited processing of this

complaint is necessary to ensure equitable treatment for Ohio consumers of AEP, ATSI and

Duke, and quick relief from excessive, unjust and unreasonable rates.

---

[30] *See, e.g., East Tex. Elec. Coop. v. Pub. Serv. Co. of Okla.,* 166 FERC ¶ 61,020, P 42 (2019), *citing Seminole Elec. Coop., Inc. v. Fla. Power & Light Co.,* 65 FERC ¶ 61,413, at 63,139 (1993) and *Canal Elec. Co.,* 46 FERC ¶ 61,153, at 61,539, *reh'g denied,* 47 FERC ¶ 61,275 (1989).

## IV.    CONCLUSION

OCC requests FERC find that the inclusion of a profit incentive for participation in an RTO, at consumer expense, in unnecessary and should be ended. That is because Ohio law requires AEP, FirstEnergy (ATSI) and Duke to participate in an RTO.  Also, FERC should establish just and reasonable replacement rates for Ohio that exclude the RTO Participation Adder from rates for these customers.

Further, FERC should direct AEP, ATSI and Duke to file to adjust their rates accordingly and provide credits or pay refunds, including interest calculated in accordance with 18 C.F.R. § 35.19a. The calculation should include the difference between charges calculated and assessed for the RTO Participation Adder and charges calculated using the replacement rate. The refund period should begin with the date of the filing of this complaint.

FERC should grant expedited processing of this complaint to grant relief to Ohio consumers at the earliest possible date.  FERC should set the date of the filing of the complaint as the refund effective date. And FERC should grant such other and further relief as it deems appropriate.

Respectfully submitted,

Bruce Weston
Ohio Consumers' Counsel

*/s/ Larry Sauer*
Larry Sauer
Deputy Consumers' Counsel

**Office of the Ohio Consumers' Counsel**
65 East State Street, Suite 700
Columbus, Ohio 43215
(614) 466-1312 – Telephone
(614) 466-9475 – Facsimile
larry.sauer@occ.ohio.gov

21

**JA347**

Denise C. Goulet, Esq.
Barry Cohen, Esq.
McCarter & English, LLP
1301 K Street, N.W.
Suite 1000 West
Washington, D.C. 20005
(202) 753-3400 (Voice)
(202) 354-4652 (Fax)
E-mail:  dgoulet@mccarter.com
         bcohen@mccarter.com

Special Counsel to the Ohio Office of the Attorney
General for the Office of the Ohio Consumers'
Counsel

February 24, 2022

22

**JA348**

ATTACHMENT A

UNITED STATES OF AMERICA
BEFORE THE
FEDERAL ENERGY REGULATORY COMMISSION

| | | |
|---|---|---|
| Office of the Ohio Consumers' Counsel, | ) | |
| Complainant, | ) | |
| | ) | |
| v. | ) | Docket No. EL22-__-000 |
| | ) | |
| American Electric Power, American | ) | |
| Transmission Systems, Inc. and | ) | |
| Duke Energy Ohio, LLC, | ) | |
| Respondents. | ) | |

NOTICE OF COMPLAINT

(February __, 2022)

Take notice that on February 24, 2022, pursuant to sections 206 and 306 of the Federal Power Act, 16 U.S.C. §§ 824e and 825e, and Rule 206 of the Federal Energy Regulatory Commission's (Commission) Rules of Practice and Procedure, 18 CFR 385.206 (2018), the Office of the Ohio Consumers' Counsel ("OCC" or "Complainant") filed a formal complaint against American Electric Power, American Transmission Systems, Inc. and Duke Energy Ohio, LLC, alleging that these utilities are not eligible for the transmission incentive that grants a utility an adder to its Return on Equity for participation in a Transmission Organization such as a Regional Transmission Organization or an Independent System Operator, and requesting that the Commission direct these utilities to remove the adder from their formula transmission rates charged to Ohio consumers, as more fully explained in the complaint.

The Complainant certifies that copies of the complaint were served on the contacts for each Respondent and on the each state regulatory commission in which each Respondent operates in PJM.

The Complaint seeks **FAST TRACK PROCESSING**.

Any person desiring to intervene or to protest this filing must file in accordance with Rules 211 and 214 of the Commission's Rules of Practice and Procedure (18 CFR 385.211 and 385.214). Protests will be considered by the Commission in determining the appropriate action to be taken, but will not serve to make protestants parties to the proceeding. Any person wishing to become a party must file a notice of intervention or

Docket No. EL22-___-000                    2

motion to intervene, as appropriate.  The Respondent's answer and all interventions, or protests must be filed on or before the comment date.  The Respondent's answer, motions to intervene, and protests must be served on the Complainant.

The Commission encourages electronic submission of protests and interventions in lieu of paper using the "eFiling" link at http://www.ferc.gov.  Persons unable to file electronically should submit an original and 5 copies of the protest or intervention to the Federal Energy Regulatory Commission, 888 First Street, NE, Washington, DC 20426.

This filing is accessible on-line at http://www.ferc.gov, using the "eLibrary" link and is available for review in the Commission's Public Reference Room in Washington, DC.  There is an "eSubscription" link on the web site that enables subscribers to receive email notification when a document is added to a subscribed docket(s).  For assistance with any FERC Online service, please email FERCOnlineSupport@ferc.gov, or call (866) 208-3676 (toll free).  For TTY, call (202) 502-8659.

Comment Date: 5:00 pm Eastern Time on _____, 2022.

Kimberly D. Bose,
Secretary.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this date served a copy of the foregoing document  via electronic mail upon American Electric Power Service Corporation, American Transmission Systems, Inc., Duke Energy Ohio, LLC. I have also served a copy of the foregoing document via hard copy United States First Class Mail or overnight delivery to the Public Utilities Commission of Ohio, the Public Service Commission of Kentucky, the Indiana Utility Regulatory Commission, the Maryland Public Service Commission, the Michigan Public Service Commission, the New Jersey Board of Public Utilities, the Public Utilities Commission of Pennsylvania, the Virginia State Corporation Commission, and the Public Service Commission of West Virginia.

Dated at Washington, D.C., this 24th day of February 2022.

By:    */s/ Larry Sauer*
Larry Sauer
Deputy Consumers' Counsel

**Office of the Ohio Consumers' Counsel**
65 East State Street, Suite 700
Columbus, Ohio 43215
(614) 466-1312 – Telephone
(614) 466-9475 – Facsimile
larry.sauer@occ.ohio.gov

23

**JA352**

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| **Office of the Ohio Consumers'** | ) | |
| **Counsel v. American Electric** | ) | **Docket No. EL22-34-000** |
| **Power Service Corporation,** *et al*. | ) | |

**ANSWER OF AMERICAN ELECTIC POWER SERVICE CORPORATION**

Stacey Burbure
Senior Counsel
American Electric Power Service
Corporation
801 Pennsylvania Ave, NW
Suite 735
Washington, DC 20004

Steven J. Ross
William M. Keyser
Shaun M. Boedicker
Steptoe & Johnson LLP
1330 Connecticut Avenue NW
Washington, D.C.  20036

Matthew E. Price
Zachary C. Schauf
Ashwini Bharatkumar
Jenner & Block LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001

March 31, 2022

# TABLE OF CONTENTS

I.    **Introduction and Summary** ............................................................... 1

II.    **Background** ....................................................................................... 5

   A.    The Ohio Statute.................................................................................. 5

   B.    AEPSC's Affiliates Decision to Join PJM ......................................... 6

   C.    The Award of the RTO Participation Adder to AEP's PJM Participating Entities and the Issuance of Order No. 679 ................................................................. 7

   D.    The Commission's Recent *Dayton* Order and this Complaint ..................................... 10

III.    **ANSWER** ........................................................................................ 12

   A.    The Commission Should Not Apply *Dayton* to a Multi-State Transmission Entity ...... 12

   B.    The Commission Cannot Apply *Dayton* to a Section 206 Proceeding Regarding a Utility That the Commission Previously Found to Have Joined PJM Voluntarily. ..... 14

   C.    The Commission Cannot Lawfully Eliminate Section 219's RTO Participation Incentive on the Basis of a State Statute That Intrudes on the Commission's Exclusive Jurisdiction. ........................................................................... 19

     1.    RTO formation and membership is a field occupied by the Commission pursuant to Section 201 of the Federal Power Act. ................................................ 21

     2.    State Laws Mandating RTO Membership Intrude on the Commission's Exclusive Field of Regulation........................................................................ 22

     3.    State RTO Membership Mandates Conflict with FPA Section 202. ........................... 24

   D.    Revoking AEP's RTO Participation Incentive Violates the Text of Section 219.......... 26

     1.    Section 219 Does Not Permit the Commission to Impose a Voluntariness Requirement. ............................................................................... 27

     2.    The Complaint Fails to Demonstrate How the Ninth Circuit's Decision in *CPUC* Requires Imposing a Voluntariness Requirement ..................................... 30

     3.    Imposing a Voluntariness Requirement Ignores the Purpose of the RTO Incentive, Which is to Offset the Cost to Transmission Owners in Exchange for the Benefits that Membership Provides to Customers ............................................... 33

IV.    **The Ohio Statute Does Not Mandate Participation in a Transmission Organization.** ................................................................................ 34

V.    **Admissions and Denials of Material Allegations**.................................... 35

VI.    **Conclusion** ..................................................................................... 37

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| **Office of the Ohio Consumers'** | ) | |
| **Counsel v. American Electric** | ) | **Docket No. EL22-34-000** |
| **Power Service Corporation**, *et al*. | ) | |

**ANSWER OF AMERICAN ELECTRIC POWER SERVICE CORPORATION**

American Electric Power Service Corporation ("AEPSC") respectfully submits this Answer to the February 24, 2022 Complaint[1] submitted by the Office of Ohio Consumers' Counsel ("OCC") in the above-captioned proceeding.[2]

## I.    Introduction and Summary

The Complaint asserts that, because the Commission denied a Section 205 request for an RTO participation incentive in *Dayton Power & Light Co.*,[3] it should revoke under Section 206 an RTO participation incentive that the Commission has provided to American Electric Power's ("AEP's") PJM utilities since 2005.  This case, however,

---

[1] *Office of Consumers' Counsel v. Am. Elec. Power Serv. Corp., et al.*, Docket No. EL22-34-000 (filed Feb. 24, 2022) ("Complaint").

[2] AEPSC submits this this answer pursuant to sections 206 and 306 of the Federal Power Act ("FPA"), 16 U.S.C. §§ 824e, 825e (2012), and Rules 206, and 213 of the Federal Energy Regulatory Commission's ("Commission's") Rules of Practice and Procedure, 18 C.F.R. §§ 385.206, and 385.213 (2021).  Pursuant to a March 8, 2022 "Notice Extending Comment Period," the comment deadline in this proceeding was extended until March 31, 2022.

[3] *Dayton Power & Light Co*., 176 FERC ¶ 61,025 (2021) ("*Dayton*" or "Dayton Initial Order"), *order on reh'g*, 178 FERC ¶ 61,102 (2022) ("Dayton Rehearing Order").

presents materially different circumstances than *Dayton*, and the holding in that case should not and cannot be extended here.

First, *Dayton* involved a utility operating within a single state. So too did the Ninth Circuit decision on which *Dayton* relied.[4] But AEP's Ohio utilities are part of a multi-state transmission-owning holding company covering not only Ohio, but also parts of Indiana, Michigan, Kentucky, Tennessee, Virginia, and West Virginia. These utilities operate in a single transmission zone and rely on two multi-company transmission rates each with a single ROE. Most of these other states do not have statutes like Ohio's, purporting to mandate membership in a transmission organization.

Nothing in *Dayton* or in the Ninth Circuit's *CPUC* decision suggests that, in deciding whether a multi-state transmission entity is eligible to receive an RTO participation incentive, the Commission may give priority to one state's membership mandate over the preference of other states to allow the utility to choose. The Commission cannot impose Ohio's policy choice onto other states that have made a different policy choice. Moreover, doing so would be particularly inappropriate given that Ohio's policy choice to require membership in a transmission organization is inconsistent with the Commission's own policy to make such membership voluntary. Nor can the Commission fashion an Ohio-only solution. Any such solution would require forcing AEP to restructure its operations so that the Ohio utilities would file a separate transmission tariff with their own ROE, and could ultimately require AEP to

---

[4] *Cal. Pub. Util. Comm'n v. FERC*, 879 F.3d 966 (9th Cir. 2018) ("*CPUC*").

2

operate its Ohio utilities on a stand-alone basis independent from the other transmission entities. Not only would that be impracticable, but it would also be unlawful and unwise: Nothing in the Commission's rules or in the FPA prohibits a multi-state transmission entity, and a larger footprint allows efficiencies that redound to customers' benefit.

Second, this case involves a Section 206 complaint seeking to take away the RTO membership incentive AEP has had since 2005, when the Commission first approved it. That is the very opposite of *Dayton*, which involved a Section 205 request seeking an RTO participation incentive for the first time. Here, the Commission has already made a factual finding that AEP's decision to join PJM was voluntary. The Commission made that finding, moreover, even though the Ohio statute on which the OCC relies was already on the books. The Commission has also repeatedly found that the RTO participation incentive is just and reasonable as applied to AEP, and is appropriate to encourage AEP's continued membership in PJM. To now hold that AEP's RTO participation incentive should be stripped away, the Commission would need to find that factual circumstances have changed such that AEP's recovery of the incentive is no longer just and reasonable. But nothing has changed other than the Commission's *Dayton* ruling, which again involved a utility located solely in Ohio, for which there was no prior finding of voluntary membership, and which had never received any RTO participation incentive.

Third, to the extent the Commission nevertheless considers extending *Dayton* <u>to cover these very different facts</u>, the Commission must grapple with Ohio's lack of authority to enact its statute in the first place. The Commission cannot lawfully remove

3

**JA357**

the RTO participation incentive by pointing to a state law purporting to mandate how utilities operate their interstate transmission facilities. Under the FPA, the power to regulate interstate transmission belongs exclusively to this Commission. Ohio's law intrudes on that jurisdiction because it requires utilities to adopt a particular framework, not required by this Commission, to engage in interstate transmission. There could hardly be a clearer example of intrusion on this Commission's exclusive power. Moreover, the Ohio law directly conflicts with section 202(a) of the FPA, which empowers the Commission to establish regions for *voluntary* interconnection, and section 202(b) of the FPA, which creates a process for states to petition the Commission to require utilities to interconnect their facilities, which the Commission may do only upon making certain findings. That provision is incompatible with an asserted state power to unilaterally direct utility interconnection with the interstate transmission grid.

In *Dayton*, the Commission declined to address whether the Ohio statute was preempted on the ground that the Commission cannot invalidate a state statute. But that is not the question posed here. AEP is not asking the Commission to invalidate the state statute. Rather, the OCC, on the basis of a state statute, is asking the Commission to reverse the finding that the Commission previously made under Section 205. But in setting rates for transmission service in interstate commerce, the Commission cannot allow a state law to dictate that result. The power to regulate interstate transmission is exclusively federal.

Finally, in order to take away AEP's RTO membership incentive on the ground that AEP's membership is involuntary, the Commission must explain how that action is

4

otherwise consistent with the plain text of section 219, which simply depends upon the fact of RTO membership. In *Dayton*, the Commission avoided that issue. Here, it cannot. The Commission cannot take away an RTO membership incentive that Congress intended the Commission to grant by reading into the statute a requirement that is not there.

## II.    Background

### A.    The Ohio Statute

Much of the OCC's Complaint is based on an Ohio statute, Ohio Revised Code section 4928.12 ("Ohio Revised Statute").[5] That statute was one of many enacted in 1999 (becoming effective on October 5, 1999) to effectuate greater competition in retail electric service in the state of Ohio.[6] It provides that "no entity shall own or control transmission facilities as defined under federal law and located in this state on or after the starting date of competitive retail electric service unless that entity is a member of, and transfers control of those facilities to, one or more qualifying transmission entities . . . that are operational."[7] The statute requires that any "transmission entity" meet the following criteria:

> (1) The transmission entity is approved by the Federal Energy Regulatory Commission.
>
> (2) The transmission entity effects separate control of transmission facilities from control of generation facilities.

---

[5] Ohio Rev. Code Ann. § 4928.12 (West 2022).

[6] *See* Act of July 6, 1999, 1999 Ohio Laws File 47 (S.B. 3).

[7] Ohio Rev. Code Ann. § 4928.12(A).

5

(3) The transmission entity implements, to the extent reasonably possible, policies and procedures designed to minimize pancaked transmission rates within [Ohio].

(4) The transmission entity improves service reliability within [Ohio].

(5) The transmission entity achieves the objectives of an open and competitive electric generation marketplace, elimination of barriers to market entry, and preclusion of control of bottleneck electric transmission facilities in the provision of retail electric service.

(6) The transmission entity is of sufficient scope or otherwise operates to substantially increase economical supply options for consumers.

(7) The governance structure or control of the transmission entity is independent of the users of the transmission facilities, and no member of its board of directors has an affiliation, with such a user or with an affiliate of a user during the member's tenure on the board, such as to unduly affect the transmission entity's performance.

(8) The transmission entity operates under policies that promote positive performance designed to satisfy the electricity requirements of customers.

(9) The transmission entity is capable of maintaining real-time reliability of the electric transmission system, ensuring comparable and nondiscriminatory transmission access and necessary services, minimizing system congestion, and further addressing real or potential transmission constraints.[8]

## B.    AEPSC's Affiliates Decision to Join PJM

In 2004, AEP's eastern utilities opted to join PJM following the merger of AEP and CSW Corporation.[9]  As an ALJ found and the Commission summarily affirmed,

---

[8] Ohio Rev. Code Ann. § 4928.12(B).

[9] The commitment to join an RTO was a voluntary merger commitment.  *See Am. Elec. Power Co.*, 85 FERC ¶ 61,201 (1998); Opinion No. 442, 90 FERC ¶ 61,242 (2000), *order on*

"AEP's commitment to pursue membership in a Commission-approved RTO was voluntary."[10]  On September 28, 2004, the Commission accepted AEP's initial proposed transmission rates to become effective on the date that its transmission facilities were integrated into PJM.[11]  AEP integrated its operating companies, located in seven different states, into PJM on October 1, 2004, and made a number of rate filings to effectuate its integration into the RTO.

### C. The Award of the RTO Participation Adder to AEP's PJM Participating Entities and the Issuance of Order No. 679

AEPSC has several affiliated public utility operating companies located within PJM including Appalachian Power Company, Indiana Michigan Power Company, Ohio Power Company ("Ohio Power"), Kentucky Power Company, Wheeling Power Company, and Kingsport Power Company ("AEP East Companies").  Each of the AEP East Companies is a public utility and has a combined transmission rate on file as Attachment H-14 of the PJM Tariff.[12]  Only Ohio Power is located in the state of Ohio.

In early 2005, the AEP East Companies filed a proposed change to their east zonal transmission rates that included a request for an incentive for remaining in PJM of "50

---

*reh'g*, Opinion No. 442-A, 91 FERC ¶ 61,129 (2000), *petition denied, Wabash Valley Power Ass'n v. FERC*, 268 F.3d 1105 (D.C. Cir. 2001).

[10] The finding was made by an ALJ in *The New PJM Companies,* 106 FERC ¶ 63,029 at P 59 (2004).  The Commission summarily affirmed that ruling.  *New PJM Companies,* Opinion No. 472, 107 FERC ¶ 61,271 at P 43, *order on reh'g,* 108 FERC ¶ 61,123 (2004), *reh'g dismissed*, 110 FERC ¶ 61,009 (2005).

[11] *See PJM Interconnection, L.L.C.*, 108 FERC ¶ 61,318 (2004), *reh'g denied*, 110 FERC ¶ 61,395 (2005).

[12] *See* PJM, Intra-PJM Tariffs, OATT Attachment H-14.

basis points upward adjustment of the ROE."[13]  The request for an RTO Participation

Adder was challenged.  The Commission set the matter for hearing, finding "the issue of

whether it is appropriate in these circumstances to allow a 50 basis point adder to the

ROE is one that should be included in the hearing we are ordering herein to ensure the

development of a full record on which we can base our decision."[14]  The parties later

resolved the matter through settlement.[15]

The Commission's order and the settlement occurred before the Commission

issued Order No. 679, which occurred in the summer of 2006.[16]  In Order No. 679, the

Commission held that it would approve, "when justified, requests for ROE-based

incentives for public utilities that join and/or continue to be a member of an ISO, RTO, or

other Commission-approved Transmission Organization," but declined to create "a

generic adder for such membership" and instead held that it would "consider specific

incentives on a case-by-case basis."[17]  The Commission went on to explain that "[a]n

entity will be presumed to be eligible for the incentive if it can demonstrate that it has

joined an RTO, ISO, or other Commission-approved Transmission Organization, and that

---

[13] *Am. Elec. Power Serv. Corp.*, 111 FERC ¶ 61,305, at P 6 (2005).

[14] *Id*. P 14.

[15] *See Am. Elec. Power Serv. Corp.*, 113 FERC ¶ 61,294 (2005).

[16] *Promoting Transmission Investment through Pricing Reform*, Order No. 679, FERC Stats. & Regs. ¶ 31,222 (2006), *order on reh'g*, Order No. 679-A, FERC Stats. & Regs. ¶ 31,236, *order on reh'g*, 119 FERC ¶ 61,062 (2007).

[17] *Id*. P 326.

8

**JA362**

its membership is on-going[,]"[18] and that "entities that have already joined, and that remain members of, an RTO, ISO, or other Commission-approved Transmission Organization, are eligible to receive this incentive."[19]

In 2008, after Order No. 679's issuance, the AEP East Companies modified their PJM transmission rates to use a formula (rather than a stated) rate, and proposed "a …50 basis point incentive adder for continued participation in PJM."[20] The Commission accepted the adder.[21] In approving the adder, the Commission found it "consistent with the stated purpose of Section 219 of the FPA" and "is intended to encourage AEP's continued involvement with PJM."[22]

AEPSC is also affiliated with several transmission-only entities providing transmission service in PJM: AEP Appalachian Transmission Company Inc., AEP Indiana Michigan Transmission Company Inc., AEP Ohio Transmission Company Inc. ("AEP Ohio Transmission"), Kentucky Transmission Company Inc., and AEP West Virginia Transmission Company Inc. (collectively the "AEP PJM Transcos").[23] Each of

---

[18] *Id*. P 327.

[19] *Id*. P 331.

[20] *Am. Elec. Power Serv. Corp*., 124 FERC ¶ 61,306, at P 4 (2008) ("AEP Incentive Order").

[21] *Id*. P 30.

[22] *Id.* While the Commission noted its acceptance of the proposal, it did condition it: "we grant AEP the full 50 basis point ROE incentive for participation in the PJM only so long as the additional 50 basis points do not result in an ROE above the zone of reasonableness." *Id*. P 30 n.42.

[23] AEP Ohio Transmission and Ohio Power are collectively referred to as the AEP Ohio Companies.

9

the AEP PJM Transcos has a combined transmission rate in Attachment H-20 of the PJM Tariff.  Only AEP Ohio Transmission owns transmission facilities located in the state of Ohio.

In 2010, the Commission approved a request to include an RTO Participation Adder for the AEP PJM Transcos:  "We find that AEP's proposal to include a 50-basis point adder to each subsidiary's base ROEs for participation in PJM . . . is just and reasonable and not unduly discriminatory . . . .  This decision to provide incentives for RTO participation is based on the policy of encouraging utilities to join and remain in an RTO."[24]

### D.      The Commission's Recent *Dayton* Order and this Complaint

Last year, in *Dayton*, the Commission ruled, in a Section 205 proceeding, that Dayton could not receive its requested fifty-point adder to its base ROE for its participation in PJM.[25]  The Commission reached this conclusion on two primary findings:  "(1) Order No. 679 as interpreted in [*Cal. Pub. Util. Comm'n*, 879 F.3d 966,] requires a showing of *voluntary* membership in . . . a Transmission Organization, and (2) Dayton's membership in a Transmission Organization is not voluntary because the Ohio statute requires it."[26]  On rehearing, the Commission upheld its prior rulings, but clarified that in its orders are limited to "addressing the merits *of only the issue of* Dayton's

---

[24] *AEP Appalachian Transmission Co.,* 130 FERC ¶ 61,075, at P 21 (2010) (citations omitted), *reh'g dismissed*, 135 FERC ¶ 61,066 (2011).

[25] Dayton Initial Order, 176 FERC ¶ 61,025 at P 14.

[26] *Id*. P 14 (alteration in original) (citation omitted).

qualification for the RTO Adder to resolve the proper rates covering the 'locked-in period prior to the effective date of any new final rule.'"[27]  The Commission's rulings as to Dayton are subject to judicial review in the U.S. Court of Appeals for the Sixth Circuit.

The OCC's Complaint in this case was filed less than a week after the Commission's ruling on rehearing in *Dayton*.  The OCC requests that the Commission "direct all three Respondents [AEPSC, FirstEnergy, and Duke] to modify their transmission formula rates to eliminate the RTO Participation Adder."[28]  The thrust of the OCC's argument is that Dayton and the three Respondents are similarly situated.  And, because the Commission denied the adder for Dayton, it should not be available to any transmission owning entity within Ohio.  The OCC request is that "FERC should direct the Respondents to provide detailed data showing the impact on consumers in Ohio of a 50-basis point reduction in their ROEs.  After verifying these amounts as accurate, FERC should then require each Respondent to eliminate the unwarranted RTO Participation Adder charged to Ohio's consumers."[29]

---

[27] Dayton Rehearing Order, 178 FERC ¶ 61,102 at P 43 (emphasis added) (citation omitted).

[28] Complaint at 3.

[29] *Id*. at 13.

11

**JA365**

### III.    ANSWER

#### A.    The Commission Should Not Apply *Dayton* to a Multi-State Transmission Entity

As noted above, the AEP East Companies and the AEP PJM Transcos do not have separately stated transmission rates for each state in which those entities operate.  Instead, the Commission-approved rate schedules each set out a multiutility *single* rate that covers utilities from several different states within PJM.  That means that all of AEP's eastern transmission facilities in PJM are part of a combined revenue requirement.[30]  As confirmed in the orders granting their RTO Incentives, the AEP Companies voluntarily made their decision to join PJM on a *company-wide* basis for all of their transmission owning affiliates—not just those located in Ohio.

*Dayton*, by contrast, involved a single utility that operated solely within Ohio.  Likewise, the Ninth Circuit's *CPUC* decision involved a single utility, PG&E, that operated solely within California.  The Commission should reject the OCC's attempt to extend *Dayton*'s holding to the very different circumstance here.  Even if AEP's Ohio utilities are required to remain part of a transmission organization, the rest of AEP's eastern utilities are not.  Nothing in *Dayton* or *CPUC*, let alone Order No. 679, requires or even allows the Commission, in the case of a multi-state transmission utility, to privilege one state's mandate over other states' decision to leave RTO membership up to the utility.  Indeed, how would the Commission decide which state's policies should receive priority?  The Commission is not ordinarily in the business of picking and

---

[30] *See* generally PJM, Intra-PJM Tariffs, OATT Attachments H-14 and H-20.

12

**JA366**

choosing among state policies, let alone forcing one state's policy choice onto other states. Yet that is exactly what the OCC asks the Commission to do here. It wants the Commission to take away 50 basis points from a transmission ROE that applies to transmission companies operating in seven different states, just because the seventh state (Ohio) purports to mandate RTO participation. Nothing in Dayton supports such relief, and the Commission may not grant it.

Indeed, it would be particularly inappropriate for the Commission to prioritize Ohio's policy over the policies of other states because Ohio's policy is inconsistent with the Commission's own. A utility's voluntary participation was fundamental to the Commission's promotion of regional transmission organizations in Order No. 2000.[31] As it explained, the voluntary approach provides participants with flexibility to respond to changing conditions.[32]

To the extent the OCC seeks some kind of Ohio-only remedy, such a solution is impracticable. To implement that remedy, the Commission would need to require AEP to disaggregate its transmission operations, so that each state's transmission facilities were subject to a different tariff with its own ROE. Nothing in the FPA nor the Commission's regulations requires utilities to structure themselves in such a way, and doing so would harm customers by eliminating the efficiencies that arise from a larger

---

[31] *Reg'l Transmission Orgs.*, Order No. 2000, FERC Stats. & Regs. ¶ 31,089, at p. 31,033 (1999), ("Order No. 2000") ("[W]e continue to believe, as we proposed in the NOPR, that at this time we should pursue a voluntary approach to participation in RTOs."), *order on reh'g,* Order No. 2000-A, FERC Stats. & Regs. ¶ 31,092 (2000), *aff'd sub nom. Pub. Util. Dist. No. 1 of Snohomish Cnty. v. FERC*, 272 F.3d 607 (D.C. Cir. 2001).

[32] Order No. 2000, FERC Stats. & Regs. ¶ 31,089 at p. 31,170.

footprint. These efficiencies include, for example, access to lower-cost capital than a smaller entity can access; reduced overhead; coordinated transmission planning; and fewer regulatory filings.

**B.    The Commission Cannot Apply *Dayton* to a Section 206 Proceeding Regarding a Utility That the Commission Previously Found to Have Joined PJM Voluntarily.**

The Commission cannot reflexively apply *Dayton* to this case for another reason: unlike *Dayton*, which involved a request by the utility to receive an RTO participation incentive for the first time, this case concerns a section 206 complaint seeking to strip AEP utilities of an incentive the Commission previously approved. Moreover, the Commission has specifically found that the AEP utilities had joined PJM *voluntarily*.

As noted above, following its merger with CSW, AEP sought to join PJM. However, at that time, two states (Virginia and Kentucky) sought to delay or prevent AEP subsidiaries in those states from joining PJM. In a proceeding in Docket No. ER03-262, the Commission addressed AEP's proposed integration into PJM among other issues, and one of the questions raised in that proceeding was whether the Commission could allow the AEP's subsidiaries in Virginia and Kentucky to join PJM without the approval of their respective states.[33] Under section 205 of PURPA, the Commission has the authority to exempt electric utilities from any state rule or regulation that prohibits voluntary coordination of electric utilities, including any agreement for central dispatch.[34]

---

[33] *New PJM Companies,* 105 FERC ¶ 61,251 (2003).

[34] 16 U.S.C. § 824a-1(a).

In an order issued in November 2003, the Commission made a preliminary finding that "AEP's voluntary commitment to join PJM is designed to obtain economical utilization of facilities and resources in the Midwest and Mid-Atlantic areas, as set forth in Section 205(a) of the Public Utility Regulatory Policies Act (PURPA)."[35]  The Commission set the matter for hearing before an Administrative Law Judge ("ALJ").

In the Initial Decision, the ALJ found based on the record evidence presented that AEP's decision to join PJM was voluntary.[36]  As the ALJ explained, "one can only conclude from the evidence presented on this record that AEP saw substantial benefits from membership in a Commission-approved RTO, found PJM to its liking after the Alliance initiative imploded, and signed on voluntarily."[37]  The Commission summarily affirmed this finding in 2004, in an order that applied to all of the AEP PJM transmission companies, and notwithstanding the fact that the Ohio statute cited by the OCC was already on the books.[38]

AEP subsidiaries first received the RTO participation incentive in 2005.  The Commission found the incentive to be just and reasonable in order to encourage AEP's

---

[35] *New PJM Companies,* 105 FERC ¶ 61,251 at P 1 (citation omitted).

[36] *New PJM Companies*, 106 FERC ¶ 63,029, at P 59 (2004).

[37] *Id.* P 55.

[38] *New PJM Companies,* 107 FERC ¶ 61,271 at P 44.

15

**JA369**

continued involvement in PJM.  It reaffirmed that finding in 2008 and subsequently in 2010, applying the requirements of FPA section 219 and Order No. 679.[39]

The Complaint does not even attempt to grapple with the Commission's explicit finding that AEP's multi-state transmission entity joined PJM voluntarily, and that the RTO participation incentive was just and reasonable to encourage AEP's continued involvement in PJM.  But these findings are fatal to its arguments in this Section 206 proceeding.  In such a proceeding, of course, the burden of proof rests with the complainant,[40] "not the utility."[41]  Meeting this burden requires, among other things, that a complainant "present a *prima facie* case demonstrating the unjustness, unreasonableness or discriminatory nature"[42] of the rate at issue.  This is a fact-specific inquiry,[43] and the Commission's regulations also impose relevant procedural requirements relating to this burden, including that the complaint be specific and substantiated with evidence.[44]

---

[39] *AEP Appalachian Transmission Co.,* 130 FERC ¶ 61,075 at P 21  ("include[ing] a 50-basis point adder to each subsidiary's base ROEs for participation in PJM . . . is just and reasonable and not unduly discriminatory").

[40] 16 U.S.C. § 824e(b) ("[T]he burden of proof to show that any rate, charge, classification, rule, regulation, practice, or contract is unjust, unreasonable, unduly discriminatory, or preferential shall be upon the Commission or the complainant.").

[41] *Emera Maine v. FERC*, 854 F.3d 9, 21 (D.C. Cir. 2017) (citations omitted).

[42] *Joint Cal. Complainants v. Pac. Gas & Elec. Co.*, 163 FERC ¶ 61,112, at P 7 (2018).

[43] *Id.*

[44] *See generally* 18 C.F.R. § 385.206 (requiring among other things, that a complainant clearly identify and sufficiently explain its allegations).  The Commission has explained "rather than bald allegations, [a complainant] must make an adequate proffer of evidence including pertinent information and analysis to support its claims." *Citizens Energy Task Force v. Midwest Reliability Org.,* 144 FERC ¶ 61,006, at PP 38-39 (2013) (dismissing section 206 complaint that failed to show how the "averred facts supported the alleged violations").

16

**JA370**

Here, the OCC has pointed to no circumstances that have changed in the 16 years since the Commission first granted AEP the RTO participation incentive.  It does not point to anything that would undermine the Commission's 2004 finding that AEP's decision to join PJM was voluntary, nor does it identify any new facts that would warrant reexamining the justness and reasonableness of granting the AEP the RTO participation incentive.  Certainly, there is no new law in Ohio: The statute cited by the OCC was enacted in 1999.  Thus, the statute was in place when the AEP Companies were found to have joined PJM voluntarily, when the AEP Companies sought the RTO participation incentive in 2005, and when the Commission found the AEP Companies to be eligible to receive it under the requirements of Order No. 679 in 2008 and 2010.

The only new development identified by the OCC is the Commission's decision in *Dayton*.  But *Dayton* did not remove an RTO participation incentive from a multi-state utility that the Commission previously found had joined PJM voluntarily.  Instead, it declined to grant an RTO participation incentive to a single-state utility that had never previously had such an incentive.

The OCC's failure to identify any new facts that would justify a change in the status quo under section 206 is a glaring deficiency that warrants dismissal or rejection of the Complaint.  "[I]n the absence of new or changed circumstances requiring a different result, it is contrary to sound administrative practice and a waste of resources to relitigate

17

issues in succeeding cases once those issues have been finally determined."[45]  After all, "[t]he statutory obligation of the utility is not to prove the continued reasonableness of the unchanged attributes of its rate structure."[46]  Given that the OCC points to no relevant changed circumstances to support a finding that the incentive has become unjust and unreasonable as to AEP, the Complaint seeking that outcome should be rejected.[47]

Further, under section 206 of the FPA, the OCC must, but does not, provide an analysis demonstrating that the ROE inclusive of the 50 basis points is unlawful.[48]  The OCC provides no such analysis or evidence regarding the existing rate of the AEP Ohio Companies.  Accordingly, the OCC does not and cannot meet its burden of showing that the existing rate for the AEP Ohio Companies is unjust and unreasonable.

---

[45] *Pac. Gas*, 121 FERC ¶ 61,065, at P 40 (2007); *see also Cent. Kan. Power Co.,* 5 FERC ¶ 61,291, at 61,621 (1978) ("In the absence of new or changed circumstances requiring a different result, there appears no reason why substantive ratemaking principles, once established, should not continue to be applied."), *order on reh'g*, 6 FERC ¶ 61,188 (1979).

[46] *Pac. Gas*, 121 FERC ¶ 61,065 at P 41 (citation omitted).

[47] *See, e.g., EPIC Merchant Energy NJ/PA, L.P. v. PJM Interconnection, L.L.C.*, 131 FERC ¶ 61,130 at P 20 (2010) (dismissing repeat complaint that was "devoid of any specific reference to or indication of any new reason or evidence") *reh'g denied*, 136 FERC ¶ 61,041 (2011); *see also CNG Transmission Corp.*, 51 FERC ¶ 63,003 at 65,007 (1990) ("[W]here a party seeks to relitigate issues previously ruled on by the Commission, without showing any new or changed circumstances requiring a different result, summary disposition is appropriate with respect to those issues.") (citing, *inter alia, Nantahala Power & Light Co.*, 29 FERC ¶ 61,179 at 61,374 (1984) (dismissing complaint where complainant alleged "no changed circumstances and show[ed] no reason why issues which were fully litigated . . . should now be relitigated.")).

[48] Compare Complaint at 12 ("FERC should find that inclusion of an RTO Participation Adder in the wholesale transmission rates of these transmission owners is similarly unjust and unreasonable.") (without citation) with *Emera Maine*, 854 F.3d at 27 ("Without further explanation, a bare conclusion that an existing rate is 'unjust and unreasonable' is nothing more than 'a talismanic phrase that does not advance reasoned decision making.').

### C.    The Commission Cannot Lawfully Eliminate Section 219's RTO Participation Incentive on the Basis of a State Statute That Intrudes on the Commission's Exclusive Jurisdiction.

The OCC's Complaint not only requires the Commission to repudiate a prior factual finding despite the absence of any identified change in conditions, but also asks the Commission to do so based on a state statute that the state lacked the power to enact. The purpose of the FPA was to fill a regulatory gap that the Supreme Court created when it ruled that states could not constitutionally regulate the interstate transmission and sale of electricity; Congress created the Federal Power Commission to fill that regulatory gap, and gave it exclusive jurisdiction to do so.[49]

In *Dayton*, the Commission declined to address the merits of preemption arguments, stating that:  "As we noted in the August 17 Order, even if we agreed that the statute was preempted, only a federal court has the ultimate authority to invalidate the Ohio Statute."[50]  Here, however, no one is asking the Commission to invalidate any state law in this proceeding.  Rather, the OCC is asking the Commission, in setting a federal rate, to give effect to a state statute that the state had no power to enact.  The Commission need not address this issue if it declines to extend *Dayton* for the reasons discussed

---

[49] *See, e.g., Pub. Utils. Comm'n of R.I. v. Attleboro Steam & Elec. Co.*, 273 U.S. 83, 88-89 (1927) (striking down state regulation of transaction at wholesale as imposing a direct burden on interstate commerce); *New York v. FERC*, 535 U.S. 1, 6 (2002) (citation omitted) ("When it enacted the FPA in 1935, Congress authorized federal regulation of electricity in areas beyond the reach of state power, such as the gap identified in *Attleboro*, but it also extended federal coverage to some areas that previously had been state regulated . . . .").  *See also Ark. Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n*, 461 U.S. 375, 378 (1983) (observing that Congress created the Commission to establish federal regulation "over most of the wholesale transactions of electric and gas utilities engaged in interstate commerce").

[50] Dayton Rehearing Order, 178 FERC ¶ 61,102 at P 32.

above, but if it seeks to extend *Dayton* to these very different facts, it cannot avoid addressing the state's authority.  The Commission cannot lawfully make its own rates depend upon whether a state has enacted a law that the state may not enact.  Reducing federal rates on the basis of illegal state action would be arbitrary and capricious.

Ohio's statute intrudes on the Commission's exclusive domain because it purports to require utilities to engage in interstate electric transmission only under a particular framework—through membership in a "transmission entity" as defined by state law. Among the things that a utility must do under the Ohio is "transfer[] control" of its interstate transmission "facilities to, one or more qualifying transmission entities . . . that are operational" and that satisfy Ohio's own requirements.[51]  It is hard to imagine a more blatant intrusion on the exclusive federal authority to regulate interstate transmission than a state law requiring a utility to surrender operational control over interstate transmission facilities.

Moreover, the Ohio law not only intrudes on the exclusive federal field, but also conflicts with Congress's express policy that RTO membership should be voluntary, as expressed in section 202(a) of the FPA, and is incompatible with section 202(b), which requires states to petition the Commission if they wish to compel their utilities to interconnect with the interstate transmission network.  States cannot take such matters into their own hands.  Congress could not reasonably have intended the Commission to

---

[51] Ohio Rev. Code Ann. § 4928.12(A).

remove an RTO participation incentive based on a state's flagrant violation of federal law.

### 1.    RTO formation and membership is a field occupied by the Commission pursuant to Section 201 of the Federal Power Act.

FPA section 201 places regulation of interstate transmission of electricity squarely within exclusive federal jurisdiction: "Federal regulation of. . . the transmission of electric energy in interstate commerce. . . is necessary in the public interest."[52]  Indeed, the FPA was enacted in order to ensure that interstate transmission could be regulate.  In 1927, the Supreme Court held that states lacked the power under the Commerce Clause to regulate interstate transmission.  The FPA was intended to close that regulatory gap by creating a federal agency to do so.[53]

In *New York v. FERC*, the Supreme Court described the breadth of the Commission's oversight of transmission of electric energy in interstate commerce.[54]  The Court affirmed the Commission's open access transmission requirements for unbundled retail transmissions because "FERC's jurisdiction over electricity transmissions contains no such limitation [to the wholesale market],"[55] and "the FPA contains such 'a clear and specific grant of jurisdiction' to FERC over interstate transmissions."[56]  As the

---

[52] 16 U.S.C. § 824(a).

[53] *New York*, 535 U.S. at 6; *Attleboro*,  273 U. S. at 88-89.

[54] *New York,* 535 U.S. at 16-24.

[55] *Id.* at 20.

[56] *Id*. at 21.

21

Commission observed in Order No. 888, "unbundled transmission service involves only the provision of 'transmission in interstate commerce' which, under the FPA, is *exclusively* within the jurisdiction of the Commission."[57]

When Congress has thus occupied a field, state laws in that same field are preempted.  Congressional intent to occupy a field for federal regulation can be inferred where "Congress may have intended 'to foreclose any state regulation in the *area*,' irrespective of whether state law is consistent or inconsistent with 'federal standards'.  In such situations, Congress has forbidden the State to take action in the *field* that the federal statute pre-empts."[58]  Here, Congress has clearly determined that interstate transmission of electric energy be regulated federally, and it assigned the task of regulatory oversight to the Commission.

### 2.  State Laws Mandating RTO Membership Intrude on the Commission's Exclusive Field of Regulation.

A state law purporting to permit utilities to transmit electricity only if they agree to turn over control of their transmission facilities to a third party, as Ohio's law purports to

---

[57] *Promoting Wholesale Competition Through Open Access Non-Discriminatory Transmission Servs. by Pub. Utils.; Recovery of Stranded Costs by Pub. Utils. & Transmitting Utilities*, Order No. 888, FERC Stats. & Regs ¶ 31,036, at 31,781 (1996) (emphasis added) (subsequent history omitted).  *See also Pac. Gas & Elec. Co.*, 170 FERC ¶ 61,194, at P 6 (2020) (affirming 50 basis point ROE adder for PG&E and noting "the issue in this proceeding involves the transmission and sale at wholesale of electric energy in interstate commerce, over which the FPA provides exclusive jurisdiction to this Commission.").

[58] *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (emphasis in original) (quoting *Ariz. v. United States*, 567 U.S. 387, 401 (2012)).

do, intrudes on the Commission's field of regulation. The state may not dictate the framework within which the utility will transmit power across state lines.

When a utility joins an RTO, it surrenders the operational control of its transmission facilities.[59]  As the Commission stated in Order No. 2000, RTO operational authority must, at a minimum, include "the authority to control transmission facilities. This includes, but is not limited to, switching transmission elements into and out of operation in the transmission system (e.g., transmission lines and transformers), monitoring and controlling real and reactive power flows, monitoring and controlling voltage levels, and scheduling and operating reactive resources."[60]  RTO member transmission providers make none of the day-to-day operational decisions involving their transmission assets; yet, they retain the costs and risks associated with asset maintenance, repair, and restoration.

Under the FPA's allocation of authority, a state has no power to compel a utility to surrender the operational control of its interstate transmission facilities.  Such state action intrudes into the Commission's exclusive jurisdiction over rates and practices affecting rates of interstate transmission.  The intrusion is particularly patent in a case like this one, where the utility in question is a multi-state utility that has a single federal rate.

---

[59] *See* Order No. 2000, FERC Stats. & Regs. ¶ 31,089 at p. 31,064.

[60] *Id.* at 31,090.

23

### 3.    State RTO Membership Mandates Conflict with FPA Section 202.

States lack the power to enact RTO membership mandates for another reason as well: such mandates conflict with two provisions in section 202.

First, section 202(a) expressly makes transmission organizations voluntary. It provides that "the Commission is empowered and directed to divide the country into regional districts for *the voluntary interconnection and coordination of facilities* for the generation, transmission, and sale of electric energy . . . . It shall be the duty of the Commission *to promote and encourage such interconnection* and coordination within each such district and between such districts."[61] Accordingly, in Order No. 2000, which encouraged RTO formation, the Commission expressly rejected calls to make RTO formation or RTO participation mandatory.[62] Instead, in accordance with Congress's FPA section 202 directive, the Commission has let utilities decide whether and how to participate in RTOs. The Commission's reliance on a voluntary approach to RTO formation arises in part from the recognition that utilities give up significant planning authority, operational control, and tariff filing rights when they join RTOs.[63]

---

[61] 16 U.S.C. § 824a(a) (emphasis added).

[62] *See* Order No. 2000, FERC Stats. & Regs. ¶ 31,089 at p. 31,033 (concluding that the Commission "should pursue a voluntary approach to participation in RTOs" and that "a voluntary approach as [the Commission has] structured it, with guidance and encouragement from the Commission, is most appropriate at this time. . . to allow involved participants the flexibility to develop mutually agreeable regional arrangements with respect to RTO formation and coordination").

[63] *See* Order No. 2000, FERC Stats. & Regs. ¶ 31,089 at p. 31,033-34 (explaining the Commission's reliance on voluntary RTO formation and rejection of calls to mandate RTO

24

The voluntary nature of RTO membership, moreover, was critical to the D.C. Circuit's affirmance of Order No. 1000's mandatory planning processes. The Court held that Order No. 1000 did not violate section 202(a)'s voluntariness requirement precisely because Order No. 1000 did not encompass transmission operations. "[A]ny transmission planning relevant to [new transmission] facilities occurs prior to those matters that [section 202(a)] *mandates be voluntary*."[64]

A state law mandating action that Congress expressly directed should be voluntary "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[65] Congress expressly authorized the creation of regional transmission organizations and invested the Commission with the power to oversee them—but provided that membership must be voluntary. A state mandate directly conflicts with that directive. And, again, the conflict is particularly stark in a case like this one, involving a multi-state utility.

Second, section 202(b) underscores that the Commission has exclusive jurisdiction to regulate RTO membership. It provides a process under which the state *must petition the Commission if it wishes to compel a utility to interconnect with the* interstate grid, and

---

formation); *Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 272 F.3d at 614 (holding that Order No. 2000 does not mandate RTO formation or participation).

[64] *S.C. Pub. Serv. Auth. v.* FERC, 762 F.3d 41, 59 (D.C. Cir. 2014) (emphasis added) (alteration in original) (quoting *Transmission Planning & Cost Allocation by Transmission Owning & Operating Pub. Utils.,* Order No. 1000-A, 139 FERC ¶ 61,132, at P 125 (2012)).

[65] *Oneok, Inc.*, 575 U.S. at 377 (quoting *Cal. v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989)).

the Commission can only so order the utility upon a finding that doing so is "necessary or appropriate in the public interest" and does not place any "undue burden" on the utility.[66] This provision would be pointless if a state could circumvent the Commission and accomplish the exact same thing simply by unilaterally mandating RTO membership.

AEP emphasizes again that it does not here ask the Commission to invalidate any state law.  The question here is whether the Commission make *its own rate* dependent on that state law.  And in answering that question, the Commission cannot duck the jurisdictional problems that state laws like Ohio's produce.  The Commission cannot reasonably make section 219's RTO participation incentive dependent upon whether a state has enacted a law that the state has no power to enact.

### D.    Revoking AEP's RTO Participation Incentive Violates the Text of Section 219.

The OCC's requested relief violates section 219 in other respects as well:  on its face, the statute makes the participation incentive turn solely on whether a utility has "joined" an RTO, without regard to its reasons for joining.

The Commission avoided this issue in *Dayton* by relying on its new interpretation of Order 679.  But the Commission previously *applied* Order 679 to *grant* AEP's RTO participation incentive.  While the Commission may be entitled to change its interpretation of its own order, it cannot adopt a new interpretation that is inconsistent with the plain language of the statute.  Yet that is exactly what the OCC asks the Commission to do—and the Commission cannot avoid grappling with that inconsistency

---

[66] 16 U.S.C. § 824a(b).

26

if it extends *Dayton* to these different facts, and takes away an RTO participation

incentive that it previously granted.

### 1. Section 219 Does Not Permit the Commission to Impose a Voluntariness Requirement.

Section 219 leaves no room for a voluntariness requirement.  It provides that "the

Commission shall, to the extent within its jurisdiction, provide for incentives to *each*

transmitting utility or electric utility *that joins* a Transmission Organization."[67]  This

statutory command is clear—the Commission must provide incentives to every utility

that "joins" a Transmission Organization, regardless of the reason.  The AEP East

companies in PJM have joined a Transmission Organization.  And the Commission's

grant of the RTO participation incentive to those companies was expressly premised on

the fact that it was "consistent with the stated purpose of Section 219 of the FPA" and "is

intended to encourage AEP's continued involvement with PJM."[68]

Despite claiming (without substantive discussion) that section 219 supports its

argument,[69] and despite identifying as an issue presented whether AEPSC's affiliates can

continue to recover the RTO participation incentive under section 219,[70] the OCC never

even addresses the prior Commission determinations under the statute, nor points to any

language in the statute that supports its claims.  Importantly, the OCC cannot simply cite

---

[67] 16 U.S.C. § 824s(c) (emphasis added).

[68] AEP Incentive Order at P 30.

[69] Complaint at 17.

[70] *Id*. at 15.

*Dayton* for this point, because the Commission explicitly found in the *Dayton* orders that arguments concerning "the plain language of section 219(c)" were "beyond the scope of th[e] proceeding."[71]

The Complaint essentially asks the Commission to impose an extra-textual requirement that the "transmitting utility or electric utility" must have *voluntarily* joined, and not merely joined, "a Transmission Organization." Congress never required as much, as the Commission has explicitly recognized: "section 219 does not explicitly require voluntariness."[72] What is does require is that all utilities joining a Transmission Organization receive an incentive—precisely what the OCC is arguing against here.

There is no basis for the Complaint to impose the OCC's requested extra-textual reading of the statute. "It is a fundamental principle of statutory interpretation that absent provision[s] cannot be supplied by the courts[,]"[73] a holding that applies with equal force to agencies such as the Commission when evaluating its statutory authority. The "unambiguously expressed intent of Congress" is clear from the face of the statute,[74] as

---

[71] Dayton Rehearing Order, 178 FERC ¶ 61,102 at P 18.

[72] Dayton Initial Order, 176 FERC ¶ 61,025 at P 26.

[73] *Little Sisters of the Poor Saints Peter & Paul Home v. Pa.*, 140 S. Ct. 2367, 2381 (2020) (citations omitted); *see also Borden v. United States,* 141 S. Ct. 1817, 1829 (U.S. June 10, 2021) ("Once again, statutory construction does not work that way: A court does not get to delete inconvenient language and insert convenient language to yield the court's preferred meaning.").

[74] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc*., 467 U.S. 837, 843 (1984).

28

**JA382**

Congress declined to impose a voluntariness requirement.  Under guiding principles of statutory interpretation, the Complaint's reading cannot stand.[75]

First, Congress could have imposed a voluntariness requirement in the statute, but elected not to do so.  There is no basis to read the statute as permitting one.[76]  Second, the Commission's longstanding "interpretation of the statute is that eligibility for this incentive flows to an entity that joins a Transmission Organization and is not tied to when the entity joined."[77]  Indeed, in the Commission's prior approval of the RTO participation incentive for AEPSC's affiliates, the Commission explicitly noted that "[s]ection 219 of the FPA specifically provides that the Commission *shall* provide incentives to *each* transmitting utility that joins an RTO."[78]  That further demonstrates that to be eligible for the incentive under the statute, a finding of "voluntariness" is not required.[79]  Third, the

---

[75] *Id.* 467 U.S. at 843 n.9 ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

[76] *E.g., Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994) ("If, as respondents seem to say, Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text. But it did not."); *Franklin Nat'l Bank v. New York*, 347 U.S. 373, 378 (1954) (finding "no indication that Congress intended to make this phase of national banking subject to local restrictions, as it has done by express language in several other instances"); *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996) ("Congress . . . demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and . . . the language used to define the remedies under RCRA does not provide that remedy.").

[77] Order No. 679, FERC Stats. & Regs. ¶ 31,222 at p. 30,526.

[78] *AEP Appalachian Transmission Co.*, 130 FERC ¶ 61,075 at P 21.

[79] *E.g., Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 168 (2001) (looking to agency's original interpretation of a statute to determine its meaning).

purpose of the statute—which is relevant to determining its meaning[80]—is to "benefit[] consumers by ensuring reliability and reducing the cost of delivered power by reducing transmission congestion."[81]  As discussed below, this purpose is effectuated by *joining* an RTO, regardless of why a utility joins.  There is no basis for the Commission to impose, as the OCC requests, a voluntariness requirement under the plain language of section 219, especially 17 years *after* the Commission determined that the AEP Ohio companies were eligible for the RTO participation incentive.  Fourth, there are good reasons why Congress would not have wanted the RTO participation incentive to depend on state law. For one thing, the Commission is not an expert on state law, yet (as this case and *Dayton* demonstrate) would be called upon to resolve disputes over what state law mandates.  For another, as discussed above, states lack the power to mandate RTO membership because the Commission has exclusive jurisdiction over interstate transmission facilities, rates, and practices affecting rates—so in Congress's eyes, any utility that joins is doing so voluntarily.

>    **2.     The Complaint Fails to Demonstrate How the Ninth Circuit's Decision in *CPUC* Requires Imposing a Voluntariness Requirement**

The OCC repeatedly refers to the *Dayton* orders and their interpretation of *CPUC* as supporting its arguments.[82]  Its reliance is misplaced.

---

[80] *E.g., Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 275-79 (2016).

[81] 16 U.S.C. § 824s(a).

[82] *E.g.*, Complaint at 6-7.

30

**JA384**

As an initial matter, *CPUC* did not evaluate, interpret, or apply section 219's statutory language.  Rather, the Ninth Circuit found only that the Commission "did not reasonably interpret Order 679,"[83] because Order No. 679 (and Order No. 679-A) "commit FERC to case-by-case review of incentive adders even for utilities that have demonstrated ongoing membership in transmission organizations."[84]  Because the court found that the Commission did not engage in an individualized review for the utility in question (Pacific Gas & Electric), the Ninth Circuit remanded the case for future proceedings (wherein Pacific Gas & Electric indeed was awarded the incentive).[85]  The OCC twists *CPUC* in an attempt to support its claim that there shouldn't be any individualized review here, and that AEPSC's affiliates should automatically lose out on the incentive.  That is inconsistent with the Court's holding.

Moreover, *CPUC* does not impose a voluntariness requirement, let alone hold that one is required by section 219.  Even the language the Commission has previously relied on from *CPUC* demonstrates that the order did not impose voluntariness as a necessary condition.  For instance, in the *Dayton* Order the Commission referred to language where the Ninth Circuit stated that Order No. 679 "permits challenges to incentives on the grounds that they will not induce continuing participation in transmission

---

[83] *CPUC*, 879 F.3d at 973.

[84] *Id*. at 974.

[85] *Id*. at 980; *see also Pac. Gas & Elec. Co*., 168 FERC ¶ 61,038, at P 34 (2019), *reh'g denied*, 170 FERC ¶ 61,194 (2020).  That decision was subsequently upheld on review.  *Cal. Pub. Utils. Comm'n v. FERC*, No. 19-72897, 2022 WL 803838 (9th Cir. Mar. 17, 2022).

31

**JA385**

organizations."[86]  The Commission also repeatedly referred to the Ninth Circuit's finding that "the voluntariness of a utility's membership in a transmission organization is logically relevant to whether it is eligible for an adder."[87]  But "logically relevant" does not mean required—if the Ninth Circuit had meant as much, it surely would have said so.

Reference to any Commission "policy" fares no better.  *CPUC* merely held that the Commission relied on an erroneous interpretation of Order No. 679, and "[b]ecause that interpretation is erroneous," the Commission engaged in an unexplained and unacknowledged departure from its policy, which is arbitrary and capricious.[88]  Nothing in that discussion indicated that the Commission must find that a utility that has previously been awarded the RTO Participation Adder must have it stripped.

*CPUC* merely imposed a requirement that the OCC declines to follow here—a requirement that the Commission undertake a "case-by-case analysis" that "inquire[s] into [the utility's] specific circumstances" in evaluating the appropriateness of an incentive.[89]  That is not what the OCC argues for, which (as explained above) alone should be sufficient to defeat its Complaint.

---

[86] Dayton Initial Order, 176 FERC ¶ 61,025 at P 28 n.52 (quoting *CPUC*, 879 F.3d at 976-77).

[87] *Id*. P 27 (quoting *CPUC*, 879 F.3d at 975).

[88] *CPUC*, 879 F.3d at 978.

[89] *Id.* at 979.

32

**JA386**

### 3. Imposing a Voluntariness Requirement Ignores the Purpose of the RTO Incentive, Which is to Offset the Cost to Transmission Owners in Exchange for the Benefits that Membership Provides to Customers

Application of a voluntariness requirement would entirely ignore the substantial benefits generated for customers by RTO participation, and the corresponding risks faced by a utility that participates in an RTO, which do not change whether or not their participation is mandated. Indeed, these benefits were explicitly recognized by the Commission in awarding AEPSC's affiliates the RTO Participation Adder.[90] And in Order No. 679, the first "basis" the Commission identified for the RTO Adder was "a recognition of the benefits that flow from membership in such organizations," *i.e.*, RTOs.[91] The entire purpose of enacting section 219 in the first place was to "benefit[] consumers by ensuring reliability and reducing the cost of delivered power by reducing transmission congestion."[92] The continued membership of AEPSC's affiliates in PJM effectuates that purpose, and provides substantial benefits to transmission customers throughout PJM—a fact the OCC never even discusses. There is no basis to ignore these benefits in evaluating whether it is appropriate to modify rates as the OCC suggests.

---

[90] *AEP Appalachian Transmission Co.*, 130 FERC ¶ 61,075 at P 21 ("The consumer benefits, provided by such organizations, including reliable grid operation, are consistent with the purpose of section 219.").

[91] Order No. 679, FERC Stats. & Regs. ¶ 31,222 at p. 30,525.

[92] 16 U.S.C. § 824s(a).

33

## IV.    The Ohio Statute Does Not Mandate Participation in a Transmission Organization.

The Ohio statute only requires that an Ohio utility become a member of and transfer control of its transmission facilities to a "qualifying transmission entity,"[93] but that is not necessarily the same thing as a "Transmission Organization" under FPA section 219.  While AEPSC recognizes the Commission has recently rejected this argument, it should reconsider its decision.

First, it appears the Commission's conclusion previously rested on *dicta* in an Ohio state supreme court case, *Ohio Consumers' Counsel v. Public Utilities Commission*.[94]  There, the fact that certain "deferred charges were authorized by federal law" was not at issue,[95] so the supreme court's statements (which were cited by the Commission) establishing that fact were not relevant to the outcome of the proceeding.  They are dicta.  Indeed, in a more recent Ohio supreme court case, that body has recognized that the statute "required incumbent electric-distribution utilities to transfer control of their transmission assets to 'one or more qualifying transmission entities.'"[96]  While recognizing PJM qualified as one, the court never intimated membership in a transmission organization was required, as the Commission reads *OCC v. PUCO* to do.

---

[93] Ohio Rev. Code Ann. § 4928.12(A).

[94] Dayton Rehearing Order, 178 FERC ¶ 61,102 at P 23 (citing *Ohio Consumers' Counsel v. Pub. Utils. Comm'n,* 856 N.E.2d 940, 948 (Ohio 2006).

[95] *Id*. 856 N.E.2d at 949.

[96] *In re Application of Ohio Power Co*., 20 N.E.3d 699, 701 (Ohio 2014).

34

In any event, centralized transmission planning is a requirement of RTO qualification and an important factor for the benefits that RTOs provide to customers.[97] But a "qualifying transmission entity" that satisfies the requirements of the Ohio statute would not need to engage in centralized transmission planning. So the two are not co-extensive. The Commission largely ignored this argument based on the Ohio supreme court decision noted above,[98] but as explained it cannot sustain the Commission's position.

Moreover, by joining PJM rather than creating and joining an entity that merely satisfies the criteria necessary to qualify as a transmission entity, the AEP Ohio Companies provide substantial benefits for their customers. PJM produces annual savings of $3.2 to $4 billion for consumers.[99] PJM's market spans thirteen states and the District of Columbia, providing significant benefits to consumers in Ohio by granting access to a wider pool of resources that has significantly reduced generation costs. The integrated PJM transmission system has reduced the need for additional generation by up to $3.78 billion annually.[100] These benefits are significant and cannot be ignored.

## V.    Admissions and Denials of Material Allegations

Pursuant to the requirement of Rule 213(c), AEPSC provides the following admissions or denials to the OCC's material allegations in the Complaint.

---

[97] Order No. 2000, FERC Stats. & Regs. ¶ 31,089 at p. 31,111, 31,126.

[98] Dayton Rehearing Order, 178 FERC ¶ 61,102 at PP 25-26.

[99] *PJM Value Proposition,* PJM Interconnection at 1 (2019), https://www.pjm.com/-/media/about-pjm/pjm-value-proposition.ashx.

[100] *The Benefits of the PJM Transmission Sys*., PJM Interconnection at 1 (Apr. 16, 2019), https://www.pjm.com/-/media/library/reports-notices/special-reports/2019/the-benefits-of-the-pjm-transmission-system.pdf.

35

1. AEPSC denies that it is a public utility, or that it has a transmission rate on file that can be modified by an order on the Complaint or that it has ever received the RTO Participation Adder.

2. AEPSC denies that it serves any customers as it is not a public utility and denies any allegation that it can serve customers through its affiliates.

3. AEPSC denies that participation by its affiliates who are PJM members in PJM is not voluntary or is required by the Ohio Revised Code.

4. AEPSC denies that Columbus Southern Power Company is an AEP affiliate.

5. AEPSC denies that any transmission rates of its affiliates are excessive.

6. AEPSC admits that FERC authorized certain AEP affiliates to include the RTO Participation Adder in their transmission formula rates in 2008 and 2010 respectively.

7. AEPSC denies that it or its transmission-owning utilities are similarly situated to Dayton.

8. AEPSC denies that supplemental projects "received no cost-of-service regulatory oversight in Ohio."[101]

9. AEPSC denies that it would be discriminatory for the Commission to allow any AEPSC affiliate in Ohio to retain the RTO Participation Adder.

To the extent any material fact or allegation in the Complaint is not specifically admitted in this Answer, it is denied.  AEPSC reserves all rights to challenge any

---

[101] Complaint at 14.

supplemental testimony or evidence that may be submitted should this case be set for hearing.

## VI.    Conclusion

The Complaint fails to satisfy the basic requirements of section 206 to demonstrate that the continuation of the RTO Participation Adder for any AEP affiliates is no longer just and reasonable.  As a result, for the reasons set forth herein, the Commission should reject the Complaint.

Respectfully submitted,

*/s/ Steven J. Ross*

| | |
|---|---|
| Stacey Burbure | Steven J. Ross |
| Senior Counsel | William M. Keyser |
| American Electric Power Service | Shaun M. Boedicker |
| Corporation | Steptoe & Johnson LLP |
| 801 Pennsylvania Ave, NW | 1330 Connecticut Avenue NW |
| Suite 735 | Washington, D.C.  20036 |
| Washington, DC 20004 | (202) 429-3000 |
| (202) 383-3452 | sross@steptoe.com |
| slburbure@aep.com | wkeyser@steptoe.com |
| | sboedicker@steptoe.com |

Matthew E. Price
Zachary C. Schauf
Ashwini Bharatkumar
Jenner & Block LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001

*Counsel for American Electric Power*
*Service Corporation*

March 31, 2022

37

**JA391**

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing "Answer of American Electric Power Service Corporation" was served this 31st day of March, 2022, upon the official service list maintained by the Secretary in this proceeding.

/s/ Shaun M. Boedicker
Shaun M. Boedicker
Steptoe & Johnson LLP
1330 Connecticut Avenue NW
Washington, D.C.  20036
(202) 429-8066
sboedicker@steptoe.com

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| **Office of the Ohio Consumers' Counsel,** | ) | |
| **Complainant,** | ) | |
| | ) | |
| **v.** | ) | **Docket No. EL22-34-000** |
| | ) | |
| **American Electric Power Service** | ) | |
| **Corporation,** | ) | |
| **American Transmission Systems, Inc.** | ) | |
| **and,** | ) | |
| **Duke Energy Ohio, LLC,** | ) | |
| **Respondents** | ) | |

**DUKE ENERGY OHIO, LLC**
**ANSWER TO COMPLAINT OF**
**OFFICE OF THE OHIO CONSUMERS' COUNSEL**

Pursuant to Sections 206(f) and 213 of the Rules of Practice and Procedure of the Federal Energy Regulatory Commission (the "Commission" or "FERC"),[1] Duke Energy Ohio, LLC ("DEO"), respectfully submits the following response to the complaint of the Office of the Ohio Consumers' Counsel ("OCC" or "Complainant") filed in the above-captioned docket on February 24, 2022 ("Complaint") against DEO, the American Electric Power Service Corporation, and American Transmission Systems, Inc. (collectively, "Respondents"). The Complaint is deficient on its face, and also mistakes both the law and the relevant facts, and so must be dismissed or denied with prejudice.

The OCC asks the Commission to reduce DEO's return on equity ("ROE") by 50 basis points based on a narrow argument that DEO is no longer eligible for the 50 basis point adder ("RTO Participation Adder"). But the Complaint fails at the first step of this Section 206

---

[1]     18 C.F.R. §§ 385.206, 213 (2021).

1

proceeding. It makes no showing that DEO's existing rate is unjust and unreasonable and provides no evidence demonstrating that DEO's ROE is outside the zone of reasonableness.[2] Nor does it make a factual showing that the circumstances have changed since the Commission approved DEO's rates, including the RTO Participation Adder, as just and reasonable.

Instead the Complaint relies entirely on the fact that the Commission recently denied the application of one Ohio utility, the Dayton Power & Light Co. ("DP&L"), for an RTO Participation Adder because it found that DP&L's participation in a regional transmission organization ("RTO") was mandatory under Ohio law.[3] From there, the OCC assumes that since the Commission declines to newly grant one Ohio utility the RTO Participation Adder under Section 205, then all utilities with transmission assets in Ohio should have their previously-approved rates reduced under Section 206.

This simplistic argument must fail for several reasons. First, *Dayton* is not controlling here. That case involved an application for a *grant* of the RTO Participation Adder under Section 205 of the FPA, whereas the Complaint is in a very different procedural position where it asks the Commission to affirmatively strip away RTO Participation Adders that the Commission determined are just and reasonable. Further, the Complaint fails to account for important factual differences between DP&L and DEO, including that DEO has significant transmission

---

[2]     *Emera Maine v. FERC*, 854 F.3d 9, 24 (D.C. Cir. 2017) ("*Emera Maine*"); 16 U.S.C. § 824e(b) ("[T]he burden of proof to show that any rate, charge, classification, rule, regulation, practice, or contract is unjust, unreasonable, unduly discriminatory, or preferential shall be upon the Commission or the complainant.")

[3]     *See The Dayton Power and Light Co.*, 172 FERC ¶ 61,140, *Order Addressing Arguments Raised on Rehearing, and Setting Aside Prior Order, in Part*, 173 FERC ¶ 61,154 (2020), *Order on Paper Hearing*, 176 FERC ¶ 61,025 (2021); *Order Addressing Arguments Raised on Rehearing*; 178 FERC ¶ 61,102 (2022) ("*Dayton*").

2

operations in another state – Kentucky – and that those Kentucky assets are subject to Kentucky law.

Second, the holding in *Dayton* should not be applied to DEO. *Dayton* read into a prior policy statement – Order 679[4] – a voluntariness requirement that is plainly contrary to Section 219 of the Federal Power Act. In fact, the Commission recently explained in a notice of proposed rulemaking on transmission incentives that "FPA section 219(c) contains no requirement that participation in an RTO/ISO must be voluntary to merit the incentive; rather, it states the Commission shall provide for incentives. Neither the benefits that customers receive from a transmitting utility's or electric utility's membership in an RTO/ISO, nor the burden imposed upon the transmitting utility or electric utility, are diminished if the transmitting utility or electric utility is required by law to join an RTO or ISO."[5] In other words, DEO is statutorily entitled to an incentive for its membership in PJM, regardless of what the Commission said about Ohio state law in *Dayton*.

Third, the Ohio state law in question - Ohio Rev. Code § 4928.12 – does not actually compel DEO to join an RTO. Rather, it requires DEO to be a member of a "transmission entity," which is defined by a minimum set of criteria that do not on their own amount to an RTO.

For all these reasons – and more, as detailed in the body of this response – the Commission should dismiss the Complaint with prejudice as unsupported, deficient, and contrary to the law.

---

[4]     *Promoting Transmission Investment Through Pricing Reform,* Order No. 679, 116 FERC ¶ 61,057, *order on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345 (2006) ("Order No. 679").

[5]     *Electric Transmission Incentives Policy Under Section 219 of the Federal Power Act*, 170 FERC ¶ 61,204 at P 95 (2020) ("Transmission Incentives NOPR").

3

**JA395**

## I.    Communications

DEO requests that all notices, correspondence, and other communications concerning this

filing be directed to the following persons:[6]

Heather Horne                                Noel Symons
Associate General Counsel                    Colin Francis
Duke Energy Corporation                      McGuireWoods LLP
1301 Pennsylvania Ave. NW                    888 16th St. NW, Suite 500
Suite 200                                    Black Lives Matter Plaza
Washington, DC 20004                         Washington, DC 20006
(202) 824-8009                               (202) 857-2929
heather.horne@duke-energy.com                nsymons@mcguirewoods.com
                                             cfrancis@mcguirewoods.com

## II.    Answer

### A.    The Complaint provides no evidence that DEO's rates are unjust and unreasonable or that circumstances have changed since the Commission approved the RTO Participation Adder as just and reasonable

The OCC has the burden of proof in this Section 206 proceeding.  That is, the OCC must

demonstrate that DEO's rate is unjust and unreasonable.  Yet the OCC makes little attempt to

meet its burden.  Instead, it simplistically assumes that because the Commission declined to grant

an RTO Participation Adder to one Ohio transmission owner in a Section 205 proceeding, that

the Commission must now affirmatively strip away DEO's just and reasonable RTO

Participation Adder because it owns transmission assets in the state.  This superficial argument

does not meet the Section 206 burden, and conflates the Section 206 burden with a Section 205

burden.  It also conflates the Participation Adder with DEO's rate.  The Complaint fails to

address, much less overcome, important procedural, factual and legal hurdles.

---

[6]      DEO respectfully requests waiver of the Commission's regulations, to the extent necessary, to
permit more than two persons to be placed on the service list for this proceeding.

4

The purpose of Section 206 is "quite different" from that of Section 205,[7] with Section 206's procedures being "stricter" than those of Section 205.[8]  This is because Congress designed FPA Section 206 to ensure that complainants must bear the burden to show that existing rates are unjust and unreasonable "before the agency can dictate the[] level or form" of the utility's rates.[9] The "traditional, accepted legal standard used to assess whether an existing rate is no longer just and reasonable" is "whether circumstance or conditions have changed since the rate was originally accepted or new evidence is available that shows the existing accepted rate is no longer just and reasonable."[10]  "[T]his is the standard traditionally used to discern whether the challenger of an existing rate has a legitimate reason to change the existing rate, as opposed to launching a collateral attack, revisiting and rehashing old arguments and evidence."[11]

The Complaint fails to meet this fundamental standard.  Ohio Revised Code section 4928.12 was enacted in 1999, long prior to when DEO joined PJM in 2012 and when the Commission approved DEO's RTO Participation Adder in 2015 through a settlement with its customers.  The Complaint concedes this fact.[12]  But the OCC points to no factual evidence to indicate that there is a legitimate reason to change the existing rate.  Instead, the Complaint assumes that DEO's rates are per se unjust and unreasonable simply because they were accepted

---

[7]     *Emera Maine*, 854 F.3d 9 at 24 (2017) (quoting *City of Winnfield, La. v. FERC*, 744 F.2d 871, 875 (D.C. Cir. 1984)).

[8]     *Id*. (quoting *City of Anaheim, Cal. v. FERC*, 558 F.3d 521, 525 (D.C. Cir. 2009)).

[9]     *See City of Winnfield, La. v. FERC*, 744 F.2d 871, 875 (D.C. Cir. 1984).

[10]    *La. Pub. Serv. Comm'n v. FERC*, 139 FERC ¶ 61,107, at P 120 (2012) (citing *Tesoro Alaska Petroleum Co. v. FERC*, 234 F.3d 1286, 1288 (D.C. Cir. 2000) (holding that the party challenging the existing rate bears the burden of showing changed circumstances support a finding that the exiting rate is unjust and unreasonable)), *reh'g denied*, 153 FERC ¶ 61,188 (2015), *pet. for review denied*, 860 F.3d 691 (D.C. Cir. 2017)).

[11]    *Id.*

[12]    Complaint at 10.

before the Commission issued the *Dayton* order. And that assumption rests on another assumption, that "there are no material differences between DP&L and" DEO.

There are, in fact, material differences between DP&L and DEO, which render both assumptions incorrect. First, DP&L was asking for permission to use an adder. DEO already has that permission. Second, DP&L operates solely in Ohio, but DEO has transmission operations outside of Ohio, meaning that the Ohio law that OCC touts does not apply to all of DEO's assets.

The Complaint is devoid of the type of factual analysis the Commission requires when evaluating existing ROEs.[13] There is no expert witness testimony, analysis of financial models or conditions, or any factual support whatsoever to support the OCC's conclusory statements that DEO's rates are unjust and unreasonable. At an absolute minimum the OCC should be required to show that DEO's ROE – inclusive of the RTO Participation Adder – lies outside the zone of reasonableness.[14] Absent evidence to that effect, as is the case here, the Complaint is nothing more than an exercise in speculation and the Commission must dismiss it.

### B.    DEO's rates are not discriminatory

The OCC claims that it "would be unduly discriminatory to charge Ohio retail consumers in the AEP, ATSI and Duke service territories more for their transmission services than the same electrical transmission service provided to consumers in the DP&L service territory because of the RTO Participation Adder. These consumers should not be charged more simply because the Transmission Owners were authorized to charge for the RTO Participation Adder before the

---

[13]    *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion No. 569, 169 FERC ¶ 61,129 (2019), *order on reh'g*, Opinion No. 569-A, 171 FERC ¶ 61,154, *order on reh'g*, Opinion No. 569-B, 173 FERC ¶ 61,159 (2020).

[14]    *Emera Maine,* 854 F.3d 9 at 24-25.

Ninth Circuit opinion in *CPUC* and before FERC's order in *Dayton*."[15] This argument is entirely unsubstantiated. The OCC is again conflating the RTO Participation Adder with the rate, without making any attempt to show that DEO's rate is actually higher. Further, the OCC does not explain how AEP, ATSI, and DEO provide the "same electrical transmission service" as that provided in the DP&L service territory. Nor could it. Each transmission system is different, based on different investments, and serving different customers.

Each of the named utilities charge different transmission formula rates that are set forth in different parts of the PJM Tariff. The rates were established at different times based on the specific investments of each utility. Each of the rates have been accepted by the Commission as just and reasonable. *Dayton* was a case about DP&L's rate, not DEO's. If establishing DP&L's ROE makes DEO's ROE "unduly discriminatory" merely because it is a different number, then the entire ROE analysis established by the Commission and the courts would be meaningless.

The OCC's argument that allowing DEO to retain the RTO Participation Adder while denying DP&L the same RTO Participation Adder would unduly discriminate against Ohio consumers served by DEO[16] also doesn't make sense. DP&L has never had an RTO Participation Adder.[17] So the Commission's denial of DP&L's application for an RTO Participation Adder hasn't changed anything for any customer of either DP&L or DEO. The fact that the Commission denied a part of DP&L's Section 205 application in no way means that DEO's rates – which the Commission has accepted as just and reasonable – are all of a sudden discriminatory. The Complaint provides no support for such an argument.

---

[15]     Complaint at 11-12.

[16]     Complaint at 11.

[17]     *The Dayton Power & Light Co.*, 172 FERC 61,140 at 15 (2020) ("Dayton notes that it has been a member of PJM since 2004 but has not had a rate case since then to seek this incentive.").

The OCC also appears to misunderstand the requirements for a claim of undue discrimination. A finding of undue discrimination requires a showing that (1) two classes of customers are treated differently; and (2) the two classes of customers are similarly situated.[18] The Complaint makes no attempt to show that this standard is met. The OCC cites to no precedent to support the idea that a customer of one utility is similarly situated to a customer of a different utility simply because both utilities have operations in the same state, much less where one utility operates wholly in the state but the other utility operates in another state as well.[19]

### C. The Federal Power Act requires FERC to grant an incentive to every utility that joins an RTO

Section 219(c) makes clear that the Commission must provide an incentive to each utility that joins an RTO, without condition, and without a requirement that RTO membership be voluntary. It provides:

> In the rule issued under this section, the Commission *shall*, to the extent within its jurisdiction, *provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization*. The Commission shall ensure that any costs recoverable pursuant to this subsection may be recovered by such utility through the transmission rates charged by such utility or through the transmission rates charged by the Transmission Organization that provides transmission service to such utility.[20]

There is no "voluntary" element to this language. The directive is clear: the Commission must provide an incentive to each utility that joins a Transmission Organization. Full stop. Had Congress intended to place restrictions around the granting of the RTO Participation Adder it would have done so in the statute. But it did not do so. The Commission apparently agrees with

---

[18]    *TranSource, LLC v. PJM Interconnection, L.L.C.*, 168 FERC 61,119 at P 240 (2019).

[19]    *Transmission Agency of Northern Cal. v. FERC*, 628 F.3d 538, at 549 (D.C. Cir. 2010) ("The court will not find a Commission determination to be unduly discriminatory if the entity claiming discrimination is not similarly situated to others.") (citations omitted).

[20]    16 U.S.C. § 824s(c) (emphasis added).

this straightforward interpretation of Section 219 because it made essentially the same point in March 2020 that:

> FPA section 219(c) contains *no requirement that participation in an RTO/ISO must be voluntary to merit the incentive*; *rather, it states the Commission shall provide for incentives*. Neither the benefits that customers receive from a transmitting utility's or electric utility's membership in an RTO/ISO, nor the burden imposed upon the transmitting utility or electric utility, are diminished if the transmitting utility or electric utility is required by law to join an RTO or ISO.[21]

While the Commission reached a different conclusion in *Dayton*, DEO is entitled to challenge that interpretation to the extent it is applied to DEO, as advocated by OCC, and does so here, based upon the plain language of the statute. Neither Order No. 679 nor *CPUC*[22] do or could contravene the statute.

### D. DEO's participation in PJM is voluntary

Ohio Revised Code section 4928.12 forbids anyone from owning or controlling transmission facilities located in Ohio unless that entity is a member of, or transfers control of those facilities to, one or more "qualifying transmission entities."[23] A utility can comply with this requirement by becoming a member of a "transmission entity" that meets a minimum of nine criterion.[24]

---

[21] *Electric Transmission Incentives Policy Under Section 219 of the Federal Power Act*, 170 FERC ¶ 61,204 at P 95 (2020) ("Transmission Incentives NOPR") (emphasis added).

[22] *Cal. Pub. Util. Comm'n v. FERC*, 879 F.3d 966 (2018).

[23] Ohio Revised. Code section 4928.12(A).

[24] Ohio Rev. Code Ann. § 4928.12(B). The nine criterion are:

(1) The transmission entity is approved by the federal energy regulatory commission.

(2) The transmission entity effects separate control of transmission facilities from control of generation facilities.

(3) The transmission entity implements, to the extent reasonably possible, policies and procedures designed to minimize pancaked transmission rates within this state.

A transmission entity that merely satisfies the nine minimum criteria would not also qualify as an RTO. For example, there is no central planning requirement for the "transmission entities" described in the Ohio code, but there is such a requirement to be an RTO or a Transmission Organization as that term is defined by the Commission. Specifically, an RTO "must be responsible for planning, and for directing or arranging, necessary transmission expansions, additions, and upgrades,"[25] and "must . . . market interface practices among regions."[26] Therefore, were DEO to join a "transmission entity" that only satisfied the nine criteria, DEO would satisfy the Ohio statute but not be in an RTO.

In *Dayton* the Commission relied to some extent on Order No. 679, and particularly this language:

> [E]ntities that have already joined, and that remain members of, an RTO, ISO, or other Commission-approved Transmission Organization, are eligible to receive this incentive. The basis for the incentive is a recognition of the benefits that flow

---

(4) The transmission entity improves service reliability within this state.

(5) The transmission entity achieves the objectives of an open and competitive electric generation marketplace, elimination of barriers to market entry, and preclusion of control of bottleneck electric transmission facilities in the provision of retail electric service.

(6) The transmission entity is of sufficient scope or otherwise operates to substantially increase economical supply options for consumers.

(7) The governance structure or control of the transmission entity is independent of the users of the transmission facilities, and no member of its board of directors has an affiliation, with such a user or with an affiliate of a user during the member's tenure on the board, such as to unduly affect the transmission entity's performance. For the purpose of division (B)(7) of this section, a "user" is any entity or affiliate of that entity that buys or sells electric energy in the transmission entity's region or in a neighboring region.

(8) The transmission entity operates under policies that promote positive performance designed to satisfy the electricity requirements of customers.

(9) The transmission entity is capable of maintaining real-time reliability of the electric transmission system, ensuring comparable and nondiscriminatory transmission access and necessary services, minimizing system congestion, and further addressing real or potential transmission constraints.

[25]    18 C.F.R. § 35.34(k)(7).

[26]    *Id*. at (k)(8).

10

from membership in such organizations and the fact continuing membership is generally voluntary.[27]

This language simply explains that there is a connection between benefits and voluntariness: RTOs produce benefits for customers. To obtain the benefits for customers, transmission owners are provided with an incentive to join the RTO. So under a law like Ohio's, the RTO adder provides DEO with an incentive to join and remain in the RTO, just like the Commission said in Order No. 679, even though DEO has other options to comply with the Ohio law.

These other, non-RTO options include transferring functional control of its transmission facilities to an independent "transmission entity" that is approved by the Commission and satisfies the requirements of the Ohio statute, but still retain the power to plan its own transmission facilities. For example, DEO could potentially contract for independent transmission management services with an entity such as TranServ International[28] and appoint a separate Reliability Coordinator. Alternatively, DEO could create a state-wide coalition that includes an independent transmission entity, which could eliminate pancaked transmission rates, improve reliability service in Ohio, and otherwise meet the requirements of Ohio law. In either scenario, DEO would comply with Ohio law without needing to transfer centralized planning to the transmission entity.

The Complaint does nothing to meet its burden of showing that DEO is required by law to remain in an RTO. All the Complaint does is assume that because the Commission found that DP&L's membership in PJM was not voluntary, that DEO's membership in PJM also must be

---

[27]    Order No. 679, 116 FERC ¶ 61,057 at P 331.

[28]    *See, e.g., MidAmerican Energy Co.*, 115 FERC ¶ 61,326 (2006) (approving MidAmerican Energy Company's executed Transmission Service Coordinator (TSC) Agreement with TranServ International, Inc.).

11

involuntary, because both area utilities with operations in Ohio.[29]  But there are important factual differences between DEO and DP&L that the OCC does not address.  DP&L's operations and transmission facilities are entirely in the state of Ohio.  That is not the case for DEO.  A large portion of DEO's transmission assets are physically located in the Commonwealth of Kentucky (approximately 203 miles).  DEO need not include such assets in an RTO under the Ohio law (or any other law), and yet it has done so, voluntarily.  Accordingly, no matter how one looks at it, DEO is entitled to an adder, even if a "voluntariness" requirement is impermissibly read into FPA Section 219.

**E.**   **The Commission should not allow state laws to dictate Commission-jurisdictional rates**

The Commission has correctly recognized that RTO participation is voluntary.[30]  The Commission has also specifically found that DEO's participation in PJM is voluntary.[31]  RTOs are public utilities within the meaning of the Federal Power Act, and therefore the rates, terms and conditions of participation, which are set forth in filed rates, are subject to the Commission's exclusive jurisdiction.

State law cannot dictate ineligibility for an incentive required by the FPA.  Any such effect would be preempted under the Supremacy Clause of the Constitution.[32]  This can happen

---

[29]   Complaint at 9-10.

[30]   *See N.C. Waste Awareness & Reduction Network, Inc. v. Duke Energy Carolinas, LLC*, 151 FERC ¶ 61,079 at P 64 (2015) ("The Commission's longstanding policy is that RTO participation is voluntary.") (citing Order No. 2000-A, FERC Stats. & Regs. ¶ 31,092, at 31,357 and *Pub. Util. Dist. No. 1 of Snohomish Cty. v. FERC*, 272 F.3d 607 (D.C. Cir. 2001) ("*Snohomish*")).

[31]   *Duke Energy Ohio, Inc.*, 133 FERC ¶ 61,058 at PP 48-49 (2010); *see also Statement of Commissioner John R. Norris on Duke Energy Ohio, Inc. and Duke Energy Kentucky, Inc.*, Docket Nos. ER10-1562-000 and ER10-2254-000 (issued Oct. 21, 2010) ("Today's order makes clear that RTOs are voluntary.  This is a settled Commission policy that I support.  . . . I believe it is critical that we preserve the voluntary nature of RTO membership[.]").

[32]   *Hughes v. Talen Energy Mktg., LLC*, 136 S. Ct. 1288, 1297 (2016).

12

via field preemption – where "Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law" -- or conflict preemption – "where, under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[33]

If given the interpretation advocated by OCC, Ohio Revised Code section 4928.12 is field preempted because Congress has, through the Federal Power Act, legislated comprehensively to occupy the field of regulation of interstate transmission service and all "classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services."[34] Membership in PJM involves execution of agreements that are subject to the Commission's exclusive jurisdiction. Yet eight of the nine criteria of Ohio Revised Code Section 4928.12 purport to dictate terms and conditions for jurisdictional service to be provided by a transmission provider like PJM. And any requirement to become a member of such an entity, or transfer control of transmission to such an entity, directly conflicts with the Commission's determination that under federal law, RTO membership is voluntary.

Any interpretation that the Ohio Code requires joining an RTO without receiving an RTO adder is also conflict preempted because it is in direct conflict with Section 219 of the FPA, which directs the Commission to establish incentives for participation in an RTO but does not require participation in RTOs. Further, Section 202 of the FPA requires the Commission "both 'to divide the country into regional districts for the *voluntary* interconnection and coordination of facilities for the generation, transmission, and sale of electric energy' and 'to promote and

---

[33]    *Id.*

[34]    16 U.S.C. § 824d(c).

encourage such interconnection and coordination within each such district and between such districts.'"[35]  These regional districts perform the same function as the RTOs and ISOs of today, and this Congressional mandate is behind "the Commission's overarching objective to encourage participation in and formation of RTOs."[36]

The Commission regularly evaluates preemption issues as necessary in determining how to apply its policy.[37]  It should do so here by refusing to interpret the Ohio statute in a way that violates Commission policy that RTO membership is voluntary and the requirements of Section 219 of the Federal Power Act.  The Commission should also decline to apply a voluntariness test that turns on state law because it is tacit approval of states subjecting utilities to federal filing requirements, which the courts have consistently rejected.[38]

### F.    DEO has made significant investments in reliance on the RTO Participation Adder

DEO's RTO Participation Adder was not awarded to it by the Commission for an action (joining an RTO) that it had no choice to make.  Rather, the RTO Participation Adder was agreed to in a settlement between DEO and its customers after years of litigation and negotiations surrounding what rates DEO could charge as a member of PJM after its move from another RTO, MISO.[39]  As noted above, the Commission held that DEO's decision to join PJM was voluntary.  Nor was the RTO Participation Adder agreed to in isolation.  It was an important part of a settlement package that resolved numerous complex issues and resulted in DEO accepting a

---

[35]    *Snohomish*, 272 F.3d at 612 (citing to FPA Section 202(a), 16 U.S.C. § 824a(a)) (emphasis added).

[36]    *Id.*

[37]    *E.g., Advanced Energy Econ.*, 163 FERC ¶ 61,030 (2018); *Tri-State Generation & Transmission Ass'n, Inc.*, 172 FERC ¶ 61,173 (2020).

[38]    *E.g., Mass. Dep't of Pub. Utils. v. U.S.*, 729 F.2d 886, 888 (1st Cir. 1984).

[39]    *Duke Energy Ohio, Inc.*, 151 FERC ¶ 61,029 at PP 10, 14 (2015).

14

"greatly reduced level of recovery as compared to" what DEO had originally sought in its rate

filings.  In other words, DEO invested millions of dollars in its move from MISO to PJM, and

the RTO Participation Adder was an important piece of the global settlement that resolved years

of litigation around that move.  DEO relied on the RTO Participation Adder as a key part to the

settlement where it agreed to forego millions of dollars of costs that it was otherwise seeking

recovery of.[40]  Some of these costs were directly related to the decision to join PJM.[41]   In other

words, investors bore those costs.  But obtaining the RTO adder, which accrues to investors,

helps offset some of those costs of joining PJM.  While such reliance is not a guarantee that a

rate will never be revisited, it adds considerable force to the ordinary notion that under Section

206, rates should not be changed absent some change in relevant facts.

In such circumstances, grant of the Complaint would undermine the Commission's goals

of encouraging settlements and would undermine investor confidence in Commission decisions.

### G.    Alternatively, the Complaint should be dismissed as deficient

The Complaint is deficient because it fails to make a good faith effort to quantify the

financial impact or burden as a result of DEO's action or inaction.[42]  The OCC claims that it

"does not have the data that would be needed to determine" the effect of removing the RTO

Participation Adder from Respondent' rates.[43]  As a result, the OCC's attorneys perform a

meaningless math exercise based on a PJM graph purportedly showing the dollar value of all the

transmission investments in Ohio since 2010.[44]  This information is misleadingly presented,

---

[40]     *E.g., DEO*, Docket No. ER12-91, Settlement at 8-9 (filed Oct. 30, 2014) (defining "PJM Transition
         Costs" and stating such costs would be excluded from DEO's rates).

[41]     *Id.*

[42]     18 C.F.R. § 385.206(b)(4).

[43]     Complaint at 12.

[44]     *Id.*

based on unknown assumptions, and entirely irrelevant to subject matter of the Complaint. This math charade was completely unnecessary. DEO submits an annual informational filing with FERC each year that contains all the information the OCC would need to determine the impact of removing the RTO Participation Adder from DEO's rates.

### III.    Admissions and denials of material allegations

Pursuant to the requirement of Rule 213(c), DEO provides the following admissions or denials to the OCC's material allegations in the Complaint. DEO notes that the Complainant has not numbered the paragraphs in their Complaint. This makes responding to each factual allegation difficult and, therefore, to the extent a particular factual allegation is not admitted or denied in this answer, DEO denies such allegations.

1. DEO denies that participation in PJM is not voluntary or is required by the Ohio Revised Code.

2. DEO denies that its transmission formula rate is excessive.

3. DEO admits that FERC authorized DEO to include the RTO Participation Adder in its transmission formula rate in 2015.

4. DEO denies that it is similarly situated to DP&L.

5. DEO denies that it would be discriminatory for the Commission to allow DEO to retain the RTO Participation Adder.

### IV.    Conclusion

The Commission should deny the Complaint with prejudice for the reasons discussed in this answer.

Respectfully submitted,

*/s/ Heather Horne*
Associate General Counsel
Duke Energy Corporation
1301 Pennsylvania Ave. NW
Suite 200
Washington, DC 20004
(202) 824-8009
heather.horne@duke-energy.com

*/s/ Noel Symons*
Noel Symons
Colin Francis
McGuireWoods LLP
888 16th St. NW, Suite 500
Black Lives Matter Plaza
Washington, DC 20006
(202) 857-2929
nsymons@mcguirewoods.com
cfrancis@mcguirewoods.com

*Counsel to DEO*

Dated: March 31, 2022

17

**JA409**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 31st day of March 2022, caused to be served a copy of the foregoing upon all parties on the service list in these proceedings in accordance with the requirements of Rule 2010 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.2010 (2021).

Respectfully submitted,

*/s/ Maha Saad*
Maha Saad
McGuireWoods LLP
2001 K Street, NW, Suite 400
Washington, DC 20006
(202) 828-2807
msaad@mcguirewoods.com

UNITED STATES OF AMERICA
BEFORE THE
FEDERAL ENERGY REGULATORY COMMISSION

| | | |
|---|---|---|
| Office of the Ohio Consumers' Counsel, | ) | |
| Complainant | ) | |
| | ) | |
| v. | ) | Docket No. EL22-34-000 |
| | ) | |
| American Electric Power Service Corporation, | ) | |
| American Transmission Systems, Inc., and Duke | ) | |
| Energy Ohio, LLC, | ) | |
| Respondents | ) | |

COMMENTS OF PJM INTERCONNECTION, L.L.C.

PJM Interconnection, L.L.C. ("PJM") respectfully submits these comments in response to the February 24, 2022 Office of Ohio Consumers' Counsel's Complaint ("Complaint") seeking a Federal Energy Regulatory Commission ("Commission" or "FERC") declaration that in light of the Commission's recent *Dayton* Order,[1] American Electric Power Service Corporation, American Transmission Systems, Inc., and Duke Energy Ohio, LLC are "ineligible for the Order No. 679 transmission incentive known as the RTO Participation Adder."[2] PJM's comments emphasize two points[3]:  First, Congress directed that the Commission provide the RTO-Participation Incentive to each transmitting

---

[1] *The Dayton Power & Light Co.*, *order granting in part and denying in part request and setting paper hearing*, 172 FERC ¶ 61,140 (2020), *order on paper hearing denying RTO-Participation Incentive*, 176 FERC ¶ 61,025 (2021), *order denying rehearing*, 178 FERC ¶ 61,102 (2022).

[2] Complaint at 2 (footnote omitted).

[3] PJM does not repeat the arguments it has made elsewhere, but incorporates them by reference here.  *See* Initial Comments of PJM Interconnection, L.L.C., Docket No. RM20-10-000 (June 25, 2021); Reply Comments of PJM Interconnection, L.L.C., Docket No. RM20-10-000 (July 26, 2021); Request for Clarification and Motion to Intervene Out-of-Time by PJM Interconnection, L.L.C., Docket No. ER20-1068-001 (Sept. 16, 2020); Motion to Lodge of PJM Interconnection, L.L.C and Accompanying Exhibit, Docket No. ER20-1068-000 (Oct. 19, 2020); Request for Clarification of PJM Interconnection, L.L.C., Docket No. ER20-1068-003 (Aug. 16, 2021).

utility or electric utility that joins a regional transmission organization ("RTO") with no requirement that membership be voluntary.  Second, the benefits of RTO membership flow mostly to customers.

## I.    COMMENTS

### A.    Congress Compels the Grant of an Incentive for RTO Participation Without a Voluntariness Criterion.

Congress *proactively* supported RTOs by creating incentives to encourage continued RTO participation.  To that end, Congress directed that the Commission provide the RTO-Participation Incentive to each transmitting utility or electric utility that joins a Transmission Organization.[4]  In drafting section 219(c), Congress did not condition eligibility for the incentive on the voluntariness of joining an RTO.  This is so even though Congress was on notice at the time EPAct was enacted that some states, such as Ohio, had already passed their own mandates for RTO participation.[5]  When crafting statutory provisions, Congress is presumed to be aware of the current state of the law both at the federal and state level.[6]  Moreover, unless otherwise stated, "Congress when it enacts a

---

[4] The mandate found in the statutory text of Federal Power Act ("FPA") section 219(c) clearly anticipates the Commission granting an incentive that promotes membership and participation in Transmission Organizations like RTOs—a requirement confirmed by the legislative and policy backdrop of the Energy Policy Act of 2005 ("EPAct").  Energy Policy Act of 2005 § 1241, Pub. L. No. 109-58, 119 Stat. 594 (2005); Federal Power Act § 219(c) (codified at 16 U.S.C. § 824s(c)).

[5] Although some states require mandatory RTO membership, such provisions were generally included at the time of passage as part of a comprehensive state restructuring statute to transform the then-vertically integrated utility framework.  As part of that restructuring initiative, RTO participation language was included as part of the *quid pro quo* of the state opening up retail markets and granting stranded costs.  For example, the Ohio statute is explicit in this regard:  "[N]o entity shall own or control transmission facilities as defined under federal law and located in this state *on or after the starting date of competitive retail electric service* unless that entity is a member of, and transfers control of those facilities to, one or more qualifying transmission entities."  Ohio Rev. Code Ann. § 4928.12(A) (Lexis 2021) (1999) (emphasis added).

[6] *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.").

2

JA412

statute is not making the application of the federal act dependent on state law."[7]  In sum, Congress did not condition the RTO-Participation Incentive on state law particulars.

### B.    Substantial RTO Benefits Flow Principally to Consumers.

RTOs like PJM provide substantial benefits to consumers through enhanced reliability, competitive markets that spur entry for existing as well as new technologies such as demand response, energy efficiency and renewables, and regional and interregional planning.[8]  Within the PJM region,[9] the incentive amounts to approximately $156 million spread over total annual transmission billings of $31.1 billion.[10]  By contrast, PJM provides a total estimated annual savings of $3.2 billion to $4 billion to the energy marketplace. Thus, the ratio of the PJM RTO's benefits to the cost of the incentive is 23:1, which reflects the consumer benefits of transmission owner participation in an RTO versus the costs of the adder.

Breaking this overall value down reveals:

- $300 million in annual reliability savings, inclusive of congestion reduction savings;

- $1.2 billion to $1.8 billion in annual savings relating to lower reserve margins and competition from alternative resources due to planning efficiencies over a large region;

---

[7] *Jerome v. United States*, 318 U.S. 101, 104, (1943); *see NLRB v. Nat. Gas Util. Dist.*, 402 U.S. 600, 603 (1971) (following *Jerome*); *see also Dickerson v. New Banner Inst.*, 460 U.S. 103, 119 (1980) (following *Jerome* and *NLRB*).

[8] *See Electric Transmission Incentives Policy Under Section 219 of the Federal Power Act*, 175 FERC ¶ 61,035, at P 14 n.29 (2021) ("Supplemental NOPR").

[9] The cost of the RTO-Participation Incentive for all recipients for the year 2020 is estimated to be $402 million for the six jurisdictional RTOs and ISOs in the United States.

[10] *2020 State of the Market Report for PJM*, Monitoring Analytics, LLC, Table 8 (page 17) (Mar. 11, 2021), https://www.monitoringanalytics.com/reports/PJM_State_of_the_Market/2020/2020-som-pjm-vol1.pdf.

3

Case: 21-4072     Document: 67     Filed: 12/15/2023     Page: 111

- $1.1 billion to $1.3 billion in annual savings relating to integrating more efficient resources; and

- $600 million in annual savings relating to energy production costs on account of the PJM footprint's expanded dispatch area.[11]

## II.   CONCLUSION

PJM appreciates the Commission's consideration of these comments.

Respectfully submitted,

/s/ Mark J. Stanisz

Craig Glazer                              Mark J. Stanisz
Vice President-Federal Government Policy   Assistant General Counsel
1200 G Street, N.W.                        PJM Interconnection, L.L.C.
Suite 600                                  2750 Monroe Boulevard
Washington, D.C. 20005                     Audubon, PA 19403
(202) 423-4743                             (610) 666-4707 (phone)
Craig.Glazer@pjm.com                       Mark.Stanisz@pjm.com

*Counsel for*
*PJM Interconnection, L.L.C.*

March 31, 2022

---

[11] A copy of the *PJM Value Proposition* paper is attached hereto as Attachment A, and can be accessed on the PJM website. *PJM Value Proposition*, PJM Interconnection, L.L.C. (June 26, 2019), https://www.pjm.com/about-pjm/~/media/about-pjm/pjm-value-proposition.ashx. The Commission should also take note of the fact that other RTOs and ISOs publish similarly compelling value propositions that add further support to the points PJM advances in these comments. *See, e.g.*, Midcontinent Independent System Operator, Inc. claims $3.4 billion in annual benefits to its members (*Value Proposition*, Midcontinent Independent System Operator, Inc., https://www.misoenergy.org/about/miso-strategy-and-value-proposition/miso-value-proposition/ (last visited March 31, 2022). Moreover, the Commission has recently adopted an RTO Metrics report so the public can see the benefits in a single report using common metrics.

4

CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing document on those parties on the official Service List compiled by the Secretary in these proceedings.

Dated at Audubon, Pennsylvania this 31st day of March, 2022.

/s/ Mark J. Stanisz
Mark J. Stanisz
Assistant General Counsel
PJM Interconnection, L.L.C.
2750 Monroe Blvd.
Audubon, PA 19403
Ph: (610) 666-4707
Mark.Stanisz@pjm.com

# Attachment A

Document Accession #: 20220331-5543    Filed Date: 03/31/2022

# PJM Value Proposition

PJM Interconnection's operation of the high-voltage power grid, wholesale electricity markets and its long-term planning process provide significant value to the 65 million people in the region it serves.

**PJM operations, markets and planning result in annual savings of $3.2 – 4 billion.** These savings represent the vital functions that PJM provides and that lead to less cost to consumers:







- Ensuring reliable power 24 hours a day, 7 days a week
- Providing capacity for the future and reserves for emergencies

- Managing generation and other resources in real time to meet consumer demand
- Procuring specialized services that protect the stability of the grid

- Lowering emissions by encouraging generator efficiency
- Offering additional benefits including training, compliance audits and knowledge sharing



*All numbers are estimates.*

Working to Perfect the Flow of Energy



# Reliability

**Transmission enhancements in PJM are expected to reduce costs by nearly $300 million a year by alleviating congestion.**

## Regional Planning Efficiencies

PJM's regional planning process assesses the need for transmission upgrades to ensure reliability, increase efficiency and support public-policy goals.

PJM's large footprint makes the transmission planning process more effective by considering the region as a whole, rather than by individual states or separate transmission-owner territories, in determining transmission needs.

Investing in the transmission system can increase its ability to move more power, which can decrease congestion costs. *Transmission enhancements in PJM are expected to reduce costs by nearly $300 million a year by alleviating congestion.*



### $300 M
SAVINGS

# Generation Investment

**This results in savings of $1.2–1.8 billion.**

## Lower Reserve Margin and Competition from Alternative Resources

The fact that PJM plans for resource adequacy over a large region results in a lower reserve margin than otherwise would be necessary.

Resource adequacy means having enough generating resources available to meet the demand for electricity, plus a reserve margin to cover emergencies.

There is considerable diversity in electrical use patterns in the large PJM footprint; not all areas peak at the same time of the year.

As a result, resources in one area of the system are available to help serve other areas at peak times, and a smaller reserve is required.

In addition, the large and varied resource fleet across the entire PJM region spreads the generator outage risk across a larger collection of generators, improving reliability.

PJM's Reliability Pricing Model capacity market promotes competition between traditional generation and alternative supply resources such as demand response. With more cost-effective alternatives to maintain adequate power supplies, less investment is needed in new generation. *This results in savings of $1.2–1.8 billion.*

### $1.2–1.8 B
SAVINGS

# Integrating More Efficient Resources

**More efficient units demonstrate a savings of $1.1–1.3 billion a year**

## Replacement of Less Efficient Resources

PJM's efficient generation interconnection process, combined with the competitive RPM capacity market, has enabled less efficient generation resources to retire and to be replaced with more efficient, less costly, plants.

From the annual RPM auction from 2011 through 2018, nearly 30,000 megawatts of new, increasingly efficient natural gas combined-cycle generation either has already commenced operation or is committed to be built through the RPM auctions.

These resources operate more efficiently, with lower heat rates and in most cases lower fuel costs, than the older, less efficient resources they have replaced through retirement.

Simulations of the increased cost that would be associated with continuing to operate the retired resources instead of the new, more efficient units demonstrate a *savings of $1.1–1.3 billion a year.*



**$1.1–1.3 B**
SAVINGS

# Energy Production Costs

**Operating the larger market creates production cost savings of $600 million a year**

## Expanded Dispatch Area

PJM's dispatch process enables energy to be exchanged economically and automatically when less expensive resources in one area can be used to meet consumer electricity demand in another area.

Prior to the expansion of the PJM footprint more than a decade ago, energy usually was exchanged between areas only when energy sales transactions were scheduled between two suppliers.

Without the operation of the centralized market structure that exists today, economic energy exchanges occurred much less frequently and efficiently.

Simulations of the economic dispatch and energy exchange before and after the PJM market expansion show that operating the larger market creates production cost *savings of $600 million a year.*



**$600 M**
SAVINGS

# Emissions Savings

**Annual average reduction of more than 10 million fewer tons of CO$_2$ emissions**

PJM contributes to climate policy goals while maintaining reliability through the efficient operation of the wholesale power markets.

Competition in organized markets results in greater energy efficiency. Efficient plants burn less fuel and produce fewer emissions. Since 2005, PJM has seen an overall reduction in emissions of approximately 30 percent as a result of an increase in wind generation, other renewables and the inexpensive shale gas boom in the PJM region. This translates to an *annual average reduction of more than 10 million fewer tons of CO$_2$ emissions.*

## +10 M
Fewer Tons
of Emissions
(annual avg.)

# Additional Benefits

PJM is a source of neutral, independent data, analysis, knowledge and expertise for the industry, lawmakers and regulators. In this role, PJM facilitates information sharing and informs decisions that help strengthen the grid and drive the power industry forward.

## Training

PJM is dedicated to continuing education and providing training for industry professionals.

- PJM offers more than 160 training days a year, attended by 7,000 trainees, including 1,000 member company operators

- PJM awards 45,000 NERC continuing education hours annually

- 17,000 of the continuing education hours are simulation training, which prepares trainees for real-world experiences in system and market operations



Document Accession #: 20220331-5543    Filed Date: 03/31/2022



## Compliance Audits

As a regional transmission organization, PJM is audited periodically (every three years) by ReliabilityFirst, NERC and SERC Reliability Corporation. These audits review PJM's compliance with Critical Infrastructure Protection standards, operations and planning standards. The approximate cost for PJM to complete an audit is $2 million. Because PJM is registered as the transmission operator and is audited by ReliabilityFirst, NERC and SERC, individual transmission owners do not have to participate in the audits on their own. The cost for an audit for a transmission owner would vary but could total more than $2 million for one individual transmission owner alone.



## Innovation

PJM provides opportunities and a marketplace for innovators – such as PJM member organizations, research and academic institutions, and industry experts – to strengthen and enhance the power grid. PJM also conducts in-depth research and produces detailed white papers on various topics to promote information and knowledge sharing.

PJM supports and facilitates emerging technology programs to integrate batteries, electric vehicles and other power storage into PJM's markets, as well as ongoing initiatives to explore how the burgeoning development of distributed energy resources can be integrated more effectively with grid operations.



**Working to Perfect the Flow of Energy**

PJM Interconnection © 2019
www.pjm.com | (610) 666-8980 | (866) 400-8980

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| Office of the Ohio Consumers' Counsel, | ) | |
| Complainant, | ) | |
| v. | ) | **Docket No. EL22-34-000** |
| American Electric Power Service Corporation, | ) | |
| American Transmission Systems, Inc. and | ) | |
| Duke Energy Ohio, LLC, | ) | |
| Respondents. | ) | |

---

**ANSWER TO AMERICAN ELECTRIC POWER SERVICE CORPORATION'S AND**
**DUKE ENERGY OHIO'S ANSWER AND TO AMERICAN TRANSMISSION**
**SYSTEMS, INC.'S MOTION TO DISMISS THE COMPLAINT TO PROTECT OHIO**
**CONSUMERS FROM UNNECESSARY CHARGES**
**BY**
**OFFICE OF THE OHIO CONSUMERS' COUNSEL**

---

Bruce Weston
Ohio Consumers' Counsel

Larry Sauer
Deputy Consumers' Counsel

**Office of the Ohio Consumers' Counsel**
65 East State Street, Suite 700
Columbus, Ohio 43215
(614) 466-1312 – Telephone
(614) 466-9475 – Facsimile
larry.sauer@occ.ohio.gov

Denise C. Goulet, Esq.
Barry Cohen, Esq.
McCarter & English, LLP
1301 K Street, N.W., Suite 1000 West
Washington, D.C. 20005
(202) 753-3400 – Telephone
(202) 354-4652 – Facsimile
dgoulet@mccarter.com
bcohen@mccarter.com
*Special Counsel for The Office of Attorney General*
*of Ohio on Behalf of the Office of the Ohio*
April 15, 2022                                  *Consumers' Counsel*

# <u>TABLE OF CONTENTS</u>

**PAGE**

I.  INTRODUCTION ...................................................................................................1

II.  ARGUMENT .....................................................................................................3

    A.  The Complaint Sets Forth a Prima Facie Case. .......................................3

    B.  The Complaint Demonstrates that AEPSC's, ATSI's and DEO's Ohio Transmission Affiliates Are Similarly Situated to Dayton with Respect to the Eligibility Criteria – They Too Are Required by Ohio Law to Join PJM or a Comparable Transmission Organization. Rate Decreases to Consumers Should be Mandated by FERC..........................................................................................11

    C.  AEP Incorrectly Argues That Ohio Law Does Not Require RTO Membership. ..14

    D.  The Relief OCC is Requesting is Appropriate for Consumer Protection. .............16

    E.  The Ohio Statute Is Not Pre-Empted by Federal Law. ...........................................21

    F.  Limiting Incentives to Utilities Not Mandated to Join Transmission Organizations Does Not Conflict with FPA Section 219. .....................................24

    G.  Ohio Consumers Served by AEPSC's, ATSI's And DEO's Ohio Affiliates Would Be Forced to Pay Unduly Discriminatory Rates If These Utilities Are Allowed to Continue to Charge The 50-Basis Point RTO Participation Adder.......................................................................................................................28

    H.  OCC Agrees with The Public Utilities Commission of Ohio's Office of The Federal Energy Advocate's Recommendation to FERC that Consumers Should Not Be Required to Pay the RTO Participation Adder Charge if a Transmission Owner is Required to Belong to a Regional Transmission Organization..............29

III.  CONCLUSION.................................................................................................31

i

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| Office of the Ohio Consumers' Counsel, | ) | |
| Complainant, | ) | |
| | ) | |
| v. | ) | **Docket No. EL22-34-000** |
| | ) | |
| American Electric Power Service Corporation, | ) | |
| American Transmission Systems, Inc. and | ) | |
| Duke Energy Ohio, LLC, | ) | |
| Respondents. | ) | |

---

**ANSWER TO AMERICAN ELECTRIC POWER SERVICE CORPORATION'S AND
DUKE ENERGY OHIO'S ANSWER AND TO AMERICAN TRANSMISSION
SYSTEMS, INC.'S MOTION TO DISMISS THE COMPLAINT
TO PROTECT OHIO CONSUMERS FROM UNNECESSARY CHARGES
BY
OFFICE OF THE OHIO CONSUMERS' COUNSEL**

---

## I.    INTRODUCTION

American Electric Power Service Corporation ("AEPSC") and Duke Energy Ohio, LLC

("DEO") seek by the Answers[1] they filed to the Complaint of by The Office of the Ohio

Consumers' Counsel ("OCC")[2] to allow their Ohio transmission affiliates to continue

overcharging Ohio consumers for transmission "incentives" for which they are ineligible.

American Transmission Systems, Inc. ("ATSI") seeks similar relief in its Motion to Dismiss and

---

[1] *Office of the Ohio Consumers' Counsel v. American Electric Power Service Corp. et al.*, Answer of American Electric Power Service Corporation (Mar. 31, 2022) ("AEPSC Answer") and Answer of Duke Energy Ohio (Mar. 31, 2022) ("DEO Answer"), filed in Docket No. EL22-34-000.

[2] *Office of the Ohio Consumers' Counsel v. American Electric Power Service Corp. et al.*, Complaint to Protect Ohio Consumers from Unreasonable Electric Transmission Charges and Request for Establishment of Refund Effective Date and Request for Expedited Processing of Complaint by Office of the Ohio Consumers' Counsel (Feb. 24, 2022), filed in Docket No. EL22-34-000 ("Complaint").

Answer to the Complaint.[3] These incentives are worth significantly more than $26 million a year across Ohio for the participation of these Ohio utilities in PJM Interconnection, L.L.C. ("PJM") – a FERC-approved Regional Transmission Organization ("RTO"). This participation is already *required* by Ohio law.

The Ohio consumers served by AEPSC, ATSI and DEO are entitled to a significant decrease in the rates they pay for electrical transmission services. If these rate decreases cannot occur on an Ohio-only basis, the Federal Energy Regulatory Commission ("FERC") should apply the rate decrease throughout AEP's, ATSI's and DEO's multistate service areas.

OCC urges FERC to deny the relief sought by AEPSC and DEO in their Answers and to reject ATSI's Motion to Dismiss the Complaint. The Complaint requests that FERC apply to the Ohio affiliates of these transmission utilities its recent ruling in Docket No. ER20-1068-000 rejecting Dayton Power and Light Company request for a 50-basis point incentive adder to its Return on Equity ("ROE").[4] AEPSC's, ATSI's and DEO's Ohio transmission utility affiliates are subject to the same Ohio law[5] that mandates Dayton's participation in a "qualifying transmission entity," *i.e.,* PJM. Like Dayton, AEPSC's ATSI's and DEO's Ohio transmission utility affiliates are ineligible for the adder because their participation in PJM is not voluntary.

AEPSC, ATSI and DEO seek to evade the relief sought in the Complaint by arguing that the Complaint fails to demonstrate that their existing rates are unjust and unreasonable because OCC did not submit evidence regarding the unjustness and unreasonableness of their current

---

[3] *Office of the Ohio Consumers' Counsel v. American Electric Power Service Corp. et.al.*, Motion to Dismiss and Answer to Complaint of American Transmission Systems, Inc. (Mar. 31, 2022), filed in Docket No. EL22-34-000 ("ATSI Motion to Dismiss").

[4] *The Dayton Power and Light Co.,* 172 FERC ¶ 61,025 (2020), *order on paper hearing*, 176 FERC ¶ 61,025 (2021), *reh'g denied by operation of law*, 176 FERC ¶ 62,136 (2021), *order addressing arguments raised on reh'g,* 178 FERC ¶ 61,102 (2022), *appeal pending sub nom. The Dayton Power and Light Co.et al. v. FERC,* Case No. 21-4072 (6th Cir.) ("*Dayton*").

[5] Ohio Revised Code section 4928.12.

ROEs.[6] ATSI also argues that the Complaint is deficient and should be dismissed because it does not provide evidence that ATSI's rates include the RTO Participation Adder and because it alleges that ATSI, unlike Dayton, serves a multi-state region within in PJM.[7] None of these arguments have merit. In many respects, the arguments AEPSC, ATSI and DEO make simply reargue issues already decided against them in *Dayton*. FERC should deny the relief sought in the Answers and reject the Motion to Dismiss because they ignore the reality that they must abide by the same laws as Dayton and their participation in PJM cannot be voluntary because it is compelled by Ohio law.

## II.    ARGUMENT

### A.    The Complaint Sets Forth a Prima Facie Case.

AEPSC, ATSI and DEO all incorrectly argue that OCC fails to satisfy its burden to prove that their existing rates are unjust and unreasonable.[8] Contrary to these claims, the Complaint explicitly sets out the basis for finding that the current rates these utilities charge their consumers are unjust and unreasonable. OCC established that:

- The basis for finding that the AEPSC affiliates are ineligible for the RTO Participation Adder is the same basis on which FERC relied in denying the RTO Participation Adder to Dayton, *i.e.*, that Ohio law requires Ohio Power Company's and AEP Ohio Transmission Company's participation in PJM or a comparable transmission organization in order for them to be able to provide transmission services in Ohio, but FERC policy provides for transmission incentives only if participation in a Transmission Organization is voluntary;[9]

---

[6] AEPSC Answer at 16-18; DEO Answer at 2, 5-6; ATSI Motion to Dismiss at 2, 5-9.

[7] ATSI Motion to Dismiss at 2, 5-9.

[8] AEPSC Answer at 16-18; DEO Answer at 2, 5-6; ATSI Motion to Dismiss at 2, 5-9.

[9] Complaint at 8-9.

- FERC has authorized each AEPSC, ATSI and the DEO Ohio affiliate to recover the RTO Participation Adder in its rates;[10]

- Based on a conservative estimate reflecting only the transmission investment in Ohio over the past 11 years, Ohio consumers are paying approximately $26 million annually in excessive rates to Ohio utilities to "encourage" them to do what Ohio law already requires them to do: join PJM or a comparable transmission organization;[11]

- The actual impact on Ohio consumers for providing this undeserved, excessive and illegal windfall profit is significantly higher when all historic investment is considered;[12] and

- OCC does not have the data needed to estimate the impact of the incentive on historic investment, and thus requested that FERC direct the utilities to provide that information given that the utilities control access to that information.[13]

There is no doubt that, just as in *Dayton,* the inclusion of these incentives in Ohio utility rates provides a windfall (extra profits) to AEP, ATSI and DEO shareholders at consumer expense. These utilities receive these extra profits, totaling significantly more than $26 million annually, for simply complying with Ohio law. Providing AEPSC's and DEO's Ohio affiliates and shareholders with an "incentive" for which that are not eligible is contrary to long-held FERC precedent, as the Ninth Circuit Court of Appeals recognized in *Cal. Pub. Util. Comm'n v. FERC*.[14] Inclusion of the incentive in the rates to consumers is *per se* unjust and unreasonable because there is no behavior to be encouraged. To the extent the utilities are arguing that the proposed replacement rate that would remove the adder from the AEPSC, ATSI and DEO's

---

[10] *Id.* at 10. The Complaint even provided the Docket Numbers for each utility in which FERC granted such authorization.

[11] *Id.* at 11-13.

[12] *Id.* at 13.

[13] *Id.* at 13, 21.

[14] *Cal. Pub. Util. Comm'n v. FERC*, 879 F.3d 966 (9th Cir. 2018) ("*Cal. PUC*").

*region-wide* transmission rates is unjust and unreasonable, that issue may address the merits of the appropriate remedy but is not a reason to dismiss or deny the relief sought in the Complaint.

AEPSC and DEO argue that unlike Dayton, who was asking for the RTO Participation Adder for the first time, they previously had been authorized by FERC to recover the adder.[15] They also argued that because the Ohio law requiring participation in a "qualified transmission entity" existed at the time they were authorized to recover the RTO Participation Adder, they are entitled to the charge. [16] They also argued that OCC must demonstrate a change in Ohio law to warrant a new finding the inclusion of the adder in their rates makes those rates unjust and unreasonable.[17] AEPSC's and DEO's conclusion that OCC has not demonstrated a change is circumstances is wrong.

The Complaint demonstrates that circumstances have changed since FERC authorized recovery of the RTO Participation Adder for these utilities. FERC authorized each Ohio transmission utility to include the RTO Participation Adder in their rates in 2008, 2010 and 2015. However, in 2018, the United States Court of Appeals for the Ninth Circuit determined in *Cal. PUC*[18] that FERC's final rule in Order No. 679, implemented in the wake of the passage of section 219 of the Federal Power Act,[19] and long-held FERC precedent impose a "voluntariness" requirement to establish eligibility for a transmission incentive.[20] In *Cal. PUC*, the Ninth Circuit recognized that Order 679 states that:

> . . . the "basis for the incentive is a recognition of the benefits that flow from membership in [transmission] organizations *and the fact that continuing*

---

[15] AEPSC Answer at 14-17; DEO Answer at 4-6.

[16] *Id.*

[17] *Id.*

[18] *Cal. PUC,* 879 F.3d at 974-75.

[19] 16 U.S.C. § 824s.

[20] *Cal. PUC,* 879 F.3d at 974-75.

*membership is generally voluntary.*" Order 679 at P 331 (emphasis added). When membership is not voluntary, the incentive is presumably not justified.[21]

The Court further found that on rehearing in Order No. 679-A, FERC stated that

> Order 679-A, citing section 219's purpose of ensuring reliability and reducing the cost of power, describes incentive adders as "an *inducement* for utilities to join, and remain in, Transmission Organizations." Order 679-A at P 86 (emphasis added). An incentive cannot "induce" behavior that is already legally mandated.[22]

The Court also found that "FERC has a longstanding policy that rate incentives must be prospective and that there must be a connection between the incentive and the conduct meant to be induced."[23] The Court noted that this policy is incorporated in Order 679, and "prohibits FERC from rewarding utilities for past conduct or for conduct which they are otherwise obligated to undertake."[24]

*In City of Detroit, Michigan v. Federal Power Comm'n*,[25] the D.C. Circuit Court reached a similar conclusion regarding FERC's long-standing required nexus between an incentive and the behavior sought to be encouraged. The D.C. Circuit Court reasoned that:

> While as we have indicated the Commission may be empowered to consider some of these factors it must also, and always, relate its action to the primary aim of the Act *to guard the consumer against excessive rates*. If the Commission contemplates increasing rates for the purpose of encouraging exploration and development, or the ownership by pipeline companies of their own producing facilities, it must see to it that the increase is in fact needed, and is no more than is needed, for the purpose. Further than this we think the Commission cannot go without additional authority from Congress.[26]

---

[21] *Id.* at 974.

[22] *Id.* at 974-75.

[23] *Id.* at 977.

[24] *Id.*

[25] *City of Detroit, Michigan v. Federal Power Comm'n*, 230 F.2d 810 (D.C. Cir. 1955) ("*City of Detroit*").

[26] *City of Detroit*, 230 F.2d at 817 [emphasis added].

Just recently, FERC applied the ruling in *Cal. PUC* to deny Dayton's request for an RTO Participation Adder, finding that Dayton was ineligible for the incentive because its participation in PJM was not voluntary, but indeed was required by Ohio law.[27] In *Dayton*, FERC ruled that "Section 219(c) states that, "[i]n the rule issued under this section, the Commission shall, to the extent within its jurisdiction, provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization."[28] FERC then noted that it "implemented this directive in Order No. 679, finding that an RTO Adder is appropriate for entities that choose to remain members of a Transmission Organization because, in relevant part, continuing membership is "generally voluntary."[29]

FERC also found that "Relying on the Commission's description of incentive adders as "an *inducement* for utilities to join, and remain in, Transmission Organizations,"[30] the Ninth Circuit concluded that, since an incentive cannot induce behavior that is already legally mandated, "the voluntariness of a utility's membership in a transmission organization is logically relevant to whether it is eligible for an adder."[31] This ruling leaves little doubt that the primary reason for rejecting Dayton's request for the RTO Participation Adder charge to consumers is because its participation in a transmission organization like PJM is not voluntary but is required by Ohio law. That same law compels AEPSC's, ATSI's and DEO's Ohio affiliates to participate in transmission organization like PJM.

---

[27] *Dayton*, Order on Paper Hearing, 176 FERC 61,025 at PP 26-27, citing 16 U.S.C. § 824s(c).

[28] *Id.*

[29] *Id.* at P 26, citing Order No. 679, 116 FERC ¶ 61,057 at P 331.

[30] *Id.* at P 27, citing *Cal. PUC* at 974 (emphasis in original).

[31] *Id.* (citing *Cal. PUC at 975,* and Order No. 679-A, 117 FERC ¶ 61,345 at P 86).

DEO also alleges that its existing transmission formula rate that includes the RTO Participation Adder was set by settlement, implying that the settlement rates cannot be changed.[32] This argument is irrelevant. FPA section 206 provides FERC the authority to investigate whether existing rates, no matter how they were set, are no longer just and reasonable.[33] This statute also empowers FERC to implement a replacement rate once such a finding has been made.[34] Moreover, FERC has long held that settlements do not establish precedent with respect to any issue included therein.[35]

There also is no merit in ATSI's request that the Complaint be dismissed because it has not demonstrated that ATSIs' rates include the RTO Participation Adder.[36] ATSI argues that its formula transmission rate was developed from a black box settlement and thus it is impossible to determine whether it includes the 50-basis point RTO Participation Adder.[37] ATSI concedes that the settlement authorizing it to recover the adder states that the ROE is inclusive of any RTO Participation Adder.[38] However, ATSI would have FERC find that "the quoted statement in the ATSI Settlement Agreement clarifies that any RTO Participation Adder would be subsumed in the settled ROE values, and thus inseparable and indistinguishable from ATSI's base ROE."[39]

---

[32] DEO Answer at 5-6.

[33] 16 U.S.C. § 824e.

[34] *Id.*

[35] *See, e.g., Xcel Energy Services Inc.*, 132 FERC ¶ 61,170, at P 4 (2010) ("The Commission's approval of this Settlement does not constitute approval of, or precedent regarding, any principle or issue in this proceeding.").

[36] ATSI Motion to Dismiss at 6-7.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 7.

ATSI's interpretation is belied by FERC's order authorizing an ROE for Pacific Gas and Electric Company ("PG&E") in Docket No. ER16-2320-000 *et al.*[40] In that case, FERC determined the appropriate ROE for PG&E based in part on a risk premium approach that includes ATSI in the proxy group. [41] FERC's order in *Pacific Gas & Electric* states that the base ROE used for ATSI is premised on the ATSI settlement in Docket No. ER15-303.[42] The ATSI settlement does not set out a base ROE. It only sets out a total ROE. The base ROE does not include any transmission incentive adders.

Nevertheless, Appendix D to the order reflects that FERC included ATSI's base ROE in the proxy group used to calculate an appropriate risk premium ROE for PG&E. The base ROEs for ATSI used in that order are 9.88% for the period January – May 2016, and 10.56% for the period June – December 2015.[43] But the ROEs authorized for ATSI in the settlement in Docket No. ER15-303 are 10.38% and 11.06% respectively for those periods. This means that in order to determine ATSI's base ROE, FERC adjusted ATSI's settlement ROEs by subtracting 50 basis points. This is the same number of basis points allowed for the RTO Participation Adder. The fact that FERC used base ROEs for ATSI that were 50 basis points lower than the ROEs authorized in the settlement can only mean that the authorized ROEs of 10.38% and 11.06% in Docket No. 15-303 include the 50-basis point RTO Participation Adder. FERC should reject ATSI's attempt to evade Dayton's fate based on this argument. ATSI's rates to consumers should be reduced to reflect elimination of the unwarranted incentive charge.

---

[40] *Pacific Gas and Electric Co.*, 178 FERC ¶ 61,175 (2022).

[41] *Id.* at P 217, n.503 and P 227.

[42] *Id.*

[43] *Id.*, Appendices at D.2 (Slip Op. at 122).

FERC also should reject AEPSC's, ATSI's and DEO's efforts to evade a reduction in their transmission rates on the basis that OCC did not adequately attempt to quantify the impact of the relief sought in the Complaint on the utilities and their Ohio customers. OCC provided evidence that a very conservative estimate of the impact would be $26 million annually based only on the effect of the overearnings on the planned transmission investment incorporated into PJM"s Regional Transmission Expansion Plan over the past 11 years.[44] OCC explained that a more accurate estimate should include historic investment in rate base as well as planned investment over the past 11 years, but that it did not have the data needed to calculate that amount.[45] Instead, OCC appropriately requested that the Ohio transmission utilities, who have control over that information, provide a more accurate estimate of the effect on rates of eliminating the adder from both new and historic investment.[46]

FERC also should reject DEO's argument[47] that OCC should have had the information it needed to calculate the effect of the relief requested in the Complaint because DEO provides that information in its annual update of its transmission formula rate. Contrary to this claim, the annual updates do not provide sufficient information to calculate an accurate estimate of the impact of the RTO Participation Adder on all investment. The DEO formula rate template provides the total net rate base for DEO as of the test year on which the formula rate is based. That amount will change from year-to-year. OCC provided a calculation of the impact of the ROE on investment in Ohio for an eleven-year period from 2010 through 2020. If OCC had used the DEO formula rate numbers, it would have double counted the investment added between

---

[44] Complaint at 12-13.

[45] *Id.*

[46] *Id.* at 13.

[47] DEO Answer at 16.

2010 and 2020. DEO's formula rate does not break out the historic investment as of 2009. Thus, OCC did not have the data needed to calculate the impact of the proposed remedy on historic investment as of January 2010. Moreover, FERC's regulations do not require mathematical precision in determining the financial impact of the Complaint. Rule 296(b)(4) requires only "a good faith effort to quantify the financial impact or burden (if any) created for the complainant as a result of the action or inaction."[48] OCC's estimate is the result of a good faith effort to determine the effect of the Complaint on Ohio consumers and reflects a conservative estimate considering that it does not include all the historic rate base investment. The actual impact on consumers would be significantly higher, further evidencing the unjustness and unreasonableness of the existing rates. Again, the data reflecting the actual rate decreases for consumer should be required by FERC of the transmission utilities. These rate decrease amounts to consumers should be reviewed and approved by FERC.

> **B.      The Complaint Demonstrates that AEPSC's, ATSI's and DEO's Ohio Transmission Affiliates Are Similarly Situated to Dayton with Respect to the Eligibility Criteria – They Too Are Required by Ohio Law to Join PJM or a Comparable Transmission Organization. Rate Decreases to Consumers Should be Mandated by FERC.**

AEPSC, ATSI and DEO all incorrectly argue that they that they are not similarly situated to Dayton because unlike Dayton, AEP, ATSI and DEO are multi-state holding companies.[49] OCC demonstrated in the Complaint that the Ohio Power Company, AEP Ohio Transmission Company, the ATSI Ohio affiliates and the DEO Ohio affiliate, like Dayton, are all required by Ohio law to join a FERC-authorized transmission organization if they want to provide transmission services in Ohio.[50] The single determinative factor in the case precedent cited in the

---

[48] 18 C.F.R. § 385.206(b)(4).

[49] AEPSC Answer at 12-13; ATSI Motion to Dismiss at 3; DEO Answer at 6, 12.

[50] Complaint at 8-10.

Complaint, including *Dayton* and the Ninth Circuit Court of Appeals' opinion in *Cal. PUC,* is that Ohio law compels participation by Ohio transmission utilities in a FERC-authorized transmission organization.

Simply put, participation in PJM by these utilities is not voluntary so under FERC and judicial precedent they are not entitled to the RTO Participation adder. The critical issue regarding eligibility for the incentive is the application of the mandatory Ohio law that requires RTO participation. The question of whether the same remedy is appropriate does not bear on the question of whether the utilities are eligible for the adder. They are not.

AEPSC, ATSI and DEO have not provided an explanation for how their affiliates are different from Dayton, nor have they provided evidence that the same law does not apply to all transmission utilities in Ohio. AEPSC, ATSI and DEO all argue their affiliates are different from Dayton simply because they have a joint regional tariff with the other out-of-state affiliates. The real gist of AEPSC's, ATSI's and DEO's concerns is not the applicability of Ohio law vis-à-vis the mandate to participate in a transmission organization. Rather, their concern is whether the removal of the incentive from their rates must be applied solely to their Ohio affiliates' rates. Or alternatively their concern focuses on whether the removal of the incentive must be applied to all their affiliates operating in PJM. Even if the remedy is different for these companies than it is for Dayton, they fail to explain how the difference in the scope of the remedy trumps Ohio law mandating participation in a transmission entity. AEPSC, ATSI and DEO should not be allowed to charge Ohio consumers an excessive ROE simply because they have out-of-state affiliates. The fact that the remedy for AEPSC, ATSI and DEO may be different from that used in *Dayton* does not mean that the basis for removal of the transmission incentive from transmission rates is not the same. It is.

AEPSC, ATSI and DEO also incorrectly argue they are not similarly situated to Dayton because Dayton sought the incentive for first time in its proceeding, but here OCC seeks to eliminate incentives in place since 2005. That does not make AEP, ATSI and DEO not similarly situated to Dayton. Their argument goes only to the burden of proof that OCC must satisfy. That is, OCC under FPA section 206 must prove that the existing rate is unjust and unreasonable. The fact that OCC bears this burden does not make these utilities dissimilar to Dayton when it comes to determining eligibility for the RTO Participation Adder. The burden on OCC is the same burden Dayton faced in its request for the adder, *i.e.,* whether inclusion of the adder in the utility's rates charged to Ohio consumers ais just and reasonable.

The courts have long held that the standard for determining whether a rate is just and reasonable under Federal Power Act section 206 is the same standard used in reviewing a utility's filing under FPA section 205. In *FirstEnergy Serv. Co. v. Fed. Energy Regulatory Comm'n,*[51] the D.C. Circuit Court of Appeals stated:

> [W]e consider this complaint on a typical section 206 standard. Here, FirstEnergy bears the burden of demonstrating that, as applied to ATSI, Schedule 12 of PJM's tariff is unjust and unreasonable. FERC argues on brief that a section 206 filing carries with it a dual burden: petitioner "first must show that the existing rate or practice is unjust, unreasonable, unduly discriminatory or preferential, and then must demonstrate that its own proposal is a just and reasonable replacement." Br. For FERC at 4 (citing *Blumenthal v. FERC*, 552 F.3d 875, 881 (D.C.Cir.2009)).[52]

The Court then found that the standard for determining justness and reasonableness was the same under both statutes:

> To begin our analysis, we note that FERC does hold petitioner—and indeed any filer under section 206 save the Commission itself—to too high a standard. The "just and reasonable" lodestar is no loftier under section 206 than under section 205, and it is only FERC who is required to shoulder the "dual burden" when it institutes a section 206 proceeding. *See, e.g., Ala. Power Co.*, 993 F.2d at 1571 ("While the proponent of a rate change under § 206, here FERC, has the burden

---

[51] *FirstEnergy Serv. Co. v. Fed. Energy Regulatory Comm'n*, 758 F.3d 346 (D.C. Cir. 2014) ("*FirstEnergy*").

[52] *FirstEnergy,* 758 F.3d at 353-54.

of proving that the existing rate is unlawful ... the party filing a rate adjustment with the Commission under § 205 bears the burden of proving the adjustment is lawful." (internal citations omitted)). As petitioner correctly notes, we rejected the above "dual burden" reasoning in Blumenthal as "unnecessary to our holding and inaccurate insofar as it implied that a challenge to rates must propose alternative rates that are just and reasonable." *Md. Pub. Serv. Comm'n v. FERC*, 632 F.3d 1283, 1285 n. 1 (D.C.Cir.2011). It is "the Commission's job—not the petitioners—to find a just and reasonable rate."[53]

There also is no merit in ATSI's argument that OCC's request for information turns the Federal Power Act section 206 burden on its head.[54] OCC is not suggesting that it does not bear the burden to prove that the existing rates are unjust and unreasonable. It argues instead that all the data needed to accurately quantify the impact of the complaint on Ohio consumers is not available. Quantification of the impact of the Complaint is a very different matter than the basis for a finding that AEPSC's, ATSI's and DEO's rates charged to Ohio consumers are unjust and unreasonable. As the Complaint demonstrate, it would not be just and reasonable to provide an "incentive" to these utilities to do what they are already required by Ohio law to do. These Ohio transmission utilities are simply receiving a reward for doing what they are required to do by Ohio law – join PJM. That reward is obviously more than is needed to achieve the intended goal, contrary to the Court's ruling in *City of Detroit*.

## C.    AEP Incorrectly Argues That Ohio Law Does Not Require RTO Membership.

AEPSC argues that the Ohio law does not require membership in PJM, but rather requires only participation in what the law describes as a "qualifying transmission entity."[55] AEPSC argues that such an entity is different than a "Transmission Organization" or a "Regional

---

[53] *Id.*

[54] ATSI Motion to Dismiss at 23-24.

[55] AEPSC Answer at 34.

Transmission Organization. DEO makes a similar argument in its Answer.[56] The fatal flaw in these arguments is that FERC has already rejected both in *Dayton*.

There, FERC stated that "the Ohio statute mandates that an entity shall not 'own or control transmission facilities…unless [it] is a member of, and transfers control of those facilities to, one or more qualifying transmission entities' that complies with nine criteria, one of which is that the qualifying transmission entity be approved by the Commission."[57] FERC found that "any qualifying transmission entity that would satisfy the requirements of the Ohio statute would also be a Transmission Organization under the FPA and the Commission's regulations."[58] FERC stated that the incentive is not limited to membership in PJM or an RTO *per se*, but rather is available to an entity that joins a Transmission Organization.[59] As FERC noted:

> . . . the Ohio statute requires membership in a Transmission Organization, and Dayton's choice about *which* Transmission Organization it joins is not relevant to the inquiry of whether its membership in a Transmission Organization is voluntary. If Dayton left PJM to join another RTO, that action would comply with the Ohio statute and Dayton would also continue to be a member of a Transmission Organization. While Dayton could move from one RTO to another, its ability to change RTOs would not qualify Dayton for the adder in the new RTO, because the Ohio statute requires Dayton to belong to a Transmission Organization.[60]

On rehearing, FERC affirmed this ruling, finding that "the Ohio Supreme Court has interpreted Ohio Rev. Code, § 4928.12 to 'require[ ] electric companies to join regional transmission organizations,'[61] and we defer to that interpretation . . . ."[62] AEPSC attempts to

---

[56] DEO Answer at 10.

[57] *Dayton*, Order on Paper Hearing, 176 FERC ¶ 61,025 at P 56, citing Ohio Rev. Code, § 4928.12.

[58] *Id.* at P 57.

[59] *Id.*

[60] *Id.* at P 59.

[61] *Dayton*, Rehearing Order, 178 FERC ¶ 61,102 at P 23, citing *Ohio Consumers' Couns. v. Pub. Util. Comm.*, 111 Ohio St.3d 384, at P 36 (2006) (*Ohio Consumers*).

[62] *Dayton*, Rehearing Order, 178 FERC ¶ 61,102 at P 23.

dismiss this as dicta.[63] AEPSC argues that the Ohio Supreme Court's comments regarding the Ohio law was not relevant to the outcome of that proceeding. AEPSC makes a distinction without a difference. The critical point is that the highest court in Ohio agreed with FERC that there is no alternative type of transmission entity other than a transmission organization like an RTO that would satisfy all nine criteria in the Ohio law.

AEPSC offers no new arguments not already addressed and rejected in *Dayton*. Instead, it admits that "[w]hile AEPSC recognizes that the Commission has recently rejected this argument, it should reconsider its decision."[64] AEPSC already lost this argument on rehearing. FERC should dismiss this argument as an impermissible collateral attack on its ruling in *Dayton*.[65]

### D.    The Relief OCC is Requesting is Appropriate for Consumer Protection.

The relief OCC requested in the Complaint is both clear and appropriate. The transmission rates Ohio consumers pay should be decreased to reflect the fact that AEPSC's, ATSI's and DEO's Ohio affiliates are ineligible for the RTO Participation Adder.[66] The Complaint also clearly requests that these Ohio utilities' rates be decreased by an amount equal to a 50 basis point reduction to their ROEs for their Ohio transmission investment.[67] The proper remedy is to fashion an Ohio-only remedy even if it would require the companies to file separate tariffs.

---

[63] AEPSC Answer at 34

[64] *Id.*

[65] *See, e.g., So. Co. Services v. FERC*, 416 F.3d 39, 44 (D.C. Cir. 2005) ("The question of whether Southern is collaterally attacking prior orders depends on whether those orders gave 'sufficient notice' of the rule to which Southern now objects."). Here, FERC clearly provided notice in *Dayton* of the ruling to which AEPSC now objects: that Ohio law mandates participation by transmission utilities in Ohio in a transmission organization like PJM to be eligible to provide transmission services in Ohio.

[66] Complaint at 14, 16.

[67] *Id.*

The Complaint properly seeks to remove the adder from transmission rates charged to Ohio consumers. In section III.E.6 of the Complaint, under the heading "Specific Relief or Remedy Requested," OCC requested that FERC "establish just and reasonable replacement rates for transmission service in Ohio that exclude the RTO Participation Adder from customers' rates." OCC also requested that FERC "direct AEP [defined in the Complaint as AEPSC and its Ohio transmission affiliates Ohio Power Company and AEP Ohio Transmission Company], FirstEnergy (ATSI) and Duke [DEO] to adjust their rates accordingly."[68] Finally, the requested relief includes providing credits or paying refunds to consumers.[69] This rate reduction should include interest calculated in accordance with 18 C.F.R. § 35.19a."[70]

OCC properly limited the relief it sought in its complaint to the rates paid by Ohio consumers. The fact that the AEPSC's, ATSI's and DEO's Ohio transmission affiliates share regional tariffs with other affiliates providing transmission service in PJM does not invalidate the need for a remedy for Ohio consumers. Ohio consumers should not be punished because of AEPSC's, ATSI's and DEO's corporate structures.

Contrary to AEPSC's argument, OCC is not asking FERC to "privilege" Ohio statute over other state statutes.[71] The Ohio statute applies to Ohio transmission utilities and their transmission facilities in Ohio. OCC is simply asking that each state's statutes apply to that

---

[68] Complaint at 16.

[69] *Id.*

[70] *Id.*

[71] AEPSC Answer at 12.

state's customers. FERC has previously authorized different rates under a regional tariff for customers served in different states based on the applicability of certain state laws and policies.[72]

In a Virginia Electric and Power Company proceeding, FERC granted a remedy that required exclusion of the costs of undergrounding certain transmission lines from the rates to be paid by customers in North Carolina. This was because the undergrounding requirement was mandated by Virginia law and policies, thus only Virginia customers benefitted from the law.[73] FERC found irrelevant the fact that the Complainants in that case did not explicitly request "amending the tariff to exclude customers outside of Virginia from being charged the cost of undergrounding the Projects."[74] Moreover, separating out the Ohio affiliates will be even easier for FERC in this case than was the situation in the VEPCO proceeding considering that the AEPSC, ATSI and DEO's Ohio affiliates all have transmission formula rate templates that are separate from the templates of their affiliates serving other states.[75] If FERC believes the remedy

---

[72] *See, e.g., Old Dominion Electric Cooperative, Inc. et al. v. Virginia Electric and Power Company*, 146 FERC ¶ 61,200 (2014) ("*VEPCO*"), *order denying reh'g*, 161 FERC ¶ 61,055 (2017) (finding that the incremental cost of undergrounding certain transmission lines as required by Virginia law and policy should be charged only to Virginia Electric and Power Company's wholesale customers in Virginia, and directing the utility to remove those costs from rates charged to wholesale customers in North Carolina), *aff'd on appea*l, *Northern Virginia Electric Cooperative, Inc. et al. v. FERC*, 945 F.3d 1201 (D.C. Cir. 2019) ("*NOVEC*").

[73] *VEPCO*, 146 FERC ¶ 61,200 at P 54.

[74] *Id.*

[75] *See, e.g.*, AEPSC formula rates posted on the PJM website for the AEP East Operating Companies at https://www.pjm.com/-/media/markets-ops/trans-service/jan-to-dec/2022/aep/aep-east-opco-2022-ptrr-pdf-files.ashx, and the formula rates posted on the PJM website for the AEP East Transmission Companies at https://www.pjm.com/-/media/markets-ops/trans-service/jan-to-dec/2022/aep/aep-east-transco-2022-ptrr-pdf-files.ashx.

OCC has requested is not appropriate, FERC has the authority to grant appropriate relief without dismissing the Complaint.[76]

If AEPSC, ATSI and DEO were correct that they cannot make Ohio-only rate reductions, FERC should not ignore its obligation to develop a just and reasonable rate for Ohio consumers. If they are correct, FERC should require AEPSC, ATSI and DEO to make the required rate reductions on a region-wide basis. This would safeguard that only just and reasonable rates are charged to all PJM consumers, including Ohio consumers.

Whether each state in which the AEPSC, ATSI and DEO affiliates provide transmission service has a law similar to Ohio Revised Code section 4928.12 is irrelevant. At least one of the AEPSC, ATSI and DEO affiliates serving in PJM must join an RTO to comply with Ohio law. If these utilities operate under a single tariff with a single ROE, these Ohio affiliates' participation in PJM is still mandated by Ohio law. Thus, all the AEPSC, ATSI and DEO affiliates should be considered ineligible for receiving the incentive no matter where the rates are charged in PJM.

FERC must fashion an appropriate remedy once it finds that the Ohio affiliates are ineligible for the RTO Participation Adder.[77] A least common denominator interpretation of the Ninth Circuit's decision would require application of the RTO Adder charge prohibition uniformly throughout the AEPSC, ATSI and DEO interstate service areas within PJM. Even if

---

[76] "Whenever the Commission, after a hearing held upon its own motion or upon complaint, shall find that any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order." 16 U.S.C. 824e(a).

[77] *Pub. Citizen, Inc. v. Fed. Energy Regulatory Comm'n*, 7 F.4th 1177 at 1183 (D.C. Cir. 2021) ("If the Commission finds that any rate demanded by a utility within the Commission's jurisdiction is 'unjust, unreasonable, unduly discriminatory or preferential,' then the Commission must overturn that rate and impose its own just and reasonable rate."); *see also La. Pub. Serv. Comm'n v. Fed. Energy Regulatory Comm'*n, 771 F.3d 903 at 905 (5th Cir. 2014) ("If FERC concludes that a rate is unlawful, it must set a new just and reasonable rate.").

only one state has mandated RTO participation, the reality is that the participation by all the AEPSC affiliates in that RTO is not voluntary. As AEP concedes in its Answer, "AEP Companies voluntarily made their decision to join PJM on a company-wide basis for all of their transmission owning affiliates-not just those located in Ohio."[78] To the extent these utilities have decided to manage their corporate business on a company-wide basis over all their affiliates in PJM, these voluntary decisions cannot justify imposing unjust and unreasonable rates on Ohio consumers. The companies are free to make the decision of whether to join PJM on a company-wide basis. However, if any one of these affiliates is ineligible for the RTO Participation Adder, then they should all be deemed ineligible. That is, if at least one member's participation was not voluntary, the entire affiliate group's decision could not be voluntary.

FERC's authority is at its zenith when it seeks to fashion an appropriate remedy for unjust and unreasonable rates.[79] In fact, FERC is required to adopt an appropriate remedy once it finds rates unjust and unreasonable regardless of whether the remedy adopted is one advanced by the complainant.[80] FERC would be well within its statutory authority to order a modification to the tariff to remedy the unjust and unreasonable rates charged to Ohio consumers. This is true regardless of whether that remedy was requested in the initial complaint so long as the issue was

---

[78] AEPSC Answer at 12.

[79] *Niagara Mohawk Power Corp. v. FPC*, 379 F.2d 153, 159 (D.C. Cir. 1967) (breadth of agency discretion is "at zenith" when the action assailed relates to fashioning remedies). *See also Exxon Co., USA v. FERC*, 182 F.3d 30, 48 (D.C. Cir. 1999) (citing *Towns of Concord, Norwood, & Wellesley v. FERC*, 955 F.2d 67, 76 (D.C. Cir. 1992)).

[80] *N.J. Bd. of Pub. Utilities v. Fed. Energy Regulatory Comm'n*, 744 F.3d 74 at 111 (3rd Cir. 2014) ("Under § 206, FERC may act on its own accord to change any practice that, in its opinion, renders a rate, charge or classification unjust, unreasonable, or discriminatory. 16 U.S.C. § 824e. In doing so, it is free to eschew the proposals of other parties and invoke its own expertise, as long as it does so in a manner that is not arbitrary or capricious.") *See EarthLink, Inc. v. FCC*, 462 F.3d 1, 12 (D.C. Cir. 2006) ("[A]n agency's predictive judgments about areas that are within the agency's field of discretion and expertise are entitled to particularly deferential review, as long as they are reasonable....") (internal citations omitted) (alteration in original)." *See also FirstEnergy Serv. Co. v. Fed. Energy Regulatory Comm'n*, 758 F.3d at 353-54.

fully vetted before FERC.[81] OCC's priority in this complaint is to protect Ohio consumers from unjust and unreasonable rates. Here, to the extent FERC determines that it would be inappropriate to implement a remedy just for Ohio transmission customers, it should eliminate the RTO Participation Adder from the rates of all AEPSC's, ATSI's and DEO's PJM operating companies. To do otherwise would allow AEP, ATSI and DEO shareholders to earn an unwarranted windfall profits. These extra profits are at the expense of Ohio consumers paying excessive unwarranted rates.

### E.    The Ohio Statute Is Not Pre-Empted by Federal Law.

AEP, ATSI and DEO (collectively, "Ohio Transmission Owners") argue that Ohio Rev. Code § 4928.12, if interpreted to require owners of transmission facilities in Ohio to belong to an RTO, is preempted by federal law.[82] Although AEP and ATSI acknowledge that FERC has no power to pass on the constitutionality of state statutes,[83] they (along with DEO) nevertheless urge FERC to refuse to apply the Ohio law on preemption grounds. They argue that both field preemption and conflict preemption apply. However, the Ohio statute neither intrudes on a field where the state has no authority nor conflicts with the requirements of federal law or policy. It is thus not pre-empted.

As stated by ATSI, field preemption occurs where "Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law."[84] But contrary to the Ohio Transmission Owners' arguments, Congress has not legislated so comprehensively with regard to electric transmission that there is no room

---

[81] *NOVEC,* 945 F.3d at 1207.

[82] AEPSC Answer at 19-26; ATSI Motion to Dismiss at 20-23; DEO Answer at 12-14.

[83] AEPSC Answer at 19; ATSI Motion to Dismiss at 20-21.

[84] ATSI Motion to Dismiss at 20, citing *Hughes v. Talen Energy Mktg. LLC*, 578 U.S. 150, 162 (2016).

for the states to supplement federal law. For instance, with a limited exception only recently enacted into law, states have plenary control over transmission siting., This includes projects included in federally approved planning processes. In that regard, the United States Court of Appeals for the Eighth Circuit upheld a Minnesota statute granting a right of first refusal to incumbent electric transmission owners, rejecting LSP Transmission Holdings, LLC's argument that the state law interfered with federal authority over interstate commerce and discriminated against out-of-state entities.[85] And the United States Supreme Court has acknowledged that state regulation of rates for unbundled retail transmission is consistent with the FPA, notwithstanding that the transmission so regulated is in interstate commerce.[86]

Nor does the doctrine of conflict preemption apply to invalidate the Ohio statute. This is because there is absolutely no conflict between Ohio Rev. Code § 4928.12 and any provision of the Federal Power Act. The Ohio Statute was enacted in 1999, as part of legislation authorizing competition in the sale of electric generation to retail customers in Ohio. In lieu of requiring incumbent utilities to divest their generation assets, Ohio chose to protect its retail customers from incumbents' ability to leverage control to transmission assets to favor their own generation assets by requiring those incumbents to transfer control (though not ownership) of transmission assets to a qualifying transmission entity.[87] Far from conflicting with federal law or policy, Ohio Rev. Code § 4928.12, facilitates the implementation of federal policy as articulated in Order No. 2000.[88] It does so by requiring that Ohio transmission providers separate control of transmission

---

[85] *LSP Transmission Holdings, LLC v. Sieben*, 954 F.3d 1018 (8th Cir. 2020).

[86] *New York v. FERC*, 535 U.S. 1, 25-28 (2002).

[87] *See, e.g.,* Oh. Rev. Code § 4928.12(B) (providing the definition of a "qualifying transmission entity").

[88] *Regional Transmission Organizations*, Order No. 2000, 89 FERC ¶ 61,285 (1999), *order on reh'g*, Order No. 2000-A, 90 FERC ¶ 61,201 (2000), *aff'd sub nom. Pub. Util. Dist. No. 1 v. FERC*, 272 F.3d 607 (D.C. Cir. 2001).

and generation, reduce rate pancaking, and ensure that control of transmission facilities cannot be exercised by transmission users,

AEPSC argues that a state RTO membership mandate conflicts with FPA section 202,[89] which empowers FERC to divide the country into regional districts for the generation, transmission, and sale of electric energy. There is, however, no conflict. Ohio Rev. Code § 4928.12, which does not direct Ohio transmission owners to join any specific qualifying transmission entity. And it does not interfere with FERC's ability to divide the country into regional districts, should it choose to do so. In fact, both ATSI and DEO were once members of MISO and joined PJM, demonstrating that Ohio law does not specify which transmission entity it must join only that it must join a qualifying organization. The Ohio law also does not interfere with the ability of states to petition FERC to require a utility to interconnect with other facilities for the transmission or sale of electricity in interstate commerce.[90] Nor does section 202 represent a Congressional determination that RTO membership should be voluntary, as AEPSC alleges.[91] Rather, section 202 is simply a grant of authority to FERC to divide the country into districts for "voluntary interconnection and coordination of facilities for the generation, transmission, and sale of electric energy."[92] Ohio law neither interferes with the authority thereby granted to FERC nor with the ability of Ohio utilities to engage in such coordination.

---

[89] AEPSC Answer at 24-26, citing 16 U.S.C. § 824a.

[90] 16 U.S.C. § 824a(b).

[91] AEPSC Answer at 20.

[92] 16 U.S.C § 824a.

### F.    Limiting Incentives to Utilities Not Mandated to Join Transmission Organizations Does Not Conflict with FPA Section 219.

The Ohio Transmission Owners also make a number of meritless arguments concerning alleged conflicts between Ohio Rev. Code § 4928.12 and FPA section 219.[93] These arguments fail, because they depend on reading into section 219 matters that are not there.

AEPSC, for instance, claims that, under section 219 "the Commission must provide incentives to every utility that 'joins' a Transmission Organization, regardless of the reason."[94] ATSI goes even further, alleging that "Section 219(c) mandates that an incentive be *paid* to 'each' transmission owner 'that joins' an RTO"[95] This ignores the fact that nothing in Section 219 requires that incentives for joining an RTO or any other purpose take the form of payments to utilities. In fact, as discussed in subsections II.A and II.B above, FERC and the Courts have made clear that neither AEP nor ATSI qualifies for an RTO adder.

ATSI states that "the statute thus provides that each utility that joins an RTO be eligible for an incentive. And, because ATSI and the other Respondents satisfy this statutory requirement, they are eligible for the RTO Participation Adder."[96] This is precisely the argument made by FERC and rejected by the only United States Court of Appeals to consider the issue. In *Cal. PUC*,[97] the Court explained that

> FERC interprets Order 679 as conferring on it "the authority ... to continue to grant incentive adders for electric utilities... that remain members of regional transmission organizations" without further inquiry into the voluntariness of their membership. . . . Under this interpretation, ongoing membership itself is the sole criterion for receipt of an incentive adder.[98]

---

[93] 16 U.S.C. § 824s.

[94] AEPSC Answer at 27.

[95] ATSI Motion to Dismiss at 15 (emphasis added).

[96] *Id.*

[97] *Cal. PUC*, 879 F.3d at 974.

[98] *Id.*

This is identical to the argument made here by the Ohio Transmission Owners. The Ninth Circuit already rejected the argument as "plainly erroneous" and inconsistent with Order No. 679.[99] The Court noted that Order No. 679 justified the RTO adder in "recognition of the benefits that flow from membership in [transmission] organizations *and the fact that continuing membership is generally voluntary.*"[100] Thus, the Court concluded, "When membership is not voluntary, the incentive is presumably not justified."[101] Membership by AEP, ATSI and DEO in PJM is not voluntary, and the RTO Participation Adder charge to Ohio consumers is therefore not justified.

Fundamentally, the Ohio Transmission Owners make the mistake of regarding the RTO adder as an entitlement for being an RTO member. The wording of Section 219 makes it plain, however, that what is offered is not an entitlement or reward but an "incentive." As FERC itself stated in Order No. 679-A, the RTO incentive is "an inducement for utilities to join, and remain in, Transmission Organizations."[102] However, as the Court noted in *Cal. PUC*, "An incentive cannot 'induce' behavior that is already legally mandated."[103] Thus, notwithstanding the Ohio Transmission Owners' claims to the contrary,[104] Section 219 does contain a "voluntariness" requirement in that it only authorizes "incentives that are within FERC's jurisdiction, *i.e.*, that are inducements to take action that is not otherwise mandated.

---

[99] *Id.*, citing *Promoting Transmission Investment Through Pricing Reform,* Order No. 679, 116 FERC ¶ 61,057 (2006) ("Order 679"), *order on reh'g,* Order No. 679-A, 117 FERC ¶ 61,345 (2006) ("Order 679-A"), *order on reh'g,* Order No. 679-B, 119 FERC ¶ 61,062 (2007) ("Order 679-B").

[100] *Cal. PUC* at 974 (emphasis added by the Court), citing Order No. 679 at P 331.

[101] *Id.*

[102] Order No. 679-A at P 86. AEP is simply wrong in stating that the purpose of the RTO incentive is to compensate transmission owners for the costs of RTO membership. AEP Answer at 33. Costs are recovered through transmission rates. The purpose of the incentive is to induce entities who have a choice to join RTOs not to reward those that are required to join.

[103] 879 F.3d at 974.

[104] AEP Answer at 29-30; ATSI Motion to Dismiss at 15-16; DEO Answer at 8-9.

As discussed above in subsections II.A and II.B, this voluntariness requirement is consistent with longstanding FERC policy, incorporated in Order No. 679,[105] that rate incentives must be prospective and that there must be a connection between the incentive and the conduct meant to be induced.[106] The policy, as the Ninth Circuit noted, prohibits FERC from rewarding utilities for past conduct or for conduct which they are otherwise obligated to undertake.[107] In 2001, for example, FERC denied the New England Power Pool Participants Committee an incentive for a maintenance/construction pilot project. FERC reasoned that awarding the incentive would "unjustly reward" the committee "for doing what it is supposed to do, *i.e.,* to adequately maintain its facilities in a prudent, cost-effective manner."[108] Similarly, in *ISO New England, Inc*., FERC noted the futility of providing an incentive when the relevant decision had already been made.[109]

AEPSC raises the additional claim that the FERC has already found its participation in PJM to be voluntary.[110] The cases cited by AEPSC, however, do not support this allegation. AEPSC alludes to, but does not quite acknowledge, the fact that AEP committed to join an RTO as part of a settlement of AEP's merger with CSW Corporation.[111] As an Administrative Law Judge summarized AEPSC's testimony, stating:

> [O]n May 24, 1999, AEP entered into a stipulation with the Staff in the CSW merger proceeding that provided, among other things, that AEP would file with FERC a proposal to transfer operation and control of the bulk transmission facilities in the company's east zone to an RTO. The Commission approved the

---

[105] *Cal. PUC*, 879 F.3d at 977.

[106] *Id.*

[107] *Id.*

[108] *New England Power Pool,* 97 FERC ¶ 61,093 at 61,477 (2001), *reh'g denied* 98 FERC ¶ 61,249 (2002).

[109] *ISO New England, Inc*., 96 FERC ¶ 61,359 at 62,355 (2001).

[110] AEPSC Answer at 6-7, nn. 9-10.

[111] "In 2004, AEP's eastern utilities opted to join PJM following the merger of AEP and CSW Corporation." *Id*. at 6.

merger, as conditioned, and required AEP to indicate its acceptance of the
conditions, which it did on March 27, 2000.[112]

It is true, as the Administrative Law Judge found, that AEP's decision to enter into the settlement and commit to transferring control of its transmission facilities to an RTO was voluntary. However, once AEP accepted FERC's conditions for the merger, on March 27, 2000, the decision to join an RTO was no longer voluntary. And, as noted above, incentives are not appropriately offered for actions that a utility is mandated to take, even where the mandate stems from a settlement voluntarily entered into. In short, even without considering Ohio Rev. Code § 4928.12, AEPSC's affiliates would not be entitled to the RTO incentive. It could be argued that this settlement requires all AEPSC transmission affiliates to join an RTO and makes them ineligible to receive the RTO Participation Adder.

DEO argues that it "invested millions of dollars in its move from MISO [the Midcontinent Independent System Operator, Inc.] to PJM," and that the RTO Incentive was a piece of the settlement that resolved litigation surrounding that move.[113] DEO's decision to switch RTOs was a voluntary. It was not undertaken at the urging of its customers. And DEO itself provides no citation to contemporary evidence demonstrating that eligibility for the RTO incentive was the purpose for the move. However, the fact remains that DEO is still required to participate in a FERC-approved transmission organization, whether that organization be MISO or PJM. Its participation in either is not voluntary. Thus, DEO's argument rings hollow. In any

---

[112] *The New PJM Companies*, 106 FERC ¶ 63,029 at P 43 (2004), *aff'd New PJM Companies*, Opinion No. 472, 107 FERC ¶ 61,271 at P 43, *order on reh'g* 108 FERC ¶ 61,123 (2004), *reh'g dismissed*, 110 FERC ¶ 61,009 (2005). The Administrative Law Judge's opinion cited *American Elec. Power Co.* Opinion No. 442, 90 FERC ¶ 61,242 at p. 61,786-90 (2000) ("Opinion 442). The hearing before the ALJ addressed efforts by the states of Kentucky and Virginia to prevent AEP from joining an RTO.

[113] DEO Answer at 15.

event, the settlement was filed with FERC in 2014, and DEO cannot have reasonably expected

that an ROE deemed just and reasonable in 2014 would remain unchanged in 2022.[114]

ATSI argues, in effect, that denying the RTO incentive to certain transmission owners

based on the law of the state in which they operate would be unduly discriminatory, "as it leads

to disparate treatment of similarly situated entities, in that two entities with identical risks are not

eligible to receive the same returns."[115] This argument fails for two reasons.

First, for purposes of eligibility for an inducement to join a transmission organization,

transmission owners in states with membership mandates are ***not*** similarly situated to

transmission owners in states without such mandates. The latter may well be swayed by the

availability of an incentive. The former cannot be swayed, as it has no choice in the matter.

Second, the level of risk faced by a transmission owner is not relevant to eligibility for the RTO

incentive. On the contrary, as FERC has explicitly held, utilities are compensated for risk

through the base ROE.[116] Otherwise, the incentive would not be a flat amount, but would vary

based on the riskiness of the utility in question.

### G.    Ohio Consumers Served by AEPSC's, ATSI's And DEO's Ohio Affiliates Would Be Forced to Pay Unduly Discriminatory Rates If These Utilities Are Allowed to Continue to Charge The 50-Basis Point RTO Participation Adder.

Federal Power Act section 205 requires that "no public utility shall, with respect to any

transmission or sale subject to the jurisdiction of the Commission, (1) make or grant any undue

preference or advantage to any person or subject any person to any undue prejudice or

---

[114] "A rate of return may be reasonable at one time and become too high or too low by changes affecting opportunities for investment, the money market, and business conditions generally." *Bluefield Water Works v. Pub. Serv. Comm'n,* 262 U.S. 679, 693 (1923).

[115] ATSI Motion to Dismiss at 20.

[116] *Promoting Transmission Investment Through Pricing Reform,* Order No. 679, 116 FERC ¶ 61,057 at P 92 (2006).

disadvantage . . . ."[117] Federal Power Act section 206 similarly obligates FERC to fix any rate found to be unjust, unreasonable, unduly discriminatory or preferential.[118] FERC has already determined that it would be unjust and unreasonable for Dayton to include in its transmission rates an incentive for which it is not eligible. Failing to make a similar finding for AEPSC, ATSI and DEO would result in discriminatory treatment of their customers as compared to Dayton's Ohio customers. Given that these Transmission Owners are also subject to the same Ohio law as Dayton, they too are ineligible for the RTO Participation Adder regardless of their corporate structures.

> **H.** **OCC Agrees with The Public Utilities Commission of Ohio's Office of The Federal Energy Advocate's Recommendation to FERC that Consumers Should Not Be Required to Pay the RTO Participation Adder Charge if a Transmission Owner is Required to Belong to a Regional Transmission Organization.**

The Public Utilities Commission of Ohio ("PUCO") comments reflect that "[t]he PUCO [] looks forward to further discussion of the legal foundation and feasibility of whether it may be possible to apply different ROE percentages to different states within a PJM transmission zone, if that is the remedy requested."[119] The PUCO also believes that "[t]he question remains whether, and to what extent, a transmission owner's facilities located in a PJM transmission zone or zones that cross state boundaries are subject to FERC's findings regarding Ohio's law."[120] Consequently, the PUCO believes that such findings are properly addressed in future proceedings involving these transmission owners.[121]

---

[117] 16 U.S.C. § 824d(b).

[118] 16 U.S.C. § 824e(a).

[119] *The Office of the Ohio Consumers' Counsel v. American Electric Power Service Corp., et al.*, Docket No. EL22-34-000, Comments of the Public Utilities Commission of Ohio at 7 (Mar. 31, 2022) ("PUCO Comments").

[120] *Id.* at 4.

[121] *Id.*

As noted earlier in this Answer, to protect Ohio's consumers from unwarranted charges, the RTO Participation Adder charge should be eliminated as soon as possible for all of Ohio's Transmission Owners. And, as explained below, OCC agrees with the PUCO's Office of the Ohio Federal Energy Advocate ("OFEA") comments to FERC[122] that the RTO Participation Adder should not apply to Transmission Owners that are required to belong to and Regional Transmission Organization, such as Ohio's Transmission Owners.

By Ohio law, the PUCO is required to "employ a federal energy advocate to monitor the activities of the federal energy regulatory commission and other federal agencies and *to advocate on behalf of the interests of retail electric service consumers in this state*."[123] In its Supplemental NOPR, FERC invited comments on whether the ROE Incentive Adder charge to consumers should be available only to transmitting utilities that voluntarily join a Regional Transmission Operator or and Independent System Operator.[124]

In response to the FERC's Supplemental Notice, the OFEA filed comments and recommendations to protect PJM's consumers from unnecessary charges associated with the extra profits charge.[125] In part, the OFEA responded to FERC's rulemaking inquiry as follows:

> "The Ohio FEA does not believe this incentive [the RTO Participation Incentive Adder charge to consumers] should be available to transmitting utilities that join a transmission organization involuntarily. An "incentive" is generally defined as something that motivates someone to take an action. If the ROE adder is available regardless of voluntariness, then the "incentive" will not actually change, or incent, any behavior. Such a rule would also be inconsistent with the Commission's longstanding policy that incentives should only be awarded to induce voluntary behavior."[126]

---

[122] *Electric Transmission Incentives Policy Under Section 219 of the Federal Power Act,* 175 FERC ¶ 61,035 (Apr. 15, 2021) ("Supplemental NOPR"), FERC Docket No. RM20-10-000, Comments of the Public Utilities Commission of Ohio's Office of the Federal Energy Advocate Comments at 7-9 (filed Jun. 25, 2021) ("Supplemental NOPR OFEA Comments").

[123] Ohio Revised Code section 4928.24 (*emphasis added*).

[124] Supplemental NOPR at P 6, 15-17.

[125] Supplemental NOPR OFEA Comments at 7-9.

[126] Supplemental NOPR OFEA Comments at 7.

The OFEA also stated that "If a transmitting utility is required by applicable state or federal law to join an RTO/ISO, then, when the transmission utility joins a transmission organization, it is not doing so voluntarily."[127] The OFEA consequently recommended that "Ohio public utilities should not receive incentives [the RTO Participation Adder charge to consumers] for behaviors that they are already required by law to perform, particularly when they are already receiving just and reasonable compensation for the service they are obliged to render."[128]

OCC could not agree more with the PUCO's OFEA's comments and recommendations to FERC in its Supplemental NOPR transmission incentives investigation. Because Ohio's Transmission Utilities' membership in a federally approved transmission organization has been required by Ohio law since 1999,[129] the RTO Participation Adder extra profits charge is inappropriate, unjust and unreasonable for Ohio's consumers. Consequently, FERC should discontinue this unwarranted, extra-profits charge as soon as practical. Consumer refunds and interest on these rate reductions should occur. FERC also should mandate the appropriate refunds to consumers consistent with OCC's Complaint and Answers in this proceeding.

## III.    CONCLUSION

OCC requests that FERC reject the arguments proffered in AEPSC's and DEO's Answers and reject ATSI's Motion to Dismiss. FERC instead should find that the inclusion of the RTO membership "incentive" in the rates paid by Ohio consumers for participation by AEPSC, ATSI and DEO in PJM is unnecessary. That is because Ohio law requires the Ohio transmission affiliates of these utilities join a FERC-authorized transmission organization – in this case, PJM.

---

[127] *Id.*

[128] *Id.* at 8.

[129] Ohio Revised Code section 4928.12

FERC should direct AEPSC's, ATSI's and DEO's Ohio affiliates to adjust their rates accordingly and provide credits or pay refunds, including interest calculated in accordance with 18 C.F.R. § 35.19a, as requested in the Complaint.

<div style="margin-left: 3em;">

Respectfully submitted,

Bruce Weston
Ohio Consumers' Counsel

*/s/ Larry Sauer*
Larry Sauer
Deputy Consumers' Counsel

**Office of the Ohio Consumers' Counsel**
65 East State Street, Suite 700
Columbus, Ohio 43215
(614) 466-1312 – Telephone
(614) 466-9475 – Facsimile
larry.sauer@occ.ohio.gov

Denise C. Goulet, Esq.
Barry Cohen, Esq.
McCarter & English, LLP
1301 K Street, N.W., Suite 1000 West
Washington, D.C. 20005
(202) 753-3400 – Telephone
(202) 354-4652 – Facsimile
dgoulet@mccarter.com
bcohen@mccarter.com

*Special Counsel for The Office of Attorney General of Ohio on Behalf of the Office of the Ohio Consumers' Counsel*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this date served a copy of the foregoing document via electronic mail upon all parties of record on the Commission's official service list in this proceeding. Dated in Columbus, Ohio, on this 15th day of April 2022.

<div align="right">

*/s/ Larry Sauer*
Larry Sauer
Deputy Consumers' Counsel

**Office of the Ohio Consumers' Counsel**
65 East State Street, Suite 700
Columbus, Ohio 43215
(614) 466-1312 – Telephone
(614) 466-9475 – Facsimile
larry.sauer@occ.ohio.gov

</div>

UNITED STATES OF AMERICA
BEFORE THE
FEDERAL ENERGY REGULATORY COMMISSION

| | |
|---|---|
| Office of the Ohio Consumers' Counsel v. American Electric Power Service Corporation, *et al.* | Docket No. EL22-34-000 |

**MOTION FOR LEAVE TO ANSWER
AND ANSWER OF BUCKEYE POWER, INC.
TO ATSI AND AEP ANSWERS**

Pursuant to Rules 212 and 213 of the Federal Energy Regulatory Commission's (the "Commission") Rules of Practice and Procedure,[1] Buckeye Power, Inc. ("Buckeye") moves for leave to answer and submits this Answer to the April 28, 2022, Motion for Leave to Respond and Response submitted by American Transmission Systems, Inc. ("ATSI")[2] and the May 2, 2022, Motion for Leave to Answer and Answer submitted by American Electric Power Service Corporation ("AEP").[3] ATSI's and AEP's filings respond, in part, to Buckeye's earlier filings[4] supporting the Complaint[5] filed by the Office of the Ohio Consumers' Counsel ("OCC").

---

[1] 18 C.F.R. §§ 385.212 and 385.213.

[2] Motion for Leave to Respond and Response of American Transmission Systems, Inc. to Answers (Apr. 28, 2022), eLibrary No. 20220428-5404 ("ATSI Response").

[3] Motion for Leave to Answer and Answer of American Electric Power Service Corporation (May 2, 2022), eLibrary No. 20220502-5353 ("AEP Second Answer").

[4] Motion for Leave to Respond and Response of Buckeye Power, Inc. to Respondents' March 31, 202[2], Oppositions to the Complaint (Apr. 15, 2022), eLibrary No. 20220415-5229 ("Buckeye Response"); Answer of Buckeye Power, Inc. to the Motion to Dismiss of American Electric Power Service Corporation (Apr. 12, 2022), eLibrary No. 20220412-5216 ("Buckeye MTD Answer").

[5] Complaint to Protect Ohio Consumers from Unreasonable Electric Transmission Charges and Request for Establishment of Refund Effective Date and Request for Expedited Processing of Complaint by Office of the Ohio Consumers' Counsel (Feb. 24, 2022), eLibrary No. 20220224-5221 ("OCC Complaint").

- 2 -

## I.    MOTION FOR LEAVE TO RESPOND

The Commission's Rules prohibit answers to responses unless otherwise authorized by the Commission,[6] but the Commission may waive this prohibition for good cause.[7] It commonly does so where considering an answer that would help the Commission deliberate.[8] Buckeye respectfully requests leave to submit the following brief Answer, which will aid the Commission's understanding of important issues raised by Buckeye in support of OCC Complaint.

## II.    ANSWER

The OCC Complaint and Buckeye's prior filings demonstrate that the transmission rates of Respondents (ATSI, AEP, and Duke Energy Ohio) are unjust, unreasonable, and unduly discriminatory. These rates include a 50 basis point Regional Transmission Organization ("RTO") Participation Adder ("Adder"). Respondents are ineligible for that Adder, at least to the extent applied to their or their affiliate's Ohio facilities and charged to Ohio load, because Ohio law[9] *requires* participation in a Transmission Organization whereas *voluntary* participation is a threshold requirement for an Adder under Commission policy.

ATSI and AEP's most recent filings are largely repetitive of their prior ones, and we do not repeat our rebuttal of all of those arguments here. This silence, however, is not

---

[6] 18 C.F.R. § 385.213(a)(2).

[7] 18 C.F.R. § 385.101(e).

[8] *See, e.g.*, *Midcontinent Indep. Sys. Operator, Inc.*, 152 FERC ¶ 61,216, P 58 (2015) (accepting answers to protests and answers to answers "because they have provided information that assisted us in our decision-making process"), *reh'g denied*, 155 FERC ¶ 61,134 (2016).

[9] Ohio Rev. Code Ann. § 4928.12.

- 3 -

a waiver or concession of Buckeye's position on these issues. The few novel points in
ATSI's and AEP's latest filings provide no basis for rejecting the Complaint.

>    **A.    There is no inconsistency between Buckeye's position here and
>    its transmission credits under section 30.9 of the PJM Tariff.**

Buckeye has a minority ownership interest in certain facilities co-owned by AEP
Ohio Transmission Company ("AEPOHTCo") and receives transmission credits for those
facilities under section 30.9 of the PJM Tariff. These credits are calculated using a
formula "modeled on the transmission formula rate used by AEPOHTCo (and other AEP
Companies),"[10] including AEPOHTCo's return on equity ("ROE") and Adder.[11]
Similarly, certain Buckeye members own transmission facilities located in the AEP Zone
and integrated into the AEP transmission system, and Buckeye receives section 30.9
credits on behalf of those members that are also based, in part, on AEP's current ROE.
ATSI and AEP wrongly suggest that Buckeye's credits are somehow inconsistent with
Buckeye's support of the OCC Complaint.[12]

These facilities are part of the integrated AEP transmission system (and, in the
case of Buckeye's facilities, jointly owned by AEP) and located in the AEP Zone.
Buckeye's current credits for these facilities simply reflect AEP's ROE, which currently
includes the Adder.[13] In the same paragraph of the 2018 Buckeye filing that ATSI and

---

[10] PJM Interconnection L.L.C. and Buckeye Power, Inc., Network Integration Transmission Service
Agreement – Calculation of Transmission Credits under Section 30.9 of PJM Open Access Transmission
Tariff, Transmittal Letter at 3, Docket No. ER18-2110-000 (July 31, 2018), eLibrary No. 20180731-5088
("2018 Buckeye Filing").

[11] *Id.* at 9.

[12] ATSI Response at 4 n.18; AEP Second Answer at 1-2 n.3.

[13] Buckeye is not a separate PJM Transmission Owner, does not have its own Zone, and does not have any
independent decision-making as to whether or not to join an RTO as an owner.

- 4 -

AEP cite, Buckeye committed to make corresponding changes to the ROE used for Buckeye's section 30.9 credits if there was a change to the AEPOHTCo's ROE then pending in Docket No. EL17-13.[14] Consistent with the purpose of Buckeye's credits, and to dispel any suggestion of inconsistency, Buckeye commits that following a final Commission order that eliminates the Adder from AEP's rates, Buckeye will voluntarily ask PJM to file to likewise remove the Adder from Buckeye's receipts under section 30.9 of the PJM Tariff.

### B.    *ATSI's ROE includes a RTO Participation Adder.*

Numerous Commission orders recognize that ATSI has a "Base ROE" of 9.88%.[15] These orders confirm that the 10.38% total ATSI ROE stated in the Docket No. ER15-303 settlement—which is explicitly "inclusive of any incentive adder for RTO participation"[16]—includes a 50 basis point Adder.

ATSI's attempts to avoid the clear implications of these orders fall short. ATSI claims it "has never acquiesced in a disaggregation of its settlement ROE values into different components."[17] But its own FirstEnergy Corporation affiliates[18] have done just

---

[14] 2018 Buckeye Filing at 9.

[15] Buckeye Response at 17 (citing *Pac. Gas & Elec. Co.*, 178 FERC ¶ 61,175, App. D (2022); *DATC Path 15, LLC*, 177 FERC ¶ 61,115, App. D (2021); *Constellation Mystic Power, LLC*, 176 FERC ¶ 61,019, App. D, *order set aside in part*, 177 FERC ¶ 61,106 (2021) *modified on reh'g*, 178 FERC ¶ 61,116 (2022); *Ass'n of Businesses Advocating Tariff v. Midcontinent Indep. Sys. Operator, Inc.*, 173 FERC ¶ 61,159, App. 1 (2020)).

[16] Motion to Dismiss and Answer to Complaint of American Transmission Systems, Inc. (Mar. 31, 2022), eLibrary No. 20220331-5533 ("ATSI Motion to Dismiss and Answer"), attach. A, app. B ("ATSI Settlement Agreement") § II.C.2.

[17] ATSI Response at 5.

[18] As explained in ATSI's Response (at 7 n.26), "ATSI is a subsidiary of FirstEnergy Corporation."

- 5 -

that. In multiple filings to the Commission, ATSI's affiliates have represented that

ATSI's "Base ROE" is 9.88%:

- In Docket No. ER20-227, Jersey Central Power & Light Company, "which is a FirstEnergy Operating Company,"[19] submitted a new formula rate, which included a new ROE. That filing included a risk premium analysis, which lists the "Base ROE" established in Docket No. ER15-313 for ATSI as "9.88%."[20]

- In Docket No. ER17-217, Jersey Central Power & Light similarly submitted a rate filing that included a ROE component. Again, it submitted a risk premium analysis showing that ATSI's "Base ROE" established in Docket No. ER15-303 is "9.88%."[21]

- In Docket No. 21-265, Keystone Appalachian Transmission Company, "an indirect, wholly owned subsidiary of FirstEnergy,"[22] submitted a new formula rate that included an ROE component. The risk premium analysis included with that filing shows the "Authorized Return" for ATSI in Docket No. ER15-303 as "9.88%" and "10.56%."[23] (ATSI's ROE was 11.06% ROE from July 1, 2015, through December 31, 2015.[24]).

In any event, to the extent there is any uncertainty as to whether the existing ROE

includes an Adder, the OCC Complaint has still made a prima facie case that the current

ROE is unjust and unreasonable. At most, any uncertainty is a reason for the Commission

to investigate the current rate.

---

[19] Jersey Central Power & Light Company Submits Tariff Filing per 35.13(a)(2)(iii), Transmittal Letter at 1-2, Docket No. ER20-227-000 (Oct. 30, 2019), eLibrary No. 20191030-5097.

[20] *Id.*, Exhibit No. JCP-207, at 5.

[21] Jersey Central Power & Light Submits Tariff Filing per 35.13(a)(2)(iii), Exhibit No. JCP-13 at 5, Docket No. ER17-217-000 (Oct. 28, 2016), eLibrary No. 20161028-5151.

[22] PJM Interconnection, L.L.C. submits tariff filing per 35.13(a)(2)(iii), Transmittal Letter at 2, Docket No. ER21-265-000 (Oct. 30, 2020), eLibrary No. 20201030-5117.

[23] *Id.*, Exhibit KTC-208, at 2.

[24] *See* Buckeye Response at 17 (explaining that Commission orders have similarly listed both 9.88% and 10.56% as the ATSI Base ROE).

- 6 -

**CONCLUSION**

For the reasons stated above and in Buckeye's previous filings, the Commission should (1) direct Respondents to remove from their rates the RTO Participation Adder, at least as applicable to their Ohio facilities; (2) set the date of OCC's Complaint as the refund effective date; and (3) direct Respondents to provide refunds, including interest calculated in accordance with 18 C.F.R. § 35.19a.

Respectfully submitted,

*/s/ Cynthia S. Bogorad*

Cynthia S. Bogorad
David E. Pomper
Jeffrey M. Bayne

Attorneys for
Buckeye Power, Inc.

Law Offices of:
　　Spiegel & McDiarmid LLP
　　1875 Eye Street, NW
　　Suite 700
　　Washington, DC  20006
　　(202) 879-4000

May 13, 2022

**JA462**

CERTIFICATE OF SERVICE

I hereby certify that I have this day caused the foregoing document to be served upon each person designated on the official service list compiled by the Secretary in this proceeding.

Dated on this 13th day of May, 2022.

_/s/ Jeffrey M. Bayne_
Jeffrey M. Bayne

Law Offices of:
    Spiegel & McDiarmid LLP
    1875 Eye Street, NW
    Suite 700
    Washington, DC  20006
    (202) 879-4000

**JA463**

181 FERC ¶ 61,214
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Richard Glick, Chairman;
         James P. Danly, Allison Clements,
         Mark C. Christie, and Willie L. Phillips.

Office of the Ohio Consumers' Counsel       Docket No. EL22-34-000

   v.

American Electric Power Service Corporation,
American Transmission Systems, Inc., and
Duke Energy Ohio, LLC

ORDER ON COMPLAINT

(Issued December 15, 2022)

1.   On February 24, 2022, pursuant to sections 206 and 306 of the Federal Power Act
(FPA)[1] and Rule 206 of the Commission's Rules of Practice and Procedure,[2] the
Office of the Ohio Consumers' Counsel (OCC) filed a complaint (Complaint) against
American Electric Power Service Corporation (AEPSC),[3] American Transmission
Systems, Inc. (ATSI), and Duke Energy Ohio (Duke) (together, Ohio TO) alleging that
they are ineligible for a 50 basis point adder to the authorized return on equity (ROE) for
participation in a Transmission Organization[4] (RTO Adder), provided for under Order

---

[1] 16 U.S.C. §§ 824e, 825e.

[2] 18 C.F.R. § 385.206 (2021).

[3] The Complaint is filed against AEPSC's affiliates, Ohio Power Company
(Ohio Power) and AEP Ohio Transmission Company Inc. (AEP Ohio Transmission).
These companies are all subsidiaries of American Electric Power Company, Inc. (AEP).

[4] A Transmission Organization is "a Regional Transmission Organization,
Independent System Operator, independent transmission provider, or other transmission
organization finally approved by the Commission for the operation of transmission
facilities." 16 U.S.C. § 796(29); 18 C.F.R. § 35.35(e) (2021).

No. 679,[5] because their participation is not voluntary under Ohio law. As discussed below, we grant the Complaint in part, deny it in part, and establish a refund effective date of February 24, 2022.

## I.    Background

2.      In 2005, Congress amended the FPA to add a new section 219.[6]  Section 219(a) directed the Commission to promulgate a rule providing incentive-based rates for electric transmission for the purpose of benefitting consumers by ensuring reliability and reducing the cost of delivered power by reducing transmission congestion.  In relevant part, section 219(c) states that the Commission shall, to the extent within its jurisdiction, provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization.[7]  On July 20, 2006, the Commission issued Order No. 679, adding section 35.35 to the Commission's regulations, which includes, in relevant part, an incentive for utilities that "join and/or continue to be a member of an ISO, RTO, or other Commission-approved Transmission Organization."[8]  The Commission declined to make a finding on the appropriate size or duration of the incentive, but noted that the basis for providing the incentive to existing members "is a recognition of the benefits that flow from membership in such organizations and the fact [that] continuing membership is generally voluntary."[9]  The Commission also declined to create a generic ROE incentive for such membership, and instead decided that it would consider the appropriate ROE incentive when public utilities requested it on a case-by-case basis.[10]

3.      In 2018, the U.S. Court of Appeals for the Ninth Circuit (Ninth Circuit) addressed Commission orders where, pursuant to section 219 and Order No. 679, the Commission summarily granted Pacific Gas & Electric Company's (PG&E) requests for an RTO Adder for its continuing membership in the California Independent System Operator (CAISO), notwithstanding California Public Utility Commission's argument

---

[5] *Promoting Transmission Inv. through Pricing Reform*, Order No. 679, 116 FERC ¶ 61,057, *order on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345 (2006), *order on reh'g*, 119 FERC ¶ 61,062 (2007).

[6] Energy Policy Act of 2005, Pub. L. No. 109-58, § 1241.

[7] 16 U.S.C. 824s(c).

[8] Order No. 679, 116 FERC ¶ 61,057, *order on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345, *order on reh'g*, 119 FERC ¶ 61,062.

[9] Order No. 679, 116 FERC ¶ 61,057 at PP 327, 331.

[10] *Id.* P 327.

that PG&E was ineligible for the incentive because California law required PG&E to participate in CAISO.[11]  The Ninth Circuit in *CPUC* recognized that under Order No. 679, the  presumption that a utility that has joined, and has ongoing membership in, a Transmission Organization is eligible for an RTO Adder may be rebutted by evidence that such membership is not voluntary.[12]  Relying on the Commission's description of incentive adders as "an *inducement* for utilities to join, and remain in, Transmission Organizations,"[13] the Ninth Circuit concluded that, since an incentive cannot induce behavior that is already legally mandated, "the voluntariness of a utility's membership in a transmission organization is logically relevant to whether it is eligible for an adder."[14] The Ninth Circuit remanded the underlying proceedings and instructed the Commission to "inquire into PG&E's specific circumstances, i.e., whether it could unilaterally leave [CAISO] and thus whether an incentive adder could induce it to remain in [CAISO]."[15] On remand, the Commission concluded that California law does not mandate PG&E's participation in CAISO and that the RTO Adder induces PG&E to continue its membership, affirming its grant of an incentive *because* it found PG&E membership in CAISO to be voluntary.[16]

4.      On August 17, 2020, in addressing the Dayton Power and Light Company's (Dayton) request for certain transmission rate incentives pursuant to sections 205 and 219,[17] the Commission accepted Dayton's requested RTO Adder for filing and suspended it for a five month period, subject to refund and the outcome of a paper hearing to explore whether Dayton had shown that its participation in PJM Interconnection, L.L.C. (PJM) or

---

[11] *Cal. Pub. Util. Comm'n v. FERC*, 879 F.3d 966 (9th Cir. 2018) (*CPUC*).

[12] *Id.* at 974-75 ("Order No. 679 provides that a utility demonstrating that it has remained in a transmission organization is 'presumed to be eligible' for an incentive adder… However, language throughout Order Nos. 679 and 679-A suggests that the presumption of eligibility may be rebutted by the arguments CPUC has made and that ongoing membership is not sufficient for an incentive adder… When membership is not voluntary, the incentive is presumably not justified.").

[13] *Id.* at 974 (citing Order No. 679-A, 117 FERC ¶ 61,345 at P 86) (emphasis in original).

[14] *Id.* at 975 (citing Order No. 679-A, 117 FERC ¶ 61,345 at P 86).

[15] *Id.* at 979.

[16] *Pac. Gas & Elec. Co.*, 168 FERC ¶ 61,038, at P 2 (2019) (*PG&E)*.

[17] 16 U.S.C. §§ 824d, 824s.

Docket No. EL22-34-000                                                      - 4 -

another Transmission Organization is voluntary, or if such participation is mandated by the Ohio Revised Code.[18]

5.      On July 15, 2021, following briefing, the Commission found that Dayton did not qualify for the RTO Adder and therefore denied Dayton's request.[19]  The Commission found that, given Ohio law, Dayton did not qualify for the RTO Adder under the Commission's current incentives policy because:  (1) Order No. 679 as interpreted in *CPUC* requires a showing of voluntary membership in such a Transmission Organization; and (2) Dayton's membership in a Transmission Organization is not voluntary because the Ohio statute requires it.[20]

## A.      Ohio TOs' Affiliates and the RTO Adder

6.      A number of PJM utilities provide service in Ohio and the rates for this service are set forth in the following rate zones:  (1) the Dayton Zone, which is wholly located within Ohio; (2) the AEP Zone, which spans Ohio, West Virginia, Indiana, Michigan, Kentucky, Virginia, and Tennessee; (3) the Duke Zone (DEOK), which spans Ohio and Kentucky; and (4) the ATSI Zone, which spans Ohio and Pennsylvania.[21]

7.      AEP has six public utility operating companies located in seven different states in the AEP Zone:  Appalachian Power Company, Indiana Michigan Power Company, Ohio Power, Kentucky Power Company, Wheeling Power Company, and Kingsport Power Company (collectively, AEP East Companies).  AEP also has several transmission-only entities providing transmission service in PJM in the AEP Zone:  AEP Appalachian Transmission Company Inc., AEP Indiana Michigan Transmission Company Inc., AEP Ohio Transmission, Kentucky Transmission Company Inc., and AEP West Virginia Transmission Company Inc. (collectively AEP East Transmission Companies).

---

[18] *The Dayton Power & Light Co.*, 172 FERC ¶ 61,140, at P 22 (2020).  Under the Ohio statute, "no entity shall own or control transmission facilities as defined under federal law and located in this state on or after the starting date of competitive retail electric service unless that entity is a member of, and transfers control of those facilities to, one or more qualifying transmission entities …." Ohio Rev. Code, §§ 4928.12 (A).

[19] *The Dayton Power & Light Co.*, 176 FERC ¶ 61,025 (2021) (Dayton Initial Order), *order on reh'g*, 178 FERC ¶ 61,102 (2022) (Dayton Rehearing Order) (together, Dayton Orders).

[20] Dayton Initial Order, 176 FERC ¶ 61,025 at P 14.

[21] Ohio Commission Comments at 5-6.

Ohio Power and AEP Ohio Transmission are the AEP companies owning and operating transmission facilities in Ohio.

8.      The AEP East Companies and the AEP East Transmission Companies each separately have a combined transmission rate on file as Attachments H-14 and H-20 of the PJM Open Access Transmission Tariff (PJM Tariff), respectively.[22]  Pursuant to section 219 and Order No. 679, the Commission separately granted the RTO Adder to the AEP East Companies and the AEP East Transmission Companies on the condition that the additional 50 basis points did not result in an ROE above the zone of reasonableness.[23]

9.      Duke is a wholly-owned operating subsidiary of Duke Energy Corporation that provides transmission service in the DEOK Zone under Attachment H-22 of the PJM Tariff for Duke Energy Ohio, Inc. and Duke Energy Kentucky, Inc., who jointly own transmission facilities.  In 2015, the Commission approved an uncontested settlement in connection with Duke's move from the Midcontinent Independent System Operator, Inc. (MISO) to PJM, the terms of which included, among other things, Duke's ROE on its revenue requirement for transmission service which is comprised of a 10.88% base cost of common equity and a 50 basis point RTO Adder.[24]

10.     ATSI is a wholly-owned, direct operating subsidiary of FirstEnergy Transmission, LLC, which in turn is a wholly-owned subsidiary of FirstEnergy Corporation.  ATSI provides transmission service in ATSI Zone under Attachment H-21 of the PJM Tariff. In 2015, the Commission approved a settlement, which included, among other things, the ROE on ATSI's revenue requirement for transmission service, "inclusive of any RTO Adder."[25]

## II.    **Complaint**

11.     OCC asserts that the Commission has found that Ohio law mandates transmission owner participation in an RTO in order to be eligible to provide transmission service in

---

[22] PJM Interconnection, L.L.C., Intra-PJM Tariffs, OATT Attachment H-14, (2.0.0); *see id.* H-20 (0.0.0).

[23] *Am. Elec. Power Serv. Corp.*, 124 FERC ¶ 61,306, at P 30 (2008); *AEP Appalachian Transmission Co.*, 130 FERC ¶ 61,075, at P 21 (2010), *order on reh'g*, 135 FERC ¶ 61,066 (2011).

[24] *Duke Energy Ohio, Inc.*, 151 FERC ¶ 61,029, at PP 10, 14 (2015).

[25] *PJM Interconnection, L.L.C.*, 153 FERC ¶ 61,106, at P 3 (2015); *PJM Interconnection, L.L.C.*, Docket No. ER15-303-002 (Mar. 11, 2016) (delegated order).

Ohio.[26]  In other words, OCC states, if the Ohio TOs did not belong to PJM or another qualifying Commission-approved transmission entity, they would be forbidden to own or control transmission facilities located in the State of Ohio.  Thus, OCC argues that the Ohio TOs' participation in PJM or any other Transmission Organization is not voluntary, similar to how Dayton's participation is not voluntary because the Ohio statute requires it.  OCC argues that, for the reasons explained in the Dayton Orders and *CPUC*, it is unreasonable to incent transmission owner activity that is already required by Ohio law.[27]

12.     OCC states that the Ohio TOs all, either directly or indirectly through their affiliates, provide transmission service in Ohio.[28]  OCC asserts that the Commission initially granted each of the Ohio TOs the right to include the RTO Adder in their rates, but those orders predate *CPUC* and the Dayton Orders.[29]

13.     OCC argues that Ohio TOs' existing formula rates that include the RTO Adder are excessive, unjust, unreasonable, and unduly discriminatory.[30]  OCC asserts that there are no material differences between Dayton and the Ohio TOs such that the Ohio TOs should be allowed to continue charging the RTO Adder.  OCC states that it would be unduly discriminatory to charge Ohio retail consumers in the service territories belonging to the Ohio TOs more for their transmission service than that provided in the Dayton service territory because of the RTO Adder.[31]  OCC further states that allowing the Ohio TOs to retain the RTO adders results in unwarranted extra transmission profits (through formula transmission rates) that provide an unjust windfall to the Ohio TOs' shareholders.

---

[26] Complaint at 9.

[27] *Id.* at 9-10.

[28] AEP serves Ohio consumers through its AEP Ohio affiliates.  Those include Ohio Power (including Columbus Southern Power Company) and AEP Ohio Transmission.  ATSI provides transmission service in Ohio through Ohio Edison Company, Toledo Edison Company and Cleveland Electric Illuminating Company.  Duke Energy Ohio directly serves Ohio retail consumers.

[29] *See Am. Elec. Power Serv. Corp.*, 124 FERC ¶ 61,306 at P 30; *AEP Appalachian Transmission Co.*, 130 FERC ¶ 61,075 at P 21, *order on reh'g*, 135 FERC ¶ 61,066; *Duke Energy Ohio, Inc.*, 151 FERC ¶ 61,029 at PP 10, 14; *PJM Interconnection, L.L.C.*, 153 FERC ¶ 61,106 at P 3; *PJM Interconnection, L.L.C.*, Docket No. ER15-303-002 (Mar. 11, 2016) (delegated order).

[30] Complaint at 11.

[31] *Id.* at 11-12.

Docket No. EL22-34-000                                                    - 7 -

14.     OCC also argues that including the RTO Adder in Ohio TOs' transmission rates is unjust and unreasonable because it would result in Ohio consumers paying rates well above the Ohio TOs' actual cost to provide service.[32]  While OCC states that it does not have the data to determine the financial effect of these overearnings, OCC explains that a ballpark estimate could be determined using the approximately $10.6 billion in Ohio transmission infrastructure costs over that 11-year period.  OCC explains that a reduction of 50 basis points in the ROE for the Ohio utilities, if these costs consisted of 50% capital investment, would save Ohio consumers over $26 million annually.[33]  OCC states that this estimate does not include investment in rate base prior to 2010; thus, actual savings could be significantly higher.

15.     OCC argues that the Commission should direct the Ohio TOs to provide detailed data showing the impact on consumers in Ohio of a 50 basis point reduction in their ROE.  OCC contends that, after verifying these amounts as accurate, the Commission should then require each of the Ohio TOs to eliminate the RTO Adder from its transmission formula rate.

16.     OCC requests that the Commission require each of the Ohio TOs to refund the difference between rates in effect on the date of the filing of this Complaint and the lower rates sought in this Complaint.[34]  OCC argues that refunds are appropriate because Ohio consumers have experienced significant increases in transmission service costs in recent years, primarily due to the increased investment in supplemental projects, including more than $7.5 billion over the past 11 years in Ohio.[35]  OCC notes that supplemental projects receive no cost-of-service regulatory oversight in Ohio.  OCC argues that the RTO Adder significantly increases the cost of this investment for Ohio consumers, all to encourage behavior that is already required under Ohio law.

## III.     Notice of Filing and Responsive Pleadings

17.     Notice of the Complaint was published in the *Federal Register*, 87 Fed. Reg. 12,437 (March 4, 2022), with interventions and protests due on or before March 16, 2022.  On March 8, 2022, the Commission granted an extension to file to March 31, 2022.

---

[32] *Id.* at 12.

[33] *Id.* at 13.

[34] *Id.* at 2-3.

[35] *Id.* at 14.

Docket No. EL22-34-000                                                    - 8 -

18.     AEPSC, Duke, and ATSI each filed answers to the Complaint.  AEPSC and ATSI also filed motions to dismiss.

19.     Notices of intervention were filed by the Public Utilities Commission of Ohio (Ohio Commission) (also filed comments), the Louisiana Public Service Commission, and the Pennsylvania Public Utility Commission.  Timely motions to intervene were filed by American Public Power Association, Public Citizen, Inc., Monitoring Analytics, LLC, Old Dominion Electric Cooperative, Xcel Energy Services Inc., American Municipal Power, Inc., and MISO Transmission Owners.

20.     Timely motions to intervene and comments were filed by Edison Electric Institute (EEI), PJM, WIRES, Buckeye Power, Inc. (Buckeye), Industrial Energy Users – Ohio (IEU-Ohio), and Northeast Ohio Public Energy Council (NOPEC).

21.     OCC and Buckeye filed separate answers to:  (1) AEPSC's motion to dismiss; and (2) answers and comments.  ATSI, AEPSC, and Buckeye filed answers to answers.

## IV.    **Motions to Dismiss**

22.     AEPSC argues that, while the Complaint names it as a respondent, AEPSC is not a public utility, does not have a transmission rate on file, and has not been awarded a transmission rate incentive pursuant to Order No. 679.[36]  Rather, AEPSC explains that it is a service company that provides management and professional services to AEP and its subsidiaries.[37]  AEPSC argues that, pursuant to section 206 of the Commission's rules, a complaint must "identify the action or inaction which is alleged to violate applicable statutory standards or regulatory requirements," whereas here the Complaint was filed only against AEPSC and no other AEP affiliate and therefore the Commission cannot grant the relief requested by the Complaint.[38]  Accordingly, AEPSC argues that the Complaint is deficient as to AEPSC and should be dismissed.[39]  AEPSC states that, while it has multiple utility affiliates that own and operate transmission facilities with transmission rates in the PJM Tariff, the Complaint fails to name any of them as respondents.[40]

---

[36] AEPSC Motion at 1-2.

[37] *Id.* at 3.

[38] *Id.* at 4-5 (citing 18 C.F.R. § 385.206(b)(1)).

[39] *Id.* at 4.

[40] *Id.* at 5.

23.     AEPSC and ATSI also request dismissal of the Complaint for failing to meet the burden under section 206, asserting that OCC's arguments rely on a mere assumption that there are no material differences between Dayton and other Ohio transmission owners, with no evidence to support this claim.[41]  ATSI further argues that the Commission should dismiss the Complaint because the Commission did not specifically authorize a 50-basis-point RTO Adder for ATSI.[42]

24.     OCC answers that the Complaint clearly names the transmission operating affiliates of AEPSC in Ohio as subject to the Complaint and the relief sought.[43] Additionally, OCC argues that the AEP Ohio transmission affiliates' formula transmission rates are posted on PJM's website under an "AEPSC" heading.[44]  OCC states that the Commission has previously found that the filing of a complaint against the affiliate that makes the rate filings on behalf of its utility affiliates is appropriate even though the caption does not name the individual public utility affiliates so long as the text in the complaint makes clear the identity of those affiliates.[45]  Buckeye adds that the Commission has long cautioned against attempts to elevate form over substance.[46] Buckeye also states that the Commission can waive any provision of Rule 206 for good cause.[47]

25.     OCC also contends that the Complaint explicitly sets out the basis for finding that the current rates are unjust and unreasonable and demonstrates that AEPSC's Ohio transmission affiliates are similarly situated to Dayton because they too are required by Ohio law to join a Transmission Organization.[48]  Buckeye argues that AEPSC's motion

---

[41] *Id.* at 7; ATSI Motion at 10-13.

[42] ATSI Motion at 6-10.

[43] OCC April 12 Answer at 3.

[44] *Id.* at 4.

[45] *Id.* at 6-7.

[46] Buckeye April 12 Answer at 3-4.

[47] *Id.* at 5.

[48] OCC April 12 Answer at 9-10.

does not contest the factual foundation of the Complaint, admitting that certain AEP affiliates operate in Ohio, receive an RTO Adder, and are subject to the Ohio statute.[49]

26.    In response, AEPSC reiterates that the Complaint fails to clearly identify an allegedly unlawful action because it fails to clearly identify a proper respondent.  AEPSC argues that the Complaint should be dismissed, and, if OCC wishes to proceed, it should be required to file a new complaint, naming proper parties as defendants, with a new refund effective date.[50]

## V.    Discussion

### A.    Procedural Matters

27.    Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214 (2021), the notices of intervention and timely, unopposed motions to intervene serve to make the entities that filed them parties to this proceeding.

28.    Rule 213(a)(2) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.213(a)(2) (2021), prohibits an answer to a protest unless otherwise ordered by the decisional authority.  We accept all answers filed by OCC, Buckeye, AEPSC, and ATSI because they have provided information that assisted us in our decision-making process.

29.    As an initial matter, we grant AEPSC's motion to dismiss it as a respondent because it is not a public utility regulated by the Commission.  However, the complaint made clear that OCC's complaint was directed at AEPSC's two affiliates, Ohio Power and AEP Ohio Transmission, and we will address the complaint as addressed to these entities.[51]

30.    We also deny AEPSC's and ATSI's motions to dismiss on grounds that OCC fails to present a *prima facie* case that the existing rate is unjust and unreasonable.  As set forth in Rule 206(b) of the Commission's regulations, a complaint must, among other things, explain how the action or inaction violates the applicable statutory standards or regulatory requirements.  OCC has done so here.  The Complaint identifies the actions and the statutory and regulatory provisions alleged to have been violated by those actions,

---

[49] Buckeye April 12 Answer at 2.

[50] AEPSC May 2 Answer at 14.

[51] *See Middle S. Servs., Inc. v. Middle S. Utils.*, 15 FERC ¶ 61,302 at 61,661 (1981).

and it provides analysis and information to support the applicability of Commission precedent to those actions.

**B.    Substantive Matters**

31.    Under the first prong of FPA section 206, a complainant must first establish that an existing rate is unjust, unreasonable, unduly discriminatory, or preferential.  If the Commission finds that a complainant has met that burden, the second prong of FPA section 206 requires the Commission to establish a just and reasonable replacement rate.  In this proceeding, we first must decide whether the formula rates of the Ohio TOs contain an RTO Adder granted by the Commission pursuant to section 219, and whether such RTO Adder is unjust, unreasonable, unduly discriminatory, or preferential.  To the extent that we find that an Ohio TO has an RTO Adder that is unjust, unreasonable, unduly discriminatory, or preferential, we must establish a just and reasonable replacement rate.

**1.    Whether the Ohio TOs have an RTO Adder granted by the Commission pursuant to section 219 and whether such RTO Adder is unjust, unreasonable, unduly discriminatory, or preferential**

**a.    Comments**

32.    Buckeye, IEU-Ohio, and NOPEC filed comments in support of the Complaint, arguing that the Commission's recent rulings in the Dayton Orders confirm that, because Ohio law mandates transmission owners to participate in a Commission-approved Transmission Organization, AEP, ATSI, and Duke's participation is not voluntary and therefore they do not qualify for an RTO Adder.[52]

33.    Buckeye argues that there is no basis for distinguishing this proceeding from the Commission's decision in the Dayton Orders, as the Commission's RTO Adder policy has not changed, nor has the Ohio statute.[53]  Buckeye argues that respondents are in the same position as Dayton:  they participate in PJM in order to fulfill their obligation under Ohio law to be a member of a Transmission Organization.  Buckeye argues that, in addition, it would be arbitrary and unduly discriminatory to require certain Ohio consumers to pay the RTO Adder to respondents for their compliance with state law, while (correctly) requiring that Dayton remove the RTO Adder from its rates.

---

[52] Buckeye March 31 Comments at 2; IEU-Ohio Comments at 2-3; NOPEC Comments at 4-5.

[53] Buckeye March 31 Comments at 9.

Docket No. EL22-34-000                                                           - 12 -

34.     The Ohio Commission agrees with the Dayton Orders that, based on current law
and circumstances, a transmission owner that owns or controls transmission facilities
solely in Ohio should not receive an incentive for participating in an RTO/ISO but states
that the question remains whether, and to what extent, a transmission owner's facilities
located in a PJM transmission zone or zones that cross state boundaries are subject to the
Commission's findings regarding Ohio's law.[54]

35.     EEI argues that OCC's reliance on the Dayton Orders is misplaced because, unlike
Dayton's proposed rate, the Ohio TO's rates have already been found to be just and
reasonable.[55]  Moreover, EEI argues that OCC does not address whether it is just and
reasonable to treat some utilities that turn over operational control of their facilities to
RTOs/ISOs differently than others.

          b.    **Answers**

36.     Some parties argue that OCC has not met its burden in demonstrating that Ohio
TOs' rates are unjust and unreasonable.  AEPSC argues that, unlike the Dayton Orders,
which involved a request by the utility to receive an RTO Adder for the first time, this
case concerns a section 206 complaint seeking to strip AEP utilities of an incentive that
the Commission previously approved.[56]  Duke argues that OCC simplistically assumes
that, because the Commission declined to grant Dayton an RTO Adder in a section 205
proceeding that the Commission must now affirmatively strip away Duke's adder
because it owns transmission assets in the state.[57]  AEPSC and Duke argue that OCC
shows no changed circumstances or new facts to demonstrate that their existing rates are
no longer just and reasonable or, for AEP, to counter the Commission's earlier finding
that AEP's decision to join PJM was voluntary.[58]  They assert that the Ohio law was in

---

[54] Ohio Commission Comments at 4.

[55] EEI Comments at 2-3.

[56] AEPSC March 31 Answer at 14.

[57] Duke Answer at 4.

[58] AEPSC March 31 Answer at 15-17; Duke Answer at 5.  AEPSC states that,
when AEP initially sought to join PJM, two states attempted to prevent AEP subsidiaries
in those states from joining.  The Commission subsequently made a preliminary finding
that "AEP's voluntary commitment to join PJM is designed to obtain economical
utilization of facilities and resources in the Midwest and Mid-Atlantic areas, as set forth
in Section 205(a) of the Public Utility Regulatory Policies Act (PURPA)" and later
affirmed an initial decision that found AEP's decision to join PJM voluntary based on

Docket No. EL22-34-000 - 13 -

place when the Commission granted AEP the adder. Duke contends that the Complaint assumes that its rates are *per se* unjust and unreasonable simply because they were accepted before the Commission issued the Dayton Orders.[59]

37. AEPSC argues that, under section 206, OCC must, but does not, provide an analysis demonstrating that the ROE inclusive of the 50 basis points is unlawful.[60] Duke similarly argues that the Complaint does not include factual analysis normally required when the Commission evaluates existing ROEs, such as expert witness testimony, analysis of financial models or conditions, factual support, or a demonstration that its ROE, inclusive of the adder, lies outside the zone of reasonableness.[61] Duke further argues that OCC fails to make a good faith effort to quantify the financial impact or burden, arguing that the information provided by OCC is misleadingly presented, based on unknown assumptions, and entirely irrelevant to the subject matter of the Complaint.[62]

38. Duke states that its RTO Adder was not awarded for joining an RTO; rather, it was agreed to in a settlement between Duke and its customers after years of negotiations regarding the rates Duke could charge as a member of PJM after its move from MISO.[63] Duke argues that the RTO Adder was an important part of a settlement package that resolved numerous complex issues and resulted in Duke accepting a "greatly reduced level of recovery as compared to" what Duke had originally sought in its rate filings. Duke argues that granting the Complaint would undermine the Commission's goals of encouraging settlements and would undermine investor confidence in Commission decisions.

39. ATSI similarly argues that the only reference to an RTO Adder in its rates is in its 2015 ROE settlement agreement, which states that all ROE values in its formula rate "are inclusive of *any* incentive adder for RTO participation."[64] ATSI argues that the language

---

record evidence. AEPSC March 31 Answer at 15-17 (citing *The New PJM Cos.*, 105 FERC ¶ 61,251, at P 1 (2003); *New PJM Cos.*, 107 FERC ¶ 61,271, at P 44 (2004)).

[59] Duke Answer at 5-6.

[60] AEPSC March 31 Answer at 19.

[61] Duke Answer at 6.

[62] *Id.* at 15-16.

[63] *Id.* at 14.

[64] ATSI March 31 Answer at 6-7 (citing ATSI Settlement Agreement, § II.C.1) (emphasis added).

in the settlement agreement makes it clear that any ROE adders would be subsumed into the settled effective ROE, and that any adders would be inseparable and indistinguishable from ATSI's base ROE.[65]  ATSI states that extrinsic evidence to the settlement agreement supports its argument, noting that ATSI has never had or requested an ROE inclusive of the RTO Adder, even as a transmission owner in MISO.[66]  ATSI argues that separating the settled ROE into a discrete base and incentive components would be contrary to Commission precedent and policy, and that the settlement was a product of compromise rather than an application of the Commission's incentive policies.[67]  ATSI contends that an attempt to isolate and extract an arbitrary amount of incentive adder for RTO participation from its settled ROE would deprive the settling parties of the benefit of their bargain, will result in avoidance of negotiated black-box type settlements in the future, and ultimately be contrary to the Commission's preference for resolution through settlement.[68]

40.     Several parties also note differences between Dayton and the Ohio TOs, stating that, while Dayton operates solely in Ohio, Ohio TOs own and operate transmission facilities outside of Ohio, meaning that the Ohio law does not apply to all of the Ohio TOs' assets.[69]  ATSI argues that, because a portion of its facilities are located in another state, the Ohio statute in question does not cause ATSI's participation in PJM to be involuntary.[70]

41.     AEPSC states that OCC attempts to extend the Dayton Orders' holding to a very different circumstance, i.e., the AEP East Companies and the AEP East Transmission Companies do not have separately stated transmission rates for each state in which those entities operate, but a single rate that covers utilities from several different states within PJM.[71]  AEPSC further states that AEP voluntarily made its decision to join PJM on a company-wide basis for all transmission owning affiliates, not only those located in Ohio, whereas, in contrast, both the Dayton Orders and *CPUC* involved a single utility that operated solely in a single state.  AEPSC argues that this would allow the Commission to

---

[65] *Id.* at 7.

[66] *Id.* at 7-8.

[67] *Id.* at 8-9.

[68] *Id.* at 9-10.

[69] *See, e.g.*, Duke Answer at 6; ATSI March 31 Answer at 10-11.

[70] ATSI March 31 Answer at 11.

[71] AEPSC March 31 Answer at 12.

privilege one state's mandate over other another states' decision to leave RTO membership up to the utility.

42.     ATSI argues that, if the Commission grants the Complaint, it would essentially allow the Ohio statute to dictate the application of the RTO adder in other states, which is impermissible under the dormant commerce clause.[72]  ATSI states that, even if the Commission required it to remove an RTO Adder from its Ohio-based facilities, there are no legitimate grounds to distinguish between its Ohio and non-Ohio facilities in its formula rates.[73]  ATSI contends that this requirement would essentially allow the Ohio statute to dictate Commission-jurisdictional rates by requiring ATSI to adopt a two-tier rate structure.[74]  ATSI further argues that this outcome would be contrary to law as it leads to disparate treatment of similarly situated entities, in that two entities with identical risk are not eligible to receive the same returns.[75]

43.     Duke argues that OCC's undue discrimination argument is also unsubstantiated, asserting that OCC is conflating the RTO Adder with the rate, without making any attempt to show that Duke's rate is actually higher, nor explaining how the Ohio TOs provide the "same electrical transmission service" as that provided by Dayton.[76]  Duke argues that establishing a different ROE for Dayton does not make Duke's ROE "unduly discriminatory" merely because it is a different number.  Duke argues that each transmission system is different, based on different investments, and serving different customers, and each of the Ohio TOs charges different transmission formula rates based on the specific investments of that utility.  Duke also argues that OCC does not support the idea that a customer of one utility is similarly situated to a customer of a different utility simply because both utilities have operations in the same state, much less the idea that such customers are similarly situated when one utility operates wholly in that state but the other utilities operate in another state(s) as well.[77]

44.     Additionally, AEPSC argues that the Commission should reconsider its finding that the Ohio law requires membership in a Transmission Organization, claiming that the Ohio statute only requires that an Ohio utility become a member of and transfer control

---

[72] ATSI March 31 Answer at 11-12.

[73] *Id.* at 12.

[74] *Id.* at 12-13.

[75] *Id.* at 20.

[76] Duke Answer at 7.

[77] *Id.* at 8.

of its transmission facilities to a "qualifying transmission entity," which is not necessarily the same thing as a "Transmission Organization."[78]  AEPSC asserts that the Commission's conclusion rested on dicta in an Ohio state supreme court case whereas, in a more recent Ohio supreme court case, the court never intimated that membership in a transmission organization was required.[79]  AEPSC states that, in any event, centralized transmission planning is a requirement of RTO qualification and an important factor for the benefits that RTOs provide to customers, while a "qualifying transmission entity" that satisfies the requirements of the Ohio statute would not need to engage in centralized transmission planning.  Duke states that a transmission entity that merely satisfies the criteria of the Ohio statute would not also qualify as an RTO because there is no central planning requirement in the Ohio statute, while an RTO or a Transmission Organization does have such a requirement.[80]  Therefore, Duke argues that it has non-RTO options to comply with the Ohio statute, including contracting for independent transmission management services with an entity such as TranServ International and appointing a separate Reliability Coordinator or creating a state-wide coalition that meets the requirements of Ohio law.[81]

45.     AEP and ATSI argue that OCC's reliance on the Dayton Orders and *CPUC* is misplaced.[82]  AEP argues that *CPUC* does not impose a voluntariness requirement but only requires the Commission to undertake a "case-by-case analysis" that "inquire[s] into [the utility's] specific circumstances" in evaluating the appropriateness of the adder.  AEP states that the Commission referred to the Ninth Circuit's finding that voluntariness is "logically relevant" to whether it is eligible for an adder, but that does not mean "required."[83]  AEP argues that *CPUC* merely held that the Commission relied on an erroneous interpretation of Order No. 679 and thus that the Commission engaged in an unexplained and unacknowledged departure from its policy, which is arbitrary and capricious.  ATSI states that *CPUC* involved a different fact pattern—that is, one with a utility with transmission facilities in a single state, whereas ATSI has facilities is more

---

[78] AEPSC March 31 Answer at 34.  *See also* WIRES Comments at 8.

[79] *Id.* (*citing In re Application of Ohio Power Co.*, 20 N.E.3d 699, 701 (Ohio 2014)).

[80] Duke Answer at 9.

[81] *Id.* at 11.

[82] *See* AEPSC March 31 Answer at 30-31; ATSI March 31 Answer at 17.

[83] AEPSC March 31 Answer at 32.

than one state (Pennsylvania and Ohio).[84]  Moreover, ATSI argues that, even if RTO membership is not voluntary, that does not mean the RTO Adder should be denied to transmission owners.[85]  Lastly, ATSI states that nothing in *CPUC* indicated that voluntariness is a necessary condition for the RTO Adder or that the Commission may never award an RTO Adder for non-voluntary RTO participation.

### c.   OCC and Buckeye Answers to the Answers

46.     In its answer, OCC states that providing Ohio TOs' Ohio affiliates and shareholders with an "incentive" for which they are not eligible is contrary to precedent and is *per se* unjust and unreasonable because there is no behavior to be encouraged.[86]  Buckeye states that the FPA includes no requirement to demonstrate changed circumstances to challenge existing rates, only that existing rates are unjust and unreasonable.[87]  Nevertheless, OCC and Buckeye argue that the Complaint demonstrates that circumstances have changed since the Commission granted the RTO Adder to the Ohio TOs in 2008, 2010, and 2015 because, in 2018, the Ninth Circuit determined that Order No. 679 and long-held Commission precedent imposed a "voluntariness" requirement to establish eligibility for a transmission incentive.[88]

47.     In response to the argument that the Commission cannot apply the reasoning of the Dayton Orders here because the Complaint is brought under section 206, OCC and Buckeye argue that the "'just and reasonable' lodestar is no loftier under section 206 than under section 205."[89]  Buckeye states that, if Dayton's eligibility for an adder turned on whether its participation in PJM is voluntary or if it is required by Ohio law, then the same standard applies to the Ohio TOs' Ohio affiliates.[90]

48.     OCC also sees no merit in the argument that its request for information turns the section 206 burden on its head, arguing that it is seeking information for quantifying the

---

[84] ATSI March 31 Answer at 17.

[85] *Id.* at 18 (citing Order No. 679, 116 FERC ¶ 61,057; *CPUC*, 879 F.3d 966).

[86] OCC April 15 Answer at 4.

[87] Buckeye April 15 Answer at 5.

[88] OCC April 15 Answer at 5; Buckeye April 15 Answer at 6.

[89] *Id.* at 13-14; Buckeye April 15 Answer at 4 (citing *FirstEnergy Serv. Co. v. FERC*, 758 F.3d 346, 353-54 (D.C. Cir. 2014)).

[90] Buckeye April 15 Answer at 4-5.

impact of the Complaint and not for establishing the basis for finding the Ohio TOs' rates unjust and unreasonable.[91]

49.     OCC also states that it provided evidence that the impact of the RTO Adder is $26 million annually, which was a conservative estimate based only on the effect of the overearnings on the planned transmission investment incorporated into PJM's Regional Transmission Expansion Plan over the past 11 years.  OCC asserts that, had it had the necessary data, it would have calculated a more accurate estimate, including historic investment in rate base, as well as planned investment over the past 11 years.[92]  It disagrees with Duke's claim that OCC should have used information from the annual formula updates, arguing that these updates do not provide sufficient information.  OCC argues that mathematical precision is not required in determining the financial impact, only "a good faith effort," which it provided.[93]

50.     In response to AEPSC's argument that the Commission has already found its participation in PJM to be voluntary, OCC states that AEP committed to join an RTO as part of a settlement of AEP's merger with Central and South West Corporation.[94]  Thus, OCC argues that, while the Administrative Law Judge found that AEP's decision to enter into the settlement and commit to transferring control of its transmission facilities to an RTO was voluntary, once AEP accepted the Commission's conditions for the merger, the decision to join an RTO was no longer voluntary.[95]  Buckeye adds that the Commission's statements regarding whether AEPSC acted voluntarily in joining PJM do not pertain to RTO Adders and are entirely unrelated to AEP's Ohio subsidiaries because they involved whether the Commission could allow AEP's subsidiaries in Virginia and Kentucky to join PJM without the approval of their respective states under section 205(a) of the Public Utility Regulatory Policies Act.[96]

51.     Noting Duke's argument that it "invested millions of dollars in its move from MISO to PJM," and that the RTO Adder was a piece of the settlement that resolved litigation surrounding that move, OCC states that the settlement was filed with the

---

[91] OCC April 15 Answer at 14.

[92] *Id.* at 10.

[93] *Id.* at 10-11.

[94] *Id.* at 26.

[95] *Id.* at 26-27.

[96] Buckeye April 15 Answer at 7 (citing 16 U.S.C. § 824a-1(a)).

Commission in 2014, and Duke cannot have reasonably expected that an ROE deemed just and reasonable in 2014 would remain unchanged in 2022.[97]

52.    Responding to ATSI's claim that the Complaint does not demonstrate that ATSI's rates include the RTO Adder, OCC points to an order authorizing an ROE for PG&E.[98] In that order, OCC states that, in determining the appropriate risk premium ROE for PG&E, the Commission included ATSI in the proxy group and used a base ROE that is 50 basis points lower than ATSI's ROE approved in the settlement agreement.[99] Buckeye argues that ATSI's affiliates have represented that ATSI's base ROE is 9.88% in several filings to the Commission.[100]  Buckeye further argues that ATSI misreads the plain language of the settlement agreement, which states that the agreed upon ROE values "*are inclusive* of any incentive adder for RTO participation," meaning that the RTO Adder is *included* as part of the current 10.38% ROE.[101]

53.    With respect to arguments that the Ohio TOs are not similarly situated to Dayton, OCC and Buckeye answer that Ohio TOs' Ohio affiliates, like Dayton, are all required by Ohio law to join a Commission-authorized Transmission Organization if they want to provide transmission services in Ohio.[102]  They argue that the Ohio TOs have not explained how their Ohio affiliates are different from Dayton, nor that the same law does not apply to all transmission utilities in Ohio.  Rather, they argue that the Ohio TOs are concerned about whether the removal of the incentive from their rates must be applied

---

[97] OCC April 15 Answer at 27-28.

[98] *Id.* at 8-9 (citing *Pac. Gas & Elec. Co.*, 178 FERC ¶ 61,175, at app. D.2 (2022)).

[99] *Id.* at 9.  Buckeye cites to other Commission orders that have similarly included risk premium models that show ATSI's "Base ROE" as 50 basis points less than the total ROE stated in the settlement agreement.  Buckeye April 15 Answer at 17 (citing *DATC Path 15, LLC*, 177 FERC ¶ 61,115, at app. D (2021); *Constellation Mystic Power, LLC*, 176 FERC ¶ 61,019, at app. D, *order set aside in part*, 177 FERC ¶ 61,106 (2021) *order on reh'g*, 178 FERC ¶ 61,116 (2022); *Ass'n of Businesses Advocating Tariff v. Midcontinent Indep. Sys. Operator, Inc.*, 173 FERC ¶ 61,159, at app. 1 (2020)).

[100] Buckeye May 13 Answer at 5 (citing *Jersey Cent. Power & Light Co.*, Docket No. ER20-227-000, Ex. No. JCP-207, at 5 (Oct. 30, 2019); *Jersey Cent. Power & Light Co.*, Docket No. ER17-217-000, Ex. No. JCP-13, at 5 (Oct. 28, 2016); PJM Interconnection, L.L.C., Docket No. ER21-265-000, Ex. KTC-208, at 2 (Oct. 30, 2020)) (listing an authorized return for ATSI as 9.88%).

[101] Buckeye April 15 Answer at 16.

[102] OCC April 15 Answer at 4-5, 11-13; Buckeye April 15 Answer at 8-9.

Docket No. EL22-34-000                                                                    - 20 -

solely to their Ohio affiliates' rates or to all affiliates operating in PJM, which pertains to
the scope of the remedy but is not a reason to dismiss or deny the relief sought in the
Complaint.  They assert that the Ohio TOs should not be permitted to charge Ohio
consumers an excessive ROE simply because of the way they have chosen to organize
their operations and have out-of-state affiliates.

54.     In response to ATSI's assertion that denying the RTO Adder to certain
transmission owners based on the law of the state in which they operate would lead to
disparate treatment of similarly situated entities, OCC states that transmission owners in
states with membership mandates are not similarly situated to transmission owners in
states without such mandates because only the latter can be swayed by the availability of
an incentive.[103]

55.     In response to arguments that the Commission should reconsider its decision that
the Ohio law requires membership in a Transmission Organization and that *CPUC* does
not impose a voluntariness requirement, OCC and Buckeye answer that the Commission
has already rejected AEP's and Duke's arguments in the Dayton Orders and should reject
these arguments as impermissible collateral attacks on its rulings.[104]  Buckeye also states
that the Ohio TOs provide no persuasive arguments for why the Commission should
interpret Ohio law differently in this proceeding, noting that arguments that the Ohio TOs
own transmission assets outside of Ohio are irrelevant to the scope of Ohio law as applied
to their Ohio-based facilities.[105]  Buckeye argues that, to the extent the Ohio TOs claim
that the Commission's application of *CPUC* was in error, they are arguing for a change in
Commission policy, which can be raised in the Commission's pending rulemaking on this
topic.[106]

            d.    **AEPSC and ATSI Additional Answers to Buckeye and
                  OCC Answers**

56.     AEPSC reiterates that, unlike Dayton, AEP operates an integrated transmission
system that spans and serves customers of multiple states.[107]  AEPSC argues that
customers in Ohio do not arrange service over just the facilities owned by Ohio utilities
but over the entire AEP system, benefitting from the resiliency and reliability of an

---

[103] *Id.* at 28.

[104] *Id.* at 14-16; Buckeye April 15 Answer at 13, 15.

[105] Buckeye April 15 Answer at 15.

[106] *Id.* at 13.

[107] AEPSC May 2 Answer at 5.

Docket No. EL22-34-000                                                    - 21 -

integrated system that spans multiple states, and pay one zonal transmission rate.  AEPSC claims that it plans and operates its transmission system as an integrated unit, as well as makes policy and regulatory decisions based on the impacts to the system as whole, which results in significant benefits to its customers.[108]

57.    AEPSC further states that, unlike Dayton, the Commission has already found the award of the RTO Adder to AEP's Ohio affiliates to be just and reasonable and consistent with Order No. 679 and section 219 and also found that AEP's decision for its affiliates to join PJM together as an integrated multistate utility was voluntary.[109]  AEPSC states that, while it may have initially joined PJM to satisfy a merger condition, that does not change the fact that AEP's decision to accept the merger condition was voluntary.[110]  AEPSC also states that the Commission's findings regarding voluntariness were not limited to AEP's Virginia and Kentucky affiliates.[111]  Finally, AEPSC disagrees that, notwithstanding that the Commission found AEP's decision to join PJM to be voluntary when it awarded the RTO Adder, the Ninth Circuit's decision in *CPUC* changed the circumstances.[112]  AEPSC states that the Ohio statute was in effect at the time the Commission awarded the incentive to the AEP companies for participating in PJM and, despite the existence of that statute, the Commission found the AEP companies met the criteria in both Order No. 679 and section 219.

58.    With respect to its settlement language, ATSI answers that the quoted provision does not state that the RTO Adder is included in the ROE values, only that the ROE values are "inclusive of any" RTO Adder.[113]  ATSI states that the settlement reflects the fact that the settling parties chose not to include any discernible RTO Adder in the ROE values in their black-box settlement.  ATSI argues that the orders cited by OCC and Buckeye involved utilities other than ATSI and neither interpreted nor addressed the language in the ATSI settlement agreement.[114]  ATSI states that it has never acquiesced in a disaggregation of its settlement ROE values into different components and the fact that the Commission used conservative values that, for purposes of its risk premium

---

[108] *Id.* at 5-6.

[109] *Id.* at 7.

[110] *Id.* at 7-8

[111] *Id.* at 8.

[112] *Id.* at 9.

[113] ATSI April 28 Answer at 3-4.

[114] *Id.* at 5.

analysis, assumed the maximum amount of adder that could possibly be embedded in ATSI's black box ROE is legally irrelevant.

59.     ATSI clarifies that it is a public utility that directly owns transmission facilities in both Ohio and Pennsylvania and operates those facilities as a fully integrated network with a single zonal rate; it is not a multi-state holding company, nor does not have a joint rate with any other affiliates.[115]  ATSI states that, because a portion of its facilities is located outside of Ohio, the Ohio statute does not cause ATSI's participation in PJM to be involuntary with respect to all of ATSI's transmission assets and Ohio cannot dictate the application of the RTO Adder in other states.[116]

### e.    __Determination__

60.     As discussed below, we find that OCC has shown that the rates for Ohio Power and AEP Ohio Transmission are unjust and unreasonable because the Commission specifically granted them an RTO Adder under section 219 and that their continued participation in a Transmission Organization is mandatory.  We find that OCC has not met its burden of showing the rates for Duke and ATSI are unjust and unreasonable as the Commission did not specifically grant them an RTO Adder under section 219 and their rates were instead the products of comprehensive settlements.

61.     Section 219(c) states that, "[i]n the rule issued under this section, the Commission shall, to the extent within its jurisdiction, provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization."[117]  The Commission implemented this directive in Order No. 679, finding that an RTO Adder is appropriate for entities that choose to remain members of a Transmission Organization because, in relevant part, continuing membership is "generally voluntary."[118]  The Commission determines a utility's eligibility for the RTO Adder separately from its analysis of the utility's base ROE, subject to the total ROE including the RTO Adder remaining within the zone of reasonableness.[119]  In Order No. 679, the Commission also found that

---

[115] *Id.* at 7.

[116] *Id.* at 7-8.

[117] 16 U.S.C. § 824s(c).

[118] Order No. 679, 116 FERC ¶ 61,057 at P 331.

[119] *See*, e.g*., Midcontinent Indep. Sys. Operator, Inc.*, 151 FERC ¶ 61,166, at PP 11-13 (2015) (finding that applicants were eligible for the RTO Adder but had not shown that the overall ROE resulting from the application of the RTO Adder had not been shown to be just and reasonable and conditioning inclusion of the RTO Adder subject to the resulting ROE being within the zone of reasonable as determined in an

single-issue ratemaking can support the infrastructure investment goals of section 219.[120] Accordingly, the Commission stated that it will allow applicants to make single-issue ratemaking filings to obtain the adder, and that the Commission will consider the potential need to combine or reconcile new and existing transmission rates when an applicant submits an incentive request.

### i.    Ohio Power and AEP Ohio Transmission

62.    Ohio Power and AEP Ohio Transmission sought—and the Commission made—a specific determination on the RTO Adder incentive for each entity in accordance with section 219.  In 2008 and 2009, respectively, Ohio Power and AEP Ohio Transmission submitted to the Commission, pursuant to section 205, revised tariff sheets establishing formula rates that included an RTO Adder.  In accepting those formula rates, the Commission specifically evaluated and granted up to 50 basis points of incentive ROE to each entity, noting that the incentive was consistent with the stated purpose of section 219 and was based on the policy of encouraging utilities to join and remain in an RTO/ISO.[121]  In the Complaint, OCC appropriately identified the specific RTO Adders approved by the Commission that are applicable to Ohio Power and AEP Ohio Transmission and made a good faith effort to quantify the financial impact of the RTO Adders with available data and information.[122]  Because the Commission specifically evaluated and granted RTO Adders to Ohio Power and AEP Ohio Transmission on a single-issue basis, separate from all other ROE issues, we may reevaluate and revise those specific incentives on a single-issue basis in response to the changed circumstances raised in the Complaint.[123]

---

existing complaint proceeding); *N.Y. Indep. Sys. Operator, Inc.*, 151 FERC ¶ 61,004, at P 89 (2015) ("We clarify that in the hearing proceedings discussed below, NY Transco's zone of reasonableness will be established, as well as a determination of where within that zone its base level ROE should be set.  The ROE incentive approved herein (50 basis points RTO adder) will be bounded by the upper end of the zone of reasonableness determined at hearing.").

[120] Order No. 679, 116 FERC ¶ 61,057 at PP 191-92.

[121] *Am. Elec. Power Serv. Corp.*, 124 FERC ¶ 61,306 at P 30; *AEP Appalachian Transmission Co.,* 130 FERC¶61,075 at P 21.

[122] 18 C.F.R. § 385.206(b)(4).

[123] The Commission granted the adder prior to setting the base ROE for hearing, so when the parties entered into settlement discussions, they knew they were negotiating

63.     We agree with OCC that the RTO Adder, as approved by the Commission pursuant to section 219 for Ohio Power and AEP Ohio Transmission, is no longer just and reasonable.[124]  As the Commission found in the Dayton Orders, the Ohio statute mandates that an entity shall not "own or control transmission facilities… unless [it] is a member of, and transfers control of those facilities to, one or more qualifying transmission entities" that complies with nine criteria, one of which is that the qualifying transmission entity be approved by the Commission.[125]  As with Dayton, Ohio Power and AEP Ohio Transmission are required to join a Transmission Organization under Ohio law.[126]  As such, Ohio Power and AEP Ohio Transmission do not qualify for an RTO Adder under the Commission's incentives policy because Order No. 679, as interpreted in *CPUC*, requires a showing of voluntary membership in a Transmission Organization, which, as noted, they cannot make.[127]  Therefore, we find that the RTO Adders granted to Ohio Power and AEP Ohio Transmission pursuant to section 219 are unjust and unreasonable.

---

only the base ROE.  *Am. Elec. Power Serv. Corp.,* 124 FERC ¶ 61,306 at P 20; *AEP Appalachian Transmission Co.*, 130 FERC ¶ 61,075 at P 19.

[124] *See Int'l Transmission Co. v. FERC*, 988 F.3d 471, 485 (D.C. Cir. 2021) (finding the Commission had satisfied its section 206 burden to show an expressly granted adder independent of the underlying ROE became unjust and reasonable when the Commission found "the merger had reduced [the utility's] independence," which was the basis of granting the adder).

[125] Dayton Initial Order, 176 FERC ¶ 61,025 at P 56 (citing to Ohio Rev. Code, § 4928.12).

[126] Moreover, whether AEPSC's affiliates' decision to specifically join PJM was voluntary is irrelevant; their decision to join a Transmission Organization is required by Ohio law.

[127] We decline to address arguments that the Ohio statute does not mandate participation in a Transmission Organization and that *CPUC* does not impose a voluntariness requirement, as these arguments amount to impermissible collateral attacks on the Dayton Orders.  *See* e.g*., NSTAR Elec. Co. v. ISO New England, Inc.*, 120 FERC ¶ 61,261 at P 33 (2007) ("[c]ollateral attacks on final orders and relitigation of applicable precedent, especially by parties that were active in the earlier case, thwart the finality and repose that are essential to administrative efficiency, and are strongly discouraged"); *see ISO New England Inc.*, 138 FERC ¶ 61,238, at P 17 (2012) ("[A] collateral attack is an attack on a judgment in a proceeding other than a direct appeal and is generally prohibited.").

Docket No. EL22-34-000                                                    - 25 -

## ii.    **Duke and ATSI**

64.    We find that Duke and ATSI are not similarly situated to Ohio Power and
AEP Ohio Transmission.  Unlike the RTO Adders for Ohio Power and AEP Ohio
Transmission, which the Commission evaluated and granted under section 219 as an
incentive to encourage participation in an RTO,[128] Duke's and ATSI's ROEs, including
any adders, were each embedded in a comprehensive settlement package submitted to the
Commission to resolve a complex, multi-issue dispute among those entities, their
customers, and other affected parties.[129]  We do not know the precise trade-offs and
concessions made by parties to those proceedings during the settlement process and the
terms to which and conditions to which those parties would have agreed with respect to
Ohio transmission assets had the Commission policy on RTO Adders been different.  As
such, we do not find it would be appropriate to change unilaterally a single aspect of such
a comprehensive settlement, at least absent evidence that the overall ROE has become
unjust and unreasonable, which OCC has not adduced in this proceeding.[130]

65.    We recognize that the parties in Duke's settlement agreed upon a 10.88% base cost
of common equity and a 50-basis point ROE adder.[131]  We also recognize that the
ATSI settlement stated that the agreed-upon ROEs were inclusive of any incentive adder
for RTO participation and that ATSI's affiliates testified in other proceedings that ATSI's

---

[128] The Commission granted the RTO Adders separately from all other ROE
issues.  *AEP Appalachian Transmission Co.*, 130 FERC ¶ 61,075 at PP 19, 21; *Am. Elec.
Power Serv. Corp.*, 124 FERC ¶ 61,306 at P 30.

[129] *Duke Energy Ohio, Inc.*, 151 FERC ¶ 61,029 at PP 10, 14; *PJM
Interconnection, L.L.C.*, 153 FERC ¶ 61,106 at P 3.

[130] *See Sithe/Indep. Power Part., L.P. v. FERC*, 165 F.3d 944, 951 (D.C. Cir.
1999) ("the Commission itself has, in the past, interpreted the § 206 burden scheme to
require a customer seeking an investigation into existing rates to 'provide some basis to
question the reasonableness of the overall rate level, taking into account changes in all
cost components and not just [the challenged component]'") (citing to *Houlton Water
Co.,* 55 F.E.R.C. ¶ 61,037, at 61,110 (1991); *City of Hamilton, Ohio v. Kentucky Power
Co.,* 72 F.E.R.C. ¶ 61,158, at 61,785-86 (1995)); *see also Emera Me. v. FERC*,
854 F.3d 9, 24 (D.C. Cir. 2017) (*Emera Maine*) ("The FPA, by requiring FERC to show
that an existing rate is unlawful before ordering a new rate under section 206, provides a
form of 'statutory protection' to a utility.") (citation omitted).

[131] Duke, Settlement Agreement, Docket No. ER12-91-000, at art. 3.3.a
(filed Oct. 30, 2014).

base ROE is 9.88%, rather than the 10.38% ROE contained in the ATSI settlement.[132] But, as noted, those figures were agreed upon as part of integrated, comprehensive settlements of the entire proceeding(s), and we cannot know what, if anything, the parties agreed to in exchange for settling on those ROE figures. For those reasons, we will not disturb one aspect of these comprehensive settlements absent a showing that the resulting overall ROEs are unjust and unreasonable.

66.     We are not persuaded by OCC's argument that it would be unduly discriminatory for the Commission to allow certain entities, but not others, to retain the RTO Adder. Indeed, as explained above, we have not found that Duke and ATSI are entitled to an RTO Adder. We find only that OCC has failed in its burden under section 206 to show that Duke's and ATSI's ROEs are unjust and unreasonable because they were determined as part of an integrated settlement package rather than separately granted under section 219 and Order No. 679. Therefore, we find that OCC failed to meet its burden to demonstrate that allowing the Duke and ATSI settlements to stand results in unduly discriminatory rates, charges, or classifications.

## 2.     **Proposed Replacement Rate and Refunds**

67.     OCC argues the Commission should establish just and reasonable replacement rates for the Ohio TOs that exclude the RTO Adder and direct the Ohio TOs to provide credits or refunds to customers, including interest calculated pursuant to 18 C.F.R. § 35.19a, with a refund effective date as of the date the Complaint was filed.[133]

### a.     **Comments in Support**

68.     Buckeye, IEU-Ohio, and NOPEC argue that the Commission should establish the refund effective date as February 24, 2022, the date the Complaint was filed, and should expeditiously order the Ohio TOs to file to revise their respective transmission formula rates to eliminate the RTO Adder.[134]

---

[132] ATSI, Settlement Agreement and Offer of Settlement, Docket No. ER15-303-000, at § II.C.2 (filed July 20, 2015); *Jersey Cent. Power & Light Co.*, Docket No. ER20-227-000, Ex. No. JCP-207, at 5 (Oct. 30, 2019); *Jersey Cent. Power & Light Co.*, Docket No. ER17-217-000, Ex. No. JCP-13, at 5 (Oct. 28, 2016); PJM Interconnection, L.L.C., Docket No. ER21-265-000, Ex. KTC-208, at 2 (Oct. 30, 2020) (listing an authorized return for ATSI as 9.88%).

[133] Complaint at 16.

[134] Buckeye March 31 Comments at 9-10; IEU-Ohio Comments at 4-5; NOPEC Comments at 7.

69.     IEU-Ohio argues that, while PJM's Dayton transmission zone was exclusively within Ohio, and the AEP, DEOK, and ATSI transmission zones extend beyond Ohio, that fact does not prevent the Commission from requiring AEPSC, Duke, and ATSI to identify the revenue effect of removing the 50 basis point RTO Adder from their Ohio-based transmission facilities and reflect that reduction as a reduced revenue requirement for the transmission zone.[135]  For example, IEU-Ohio argues that AEP's formula rate for the AEP transmission zone in PJM already separately identifies the transmission facilities owned by AEP's Ohio electric utility, Ohio Power Company. IEU-Ohio argues that, for transmission facilities that are not already clearly segregated and identified as Ohio assets, the Commission should direct AEPSC, Duke, and ATSI to identify any transmission assets reflected in their formula rate filings that are Ohio-based and to eliminate the RTO Adder to those facilities.[136]

### b.    Answers

70.     AEPSC argues that, to the extent that OCC seeks an Ohio-only remedy, such a solution is impracticable.[137]  AEPSC argues that to implement such a remedy the Commission would need to require AEPSC to disaggregate its transmission operations, so that each state's transmission facilities would be subject to a different tariff with its own ROE.  AEPSC claims that requiring AEP to restructure itself in this way would harm customers by eliminating the efficiencies that arise from a larger footprint, including access to lower-cost capital; reduced overhead; coordinated transmission planning; and fewer regulatory filings.  AEPSC further asserts that OCC's requested remedy would be forcing one state's policy choice onto other states, which is not supported by the Dayton Orders.[138]  AEPSC argues that it would be particularly inappropriate for the Commission to prioritize Ohio's policy because it is inconsistent with the principle of voluntary participation in regional transmission organizations from Order No. 2000.

71.     ATSI argues that the Commission should deny OCC's request that the Ohio TOs provide detailed data showing the impact on consumers of a 50 basis point reduction in their ROEs, on the grounds that such a request turns the burden under section 206 on its head.[139]  ATSI also claims that this request is nonsensical when applied to ATSI because ATSI's ROE does not specify the inclusion of an RTO Adder.

---

[135] IEU-Ohio Comments at 3.

[136] *Id.* at 3-4.

[137] AEPSC March 31 Answer at 13-14.

[138] *Id.* at 12-13.

[139] ATSI March 31 Answer at 23-24.

Docket No. EL22-34-000                                                    - 28 -

###           c.        **Additional Answers**

72.     OCC states that the transmission rates Ohio consumers pay should be decreased by
a 50 basis point reduction to their ROEs for their Ohio transmission investment to reflect
the fact that AEPSC's, ATSI's, and Duke's Ohio affiliates are ineligible for the
RTO Adder.[140]  OCC states that the proper remedy is to fashion an Ohio-only remedy
even if it would require the companies to file separate tariffs.  OCC states that the fact
that AEPSC's, ATSI's, and Duke's Ohio transmission affiliates share regional tariffs with
other affiliates providing transmission service in PJM does not invalidate the need for a
remedy for Ohio consumers.[141]  OCC states that it is not asking to "privilege" the Ohio
statute over other state statutes but rather is asking that the Ohio statute applies to Ohio's
customers.

73.     Buckeye argues that the Ohio TOs have not demonstrated any true burdens or
inefficiencies that would necessarily result from a just and reasonable rate, but rather
because AEPSC already has separate formula rate templates for its Ohio affiliates, any
administrative burden of a potential Ohio-specific remedy should be minimal.[142]

74.     OCC states that if the rate decreases cannot occur on an Ohio-only basis, the
Commission should apply the rate decrease throughout AEP's, ATSI's, and Duke's
multistate service areas.[143]  OCC states that, since at least one of the AEPSC, ATSI, and
Duke affiliates serving in PJM must join an RTO to comply with Ohio law and, if these
utilities operate under a single tariff with a single ROE, these Ohio affiliates'
participation in PJM is still mandated by Ohio law.[144]  OCC states that, even if only
one state has mandated RTO participation, the reality is that the participation by all the
affiliates in that RTO is not voluntary.[145]  OCC states that, to the extent these utilities
have decided to manage their corporate business on a company-wide basis over all their
affiliates in PJM, these voluntary decisions cannot justify imposing unjust and
unreasonable rates on Ohio consumers.  OCC reiterates that its priority is to protect Ohio
consumers from unjust and unreasonable rates.

---

[140] OCC April 15 Answer at 16.

[141] *Id.* at 17.

[142] Buckeye April 15 Answer at 9-10.

[143] OCC April 15 Answer at 2.

[144] *Id.* at 19.

[145] *Id.* at 20-21.

Docket No. EL22-34-000                                                    - 29 -

75.    AEPSC answers that carving out AEP's Ohio affiliates and treating them as if they are discrete facilities as opposed to facilities integrated within the entire AEP network ignores the purpose and design of AEP's transmission network that provides service to multiple states.[146]  AEPSC states that to strip out the Ohio companies is inconsistent with the basis on which AEP joined PJM and would require AEP to reevaluate its decision to operate an integrated system and may require the establishment of separate transmission zones or changes in RTO membership.  AEPSC also states that there is no basis for OCC's alternative solution to remove the adder from all of AEPSC's affiliates, as no legal theory or precedent supports the removal of an incentive for an integrated, multi-state utility's decision to join an RTO just because one state within the multi-state utility's footprint purports to require RTO membership.[147]

### d.    Determination

76.    Under the second prong of section 206, whether initiated by a complaint or *sua sponte*, the Commission has the burden to establish a just and reasonable rate to replace the rate it has found unjust and unreasonable.[148]  The Commission need not adopt the best or perfect rate, as long as the Commission has explained its choice and chosen a just and reasonable rate.[149]

77.    We find that the just and reasonable replacement rate is the removal of the 50 basis point RTO Adder from the formula rates of Ohio Power and AEP Ohio Transmission, which the Commission previously granted pursuant to section 219 for the

---

[146] AEPSC May 2 Answer at 6.

[147] *Id.* at 7.

[148] *PJM Interconnection, L.L.C.*, 173 FERC ¶ 61,134, at P 114 & n.173 (2020) (*PJM I*) (citing *FirstEnergy Serv. Co. v. FERC*, 758 F.3d at 353; *Md. Pub. Serv. Comm'n v. FERC*, 632 F.3d 1283, 1285 n.1 (D.C. Cir. 2011)), *order on reh'g*, 174 FERC ¶ 61,180 (2021) (*PJM II*)).

[149] *PJM II*, 174 FERC ¶ 61,180 at P 27 & n.75 (citing *United Distrib. Cos. v. FERC*, 88 F.3d 1105, 1169 (D.C. Cir. 1996) (per curiam) ("FERC correctly counters that the fact that AEPCO may have proposed a reasonable alternative to SFV rate design is not compelling. The existence of a second reasonable course of action does not invalidate an agency's determination."); *ExxonMobil Oil Corp. v. FERC*, 487 F.3d 945, 955 (D.C. Cir. 2007) ("We need not decide whether the Commission has adopted the best possible policy as long as the agency has acted within the scope of its discretion and reasonably explained its actions."); *Cities of Batavia v. FERC*, 672 F.2d 64, 84 (D.C. Cir. 1982) ("[T]he billing design need only be reasonable, not theoretically perfect.")).

purpose of encouraging those entities to join and remain in PJM.  We find this
replacement rate to be just and reasonable because the RTO Adder does not provide an
incentive for those entities to join or continue to participate in a Transmission
Organization and it is inconsistent with Commission policy that membership in such
organizations is generally voluntary.[150]  Moreover, we find this replacement rate to be
just and reasonable because, as the Commission found in the Dayton Orders, the
Commission's decision pertaining to the RTO Adder is irrelevant to a utility's base ROE
and financial integrity, credit ratings, and ability to attract investment.[151]  Accordingly,
we direct Ohio Power and AEP Ohio Transmission to make a compliance filing, within
30 days of the date of this order, to revise their ROE from 10.35% to 9.85% on Lines 156
and 138, respectively, of their formula rates, and revise Note S to clarify that the
RTO Adder does not apply to these affiliates.[152]  Because we are dismissing the
Complaint as to Duke and ATSI, we decline to address the arguments pertaining to
proposed replacement rates for those entities.

78.    We do not find persuasive AEPSC's argument that removing the RTO Adder
would require AEP's Ohio utilities to restructure their operations so that each would file a
separate transmission tariff with their own ROE or require AEP's Ohio utilities to operate
on a stand-alone basis independent from their other transmission entities.  We are also
unpersuaded by AEPSC's argument that, because AEP operates an integrated system and
its decision to join PJM[153] was made on a system-wide basis, its Ohio affiliates should
not be treated differently than other AEP companies.[154]  Ohio Power and AEP Ohio

---

[150] Order No. 679, 116 FERC ¶ 61,057 at P 331.

[151] Dayton Initial Order, 176 FERC ¶ 61,025 at P 29.

[152] Note S for both the Ohio Power and AEP Ohio Transmission Formula Rates
states that "[i]t includes an additional 50 basis points for PJM RTO Membership" when
describing the ROE.  PJM Interconnection, L.L.C., Intra-PJM Tariffs, OATT
Attachment H-14B Part I – (AEP East Companies) (8.0.0), at Note S; H-20B
Part I – AEPTCo (5.0.0), at Note S.

[153] AEPSC states that AEP integrated its operating companies into PJM in 2004.
AEPSC March 31 Answer at 7 (citing *PJM Interconnection, L.L.C.*, 108 FERC ¶ 61,318
(2004), *reh'g denied*, 110 FERC ¶ 61,395 (2005)).  AEP has provided no reason why its
transmission lines in Ohio could not become part of an RTO even if its other transmission
lines were not.

[154] As discussed above, the Ninth Circuit's decision in *CPUC* and the
Commission's decision applying *CPUC* to Ohio law in the Dayton Orders have created a
change in circumstance that warrant treating Ohio Power and AEP Ohio Transmission
different from other AEPSC affiliates.

Transmission are the Ohio-only companies of AEP, and do not own or operate facilities outside of Ohio.[155]  As such, for the reasons described above, it is just and reasonable for AEP to reduce the ROE component of its formula rate for Ohio Power and AEP Ohio Transmission without modifying the ROEs of the other AEPSC affiliates.  We are similarly unpersuaded by AEPSC's suggestion that granting the Complaint would amount to giving priority to one state's policy over another state's policy.  The replacement rate adopted herein appropriately removes the RTO Adder from the rates of AEP's Ohio-only affiliates because those affiliates' participation in an RTO are not voluntary and does not modify the ROE of entities that own or operate assets outside of Ohio.  While our decision does not impact the ROEs of entities that own or operate facilities outside of Ohio, we recognize that, because Ohio Power and AEP Ohio Transmission are part of the AEP Zone, the removal of the RTO Adder from their rates will impact the zonal transmission rate.  But that effect is no different from any effect on the zonal transmission rate resulting from any other cost change by a public utility in the AEP Zone.  It is a function of the way in which the utilities have designed their rates.

79.    Section 206(b) provides that, upon the filing of a complaint, the Commission must establish a refund effective date that is no earlier than the date of the complaint and no later than five months subsequent to the date of the complaint.  In such cases, in order to give maximum protection to customers, and consistent with Commission precedent, the Commission has historically tended to establish the section 206 refund effective date as the earliest date allowed by section 206.[156]  That date is the date of the Complaint, which is February 24, 2022.  We therefore direct Ohio Power and AEP Ohio Transmission to provide refunds from February 24, 2022 until the date such refunds are made.[157]

### 3.    Other Arguments

80.    Several parties argue that the question of whether a utility is entitled to an RTO Adder under section 219 turns solely on whether that utility has joined an RTO, without regard to its reasons for joining, and that section 219 leaves no room for a voluntariness requirement.[158]  These parties argue that OCC asks for an interpretation of

---

[155] *See*, Ohio Power's and AEP Ohio Transmission's 2021 FERC Form No. 1, submitted May 19, 2022, at 101, question 4, each stating that their operations are located solely in the State of Ohio.

[156] *See*, e.g*., Idaho Power Co.*, 145 FERC ¶ 61,122 (2013); *Canal Elec. Co.*, 46 FERC ¶ 61,153, *order on reh'g*, 47 FERC ¶ 61,275 (1989).

[157] *See Verso Corp. v. FERC*, 898 F.3d 1 (D.C. Cir. 2018).

[158] AEPSC March 31 Answer at 26; Duke Answer at 8; ATSI March 31 Answer at 15; EEI Comments at 4; WIRES Comments at 5; PJM Comments at 2-3.

Docket No. EL22-34-000                                                                    - 32 -

Order No. 679 that is inconsistent with the plain language of the statute. OCC responds that the Ninth Circuit rejected the Ohio TOs' argument in *CPUC* as inconsistent with Order No. 679. OCC claims that the Ohio TOs regard the RTO Adder as an entitlement for being an RTO member, but under the plain wording of section 219, what is offered is not an entitlement or reward but an "incentive." Thus, OCC argues that section 219 does contain a "voluntariness" requirement in that it only authorizes incentives or inducements to take action that is not otherwise mandated.[159] OCC states that it is consistent with longstanding policy that rate incentives must be prospective and that there must be a connection between the incentive and the conduct meant to be induced.[160]

81.      Moreover, the Ohio TOs and WIRES argue that the Ohio statute is invalid under the doctrine of field preemption because the Commission has exclusive jurisdiction over interstate transmission and the sale of electricity.[161] The Ohio TOs and WIRES also argue that the Ohio statute conflicts with sections 202 and 219 of the FPA and the Commission's general policy on voluntary RTO participation and thus is invalid under the doctrine of conflict preemption.[162] OCC responds that the Ohio statute neither intrudes on a field where the state has no authority nor conflicts with the requirements of federal law or policy and is thus not preempted.[163] OCC argues that Congress has not legislated so comprehensively with regard to electric transmission that there is no room for the states to supplement federal law, pointing to state regulation over transmission siting and rates for unbundled retail transmission.[164] OCC further argues that there is no conflict between the Ohio statute and the FPA, but rather the Ohio statute facilitates the implementation of federal policy by requiring that Ohio transmission providers separate control of transmission and generation, reduce rate pancaking, and ensure that control of transmission facilities cannot be exercised by transmission users.[165]

---

[159] OCC April 15 Answer at 25.

[160] *Id.* at 26.

[161] AEPSC March 31 Answer at 20-23; Duke Answer at 12-13; ATSI March 31 Answer at 20-21; WIRES Comments at 6.

[162] AEPSC March 31 Answer at 24-26; Duke Answer at 13-14; ATSI March 31 Answer at 21-22; WIRES Comments at 7-8.

[163] OCC April 15 Answer at 21.

[164] *Id.* at 21-22.

[165] *Id.* at 22-23.

Document Accession #: 20211215-3089    Filed Date: 12/15/2022

82.     Additionally, AEPSC, ATSI, and EEI claim that application of a voluntariness requirement ignores the substantial benefits generated for customers by RTO participation, and the corresponding risks faced by a utility that participates in an RTO, which do not change whether or not their participation is mandated.[166]  PJM and WIRES state that the benefits of RTO membership to public utility customers outweigh the costs of the RTO Adder.[167]  Buckeye answers that these arguments do not rebut the Complaint's demonstration that the Ohio TOs' current rates are unjust and unreasonable, but are an attempt to persuade the Commission to change its policy.[168]

### a.    Determination

83.     Section 219(c) states that, "[i]n the rule issued under this section, the Commission shall, to the extent within its jurisdiction, provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization."[169]  The Commission implemented this directive in Order No. 679, finding that an RTO Adder is appropriate for entities that choose to remain members of a Transmission Organization because, in relevant part, continuing membership is "generally voluntary."[170]  Relying on the Commission's description of incentive adders as "an *inducement* for utilities to join, and remain in, Transmission Organizations,"[171] the Ninth Circuit in *CPUC* concluded that, since an incentive cannot induce behavior that is already legally mandated, "the voluntariness of a utility's membership in a transmission organization is logically relevant to whether it is eligible for an adder."[172]  We decline to address arguments that the Ninth Circuit erred in its interpretation of Order No. 679.  The parties are making a

---

[166] AEPSC March 31 Answer at 33; ATSI March 31 Answer at 19-20; EEI Comments at 7.

[167] PJM Comments at 3-4; WIRES Comments at 10.

[168] Buckeye April 15 Answer at 4.

[169] 16 U.S.C. § 824s(c).

[170] Order No. 679, 116 FERC ¶ 61,057 at P 331.

[171] *CPUC*, 879 F.3d at 974 (citing Order No. 679-A, 117 FERC ¶ 61,345 at P 86) (emphasis in original).

[172] *Id.* at 975 (citing Order No. 679-A, 117 FERC ¶ 61,345 at P 86).  The term "incentive" as normally defined means something that incites or has a tendency to incite to determination or action."  Merriam-Webster On-line Dictionary, https://www.merriam-webster.com/dictionary/incentive#:~:text=Definition%20of%20incentive,incite%20to%2 0determination%20or%20action.

collateral attack on Order No. 679 by arguing that Order No. 679 failed to go as far as section 219(c) requires.  Such issues should have been raised on rehearing of Order No. 679 and not as collateral attacks on a rulemaking determination.[173]

84.     We also decline to address the merits of the preemption arguments raised by the parties in this proceeding.  The Complaint turns on whether OCC has demonstrated that the Ohio TOs' rate, inclusive of the RTO Adder, is unjust, unreasonable, unduly discriminatory, or preferential.  Our finding that OCC met its burden under section 206 regarding the inclusion of the RTO Adder in Ohio Power's and AEP Ohio Transmission's rates is based on the Ninth Circuit's interpretation of Order No. 679 in *CPUC* and the Commission's decision in the Dayton Orders, as applied to the facts of this Complaint.  By contrast, the parties' preemption arguments seek a determination from the Commission regarding the constitutionality of an Ohio law.  We find that, as previously found, given the facts and circumstances before us, this Complaint proceeding is not an appropriate procedural vehicle to address the constitutionality of the Ohio statute.[174]  We do not have a sufficient record on this constitutional issue.[175]  Moreover, as we noted in the Dayton Orders, even if we were to consider this issue, only a federal court has the ultimate authority to invalidate the Ohio statute.  Given the facts before us, we will exercise our discretion not to further address the preemption issue.

85.     Finally, we are not persuaded by arguments from AEPSC, ATSI, EEI, PJM, and WIRES that the benefits of RTO/ISO membership warrant an RTO Adder regardless of whether participation in an RTO/ISO is mandatory.  As the Commission found in the Dayton Initial Order, "we do not believe it would be appropriate to award an incentive for an action that the requesting entity is required by law to take, even where that action comes with substantial benefits or risks."[176]  Moreover, as the court in *CPUC* observed, the Commission:

---

[173] *Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 823 F.3d 641, 651 (D.C. Cir. 2016) ("it is 'hornbook administrative law that an agency need not—indeed should not—entertain a challenge to a regulation' in an individual adjudication"); *ISO New England Inc.*, 138 FERC ¶ 61,238,at P 17 ("a collateral attack is an attack on a judgment in a proceeding other than a direct appeal, and is generally prohibited" (internal citations omitted)).

[174] Dayton Rehearing Order, 178 FERC ¶ 61,102 at PP 31-32 (quoting Dayton Initial Order, 176 FERC ¶ 61,205 at P 71).

[175] We note that the Ohio Attorney General did not intervene or provide a defense of the Ohio statute.

[176] Dayton Initial Order, 176 FERC ¶ 61,025 at P 30.

[h]as a longstanding policy that rate incentives must be prospective and that there must be a connection between the incentive and the conduct meant to be induced. This policy is incorporated in Order 679. The policy prohibits FERC from rewarding utilities for past conduct or for conduct which they are otherwise obligated to undertake.[177]

The Commission orders:

(A)    The Complaint is hereby granted, in part, and denied, in part, as discussed in the body of this order.

(B)    Ohio Power and AEP Ohio Transmission are hereby directed to make a compliance filing, within 30 days of the date of this order, to remove the RTO Adder from their rates effective February 24, 2022, as discussed in the body of this order.

(C)    Ohio Power and AEP Ohio Transmission are hereby directed to provide refunds, with interest calculated pursuant to 18 C.F.R. § 35.19a (2021), within 60 days of the date of this order, for the period from February 24, 2022 through the date that refunds are made.

(D)    Ohio Power and AEP Ohio Transmission are hereby directed to file a refund report detailing the principal amounts plus interest paid to each of their customers within 60 days of the date of this order.

By the Commission.  Commissioner Danly is concurring in part and dissenting in part with a separate statement attached.
Commissioner Christie is concurring with a separate statement attached.

( S E A L )


Kimberly D. Bose,
Secretary.

---

[177] *CPUC*, 879 F.3d at 977.

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Office of the Ohio Consumers' Counsel

          v.

                         Docket No.      EL22-34-000

American Electric Power Service Corporation,
American Transmission Systems, Inc., and
Duke Energy Ohio, LLC

(Issued December 15, 2022)

DANLY, Commissioner, *concurring in part and dissenting in part*:

1.      I dissent from this order eliminating transmission organization membership incentives from the rates of American Electric Power Service Corporation affiliates Ohio Power Company (Ohio Power) and AEP Ohio Transmission Company Inc. (AEP Ohio Transmission).[1]  The Federal Power Act does not limit incentives to only those utilities that "voluntarily" join a transmission organization.[2]  The Commission improperly added this non-statutory requirement in Order No. 679.[3]  We had no authority to do so then or now.

2.      Section 219(c) of the Federal Power Act provides that "the Commission shall . . . provide for incentives to each transmitting utility or electric utility *that* joins a Transmission Organization."[4]  This plain statutory text does not limit the provision of incentives to only those utilities "that 'voluntarily' join[]" a transmission organization. Congress could have established this limitation, but Congress did not.

3.      The Commission itself added the "voluntary" limitation in Order No. 679 and subsequent orders implementing the statutory text.  I do not see this addition as an example of the Commission filling in unforeseen interstices in a statutory regime or

---

[1] *Off. of the Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp.*, 181 FERC ¶ 61,214 (2022).

[2] *See id.* PP 60-63, 83.

[3] *See Promoting Transmission Inv. through Pricing Reform*, Order No. 679, 116 FERC ¶ 61,057, at P 331 (2006), *order on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345 (2006), *order on reh'g*, 119 FERC ¶ 61,062 (2007).

[4] 16 U.S.C. § 824s(c) (emphasis added).

acting in the face of statutory ambiguity. Order No. 679 works an amendment of unambiguous law and only Congress—not FERC—has the authority to pass and amend statutes. Congress said the Commission *shall* provide incentives to a utility "that joins" a transmission organization. Ohio could thus mandate that Ohio Power and AEP Ohio Transmission join a transmission organization and Ohio Power and AEP Ohio Transmission would *still* qualify for the incentive under the plain terms of the statute for as long as it remains in a transmission organization.

4.      The ruling of the 9th Circuit Court of Appeals that under Order No. 679 "the voluntariness of a utility's membership in a transmission organization is logically relevant to whether it is eligible for an adder" does not change the meaning of the statute.[5] The Court in *CPUC* did not interpret section 219(c) of the Federal Power Act; it only interpreted and ruled on Order No. 679. *CPUC* does not address whether FERC improperly exceeded the statutory text by limiting the incentive to a utility "that 'voluntarily' joins" a transmission organization.

5.      I therefore would uphold the 50-basis point adder for Ohio Power and AEP Ohio Transmission because they have "joined" PJM, which is a transmission organization. I also would reverse our "voluntariness" limitation in Order No. 679 because it runs afoul of the statute.

6.      I concur with the majority's determination that the American Transmission Systems, Inc., and Duke Energy Ohio, LLC, should continue to collect the transmission organization incentive in rates because these incentives were included in comprehensive settlements.[6] I would add the further rationale that section 219(c) of the Federal Power Act requires it, and the subsequent addition of the "voluntariness" requirement was a Commission invention not authorized by the statute, as discussed above.[7]

        For these reasons, I respectfully concur in part and dissent in part.

_____

James P. Danly
Commissioner

_____

[5] *Cal. Pub. Utils. Comm'n v. FERC*, 879 F.3d 966, 975 (9th Cir. 2018) (*CPUC*).

[6] *Off. of the Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp.*, 181 FERC ¶ 61,214 at PP 60, 64-66.

[7] *See supra*, PP 1-5.

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Office of the Ohio Consumers' Counsel       Docket No.     EL22-34-000

     v.

American Electric Power Service Corporation,
American Transmission Systems, Inc., and
Duke Energy Ohio, LLC

(Issued December 15, 2022)

CHRISTIE, Commissioner, *concurring*:

1.      I concur in this order, which makes various findings consistent with Commission precedent. I write to add more general comments on ROE adders, as I have frequently done before.

2.      An ROE adder for RTO participation is "by definition, a subsidy, as any ROE adder is — more 'FERC candy' taken directly from consumers and redistributed to transmission owners."[1]

3.      I will state again here what I did in my MISO Concurrence last month:[2] two of my colleagues, including the Chairman, in April 2021 joined me in voting to limit the RTO participation adder to three years after joining.[3] Over a year and a half later, we

---

[1] *Midcontinent Indep. Sys. Operator, Inc.*, 181 FERC ¶ 61,094 (2022) (Christie, Comm'r, concurring at P 2) (MISO Concurrence) (available at https://www.ferc.gov/news-events/news/commissioner-christies-concurrence-urging-action-re-rto-participation-adder-docket).

[2] *Id*. P 3.

[3] *Electric Transmission Incentives Policy Under Section 219 of the Federal Power Act*, Supplemental Notice of Proposed Rulemaking, 175 FERC ¶ 61,035 (2021) (Supplemental NOPR). I note that this Supplemental NOPR modified a March 20, 2020 NOPR issued in that docket. *Electric Transmission Incentives Policy Under Section 219 of the Federal Power Act*, Notice of Proposed Rulemaking, 170 FERC ¶ 61,204, *errata notice*, 171 FERC ¶ 61,072 (2020).

Document Accession #: 20221215-3089

Docket No. EL22-34-000                                                    - 2 -

have yet to take a final vote to implement that limit.  As long as we do not, consumers will continue to pay these adders at a time when consumers are already facing rapidly rising monthly power bills.


      For these reasons, I respectfully concur.


_____

Mark C. Christie
Commissioner

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| **Office of the Ohio Consumers'** | ) | |
| **Counsel v. American Electric Power** | ) | Docket No.    EL22-34-000 |
| **Service Corporation,** *et al.* | ) | |
| | ) | |

**REQUEST FOR REHEARING OF**
**AMERICAN ELECTRIC POWER SERVICE CORPORATION**

Pursuant to Rules 713, 212, and 213[1] of the Federal Energy Regulatory Commission's ("FERC" or "Commission") Rules of Practice and Procedure, American Electric Power Service Corporation ("AEPSC") respectfully requests that the Commission grant rehearing of its December 15, 2022 Order on Complaint ("Order")[2] removing Ohio Power Company's and AEP Ohio Transmission Company Inc.'s (together, the "AEP Ohio Companies") long-standing 50 basis point adder for membership in PJM ("RTO Adder").

## I.    INTRODUCTION

FPA Section 219 directs that the Commission "shall" provide an RTO Adder "to each transmitting utility or electric utility that joins a Transmission Organization."[3]  RTOs "provide significant benefits" to customers and advance policymakers' goals,[4] but impose costs and risks

---

[1] 18 C.F.R. §§ 385.713, 385.212, and 385.213.

[2] *Off. of the Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp.*, 181 FERC ¶ 61,214 (2022).

[3] 16 U.S.C. § 824s(c).

[4] *Regional Transmission Organizations*, 89 FERC ¶ 61,285 at 31,024 (2000) ("Order No. 2000").

on utilities.  "[C]onsistent with the stated purpose of section 219 of the FPA,"[5] for more than a

decade, the Commission has awarded AEP[6] a 50 basis point adder for participating in PJM.[7]

In its Order granting the Office of the Ohio Consumers' Counsel's ("OCC") Complaint,[8]

the Commission reversed course, eliminating the AEP Ohio Companies' RTO Adder, with rate

effects across the seven-state AEP zone.  For five primary reasons, the analysis and outcome in

the Order are arbitrary, capricious, and contrary to law.

*First*, without justification, the Commission treated the AEP Ohio Companies differently

from Duke Energy Ohio ("Duke") and American Transmission Systems, Inc. ("ATSI").  In the

Order, the Commission correctly found that OCC failed to meet its burden as to Duke and ATSI

because their RTO Adders were each incorporated into "an integrated settlement package" and

were not "separately granted under section 219 and Order No. 679."[9]  That reasoning applies

squarely to each AEP Ohio Company, whose ROE (including the RTO Adder) was set by

settlement.[10]  No distinction supports the opposite outcome.

---

[5] *Am. Elec. Power Serv. Corp.*, 124 FERC ¶ 61,306 at P 30 (2008).

[6] AEP's PJM operating companies include Appalachian Power Company, Indiana Michigan Power Company, Ohio Power Company, Kentucky Power Company, Wheeling Power Company, and Kingsport Power Company (together, the "AEP East Companies").  AEP's PJM transmission-only entities include AEP Appalachian Transmission Company Inc., AEP Indiana Michigan Transmission Company Inc., AEP Ohio Transmission Company Inc., Kentucky Transmission Company Inc., and AEP West Virginia Transmission Company Inc. (collectively, the "AEP PJM Transcos").  We will refer to the AEP East Companies and AEP PJM Transcos together as "AEP."

[7] *Am. Elec. Power Serv. Corp.*, 113 FERC ¶ 61,294 (2005) (approving settlement including RTO Adder for the AEP East Companies); *AEP Appalachian Transmission Co.*, 135 FERC ¶ 61,066 at P 12 (2011) (approving settlement including RTO Adder for AEP PJM Transcos).

[8] *Off. of the Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp.*, Docket No. EL22-34, Complaint (Feb. 24, 2022) ("Complaint").

[9] Order, 181 FERC ¶ 61,214 at P 66.

[10] *Am. Elec. Power Serv. Corp.*, Docket No. ER08-1329, Offer of Settlement, Explanatory Statement at 7 (Apr. 7, 2010) ("AEP East Companies 2010 Offer of Settlement"); *see also Am. Elec. Power Serv. Corp.*, Docket No. ER10-355, Offer of Settlement, Explanatory Statement at 7 (Sept. 24, 2010) ("AEP PJM Transcos 2010 Offer of Settlement"); *Appalachian Power Co.*, Docket No. ER18-1202, Settlement

2

*Second*, in granting the Complaint and reducing the AEP Ohio Companies' settled ROEs, the Commission engaged in improper single-issue ratemaking and failed to apply the required burden under FPA Section 206.  As the Commission implicitly recognized with respect to Duke and ATSI, because the specific considerations in settlement negotiations are unknowable, single-issue ratemaking is not appropriate for an ROE that results from a settlement, even if the settlement references the RTO Adder.[11]  Thus to grant the Complaint as to the AEP Ohio Companies, the Commission must have determined that their *total* ROE is unjust and unreasonable, which was not at issue in the Complaint and for which there is no support in the record.[12]

*Third*, in granting the Complaint, the Commission applied a voluntariness standard that conflicts with FPA Section 219.  The unambiguous text of the FPA *requires* an RTO Adder for *any* transmission entity that joins and remains in an RTO.[13]  There is no room for evaluating why an entity does so.  The Commission leans on Order No. 679 to support its outcome, but to the extent it interprets its regulation to include a voluntariness requirement, that conflicts with FPA Section 219.

*Fourth*, the Order's finding that the AEP Ohio Companies' membership in PJM is involuntary is also arbitrary and capricious.  For one, it is directly at odds with the Commission's prior determination that "AEP's commitment to pursue membership in [PJM] was *voluntary*."[14]

---

[11] Agreement and Offer of Settlement, Explanatory Statement at 2-3 (Mar. 28, 2018) ("AEP 2018 Offer of Settlement").

[11] Order, 181 FERC ¶ 61,214 at PP 64-66.

[12] *See, e.g.*, *Sithe/Indep. Power Partners, L.P. v. FERC*, 165 F.3d 944, 951 (1999) (The Commission must "provide some basis to question the reasonableness of the overall rate level, taking into account changes in all cost components and not just the challenged component." (quotation marks and alterations omitted)).

[13] 16 U.S.C. § 824s(c); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) (agencies must give effect to unambiguous statutory requirements).

[14] *New PJM Cos.*, 107 FERC ¶ 61,271 at PP 43-44 (2004) (quoting *New PJM Cos.*, 106 FERC ¶ 63,029 at P 59 (2004)) (emphasis added).

The Order does not acknowledge this reversal, nor does it provide a "reasoned explanation for the change."[15]

Separately, the Commission was wrong to rely on Ohio Rev. Code Ann. § 4928.12 (the "Ohio Statute"),[16] which as AEPSC argued, is preempted. Reliance on a preempted statute is itself arbitrary and capricious, but even worse, the Commission refused even to consider AEPSC's arguments.[17] The Commission's excuses for ignoring this issue offer no legitimate justification.

*Fifth*, the Commission granted the Complaint against the AEP Ohio Companies even though they were not named respondents.[18] The Complaint named only American Electric Power Service Corporation, which the Commission correctly concluded "is not a public utility regulated by the Commission."[19] Under the Commission's rules and general principles of administrative due process, it was inappropriate for the Commission to grant relief as to the AEP Ohio Companies.[20]

For each of these reasons and those discussed below, the Commission must grant rehearing on the Order and deny the Complaint as to the AEP Ohio Companies.

## II.    STATEMENT OF ISSUES AND SPECIFICATIONS OF ERROR

Pursuant to Rule 713(c)(2), 18 C.F.R. § 385.713(c)(2), AEPSC provides the following statement of issues:

1. The Commission acted arbitrarily, capriciously, and contrary to law in granting the Complaint as to the AEP Ohio Companies because its rationale for denying the

---

[15] *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).

[16] Order, 181 FERC ¶ 61,214 at P 63 & n.125.

[17] *Id.* at P 84.

[18] *See* Complaint at 1.

[19] Order, 181 FERC ¶ 61,214 at P 29.

[20] *See, e.g.*, 18 C.F.R. § 385.206(b)(1).

4

**JA506**

Complaint as to Duke and ATSI applies equally to AEP, but the Commission offered no rationale for its disparate treatment. *See, e.g.*, *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1024 (D.C. Cir. 2018) (FERC "must give a reasoned analysis to justify the disparate treatment of regulated parties that seem similarly situated." (quotation marks omitted)).

2. The Commission acted arbitrarily, capriciously, and contrary to law in granting the Complaint on a single-issue basis and without determining the justness and reasonableness of the AEP Ohio Companies' total ROEs where those rates—including the RTO Adders—were agreed to in settlements. *See, e.g.*, *Sithe/Indep. Power Partners, L.P. v. FERC*, 165 F.3d 944, 951 (1999) ("[T]he Commission itself has, in the past, interpreted the § 206 burden scheme to require a customer seeking an investigation into existing rates to provide some basis to question the reasonableness of the overall rate level, taking into account changes in all cost components and not just the challenged component." (quotation marks and alterations omitted)).

3. The Commission's requirement that a utility "show[] … voluntary membership in a Transmission Organization" to receive an RTO Adder is contrary to FPA Section 219, 16 U.S.C. § 824s(c) ("In the rule issued under this section, the Commission shall, to the extent within its jurisdiction, provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization.").

4. The Commission acted arbitrarily, capriciously, and contrary to law in determining that the AEP Ohio Companies' membership in PJM is involuntary without acknowledging or justifying the departure from its earlier order finding AEP affiliates' membership in PJM to be voluntary, *New PJM Cos.*, 107 FERC ¶ 61,271 at PP 43-44 (2004). *See,*

5

*e.g.*, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (the Commission must "provide a reasoned explanation for [a] change" of position); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (the Commission must "display awareness that it is changing position" (emphasis omitted)).

5. The Commission acted arbitrarily, capriciously, and contrary to law in determining that the AEP Ohio Companies' membership in PJM is involuntary without reviewing the merits of AEPSC's argument that the Ohio Statute is preempted by the Federal Power Act, 16 U.S.C. § 824(b)(1). *See, e.g.*, *New England Power Generators Ass'n, Inc. v. FERC*, 881 F.3d 202, 210 (D.C. Cir. 2018) ("It is well established that the Commission must respond meaningfully to the arguments raised before it." (quotation marks omitted)) ("*NEPGA*").

6. The Commission acted arbitrarily, capriciously, and contrary to law in granting the Complaint against the AEP Ohio Companies when those entities were not named as respondents. *See, e.g.*, 18 C.F.R. ¶ 385.206(b)(1) ("A complaint must … [c]learly identify the action or inaction which is alleged to violate applicable statutory standards or regulatory requirements.").

## III.  REQUEST FOR REHEARING

### A. The Commission must grant rehearing and deny the Complaint as to AEP, as it did for Duke and ATSI, because AEP's RTO Adder is embedded in settlements.

In its Order, the Commission denied the Complaint as to Duke and ATSI, finding that those entities' adders "were each embedded in a comprehensive settlement package submitted to the Commission to resolve a complex, multi-issue dispute among those entities, their customers, and

6

other affected parties."[21]    AEPSC agrees with the Commission's reasoning that it would be inappropriate "to change unilaterally a single aspect of such a comprehensive settlement…."[22] But the Commission failed to provide a "reasoned analysis" of its disparate treatment of AEP,[23] which is situated virtually identically to Duke.

It is a basic principle of administrative law "that an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently."[24]    Given the importance of non-discrimination under the FPA, courts have applied this requirement strictly in FERC cases; the Commission must "provide a reasoned analysis, resting on articulated objective, nondiscriminatory, and evenhanded criteria, that would justify treating [a market participant] differently than [others]…."[25]

For example, applying this standard in *ANR Storage Company v. FERC*, the D.C. Circuit set aside the Commission's finding that ANR had market power with a market share of 16% when it had previously found no market power for a similar entity.[26]  The court observed that "[d]espite … obvious similarities between the two leading suppliers in the relevant markets, the administrative orders at issue barely even mentioned FERC's disparate treatment of the two companies."[27]    And in *West Deptford v. FERC*, the D.C. Circuit reviewed the Commission's decision that it could "pick and choose" whether to enforce PJM's cost-allocation method for

---

[21] Order, 181 FERC ¶ 61,214 at P 64.

[22] *Id.*

[23] *See ANR Storage Co.*, 904 F.3d at 1024 (quotation marks omitted).

[24] *Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1022 (D.C. Cir. 1999) (quotation marks and alteration omitted).

[25] *W. Deptford Energy, LLC v. FERC*, 766 F.3d 10, 21 (D.C. Cir. 2014); *accord ANR Storage Co.*, 904 F.3d at 1024.

[26] *ANR Storage Co.*, 904 F.3d at 1025.

[27] *Id.*

7

interconnection upgrades in place when a generator enters the queue or signs an interconnection agreement.[28]  The court vacated the order because the Commission had offered no explanation for its departure from an "unbroken … practice of holding that interconnection agreements filed after the designated effective date of an amended tariff are governed by the amended tariff."[29]

AEP and Duke are virtually indistinguishable here.  Like Duke, AEP's RTO Adder stems from multiple settlements.  In 2010, AEP settled disputes related to the AEP East Companies' 2008 transition to formula rates[30] and the AEP PJM Transcos' 2010 rate filing following a corporate reorganization.[31]  In those agreements, the parties agreed to provide the AEP East Companies and AEP PJM Transcos with a base ROE of "10.99%, plus a 50 basis point adder for AEP's continuing participation in the PJM RTO, resulting in an 11.49% total ROE."[32]  Later, in 2018, AEPSC agreed to reduce its base ROE in a settlement resolving a complaint brought by municipal power providers.[33]  Although the 2018 settlement affected AEP's base ROE, as reflected in the tariff sheet filed with the offer of settlement, AEP's total ROE still "include[d] an additional 50 basis points for PJM RTO membership."[34]

Duke's ROE comes from a similarly structured settlement.  Specifically, in 2014, Duke settled issues relating to its move from MISO to PJM, agreeing to a "base ROE of 10.88 percent plus a fifty basis point adder for RTO membership" for a total ROE of 11.38 percent.[35]

---

[28] *W. Deptford Energy*, 766 F.3d at 12, 15-16.

[29] *Id.* at 20.

[30] *See Am. Elec. Power Serv. Co.*, 124 FERC ¶ 61,306 at PP 1, 3.

[31] *See AEP Appalachian Transmission Co.*, 130 FERC ¶ 61,075 at PP 1-3 (2010).

[32] AEP East Companies 2010 Offer of Settlement at 7; AEP PJM Transcos 2010 Offer of Settlement at 7.

[33] *See Appalachian Power Co.*, 167 FERC ¶ 61,156 (2019) (Letter Order); AEP 2018 Offer of Settlement at 2-3.

[34] AEP 2018 Offer of Settlement, Marked Sheet at Note S.

[35] *PJM Interconnection, L.L.C.*, Docket No. ER12-91, Explanatory Statement at 13 (Oct. 30, 2014); *PJM Interconnection, L.L.C.*, 151 FERC ¶ 61,029 at P 10 (2015).

8

**JA510**

The AEP and Duke settlements are virtually indistinguishable. Each stemmed from "comprehensive settlement package[s]," each settlement "resolve[d] … complex, multi-issue dispute[s]," and for each, "[w]e do not know the precise trade-offs and concession made by [the] parties to those proceedings during the settlement process…."[36]

The Commission does not directly address any differences between AEP, Duke, and ATSI in the Order.[37] Yet it failed to treat these similar outcomes similarly. At best, the Commission notes in a footnote that in the proceedings yielding the 2010 AEP settlements, "[t]he Commission granted the adder prior to setting the base ROE for hearing, so when the parties entered into settlement discussions, they knew they were negotiating only the base ROE."[38] But that cannot justify treating AEP differently from Duke. The parties negotiated the AEP base ROEs against a backdrop in which the adder had been granted, but where many other issues remained live.[39] Had the adder not been granted, negotiations over the base ROE may well have played out differently. We cannot "know the precise trade-offs and concession made by the parties to those proceedings,"[40] and how those trade-offs and concessions may have been shaped by the Commission's grant of an adder (or not). Moreover, although the Commission granted the adder prior to setting the base ROE for hearing, nothing required the parties to adopt the adder in the subsequent settlement agreements. The ultimate outcome was the product of negotiated give-and-take no less than the Duke settlement.

---

[36] Order, 181 FERC ¶ 61,214 at P 64.

[37] *See id.* at PP 64-66.

[38] *Id.* at P 62 n.123.

[39] *See, e.g.*, *Am. Elec. Power Service Corp.*, 124 FERC ¶ 61,306 at P 30 ("Granting up to 50 basis points of incentive ROE does not remove any other issue pertaining to the ROE from consideration during the hearing and settlement judge procedures, including the appropriate proxy group and the screening criteria for the proxy group.").

[40] Order, 181 FERC ¶ 61,214 at P 64.

The Commission's reliance on the pre-settlement determination in 2010 would also be inadequate because it would be inapplicable as to AEPSC's 2018 settlement with the municipal power agencies.  The same concepts raised in the Order as to Duke and ATSI would apply to AEP's 2018 settlement.  Even though the complaint and settlement concerned AEP's base ROE, its *total* ROE still included the 50-basis point adder for RTO membership.  Again, it is impossible to know the extent to which AEP's total ROE (including the RTO Adder) affected negotiations around the base figure given the Commission's policies in place at the time.

Given these facts, the Commission's conclusions that "we cannot know what, if anything, the parties agreed to in exchange for settling on [the agreed] ROE figures"[41] and that "[w]e do not know … the terms to which and conditions to which those parties would have agreed with respect to Ohio transmission assets had the Commission policy on RTO Adders been different"[42] apply to AEP no less than to Duke.  The Commission should grant rehearing and deny the Complaint as to the AEP Ohio Companies.

### B. The Commission's Order conducts inappropriate single-issue ratemaking and fails to show that the AEP Ohio Companies' ROE is unjust and unreasonable.

By disregarding the settlement process by which AEP's current ROE came into effect, the Commission additionally violates its rule against single-issue ratemaking and fails to apply the appropriate standard under FPA Section 206.  To prevail under FPA Section 206, a complainant must show that a public utility's rate is unjust and unreasonable.[43]  The Commission typically does not allow single-issue ratemaking,[44] but recognizes a narrow exception for adding or eliminating

---

[41] *Id.* at P 65

[42] *Id.* at P 64.

[43] 16 U.S.C. § 824e(a).

[44] *E.g.*, *Carolina Power & Light Co. v. FERC*, 860 F.2d 1097, 1102 (D.C. Cir. 1988) (explaining that overestimates are often offset by underestimates).

an RTO Adder *standing alone*.[45]  As the Order recognizes, however, the exception is inappropriate when a utility's ROE is set through settlement.[46]

Yet that is just what the Commission has done here as to the AEP Ohio Companies. Although the settlements *incorporate* the RTO Adder, as discussed above, it is speculative to consider what ROE the parties would have agreed to "had the Commission policy on RTO Adders been different."[47]  For example, under the Commission's then-applicable interpretation of Order No. 679, AEP may have agreed in 2010 and 2018 to a lower base ROE knowing that its total figure would increase with the RTO Adder.  While we cannot know if that were the case, it is clear that the parties made trade-offs in the 2018 settlement.  Although the Commission had only set the base ROE for hearing and settlement procedures,[48] the settlement includes items such as an equity cap and provisions for tax reform.[49]  Because the AEP Ohio Companies' RTO Adder was not included in rates on a stand-alone basis, it is arbitrary, capricious, and contrary to FPA Section 206 for the Commission to grant a single-issue complaint.  Instead, the Commission must "provide some basis to question the reasonableness of the overall rate level, taking into account changes in all cost components and not just the challenged component."[50]  That issue was not raised in the Complaint and the record does not come close to supporting a finding that the AEP Ohio Companies' overall ROE is unjust and unreasonable.

---

[45] *Promoting Transmission Inv. through Pricing Reform*, 116 FERC ¶ 61,057 at 191-192 ("Order No. 679").
[46] Order, 181 FERC ¶ 61,214 at PP 64-66.

[47] *Id.* at P 64.

[48] *See Am. Mun. Power, Inc. v. Appalachian Power Co.*, 161 FERC ¶ 61,192, Ordering Par. A (2017).
[49] AEP 2018 Offer of Settlement, Explanatory Statement at 4.

[50] *Sithe/Indep. Power Partners, L.P.*, 165 F.3d at 951 (quotation marks and alterations omitted); *accord, e.g.*, *Cal. Indep. Sys. Operator, Inc.*, 126 FERC ¶ 61,081 at P 66 (2009).

The Commission's attempt to justify this defect is inadequate. The Commission says in a footnote that because it "granted the adder prior to setting the base ROE for hearing, … when the parties entered into settlement discussions, they knew they were negotiating only the base ROE."[51] But as we discussed above, in the 2010 settlements, the parties included the RTO Adder in the settlement even though they didn't have to. And in each the 2010 and 2018 settlements, it is impossible to compartmentalize negotiations over the base ROE negotiations as if the RTO Adder didn't exist. AEP's total ROE is plainly a factor that the negotiating parties on both sides would have considered.

For these reasons, OCC has failed to meet its burden of showing that the AEP Ohio Companies' total ROE is unjust and unreasonable. The Commission must grant rehearing and deny the Complaint.

### C. The Commission's "voluntariness" requirement is inconsistent with FPA Section 219.

In its Answer, AEPSC explained that the plain text of FPA Section 219 does not allow the Commission to impose a voluntariness requirement for receiving the RTO Adder.[52] But rather than evaluate the meaning of FPA Section 219, the Commission simply "decline[d] to address arguments that the Ninth Circuit erred in its interpretation of Order No. 679," accusing AEPSC of "making a collateral attack on Order No. 679 by arguing that Order No. 679 failed to go as far as section 219(c) requires."[53] The Commission's response—or lack thereof—fundamentally misses the mark.

---

[51] Order, 181 FERC ¶ 61,214 at P 62 n.123.

[52] *Off. of the Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp.*, Docket No. EL22-34, Answer of American Electric Power Service Corp. at 26-33 (Mar. 31, 2022) ("AEPSC Answer").

[53] Order, 181 FERC ¶ 61,214 at P 83.

To begin, the Commission misinterprets AEPSC's argument. AEPSC's statutory argument does not rely on the meaning of Order No. 679. It stands on its own. As noted above, FPA Section 219 states that "the Commission *shall* … provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization."[54] As AEPSC noted in its Answer, the statutory command is clear: "the Commission must provide incentives to every utility that 'joins' a Transmission Organization, regardless of the reason."[55] Where, as here, "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."[56] Therefore, FPA Section 219 requires the Commission to provide the AEP Ohio Companies—which have joined PJM, a Transmission Organization—with the RTO Adder. Indeed, the Commission's earlier grant of the RTO participation incentive to the AEP Ohio Companies was expressly premised on the fact that it was "consistent with the stated purpose of Section 219 of the FPA" and "is intended to encourage [their] continued involvement with PJM."[57]

FPA Section 219 does not permit the Commission to consider now *why* a utility joined a Transmission Organization or whether the utility could leave the Transmission Organization.[58] There is no textual basis for such a requirement.[59] After all, Congress could have imposed a voluntariness requirement in the statute, but it elected not to do so.[60] The Commission "ha[s] no

---

[54] 16 U.S.C. § 824s(c) (emphasis added).

[55] AEPSC Answer at 27.

[56] *Chevron*, 467 U.S. at 842-43.

[57] *Am. Elec. Power Serv. Corp.*, 124 FERC ¶ 61,306 at P 30.

[58] *See, e.g.*, Order, 181 FERC ¶ 61,214, Concurrence/Dissent of Commissioner Danly at PP 2-3.

[59] *See* 16 U.S.C. § 824s(c).

[60] *E.g.*, *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994) ("If, as respondents seem to say, Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text. But it did not."); *Franklin Nat'l Bank of Franklin Square v. New York*, 347 U.S. 373, 378 (1954) (finding "no indication that Congress intended to make this

13

authority to rewrite the plain text of a statute,"[61] such as "by adding words that are not in the [text] that the legislature enacted"[62] to create a voluntariness requirement.  The Commission's Order is inconsistent with FPA Section 219.

The Commission's interpretation of Order No. 679—purportedly based on the Ninth Circuit's *CPUC* decision—is unfounded and contrary to the plaint text of the FPA.[63]  Beginning with *CPUC*, the court *did not* consider the meaning or application of Section 219.[64]  The court's review was limited to whether FERC's decisions "summarily granting" PG&E RTO Adders was consistent with the text of Order No. 679.[65]  Finding it was not, the court required the Commission to conduct a case-by-case review.[66]  The court did not assess whether its interpretation of that order would be consistent with, or inconsistent with, the statute.  Indeed, the court refused on *Chenery* grounds to consider the Commission's explanation that PG&E would be entitled to an incentive even if the utility were required to remain in the CAISO.[67]  In the end, the court's only references to Section 219(c) on the merits were to the Commission's own description of the statute in Order

---

phase of national banking subject to local restrictions, as it has done by express language in several other instances"); *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 485 (1996) ("Congress . . . demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and . . . the language used to define the remedies under RCRA does not provide that remedy.").

[61] *Kay v. FCC*, 525 U.S. 1277, 1279 (D.C. Cir. 2008) (collecting cases).

[62] *Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 816-17 (D.C. Cir. 2008).

[63] *See* Order, 181 FERC ¶ 61,214, Concurrence/Dissent of Commissioner Danly at PP 3-4.

[64] *See Cal. Pub. Utils. Comm'n v. FERC*, 879 F.3d 966 (9th Cir. 2018) ("*CPUC*").

[65] *See id.* at 972.

[66] *Id.* at 978-79

[67] *See id.* at 978 n.5.

14

No. 679.[68]  When the Commission completed its case-by-case review on remand, it *affirmed* PG&E's right to receive the RTO Adder.[69]

In addition, *CPUC* does not impose a voluntariness requirement as the Commission contends.  Again, the Ninth Circuit considered the level of analysis for awarding an RTO Adder required under Order No. 679.[70]  If the court meant to require voluntariness, it would have stated so.  And if it had, that interpretation would make Order No. 679 contrary to Section 219(c), and thereby unlawful.[71]  "A regulation which … operates to create a rule out of harmony with the statute, is a mere nullity."[72]  As discussed above, the Section 219(c)'s unambiguous trigger for a utility to receive an incentive under Section 219(c) is RTO membership.  The Commission cannot interpret Order No. 679 to impose a voluntariness requirement.

AEPSC's position is not a collateral attack on Order No. 679.[73]  Prior to the Ninth Circuit's decision, the Commission did not interpret Order No. 679 to require a showing of voluntariness as a predicate for receiving the RTO Adder.[74]  It would have been nonsensical for AEP or any other party to seek rehearing of Order No. 679 when the Commission did not interpret that order as requiring voluntariness, and any attempt to seek review would have been dismissed for lack of standing, because under the Commission's interpretation of the order at the time, there would have

---

[68] *E.g.*, *id.* at 975, 976.

[69] *Pac. Gas & Elec. Co.*, 168 FERC ¶ 61,038 (2019), *aff'd sub nom. Cal. Pub. Utils. Comm'n v. FERC*, 29 F.4th 454 (9th Cir. 2022).

[70] *CPUC*, 879 F.3d at 975.

[71] *See* 5 U.S.C. § 706(2)(A).

[72] *Manhattan Gen. Equip. Co. v. Commissioner*, 297 U.S. 129, 134 (1936); *accord Orion Rsrvs. Ltd. P'ship v. Salazar*, 553 F.3d 697, 703 (D.C. Cir. 2009) (citing *Manhattan Gen. Equip.* and noting that "[t]he authority to issue regulations is not the power to make law, and a regulation contrary to a statute is void."

[73] *See* Order, 181 FERC ¶ 61,214 at P 84.

[74] *See, e.g.*, Order No. 679, 116 FERC ¶ 61,057 at P 316; *Promoting Transmission Inv. through Pricing Reform*, 117 FERC ¶ 61,345 at P 83 (2006) (Order No. 679-A).

15

been no injury-in-fact. The AEP Ohio Companies received the adder, until now. In this proceeding, the Commission is applying its new interpretation of Order No. 679 to the AEP Ohio Companies for the first time, and they are entitled to contend that that interpretation is inconsistent with the statute. And even if that weren't the case, courts have recognized parties' ongoing rights to challenge the validity of administrative rules and regulations.[75]

In sum, the Commission's elimination of the AEP Ohio Companies' RTO Adder based on the Ohio Statute conflicts with the unambiguous requirements of FPA Section 219(c). Rehearing is required.

### D. The Commission's finding that AEP's participation in PJM is "involuntary" is arbitrary and capricious.

#### 1. The Commission failed to acknowledge or distinguish its prior finding that the AEP Affiliates' membership in PJM is voluntary.

In its Answer,[76] AEPSC argued that the Commission was required to deny the Complaint because it had previously affirmed[77] an Administrative Law Judge's finding that "AEP saw substantive benefits from membership in a Commission-approved RTO … and signed on voluntarily."[78] The Ohio Statute was in place during these proceedings, and was even referenced in the hearing record.[79] In its Order, the Commission neither acknowledged nor justified its departure from its earlier conclusion.[80] This falls short of the APA's requirement that the

---

[75] *Functional Music, Inc. v. FCC*, 274 F.2d 543, 546-47 (D.C. Cir. 1958).

[76] AEPSC Answer at 14-18.

[77] *New PJM Companies*, 107 FERC ¶ 61,271 at P 44.

[78] *New PJM Companies*, 106 FERC ¶ 63,029 at P 55 (2004).

[79] *See, e.g.*, *New PJM Companies*, Docket No. ER03-262, Ex. VCC-20, Prepared Rebuttal Testimony and Exhibits of Cody D. Walker on Behalf of the Virginia State Corporation Commission at 20 n.5 (Jan. 22, 2004) ("The Ohio statute establishing the obligations of Ohio utilities to join RTOs …, Ohio Code § 4928.12, is set forth in Exhibit VCC-27.); *id.* at Ex. VCC-27 (Ohio Rev. Code Ann. § 4928.12).

[80] *See* Order, 181 FERC ¶ 61,214.

Commission must "display awareness that it is changing position"[81] and "provide a reasoned explanation for the change."[82]  The Commission also failed to "respond meaningfully" to AEP's arguments.[83]  Rehearing is required given the Commission's failure to reconcile its 2004 order finding AEP's participation in PJM to be voluntary and because no changed circumstances can justify a different conclusion.

> ### 2. The Commission is required to consider the merits of AEPSC's argument that the Ohio Statute is preempted and determine that the Ohio Statute invalid for ratemaking purposes.

The Commission's decision to remove the RTO adder from the AEP Ohio Companies transmission rates follows directly from its finding that the Ohio Statute mandates RTO membership.  AEPSC asked the Commission to find that the Ohio Statute is preempted, which would be fatal to the Complaint.[84]  But in reaching its decision, the Commission refused to consider preemption, asserting that the "proceeding is not an appropriate procedural vehicle" and there is "not have a sufficient record on this constitutional issue."[85]  These responses shirk the Commission's obligation to respond meaningfully to AEPSC's arguments[86] and to evaluate the justness and reasonableness of rates.[87]  The Commission must grant rehearing, refuse to make its own rates dependent upon a law that invades its exclusive jurisdiction, and deny the Complaint.

---

[81] *Fox Television Stations, Inc.*, 556 U.S. at 515 (emphasis omitted).

[82] *Encino Motorcars, LLC*, 579 U.S. at 221.

[83] *See, e.g.*, *NEPGA*, 881 F.3d at 210 (quotation marks omitted).

[84] *See* AEPSC Answer at 19-26.

[85] Order, 181 FERC ¶ 61,214 at P 84.

[86] *PSEG Energy Res. & Trade LLC v. FERC*, 665 F.3d 203, 208 (D.C. Cir. 2011) ("An agency's 'failure to respond meaningfully' to objections raised by a party renders its decision arbitrary and capricious." (quotation marks and alteration omitted)); *Campaign Legal Ctr. v. Fed. Election Comm'n*, 31 F.4th 781, 793 (D.C. Cir. 2022) ("Should a reviewing court find that the Commission's determinations are contrary to law, the agency's action would be set aside….").

[87] *See, e.g.*, *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 154 (2016).

As AEPSC showed in its submissions, the Ohio Statute is preempted based both on field and conflict preemption principles.[88]  To start, Congress has occupied the field of interstate electricity transmission.[89]  It is hornbook law that "[t]he Federal Power Act … vests in the Federal Energy Regulatory Commission … exclusive jurisdiction over wholesale sales of electricity in the interstate market"[90] and "all rules and practices affecting such prices."[91]  Indeed, the Commission itself declared in Order No. 888 that "the provision of 'transmission in interstate commerce' … is exclusively within the jurisdiction of the Commission."[92]

Where Congress has occupied the field of regulation, as it has done with regulating interstate electricity transmission, "Congress has forbidden the State to take action in the field that the federal statute pre-empts."[93]  The Ohio Statute flagrantly interferes with federal regulation, seeking to regulate the intricacies of interstate transmission—including *mandating* utilities to *cede operational control* of their systems to third parties.[94]  Yet the Commission relied on that law without any scrutiny.

---

[88] AEPSC Answer at 19-26; *Off. of the Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp.*, Docket No. EL22-34, Motion for Leave to Answer and Answer of American Electric Power Service Corporation at 9-14 (May 2, 2022).

[89] *See Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) ("Congress may have intended to foreclose any state regulation in the area, irrespective of whether state law is consistent or inconsistent with federal standards." (quotation marks omitted)).

[90] *Hughes*, 578 U.S. at 153; *accord, e.g.*, *New England Power Co. v. New Hampshire*, 455 U.S. 331, 340 (1982).

[91] *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 266 (2016).

[92] *Promoting Wholesale Competition Through Open Access Non-Discriminatory Transmission Servs. by Pub. Utils.; Recovery of Stranded Costs by Pub. Utils. & Transmitting Utilities*, Order No. 888, FERC Stats. & Regs. ¶ 31,036 at 31,781 (1996) (cross-referenced at 75 FERC ¶ 61,080) (emphasis omitted) (subsequent history omitted).

[93] *Oneok, Inc.*, 575 U.S. at 377 (emphasis omitted).

[94] *See, e.g.*, AEPSC Answer at 20, 21-22.

18

JA520

At the same time, the Ohio Statute also conflicts with the FPA and federal regulation. "[C]onflict pre-emption exists where compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  In either situation, federal law must prevail."[95]

For one, Section 202(a) of the FPA makes transmission organizations voluntary: "[T]he Commission is empowered and directed to divide the country into regional districts for the *voluntary interconnection and coordination of facilities* for the generation, transmission, and sale of electric energy….  It shall be the duty of the Commission *to promote and encourage* such interconnection and coordination within each such district and between such districts."[96] Consistent with this requirement, in Order No. 2000, the Commission expressly made RTO membership voluntary: "[W]e continue to believe … that at this time we should pursue a voluntary approach to participation in RTOs."[97]

Despite this, the Ohio Statute purports to *require* FERC-jurisdictional utilities to become "a member of, and transfer[] control of [its] facilities to" an RTO.[98]  That is inherently incompatible both with Congress's and the Commission's policy judgments.[99]

The Ohio Statute also conflicts with FPA Section 202(b), which underscores the Commission's exclusive jurisdiction to regulate RTO membership: "[U]pon application of any State commission or of any person engaged in the transmission or sale of electric energy," the Commission "may by order direct a public utility … to establish physical connection of its

---

[95] *Oneok*, 575 U.S. at 377 (quotation marks omitted).

[96] 16 U.S.C. § 824a(a) (emphases added).

[97] *See, e.g.*, Order No. 2000, 89 FERC ¶ 61,285 at 31,033.

[98] Ohio Rev. Stat. § 4928.12(A).

[99] *See* 16 U.S.C. § 824a(a) and Order No. 2000, 89 FERC ¶ 61,285 at 31,033.

transmission facilities with" the integrated grid.[100]  The Ohio Statute is preempted for this reason, too.

The Commission's refusal "to address the merits of the preemption arguments"[101] lacks any support.  The Commission first asserts that "this Complaint proceeding is not an appropriate procedural vehicle to address the constitutionality of the Ohio statute."[102]  This position seems to stem from the Commission's observation that "even if we were to consider this issue, only a federal court has the ultimate authority to invalidate the Ohio statute."[103]

But as AEPSC "emphasize[d]" in its Answer, AEPSC did "not here ask the Commission to invalidate any state law."[104]  AEPSC instead requested the Commission to assess the validity of the Ohio law in "mak[ing] *its own rate*" determination.[105]  Such rate determinations are the very essence of the Commission's responsibility under FPA Section 206.[106]  Contrary to the Commission's statement, "addressing the merits of the preemption arguments" is prerequisite to finding AEP's RTO Adder unjust and unreasonable based on the Ohio Statute.  It would be unreasonable for the Commission to make its own rates depend on whether a state has enacted a law that the state, under the Federal Power Act, has no power to adopt and enforce because it intrudes on the Commission's own jurisdiction.

---

[100] 16 U.S.C. § 824a(b).

[101] Order, 181 FERC ¶ 61,214 at P 84.

[102] *Id.*

[103] *Id.*

[104] AEPSC Answer at 26.

[105] *Id.* (emphasis in original).

[106] 16 U.S.C. § 824(e).

Nor can the Commission claim that it "does not have a sufficient record on this constitutional issue."[107] There are no disputed facts in this case. The Commission clarifies in a footnote that "the Ohio Attorney General did not intervene or provide a defense of the Ohio statute,"[108] but that was the Ohio Attorney General's choice. The Commission published the Complaint and provided public notice.[109] The Ohio Attorney General did not intervene even after AEP and other respondents raised preemption challenges. Under core principles of due process and the APA, the Commission cannot ignore a utility's defense to its rate because a third party decided not to participate.

In sum, because the Ohio Statute is preempted by the FPA and Commission regulations, AEP's participation in PJM remains voluntary. The Commission has offered no valid justification for its refusal to reach this conclusion. Its failure even to consider the merits of the question is arbitrary, capricious, and contrary to law.

### E. The Commission violated its own rules and principles of administrative due process in granting the Complaint against the AEP Ohio Companies, who were not named as respondents.

Finally, rehearing is required because the Commission was not permitted to grant the Complaint against the AEP Ohio Companies, who were not named respondents.[110] As AEPSC discussed in its motion to dismiss,[111] Rule 206 of the Commission's Rules of Practice and Procedure requires complainants to "[c]learly identify the action or inaction which is alleged to

---

[107] Order, 181 FERC ¶ 61,214 at P 84.

[108] *Id.* at P 84 & n.175.

[109] *See* Federal Energy Regulatory Commission, Docket Nos. EL22-34 et al., Combined Notice of Filings #1 (Feb. 25, 2022).

[110] *See* Complaint at 1.

[111] *Off. of the Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp.*, Docket No. EL22-34, Motion to Dismiss of American Electric Power Service Corp. at 26-33 (Mar. 28, 2022).

21

**JA523**

violate applicable statutory standards or regulatory requirements."[112]  Rule 206 also ensures that all interested parties have notice that a complaint has been filed against them and provides a comment date by which all interested persons must file comments, protests or interventions.[113]  In a 206 proceeding, the burden of proof rests with the complainant.[114]

Here, OCC failed to satisfy the requirements of Rule 206, naming only AEPSC, which the Commission correctly concluded "is not a public utility regulated by the Commission."[115] Further, OCC failed to amend its complaint to cure this known deficiency.  Indeed, the Commission dismissed the complaint as to AEPSC.[116]  As OCC noted itself, where FERC finds merit in AEPSC's argument that the proper respondent was not named, "the appropriate remedy would be to allow OCC to amend the complaint."[117]

Instead, the Commission made a factual determination that the "complaint made clear that OCC's complaint was directed at AEPSC's two affiliates, Ohio Power and AEP Ohio Transmission"[118] and essentially cured one of the deficiencies of the OCC Complaint, by specifying the respondents.  The Commission did so without citing any evidence in the record to support this determination.

Contrary to the Commission's determination, however, the Complaint was not clear. Rather, in describing the "Respondent AEP," OCC asserted that "Respondent AEP is a regulated

---

[112] 18 C.F.R. § 385.206(b)(1).

[113] *See La. Power and Light Co.*, 50 FERC ¶ 61,040, 61,062-63 (1990).

[114] 16 U.S.C. § 824e(b).

[115] Order, 181 FERC ¶ 61,214 at P 29.

[116] *Id.*

[117] *See Off. of the Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp.*, Docket No. EL22-34, Answer of Office of the Ohio Consumers' Counsel to American Electric Power Service Corporation's Motion to Dismiss at 7 (Apr. 12, 2022).

[118] Order, 181 FERC ¶ 61,214 at P 29.

public utility, primarily engaged in the generation, transmission, distribution and sale of electricity in multiple states across the Midwest. The states include, *inter alia*, Ohio, Indiana, Michigan, Kentucky, Tennessee, Virginia and West Virginia.…  AEP's transmission service and wholesale sales of power supply are subject to regulation by FERC under the Federal Power Act."[119]  Further the Complaint stated that it included "the monopoly affiliates" of AEPSC.[120]  As the Complaint admits, there are several AEP affiliates.  Thus, a vague reference to the "monopoly affiliates" fails to "identify" those affiliates—let alone "clearly."  The Complaint simply failed to meet the notice requirements in the Commission's rules and the APA.[121]

The Commission's citation to the 1981 case *Middle South Services, Inc. v. Middle South Utilities, Inc.*[122] is inadequate to excuse these defects.  As AEPSC pointed out, the Commission there "did not even address the Rule 206 standard" and "only addressed the possibility of dismissing the complaint entirely."[123]

For these reasons, at a minimum, the Commission should have ordered OCC to amend its Complaint to correct its legal deficiency.  To the extent it does not deny the Complaint as to the AEP Ohio Companies on rehearing, the Commission should require OCC to amend its Complaint to name the correct parties, and reset the refund effective date.

## IV.    CONCLUSION

For the reasons discussed herein, the Commission should grant rehearing and deny the Complaint as to the AEP Ohio Companies.

---

[119] Complaint at 5.

[120] *Id.* at 1.

[121] *See* 5 U.S.C. § 554(b); 18 C.F.R. § 385.206(b)(1).

[122] *Middle S. Servs., Inc. v. Middle S. Utils., Inc.*, 15 FERC ¶ 61,302 (1981).

[123] *Off. of the Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp.*, Docket No. EL22-34, Motion for Leave to Answer and Answer of American Electric Power Service Corporation at 17-18 (May 2, 2022).

23

Respectfully submitted,

/s/ William M. Keyser

Stacey Burbure
Senior Counsel
American Electric Power Service
Corporation
801 Pennsylvania Ave. NW Suite 735
Washington, DC 20004
(202) 383-3452 slburbure@aep.com

William M. Keyser
Cary Glynn
Steptoe & Johnson LLP 1330
Connecticut Ave. NW
Washington, DC 20036
(202) 429-3000
wkeyser@steptoe.com
cglynn@steptoe.com

Matthew E. Price
Zachary B. Cohen
Jenner & Block LLP
1099 New York Ave., NW
Suite 900
Washington, DC 20001
mprice@jenner.com
zcohen@jenner.com

*Counsel for American Electric Power
Service Corporation*

January 17, 2023

24

**JA526**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing "Request for Rehearing of American Electric Power Service Corporation" was served this 17th day of January, 2023, upon the official service list maintained by the Secretary in this proceeding.

*/s/ Jeannette Crooks*
Jeannette Crooks
Steptoe & Johnson LLP
1330 Connecticut Ave. NW
Washington, DC 20036
(202) 429-3000
jcrooks@Steptoe.com

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| Office of the Ohio Consumers' Counsel, | ) | |
| Complainant, | ) | |
| | ) | |
| v. | ) | Docket No. EL22-34-000 |
| | ) | |
| American Electric Power Service | ) | |
| Corporation, American Transmission | ) | |
| Systems, Inc. and Duke Energy Ohio, LLC, | ) | |
| Respondents. | ) | |

---

**REQUEST FOR REHEARING**
**TO PROTECT OHIOANS FROM UNWARRANTED UTILITY PROFITS**
**BY**
**OFFICE OF THE OHIO CONSUMERS' COUNSEL**

---

Bruce Weston
Ohio Consumers' Counsel

Larry Sauer
Deputy Consumers' Counsel

**Office of the Ohio Consumers' Counsel**
65 East State Street, Suite 700
Columbus, Ohio 43215
(614) 466-1312 – Telephone
larry.sauer@occ.ohio.gov

Denise C. Goulet, Esq.
McCarter & English, LLP
1301 K Street, N.W., Suite 1000 West
Washington, D.C. 20005
(202) 753-3400 – Telephone
dgoulet@mccarter.com
*Special Counsel for The Office of Attorney General
of Ohio on Behalf of the Office of the Ohio
Consumers' Counsel*

January 17, 2023

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ................................................................................................3

III.  SPECIFICATIONS OF ERRORS ON REHEARING ........................................6

IV.   LIST OF ISSUES ON REHEARING................................................................6

V.    REQUEST FOR REHEARING.........................................................................7

      A.    FERC's decision to allow ATSI and Duke to retain the RTO Adder is arbitrary and capricious, fails the test for reasoned decision-making, is an unwarranted and unexplained departure from precedent, and fails to protect these utilities' consumers. ...........................................................................................7

      B.    FERC's decision to allow ATSI and Duke to retain the RTO Adder unduly discriminates against their Ohio consumers. .......................................14

VI.   CONCLUSION AND PRAYER FOR RELIEF ...............................................18

i

**JA529**

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | |
|---|---|
| Office of the Ohio Consumers' Counsel,    ) | |
| Complainant,    ) | |
|    ) | |
| v.    ) | Docket No. EL22-34-000 |
|    ) | |
| American Electric Power Service    ) | |
| Corporation, American Transmission    ) | |
| Systems, Inc. and Duke Energy Ohio, LLC,  ) | |
| Respondents.    ) | |

---

**REQUEST FOR REHEARING**
**TO PROTECT OHIOANS FROM UNWARRANTED UTILITY PROFITS**
**BY**
**OFFICE OF THE OHIO CONSUMERS' COUNSEL**

---

## I.    INTRODUCTION

The Federal Energy Regulatory Commission's ("FERC) December 15 Order[1] in this case fails to protect Ohio consumers served by American Transmission Systems, Inc. ("ATSI") and Duke Energy Ohio, LLC ("Duke" ), from the unjust and unreasonable transmission incentive rate adder (for regional transmission operator membership), resulting in the retention of unjust and unreasonable rates for Ohio consumers of those two utilities.  FERC found that Ohio law mandates all Ohio utilities to participate in a FERC-authorized RTO, and because Ohio Power Company's ("Ohio Power") and American Electric Power Ohio Transmission Company's ("AEP Ohio Transmission") participation in PJM Interconnection LLC ("PJM") is not voluntary, they were ineligible to receive extra unwarranted profits. FERC made no similar finding for ATSI and Duke even though they too are subject to the same law.

---

[1] *Office of the Ohio Consumers' Counsel v. American Electric Power Service Corp.*, 181 FERC ¶ 61,214 (2022) ("December 15 Order").

FERC's December 15, 2022 Order on Complaint in the above-captioned docket provides critical protections for Ohio retail consumers served by Ohio Power and AEP-Ohio Transmission. That Order directs these two Ohio utilities to remove from consumers' rates the unwarranted Regional Transmission Organization ("RTO") participation incentive charge granted them in prior proceedings because they are mandated by Ohio law to belong to an RTO. This unwarranted incentive is referred to as the "RTO Adder."

FERC further found that (a) it had authorized the RTO Adder for Ohio Power and AEP Ohio Transmission and the incentive was in the rates they charged their Ohio consumers, and (b) as a result, their Ohio transmission rates are unjust and unreasonable. FERC made no similar finding that the transmission rates for ATSI and Duke consumers are unjust and unreasonable. This is notwithstanding the fact that it found that the RTO Adder is also in the rates of Ohio consumers served by those two utilities. The only explanation provided by FERC for this disparate treatment was that ATSI and Duke's rates were set by settlement rather than by FERC directive. That difference bears no nexus to the legal analysis of whether the utilities were eligible for the RTO Adder and thus whether it would be unjust and unreasonable to include the RTO Adder in their rates. FERC's decision to leave the RTO Adder in the rates of some Ohio consumers while removing from the rates of other Ohio consumers makes no sense and should be reconsidered.

Pursuant to Section 313 of the Federal Power Act ("FPA")[2] and Rule 713 of the FERC's Rules of Practice and Procedure,[3] the Office of the Ohio Consumers' Counsel ("OCC") hereby requests rehearing of the December 15 Order. FERC's decision to remove the RTO Adder from

---

[2] 16 U.S.C. § 825l.

[3] 18 C.F.R. § 385.713 (2022).

some Ohio consumer rates without removing it from all Ohio consumers' rates leaves half the state paying unjust and unreasonable transmission rates. Leaving the RTO Adder in the rates of ATSI's and Duke's Ohio consumers will accomplish nothing except providing unjust and unreasonable additional profits to these two utilities. Those utilities, like Dayton Power & Light Company ("Dayton"), Ohio Power and AEP Ohio Transmission are required by state law to join an RTO. Forcing Ohio consumers of ATSI and Duke to pay a 50-basis point return on equity (extra profit) windfall to the utility's shareholders is not needed to encourage the utilities to do what they are already mandated to do by state law. FERC should not award extra profit bonuses to utilities simply for complying with state law mandates. The ruling to leave the incentive in ATSI's and Duke's Ohio transmission rates is arbitrary and capricious, unduly discriminatory, an unexplained and unwarranted departure from prior precedent, and fails the requirement for reasoned decision-making because it does not adequately protect all Ohio consumers from excessive, unjust and unreasonable transmission rates.

## II.    BACKGROUND

On July 15, 2021, FERC issued an order in a Dayton proceeding denying Dayton's request for a 50 basis point RTO Adder for its participation in the PJM RTO.[4] FERC reasoned that Ohio law mandated Dayton's participation in an RTO, and thus it would be unjust and unreasonable to require Ohio consumers served by that utility to pay an incentive for behavior already mandated by state law.[5] Consequently, on February 24, 2022, OCC filed a complaint against American Electric Power Service Corporation (specifically Ohio Power and AEP Ohio Transmission), ATSI and Duke in this proceeding. OCC maintained that like Dayton, they too

---

[4] December 15 Order at P 5, citing *The Dayton Power & Light Co.*, 172 FERC ¶ 61,025 (2021), *order on reh'g*, 178 FERC ¶ 61,102 (2022) ("*Dayton*").

[5] *Dayton,* 176 FERC ¶ 61,025 at P 54.

are ineligible for the 50-basis point RTO Adder to the authorized return on equity ("ROE") for participation in an RTO[6] because they too are mandated by the same Ohio law to join an RTO. In its December 15 Order, FERC found that OCC had shown that "the rates for Ohio Power and AEP Ohio Transmission are unjust and unreasonable because the Commission specifically granted them an RTO Adder under section 219 and that their continued participation in a Transmission Organization is mandatory."[7] Commissioner Christie issued a concurring opinion, stating that "[a]n ROE Adder for RTO participation is 'by definition, a subsidy, as any ROE adder is – more 'FERC Candy' taken directly from consumers and redistributed to transmission owners.'"[8] However, FERC found that OCC "has not met its burden of showing the rates for Duke and ATSI are unjust and unreasonable as the Commission did not specifically grant them an RTO Adder under section 219 and their rates were instead the products of comprehensive settlement."[9]

FERC stated that Section 219 of the Federal Power Act requires FERC "to the extent within its jurisdiction," to "provide for incentives to each transmission utility or electric utility that joins a Transmission Organization."[10] FERC then stated that it "implemented this directive in Order No. 679, finding that an RTO Adder is appropriate for entities that choose to remain members of a Transmission Organization because, in relevant part, continuing membership is 'generally voluntary.'"[11]

---

[6] December 15 Order at P 1.

[7] *Id.* at P 60.

[8] December 15 Order, Concurring Opinion of Commissioner Christie at P 2.

[9] December 15 Order at P 60

[10] *Id.* at P 61.

[11] *Id.*, citing *Promoting Transmission Inv. Through Pricing Reform,* Order No. 679, 116 FERC ¶ 61,06 at P 331, *order on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345 (2006), *order on reh'g,* Order No. 679-B, 119 FERC ¶ 61,062 (2007).

4

FERC justified its decision for eliminating the RTO Adder from Ohio Power's and AEP Ohio Transmission's rates on the basis that it evaluated and granted the RTO Adder for these utilities "on a single issue basis, separate from all other ROE issues."[12] FERC agreed with OCC's Complaint that the Ninth Circuit Court of Appeals' decision in *California Public Utilities Service Commission v. Federal Energy Regulatory Commission*[13] "requires a showing of voluntary membership in a Transmission Organization," which Ohio Power and AEP Ohio Transmission cannot make."[14]

FERC then stated that "the parties in Duke's settlement agreed upon a 10.38% based cost of common equity and a 50 basis point ROE adder."[15] FERC also stated that "the ATSI Settlement stated that the agreed-upon ROEs were inclusive of any incentive adder for RTO participation and that ATSI's affiliates testified in other proceedings that ATSI's base ROE is 9.88% rather than the 10.38% ROE contained in the ATSI settlement."[16] However, FERC reached a different ruling for ATSI and Duke.  FERC denied OCC's Complaint as to those two utilities because it maintained that OCC had not demonstrated that ATSI's and Duke's transmission rates were unjust and unreasonable because they were determined as part of an overall settlement rather than being separately granted under section 219 of the FPA and Order No. 679.[17]

---

[12] December 15 Order at P 62.

[13] *Cal. Pub. Util. Comm'n v. FERC*, 879 F.3d 966 (9th Cir. 2018) ("*CPUC*").

[14] December 15 Order at P 63.

[15] *Id.* at P 65.

[16] *Id.*

[17] *Id.* at P 66.

5

## III.    SPECIFICATIONS OF ERRORS ON REHEARING

1.    FERC erred by acting in an arbitrary and capricious manner and by failing to engage in reasoned decision-making when it failed to remove an RTO Adder from the rates of Ohio consumers served by ATSI and Duke.  This is despite the fact that FERC acknowledges that the RTO Adder is in their rates, the RTO Adder cannot encourage their participation in an RTO because Ohio law already mandates that participation, and thus the RTO Adder provides no incentive for ATSI and Duke to take any action that would benefit Ohio consumers.  FERC also erred in departing from its prior determinations that base ROE is unrelated to the question of whether the RTO Adder is unjust and unreasonable without providing a reasoned explanation.

2.    FERC erred by reaching a decision that is unduly discriminatory against Ohio consumers of ATSI and Duke as compared to its treatment of the Ohio consumers of Dayton, Ohio Power and AEP Ohio Transmission.  The only difference between the two sets of consumers is the manner in which the rates were set.  This factor  has no bearing on the ultimate issue of whether the incentive is unlawful, unjust and unreasonable for inclusion in Ohio consumers' rates given Ohio law mandating RTO participation for all Ohio utilities.

## IV.    LIST OF ISSUES ON REHEARING

1.    Whether FERC's failure to remove the RTO Adder from the transmission rates charged to Ohio consumers of ATSI and Duke:

a.    is arbitrary and capricious contrary to the Administrative Procedure Act's "arbitrary and capricious" standard, 5 U.S.C. § 706(2)(A), and *Sithe/Indep. Power Partners, L.P. v. FERC*, 165 F.3d 944, 948 (D.C. Cir. 1999) ("*Sithe/Indep. Power Partners*");

b.    fails the test for reasoned decision-making as required by *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 782 (2016) ("*EPSA*") (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)); and *Neighborhood TV Co. v. FCC,* 742

6

F.2d 629, 639 (D.C. Cir. 1984) ("*Neighborhood TV Co.*") (the court must be able to "discern a reasoned path from the facts and considerations before the [agency] to the decision it reached."); and

    c.  represents an unwarranted and unexplained departure from precedent, contrary to the requirements of *Williams Gas Processing-Gulf Coast Co. v. FERC,* 475 F.3d 319, 326 (D.C. Cir. 2006) ("*Williams Gas Processing*") (citing *Brusco Tug & Barge Co. v. NLRB*, 247 F.3d 273, 278 (D.C. Cir. 2001) ("[I]t is 'axiomatic that [agency action] must either be consistent with prior [action] or offer a reasoned basis for its departure from precedent")?

  2.  Whether FERC's failure to remove the RTO Adder from the transmission rates charged to the Ohio consumers of ATSI and Duke unduly discriminates against these Ohio consumers, contrary to the requirements of Federal Power Act Sections 205 and 206, in comparison to the Ohio consumers served by Dayton, Ohio Power and AEP Ohio Transmission who will no longer will pay these charges?

**V.  REQUEST FOR REHEARING**

  **A.  FERC's decision to allow ATSI and Duke to retain the RTO Adder is arbitrary and capricious, fails the test for reasoned decision-making, is an unwarranted and unexplained departure from precedent, and fails to protect these utilities' consumers.**

  OCC seeks rehearing of FERC's determination that OCC has not demonstrated that the RTO Adder is unjust and unreasonable in ATSI's and Duke's Ohio transmission rates. That determination makes no sense in light of FERC's finding in *Dayton* and in the December 15 Order that "we do not believe it would be appropriate to award an incentive for an action that the requesting entity is required by law to take, even where that action comes with substantial

benefits or risks."[18] Here, regardless of how FERC authorized the RTO Adder for ATSI and Duke, it has authorized the adder and that the RTO Adder is in fact in the transmission rates ATSI and Duke charge to their consumers in Ohio. The process by which the RTO Adder got into ATSI's and Duke's rates is irrelevant to the critical of questions of (a) whether they were mandated to join an RTO, and (b) whether their rates in fact include the RTO Adder. Both are true.

FERC's reasoning in the December 15 Order for allowing ATSI and Duke to maintain the RTO Adder is arbitrary and capricious, contrary to the Administrative Procedure Act's "arbitrary and capricious" standard, 5 U.S.C. § 706(2)(A), and *Sithe/Indep. Power Partners,* 165 F.3d at 948 ("[T]he Commission must be able to demonstrate that it has 'made a reasoned decision based upon substantial evidence in the record'").  It also fails the test for reasoned decision-making as required by *EPSA*, 136 S. Ct. at 782 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)); and *Neighborhood TV Co.,* 742 F.2d at 639 (the court must be able to "discern a reasoned path from the facts and considerations before the [agency] to the decision it reached.")  In the December 15 Order in this case, FERC affirmed its ruling in *Dayton*, finding that a utility that is mandated by state law to join a Transmission Organization like an RTO is not eligible for the RTO Adder. That ruling makes sense and is consistent with the Ninth Circuit's ruling in *CPUC* that "there must be a connection between the incentive and the conduct meant to be induced."[19] The Ninth Circuit's ruling in turn is consistent with long-held judicial precedent that "[i]f the Commission contemplates increasing rates for the purpose of encouraging exploration and development, or the ownership by pipeline companies of

---

[18] December 15 Order at P 85, citing *Dayton*, 176 FERC 61,025 at P 30.

[19] *CPUC*, 879 F.3d at 977.

8

their own producing facilities, it must see to it that the increase is in fact needed, and is no more than is needed, for the purpose."[20]

FERC acknowledges that Ohio Power and AEP Ohio Transmission, like Dayton, are mandated by Ohio law to join an RTO. FERC appears to ignore that ATSI and Duke are likewise subject to the same law. No transmission utility in Ohio should be considered eligible for the RTO Adder because they are all subject to the Ohio law. The RTO Adder cannot incent any utility in Ohio to voluntarily join an RTO because the state law already mandates participation. Thus, the RTO Adder results in unjust and unreasonable rates for any Ohio consumer.

To the extent any utility in Ohio is allowed to include the RTO Adder in rates, it would be receiving an incentive to comply with previously mandated state law. FERC's decision to leave the Adder in the rates charged by ATSI and Duke to their Ohio consumers thus represents "a bonus for good behavior."  But, as FERC stated in Order No. 679" "[i]t is true that our reforms adopted in the Final Rule provide 'incentives' to construct new transmission, *but they do constitute an 'incentive' in the sense of a 'bonus' for good behavior.*"[21]  The Ninth Circuit essentially agreed with FERC's ruling in Order No. 679 in finding that "[t]he policy prohibits FERC from rewarding utilities for past conduct or for conduct which they are otherwise obligated to undertake."[22]  Thus, allowing ATSI and Duke to retain the Adders represents an unexplained departure from precedent, contrary to the requirements of *Williams Gas Processing,* 475 F.3d at 326 (citing *Brusco Tug & Barge Co. v. NLRB,* 247 F.3d 273, 278 (D.C. Cir. 2001) ("[I]t is 'axiomatic that [agency action] must either be consistent with prior [action] or offer a reasoned basis for its departure from precedent")).

---

[20] *City of Detroit, Michigan v. Federal Power Comm'n*, 230 F.2d 810, 817 (D.C. Cir. 1955) ("*City of Detroit*").

[21] Order No. 679 at P 26 (emphasis added).

[22] *CPUC*, 879 F.3d at 977.

9

FERC acknowledges that the rates charged by ATSI and Duke to their Ohio consumers include the RTO Adders.[23] Thus, FERCs statement in the December 15 Order that "we have not found that Duke and ATSI are entitled to an RTO Adder"[24] is incorrect and makes no sense. The fact remains, the RTO Adder is in their rates charged to Ohio consumers. FERC fails to explain how it can find it appropriate to allow these utilities to retain the adders simply because their rates were set by settlements rather than by a direct order in a single-issue case under FPA Section 219.[25]

FERC's conclusion is contrary to the Ninth Circuit's decision, which was issued after each of Duke's and ATSI's settlement agreements. While FERC allows utilities to request the RTO Adder in a single issue case, it does not require that a single issue rate filing is the only means for seeking approval to recover the RTO Adder. Order No. 679 states that "[a]n applicant may obtain these rulings: (1) through a combination of a petition for declaratory order and a subsequent section 205 filing; or (2) by filing only a section 205 filing."[26] In other words, FERC left the door open to utilities to use a variety of rate mechanisms, including single-issue or traditional full Section 205 rate filings, to seek recovery of the RTO Adder. The important point is that Order No. 679 makes clear that the RTO Adder cannot be obtained unless some type of section 205 filing seeking approval from FERC is made.[27]

There is no logic in FERC's attempt to support the proposition that an RTO Adder granted in a settlement is somehow different that an RTO Adder granted in a single-issue rate

---

[23] December 15 Order at P 65.

[24] *Id.* at P 66.

[25] December 15 Order at P 64.

[26] Order No. 679 at P 76.

[27] Order No. 679 at P 80 ("We clarify that no incentives will be granted on a final basis without a section 205 filing.").

proceeding. A settlement in a rate proceeding is still a section 205 proceeding. FERC still must approve the settlement, inclusive of the allowance of the RTO Adder, just as it must approve a single-issue rate filing. FERC states in the December 15 Order that it does "not know the precise trade-offs and concessions made by the parties to those proceedings during the settlement process and the terms to which and conditions to which those parties would have agreed with respect to Ohio transmission assets had the Commission policy on RTO Adders been different."[28] While those trade-offs could have gone either in the consumers' favor or the utility's favor, it is far more likely that consumers conceded to inclusion of the RTO Adders within the overall rates of return because FERC policy at the time pretty much allowed the RTO Adder for every utility that had joined an RTO. Thus, the concession by consumers to include the RTO adder likely would have been different, as it was in *Dayton* where consumers challenged the Adder, if the Ninth Circuit's opinion had been issued as of the date of those settlement.

In fact, statements like those included in the ATSI and Duke's settlements indicating that the ROEs included the adder for RTO participation were necessary to restrict the utility's right to later file with FERC seeking permission to include another RTO Adder in its rates in a future single-issue filing at FERC. FERC's ruling that settlements reflect a compromise of positions and thus somehow override the fact that the RTO Adders are in the rates being charged to consumers is illogical. Such a ruling could have dire implications for any final rule adopted in the pending Notice of Proposed Rulemaking proceeding in Docket No. RM21-10-000.

In that case, FERC proposes to eliminate or limit the term for such RTO Adders. If FERC refuses to reconsider its ruling in this case that a rate set by settlement, even where it explicitly includes the RTO Adder, cannot be challenged unless a full-blown investigation into the overall

---

[28] December 15 Order at P 64.

ROE is filed, would place an expensive burden on consumers to challenge the justness and reasonableness of the utility's revenue requirements. Under that policy, FERC would likely not require any utility whose rates were set by settlement to remove the 50-basis point ROE Adder in compliance with any final order in Docket No. RM21-10.

The ruling in the December 15 Order vis-à-vis ATSI and Duke calls into question the right of complainants in any post-settlement rate proceeding to challenge the ROE in that proceeding. FERC routinely allows complainants to challenge the base ROE of a utility, even where such ROE was set by a settlement in the prior proceeding, without challenging all of the elements of a formula transmission rates. That decision makes sense given that many formula rates have true-up provisions that allow the utility to recover annually changing costs in almost all elements of their cost of service, with the exception of ROE and depreciation.

But FERC's ruling in the proceeding here could be interpreted to require complainants to go after the base ROE or indeed, every element of the cost of service, in a situation where the prior rates were set by settlement to demonstrate that the current ROE is unjust and unreasonable. The same could be said of any single-issue rate change in a formula rate context such as a change in depreciation rates. FERC's ruling in this case makes no sense given its on-going policy of allowing single-issue rate changes for specified elements of a cost of service such as depreciation rates and ROE.

FERC's ruling in this case that it cannot separate the RTO Adder from the base ROE is also inconsistent with its findings in other ATSI proceedings in which it did separate out the base ROE and RTO Adder when examining settlement agreements for purposes of determining a Risk Premium dataset.[29] Moreover, in requiring elimination of the RTO Adder from the transmission

---

[29] December 15 Order at P 65 ("We also recognize . . . that ATSI affiliates testified in other proceedings that ATSI's base ROE is 9.88%, rather than the 10.38% ROE contained in the ATSI settlement.").

rates charged to Ohio consumers by Ohio Power and AEP Ohio Transmission, FERC determined in the December 15 Order that its "decision pertaining to the RTO Adder is irrelevant to a utility's base ROE and financial integrity, credit ratings and ability to attract investment."[30] In other words, FERC found it doesn't matter whether the base ROE for a utility is still appropriate today because Ohio law mandating participation in an RTO makes the utility ineligible for the RTO Adder. If the RTO Adder is unlawful, it should not be included in rates.  It is arbitrary and capricious for FERC to now ignore that precedent and rely on the comprehensive nature of settlements that involve trade-offs to justify a ruling that the base ROE and RTO Adder cannot be separated for purposes of determining whether ATSI's and Duke's rates include the RTO Adder.  As the Court explained in *Williams Gas Processing,* FERC can certainly change its mind in its orders, but it must explain that change in position. It has not done that here.

FERC should recognize that there has been a significant change in law since the time the ATSI and Duke settlements were filed in 2015.[31] Both were filed before the Ninth Circuit issued its 2018 opinion that required FERC to take into account the voluntariness of a utility's participation in an RTO when determining whether it is just and reasonable to include the RTO Adder in rates. OCC has shown that there has been a change in circumstances since the settlements were accepted. Additionally, both utilities operate under formula rates with true-up provisions, and thus recover their costs annually. These utilities can recover their authorized base returns even if they are no longer authorized to recover the RTO Adder.

---

[31] *The Office of the Ohio Consumers Counsel v. American Electric Power Service Corp.,* Docket No. EL22-34-000, Complaint to Protect Ohio Consumers from Unreasonable Electric Transmission Charges and Request for Establishment of Refund Effective Date and Request for Expedited Processing of Complaint by Office of the Ohio Consumers Counsel at 10 (February 24, 2022) ("Complaint").

Inclusion of the RTO Adder in the rates of any Ohio transmission utility is unjust and unreasonable, regardless of whether it was considered a trade in a settlement negotiation for some other benefit. A utility should not be allowed to include something unlawful in its rates through bargaining, especially where the "decision pertaining to the RTO Adder is irrelevant to a utility's base ROE and financial integrity, credit ratings, and ability to attract investment."[32] In other words, if the RTO Adder is unjust and unreasonable, it doesn't matter what the base ROE is.  Thus, it shouldn't matter whether the currently authorized base ROE is still just and reasonable for ATSI and Duke just as it did not matter what that base ROE was for Dayton, Ohio Power or AEP Ohio Transmission. Each of these utilities has the right under FPA Section 205 to file for an increase in its base ROE to the extent it believes that base ROE is no longer just and reasonable in today's markets.

FERC found that the RTO Adder is in ATSI's and Duke's Ohio rates, and that those utilities, like Dayton, Ohio Power and AEP Ohio Transmission, are mandated by Ohio law to participate in PJM. There is nothing the RTO Adder incentive can do to encourage ATSI or Duke to remain in PJM (or another RTO) because they are mandated by Ohio law to do so. The reality, as FERC recognizes, is that ATSI and Duke both agreed to an ROE that includes both a base ROE and the RTO Adder incentive.

**B.    FERC's decision to allow ATSI and Duke to retain the RTO Adder unduly discriminates against their Ohio consumers.**

It  is not just and reasonable to allow ATSI and Duke to retain the unreasonable and unlawful RTO Adder when the other Ohio utilities have been required to remove the Adder from their Ohio rates. Such a result is unduly discriminatory as to the Ohio consumers of ATSI and

---

[32] December 15 Order at P 77.

Duke, contrary to Sections 205 and 206 of the Federal Power Act. .Federal Power Act section 205 requires that "no public utility shall, with respect to any transmission or sale subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage . . . ."[33] Federal Power Act section 206 similarly obligates FERC to fix any rate found to be unjust, unreasonable, unduly discriminatory or preferential.[34] The critical factors in this proceeding for eligibility for continued receipt of the RTO Adder are (a) whether the Ohio utilities voluntarily joined an RTO; and (b) whether their rates include an RTO Adder.

OCC satisfied the first prong of this inquiry. FERC determined that Dayton, Ohio Power and AEP Ohio Transmission are mandated by an Ohio law that is applicable to all Ohio utilities to participate in a Transmission Organization. OCC demonstrated in the Complaint that ATSI and Duke's Ohio affiliates likewise are required by that same Ohio law to participate in a FERC-authorized transmission organization if they want to provide transmission services in Ohio.[35]

The most determinative factor in the case precedent cited in the Complaint and relied on by FERC in the December 15 Order, *i.e., Dayton* and the Ninth Circuit Court of Appeals' opinion in *CPUC,* is whether state law compels participation by the Ohio transmission utilities in a FERC-authorized transmission organization. Interestingly, FERC did not find that ATSI and Duke are not subject to the same Ohio law as Dayton, Ohio Power and AEP Ohio Transmission. Instead, FERC stated instead that "we have not found that Duke and ATSI are entitled to an RTO Adder."[36] But that is incorrect. There simply is no dispute that both are subject to the same law

---

[33] 16 U.S.C. § 824d.

[34] 16 U.S.C. § 824e.

[35] Complaint at 8-10.

[36] December 15 Order at P 66.

and that FERC approved the ATSI and Duke settlements that explicitly contain the Adders. Failing to find that Duke and ATSI, like Dayton, Ohio Power and AEP Ohio Transmission are not entitled to the RTO Adder under the precedent in *Dayton* and *CPUC* results in unduly discriminatory treatment of their consumers as compared to Dayton's, Ohio Power's and AEP Ohio Transmission's Ohio consumers.

Simply put, participation by Duke and ATSI in an RTO is not voluntary. Therefore, under FERC and judicial precedent, neither is entitled to the RTO Adder. They too should be found by FERC ineligible for the RTO Adder.

OCC also satisfied the second prong of the test for determining whether the RTO Adder should be removed from the utilities' transmission rates, *i.e,* the requirement that the RTO Adder is included in rates. FERC found that "the parties in Duke's settlement agreed upon a 10.88% base cost of common equity *and a 50 basis point ROE adder*."[37] FERC also found that "the ATSI settlement stated that the agreed-upon ROEs were inclusive of any incentive adder for RTO participation and that ATSI's affiliates testified in other proceedings that ATSI's base ROE is 9.88%, rather than the 10.38% ROE contained in the ATSI settlement."[38] The difference between ATSI's base ROE of 9.88% and its total ROE of 10.38% is 50 basis points, *i.e.*, the RTO Adder. Thus, like Dayton, Ohio Power and AEP Ohio Transmission, FERC has found that Duke's and ATSI's transmission rates include the RTO Adder.  It would be unduly discriminatory against Duke's and ATSI's Ohio consumers, contrary to FPA Sections 205 and 206, to not require removal of the RTO Adder from their rates when the Ohio consumers of Dayton, Ohio Power and AEP Ohio Transmission are not required to pay the RTO Adder.

---

[37] *Id.* at P 65 (emphasis added).

[38] *Id.*

The fact that DEO's and ATSI's rates were set by settlement should play no role in determining whether Duke and ATSI are similarly-situated to Dayton, Ohio Power and AEP Ohio Transmission when it comes to application of the *Dayton* and *CPUC* mandates. These utilities are all similarly-situated in the elements that are critical to determining whether it is just and reasonable to let them retain the RTO Adder incentive in their rates. That is, they are all subject to the same Ohio law mandating participation in an RTO and they all have the RTO included in their current rates. It would be unduly discriminatory to eliminate the RTO Adder from rates for some but not all consumers of these Ohio utilities. All four of Ohio's transmission utilities are required to be members of a RTO, so none should be able to collect the RTO adder.

The question of how the rates were set bears no nexus to the question of whether the utilities are eligible for the RTO Adder and whether inclusion of the RTO Adder in their rates is just and reasonable. Allowing Duke and ATSI to retain the RTO Adder in their rates simply obligates their Ohio consumers to pay their shareholders an extra profit windfall for complying with Ohio law. That is not FERC's intent under Order No. 679. No utility should be compensated simply for complying with legal mandates. FERC should reconsider its ruling vis-à-vis ATSI and Duke and protect the Ohio consumers of ATSI and Duke just as it protected the Ohio consumers of Dayton, Ohio Power and AEP Ohio Transmission by directing these utilities to remove the RTO Adders from their Ohio transmission rates.

## VI.    CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, OCC respectfully requests that FERC reconsider its rulings in the

December 15 Order and afford the Ohio consumers of ATSI and Duke the same protection

properly provided to the Ohio consumers of Dayton, Ohio Power and AEP Ohio Transmission

by directing ATSI and Duke to likewise remove the RTO Adder from the transmission rates of

their Ohio consumers.

<div style="margin-left:40%">

Respectfully submitted,

Bruce Weston
Ohio Consumers' Counsel

*/s/ Larry Sauer*
Larry Sauer
Deputy Consumers' Counsel

**Office of the Ohio Consumers' Counsel**
65 East State Street, Suite 700
Columbus, Ohio 43215
(614) 466-1312 – Telephone
larry.sauer@occ.ohio.gov

Denise C. Goulet, Esq.
McCarter & English, LLP
1301 K Street, N.W., Suite 1000 West
Washington, D.C. 20005
(202) 753-3400 – Telephone
dgoulet@mccarter.com

*Special Counsel for The Office of Attorney General
of Ohio on Behalf of the Office of the Ohio
Consumers' Counsel*

</div>

January 17, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this date served a copy of the foregoing document via electronic mail upon all parties of record on the Commission's official service list in this proceeding. Dated in Washington, D.C., on this 17th day of January 2023.

*/s/ Denise C. Goulet*

Denise C. Goulet, Esq.
McCarter & English, LLP
1301 K Street, N.W., Suite 1000 West
Washington, D.C. 20005
(202) 753-3400 – Telephone
dgoulet@mccarter.com

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| Office of the Ohio Consumers' Counsel, | ) | |
| | ) | |
| v. | ) | Docket No. EL22-34-000 *et al.* |
| | ) | |
| American Electric Power Service Corporation, | ) | |
| American Transmission Systems, Inc., and | ) | |
| Duke Energy Ohio. | ) | |

---

**ANSWER FOR SAFEGUARDING CONSUMER RATE REFUNDS**
**AND**
**MOTION FOR LEAVE TO FILE ANSWER TO AMERICAN ELECTRIC POWER**
**SERVICE CORPORATION'S REQUEST FOR REHEARING**
**BY**
**OFFICE OF THE OHIO CONSUMERS' COUNSEL**

---

Bruce Weston
Ohio Consumers' Counsel

Larry Sauer
Deputy Consumers' Counsel

**Office of the Ohio Consumers' Counsel**
65 East State Street, Suite 700
Columbus, Ohio 43215
(614) 466-1312 – Telephone
(614) 466-9475 – Facsimile
E-mail: larry.sauer@occ.ohio.gov

Denise C. Goulet
McCarter & English, LLP
1301 K Street, N.W., Suite 1000 West
Washington, D.C. 20005
(202) 753-3400 (Voice)
(202) 354-4652 (Fax)
E-mail: dgoulet@mccarter.com

February 1, 2023                    Special Counsel for the Office of Attorney General
                                   of Ohio on Behalf of the Office of the Ohio
                                   Consumers' Counsel

# TABLE OF CONTENTS

**Page**

I.    MOTION FOR LEAVE TO FILE ANSWER .................................................2

II.   ANSWER....................................................................................................................3

    A.    FERC Did Not Err in Finding that Ohio Power's and AEP Ohio Transmission's Rates for Transmission Service to Ohio Consumers Are Unjust and Unreasonable Because They Contain an Unwarranted Extra Profits Charge for Participation in an RTO....................................................................3

    B.    The Order Is Consistent with FERC's Rules Regarding Single Issue Ratemaking. ......................................................................................................8

    C.    Under FPA Section 219, The Grant of an RTO Adder is Subject to the Requirement That Consumer Rates Be Just and Reasonable, and Both FERC Order No. 679 and Judicial Precedent Impose a Voluntariness Requirement for the Adder to Be Just and Reasonable. ..........................................................10

    D.    AEP's Membership in PJM Is Not Voluntary and Consumers Should Not be Charged for Unwarranted Extra AEP Profits........................................................13

    E.    AEP's Argument That the Ohio Statute Is Pre-empted Is Both a Collateral Attack on Dayton and Incorrect..............................................................................14

    F.    FERC Properly Found That Ohio Power and AEP Ohio Transmission Are Named Respondents.............................................................................................16

III.  CONCLUSION.......................................................................................................22

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| Office of the Ohio Consumers' Counsel, | ) | |
| | ) | |
| v. | ) | Docket No. EL22-34-000 *et al.* |
| | ) | |
| American Electric Power Service Corporation, | ) | |
| American Transmission Systems, Inc., and | ) | |
| Duke Energy Ohio. | ) | |

---

**ANSWER FOR SAFEGUARDING CONSUMER RATE REFUNDS**
**AND**
**MOTION FOR LEAVE TO FILE ANSWER TO AMERICAN ELECTRIC POWER**
**SERVICE CORPORATION'S REQUEST FOR REHEARING**
**BY**
**OFFICE OF THE OHIO CONSUMERS' COUNSEL**

---

American Electric Power Service Corporation ("AEP" or "AEPSC") seeks by its Request for Rehearing filed on January 17, 2023 to continue to charge Ohio consumers a bonus for doing what Ohio law already requires them to do – join a Regional Transmission Organization ("RTO"). AEP's request would cost Ohio consumers at least $13 million annually in unjust and unreasonable rates – what FERC Commissioner Christie criticized as "FERC candy" for utilities.[1] The actual cost to consumers is much higher when both new and existing investment are included in the calculation. Ohio consumers have been paying this windfall to AEP affiliates, Ohio Power Company ("Ohio Power") and AEP Ohio Transmission Company ("AEP Ohio Transmission") for more than ten years.

---

[1] *Office of the Ohio Consumers' Counsel v. American Electric Power Service Corp., et al.*, 181 FERC ¶ 61,214 (2022) ("December 15 Order"), Concurring Opinion of Commissioner Christie at P 2.

1

In its December 15, 2022 Order on Complaint[2] in this proceeding, the Federal Energy Regulatory Commission ("FERC") correctly directed Ohio Power and AEP Ohio Transmission to remove the unjust and unreasonable bonus charge from the transmission rates levied on their Ohio consumers. FERC should reject AEP's Request for Rehearing of that decision. FERC should also affirm its decision requiring consumer refunds for these unwarranted extra profits dated back to February 24, 2022.

Pursuant to Rule 213(a)(2) of FERC's Rules of Practice and Procedure,[3] the Office of the Ohio Consumers' Counsel ("OCC") submits its Answer for Safeguarding Consumer Rate Refunds and Motion for Leave to File Answer to AEP's Request for Rehearing. AEP's arguments are incorrect. By this pleading, OCC seeks to correct the misrepresentations and mischaracterizations of the facts and law contained in AEP's Request for Rehearing. This will clarify the record and aid in FERC's deliberations on the issues.

## I.    MOTION FOR LEAVE TO FILE ANSWER

Rule 213(a) of the FERC's Rules of Practice and Procedure generally do not allow the submission of answers to requests for rehearing.[4] However, the rule authorizes FERC the discretion to accept such answers. And FERC has accepted such pleadings where, as here, they will assist the FERC in its analysis of the issues. FERC has also accepted answers to rehearing requests where they provide useful and relevant information, or otherwise facilitate the development of a full and complete record.[5] This Answer will facilitate the development of a full

---

[2] December 15 Order at P 60.

[3] 18 C.F.R. § 385.213(a)(2).

[4] *Id.* .

[5] *See, e.g., PJM Interconnection, L.L.C.*, 126 FERC ¶ 61,030 at P 12 (2009) ("The Commissions grants PJM's motion for leave to answer the requests for rehearing and clarification, as PJM's answer has assisted us in the decision-making process"); *see also PJM Interconnection, L.L.C.*, 104 FERC ¶ 61,154 at P 14 (2003) ("The

and complete record in this proceeding by correcting certain misrepresentations and misleading statements set forth in AEP's Request for Rehearing. Accordingly, OCC requests that FERC accept this Answer as part of the record in this docket.

## II.    ANSWER

### A.    FERC Did Not Err in Finding that Ohio Power's and AEP Ohio Transmission's Rates for Transmission Service to Ohio Consumers Are Unjust and Unreasonable Because They Contain an Unwarranted Extra Profits Charge for Participation in an RTO.

AEP argues that FERC erred in directing Ohio Power and AEP Ohio Transmission to eliminate the RTO Adder from their transmission rates for Ohio consumers.[6] AEP claims that the logic FERC used to deny the complaint as to American Transmission Systems, Inc. ("ATSI") and Duke Energy Ohio ("Duke Energy"), two other Ohio transmission utilities named in the Complaint, applies equally to Ohio Power and AEP Ohio Transmission. AEP argues that FERC denied the relief sought in the Complaint as to ATSI and Duke Energy because it granted the 50 basis point adder to their returns on equity ("ROE") as an incentive for participation in an RTO ("RTO Adder") as part of comprehensive settlements.[7] AEP claims that there is no distinction between the manner in which FERC originally authorized the RTO Adder for Ohio Power and AEP Ohio Transmission and the manner in which FERC originally authorized the adder for ATSI and Duke. This is because they were all awarded the RTO Adder in settlement proceedings.[8] AEP's arguments are incorrect for several reasons.

---

Commission finds good cause to admit Duke Energy's answer as well as Allegheny's reply since they will not delay the proceeding, will assist the Commission in understanding the issues raised, and will insure a complete record upon which the Commission may act.").

[6] Request for Rehearing of American Electric Power Service Corporation at 6-10 (Jan. 17, 2023), filed in Docket No. EL22-34-000, and bearing Accession # 20230117-5236 in FERC's e-library website ("AEP Rehearing Request").

[7] *Id.* at 6-7.

[8] *Id.* at 8.

First, OCC demonstrated in its Request for Rehearing, also filed on January 17, 2023 in this case, that FERC's ruling with respect to ATSI and Duke Energy is incorrect.[9] FERC decided in the December 15 Order that while it had granted the Complaint as to Ohio Power and AEP Ohio Transmission, ATSI and Duke Energy were not similarly-situated.[10] FERC's ruling with respect to ATSI and Duke Energy is wrong because like Ohio Power and AEP Ohio Transmission, they too are required by Ohio law to participate in an RTO. The primary issue in this case is whether any of the Ohio utilities are eligible for the RTO Adder under FERC's transmission rate incentives policies. They are not. None is eligible because all are mandated by Ohio law to participate in an RTO.

FERC correctly found that Ohio Power and AEP Ohio Transmission do not qualify for the RTO Adder under FERC's incentives policy "because Order No. 679, as interpreted in *CPUC*, requires a showing of voluntary membership in a Transmission Organization, which as noted, they cannot make."[11] ATSI and Duke Energy are required by the same Ohio law to participate in an RTO. Thus, they too cannot demonstrate that they voluntarily joined PJM Interconnection, L.L.C. ("PJM").  Just as the RTO Adder cannot incent Oho Power and AEP Ohio Transmission to join an RTO because the state law already mandates that participation, it cannot incent ATSI and Duke Energy to join or participate in an RTO because they are both mandated to do so by that same law. The RTO Adder is as unjust and unreasonable in ATSI's and Duke Energy's rates as it is in Ohio Power's and AEP Ohio Transmission rates. The RTO Adder cannot encourage any of these Ohio utilities to join an RTO because they are already

---

[9] Request for Rehearing to Protect Ohioans From Unwarranted Utility Profits By Office of the Ohio Consumers' Counsel at 7-14 (January 17, 2023), filed in Docket No. EL22-34-000, and bearing Accession # 20230117-5304 in FERC's e-library website ("OCC Rehearing Request").

[10] December 15 Order at P 64.

[11] *Id.* at P 63, referencing *Cal. Pub. Util. Comm'n. v. FERC*, 879 F.3d 966, 977 (9th Cir. 2018) ("*CPUC*").

required to do so by state law. Thus, the RTO Adder results in unjust and unreasonable rates for any Ohio consumer and any Ohio utility providing transmission service in the state.

FERC correctly determined for Ohio Power and AEP Ohio Transmission that the legality of the adder is unrelated to the determination of a "utility's base ROE and financial integrity, credit ratings, and ability to attract investment."[12] That is true regardless of whether the base ROEs for those utilities were set by settlement or by litigated rates. With respect to ATSI and Duke Energy, FERC expressed concern that "[w]e do not know the precise trade-offs and concessions made by parties to those proceedings during the settlement process and the terms to which and conditions to which those parties would have agreed with respect to Ohio transmission assets had the Commission policy on RTO Adders been different."[13] As OCC demonstrates in its Rehearing Request, those concessions are more likely to have been made by consumers given that FERC's policy at that time was to grant the RTO Adder to any utility participating in an RTO that requested the Adder without considering the voluntariness of their actions.[14] As FERC correctly found for Ohio Power and AEP Ohio Transmission, it does not matter what the base ROE included in rates is because inclusion of the RTO Adder in the rates of any utility mandated by state law to join an RTO can have no effect on the utility's behavior. Thus these charges to consumers are unjust and unreasonable.

Second, AEP misleads FERC in claiming that Ohio Power and AEP Ohio Transmission are similarly-situated to ATSI and Duke Energy because they too were authorized to recover the RTO Adder as part of those comprehensive rate settlements.[15] Although FERC did set Ohio

---

[12] *Id.* at P 77, referencing *The Dayton Power & Light Co.*, 176 FERC ¶ 61,025 at P 29 (2021) ("*Dayton*"); *order on reh'g*, 178 FERC ¶ 61,102 (2022) ("*Dayton Rehearing*") .

[13] December 15 Order at P 64.

[14] OCC Rehearing Request at 11.

[15] AEP Rehearing Request at 8.

Power's and AEP Ohio Transmission's requests to implement formula transmission rates for hearing and settlement procedures, it explicitly accepted the RTO Adder for both and explicitly excluded the Adder from the issues set for hearing/settlement procedures.[16] AEP's argument that Ohio Power and AEP Ohio Transmission might have negotiated higher base ROEs if they had not been granted the Adder[17] makes no sense. If anything, it is the customers that were disadvantaged in the negotiations because FERC already granted both companies the RTO Adder. Oho Power's and AEP Ohio Transmission's Ohio customers had no leverage to extract a lower base ROE in exchange for the RTO Adder given that FERC had already approved the RTO Adder in the order setting the other issues for hearing/settlement procedures.  Nor does AEP's argument that the 2018 rate settlements likewise rolled together the base ROE and RTO Adder, making them indistinguishable, have any merit.[18] In those settlements, as in the initial formula rate proceedings, FERC had already authorized the RTO Adder. Customers at that time had no leverage to negotiate for a lower ROE in exchange for the inclusion of the RTO Adder.

To the extent any utility in Ohio is allowed to include the RTO Adder in rates, it would be receiving an incentive to comply with state law. FERC's decision to leave the RTO Adder in the rates charged by ATSI and Duke to their Ohio consumers thus represents "a bonus for good behavior." But, as FERC stated in Order No. 679" "[i]t is true that our reforms adopted in the

---

[16] *Am. Elec. Power Serv. Corp.*, 124 FERC ¶ 61,306 at P 22 (2008) ("we are granting the request for the 50 basis point adder for continued participation in an RTO"); *see also,* AEP, 124 FERC ¶ 61,306 at P (30) ("Granting up to 50 basis points of incentive ROE does not remove any other issue pertaining to the ROE from consideration during the hearing and settlement judge procedures, . . ."); *AEP Appalachian Transmission Co., et al.*, 130 FERC ¶ 61,075 at P 21 (2010) ("[w]e find that AEP's proposal to include a 50 basis point adder to each subsidiaries base ROEs for participation in PJM and SPP is just and reasonable and not unduly discriminatory."), and P 19 ("Except for the issues discussed below, all other issues raised in the proceeding, including but not limited to formula rates, formula rate protocols, ROE, capital structure, plant balances, development and start-up costs, depreciation rates, and costs associated with the new subsidiaries, are set for hearing.").

[17] AEP Rehearing Request at 9.

[18] *Id.*  at 8.

Final Rule provide 'incentives' to construct new transmission, but they do not constitute an 'incentive' in the sense of a 'bonus' for good behavior."[19] The Ninth Circuit essentially agreed with FERC's ruling in Order No. 679 in finding that "[t]he policy prohibits FERC from rewarding utilities for past conduct or for conduct which they are otherwise obligated to undertake."[20]

The process by which the RTO Adder got into any of the Ohio utilities' transmission rates is irrelevant to the critical questions. The critical questions are (a) whether the utilities were mandated to join an RTO, and (b) whether their rates include the RTO Adder. Both are true for all four of the Ohio utilities in the Complaint proceeding.

Moreover, the initial Ohio Power and AEP Ohio Transmission ROE orders granting the RTO Adders, like those for ATSI and Duke Energy, predate the Ninth Circuit Court of Appeals' 2018 ruling in *CPUC*. In that case, the Ninth Circuit found that "FERC had a longstanding policy that incentives should only be awarded to induce future behavior," and that "there must be a connection between the incentive and the conduct meant to be induced."[21] Thus, FERC correctly found that eligibility for the RTO Adder incentive "requires a showing of voluntary membership in a Transmission Organization,"[22] which none of them can make.

Finally, review of the orders accepting the Ohio Power and AEP Ohio Transmission RTO Adders indicate that no party in those proceedings protested the grant of the RTO Adder on the basis that Ohio law mandated all Ohio utilities to participate in an RTO in order to be eligible to provide transmission services in the state. There is no law mandating that FERC cannot reassess

---

[19] *Promoting Transmission Inv. Through Pricing Reform,* Order No. 679, 116 FERC ¶ 61,057 at P 26, *order on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345 (2006), *order on reh'g,* Order No. 679-B, 119 FERC ¶ 61,062 (2007).

[20] *CPUC* at 977.

[21] *Id.*

[22] December 15 Order at P 63.

the validity of a transmission incentive based on arguments made in a complaint proceeding that were not made in the underlying rate or settlement proceedings. Thus, FERC properly reassessed its prior grant of the RTO Adder for Ohio Power and AEP Ohio Transmission considering the later rulings in *CPUC*. That opinion imposed a voluntariness requirement for eligibility for the Adder. FERC should have done so for ATSI and Duke Energy as well, given that FERC also approved the RTO Adders in their settlements prior to the Ninth Circuit's opinion in *CPUC*.

**B.    The Order Is Consistent with FERC's Rules Regarding Single Issue Ratemaking.**

FERC has often authorized single issue rate filings. For example, in Order No. 679, FERC authorized single issue rate filings for transmission rate incentives.[23] FERC also authorized single issue rate filings to flow through to customers the lower federal corporate income tax rate passed in the Tax Cuts and Jobs Act.[24] Indeed, there are any number of instances in which FERC has authorized the submission of single issue rate filings by utilities, including single issue rate filings by AEP.[25] AEP is concerned that a single issue complaint could present a skewed view of the overall cost recovery being experienced by a utility. This is countered by Ohio Power's and AEP Ohio Transmission's rights under Federal Power Act ("FPA") section

---

[23] Order No. 679 at P 191.

[24] *AEP Appalachian Transmission Co., Inc., et al.*, 162 FERC ¶ 61,225 at P 5 and n.10 (2018) ("AEP Show Cause Order") (utilities with formula rates); *Alcoa Power Generating Inc.—Long Sault Division, et al.*, 162 FERC ¶ 61,224 at P 4 and n.6 (2018) (utilities with stated rates); *see also Indicated RTO Transmission Owners*, 161 FERC ¶ 61,018, at PP 13-14 (2017); and *Rate Changes Relating to the Federal Corporate Income Tax Rate for Public Utilities*, Order No. 475, FERC Stats. & Regs. ¶ 30,752, *order on reh'g*, 41 FERC ¶ 61,029 (1987) (allowing public utilities to use a voluntary, abbreviated rate filing procedure to reduce their rates to reflect a reduction in the federal corporate income tax rate on a single-issue basis) collectively referred to as "Show Cause Orders").

[25] *See, e.g., American Electric Power Service Corp.,* Docket No. ER22-600-000, Letter Order dated June 29, 2022, (accepting a single issue rate filing to change Attachment H-14 of the PJM Tariff, revisions to the formula rate to update the Post-employment Benefits Other than Pensions expense); and *American Electric Power Service Corp.*, Docket No. ER23-852-000 (January 17, 2023) (single issue depreciation rate filing on behalf of, *inter alia*, Ohio Power and AEP Ohio Transmission).

205 to seek increases in their authorized level of return if they believe they are under-recovering their costs.

Concerns that a single issue rate filing might lead to cost under-recovery also has no applicability in the context of the formula transmission rates used by Ohio Power and AEP Ohio Transmission. Their transmission rate formulas allow them to true up rates to actual costs each year, with the exceptions of ROE and depreciation. Those are stated values that cannot be changed without making a FPA Section 205 filing. Thus, the formulas and the true-ups ensure that Ohio Power and AEP Ohio Transmission are timely recovering each year any deviations between estimated and actual costs for almost all elements of their cost of service requirements. In fact, Ohio Power and AEP Ohio Transmission routinely submit single issue rate filings to allow recovery of changes in Post-Employment Benefits Other Than Pensions and changes in depreciation rates.[26]

There is no merit to AEP's implications[27] that allowing a single issue rate filing to review the RTO Adders of Ohio Power and AEP Ohio Transmission could result in the under-recovering their overall cost-of-service because of changes in other components of the cost of service. The RTO Adder is not an actual cost incurred by either utility. It is just a claimed extra profit incentive (at consumer expense) to take certain action – an incentive that is not needed because of the mandates of Ohio law.  Therefore, there is no bar to FERC reversing its position on the grant of the RTO Adder without considering other elements of the cost of service.

Nor does FERC policy prohibit single issue rate filings in complaints filed by customers. FERC has on many occasions set a complaint challenging only the ROE in a transmission

---

[26] *Id.*

[27] AEP Rehearing Request at 11.

formula rate for hearing and/or settlement procedures.[28] FERC also has set for hearing single-issue complaints challenging the ROE in wholesale power supply contracts.[29] With one exception, in each case the complainants challenged only the ROE component of a formula rate. The one exception is the Midcontinent Independent System Operator ("MISO") case in which two additional components of the rate were challenged. However, both of those additional issues were integrally related to the overall cost of equity. FERC set each of these cases for hearing and/or settlement procedures notwithstanding the single issue nature of the complaint.

    C.    **Under FPA Section 219, The Grant of an RTO Adder is Subject to the Requirement That Consumer Rates Be Just and Reasonable, and Both FERC Order No. 679 and Judicial Precedent Impose a Voluntariness Requirement for the Adder to Be Just and Reasonable.**

AEP's argues that "the plain text of FPA Section 219 does not allow the FERC to impose a voluntariness requirement for recovering the RTO Adder."[30] AEP is incorrect and is making an impermissible collateral attack on *Dayton*.[31]

In quoting FPA Section 219 in support of its argument that the statute contains no voluntariness requirement, AEP truncates the quote. AEP quotes the statute as follows: "the Commission *shall* . . . provide for incentives to each transmitting utility or electric utility that

---

[28] *See, e.g., North Carolina Electric Membership Corp., et al. v. Duke Energy Carolinas, LLC* (Docket No. EL16-29-000) and *North Carolina Electric Membership Corp., et al. v. Duke Energy Progress, LLC* (Docket No. EL16-30-000), 155 FERC ¶ 61,048 (2016) (setting for hearing a single issue challenge to the ROE in transmission formula rates); *Ass'n of Businesses Advocating Tariff Equity et al. v. Midcontinent Independent System Operator, Inc, et al.*, (Docket Nos. EL14-12-000 et al.), 149 FERC ¶ 61,049 (2014) (setting for hearing a challenge to the ROE and capital structure of the MISO transmission owners under transmission formula rates; *Martha Coakley, Massachusetts Attorney General, et al. v. Bangor Hydro Electric Co, et al*., (Docket Nos. EL11-66-000 et al.), 139 FERC ¶ 61,090 (2012) (setting for hearing a challenge to the ROE in the transmission formula rates of the New England Transmission Owners).

[29] *See, e.g., Golden Spread Elec. Coop., Inc. v. Southwestern Pub. Serv. Co*., 150 FERC ¶ 61,052 (2015).

[30] AEP Rehearing Request at 12.

[31] *Dayton,* 172 FERC ¶ 61,025 at P 26, *Dayton Rehearing,* 178 FERC ¶ 61,102 at P 14; *see also NSTAR Elec. Co. v. ISO New England, Inc.*, 120 FERC 61,261 at P 33 (2007) ("[c]ollateral attaches on final orders and relitigation of applicable precedent, especially by parties that were active in the earlier cases, thwart the finality and repose that are essential to administrative efficiency and are strongly discouraged.) AEP was a participant in *Dayton*.

joins a Transmission Organization."[32] However, the full quote states: "[i]n the rule issued under this section, the Commission shall, *to the extent within its jurisdiction,* provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization."[33] Thus, in determining whether an entity is eligible for the FPA Section 219(c) RTO participation incentive, FERC must determine whether the award of the incentive is within its jurisdiction. It must, of necessity, consider whether the award of the RTO Adder is consistent with its authority to allow incentives, including case law determining when and under what conditions rate incentives can be considered just and reasonable. In fact, FPA Section 219(d) requires that "[a]ll rates approved under the rules adopted pursuant to this section, including any revisions to the rules, are subject to the requirements of sections 824d and 824e of this title that all rates, charges, terms, and conditions be just and reasonable and not unduly discriminatory or preferential."[34]

The courts have stated that FERC can only authorize rate incentives to the extent those incentives are needed to encourage specific behavior. For example, in *City of Detroit, Michigan v. Federal Power Commission,*[35] the Court stated that "[i]f the Commission contemplates increasing rates for the purpose of encouraging exploration and development, or the ownership by pipeline companies of their own producing facilities, it must see to it that the increase is in fact needed, and is no more than is needed, for the purpose."[36]

Here, there is no incentive that could be paid to an Ohio transmission utility that could encourage behavior already mandated by state law. Thus, providing an incentive to participate in

---

[32] AEP Rehearing Request at 13, quoting 16 U.S.C. § 824s(c) (emphasis added by AEP).

[33] 16 U.S.C. § 824s(c) (emphasis added by OCC).

[34] 16 U.S.C. § 824s(d).

[35] *City of Detroit, Michigan v. Federal Power Comm'n,* 230 F.2d 810 (D.C. Cir. 1955) ("*City of Detroit*").

[36] *Id.* at 817.

an RTO when state law already mandates such participation would not comport with the requirement that the rate increase be no more than is needed to accomplish the objective of encouraging such participation. Such an incentive would be more than what is necessary to accomplish the desired objective of RTO participation.

As noted in section II. A above, both Order No. 679 and Ninth Circuit Court's opinion in *CPUC* recognize the long-held principle applied in *City of Detroit*. Congress passed FPA Section 219 presumably understanding the limits of FERC's jurisdictional authority, and did not require that the incentive be awarded regardless of whether it was within FERC's jurisdiction or regardless of whether it was just and reasonable. As FERC stated in Order No. 679, the Order No. 679 transmission incentives do not constitute "a 'bonus' for good behavior."[37]

Finally, nowhere in the language of FPA Section 219 does the statute require that the incentive to be provided for participation in an RTO must be an ROE adder. The statute states only that FERC should provide an incentive. FERC policy provides many incentives for joining and continuing to participate in an RTO. For example, Order No. 679 provides utilities participating in an RTO a rebuttable presumption that they have met the FPA Section 219 requirement for demonstrating that the transmission project is needed for reliability or to reduce congestion or increase access to lower cost supplies.[38] Many utilities participating in RTOs avail themselves of this rebuttable presumption when seeking requests for the Order No. 679 transmission incentives of recovery of 100% of Construction Work in Progress or investment in abandoned plant.[39]

---

[37] Order No. 679 at P 26.

[38] Order No. 679 at P 57.

[39] *See, e.g., The Dayton Power & Light Co*., 172 FERC ¶ 61,140 at PP 26, 31 (2020).

### D.    AEP's Membership in PJM Is Not Voluntary and Consumers Should Not be Charged for Unwarranted Extra AEP Profits.

AEP incorrectly argues that its participation in an RTO was voluntary, claiming that an Administrative Law Judge acknowledged the voluntariness of its participation in PJM in an Initial Decision, and that FERC's order on that Initial Decision affirmed that ruling.[40] The orders referenced by AEP involved a determination by FERC in Docket No. ER03-262-000 *et al.* as to whether FERC may act under section 205(a) of the Public Utility Regulatory Policies Act of 1978 (PURPA)[41] and permit the AEP East Operating Companies, which included Ohio Power Company, to integrate into PJM over the objection of the Commonwealth of Virginia. PURPA Section 205 contains provisions that allows FERC to grant voluntary coordination among regions if necessary to achieve certain goals. That case never considered the question of whether AEP's decision to join PJM was voluntary for purposes of determining whether Ohio Power and AEP Ohio Transmission qualified for the FPA section 219(c) RTO participation incentive.

Moreover, it appears that neither FERC nor any party in the PURPA Section 205 investigation in Docket No. ER03-262 raised the point that Ohio law mandated that AEP join an RTO.[42] Thus, FERC never considered the question of the "voluntariness" of AEP's decision to join an RTO considering the Ohio law mandating that participation. That state law, passed by the Ohio General Assembly in 1999, long predated the passage of FPA section 219 in 2005.

Therefore, FERC's decision that AEP voluntarily joined PJM for purposes of determining FERC's authority under PURPA Section 205 should be given no weight in this proceeding. That

---

[40] AEP Request for Rehearing at 16-17.

[41] 16 U.S.C. § 824a-1(a).

[42] AEP cites to the testimony of the Virginia State Corporation Commission witness in that proceeding in support of an implication that FERC considered the Ohio law in that docket. AEP Rehearing Request at 16, n.79. However, that testimony only references the law in passing, and does not raise the argument that AEP's participation in PJM was not voluntary because of the Ohio law.

case, like the settlement proceedings authorizing Ohio Power, AEP Ohio Transmission, ATSI and Duke Energy, predate the Ninth Circuit's 2018 opinion imposing a voluntariness requirement for eligibility for the RTO Adder under FPA Section 219. There is no law stating that FERC cannot reconsider an issue raised in a different proceeding, in a different context, under different applicable law. FERC correctly declined to address this argument as a collateral attack on its order in *Dayton*.[43]

### E.    AEP's Argument That the Ohio Statute Is Pre-empted Is Both a Collateral Attack on Dayton and Incorrect.

AEP argues that FERC erred in declining to consider its argument that the Ohio law is pre-empted by federal law and thus should be given no weight on considering the application of the RTO Adder.[44] As FERC correctly recognized in the December 15 Order, the constitutionality of the Ohio law is not an appropriate issue for FERC determination.[45] AEP's argument is also an impermissible collateral attack on *Dayton*, in which FERC similarly declined to rule on the constitutionality of the Ohio law.[46]

More importantly, AEP is incorrect in arguing that the Ohio statute is both field and conflict pre-empted. The Ohio statute neither intrudes on a field where the state has no authority nor conflicts with the requirements of federal law or policy. It is thus not pre-empted.

Field preemption occurs where "Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law."[47] But

---

[43] December 15 Order, n.127.

[44] AEP Rehearing Request at 17-21.

[45] December 15 Order at P 84.

[46] *See, e.g., Dayton Rehearing,* 178 FERC ¶ 61,102 at PP 31-32; *see also NSTAR Elec. Co.,* 120 FERC ¶ 61,261 at P 33; and *ISO New England, Inc.,* 138 FERC ¶ 61,238 at P 17 (2012) ("[A] collateral attack is an attack on a judgment in a proceeding other than a direct appeal and is generally prohibited.")

[47] *Hughes v. Talen Energy Mktg. LLC,* 578 U.S. 150, 162 (2016).

contrary to AEP, Congress has not legislated so comprehensively regarding electric transmission that there is no room for the states to supplement federal law. For instance, with a limited exception only recently enacted into law,[48] states have plenary control over transmission siting. This includes projects included in federally approved planning processes.

In that regard, the United States Court of Appeals for the Eighth Circuit upheld a Minnesota statute granting a state right of first refusal to incumbent electric transmission owners. In this case the Court rejected LSP Transmission Holdings, LLC's argument that the state law interfered with federal authority over interstate commerce and discriminated against out-of-state entities.[49] And the United States Supreme Court has acknowledged that state regulation of rates for unbundled retail transmission is consistent with the FPA, notwithstanding that the transmission so regulated is in interstate commerce.[50]

There also is no conflict pre-emption here because there is no conflict between the Ohio law and Federal law. In FPA section 219, Congress clearly intended to encourage utilities to join RTOs. The Ohio Statute was enacted in 1999, as part of legislation authorizing competition in the sale of electric generation to retail customers in Ohio. Ohio chose to protect its retail customers from incumbents' ability to leverage control to transmission assets to favor their own generation assets by requiring those incumbents to transfer control (though not ownership) of transmission assets to a qualifying transmission entity.[51]

---

[48] *See, e.g.*, 16 U.S.C. § 824p(b) (providing for FERC authority in limited circumstances to grant electric utilities a certificate for the siting of transmission facilities).

[49] *LSP Transmission Holdings, LLC v. Sieben*, 954 F.3d 1018 (8th Cir. 2020).

[50] *New York v. FERC*, 535 U.S. 1, 25-28 (2002).

[51] *See, e.g.,* Oh. Rev. Code § 4928.12(B) (requiring transmission utilities in Ohio to participate in a "qualifying transmission entity," which the law defines as having all of the same characteristics as an RTO).

Far from conflicting with federal law or policy, Ohio Rev. Code § 4928.12, facilitates the implementation of federal policy as articulated in Order No. 2000.[52] It does so by requiring that Ohio transmission providers separate control of transmission and generation, reduce rate pancaking, and ensure that control of transmission facilities cannot be exercised by transmission users. Indeed, many federal statutes and many of FERC's regulations all seek to encourage utilities to join RTOs for these same reasons. There simply is no conflict.

Nor is there any merit in AEP's argument that the Ohio law allows Ohio to make its own rate determinations.[53] The Ohio law does not make any determinations regarding the rates for transmission service in the state.

Indeed, Ohio passes through the FERC authorized transmission rates. That is precisely why OCC had to file its complaint with FERC. The Ohio law simply states that in order to provide transmission services in the state of Ohio, utilities must be a member of a transmission organization that satisfies all of the requirements for being a FERC-authorized RTO. That objective is consistent with FERC policy.

### F.    FERC Properly Found That Ohio Power and AEP Ohio Transmission Are Named Respondents.

AEP incorrectly argues that OCC never identified the affected AEP Ohio affiliates in the Complaint.[54] AEP stated that:

> [f]urther, the Complaint stated that it included the monopoly affiliates of AEPSC. As the Complaint admits, there are several AEP affiliates. Thus, a vague reference to the "monopoly affiliates" fails to "identify" those affiliates–let alone "clearly."[55]

---

[52] *Regional Transmission Organizations*, Order No. 2000, 89 FERC ¶ 61,285 (1999), *order on reh'g*, Order No. 2000-A, 90 FERC ¶ 61,201 (2000), *aff'd sub nom. Pub. Util. Dist. No. 1 v. FERC*, 272 F.3d 607 (D.C. Cir. 2001).

[53] AEP Rehearing Request at 20.

[54] AEP Rehearing Request at 23.

[55] *Id.*

This statement is wrong. OCC explicitly named Ohio Power and AEP Ohio Transmission as the affected Ohio affiliates.

The first sentence in the Complaint states: "Ohio Transmission Owners (including the monopoly affiliates of American Electric Power Service Corporation, Duke Energy Ohio and FirstEnergy Corporation) are required by Ohio law to belong to a federally-approved regional transmission organization ("RTO")."[56] The Complaint also states on the next page that: "OCC asks FERC to find that AEP's, ATSI's and Duke's wholesale transmission rates in Ohio are each excessive, and thus unjust and unreasonable. That is because they allow the RTO Participation Adder (extra profits charge) to be collected from consumers."[57]

The Complaint also states that:

> AEP, ATSI and Duke all directly, or indirectly through their affiliates, provide transmission service in Ohio. AEP serves Ohio consumers through its AEP Ohio affiliates. Those include Ohio Power Company (including Columbus Southern Power Company) and AEP Ohio Transmission Company.[58]

In other words, OCC's Complaint *explicitly* identifies the entities to be directed to lower their rates to Ohio consumers, *i.e.*, the affiliates of AEPSC that provide transmission services to Ohio consumers. These named affiliates of AEP in Ohio explicitly included Ohio Power Company, a member of the AEP East Operating Companies and an affiliate of AEPSC, and AEP Ohio Transmission Company, a member of AEP Transmission Company, and an affiliate of AEPSC.

---

[56] Complaint at 1.

[57] Complaint at 2.

[58] *Id.* at 10.

The Complaint even provides the FERC Docket Numbers and cites to the FERC orders in which each of the named AEPSC affiliates received authorization to charge the RTO Participation Adder in their transmission rates. The Complaint states that: "FERC authorized AEP affiliates to include the 50 basis point RTO Participation Adder in their transmission formula rates in Docket Nos. ER08-1329-000 *et al.* and ER10-355-000 *et al.*"[59] The footnote to that sentence provides the case cites. The caption of the order authorizing Ohio Power Company to recover the RTO Participation Adder is interestingly styled as: American Electric Power Service Corporation.[60]

The AEP Ohio transmission affiliates are members of PJM, and their formula transmission rates are posted on PJM's website. PJM posts these tariff rates under the heading "American Electric Power Service Corporation."[61] Additionally, AEPSC regularly files rate changes on behalf of its Ohio affiliates, including the AEP East Operating Companies, Ohio Power Company and AEP Ohio Transmission Company.[62] In fact, AEPSC is one of several named PJM Transmission Owners filing a Petition for Review from FERC's orders in Docket No. ER20-2308-000 in the United States Court of Appeals for the District of Columbia in Case No. 21-1246 on November 26, 2021.[63] AEPSC is listed as the first named petitioner for the PJM

---

[59] *Id.*

[60] *Id.* at n.22, citing *American Electric Power Service Co.*, 124 FERC ¶ 61,306 at P 22 and *AEP Appalachian Transmission Co., et al.,* 130 FERC ¶ 61,075 at P 21.

[61] This posting is available at https://www.pjm.com/markets-and-operations/billing-settlements-and-credit/formula-rates.

[62] *See, e.g., American Electric Power Service Corp.,* Docket No. ER22-1195-000, revisions to Attachments H-14 and H-20 of the PJM Tariff, filed by AEPSC on behalf of certain named affiliates, including Ohio Power and AEP Ohio Transmission; *American Electric Power Service Corp.,* Docket No. ER22-600-000, revisions to Attachment H-14 of the PJM Tariff, revisions to the formula rate to update the Post-employment Benefits Other than Pensions expense, filed on behalf of certain affiliates, including Ohio Power and AEP Ohio Transmission.

[63] This filing is posted on FERC's electronic library website as Accession No. 20211206-0008 in Docket No. ER20-2308-000.

Transmission Owners. However, there is no indication that AEPSC is participating on behalf of its affiliates, Ohio Power Company, AEP East Operating Companies, or AEP Ohio Transmission Company.

This pleading demonstrates that AEP believes it has authority to proceed, on behalf of its affiliates in PJM, in filing a Petition for Review even though the caption of that Petition for Review does not separately name any affiliate on whose behalf it is proceeding. Similarly, AEP's standing in the case can only be related to the rights of its unnamed affiliates in PJM to protect their transmission rates. AEP does not explain how it can be the right entity to file to change rates for the Ohio transmission companies, but the wrong entity to defend those same rates.

Moreover, FERC's website contains guidance for complainants with respect to service of complaints. That website lists service for AEPSC as follows: "American Electric Power Service Corporation for its operating companies of AEP Texas Inc., Appalachian Power Company, Indiana Michigan Power Company, Kentucky Power Company, Kingsport Power Company, Ohio Power Company, Public Service Company of Oklahoma, Southwestern Electric Power Company, Wheeling Power Company and any affiliate of American Electric Power Company, Inc."[64] There is no separate listing for Ohio Power, AEP East Operating Companies, AEP Transmission or AEP Ohio Transmission.

The people to be served are the same for "AEPSC" and "American Electric Power Service Corporation for its operating companies of AEP Texas Inc., Appalachian Power Company, Indiana Michigan Power Company, Kentucky Power Company, Kingsport Power Company, Ohio Power Company, Public Service Company of Oklahoma, Southwestern Electric Power Company, Wheeling Power Company and any affiliate of American Electric Power

---

[64] This posting is available at https://www.ferc.gov/industries-data/resources/corporate-officials.

Company, Inc." These are the same people named for service in the Complaint as required by Rule 206(b) and on whom OCC served the Complaint: John C. Crespo, Deputy General Counsel for AEPSC; Stacey L. Burbure, Senior Counsel for AEPSC; Jessica A. Cano, Senior Counsel for AEPSC; and Christopher K. Duffy, Regulatory Case Manager for AEPSC.[65]

Finally, FERC has previously found that the filing of a complaint against the affiliate that makes the rate filings on behalf of its utility affiliates is appropriate even though the caption does not name the individual public utility affiliates so long as the text in the complaint makes clear the identity of those affiliates.[66] In *Middle South*, FERC found that dismissal of a complaint because it named the holding company, but not the public utility affiliates in the caption, inappropriately would place form over substance. FERC stated:

> MSS urges that a complaint may not, under the terms of section 1.6 of the Rules of Practice and Procedure, be directed against a holding company such as Middle South Utilities. Although Arkansas named Middle South Utilities as the defendant, it is clear from the language and substance of the complaint that Arkansas is seeking relief from the coordinated actions of the operating companies, which are "public utilities" within the meaning of section 1.6. To dismiss the complaint on this ground would elevate form over substance, particularly considering the facts that the operating companies are subsidiaries of MSU and the MSS has filed the challenged amendment on behalf of each of the operating companies. Accordingly, MSS's request for dismissal will be denied. Moreover, in light of MSS's response to the substance of the complaint on behalf of its affiliates, the Commission will treat MSS as their representative in these proceedings.[67]

It is obvious that AEP, Ohio Power and AEP Ohio Transmission all received service of the Complaint and understood exactly to whom the Complaint was directed. Given the way in which AEP identifies itself in filings on behalf of affiliates and in which its affiliates with rate

---

[65] *Id.; see also* Complaint at 18.

[66] *Middle South Services, Inc.*, 15 FERC ¶ 61,302 (1981) ("*Middle South*").

[67] *Middle South*, 15 FERC ¶ 61,302 at 61,661.

authority are identified on the PJM website – presumably with the knowledge and consent of the

AEP East Operating Companies, including Ohio Power Company and AEP Ohio Transmission –

there is no merit to AEP's claims that Ohio Power and AEP Ohio Transmission were not

properly named in the Complaint or that the Complaint did not provide adequate notice to the

identified AEP Ohio transmission affiliates.

## III.     CONCLUSION

FERC should reject AEP's Request for Rehearing. FERC should affirm its grant of OCC's Complaint as to Ohio Power and AEP Ohio Transmission. And FERC should continue to direct those utilities to remove the RTO Adder from their transmission rates charged to Ohio consumers and provide refunds to consumers back to the date of OCC's filing of the Complaint on February 24, 2022.

Respectfully submitted,

Bruce Weston
Ohio Consumers' Counsel

*/s/ Larry Sauer*
Larry Sauer
Deputy Consumers' Counsel

**Office of the Ohio Consumers' Counsel**
65 East State Street, Suite 700
Columbus, Ohio 43215
(614) 466-1312 – Telephone
(614) 466-9475 – Facsimile
E-mail: larry.sauer@occ.ohio.gov

Denise C. Goulet
McCarter & English, LLP
1301 K Street, N.W., Suite 1000 West
Washington, D.C. 20005
(202) 753-3400 (Voice)
(202) 354-4652 (Fax)
E-mail: dgoulet@mccarter.com

Special Counsel for the Office of Attorney General of Ohio on Behalf of the Office of the Ohio Consumers' Counsel

February 1, 2023

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have on this date served a copy of the foregoing document via electronic mail upon all parties of record on the Commission's official service list in this proceeding.

Dated at Washington, D.C., this 1st day of February, 2023.

By:    *<u>/s/ Denise C. Goulet</u>*

Denise C. Goulet
McCarter & English, LLP
1301 K Street, N.W., Suite 1000 West
Washington, D.C. 20005
(202) 753-3400 (Voice)
(202) 354-4652 (Fax)
E-mail: dgoulet@mccarter.com

182 FERC ¶ 62,095
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Office of the Ohio Consumers' Counsel                    Docket No. EL22-34-001
                    v.
American Electric Power Service Corporation,
American Transmission Systems, Inc., and
Duke Energy Ohio, LLC

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND
PROVIDING FOR FURTHER CONSIDERATION

(February 17, 2023)

Rehearing has been timely requested of the Commission's order issued on
December 15, 2022, in this proceeding.  *Office of the Ohio Consumers' Counsel v.
American Elec. Power Serv. Corp.,* 181 FERC ¶ 61,214 (2022).  In the absence of
Commission action on a request for rehearing within 30 days from the date it is filed,
the request for rehearing may be deemed to have been denied.  16 U.S.C. § 825*l*(a);
18 C.F.R. § 385.713 (2021); *Allegheny Def. Project v. FERC*, 964 F.3d 1
(D.C. Cir. 2020) (en banc).

As provided in 16 U.S.C. § 825*l*(a), the requests for rehearing of the above-cited
order filed in this proceeding will be addressed in a future order to be issued consistent
with the requirements of such section.  As also provided in 16 U.S.C. § 825*l*(a), the
Commission may modify or set aside its above-cited order, in whole or in part, in such
manner as it shall deem proper.

Kimberly D. Bose,
Secretary.

183 FERC ¶ 61,034
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Willie L. Phillips, Acting Chairman;
                        James P. Danly, Allison Clements,
                        and Mark C. Christie.

Office of the Ohio Consumers' Counsel                    Docket No.  EL22-34-001
                        v.
American Electric Power Service Corporation,
American Transmission Systems, Inc., and
Duke Energy Ohio, LLC

ORDER ADDRESSING ARGUMENTS RAISED ON REHEARING

(Issued April 20, 2023)

1.      On February 24, 2022, pursuant to sections 206 and 306 of the Federal Power Act
(FPA)[1] and Rule 206 of the Commission's Rules of Practice and Procedure,[2] the
Office of the Ohio Consumers' Counsel (OCC) filed a complaint (Complaint) against
American Electric Power Service Corporation (AEPSC),[3] American Transmission
Systems, Inc. (ATSI), and Duke Energy Ohio (Duke) (together, Ohio TOs) alleging that
they are ineligible for a 50 basis point adder to the authorized return on equity (ROE) for
participation in a Transmission Organization (RTO Adder), provided for under Order
No. 679,[4] because their participation is not voluntary under Ohio law.  On December 15,
2022, the Commission granted the Complaint in part and denied it in part.[5]  On January
17, 2022, OCC and AEPSC separately sought rehearing of the RTO Adder Order.

---

[1] 16 U.S.C. §§ 824e, 825e.

[2] 18 C.F.R. § 385.206 (2022).

[3] The Complaint was filed against AEPSC's affiliates, Ohio Power Company
(Ohio Power) and AEP Ohio Transmission Company Inc. (AEP Ohio Transmission).
These companies are all subsidiaries of American Electric Power Company, Inc. (AEP).

[4] *Promoting Transmission Inv. through Pricing Reform*, Order No. 679, 116 FERC
¶ 61,057, *order on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345 (2006), *order on reh'g*,
119 FERC ¶ 61,062 (2007).

[5] *Office of the Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp.*,

2.        Pursuant to *Allegheny Defense Project v. FERC*,[6] the rehearing requests filed in this proceeding may be deemed denied by operation of law.  However, as permitted by section 313(a) of the FPA,[7] we are modifying the discussion in the RTO Adder Order and continue to reach the same result in this proceeding, as discussed below.[8]

# I.        Background

## A.        The RTO Adder

3.        In 2005, Congress amended the FPA to add a new section 219.[9]  Section 219(a) directed the Commission to promulgate a rule providing incentive-based rates for electric transmission for the purpose of benefitting consumers by ensuring reliability and reducing the cost of delivered power by reducing transmission congestion.  In relevant part, section 219(c) states that the Commission shall, to the extent within its jurisdiction, provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization.[10]  On July 20, 2006, the Commission issued Order No. 679, adding section 35.35 to the Commission's regulations, which includes, in relevant part, an incentive for utilities that "join and/or continue to be a member of an ISO, RTO, or other Commission-approved Transmission Organization."[11]  The Commission declined to make a finding on the appropriate size or duration of the incentive, but noted that the basis for providing the incentive to existing members "is a recognition of the benefits that flow from membership in such organizations and the fact [that] continuing membership is

---

181 FERC ¶ 61,214 (2022) (RTO Adder Order).

[6] 964 F.3d 1 (D.C. Cir. 2020) (en banc).

[7] 16 U.S.C. § 825*l*(a) ("Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b), the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.").

[8] *Allegheny Def. Project*, 964 F.3d at 16-17.  The Commission is not changing the outcome of the RTO Adder Order.  *See Smith Lake Improvement & Stakeholders Ass'n v. FERC*, 809 F.3d 55, 56-57 (D.C. Cir. 2015).

[9] Energy Policy Act of 2005, Pub. L. No. 109-58, § 1241.

[10] 16 U.S.C. § 824s(c).

[11] Order No. 679, 116 FERC ¶ 61,057, *order on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345, *order on reh'g*, 119 FERC ¶ 61,062.

Document Accession #: 20230420-3096     Filed Date: 04/20/2023

generally voluntary."[12]   The Commission also declined to create a generic ROE incentive for such membership, and instead decided that it would consider the appropriate ROE incentive when public utilities requested it on a case-by-case basis.[13]

4.      In 2018, the U.S. Court of Appeals for the Ninth Circuit (Ninth Circuit) addressed Commission orders where, pursuant to section 219 and Order No. 679, the Commission summarily granted Pacific Gas & Electric Company's (PG&E) requests for an RTO Adder for its continuing membership in the California Independent System Operator (CAISO), notwithstanding California Public Utility Commission's argument that PG&E was ineligible for the incentive because California law required PG&E to participate in CAISO.[14]   The Ninth Circuit in *CPUC* recognized that under Order No. 679, the presumption that a utility that has joined, and has ongoing membership in, a Transmission Organization is eligible for an RTO Adder may be rebutted by evidence that such membership is not voluntary.[15]   Relying on the Commission's description of incentive adders as "an *inducement* for utilities to join, and remain in, Transmission Organizations,"[16] the Ninth Circuit concluded that, since an incentive cannot induce behavior that is already legally mandated, "the voluntariness of a utility's membership in a transmission organization is logically relevant to whether it is eligible for an adder."[17] The Ninth Circuit remanded the underlying proceedings and instructed the Commission to "inquire into PG&E's specific circumstances, i.e., whether it could unilaterally leave [CAISO] and thus whether an incentive adder could induce it to remain in [CAISO]."[18] On remand, the Commission concluded that California law does not mandate PG&E's participation in CAISO and that the RTO Adder induces PG&E to continue its membership, affirming its grant of an incentive *because* it found PG&E membership in CAISO to be voluntary.[19]

---

[12] Order No. 679, 116 FERC ¶ 61,057 at PP 327, 331.

[13] *Id.* P 327.

[14] *Cal. Pub. Util. Comm'n v. FERC*, 879 F.3d 966 (9th Cir. 2018) (*CPUC*).

[15] *Id.* at 974-75.

[16] *Id.* at 974 (citing Order No. 679-A, 117 FERC ¶ 61,345 at P 86) (emphasis in original).

[17] *Id.* at 975 (citing Order No. 679-A, 117 FERC ¶ 61,345 at P 86).

[18] *Id.* at 979.

[19] *Pac. Gas & Elec. Co.*, 168 FERC ¶ 61,038, at P 2 (2019).

5.    On August 17, 2020, in addressing Dayton Power and Light Company's (Dayton) request for certain transmission rate incentives pursuant to FPA sections 205 and 219,[20] the Commission accepted Dayton's requested RTO Adder for filing and suspended it for a five month period, subject to refund and the outcome of a paper hearing to explore whether Dayton had shown that its participation in PJM Interconnection, L.L.C. (PJM) or another Transmission Organization is voluntary, or if such participation is mandated by the Ohio Revised Code.[21]

6.    On July 15, 2021, following briefing, the Commission found that Dayton did not qualify for the RTO Adder and therefore denied Dayton's request.[22]  The Commission found that, given Ohio law, Dayton did not qualify for the RTO Adder under the Commission's current incentives policy because:  (1) Order No. 679 as interpreted in *CPUC* requires a showing of voluntary membership in such a Transmission Organization; and (2) Dayton's membership in a Transmission Organization is not voluntary because Ohio law requires it.[23]

### B.    Ohio TOs' Affiliates and the RTO Adder

7.    A number of PJM utilities provide service in Ohio and the rates for this service are set forth in the following rate zones:  (1) the Dayton Zone, which is wholly located within Ohio; (2) the AEP Zone, which spans Ohio, West Virginia, Indiana, Michigan, Kentucky, Virginia, and Tennessee; (3) the Duke Zone (DEOK), which spans Ohio and Kentucky; and (4) the ATSI Zone, which spans Ohio and Pennsylvania.[24]

8.    AEP has six public utility operating companies located in seven different states in the AEP Zone:  Appalachian Power Company, Indiana Michigan Power Company, Ohio Power, Kentucky Power Company, Wheeling Power Company, and Kingsport Power Company (collectively, AEP East Companies).  AEP also has several transmission-only

---

[20] 16 U.S.C. §§ 824d, 824s.

[21] *The Dayton Power & Light Co.*, 172 FERC ¶ 61,140, at P 22 (2020).  Under the Ohio statute, "no entity shall own or control transmission facilities as defined under federal law and located in this state on or after the starting date of competitive retail electric service unless that entity is a member of, and transfers control of those facilities to, one or more qualifying transmission entities …." Ohio Rev. Code, §§ 4928.12 (A).

[22] *The Dayton Power & Light Co.*, 176 FERC ¶ 61,025 (2021) (Dayton Order), *order on reh'g*, 178 FERC ¶ 61,102 (2022) (Dayton Rehearing Order) (collectively, Dayton Orders).

[23] Dayton Order, 176 FERC ¶ 61,025 at P 14.

[24] Ohio Commission Comments at 5-6.

entities providing transmission service in PJM in the AEP Zone:  AEP Appalachian
Transmission Company Inc., AEP Indiana Michigan Transmission Company Inc.,
AEP Ohio Transmission, Kentucky Transmission Company Inc., and AEP West Virginia
Transmission Company Inc. (collectively, AEP East Transmission Companies).
Ohio Power and AEP Ohio Transmission are the AEP companies owning and operating
transmission facilities in Ohio.

9.      The AEP East Companies and the AEP East Transmission Companies each
separately have a combined transmission rate on file as Attachments H-14 and H-20 of
the PJM Open Access Transmission Tariff (PJM Tariff), respectively.[25]  Pursuant to
section 219 and Order No. 679, the Commission separately granted the RTO Adder to the
AEP East Companies and the AEP East Transmission Companies on the condition that
the additional 50 basis points did not result in an ROE above the zone of
reasonableness.[26]

10.      Duke is a wholly-owned operating subsidiary of Duke Energy Corporation that
provides transmission service in the DEOK Zone under Attachment H-22 of the PJM
Tariff for Duke Energy Ohio, Inc. and Duke Energy Kentucky, Inc., who jointly own
transmission facilities.  In 2015, the Commission approved an uncontested settlement in
connection with Duke's move from the Midcontinent Independent System Operator, Inc.
(MISO) to PJM, the terms of which included, among other things, Duke's ROE on its
revenue requirement for transmission service which is comprised of a 10.88% base cost
of common equity and a 50 basis point RTO Adder for a total ROE of 11.38%.[27]

11.      ATSI is a wholly-owned, direct operating subsidiary of FirstEnergy Transmission,
LLC, which in turn is a wholly-owned subsidiary of FirstEnergy Corporation.  ATSI
provides transmission service in the ATSI Zone under Attachment H-21 of the PJM
Tariff.  In 2015, the Commission approved a settlement, which included, among other
things, a 10.38% ROE on ATSI's revenue requirement for transmission service,
"inclusive of any RTO Adder."[28]

---

[25] PJM Interconnection, L.L.C., Intra-PJM Tariffs, OATT Attachment H-14,
(2.0.0); *see id.* H-20 (0.0.0).

[26] *Am. Elec. Power Serv. Corp.*, 124 FERC ¶ 61,306, at P 30 (2008); *AEP
Appalachian Transmission Co.*, 130 FERC ¶ 61,075, at P 21 (2010), *order on reh'g*,
135 FERC ¶ 61,066 (2011).

[27] *Duke Energy Ohio, Inc.*, 151 FERC ¶ 61,029, at PP 10, 14 (2015).

[28] *PJM Interconnection, L.L.C.*, 152 FERC ¶ 63,020, at PP 12-13 (2015); *PJM
Interconnection, L.L.C.*, 153 FERC ¶ 61,106, at P 3 (2015); *PJM Interconnection, L.L.C.*,
Docket No. ER15-303-002 (Mar. 11, 2016) (delegated order).

Docket No. EL22-34-001                                              - 6 -

### C.     **Complaint and RTO Adder Order**

12.     In its Complaint, OCC asserted that the Commission had found that Ohio law mandates transmission owner participation in an RTO to be eligible to provide transmission service in Ohio.[29]  Thus, OCC argued that the Ohio TOs' participation in PJM or any other Transmission Organization was not voluntary, similar to how Dayton's participation was not voluntary because the Ohio statute requires it.  OCC argued that, for the reasons explained in the Dayton Orders and *CPUC*, it would be unreasonable to incent transmission owner activity that is already required by Ohio law.[30]

13.     The RTO Adder Order granted the Complaint in part and denied it in part.[31]  The Commission found that OCC had demonstrated that the rates for Ohio Power and AEP Ohio Transmission were unjust and unreasonable as the Commission specifically granted them an RTO Adder under section 219 and their continued participation in a Transmission Organization is not voluntary.[32]  By contrast, the Commission found that OCC did not meet its burden of showing the rates for Duke and ATSI were unjust and unreasonable as the Commission had not specifically granted them an RTO Adder under section 219 and their rates were instead the products of comprehensive settlements.[33]

## II.     **Requests for Rehearing**

14.     OCC argues on rehearing that the Commission erred by:  (1) failing to remove an RTO Adder from the rates of Ohio consumers served by ATSI and Duke in light of prior precedent; and (2) reaching a decision that is unduly discriminatory.[34]

15.     AEPSC argues on rehearing that the Commission erred by:  (1) granting the Complaint as to AEPSC subsidiaries Ohio Power and AEP Ohio Transmission when the Commission's rationale for denying the Complaint as to Duke and ATSI applies equally to AEPSC; (2) inappropriately conducting single issue ratemaking by failing to determine the justness and reasonableness of Ohio Power and AEP Ohio Transmission's total ROEs where those rates were agreed to in settlements; (3) rendering a decision contrary to the language in FPA section 219; (4) departing from prior precedent without justification;

---

[29] Complaint at 9.

[30] *Id.* at 9-10.

[31] Order No. 679, 116 FERC ¶ 61,057 at P 60.

[32] *Id.*

[33] *Id.*

[34] OCC Request for Rehearing at 7-17.

(5) failing to find that the Ohio statute is preempted by federal law; and (6) granting the Complaint against Ohio Power and AEP Ohio Transmission when those entities were not named as respondents.[35]

16.    On February 1, 2023, ATSI filed a motion for leave to answer and answer to OCC's request for rehearing.  On that same day, OCC filed a motion for leave to answer and answer AEPSC's request for rehearing.

## III.    Discussion

### A.    Procedural Matters

#### 1.    Answers

17.    Rule 713(d)(1) of the Commission's Rules of Practice and Procedure prohibits an answer to a request for rehearing.[36]  Accordingly, we deny ATSI's motion to answer and reject ATSI's answer to OCC's rehearing request.  We also deny OCC's motion to answer and reject OCC's answer to AEPSC's rehearing request.

#### 2.    Pleading Requirements

18.    On rehearing, AEPSC argues that the Commission violated its own rules and principles of administrative due process in granting the Complaint against Ohio Power and AEP Ohio Transmission, who were not named as respondents.[37]  AEPSC argues that the Complaint vaguely referenced AEPSC's "monopoly utilities" which did not clearly identify the relevant affiliates and failed to meet the notice requirements in the Commission's rules and the Administrative Procedure Act.[38]  AEPSC argues that OCC should have been required to amend its Complaint to cure this deficiency.[39]  AEPSC argues that the Commission erred by curing the deficiency itself without citing any evidence in the record to support its determination.[40]  Moreover, AEPSC argues that the Commission's reliance on *Middle South Services, Inc. v. Middle South Utilities, Inc.*[41] is

---

[35] AEPSC Request for Rehearing at 6-23.

[36] 18 C.F.R. § 385.713(d)(1) (2022).

[37] AEPSC Request for Rehearing at 21-23 (citing to 18 C.F.R. § 385.206(b)(1)).

[38] *Id.* at 23 (citing to 5 U.S.C. § 554(b); 18 C.F.R. § 385.206(b)(1)).

[39] *Id.* at 22.

[40] *Id.* at 22-23.

[41] *Id.* at 23 (discussing *Middle S. Servs., Inc. v. Middle S. Utils., Inc.*, 15 FERC

inadequate to excuse these defects because, in that case, the Commission only addressed the possibility of dismissing the complaint entirely, and did not address the requirement in Rule 206 for a complaint to identify the alleged violation and provide adequate notice to interested parties.[42]

19.    We are not persuaded that the Commission should have required OCC to amend its Complaint to name Ohio Power and AEP Ohio Transmission as respondents.  As explained in the RTO Adder Order, the Complaint made clear that it was directed at Ohio Power and AEP Ohio Transmission in addition to AEPSC.[43]  Contrary to AEPSC's argument that the Complaint was too vague to provide notice to these parties, we continue to find that the Complaint clearly identified Ohio Power and AEP Ohio Transmission and sufficiently put those parties on notice of the Complaint filed against them.  While the Complaint names AEPSC and its "monopoly affiliates" as respondents, it also specifically names Ohio Power and AEP Ohio Transmission, stating that "AEP, ATSI and Duke all directly, or indirectly through their affiliates, provide transmission service in Ohio [via] Ohio Power Company (including Columbus Southern Power Company) and AEP Ohio Transmission Company."[44]  Moreover, AEPSC is designated as an entity accepting service "for its operating companies of … Ohio Power Company … and any affiliate of American Electric Power Company, Inc."[45]  Under such circumstances, penalizing OCC for failing to more specifically or prominently name those affiliated companies as respondents would "elevate form over substance" given that OCC clearly identified those entities in the language and substance of the complaint.[46]  We are also not convinced by AEPSC's attempt to distinguish *Middle South* on the basis that, there, the Commission only addressed the possibility of dismissing the complaint

---

¶ 61,302 (1981) (*Middle South*)).

[42] *Id.* at 21-22 (citing 18 C.F.R. § 385.206(b)(1)).

[43] RTO Adder Order, 181 FERC ¶ 61,214 at P 29.

[44] Complaint at 1-2, 10.

[45] Federal Energy Regulatory Commission, *Corporate Officials*, https://www.ferc.gov/corporate-officials (under "Electric Matters - A").

[46] *See Middle South*, 15 FERC at 61,661 (declining to dismiss complaint against subsidiary parties when the intent to include them was "clear from the language and substance of the complaint").  Indeed, AEPSC's answer to the Complaint demonstrated that it understood the Complaint was directed to, among others, Ohio Power and AEP Ohio Transmission's rates.  AEPSC Answer at 18 ("the OCC does not and cannot meet its burden of showing that the existing rate for the AEP Ohio Companies [defined as Ohio Power and AEP Ohio Transmission] is unjust and unreasonable").

entirely, and did not address the Rule 206 standard.[47]  AEPSC's requested relief would prejudice OCC by requiring a later effective date[48] for the same insubstantial reasons that the Commission rejected in *Middle South*.  AEPSC provides no explanation as to why the reasoning in *Middle South* does not apply equally to protecting parties threatened with harm short of dismissal.  Thus, we continue to find that Ohio Power and AEP Ohio Transmission had adequate notice of the Complaint.

### B.    Substantive Matters

20.    We sustain the result of the RTO Adder Order.  We continue to find that OCC demonstrated that the Ohio Power and AEP Ohio Transmission rates were unjust and unreasonable; the Commission specifically granted them an RTO Adder under section 219, and their continued participation in a Transmission Organization is not voluntary.[49]  By contrast, OCC did not meet its burden to show the Duke and ATSI rates were unjust and unreasonable;  the Commission had not specifically granted them an RTO Adder under section 219 and their rates, inclusive of any RTO Adder, were instead parts of comprehensive settlements.[50]  As discussed in more detail below, none of the issues raised in the rehearing requests persuade us that the Commission's conclusions were in error.

### 1.    OCC

#### a.    Justness and Reasonableness

##### i.    Request for Rehearing

21.    OCC argues that the Commission erred in finding that OCC failed to demonstrate that the RTO Adder rendered ATSI's and Duke's Ohio transmission rates unjust and unreasonable.[51]  OCC maintains that ATSI's and Duke's rates are no different from those in the Dayton Orders where the Commission found the inclusion of the RTO Adder to be improper because participation in an RTO was mandatory under Ohio law.[52]  OCC also argues that allowing ATSI and Duke to retain their RTO Adders represents an

---

[47] AEPSC Request for Rehearing at 21-23.

[48] *See id.* at 23 (arguing that the Commission should "reset the effective date").

[49] Order No. 679, 116 FERC ¶ 61,057 at P 60.

[50] *Id.*

[51] OCC Request for Rehearing at 7-14.

[52] *Id.* at 7-8.

Docket No. EL22-34-001                                                           - 10 -

unexplained departure from Commission precedent[53] because the Commission in Order No. 679 stated that, "[i]t is true that our reforms adopted in the Final Rule provide 'incentives' to construct new transmission*, but they do not constitute an 'incentive' in the sense of a 'bonus' for good behavior*."[54]  OCC asserts that the Ninth Circuit in *CPUC* essentially agreed with the Commission's ruling in Order No. 679 in finding that "[t]he policy prohibits FERC from rewarding utilities for past conduct or for conduct which they are otherwise obligated to undertake."[55]

22.    OCC argues that the fact that the RTO Adder was included in ATSI and Duke's transmission rates via settlement rather than in a FERC order in a single-issue case is irrelevant.[56]  It notes that Order No. 679 contemplates the addition of RTO Adders via several mechanisms, including "(1) through a combination of a petition for declaratory order and a subsequent section 205 filing; or (2) by filing only a section 205 filing."[57] Thus, it believes, the adder can be obtained so long as the Commission approves a section 205 filing that contains it.[58]  OCC argues that "[a] settlement in a rate proceeding is still a section 205 proceeding" and, therefore, an RTO Adder obtained through that means should be treated no differently from other RTO Adders.  OCC believes that the Commission's ruling that settlements reflect a compromise of positions and thus override the fact that the RTO Adders are in the rates being charged to consumers is illogical. OCC alleges that such a ruling could have dire implications for any final rule adopted in the pending Notice of Proposed Rulemaking proceeding on transmission incentives in Docket No. RM20-10-000.[59]

---

[53] *Id.* at 9 (citing to *Williams Gas Processing – Gulf Coast Co., L.P., v. FERC*, 475 F.3d 319, 326 (D.C. Cir. 2006) (citing *Brusco Tug & Barge Co. v. NLRB*, 247 F.3d 273, 278 (D.C. Cir. 2001) ("[I]t is 'axiomatic that [agency action] must either be consistent with prior [action] or offer a reasoned basis for its departure from precedent'")).

[54] *Id.* (citing Order No. 679, 116 FERC ¶ 61,057 at P 26) (emphasis added by OCC).

[55] *Id*. (citing *CPUC*, 879 F.3d at 977).

[56] *Id.* at 10.

[57] *Id.* (quoting Order No. 679, 116 FERC ¶ 61,057 at P 76).

[58] *Id.*

[59] *Id.* at 11 (citing *Elec. Transmission Incentives Pol'y under Section 219 of the Fed. Power Act*, Notice of Proposed Rulemaking, 170 FERC ¶ 61,204 (2020); *Elec. Transmission Incentives Pol'y under Section 219 of the Fed. Power Act*, Supplemental Notice of Proposed Rulemaking, 175 FERC ¶ 61,035 (2021)).

23.    OCC contends that the inclusion of the RTO Adder in settlement rates would not have been part of the various trade-offs made during settlements because, before *CPUC*, the Commission regularly permitted inclusion of the RTO Adder.[60]  Additionally, OCC suggests that statements in the settlements indicated that the ROEs settled upon include the RTO Adder.[61]  It alleges that this was done to avoid the utilities obtaining the RTO Adder on top of the agreed-to settlement rates in a subsequent single-issue filing.[62]

24.    OCC claims that requiring a full-blown investigation of all rate issues to remove the RTO Adder where the ROE results from a settlement places an expensive burden on consumers.[63]  OCC also states that this outcome is inconsistent with other situations where the Commission permits complainants to challenge single elements in rates such as ROE or depreciation rates—even where such rates were set by a settlement in a prior proceeding—without challenging all elements of formula rates.[64]  OCC further contends that the RTO Adder Order is inconsistent with the Commission's policy of allowing single-issue rate changes for specified cost of service elements, such as depreciation rates and ROE.

25.    OCC states that the RTO Adder Order is also inconsistent with the Commission's findings in other ATSI proceedings where the Commission did previously separate the base ROE and RTO Adder when examining the settlement agreement "for purposes of determining a Risk Premium dataset."[65]  OCC states that the Commission found that it does not matter whether the base ROE is still appropriate today because the Ohio law mandates participation in an RTO, which makes the utility ineligible for the RTO Adder. OCC argues that it is arbitrary and capricious for the Commission to now ignore that precedent and rely on the comprehensive nature of settlements.  Therefore, OCC argues that, because the RTO Adder is unlawful, it should not be included in Duke's and ATSI's rates, and that the change in the law regarding RTO Adders amounts to a change in circumstances that requires reevaluation.[66]  OCC argues that a "utility should not be

---

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.* at 11-12.

[64] *Id.* at 12.

[65] *Id.* at 12 (quoting RTO Adder Order, 181 FERC ¶ 61,214 at P 65 ("We also recognize . . . that ATSI affiliates testified in other proceedings that ATSI's base ROE is 9.88%, rather than the 10.38% ROE contained in the ATSI settlement.")).

[66] *Id.* at 13.

allowed to include something unlawful in its rates through bargaining."[67]  OCC concludes that it should not matter whether the currently authorized base ROE is still just and reasonable for ATSI and Duke, just as it did not matter what the base ROE was for Dayton, Ohio Power, or AEP Ohio Transmission.[68]

### ii.    **Determination**

26.    We are not persuaded by OCC's argument that ATSI's and Duke's transmission rates are unjust and unreasonable because their settlement rates include the RTO Adder.[69] As explained in the RTO Adder Order, the Commission did not grant the utilities RTO Adders under section 219 and their rates were instead the products of comprehensive settlements.[70]

27.    While OCC is correct that an applicant may make a section 205 filing in order to recover an RTO Adder in its rates,[71] it does not follow that the Commission, in approving comprehensive settlement packages, specifically authorized RTO Adders in the section 205 proceedings that resulted in ATSI and Duke's rates.  Rather, in ATSI's and Duke's proceedings, even if the statements in the settlements indicated that the parties agreed to include an RTO Adder, as discussed below, the Commission only approved comprehensive settlement packages without specifically approving the RTO Adder under section 219.

28.    As discussed in the RTO Adder Order, we do not know the precise trade-offs and concessions made by the parties to those proceedings.[72]  Even if the settlements included an amount reflecting an RTO Adder, that does not explain how that RTO Adder came to be included in the settlement agreements and what trade-offs led to that outcome.  We also do not agree with OCC's argument that the RTO Adder should be removed because it is more likely that consumers, rather than the utility, made concessions as to the inclusion of the RTO Adder during the settlement process.[73]  We recognize that, if Duke and ATSI had sought an RTO Adder at that time (i.e., prior to *CPUC*) outside the

---

[67] *Id.* at 14.

[68] *Id.*

[69] OCC Request for Rehearing at 7-14.

[70] RTO Adder Order, 181 FERC ¶ 61,214 at P 60.

[71] *See* OCC Request for Rehearing at 11.

[72] RTO Adder Order, 181 FERC ¶ 61,214 at P 64.

[73] *Id.*

Docket No. EL22-34-001                                                    - 13 -

settlement context, an RTO Adder likely would have been granted.  However, OCC's proposal would, in effect, modify the settlement agreement by stripping out a single component of an intricate financial package that the parties to the settlement found balanced and thus agreeable.  As the Commission explained in the RTO Adder Order, OCC's preferred approach is inconsistent with the Commission's policy not to revisit individual elements of settlements unless it is shown that they make the overall rate unjust and unreasonable.[74]  Here, OCC has failed to provide any evidence to demonstrate that the overall ROEs are unjust and unreasonable, such as by showing that the overall rate is outside of the "zone of reasonableness."[75]  In the absence of such evidence, we continue to find that it would be inappropriate to unilaterally change a single aspect of those comprehensive settlements.[76]

29.     While OCC is correct that requiring an investigation of all rate issues to adjust settlement rates places a burden on the parties,[77] we find that countervailing policy considerations caution against adjusting settlement rates on a piecemeal basis.  Notably, modifying individual components of settlements would undermine the certainty provided to settling parties and would be inconsistent with the Commission's longstanding policy of promoting settlements.[78]  Further, the burden placed on OCC to demonstrate that the

---

[74] *See id.* (citing *Sithe/Indep. Power Part., L.P. v. FERC*, 165 F.3d 944, 951 (D.C. Cir. 1999) ("the Commission itself has, in the past, interpreted the § 206 burden scheme to require a customer seeking an investigation into existing rates to 'provide some basis to question the reasonableness of the overall rate level, taking into account changes in all cost components and not just [the challenged component]'")); *see also Cent. Vt. Pub. Serv. Corp.*, 123 FERC ¶ 61,128, at P 38 (2008) (noting that settlement was a product of "intricate financial balance" and trade-offs while declining to modify component of a broader settlement where it would "negate considerable efforts and understandings of settling parties").

[75] *See Emera Me.*, 854 F.3d 9, at 23 (D.C. Cir. 2017) ("The zone of reasonableness informs FERC's selection of a just and reasonable rate.").

[76] *See id.* at 24; 16 U.S.C. § 824e(b) ("[T]he burden of proof to show that any rate, charge, classification, rule, regulation, practice, or contract is unjust, unreasonable, unduly discriminatory, or preferential shall be upon the Commission or the complainant.").

[77] OCC Request for Rehearing at 11-12.

[78] *See, e.g.*, *Fla. Power & Light Co.*, 175 FERC ¶ 61,024, at P 6 (2021) ("Commission policy favors settlements, as they provide parties with certainty, reduce litigation costs, and permit parties to reach reasonable compromise in resolving difficult issues." (citations omitted)); *San Diego Gas & Elec. Co.*, 122 FERC ¶ 61,009, at P 13 (2008) ("The Commission strongly favors settlements, particularly in cases that are

overall ROE is unjust and unreasonable is no greater than the burden placed on any complainant challenging an ROE in other contexts.[79]

30.    We disagree with OCC's position that the Commission has permitted an "unlawful" component to remain in Duke and ATSI's respective rates.[80]  The Commission approved a comprehensive settlement package, with a single overall figure for Duke's and ATSI's ROEs, without authorizing an RTO Adder in the settling parties' rates at the time of settlement.[81]  In the RTO Adder Order, the Commission found only that, on the record in this proceeding, OCC has not proven that the rates established pursuant to that settlement have become unjust and unreasonable.

### b.    Undue Discrimination

### i.    Request for Rehearing

31.    OCC argues that allowing ATSI and Duke to continue including the RTO Adder in their Ohio transmission rates unduly discriminates against their Ohio customers in violation of FPA section 205.[82]  OCC argues that the two critical factors in this proceeding are whether the utilities (1) voluntarily joined an RTO and (2) have rates that

---

highly contested and complex." (citations omitted)).

[79] *See Sithe/Indep. Power Part.,* 165 F.3d at 951 (noting that a customer must demonstrate an overall rate level is unjust and unreasonable, not just single cost components); *DATC Path 15, LLC*, 177 FERC ¶ 61,115, at PP 24-25 (2021) (FPA section 206 proceeding reducing incentive ROE set by settlement from 13.5% to 10.86% in response to changed circumstances).  By contrast, as discussed in the RTO Adder Order, specific incentives that were previously granted on a single-issue basis may be revaluated.  RTO Adder Order, 181 FERC ¶ 61,214 at P 62 ("Because the Commission specifically evaluated and granted RTO Adders to Ohio Power and AEP Ohio Transmission on a single-issue basis, separate from all other ROE issues, we may reevaluate and revise those specific incentives on a single-issue basis in response to the changed circumstances raised in the Complaint.").

[80] OCC Request for Rehearing at 13-14.

[81] *See Duke Energy Ohio, Inc.*, 151 FERC ¶ 61,029, at P 14 (2015) ("The Commission's approval of the October 30, 2014 Settlement does not constitute approval of, or precedent regarding, any principle or issue in this proceeding."); *PJM Interconnection, L.L.C.*, 153 FERC ¶ 61,106, at P 3 (2015) (same).

[82] OCC Request for Rehearing at 14-17; *id.* at 15 (quoting 16 U.S.C. § 824d).

include an RTO Adder.[83]  Under the first factor, OCC states that ATSI and Duke joined an RTO involuntarily under the rubric set out in the Dayton Orders.[84]  Under the second factor, OCC states that the RTO Adder Order already found that the RTO Adder was included in the settlement rates.[85]  Moreover, OCC points out that, in the RTO Adder Order, the Commission recognized that record in Duke and ATSI settlement proceedings reflects that the parties agreed upon a 50 basis point ROE adder.[86]  Because the Commission relied on these factors to grant the complaint as to Dayton, Ohio Power, and AEP Ohio Transmission, and because the Commission has found that Duke's and ATSI's transmission rates include the RTO Adder, OCC argues that it would be unduly discriminatory to not require removal of the RTO Adder from their rates.[87]

32.     OCC states that how the RTO Adder was set should play no role in determining whether the RTO Adder should be taken out because the method of insertion does not bear on whether the rate is unduly discriminatory.[88]  OCC asserts that Duke, ATSI, Dayton, Ohio Power, and AEP Ohio Transmission are all similarly situated because they are all subject to the same Ohio law mandating participation in an RTO.  Accordingly, OCC argues it would be unduly discriminatory to eliminate the RTO Adder from rates for some but not all customers of these utilities.

## ii.     **Determination**

33.     We continue to find that ATSI and Duke are not similarly situated to the other Ohio utilities.  As discussed above, the rates for Duke and ATSI were established pursuant to a comprehensive settlement package.[89]  OCC ignores the fact that piecemeal reconsideration of individual items within a comprehensive settlement would undermine the certainty created by settlements.[90]  By contrast, for incentives approved under section 219, such as those for Ohio Power and AEP Ohio Transmission, the Commission specifically evaluated and granted each RTO Adder separate from other ROE issues,

---

[83] *Id.*

[84] *Id.* at 16.

[85] *Id.* (citing *RTO Adder Order*, 181 FERC ¶ 61,214 at P 65).

[86] *Id.* (citing *RTO Adder Order*, 181 FERC ¶ 61,214 at P 65).

[87] *Id.*

[88] *Id.* at 17.

[89] *RTO Adder Order*, 181 FERC ¶ 61,214 at P 66.

[90] *See supra* note 74.

which were set for hearing and settlement judge procedures.[91]  In such circumstances, removing an RTO Adder that was independently granted does not present the same concerns as modifying the components of a complex, multi-issue settlement package.[92]

34.     Thus, we continue to find that ATSI and Duke, which had RTO Adders embedded in the ROE reflected in comprehensive settlement packages, are not similarly situated to other Ohio utilities such as Ohio Power and AEP Ohio Transmission who were previously granted RTO Adder incentives.  To find otherwise would require the Commission to modify settlements that established the parties' ROE, a concern that is not present in Ohio Power and AEP Ohio Transmission's situations.

### 2.     AEPSC

#### a.     Undue Discrimination

##### i.     Request for Rehearing

35.     AEPSC argues that the Commission erred in finding that Ohio Power and AEP Ohio Transmission must remove their RTO Adders, because their RTO Adders are embedded in a settlement like ATSI's and Duke's.[93]  AEPSC argues that the Commission has violated its obligation to treat all market participants equally and not treat "similar situations differently."[94]  AEPSC states that the Commission does not directly address any differences between Ohio Power and AEP Ohio Transmission, Duke, and ATSI, and that they all stem from similarly complex settlement packages where "[w]e do not know the precise trade-offs and concession made by [the] parties to those proceedings during the settlement process . . . ."[95]  AEPSC argues that the Commission's reliance on the

---

[91] RTO Adder Order, 181 FERC ¶ 61,214 at P 62.

[92] See Order No. 679, 116 FERC ¶ 61,057 at PP 191-92 (order implementing FPA section 219 and permitting single-issue ratemaking in the context of transmission incentives); see, e.g., Consumers Energy Co. v. Int'l Transmission Co., 165 FERC ¶ 61,021, at P 73 (2018) (finding that it was "appropriate to revisit the appropriate level of the Transco Adder for the ITC Companies" given their reduced level of independence resulting from a merger), reh'g denied, 168 FERC ¶ 61,035 (2019) aff'd sub nom. Int'l Transmission Co. v. FERC, 988 F.3d 471, 484-85 (D.C. Cir. 2021) ("FERC reasonably concluded that the existing 50 basis point adder—a level reserved for 'fully independent' Transcos—was no longer appropriate.").

[93] AEPSC Request for Rehearing at 6-12.

[94] Id. at 7 (citing Cnty. of Los Angeles v. Shalala, 192 F.3d 1005, 1022 (D.C. Cir. 1999); W. Deptford Energy, LLC v. FERC, 766 F.3d 10, 21 (D.C. Cir. 2014)).

[95] Id. at 9 (quoting RTO Adder Order, 181 FERC ¶ 61,214 at P 64).  AEPSC states

"pre-settlement determination in 2010 would also be inadequate" as a basis to distinguish Ohio Power and AEP Ohio Transmission's situations from Duke and ATSI's situations "because it would be inapplicable as to AEPSC's 2018 settlement with the municipal power agencies."[96]

36.     AEPSC argues that the Commission in the RTO Adder Order recognizes that it is inappropriate to use single-issue ratemaking when a utility's ROE was set through settlement.[97]  AEPSC suggests that, despite this, in AEP's case where the rates were set by settlement the Commission still speculated as to what the settling parties would have agreed to if the Commission's RTO Adder policy had been different.[98]  As an example, they suggest that, under the Commission's then-applicable interpretation of Order No. 679, in 2010 and 2018 Ohio Power and AEP Ohio Transmission may have agreed to a lower base ROE "knowing that its total figure would increase with the RTO Adder."[99]  AEPSC asserts that, "[w]hile we cannot know if that were the case, it is clear that the parties made trade-offs in the 2018 settlement," noting that the settlement included items such as an equity cap and provisions for tax reform.[100]  AEPSC states that, because Ohio Power's and AEP Ohio Transmission's RTO Adders were not included in rates on a stand-alone basis, it is contrary to section 206 for the Commission to grant a single issue complaint.[101]  Instead, AEPSC argues that the Commission must "provide some basis to question the reasonableness of the overall rate level, taking into account changes in all cost components and not just the challenged component."[102]  AEPSC

---

that, in 2010, Ohio Power and AEP Ohio Transmission entered into settlements providing those entities with a base ROE of "10.99%, plus a 50 basis point adder for [each entity's] continuing participation in the PJM RTO, resulting in an 11.49% total ROE."  AEPSC Request for Rehearing at 8 (quoting AEP East Companies 2010 Offer of Settlement at 7; AEP PJM Transco's 2010 Offer of Settlement at 7).  AEPSC further states that, in 2018, Ohio Power and AEP Ohio Transmission agreed to reduce their base ROE in a settlement resolving a complaint brought by municipal power providers, but the total ROE still "include[d] an additional 50 basis points for PJM RTO membership."  *Id.* (quoting AEP 2018 Offer of Settlement, Marked Sheet at Note S).

[96] *Id.* at 10.

[97] *Id.* at 10-12.

[98] *Id.* at 11.

[99] *Id.*

[100] *Id.*

[101] *Id.*

[102] *Id.* (quoting *Sithe/Indep. Power Partners, L.P.*, 165 F.3d at 951 (quotation

disagrees with the Commission's justification for distinguishing between the RTO Adder and the base ROE —namely, AEPSC disagrees with the Commission's reasoning that, because the Commission "granted the adder prior to setting the base ROE for hearing . . . when the parties entered into settlement discussions, they knew they were negotiating only the base ROE."[103]  AEPSC states that this reasoning does not support the Commission's finding because "it is impossible to compartmentalize negotiations over the base ROE negotiations as if the RTO Adder didn't exist."[104]

### ii.    **Determination**

37.    We disagree with AEPSC's argument that Ohio Power and AEP Ohio Transmission are arbitrarily being treated differently from ATSI and Duke.[105]  Ohio Power and AEP Ohio Transmission are not similarly situated to ATSI and Duke. Unlike ATSI and Duke, Ohio Power's and AEP Ohio Transmission's RTO Adders were authorized by the Commission in separate proceedings under section 219.[106] Further, when the dispute over Ohio Power's and AEP Ohio Transmission's rates was set for settlement judge procedures, the Commission expressly excluded the RTO Adder from those procedures.[107]  As a result, as stated in the RTO Adder Order,

---

marks and alterations omitted)).

[103] *Id.* (quoting RTO Adder Order, 181 FERC ¶ 61,214 at P 62 n.123).

[104] *Id.* at 12.

[105] *Id.* at 6-12.

[106] *Am. Elec. Power Serv. Corp.*, 124 FERC ¶ 61,306 at P 30; *AEP Appalachian Transmission Co.*, 130 FERC ¶ 61,075 at P 21, *order on reh'g*, 135 FERC ¶ 61,066.

[107] *Am. Elec. Power Serv. Corp.*, 124 FERC ¶ 61,306 at P 22 ("we are granting the request for the 50 basis point adder for continued participation in an RTO"); *id.* P 30 ("Granting up to 50 basis points of incentive ROE does not remove any other issue pertaining to the ROE from consideration during the hearing and settlement judge procedures, . . ."); *AEP Appalachian Transmission Co., et al*., 130 FERC ¶ 61,075, at P 21 (2010) ("[w]e find that AEP's proposal to include a 50 basis point adder to each subsidiaries base ROEs for participation in PJM and SPP is just and reasonable and not unduly discriminatory."); *Id.* P 19 ("Except for the issues discussed below, all other issues raised in the proceeding, including but not limited to formula rates, formula rate protocols, ROE, capital structure, plant balances, development and start-up costs, depreciation rates, and costs associated with the new subsidiaries, are set for hearing.").

Document Accession #: 20230420-3096    Document: 67    Filed: 12/15/2023    Page: 290
Case: 21-4072    Document: 67    Filed: 12/15/2023    Page: 290

Docket No. EL22-34-001                                                          - 19 -

at the stage when the parties were making trade-offs in settlements, they knew they were only negotiating the base ROE.[108]

38.    Further, we are not persuaded by AEPSC's argument that its later 2018 settlement with the municipal power agencies is analogous to the Duke and ATSI settlements. As explained in the RTO Adder Order and above, in 2008 and 2010, respectively, the Commission evaluated and affirmatively granted RTO Adders to Ohio Power and AEP Ohio Transmission under section 219.[109]  Those RTO Adders were in effect at the time the Commission established the hearing and settlement judge procedures that preceded the 2018 settlement, meaning that there was nothing to negotiate regarding those adders, and the Commission at that time only set the base ROE for hearing and settlement.[110] As such, we continue to find that Ohio Power and AEP Ohio Transmission are not similarly situated to ATSI and Duke, which had RTO Adders that were embedded in comprehensive settlement packages of the entire proceedings.  Moreover, while AEPSC states that the existence of the already-approved RTO Adder may have impacted the course of its settlement negotiations,[111] we find this concern to be speculative, attenuated, and distinct from the situation of Duke and ATSI, where the parties to those settlement proceedings raised and negotiated the matter in the settlement process leading to comprehensive settlements.  In the situation of Ohio Power and AEP Ohio Transmission, the Commission is not modifying the settlements establishing the base ROE but, rather, essentially reversing our prior stand-alone rulings that granted the RTO Adder in the first place.  The Commission's authority to eliminate a previously granted incentive is well-established.[112]

---

[108] RTO Adder Order, 181 FERC ¶ 61,214 at P 62 n.123.

[109] The Commission granted the RTO Adders separately from all other ROE issues.  *AEP Appalachian Transmission Co.*, 130 FERC ¶ 61,075 at PP 19, 21; *Am. Elec. Power Serv. Corp.*, 124 FERC ¶ 61,306 at P 30.

[110] *Am. Mun. Power, Inc. v. Appalachian Power Co.*, 161 FERC ¶ 61,192 (2017).

[111] AEPSC Request for Rehearing at 11.

[112] *See Int'l Transmission Co. v. FERC*, 988 F.3d 471, 485 (D.C. Cir. 2021) (finding the Commission had satisfied its section 206 burden to show an expressly granted adder independent of the underlying ROE became unjust and reasonable when the Commission found "the merger had reduced [the utility's] independence," which was the basis of granting the adder).

Docket No. EL22-34-001                                                    - 20 -

### b.    Remaining Arguments

### i.    Request for Rehearing

39.    AEPSC argues that the Commission's voluntariness requirement is inconsistent with the plain text of section 219.[113]  It argues that this statutory argument is separate from the meaning of Order No. 679, and that the Commission was required to provide the incentive to "give effect to the unambiguously expressed intent of Congress."[114]  As a result of this lack of ambiguity, it argues, the Commission does not have the authority to interpret Order No. 679 to impose a voluntariness requirement.[115]  While the Commission in the RTO Adder Order found that this argument was a collateral attack on Order No. 679, AEPSC argues that it is not collaterally attacking Order No. 679 because, prior to the Ninth Circuit's decision in *CPUC*, AEPSC argues that the Commission itself did not interpret Order No. 679 to require a showing of voluntariness prior to receiving the RTO Adder.[116]  Thus, AEPSC states it had no previous opportunity to challenge the voluntariness requirement.[117]  Moreover, AEPSC argues that courts have recognized parties' ongoing rights to challenge the validity of administrative rules and regulations.[118]

40.    AEPSC argues that the Commission's decision to remove the RTO Adder from Ohio Power's and AEP Ohio Transmission's rates was also arbitrary and capricious because the Ohio statute at issue is preempted by field and conflict preemption principles.[119]  AEPSC argues that the Commission erred by finding that this proceeding was an inappropriate procedural vehicle and had an insufficient record to address the alleged constitutional issues.[120]

---

[113]  AEPSC Request for Rehearing at 12-16.

[114]  *Id.* at 13 (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)).

[115]  *Id.* at 14-15.

[116]  *Id.* at 15.

[117]  *Id.*

[118]  Id. at 16 (citing to *Functional Music, Inc. v. FCC*, 274 F.2d 543, 546-47 (D.C. Cir. 1958)).

[119]  *Id.* at 17-21.

[120]  *Id.* at 17.

Document Accession #: 20230420-3096     Filed Date: 04/20/2023
Case: 21-4072     Document: 67     Filed: 12/15/2023     Page: 292

41.     AEPSC also argues that the Commission's finding that Ohio Power's and AEP Ohio Transmission's participation in PJM is "involuntary" was arbitrary and capricious because the Commission failed to acknowledge or distinguish prior findings that membership in PJM was voluntary.[121]  AEPSC notes that the Ohio statute at issue here was already in place at the time of those prior PJM cases, but AEPSC argues the Commission in the RTO Adder Order neither acknowledged nor justified its departure from that earlier conclusion.[122]

## ii.     **Determination**

42.     We are not persuaded by AEPSC's arguments that the Commission erred by declining to address preemption arguments[123] and whether the voluntariness requirement is consistent with the plain text of section 219.[124]  The Commission previously addressed those issues in the RTO Adder Order and in the Dayton Orders, and we reaffirm those determinations for the reasons stated therein.[125]  AEPSC provides no new arguments beyond those already considered by the Commission in those proceedings.

43.     We also are not convinced by AEPSC's argument that the outcome here improperly departs from precedent in which AEP was found by the Commission to have determined to join PJM voluntarily.[126]  AEPSC relies[127] on Opinion No. 472, which

---

[121] *Id.* at 16-17 (citing *The New PJM Cos.*, 106 FERC ¶ 63,029, at P 55 *aff'd by*, Opinion No. 472, 107 FERC ¶ 61,271, at P 44 (2004)).

[122] *Id.* at 16.

[123] *Id.* at 17-21.

[124] *Id.* at 12-16.

[125] *Compare id.* at 12-16 (raising section 219 voluntariness arguments) *with* RTO Adder Order, 181 FERC ¶ 61,214 at P 83 (noting and addressing voluntariness arguments); Dayton Rehearing Order, 178 FERC ¶ 61,102 at P 18 (same); *compare* AEPSC Request for Rehearing at 17-21 *with* RTO Adder Order, 181 FERC ¶ 61,214 at P 84 (addressing preemption arguments); Dayton Rehearing Order, 178 FERC ¶ 61,102 at PP 31-32 (same).

[126] AEPSC Request for Rehearing at 16-17.

[127] *Id.* at 16-17 (quoting *The New PJM Cos.*, 106 FERC ¶ 63,029 at P 55 ("AEP saw substantive benefits from membership in a Commission-approved RTO … and signed on voluntarily.")).

Docket No. EL22-34-001                                                    - 22 -

found under section 205(a) of the Public Utility Regulatory Policies Act (PURPA)[128] that AEP would be "exempt" from certain state laws.[129]  While Opinion No. 472 explains that AEP's determination to join PJM was voluntary under section 205(a) of PURPA, as we explain below, that is not determinative of AEPSC affiliates' qualification for RTO Adders.  Not only does Opinion No. 472 fail to discuss the voluntariness standard applied to the RTO Adder context, it also predates Order No. 679 by approximately two years[130] and predates by approximately 14 years the 2018 *CPUC* decision explaining that an incentive cannot induce behavior that is already legally mandated.  The interpretation argued for by AEPSC based on Opinion No. 472, again, which predates Order No. 679 and *CPUC*, is incompatible with the Ninth Circuit's interpretation of Order No. 679 in *CPUC* and subsequent Commission orders adopting the Court's interpretation.[131]  In particular, as the Commission explained in the Dayton Orders, after *CPUC*, "the Commission was required to determine whether RTO membership was voluntary before granting the incentive."[132]

The Commission orders:

    In response to the requests for rehearing, the RTO Adder Order is hereby modified and the result sustained, as discussed in the body of this order.

By the Commission.  Commissioner Danly is concurring in part and dissenting in part with a separate statement attached.

( S E A L )

Debbie-Anne A. Reese,
Deputy Secretary.

---

[128] 16 U.S.C. § 824a-1(a).

[129] *Id.*.

[130] Moreover, as we noted in the RTO Adder Order "[i]n 2008 and 2009, respectively, Ohio Power and AEP Ohio Transmission submitted to the Commission, pursuant to section 205, revised tariff sheets establishing formula rates that included an RTO Adder."  RTO Adder Order, 181 FERC ¶ 61,214 at P 62.

[131] *CPUC*, 879 F.3d at 978.

[132] Dayton Rehearing Order, 178 FERC ¶ 61,102 at P 42.

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Office of the Ohio Consumers' Counsel

                                      Docket No.      EL22-34-001

     v.

American Electric Power Service Corporation,
American Transmission Systems, Inc., and
Duke Energy Ohio, LLC

(Issued April 20, 2023)

DANLY, Commissioner, *concurring in part and dissenting in part*:

1.      For the same reasons that I expressed in my original statement,[1] I further dissent from this order denying rehearing of the Commission's decision to eliminate transmission organization membership incentives from the rates of American Electric Power Service Corporation affiliates Ohio Power Company (Ohio Power) and AEP Ohio Transmission Company Inc. (AEP Ohio Transmission).[2]  As I previously explained, the Federal Power Act does not limit incentives to only those utilities that "voluntarily" join a transmission organization.[3]  The Commission improperly added this non-statutory requirement in Order No. 679.[4]  We had no authority to do so then or now.  Nothing on rehearing changes my opinion.

2.      I concur with the majority's determination on rehearing that the American Transmission Systems, Inc., and Duke Energy Ohio, LLC, should continue to collect the transmission organization incentive in rates because these incentives were included in comprehensive settlements.[5]  I would add the further rationale that section 219(c) of the

---

[1] *Off. of the Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp.*, 181 FERC ¶ 61,214 (2022) (Danly, Comm'r, concurring in part and dissenting in part).

[2] *Off. of the Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp.*, 181 FERC ¶ 61,214.

[3] *See id.* PP 60-63, 83.

[4] *See Promoting Transmission Investment through Pricing Reform*, Order No. 679, 116 FERC ¶ 61,057, at P 331 (2006), *order on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345 (2006), *order on reh'g*, 119 FERC ¶ 61,062 (2007).

[5] *Off. of the Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp.*, 181 FERC

Docket No. EL22-34-001                                                                - 2 -

Federal Power Act requires it, and the subsequent addition of the "voluntariness"
requirement was a Commission invention not authorized by the statute, as discussed in
my original statement.[6]

       For these reasons, I respectfully concur in part and dissent in part.


_____
James P. Danly
Commissioner

_____

¶ 61,214 at PP 60, 64-66.

     [6] *See id.* (Danly, Comm'r, concurring in part and dissenting in part at PP 1-5).

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| AMERICAN ELECTRIC POWER SERVICE CORPORATION, )<br><br>Petitioner, )<br><br>v. )<br><br>FEDERAL ENERGY REGULATORY COMMISSION, )<br><br>Respondent. ) | No. _____<br><br>**PETITION FOR REVIEW** |

---

## PETITION FOR REVIEW

Pursuant to Fed. R. App. P. 15 and 16 U.S.C. § 825*l*(b), American Electric

Power Service Corporation ("AEPSC"), in its own name and on behalf of its public

utility affiliates Ohio Power Company and AEP Ohio Transmission Company Inc.,

hereby petitions for review in the United States Court of Appeals for the Sixth

Circuit of two orders issued by the Federal Energy Regulatory Commission, each in

FERC Docket No. EL22-34. The first order was issued on December 15, 2022. *See*

*Office of the Ohio Consumers' Counsel v. American Electric Power Service*

*Corporation, et al.*, Order on Complaint, 181 FERC ¶ 61,214 (2022) (Attachment

A). AEPSC timely requested rehearing of the Order on Complaint on January 17,

2023. The second order was issued on February 17, 2023, denying the request for

rehearing by operation of law. *See Office of the Ohio Consumers' Counsel v.*

*American Electric Power Service Corporation, et al.*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, 182 FERC ¶ 62,095 (2023) (Attachment B).

AEPSC states that this Petition is related to *Dayton Power & Light Co. v Federal Energy Regulatory Commission*, No. 21-4072 (consol.), before this Court. The Court has held that matter in abeyance pending the conclusion of the proceedings underlying this Petition, FERC Docket No. EL22-34. *See id.*, Dkt. 33, Order (May 4, 2022).[1]

Venue is appropriate in this Circuit because AEPSC's principal place of business is Columbus, Ohio. *See* 16 U.S.C. § 825*l*(b).

March 8, 2023

Respectfully submitted,

*/s/ Matthew E. Price*
Matthew E. Price
JENNER & BLOCK LLP
1099 New York Ave., NW, Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
mprice@jenner.com

*Counsel for American Electric Power Service Corporation*

_____

[1] A substantive order on rehearing remains forthcoming in FERC Docket No. EL22-34.

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| Office of the Ohio Consumers' Counsel, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | )    No. 23-____ |
| Federal Energy Regulatory Commission, | ) |
| | ) |
| Respondent. | ) |

## PETITION FOR REVIEW
## BY
## OFFICE OF THE OHIO CONSUMERS' COUNSEL

On behalf of Ohio residential utility consumers and pursuant to section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b), Rule 15(a) of the Federal Rules of Appellate Procedure, and Circuit Rule 15(a) of the United States Court of Appeals for the Sixth Circuit, the Office of the Ohio Consumers' Counsel petitions for review of the following orders of the respondent, Federal Energy Regulatory Commission ("the Commission"):

*Office of the Ohio Consumers' Counsel,* Docket No. EL22-34-000, Order on Complaint, 181 FERC ¶ 61,214 (Dec. 15, 2022) ("Order"); and

*Office of the Ohio Consumers' Counsel,* Docket No. EL22-34-001, Notice of Denial of Rehearing By Operation of Law and Providing for Further Consideration, 182 FERC ¶ 62,095 (Feb. 17, 2023) ("Rehearing Order").

1

In *Allegheny Defense Project, et al. v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) ("*Allegheny Defense*"), the United States Court of Appeals for the District of Columbia Circuit found that the Commission has no authority under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, to issue tolling orders that seek to extend the time for Commission action on rehearing requests under Federal Power Act section 313. Although *Allegheny Defense* interprets the Natural Gas Act, the United States Supreme Court has held that the Federal Power Act and the Natural Gas Act are to be interpreted *in pari materia*.[1] Thus, the Commission's Rehearing Order in the proceeding below rendered its orders final for purposes of appeal under the Federal Power Act.

Copies of the Commission's orders are appended to this Petition for Review as Attachment 1. Also attached are the corporate disclosure statement required by Rule 26.1 of the Federal Rules of Appellate Procedure, and a Certificate of Service, listing the parties to the underlying proceedings.

Respectfully submitted,

*/s/ Denise C. Goulet*
Denise C. Goulet
Barry Cohen
Priyanka Vashisht
McCarter & English, LLP

---

[1] *See Tennessee Gas Pipeline Co. v. FERC*, 860 F.2d 446, 454 (D.C. Cir. 1988) ("The Supreme Court has held that the Natural Gas Act and the Federal Power Act are in all material respects substantially identical and constructions of one are authoritative for the other.") (internal citations and quotation marks omitted).

1301 K Street, N.W., Suite 1000 West
Washington, D.C. 20005
(202) 753-3400

Special Counsel to the Ohio Office of the
Attorney General for the Office of the Ohio
Consumers' Counsel

Denise C. Goulet is admitted to the United
States Court of Appeals for the Sixth Circuit

Dated:  April 14, 2023

**JA603**

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

AMERICAN ELECTRIC POWER )
SERVICE CORPORATION, )
  )
    Petitioner, )
  )
v. )
  )
FEDERAL ENERGY )
REGULATORY COMMISSION, )
  )
    Respondent. )
  )

No. _____

**PETITION FOR REVIEW**

# **PETITION FOR REVIEW**

Pursuant to Fed. R. App. P. 15 and 16 U.S.C. § 825*l*(b), American Electric Power Service Corporation ("AEPSC"), in its own name and on behalf of its public utility affiliates Ohio Power Company and AEP Ohio Transmission Company Inc., hereby petitions for review in the United States Court of Appeals for the Sixth Circuit three orders issued by the Federal Energy Regulatory Commission in FERC Docket No. EL22-34:

- *Office of the Ohio Consumers' Counsel v. American Electric Power Service Corporation, et al.*, Order on Complaint, 181 FERC ¶ 61,214 (Dec. 15, 2022) (Attachment A);

- *Office of the Ohio Consumers' Counsel v. American Electric Power Service Corporation, et al.*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, 182 FERC ¶ 62,095 (Feb. 17, 2023) (Attachment B); and

- *Office of the Ohio Consumers' Counsel v. American Electric Power Service Corporation, et al.*, Order Addressing Arguments Raised on Rehearing, 183 FERC ¶ 61,034 (Apr. 20, 2023) (Attachment C).

AEPSC states that this Petition is related to three appeals pending before this Court:

AEPSC and the Office of the Ohio Consumers' Counsel have each petitioned this Court for review of FERC's Order on Complaint and Notice of Denial of Rehearing by Operation of Law, which the Court has docketed as Appeal Nos. 23-3196 and 23-3324, respectively. This submission supplements AEPSC's petition in Appeal No. 23-3196 by seeking review of FERC's later-issued Order Addressing Arguments Raised on Rehearing.

This Petition is also related to *Dayton Power & Light Co. v Federal Energy Regulatory Commission*, No. 21-4072 (consol.), before this Court. The Court has held that matter in abeyance pending the conclusion of the proceedings underlying this Petition, FERC Docket No. EL22-34. *See* Order, No. 21-4072, Dkt. 33 (6th Cir. May 4, 2022).

Venue is appropriate in this Circuit because AEPSC's principal place of business is Columbus, Ohio. *See* 16 U.S.C. § 825*l*(b).

April 26, 2023                             Respectfully submitted,

                                           _/s/ Matthew E. Price_____
                                           Matthew E. Price
                                           Zachary B. Cohen
                                           JENNER & BLOCK LLP
                                           1099 New York Ave., NW, Suite 900
                                           Washington, DC 20001
                                           Telephone: (202) 639-6000
                                           mprice@jenner.com
                                           zcohen@jenner.com

                                           *Counsel for American Electric Power
                                           Service Corporation*

## CERTIFICATE OF SERVICE

I certify that I caused the foregoing Petition for Review to be served, via first class mail and email upon the Respondent at the following address:

> Robert Solomon, Solicitor
> Federal Energy Regulatory Commission
> 888 First St. NE
> Washington, DC 20426
> robert.solomon@ferc.gov

I further certify that I will send a file-stamped copy of the foregoing Petition for Review by U.S. Mail to the following address by first class mail upon receipt from the Court:

> Kimberly D. Bose, Secretary
> Federal Energy Regulatory Commission
> 888 First St. NE
> Washington, DC 20426

I further certify that I caused the foregoing Petition for Review to be served by email on the addresses indicated on FERC's service list for Docket No. EL22-34, which is attached hereto.

April 26, 2023                    */s/ Matthew E. Price*
                                 Matthew E. Price

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **Office of the Ohio Consumers' Counsel,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 23-____** |
| **Federal Energy Regulatory Commission,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## PETITION FOR REVIEW
## BY
## OFFICE OF THE OHIO CONSUMERS' COUNSEL

On behalf of Ohio residential utility consumers and pursuant to section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b), Rule 15(a) of the Federal Rules of Appellate Procedure, and Circuit Rule 15(a) of the United States Court of Appeals for the Sixth Circuit, the Office of the Ohio Consumers' Counsel ("OCC") petitions for review of the following orders of the respondent, the Federal Energy Regulatory Commission ("FERC"):

*Office of the Ohio Consumers' Counsel,* Docket No. EL22-34-000, Order on Complaint, 181 FERC ¶ 61,214 (Dec. 15, 2022);

*Office of the Ohio Consumers' Counsel,* Docket No. EL22-34-001, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, 182 FERC ¶ 62,095 (Feb. 17, 2023); and

*Office of the Ohio Consumers' Counsel v. American Electric Power Service Corporation, et al.*, Order Addressing Arguments Raised on Rehearing, 183 FERC ¶ 61,034 (Apr. 20, 2023).

1

OCC and American Electric Power Service Corporation ("AEP"), on behalf of its public utility affiliates Ohio Power Company and AEP Ohio Transmission Company Inc., have both petitioned this Court for review of FERC's Order on Complaint and Notice of Denial of Rehearing by Operation of Law, docketed as Appeal Nos. 23-3324 and 23-3196, respectively. AEP also recently filed for appeal of FERC's Order Addressing Arguments Raised on Rehearing in Case No. 23-3366.

This petition seeks review of FERC's Order Addressing Arguments Raised on Rehearing, 183 FERC ¶ 61,034 (Apr. 20, 2023). This Petition also is related to *Dayton Power & Light Co. v. Federal Energy Regulatory Commission*, No. 21-4072 and 22-3351 (consol.). That case is being held in abeyance before this Court pending the conclusion of the proceedings underlying this Petition, FERC Docket No. EL22-34.[1]

In *Allegheny Defense Project, et al. v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) ("*Allegheny Defense*"), the United States Court of Appeals for the District of Columbia Circuit found that FERC has no authority under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, to issue tolling orders that seek to extend the time for FERC action on rehearing requests under Federal Power Act section 313. Although *Allegheny Defense* interprets the Natural Gas Act, the United States Supreme Court

---

[1] Order, No. 21-4072, Dkt. 33 (6th Cir. May 4, 2022).

has held that the Federal Power Act and the Natural Gas Act are to be interpreted *in pari materia*.[2] Thus, FERC's Rehearing Orders in the proceeding below rendered the orders final for purposes of appeal under the Federal Power Act.

Copies of FERC's orders are appended to this Petition for Review as Attachment 1. Also attached are the corporate disclosure statement required by Rule 26.1 of the Federal Rules of Appellate Procedure, and a Certificate of Service, listing the parties to the underlying proceedings.

Respectfully submitted,

*/s/ Denise C. Goulet*
Denise C. Goulet
Barry Cohen
Priyanka Vashisht
McCarter & English, LLP
1301 K Street, N.W., Suite 1000 West
Washington, D.C. 20005
(202) 753-3400

Special Counsel to the Ohio Office of the Attorney General for the Office of the Ohio Consumers' Counsel

Denise C. Goulet is admitted to the United States Court of Appeals for the Sixth Circuit

Dated: May 9, 2023

---

[2] *See Tennessee Gas Pipeline Co. v. FERC*, 860 F.2d 446, 454 (D.C. Cir. 1988) ("The Supreme Court has held that the Natural Gas Act and the Federal Power Act are in all material respects substantially identical and constructions of one are authoritative for the other.") (internal citations and quotation marks omitted).

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing will be served via the Court's electronic filing system and served on all counsel of record on this 15th day of December, 2023.


December 15, 2023                    _/ s/ Matthew E. Price_
                                     Matthew E. Price

1