**Nos. 21-4072, 22-3351, 23-3196, 23-3324, 23-3366 & 23-3417**

# In the
# United States Court of Appeals
## for the Sixth Circuit

DAYTON POWER & LIGHT COMPANY, d/b/a AES OHIO;
AMERICAN ELECTRIC POWER SERVICE CORPORATION;
DUKE ENERGY OHIO, INC.; FIRSTENERGY SERVICE
COMPANY,

*Petitioners,*

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent.*

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

**BRIEF OF INTERVENOR FIRSTENERGY SERVICE CO.
IN SUPPORT OF RESPONDENT
FEDERAL ENERGY REGULATORY COMMISSION**

Morgan E. Parke
Associate General Counsel
P. Nikhil Rao
Senior Corporate Counsel
FIRSTENERGY SERVICE COMPANY
76 South Main Street
Akron, OH 44308
(330) 384-2422
mparke@firstenergycorp.com
pnrao@firstenergycorp.com

Sanford I. Weisburst
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
sandyweisburst@quinnemanuel.com

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 21-4072, 22-3351, et al.  Case Name: Dayton Power & Light, et al. v. FERC

Name of counsel: Sanford I. Weisburst

Pursuant to 6th Cir. R. 26.1, FirstEnergy Service Company on behalf of/as agent for ATSI
*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> FirstEnergy Service Company and its transmission-owning affiliates are direct or indirect wholly-owned subsidiaries of FirstEnergy Corp., a publicly-held, publicly-traded company. Certain publicly-traded investment companies--such as BlackRock, Inc.--may from time-to-time, through their subsidiaries and affiliates, own 10% or more of FirstEnergy Corp. stock. Such owners exercise passive ownership and do not have day-to-day decision-making authority. Otherwise, no entity owns 10% or more of FirstEnergy Corp.'s stock.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ November 21, 2023 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Sanford I. Weisburst

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

## STATEMENT REGARDING ORAL ARGUMENT

FirstEnergy Service Company on behalf of American Transmission Systems, Inc. ("ATSI") respectfully requests oral argument for the reasons set forth in the opening brief of Petitioners Dayton Power & Light Company, American Electric Power Service Corporation, and ATSI.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................... 1

JURISDICTION ............................................................................................. 2

ISSUE PRESENTED ..................................................................................... 2

STATEMENT OF THE CASE ....................................................................... 3

STANDARD OF REVIEW ............................................................................ 6

SUMMARY OF ARGUMENT ...................................................................... 7

ARGUMENT ................................................................................................. 8

I.      FERC DID NOT ACT ARBITRARILY AND CAPRICIOUSLY
        WHEN IT DECLINED TO CHANGE THE RATES SET FORTH IN
        ATSI'S SETTLEMENT AGREEMENT SIMPLY BECAUSE FERC
        CHANGED ITS LEGAL POSITION. ............................................... 8

        A.      Changing ATSI's rates would undermine FERC's policy
                encouraging settlement. ...................................................... 8

        B.      FERC never found that ATSI received an RTO Adder. ....... 9

        C.      OCC cites no case in which FERC disrupted a comprehensive
                settlement agreement simply because FERC changed its legal
                position. ............................................................................. 14

CONCLUSION ............................................................................................ 18

# <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

## <u>Cases</u>

*AEP Appalachian Transmission Co., Inc.*,
130 FERC ¶ 61,075 (2010) ..................................................................3

*Am. Elec. Power Serv. Corp.*,
124 FERC ¶ 61,306 (2008) ..................................................................3

*Brooklyn Union Gas Co. v. FERC*,
409 F.3d 404 (D.C. Cir. 2005)..........................................................8, 9

*Cal. Pub. Utils. Comm'n v. FERC*,
879 F.3d 966 (9th Cir. 2018) ..........................................................4, 17

*Cincinnati Gas & Elec. Co. v. Fed. Power Comm'n*,
389 F.2d 272 (6th Cir. 1968) ..........................................................6, 17

*E. Tenn. Nat. Gas Co. v. FERC*,
686 F.2d 430 (6th Cir. 1982) ..............................................................13

*FERC v. Elec. Power Supply Ass'n*,
577 U.S. 260 (2016)..................................................................6, 9, 12

*Gaye v. Lynch*,
788 F.3d 519 (6th Cir. 2015) ....................................................7, 10, 12

*Golden Spread Elec. Coop., Inc. v. Sw. Pub. Serv. Co.*,
150 FERC ¶ 61,052 (2015) ................................................................15

*Gulf South Pipeline Co., LP v. FERC*,
955 F.3d 1001 (D.C. Cir. 2020)..........................................................16

*Int'l Transmission Co v. FERC*,
988 F.3d 471 (D.C. Cir. 2012)............................................................15

*Mobil Oil Corp. v. Fed. Power Comm'n*,
417 U.S. 283 (1974)............................................................................13

*Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)................................................................................6

*N.C. Elec. Membership Corp. v. Duke Carolinas, LLC*,
155 FERC ¶ 61,048 (2016) ...............................................................15

*Powell v. Omnicom*,
497 F.3d 124 (2d Cir. 2007) .............................................................13

*Sec. and Exch. Comm'n v. Chenery*,
318 U.S. 80 (1943) ...........................................................................10

*Transcont'l Gas Pipe Line Corp. v. FERC*,
485 F.3d 1172 (D.C. Cir. 2007) ..........................................................8

*United Mun. Distribs. Grp. v. FERC*,
732 F.2d 202 (D.C. Cir. 1984) ............................................................8

*Va. Elec. & Power Co.*,
123 FERC ¶ 61,098 (2008) ...............................................................16

## Statutes

5 U.S.C. § 706(2)(A) ...............................................................................6

16 U.S.C. § 824d(a) ...............................................................................13

16 U.S.C. § 824s(c) .................................................................................3

16 U.S.C. § 825*l*(b) .................................................................................6

## Other Authorities

18 C.F.R. § 35.34 ....................................................................................3

*Promoting Transmission Inv. Through Pricing Reform*, 116 FERC ¶
61,057 (2006), *order on reh'g*, 117 FERC ¶ 61,345 (2007) .................3

## INTRODUCTION

American Transmission Systems, Inc. ("ATSI") owns assets in Ohio used for transmission of electricity in interstate commerce.  The threshold issue in this appeal, addressed in the opening brief of Petitioners American Electric Power Service Corporation ("AEP"), Dayton Power & Light Company ("Dayton"), and ATSI, is whether Federal Power Act Section 219(c) entitles a transmission owner to an adder (an "RTO Adder") to the return on equity ("ROE") component of its transmission rate by virtue of its membership in a regional transmission organization ("RTO"), where state law in the state in which the assets are located requires transmission owners to belong to an RTO.

That opening brief sets forth ATSI's position that such a transmission owner is entitled to the RTO Adder under the plain meaning of the statute.  OCC and FERC disagree with ATSI.  If this Court agrees with ATSI, it would resolve the appeal in ATSI's favor and obviate the need to consider the additional issue discussed in this intervenor's brief on behalf of ATSI.

If, however, this Court disagrees with ATSI on that threshold issue, ATSI still should prevail for a separate reason, with which  FERC agreed:  ATSI's rate stems from a "black-box" settlement that neither stated that the rate contained an RTO Adder nor quantified any such RTO Adder, and it would be contrary to FERC's

1

policy in favor of encouraging settlement to attempt now to speculate on those issues and unwind the settlement.

FERC's order in favor of ATSI on this ground was legally correct and based on substantial evidence. FERC's longstanding policy of encouraging settlement supports its decision not to allow a challenger later to attempt to speculate as to the amount of one component of the rate produced by a black-box settlement, and then to strip out that amount. As FERC reasonably explained, doing so would disrupt the trade-offs that likely were made by the settling parties between various components of the overall rate, and thus effectively would require revisiting all of the components rather than just one in isolation.

## JURISDICTION

ATSI adopts the jurisdictional statement set forth in the opening brief of AEP, Dayton, and ATSI as petitioners. *See* CA6 R. 51 (Corr. Pet'r Br. of Dayton/AEP/ATSI) at 6-7. This Court granted ATSI's timely motion to intervene. *See* CA6 R. 50 (Order) at 3.

## ISSUE PRESENTED

Whether FERC reasonably, and consistently with precedent, ruled that ATSI's black-box settlement likely reflected trade-offs involving the RTO Adder component and other components and hence may not be unwound by speculating as

to the amount of the RTO Adder component and removing it, an approach that would discourage parties from entering into black-box settlements.

## STATEMENT OF THE CASE

RTOs are grid operators to which transmission owners largely turn over control of operation of the transmission assets, thereby improving overall efficiency by concentrating control in the hands of a single regional operator.  *See generally* 18 C.F.R. § 35.34.  Pursuant to statutory directive, FERC has allowed transmission owners that belong to an RTO to increase their ROE, a portion of their transmission rate, by a fixed amount of 0.50% (the "RTO Adder").  *See* 16 U.S.C. § 824s(c); *Promoting Transmission Inv. Through Pricing Reform*, 116 FERC ¶ 61,057 (2006) (Order No. 679), *order on reh'g*, 117 FERC ¶ 61,345 (2007) (Order No. 679-A). AEP, ATSI, and Duke are all members of the RTO known as PJM Interconnection L.L.C. ("PJM").

In 2008 and 2010, the **AEP** entities made rate filings seeking RTO Adders amounting to 0.50%.  *See Am. Elec. Power Serv. Corp. ("AEP I")*, 124 FERC ¶ 61,306, P 4 (2008); *AEP Appalachian Transmission Co., Inc. ("AEP II")*, 130 FERC ¶ 61,075, PP 9, 20 (2010).  In both instances, FERC granted AEP an RTO Adder.  *See AEP I*, P 22; *AEP II*, P 21.

In 2015, **ATSI** set its rates via a comprehensive litigation settlement agreement without having already received any determination from FERC that it

was entitled to an RTO Adder. ATSI's black-box settlement agreement stated that the overall rate it established would be "inclusive of *any* incentive adder for RTO participation," CA6 R. 51 at A87 (emphasis added), and did not quantify what the RTO Adder, if any, was. Intervenor Buckeye Power, Inc. ("Buckeye") was a party to the settlement agreement. *See id.* at A73.

***Duke*** also set its rates via a global settlement without having already received a FERC order granting one. *See generally* CA6 R. 59 (Duke Intervenor Br.) at A1-50. Unlike ATSI's settlement agreement, Duke's specified that it included an RTO Adder of fifty basis points. *Id.* at A17.

In 2018, the Ninth Circuit granted California Public Utilities Commission's petition for review of a FERC order granting a California transmission owner an RTO Adder and remanded the case for further proceedings; the court reasoned that FERC had failed to consider whether a California statute required the company to join an RTO. *Cal. Pub. Utils. Comm'n v. FERC*, 879 F.3d 966, 979, 980 (9th Cir. 2018). The Ninth Circuit suggested that an RTO Adder might be unavailable to a transmission owner that joined an RTO involuntarily (*i.e.*, due to a state-law requirement). *See id.* at 977.

Relying on this authority, OCC filed a complaint at FERC alleging that AEP, ATSI, and Duke were all wrongfully receiving an RTO Adder despite being subject to an Ohio statute requiring them to join an RTO. *See* JA336-37 (OCC Compl.).

4

As discussed in more detail in the Dayton/AEP/ATSI opening brief, FERC agreed with OCC that AEP should no longer receive an RTO Adder.  *See* JA498 (Compl. Order).  FERC accordingly ordered AEP to reduce its rate by 0.50%.  *Id.*

But FERC declined to do the same to ATSI and Duke.  FERC noted that "Duke's and ATSI's ROEs, including any adders, were each embedded in a comprehensive settlement package submitted to the Commission to resolve a complex, multi-issue dispute among [ATSI], [its] customers, and other affected parties."  JA488 (Compl. Order at P 64).  Because "we do not know the precise trade-offs and concessions made by parties to those proceedings during the settlement process," FERC found that it would not "be appropriate to change unilaterally a single aspect of such a comprehensive settlement, at least absent evidence that the overall ROE has become unjust and unreasonable …"  *Id.*

On rehearing, FERC again distinguished between AEP on the one hand and ATSI and Duke on the other hand, on the ground that FERC had awarded AEP's RTO Adder before AEP set its overall rates via settlement.  *See* JA592-93 (Reh'g Order).

On appeal, OCC argues that FERC acted arbitrarily and capriciously in failing to remove an alleged RTO Adder from ATSI's and Duke's rates.  CA6 R. 47 (Pet'r Br. of OCC) at 24-49.  Buckeye supports OCC's position.  *See generally* CA6 R. 52 (Intervenor Br. of Buckeye).  FERC defends its decision.  *See generally* CA6 R. 55

(Resp't Br.) at 47-56.  In this intervenor brief, ATSI supports FERC's decision not to order ATSI to reduce its ROE.

## STANDARD OF REVIEW

This Court may "set aside" FERC's decision not to order ATSI to reduce its ROE only if that decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  "The scope of review under the arbitrary and capricious standard is narrow." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016) (quoting *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).  A court may not "substitute [its] own judgment for [FERC's]" or "ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives." *Id.*  Rather, this Court must uphold FERC's order so long as FERC "examined the relevant considerations and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Id.* (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (cleaned up)).

FERC's "factual findings" are "conclusive" "if supported by substantial evidence." 16 U.S.C. § 825*l*(b).  Substantial evidence means "[t]here was a reasonable basis" for the findings and "they were not arbitrary." *Cincinnati Gas & Elec. Co. v. Fed. Power Comm'n*, 389 F.2d 272, 277 (6th Cir. 1968).  Under the

substantial evidence standard, this Court "will not reverse a factual determination …

unless [it] find[s] that the evidence not only supports a contrary conclusion, but

compels it." *Gaye v. Lynch*, 788 F.3d 519, 525-26 (6th Cir. 2015) (citation omitted).

## SUMMARY OF ARGUMENT

FERC did not act arbitrarily and capriciously or contrary to law in declining

to order ATSI to reduce its ROE.  FERC's longstanding policy of encouraging rate-

setting via black-box settlement counsels against disturbing one aspect of a global

agreement.  Moreover, FERC's approval of ATSI's settlement did not constitute a

legal determination that ATSI was entitled to an RTO Adder.  FERC reasonably

concluded, consistent with its precedent, that unwinding a black-box settlement in

which a host of legal and factual issues were compromised by the parties would

discourage settlement.

OCC and Buckeye's arguments to the contrary are unavailing.  *First*, contrary

to their characterization of the record, FERC never found that ATSI was receiving

an RTO Adder.  Thus, it could not have been arbitrary and capricious for FERC to

decline to order ATSI to decrease its rate by the amount of a supposed RTO Adder.

*Second*, OCC fails to show that FERC has ever disturbed a comprehensive

settlement agreement simply because FERC took a new position on a legal issue,

where a dispute on that legal issue may have informed the parties' earlier settlement

negotiations.  A settlement agreement means little if it lasts only until an agency

changes its mind.  FERC's decision not to order ATSI to reduce its rate was not arbitrary and capricious.

## ARGUMENT

### I.    FERC did not act arbitrarily and capriciously when it declined to change the rates set forth in ATSI's settlement agreement simply because FERC changed its legal position.

Although FERC's order requiring AEP to reduce its ROE was error for the reasons discussed in the Dayton/AEP/ATSI opening brief, FERC did not act arbitrarily and capriciously when it declined to order ATSI to reduce its rate by the amount of a supposed RTO Adder.  FERC's policy in favor of settlement supports its decision as to ATSI, which set its overall rates through a black-box settlement that expressly left open whether they included an RTO Adder, and *a fortiori* the amount of any such RTO Adder.

### A.    Changing ATSI's rates would undermine FERC's policy encouraging settlement.

"FERC … has had a long-term policy in favor of enforcing settlements." *Transcont'l Gas Pipe Line Corp. v. FERC*, 485 F.3d 1172, 1181 (D.C. Cir. 2007) (citing *Brooklyn Union Gas Co. v. FERC*, 409 F.3d 404, 405, 407 (D.C. Cir. 2005), and *United Mun. Distribs. Grp. v. FERC*, 732 F.2d 202, 209 (D.C. Cir. 1984)).  The D.C. Circuit has relied on this "pro-settlement policy" to uphold FERC's actions against arguments that the agency acted arbitrarily and capriciously even when another course of action might have "brought significant benefits."  *Brooklyn Union*

8

*Gas Co.*, 409 F.3d at 407.  As the D.C. Circuit explained, it is "obvious that [transmission companies] and their customers might hesitate to enter rate settlements if a subset of settling parties could later pull the rug out from under them."  *Id.*

This Court should uphold FERC's decision in this case for the same reason. As FERC explained, changing ATSI's rates to remove a purported RTO Adder would "undermine the certainty created by settlements."  JA589 (Reh'g Order at P 33).  That is especially true where, as here, the settlement agreement itself expressly left open whether ATSI was even receiving an RTO Adder at all and, if so, in what amount.  *See* CA6 R. 51 at A87 (characterizing ROE as "inclusive of *any* incentive adder for RTO participation") (emphasis added).  FERC's pro-settlement policy supplies a "satisfactory explanation" for its decision not to order ATSI to change its rate.  *Elec. Power Supply Ass'n*, 577 U.S. at 292.

### B.    FERC never found that ATSI received an RTO Adder.

In support of its argument that FERC acted arbitrarily and capriciously, OCC contends that "FERC explicitly acknowledged that the RTO Adder is in the transmission rates charged by ATSI … to [its] Ohio consumers."  CA6 R. 47 at 24 (citing JA468, 488-89 (Compl. Order at PP 10, 65)).  OCC likewise says that "FERC relied on [ATSI's] settlement language in acknowledging that ATSI's rates include the increased profits charged to consumers for joining [an RTO]."  *Id.* at 31.  Buckeye makes similar arguments.  *See* CA6 R. 52 at 8-10.

9

OCC and Buckeye misstate the record. FERC never found that ATSI was receiving an RTO Adder, nor did the evidence compel that conclusion.[1] *See Gaye*, 788 F.3d at 525-56 (agency findings conclusive under substantial evidence standard unless record evidence compels contrary conclusion).

In support of its claim that FERC found that ATSI's rates include an RTO Adder, OCC cites two portions of the Complaint Order. The first merely recites the language already quoted from ATSI's settlement agreement to the effect that ATSI's rates are "inclusive of *any* RTO Adder." JA468 (emphasis added). As discussed above, far from showing that ATSI's rate includes any RTO Adder at all, this language expressly leaves open whether that is the case.

OCC's second citation similarly fails to support its assertion that FERC found that ATSI's rate includes an RTO Adder. FERC wrote:

> We … recognize that the ATSI settlement stated that the agreed-upon ROEs were inclusive of any incentive adder for RTO participation and that ATSI's affiliates *testified in other proceedings* that ATSI's base ROE is 9.88%, rather than the 10.38% ROE contained in the ATSI

---

[1] FERC's brief on appeal correctly states that FERC "never granted [an RTO Adder] to … [ATSI]." CA6 R. 55 at 56. However, that brief imprecisely suggests that ATSI's settlement "purported to include a 50 basis point [RTO Adder]," *id.* at 59, when in reality it said only that the rate would be inclusive of "*any* RTO Adder," CA6 R. 51 at A87 (emphasis added). As discussed in more detail below, FERC's underlying orders (as opposed to the appellate brief filed by the FERC Solicitor) never found that ATSI received an RTO Adder. To the extent that some language in FERC's appellate brief might suggest otherwise, this Court should not rely on it. *See Sec. and Exch. Comm'n v. Chenery*, 318 U.S. 80, 95 (1943) (rejecting agency attempt on appeal to introduce rationale on which it had not previously relied).

settlement.  But, as noted, those figures were agreed upon as part of integrated, comprehensive settlements of the entire proceeding …

*Id.* at P 65 (emphasis added).  OCC focuses in particular on the italicized words, in which FERC acknowledged how ATSI's affiliates testified in *subsequent proceedings*.  Nowhere did FERC consider whether such testimony constituted admissible, reliable, or binding evidence concerning the interpretation of ATSI's settlement agreement—considerations that would have been essential to a factual finding about whether ATSI's rate included an RTO Adder.  That is because FERC made no such finding.  Instead, FERC reiterated that it could *not* know what went into the settlement agreement determining ATSI's rate.[2]

For its part, Buckeye refers to still other FERC proceedings in which FERC appended long lists of different energy companies' base ROEs as part of an overall rate comparison.  *See* CA6 R. 52 at 9 (citing FERC cases).  Because those appendices list ATSI's base ROE fifty basis points lower than the overall ROE provided for in

_____

[2]  To be sure, FERC referred in its Rehearing Order to "ATSI and Duke, which had RTO Adders that were embedded in comprehensive settlement packages of the entire proceedings."  JA590 (Reh'g Order at P 34).  This passing reference, while correct as to Duke (which unlike ATSI had a settlement that quantified the RTO Adder component) does not constitute a new factual finding that ATSI's settlement included an RTO Adder.  The full sentence of which it is a part merely reiterates that it would not be appropriate to modify ATSI's settlement to remove any RTO Adder that ATSI may have received.  Moreover, in its Complaint Order, FERC scrupulously (and correctly) avoided language stating that ATSI received an RTO Adder, referring instead to "ATSI's ROE[], including any adder[]."  JA488 (Compl. Order at P 64).  FERC's Rehearing Order gives no indication that it modifies the Complaint Order in that regard.

ATSI's settlement, Buckeye concludes that FERC found ATSI was receiving an RTO Adder. *See id.* But the FERC cases Buckeye cites never considered whether ATSI was receiving an RTO Adder. In any event, Buckeye cannot rely on other proceedings not before this Court to substitute for FERC's failure to find, in this proceeding where it mattered, that ATSI is receiving an RTO Adder. As a party to ATSI's settlement, Buckeye could have negotiated a different ROE or different language with respect to the RTO Adder. Having failed to do so, it should not be allowed to achieve the same result by reinterpreting FERC cases that tangentially referred to ATSI's ROE for unrelated purposes.

FERC did not find that ATSI was receiving an RTO Adder, and the record evidence did not compel that conclusion. *See Gaye*, 788 F.3d at 525-26 (substantial evidence standard requires affirmance unless record compels contrary conclusion). Accordingly, FERC did not order ATSI to reduce its ROE to account for the removal of any RTO Adder. Thus, there was a "rational connection between the facts found and the choice made" with respect to ATSI. *Elec. Power Supply Ass'n*, 577 U.S. at 292.

OCC and Buckeye argue that FERC necessarily approved the RTO Adder when it approved ATSI's settlement agreement. *See* CA6 R. 47 at 33; CA6 R. 52 at 8. But FERC did not find that it had approved an RTO Adder for ATSI, because the settlement agreement that FERC approved did not say that it included an RTO

Adder, and instead it was a "black-box" settlement agreement that did not identify or enumerate any of its components. *See* CA6 R. 51 at A87 (ATSI's rates "inclusive of *any* incentive adder for RTO participation") (emphasis added).

OCC and Buckeye's argument fails for the additional reason that approving a settlement agreement is not the same as making a legal determination that a party is entitled to an RTO Adder. When ATSI sought approval of its rate litigation settlement, the question for FERC was whether ATSI's overall rates were "just and reasonable." *See* 16 U.S.C. § 824d(a). There is a "zone of reasonableness" within which "courts are without authority to set aside any rate selected by [FERC]." *E. Tenn. Nat. Gas Co. v. FERC*, 686 F.2d 430, 435 (6th Cir. 1982) (quoting *Mobil Oil Corp. v. Fed. Power Comm'n*, 417 U.S. 283, 307 (1974)).

OCC and Buckeye's only argument that ATSI's overall rates are not just and reasonable is that they include the RTO Adder. *See* CA6 R. 47 at 32-33; CA6 R. 52 at 10-12. Again, FERC did not find that ATSI's rates include the RTO Adder. Moreover, OCC and Buckeye cite no legal authority for the proposition that rates set pursuant to a settlement that *potentially* reflects one answer to a legal question necessarily become unjust and unreasonable simply because FERC later answers that question differently. Their argument is also contrary to generally accepted legal principles. *See, e.g.*, *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) ("When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of

13

that choice simply because his assessment of the consequences was incorrect." (citation omitted)).

Finally, OCC argues that FERC should have addressed OCC's argument that the language in ATSI's agreement was necessary to prevent ATSI from seeking an RTO Adder after settlement. *See* CA6 R. 47 at 36-37. That argument is irrelevant. ATSI is not now seeking, and has not sought since the settlement, to increase its rate by adding an RTO Adder. Rather, OCC wants FERC to order ATSI to reduce its ROE based on a claim that it improperly includes an RTO Adder. Thus, even if OCC is right that the language of ATSI's agreement prevents ATSI from seeking an RTO Adder, that does not mean that ATSI is already receiving an RTO Adder, much less that FERC so found in the proceedings below.

**C.     OCC cites no case in which FERC disrupted a comprehensive settlement agreement simply because FERC changed its legal position.**

OCC argues that FERC has previously allowed challenges to a single issue related to a settlement agreement, such that its failure to do so in this case was arbitrary and capricious. To the extent that OCC's argument depends on the premise that FERC found that ATSI was receiving an RTO Adder, ATSI respectfully refers the Court to the previous section of this brief. In any event, OCC fails to establish that FERC has ever undone a settlement based on a single-issue legal challenge,

much less that FERC *must always* undo settlements negotiated before FERC changed its legal position.

OCC first cites cases in which FERC set for hearing and settlement procedures consumer challenges alleging that an energy company's rates were no longer just and reasonable. *See N.C. Elec. Membership Corp. v. Duke Carolinas, LLC*, 155 FERC ¶ 61,048 (2016); *Golden Spread Elec. Coop., Inc. v. Sw. Pub. Serv. Co.*, 150 FERC ¶ 61,052 (2015). OCC's characterization of these cases as single-issue challenges is questionable, as both involved competing discounted cash-flow methodologies that differed in many respects. *See N.C. Elec.*, 155 FERC ¶ 61,048, PP 8-20 (recounting myriad contested methodological issues); *Golden Spread*, 150 FERC ¶ 61,052, PP 6-31 (same). But even more clearly, neither case involved RTO Adders, and there is no indication of the ultimate disposition of the claims.

In any event, FERC concluded here that there was no showing that ATSI's overall rates have become unjust or unreasonable, JA488 (Compl. Order at P 64), and OCC fails to show that FERC's determination is unsupported by substantial evidence. *See Int'l Transmission Co. v. FERC*, 988 F.3d 471, 486 (D.C. Cir. 2012) (applying substantial evidence standard to determination whether rates just and reasonable). Moreover, the cases OCC cites do not address when, if at all, FERC should modify a settlement agreement to account for its changed position on a discrete legal issue, as opposed to changed factual

circumstances affecting whether the overall rate remains just and reasonable.   Still less do these FERC cases mandate that FERC must *always* unwind settlement agreements reached before its legal position changed.   Thus, there is no inconsistency between the FERC cases OCC cites and FERC's order here.

OCC also cites a D.C. Circuit opinion that it says "acknowledged" FERC's cases in which FERC encouraged settling parties to specify the components of their rates.  *See* CA6 R. 47 at 45 (citing *Gulf South Pipeline Co., LP v. FERC*, 955 F.3d 1001, 1014 (D.C. Cir. 2020)).   But as OCC concedes, that case had nothing to do with single-issue challenges to rates set by a black-box settlement agreement.  *See id.*  OCC's inference from a mere observation to a legal rule about when FERC must unwind settlement agreements is a non sequitur.

OCC notes that, even if FERC had reduced ATSI's rate, there would have been other mechanisms available to ATSI to avoid cost under-recovery.  *See* CA6 R. 47 at 46 (citing *Va. Elec. & Power Co.*, 123 FERC ¶ 61,098 (2008)).   But the mere availability of such mechanisms is irrelevant to whether FERC was required to unwind ATSI's comprehensive litigation settlement.

Finally, OCC argues that FERC always granted RTO Adders to companies that had joined an RTO.  *See* CA6 R. 47 at 35.   But substantial evidence supports FERC's contrary factual finding that "[w]e do not know" what trade-offs led to the

overall rates within which ATSI's RTO Adder, if any, was embedded. *See* JA488 (Compl. Order at P 64).

FERC's routine practice of granting RTO Adders at the time of the ATSI black-box settlement did not guarantee that FERC would always do so in the future, as these very appeals demonstrate. In particular, the same legal arguments that FERC has now accepted (subject to this Court's pending review) were not only available at the time of ATSI's 2015 rate settlement, but were actively being litigated at FERC. *See Cal. Pub. Utils. Comm'n*, 879 F.3d at 972 (noting 2014 and 2015 challenges to RTO Adder at FERC based on involuntariness of RTO membership).

Parties settle litigation to manage legal uncertainty. In this instance, uncertainty about the RTO Adder could well have played a role in the negotiations that led to the ATSI black-box settlement. For example, the parties may have partially or entirely discounted the RTO Adder because of the possibility that FERC might accept the legal arguments that it eventually did accept in these cases, and that FERC would prevail on appeal. Or the parties may have discounted or eliminated the RTO Adder as part of the black-box settlement because of concessions in favor of ATSI on other rate components. At a minimum, substantial evidence supports FERC's conclusion that such unknown trade-offs likely informed ATSI's overall settlement. *See Cincinnati Gas & Elec. Co.*, 389 F.2d at 277.

17

## CONCLUSION

This Court should vacate FERC's orders at issue in these cases for the reasons stated in the joint sections of the Dayton/AEP/ATSI brief: FERC's voluntariness requirement is contrary to law, and Ohio's statute is preempted.  To the extent that the Court reaches the issue addressed in this intervenor's brief, the Court should uphold FERC's order declining to require ATSI to reduce its rate.

Respectfully submitted,

/s/ Sanford I. Weisburst
Sanford I. Weisburst
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
sandyweisburst@quinnemanuel.com

*Counsel for FirstEnergy Service Company on behalf of and as agent for American Transmission Systems, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the typeface requirement of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirement of Rule 32(a)(6) because it is written in 14-point Times New Roman font, a proportionately spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and this Court's July 12, 2023 order, because it contains 4,242 words, excluding the parts exempted from length limits by Federal Rule of Appellate Procedure 32(f).

<u>/s/ Sanford I. Weisburst</u>
Sanford I. Weisburst

*Counsel for FirstEnergy Service Company on behalf of and as agent for American Transmission Systems, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on November 21, 2023, I electronically filed the foregoing brief with the Clerk of the Court by using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Sanford I. Weisburst
Sanford I. Weisburst

*Counsel for FirstEnergy Service Company on behalf of and as agent for American Transmission Systems, Inc.*