**FINAL VERSION**

No. 21-4072 (consolidated with Nos. 22-3351, 23-3196,
23-3324, 23-3366, and 23-3417)

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

DAYTON POWER & LIGHT COMPANY, dba AES OHIO, *ET AL.*,
*Petitioners*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*.

---

*ON PETITIONS FOR REVIEW OF ORDERS OF
THE FEDERAL ENERGY REGULATORY COMMISSION*

---

**OPENING BRIEF OF INTERVENOR BUCKEYE POWER, INC.
IN SUPPORT OF PETITIONER
OFFICE OF THE OHIO CONSUMERS' COUNSEL**

Cynthia S. Bogorad
David E. Pomper
Jeffrey M. Bayne
Lauren L. Springett
Spiegel & McDiarmid LLP
1875 Eye Street, NW
Suite 700
Washington, DC  20006
(202) 879-4000
cynthia.bogorad@spiegelmcd.com
david.pomper@spiegelmcd.com
jeffrey.bayne@spiegelmcd.com
lauren.springett@spiegelmcd.com

*Attorneys for Intervenor Buckeye
Power, Inc.*

August 22, 2023
Final: December 21, 2023

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 21-4072 (L)           Case Name: Dayton Power & Light, et al. v. FERC

Name of counsel: Cynthia S. Bogorad

Pursuant to 6th Cir. R. 26.1, Buckeye Power, Inc.
                                    *Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

> Proposed Intervenor Buckeye Power, Inc. states that it is a non-profit generation and
> transmission cooperative, owned and governed by its member distribution cooperatives, which
> are in turn each Ohio non-profit cooperatives owned by their retail member-consumers.
> Buckeye Power, Inc. has no parent corporation, and no publicly held corporation has a 10% or
> greater ownership interest in Buckeye Power, Inc.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome?  If yes, list the identity of such corporation and the nature of the financial
      interest:

> This case affects wholesale electric transmission rates of the Dayton Power & Light
> Company; the Ohio affiliates of American Electric Power Service Corporation; Duke Energy
> Ohio, LLC; and the American Transmission Systems, Inc. As a result, all wholesale
> customers may be affected by the outcome. Buckeye does not have specific information
> about other wholesale customers that maybe affected.

---

CERTIFICATE OF SERVICE

I certify that on ___August 22, 2023 (Final: 12/21/2023)___ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Cynthia S. Bogorad

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

Page

Corporate Disclosure Statement ................................................................. i

Table of Contents ................................................................................ ii

Table of Authorities ........................................................................... iv

Statement in Support of Oral Argument ...................................................1

Introduction ......................................................................................1

Jurisdictional Statement ......................................................................2

Issues Presented ................................................................................3

Statement of the Case..........................................................................3

Summary of the Argument.....................................................................3

Argument...........................................................................................5

I.      Standard of Review.....................................................................5

II.     FERC's conclusion that OCC failed to demonstrate that Duke's and
        ATSI's rates are unjust and unreasonable is arbitrary, capricious, and
        contrary to law. ........................................................................6

        A.      Duke's rate includes a 50-basis point RTO Adder. .............7

        B.      ATSI's rate includes a 50-basis point RTO Adder. .............8

        C.      OCC sufficiently demonstrated that Duke's and ATSI's rates
                are unjust and unreasonable because they include unjustified
                RTO Adders. ....................................................................10

III.   FERC's decision to allow Duke and ATSI to retain RTO Adders for which they do not qualify is arbitrary, CAPRICIOUS, and contrary to law...................................................................................................................13

   A.    FERC failed to provide a reasoned basis for allowing Duke and ATSI to retain RTO Adders because they were initially approved in settlement packages..........................................................13

   B.    FERC's policy argument about encouraging settlements is not a reasoned or principled basis for immunizing Duke and ATSI. ..........17

Conclusion ...........................................................................................................21

Certificate of Compliance with Type-Volume Limit ...............................................23

Certificate of Service ...........................................................................................24

Addendum

Index for Addendum

# TABLE OF AUTHORITIES

Page

## FEDERAL COURT CASES

*Boston Edison Co. v. FERC*, 856 F.2d 361 (1st Cir. 1988) ....................................18

*Canadian Ass'n of Petroleum Producers v. FERC*,
    254 F.3d 289 (D.C. Cir. 2001)......................................................16

*Emera Me. v. FERC*, 854 F.3d 9 (D.C. Cir. 2017) ............................................11, 12

*FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260 (2016) ......................................5

*Int'l Transmission Co. v. FERC*, 988 F.3d 471(D.C. Cir. 2021)............................19

*Michigan v. Thomas*, 805 F.2d 176 (6th Cir. 1986) .................................................16

*MISO Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022) ....................8

*Mont.-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246 (1951) ....................14

*Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cty.*,
    554 U.S. 527 (2008)........................................................................5

*Office of Consumers' Counsel, State of Ohio v. FERC*, 783 F.2d 206
    (DC Cir. 1986) ..............................................................................20

*Pac. Gas & Elec. v. FERC*, 306 F.3d 1112 (D.C. Cir. 2002) ..................................12

*Papago Tribal Util. Auth. v. FERC*, 723 F.2d 950 (D.C. Cir. 1983).......................19

*PPL Wallingford Energy LLC v. FERC*, 419 F.3d 1194 (D.C. Cir. 2005)..............16

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) .............................................................9

# FEDERAL AGENCY CASES

*Ass'n of Businesses Advocating Tariff v. Midcontinent Indep. Sys.
   Operator, Inc.*, 173 FERC ¶ 61,159 (2020)................................9, 15

*Constellation Mystic Power*, *LLC.*, 176 FERC ¶ 61,019,
   *order set aside in part*, 177 FERC ¶ 61,106 (2021),
   *modified on reh'g*, 178 FERC ¶ 61,116 (2022)........................9, 15

*DATC Path 15*, *LLC.*, 177 FERC ¶ 61,115 (2021) ...............................9, 15

*Duke Energy Ohio, Inc.*, 151 FERC ¶ 61,029 (2015)................................7

*Electric Transmission Incentives Policy Under Section 219 of the
   Federal Power Act*, Supplemental Notice of Proposed Rulemaking,
   175 FERC ¶ 61,035 (2021)................................................4

*The Dayton Power & Light Co.*, 176 FERC ¶ 61,025 (2021),
   *reh'g denied*, 178 FERC ¶ 61,102 (2022) ........................................1

*Off. of the Ohio Consumers' Couns. v. Am. Elec. Power Serv. Corp., et al.*,
   181 FERC ¶ 61,214 (2022)....................... 2, 4, 6, 9, 10, 12, 13, 15

*Off. of the Ohio Consumers' Couns. v. Am. Elec. Power Serv. Corp.*,
   183 FERC ¶ 61,034 (2023)............... 2, 6, 7, 8, 10, 11, 13, 14, 15, 16, 17, 20

*N. C. Eastern Mun. Power Agency v. Duke Energy Progress, LLC,* 172 FERC
   ¶ 61,030 (2020)...........................................................19

*Pac. Gas & Elec. Co.*, 178 FERC ¶ 61,175 (2022)  ..........................9, 15

*PJM Interconnection, L.L.C.*, 153 FERC ¶ 61,106 (2015).......................8

*PJM Interconnection, L.L.C.*, 152 FERC ¶ 63,020 (2015).......................8

*PJM Interconnection, L.L.C.*, Docket No. ER15-303-002 (Mar. 11, 2016)
   (delegated order).........................................................8

## FEDERAL STATUTES

5 U.S.C. § 706(2)(A)...........................................................................................6

16 U.S.C. § 796(29) ...........................................................................................1

16 U.S.C. § 824d...................................................................................3, 13, 20

16 U.S.C. 824e ..............................................................................3, 19, 20, 22

16 U.S.C. § 824e(a).........................................................................................20

16 U.S.C. § 824s .......................................................................................13, 20

16 U.S.C. § 824s(d).........................................................................................11

## FEDERAL REGULATIONS

18 C.F.R. § 35.35(e)...............................................................................3, 6, 11, 13

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Buckeye requests oral argument for the reasons set forth in the July 31, 2023

Opening Brief of Petitioner Office of the OCC.[1]

## INTRODUCTION

These consolidated cases involve petitions for review of two sets of Federal

Energy Regulatory Commission ("FERC" or the "Commission") orders. Both

center on FERC's decisions concerning a fifty-basis point increase to the return on

equity ("ROE") component of certain utilities' FERC-jurisdictional rates. This

increase is meant to induce entities to join a Transmission Organization[2] and is

referred to as an "RTO Adder."

The first set of petitions challenges FERC's denial of a filing by the Dayton

Power & Light Company ("Dayton") seeking an RTO Adder. *The Dayton Power*

*& Light Co.*, 176 FERC ¶ 61,025 (2021) (JA173), *reh'g denied*, 178 FERC

¶ 61,102 (2022) (JA280). FERC found that (1) entities must *voluntarily* join a

Transmission Organization to be eligible for an RTO Adder; and (2) Ohio law

---

[1] Opening Br. of Pet' Off. of the Ohio Consumers' Couns. in Nos. 23-3324 and 23-3417, 6th Cir. No. 21-4072, ECF 47 ("OCC Br.").

[2] Transmission Organization is defined in the Federal Power Act to include Regional Transmission Organization ("RTO"): "The term 'Transmission Organization' means a Regional Transmission Organization, Independent System Operator, independent transmission provider, or other transmission organization finally approved by the Commission for the operation of transmission facilities." 16 U.S.C. § 796(29).

*mandates* Ohio transmission owners, like Dayton, to join such organizations. The second set of petitions involves FERC's orders on a complaint filed by the Office of the Ohio Consumers' Counsel ("OCC") seeking to remove the RTO Adders from the existing rates of the Ohio affiliates of American Electric Power ("AEP"), Duke Energy Ohio, LLC ("Duke"), and American Transmission Systems, Inc. ("ATSI"). *Off. of the Ohio Consumers' Couns. v. Am. Elec. Power Serv. Corp., et al.*, 181 FERC ¶ 61,214 (2022) ("*OCC* Complaint Order") (JA464), *reh'g denied*, 183 FERC ¶ 61,034 (2023) ("*OCC* Complaint Rehearing Order") (JA575). In those orders, FERC (1) granted OCC's Complaint with respect to AEP, and (2) denied OCC's Complaint with respect to Duke and ATSI.

This Brief is submitted by Intervenor Buckeye Power, Inc. ("Buckeye") in support of OCC's Petitions for Review (Nos. 23-3324 and 23-3417) of FERC's denial of OCC's Complaint with respect to Duke and ATSI in the *OCC* Complaint Order and *OCC* Complaint Rehearing Order (collectively the "Orders").[3]

## JURISDICTIONAL STATEMENT

Buckeye adopts the jurisdictional statement set forth in Petitioner OCC's Opening Brief with the following additional facts. Intervenor Buckeye filed timely

---

[3] Buckeye has separately intervened in support of FERC in the cases involving AEP's Petitions for Review of FERC's granting of the OCC Complaint with respect to AEP, and arguments in support of FERC on those issues will be addressed in a later intervenor brief in support of FERC.

motions to intervene in No. 23-3196 on April 6, 2023; in No. 23-3324 on April 28, 2023; in No. 23-3366 on May 24, 2023; and in No. 23-3417 on May 24, 2023. Those motions were granted on August 9, 2023. On July 12, 2023, this Court granted the joint motion to consolidate Nos. 21-4072, 22-3351, 23-3196, 23-3324, 23-3366, and 23-3417.

## ISSUES PRESENTED

Buckeye adopts the Statement of Issues set forth in Petitioner OCC's Opening Brief.

## STATEMENT OF THE CASE

Buckeye adopts the Statement of the Case set forth in Petitioner OCC's Opening Brief.

## SUMMARY OF THE ARGUMENT

FERC's statutory mandate is to ensure that rates subject to its jurisdiction are just, reasonable, and not unduly discriminatory. 16 U.S.C. § 824d, 824e. In certain circumstances, FERC allows utilities to increase the return on equity component of their rates above what FERC "might otherwise allow" as an incentive for joining a Transmission Organization. 18 C.F.R. § 35.35(e) (codifying rules implementing 16 U.S.C. § 824s).[4] To qualify for this incentive-based rate

---

[4] Although the regulation does not specify the amount of this increase in return on equity, FERC's longstanding practice is to allow for an increase of 50 basis points

treatment, known as an RTO Adder, FERC "requires a showing of *voluntary* membership in a Transmission Organization." *OCC* Complaint Order P 63 (JA487) (emphasis added). Because transmission owners in Ohio "are *required* to join a Transmission Organization under Ohio law," FERC ruled that Dayton and AEP cannot increase their rates above what would otherwise be allowed, through an RTO Adder. *Id.* (JA487) (emphasis added).

FERC, however, denied OCC's Complaint with respect to Duke and ATSI, allowing them to continue charging RTO Adders in their rates. It did so despite acknowledging, and making no findings contrary to, the premise of OCC's Complaint: that Duke's and ATSI's rates contain RTO Adders, and that Duke and ATSI do not qualify for RTO Adders. The two reasons FERC gave for allowing Duke and ATSI to continue to charge inflated rates fall short of FERC's obligation to engage in reasoned and principled decision making.

First, FERC claims that OCC failed to show that Duke's and ATSI's rates are unjust and unreasonable. But OCC did show that Duke and ATSI do not qualify for the RTO Adder, and that they nevertheless include it in their rates, costing customers dearly. FERC's claim that OCC had to further demonstrate that

---

(0.50%). *See Electric Transmission Incentives Policy Under Section 219 of the Federal Power Act*, Supplemental Notice of Proposed Rulemaking, 175 FERC ¶ 61,035, PP 2, 5, 12 (2021).

the overall return on equity components of Duke's and ATSI's rates was outside of a zone of reasonableness is internally inconsistent and contrary to precedent.

Second, FERC emphasized that Duke's and ATSI's rates were approved as part of settlement packages. While true, that is not a basis for allowing Duke and ATSI to continue to charge unjust and unreasonable rates. Neither the statute nor FERC's regulations support FERC's conclusion, and FERC's claim that it did not authorize Duke's and ATSI's RTO Adders is incorrect and contrary to multiple prior FERC orders. FERC's cursory reliance on a general policy of encouraging settlements is also insufficient, as FERC neither explains its reasoning nor engages with the specific settlement agreements at issue.

Accordingly, FERC's denial of OCC's Complaint with respect to Duke and ATSI should be vacated and remanded.

## ARGUMENT

## I.     STANDARD OF REVIEW

The FERC Orders on review are subject to the Administrative Procedure Act's arbitrary and capricious standard of review, and a reviewing court cannot uphold a FERC order unless "the agency has 'examine[d] the relevant [considerations] and articulate[d] a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made.'" *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016) (quoting *Morgan*

*Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cty.*, 554 U.S. 527, 532 (2008)). FERC's Orders cannot stand to the extent that they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## II.    FERC'S CONCLUSION THAT OCC FAILED TO DEMONSTRATE THAT DUKE'S AND ATSI'S RATES ARE UNJUST AND UNREASONABLE IS ARBITRARY, CAPRICIOUS, AND CONTRARY TO LAW.

The RTO Adder at issue in this case is "incentive-based rate treatment" that, as defined in FERC's regulations, provides for "a return on equity that is *higher than the return on equity the Commission might otherwise allow*." 18 C.F.R. § 35.35(e) (emphasis added). In other words, the RTO Adder enables a utility to charge customers a higher return on equity rate component—and thus higher rates—than what FERC would permit but for its eligibility for this incentive-based treatment.

As shown below, and acknowledged by FERC, Duke and ATSI each receive the RTO Adder. The *OCC* Complaint Order and *OCC* Complaint Rehearing Order also confirm that neither Duke nor ATSI qualifies for this RTO Adder under FERC's incentives policy. Accordingly, Duke and ATSI are receiving rates that are higher than what FERC would have otherwise allowed if FERC had been properly

applying its incentives policy at the time those rates were filed.[5] Nevertheless, FERC concluded that OCC failed to demonstrate that Duke's and ATSI's rates are unjust and unreasonable. The Commission's reasoning for this conclusion falls short of its obligation to engage in reasoned and principled decisionmaking.

### A.    *Duke's rate includes a 50-basis point RTO Adder.*

Duke did not dispute that it receives a 50-basis point RTO Adder in the proceeding before FERC. Duke Answer to OCC Complaint at 16 (JA408) ("[Duke] admits that FERC authorized [Duke] to include the RTO Participation Adder in its transmission formula rate in 2015"). As FERC explained, the settlement that established Duke's rate explicitly specifies that Duke's return on equity "is comprised of a 10.88% base cost of common equity and a 50 basis point RTO Adder for a total [return on equity] of 11.38%." *OCC* Complaint Rehearing Order P 10 (JA579) (citing *Duke Energy Ohio, Inc.*, 151 FERC ¶ 61,029, at PP 10, 14 (2015)).[6]

---

[5] For simplicity, we refer to Duke's and ATSI's rates as being higher than FERC would otherwise allow in the remainder of this Brief.

[6] Specifically, the settlement agreement establishing Duke's rate states "until changed by order of the Commission, the return on common equity ('ROE') . . . shall be a total of 11.38%, consisting of a 10.88% base cost of common equity and a 0.5% ROE adder as permitted by Commission policy for participation in a regional transmission organization." Duke, Settlement Agreement, Att. 2, Art. 3.3.a, *PJM Interconnection, L.L.C.*, FERC Docket Nos. ER12-91-000, et al. (Oct. 30, 2014) ("Duke Settlement Agreement"). A copy of the Duke Settlement Agreement is included in an addendum to this Brief, A-1 through A-84.

**B.    *ATSI's rate includes a 50-basis point RTO Adder.***

FERC explained that the settlement agreement establishing ATSI's rate provides for "a 10.38% ROE on ATSI's revenue requirement for transmission service, 'inclusive of any RTO Adder.'" *OCC* Complaint Rehearing Order P 11(JA579) (citing *PJM Interconnection, L.L.C.*, 152 FERC ¶ 63,020, PP 12-13 (2015); *PJM Interconnection, L.L.C.*, 153 FERC ¶ 61,106, P 3 (2015); *PJM Interconnection, L.L.C.*, Docket No. ER15-303-002 (Mar. 11, 2016) (delegated order)).[7] Thus, that settlement makes clear that ATSI's 10.38% return on equity rate component includes an RTO Adder.

The fact that ATSI's rate includes a 50-basis point RTO Adder has been confirmed in multiple prior FERC orders. In past cases where FERC has established rates by, in part, considering the returns on equity of other utilities,[8] it

---

[7] A copy of the settlement agreement establishing ATSI's rates ("ATSI Settlement Agreement") is included in the Addendum to the Brief of Petitioners Dayton Power & Light Co., American Electric Power Service Corp., and FirstEnergy Service Co. (6th Cir. No. 21-4072, ECF 51), at A70-A95 ("Dayton et al. Br."). Section II.C.2 of the ATSI Settlement states that the "ROE values . . . *are inclusive of an incentive adder for RTO participation*." *Id.* at A87 (emphasis added).

[8] A 2022 D.C. Circuit found that FERC had "failed to offer a reasoned explanation for its decision to reintroduce the risk-premium model," which is methodology in which FERC looks to other utilities' returns on equity to establish a utility's return on equity. *MISO Transmission Owners v. FERC*, 45 F.4th 248, 264 (D.C. Cir. 2022). FERC has yet to act on remand. The issue of FERC's use of the risk-premium model to determine appropriate returns on equity, however, has no bearing on its factual findings about Duke's and ATSI's current returns on equity.

8

has consistently found that ATSI's "Base ROE" is 50 basis points less than the

total return on equity stated in the settlement agreement. *Pac. Gas & Elec. Co.*, 178

FERC ¶ 61,175, App. D (2022); *DATC Path 15*, LLC, 177 FERC ¶ 61,115, App. D

(2021); *Constellation Mystic Power*, LLC, 176 FERC ¶ 61,019, App. D, *order set*

*aside in part*, 177 FERC ¶ 61,106 (2021), *modified on reh'g*, 178 FERC ¶ 61,116

(2022); *Ass'n of Businesses Advocating Tariff v. Midcontinent Indep. Sys.*

*Operator, Inc.*, 173 FERC ¶ 61,159, App. 1 (2020).[9] Indeed, as FERC explained,

"ATSI's affiliates testified on other proceedings that ATSI's base ROE is 9.88%,

rather than the 10.38% ROE contained in the ATSI settlement." *OCC* Complaint

Order P 65 (JA488-89) (citations omitted).

　　　Despite its own affiliates' prior statements, ATSI claimed before FERC that

OCC did not demonstrate that ATSI's rate includes a 50-basis point RTO Adder.

S*ee id.* PP 39, 52 (JA476-77, JA482) (summarizing ATSI's argument and OCC's

and Buckeye's responses). That claim, however, cannot be a basis for upholding

FERC's denial of OCC's Complaint with respect to ATSI. "The grounds upon

which an administrative order must be judged are those upon which the record

discloses that its action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).

Here, FERC did not dismiss OCC's Complaint with respect to ATSI on that basis.

---

[9] The same portions of these orders addressing ATSI's base return on equity
likewise confirm that Duke's base return on equity is 50-basis points below its total
return on equity.

In fact, FERC found that ATSI, as well as Duke, "had RTO Adders embedded in the [return on equity]" used for their current rates. *OCC* Complaint Rehearing Order P 34 (JA590).

> **C.     OCC sufficiently demonstrated that Duke's and ATSI's rates are unjust and unreasonable because they include unjustified RTO Adders.**

FERC "recognize[d]" the RTO Adders included in Duke's and ATSI's rates, *OCC* Complaint Order P 65 (JA488-89), and FERC explicitly stated that "we have not found that Duke and ATSI are entitled to an RTO Adder," *id.* P 66 (JA489). The Orders on OCC's Complaint confirm why Duke and ATSI are not eligible for the RTO Adder: (1) "the Commission's incentives policy . . . requires a showing of *voluntary* membership in a Transmission Organization" to qualify for incentive-based rate treatment; and (2) entities that own or control transmission facilities in Ohio "are *required* to join a Transmission Organization under Ohio law," making such membership not voluntary. *Id.* P 63 (JA487) (citations omitted) (emphasis added).

Although FERC's Orders affirm the basis of the OCC Complaint—that Duke and ATSI are receiving RTO Adders for which they are ineligible—FERC nevertheless concluded that "OCC has failed to provide any evidence to demonstrate that the overall ROEs are unjust and unreasonable, such as by showing that the overall rate is outside of the 'zone of reasonableness.'" *OCC*

Complaint Rehearing Order P 28 (JA587) (citing *Emera Me. v. FERC*, 854 F.3d 9, 23 (D.C. Cir. 2017)). The Commission's reasoning suffers at least two critical flaws.

First, OCC did provide sufficient evidence to demonstrate that Duke and ATSI have unjust and unreasonable returns on equity. The inclusion of an RTO Adder, according to FERC's own definition of incentive-based rate treatment, results in "a return on equity that is *higher than the return on equity the Commission might otherwise allow*." 18 C.F.R. § 35.35(e) (emphasis added). It is patently unjust and unreasonable for Duke and ATSI to charge rates exceeding what they otherwise would be allowed due to an RTO Adder for which they do not qualify.

Second, FERC is wrong to claim that OCC was required to demonstrate that Duke's and ATSI's overall return on equity components fall outside of a zone of reasonableness. *OCC* Complaint Rehearing Order P 28 (JA586-87). Although a combined base return on equity and RTO Adder must be just and reasonable, 16 U.S.C. § 824s(d), it does not follow that it is just and reasonable for ineligible entities to receive an RTO Adder for which they do not qualify. The Orders on review concede this point by directing AEP to remove the RTO Adder from the rates of its Ohio affiliates, even though "the Commission separately granted the RTO Adder to the AEP East Companies and the AEP East Transmission

11

Companies on the condition that the additional 50 basis points did not result in an ROE above the zone of reasonableness." *OCC* Complaint Order P 8 (JA468) (citations omitted).

Moreover, the case law FERC cites does not support its conclusion that OCC must demonstrate an overall return on equity outside of a zone of reasonableness in order to challenge the current, improperly inflated return on equity components of Duke's and ATSI's rates. Rather, that case states that "[w]hether a rate, *even one within the zone of reasonableness*, is unlawful depends on the particular circumstances of the case." *Emera Me. v. FERC*, 854 F.3d 9, 23 (D.C. Cir. 2017) (emphasis added). "[A] reviewing court must set aside any rate, even one within the zone of reasonableness, if FERC's procedure or methodology was flawed," *id.* (citing *Pac. Gas & Elec. v. FERC*, 306 F.3d 1112, 1116 (D.C. Cir. 2002)), and FERC cannot allow rates, even within this zone, without providing a reasoned basis, *id.* at 30. Here, it is arbitrary, capricious, and contrary to law for FERC to conclude that OCC's Complaint was insufficient in demonstrating unjust and unreasonable rates when OCC showed that Duke and ATSI charge customers increased rates pursuant to RTO Adders for which they are ineligible.

## III.  FERC'S DECISION TO ALLOW DUKE AND ATSI TO RETAIN RTO ADDERS FOR WHICH THEY DO NOT QUALIFY IS ARBITRARY, CAPRICIOUS, AND CONTRARY TO LAW.

### A.  *FERC failed to provide a reasoned basis for allowing Duke and ATSI to retain RTO Adders because they were initially approved in settlement packages.*

FERC also justified its denial of OCC's Complaint with respect to Duke and ATSI because "the Commission did not grant the utilities [Duke and ATSI] RTO Adders under section 219 and their rates were instead the products of comprehensive settlements." *OCC* Complaint Rehearing Order P 26 (JA586) (citing *OCC* Complaint Order P 60 (JA485)). This basis for denying OCC's Complaint with respect to Duke and ATSI is arbitrary, capricious, and contrary to law.

At the outset, nothing in the statute, 16 U.S.C. § 824s, or FERC's regulation, 18 C.F.R. § 35.35(e), establishes a different standard for allowing incentive-based rates depending on whether an RTO Adder is submitted through a settlement package versus a different type of filing also pursuant section 205 of the Federal Power Act, 16 U.S.C. § 824d. Nor is there a separate mechanism for utilities to file for rates "under section 219." *OCC* Complaint Rehearing Order P 26 (JA586). Rather, all filings seeking "incentive-based rate treatment must [be submitted] with the Commission *under section 205 of the Federal Power Act*." 18 C.F.R. § 35.35(e) (emphasis added). Likewise, neither the statute nor regulation allows an

otherwise unlawful RTO Adder to be included or remain in rates if approved via a settlement package. FERC's contrary conclusion would nonsensically allow utilities that leave a Transmission Organization to retain an RTO Adder, despite their clear ineligibility for such an Adder, so long as it was originally filed as part of a settlement package. In sum, there is no basis in the statute nor FERC's regulation to support FERC's conclusion that Duke and ATSI can continue to collect an RTO Adder for which they do not qualify, despite that Adder being challenged, just because it had been approved as part of a settlement.

FERC's claim that it did not actually approve Duke and ATSI's RTO Adders is also incorrect, as well as an unexplained departure from prior precedent. *See OCC* Complaint Rehearing Order P 30 (JA588) ("The Commission approved a comprehensive settlement package, with a single overall figure for Duke's and ATSI's ROEs, without authorizing an RTO Adder in the settling parties' rates at the time of settlement.") (citations omitted). It is axiomatic that FERC-regulated utilities cannot charge rates "other than the filed rate, whether fixed or merely accepted by the Commission." *Mont.-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 251 (1951). Because Duke and ATSI are charging customers a rate that is higher than what FERC would otherwise allow due to the inclusion of the RTO Adder—a fact FERC's Orders do not dispute—FERC's claim that it did not specifically authorize those adders is arbitrary and capricious. As shown in OCC's

Opening Brief (at 37-43), FERC's refusal to address its approval of the RTO

Adder in Duke's and ATSI's rates was also internally inconsistent and contrary to

FERC precedent on rates authorized through settlement filings.

In addition, the Orders on review are contrary to the multiple previous FERC

orders that expressly recognized and separated the RTO Adders from both Duke's

and ATSI's overall returns on equity.[10] FERC does not, and cannot, explain why it

could identify Duke's and ATSI's RTO Adders in those proceedings but could not

do so in the OCC Complaint proceeding.

OCC raised this very point in its request for rehearing of the *OCC* Complaint

Order. *See OCC* Complaint Rehearing Order P 25 (JA585) ("OCC states that the

RTO Adder Order is also inconsistent with the Commission's findings in other

ATSI proceedings where the Commission did previously separate the base ROE

and RTO Adder . . . .") (quoting OCC Request for Rehearing at 12 (JA541)).

FERC, however, failed to address this argument, thereby falling short of its

obligations under the Administrative Procedure Act in two ways.

---

[10] Those cases include *Pac. Gas & Elec. Co.*, 178 FERC ¶ 61,175, App. D (2022); *DATC Path 15*, LLC, 177 FERC ¶ 61,115, App. D (2021); *Constellation Mystic Power*, LLC, 176 FERC ¶ 61,019, App. D, *order set aside in part*, 177 FERC ¶ 61,106 (2021), *modified on reh'g*, 178 FERC ¶ 61,116 (2022); *Ass'n of Bus. Advocating Tariff v. Midcontinent Indep. Sys. Operator, Inc.*, 173 FERC ¶ 61,159, App. 1 (2020).

First, "'[u]nless the [agency] answers objections that on their face seem legitimate, its decision can hardly be classified as reasoned.'" *PPL Wallingford Energy LLC v. FERC*, 419 F.3d 1194, 1198 (D.C. Cir. 2005) (quoting *Canadian Ass'n of Petroleum Producers v. FERC*, 254 F.3d 289, 299 (D.C. Cir. 2001)). Second, although "[a]n administrative agency may reexamine its prior decisions and may depart from its precedents," that departure must be "*explicitly and rationally justified.*" *Michigan v. Thomas*, 805 F.2d 176, 184 (6th Cir. 1986) (citations omitted) (emphasis added). Here, FERC provided *no* explanation—let alone a rational one—for its departure from its past findings that the Duke and ATSI rates have RTO Adders separate and distinct from their base returns on equity.

Finally, FERC also wrongly relied on its prior statements, in its orders approving the Duke and ATSI settlements, that those orders do "not constitute approval of, or precedent regarding, any principle or issue in this proceeding." *OCC* Complaint Rehearing Order P 30 n.81 (JA588) (citing settlement orders). This boilerplate language merely indicates that those orders cannot be cited as precedent for particular issues in future cases. For instance, other utilities seeking to include RTO Adders in their rates may not cite these orders as precedent on when RTO Adders are appropriate. This language does not, however, change the fact that FERC approved—and customers are today paying—the RTO Adders

currently included in Duke's and ATSI's rates. The inclusion of these RTO Adders produces returns on equity exceeding what FERC would otherwise allow, as FERC itself has repeatedly recognized in past orders analyzing Duke's and ATSI's returns.

### B.    FERC's policy argument about encouraging settlements is not a reasoned or principled basis for immunizing Duke and ATSI.

In denying OCC's Complaint with respect to Duke and ATSI, FERC relied on "policy considerations caution[ing] against adjusting settlement rates on a piecemeal basis." *OCC* Complaint Rehearing Order P 29 (JA587). Specifically, FERC claimed that "modifying individual components of settlements [(1)] would undermine the certainty provided to settling parties and [(2)] would be inconsistent with the Commission's longstanding policy." *Id.* (JA587). Neither reason is a rational basis for allowing Duke and ATSI to continue to receive RTO Adders for which they are not eligible.

First, FERC failed to examine the specific settlements at issue before relying on supposed concerns about undermining the certainty provided to settling parties. The Duke and ATSI settlements expressly contemplate and allow challenges to the return on equity components of their rates. The Duke Settlement Agreement states that "[n]o Settling Party shall make a unilateral filing seeking a reduction in the Base/RTO ROE that would become effective *before June 1, 2017*, nor shall any Settling Party support a request made by any other entity seeking a reduction in the

17

Base/RTO ROE *that would become effective before June 1, 2017*." Duke

Settlement Agreement, Art. 3.3.b (emphasis added) (*see infra* at A-10 to A-11).

Similarly, section II.C.3 of the ATSI Settlement Agreement states that "[t]he

10.38% ROE value established by section II.C.1.c shall remain in effect *until*

*changed pursuant to section 205 or section 206 of the Federal Power Act, 16*

*U.S.C. § 824d or § 824e*, provided that the effective date for any change to the

10.38% ROE value made pursuant to section 205 or section 206 *shall be no earlier*

*than January 1, 2018*." Dayton et al. Br. at A87 (emphasis added). Thus, under the

particular settlement packages at issue here, there can be no settled expectation that

the return on equity rate components, and the RTO Adder to that component,

would remain unchanged (after June 1, 2017 in the case of Duke and January 1,

2018 in the case of ATSI).

Because the procedure used and relief sought by OCC are fully consistent

with the settlement packages establishing Duke and ATSI's returns on equity,

FERC failed to engage in reasoned decisionmaking by resting its decision on

vague, generic statements about settled expectations. The terms of the settlement

agreement, like any contract, are "to be treated as an integral part of the rate

schedule and the filed rate." *Boston Edison Co. v. FERC*, 856 F.2d 361, 371-72

(1st Cir. 1988). Just as FERC cannot ignore the return on equity values stated in

those settlements and allow Duke and ATSI to charge different values, it also

cannot ignore the provisions allowing for challenges to these values after certain dates.

Moreover, FERC identifies nothing in the settlements that supports imposing a higher burden on OCC's Complaint with respect to Duke and ATSI than what would otherwise apply (and that applied to OCC's Complaint with respect to AEP). After the moratorium periods on challenges to the settled return on equity values, which have long since passed, the standard rule of section 206 applies: customers and their representatives may challenge any formula rate component by showing that prospective application of that particular component would be unjust, unreasonable, or unduly discriminatory. *See Int'l Transmission Co. v. FERC*, 988 F.3d 471, 484-86 (D.C. Cir. 2021) (concluding that FERC complied with Federal Power Act section 206 in granting a complaint alleging that then-existing return on equity adders for certain transmission companies were unjust and unreasonable); *N. C. Eastern Mun. Power Agency v. Duke Energy Progress, LLC,* 172 FERC ¶ 61,030, PP 51-60 (2020) (allowing single-issue complaint regarding a rate component of a formula rate that had been established through agreement). There is nothing inherent in settlements to support FERC imposing a heightened burden on OCC's Complaint regarding Duke and ATSI. *See Papago Tribal Util. Auth. v. FERC*, 723 F.2d 950, 954 (D.C. Cir. 1983) (holding that FERC can apply the ordinary "just-and-reasonable standard" in a Federal Power Act section 206

proceeding to modify a rate established by contract where parties so contract).

Here, where the settlements specifically contemplate future challenges to the return

on equity component of the rates, it is arbitrary and capricious for FERC to require

OCC to "show[] that the overall rate is outside the 'zone of reasonableness.'" *OCC*

*Complaint Rehearing Order* P 28 (JA587) (citation omitted).

Second, FERC's general policy of encouraging settlements is insufficient to

sustain the Orders on review here. As a threshold matter, this policy cannot

supersede FERC's statutory obligations under Federal Power Act sections 205,

206, and 219, 16 U.S.C. §§ 824d, 824e, 824s. In the instance of unjust and

unreasonable rates—here, Duke's and ATSI's collection of RTO Adders in clear

violation of eligibly requirements of FERC's incentives policy—FERC is obligated

under the Federal Power Act to establish just and reasonable rates. 16 U.S.C.

§ 824e(a) ("Whenever the Commission . . . shall find that any rate . . . unjust,

unreasonable, unduly discriminatory or preferential, the Commission *shall*

determine the just and reasonable rate . . . and *shall* fix the same by order.")

(emphasis added); *see also Office of Consumers' Counsel, State of Ohio v. FERC*,

783 F.2d 206, 236 (DC Cir. 1986) (holding, under analogous provision of the

Natural Gas Act, that "the Commission has no authority to decline to issue a

remedy where a clear violation has been found") (citation omitted).

Moreover, FERC's cursory reference to this policy fails to provide any explanation as to how its denial of OCC's Complaint with respect to Duke and ATSI is consistent with the goal of encouraging settlements. In fact, the Orders are likely to have the opposite effect. These Orders stand for the proposition that otherwise unlawful rate components are shielded from future challenges if they go into effect as part of a settlement package—even after any moratorium on challenges to those specific rate components stated in a settlement agreement has expired. That would not be the case had customers litigated the issue of Duke's and ATSI's RTO Adder, even if they had been unsuccessful at the time. This outcome thus encourages customers to litigate, not settle. To the extent there are any countervailing policy considerations, those are not identified in FERC's Orders.

Ultimately, FERC's superficial reliance on its policy of encouraging settlements, without grappling with the actual settlements at issue or the implications of its decision on future settlements, falls short of its obligations to both engage in reasoned decisionmaking and ensure just and reasonable rates.

## CONCLUSION

For the reasons stated above, and in OCC's Opening Brief, this Court should vacate and remand FERC's decision to leave the RTO Adder in Duke's and ATSI's rates, with directions that FERC order the utilities to remove the RTO

21

Adder from their rates and provide refunds to the full extent allowed under Federal

Power Act section 206, 16 U.S.C. § 824e.

/s/ Cynthia S. Bogorad
_____
Cynthia S. Bogorad
David E. Pomper
Jeffrey M. Bayne
Lauren L. Springett

*Attorneys for Buckeye Power, Inc.*

Law Offices of:
    SPIEGEL & MCDIARMID LLP
    1875 Eye Street, NW
    Suite 700
    Washington, DC  20006
    (202) 879-4000

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), and this Court's July 12, 2023 order, because it contains 4,932 words (of the 9,100 words allotted or an Intervenor brief in support of Petitioner) as determined by the word-counting feature of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. Rule 32(f) and Sixth Circuit Rule 32(b)(1).

2.      This brief complies with the typeface requirements of Fed. R. App. P. Rule 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated this 22nd day of August, 2023 (Final: December 21, 2023).

*/s/ Cynthia S. Bogorad*
Cynthia S. Bogorad

SPIEGEL & MCDIARMID LLP
1875 Eye Street, NW
Suite 700
Washington, DC  20006
(202) 879-4000

23

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused the foregoing document to be served upon each person designated on the official service list compiled by the Secretary in this proceeding.

Dated this 22nd day of August, 2023 (Final: December 21, 2023).

*/s/ Cynthia S. Bogorad*
Cynthia S. Bogorad

SPIEGEL & MCDIARMID LLP
1875 Eye Street, NW
Suite 700
Washington, DC  20006
(202) 879-4000

**ADDENDUM**

# INDEX FOR ADDENDUM

FERC Docket No. ER12-91, Duke Energy Ohio, Inc. and Duke
Energy Kentucky, Inc., Settlement Agreement (Oct. 30, 2014),
FERC eLibrary No. 20141030-5068 ................................................................ A-1

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| **PJM Interconnection, L.L.C.** | ) | **Docket Nos. ER12-91-000** |
| **Duke Energy Ohio, Inc.** | ) | **ER12-91-002** |
| **Duke Energy Kentucky, Inc.** | ) | **ER12-91-004** |
| | ) | **ER12-91-005** |
| | ) | **ER12-91-007** |
| | ) | **ER12-91-008** |
| | ) | **ER12-92-000** |
| | ) | **ER12-92-002** |
| | ) | **ER12-92-004** |
| | ) | **ER12-92-005** |
| | ) | **ER12-92-007** |
| | ) | **and ER12-92-008** |

**SETTLEMENT AGREEMENT**

This Settlement Agreement ("Settlement Agreement") is made pursuant to Rule 602 of the Rules of Practice and Procedure of the Federal Energy Regulatory Commission ("Commission" or "FERC"), 18 C.F.R. § 385.602 (2014), by and among Duke Energy Ohio, Inc. ("DEO"), a corporation organized and existing under the laws of the State of Ohio, Duke Energy Kentucky, Inc. ("DEK"), a corporation existing under the laws of the Commonwealth of Kentucky, American Municipal Power, Inc. ("AMP"), on behalf of itself and its members, Buckeye Power, Inc. ("Buckeye"), on behalf of itself and its members, The Dayton Power and Light Company ("Dayton"), East Kentucky Power Cooperative, Inc. ("East Kentucky"), on behalf of itself and its members, the Indiana Municipal Power Agency ("IMPA"), the City of Hamilton, Ohio ("Hamilton"), and the Village of Blanchester, Ohio (each a "Settling Party" and all collectively, the "Settling Parties"). The Settling Parties enter into this Settlement Agreement to resolve all

Page 1 of 20

A-1

issues in Docket Nos. ER12-91-000, ER12-92-000, and the above-referenced sub-dockets.

**ARTICLE I**

1.1.    On October 14, 2011, in Docket Nos. ER12-91-000 and ER12-92-000, DEO and DEK (jointly, the "Duke Companies") jointly filed, pursuant to section 205 of the Federal Power Act ("FPA"), proposed modifications to the PJM Interconnection, L.L.C. ("PJM") Open Access Transmission Tariff ("PJM Tariff") in connection with the Duke Companies' move from the Midwest Independent Transmission System Operator, Inc. *n/k/a* Midcontinent Independent System Operator, Inc. ("MISO" or "Midcontinent ISO") Regional Transmission Organization ("RTO") to the PJM RTO.  The Duke Companies' proposed modifications to the PJM Tariff pertained to establishing and recovering the Duke Companies' transmission revenue requirement, including formula rate protocols.  In addition, under section 205 of the FPA, PJM submitted proposed modifications to the PJM Tariff, the Amended and Restated Operating Agreement of PJM, the Reliability Assurance Agreement Among Load Serving Entities in the PJM Region, and the Consolidated Transmission Owners Agreement (collectively, the "PJM Agreements").  The Duke Companies and PJM jointly requested an effective date of January 1, 2012, for the proposed changes.

1.2.    On November 4, 2011, AMP, on behalf of itself and its members Hamilton, Lebanon, and Williamstown (Hamilton, Lebanon, and Williamstown collectively referred to herein as the "AMP Members"), filed a timely motion to intervene, protest, and request for suspension and hearings in this proceeding.

Also on November 4, 2011, IMPA filed a timely motion to intervene and protest in this proceeding.  No other party protested the filings.

    **1.3.**    On December 27, 2011, the Duke Companies filed a Request for Deferral of Action requesting that the Commission enable the Duke Companies, AMP and IMPA to continue settlement discussions that, if successful, would resolve all issues in this proceeding.  The request was submitted on the condition that it would have no effect on the requested effective date of January 1, 2012.  Solely in order to defer Commission action on the pending tariff change filing, the Duke Companies and PJM submitted on December 29, 2011, a ministerial filing that contained no changes to the existing tariff records filed in these dockets on October 14, 2011.  The Commission issued public notice of the filing.  No comments were filed.

    **1.4.**    On January 10, 2012, Hamilton filed a motion to intervene in this proceeding in its own right.

    **1.5.**    On February 24, 2012, the Duke Companies filed a second Request for Deferral of Action.  The Commission issued public notice of the filing.  No comments were filed.

    **1.6.**    On April 5, 2012, the Duke Companies and IMPA filed a settlement agreement in this proceeding that resolved all issues between the Duke Companies and IMPA ("April 5 Settlement").

    **1.7.**    On April 24, 2012, the Commission issued an order that denied recovery by the Duke Companies from wholesale transmission customers of Legacy MTEP Costs (as hereinafter defined) and PJM Transition Costs and

Internal Integration Costs (as hereinafter defined), without prejudice to a new filing under section 205 of the FPA seeking to justify such recovery, established hearing and settlement judge procedures pursuant to section 206 of the FPA for determination of the Duke Companies' rate of return on equity, and approved the April 5 Settlement. *PJM Interconnection, L.L.C., et al.*, 139 FERC ¶ 61,068 (2012) ("April 24 Order").  IMPA subsequently withdrew its protest of the Duke Companies' filing, leaving AMP as the only party (on its own behalf and on behalf of the AMP Members) with a protest in the proceeding.

    **1.8.**    On May 24, 2012, the Duke Companies filed revised tariff records in compliance with the April 24 Order.  On the same date, the Duke Companies filed a request for rehearing of the April 24 Order.

    **1.9.**    On February 4, 2013, the Duke Companies, AMP, and the AMP Members filed a settlement agreement in this proceeding.  That settlement agreement provided, among other things, for the recovery of Legacy MTEP Costs, PJM Transition Costs and Internal Integration Costs (each as defined in that settlement agreement) from all wholesale transmission customers, together with a reimbursement to AMP and the AMP Members for 75 percent of the Legacy MTEP Costs and 100 percent of the PJM Transition Costs.

    **1.10.**    By order issued September 19, 2013, the Commission rejected that settlement agreement, stating, among other things, that it was "unclear . . . that all customers were on notice that these issues [the recovery of Legacy MTEP Costs, PJM Transition Costs, and Internal Integration Costs] would be resolved [in this proceeding]" and that the Duke Companies had not shown that the settlement was

not unduly discriminatory in failing to extend the benefits offered to AMP to the Duke Companies' other customers.  *PJM Interconnection, L.L.C., et al.*, 144 FERC ¶ 61,217 at PP 19-20 (2013).  Thereafter, the parties resumed settlement discussions.

1.11.  On October 18, 2013, AMP filed a request for rehearing of the September 19, 2013 order.

1.12.  On December 17, 2013, the Duke Companies provided notice to all of their wholesale transmission customers that settlement discussions in this proceeding had resumed, and that the settlement negotiations may address transmission rate matters beyond the return on equity issue specifically set for hearing and settlement procedures in the April 24 Order, including the Duke Companies' recovery in rates of all or a portion of the legacy MISO Transmission Expansion Plan costs incurred by the Duke Companies.  A copy of that notice is attached as Exhibit A.  The Duke Companies stated that the outcome of the settlement negotiations could affect the amount paid for wholesale transmission service in the DEOK Zone (as hereinafter defined), and that any customer wishing to intervene in the proceeding out of time should do so by January 7, 2014.

1.13.  On December 18, 2013, Dayton filed a motion to intervene.  On January 3, 2014, Buckeye filed a motion to intervene.  On January 10, 2014, East Kentucky filed a motion to intervene.  These motions were granted by the Chief Judge by orders issued January 9, 2014 and January 22, 2014.

1.14.  Settlement discussions resumed following the Chief Judge's orders granting the additional interventions.  By order issued March 10, 2014, the

Settlement Judge issued a report stating that the parties had reached an impasse in their settlement negotiations, and recommending that settlement judge procedures be terminated.  By order issued March 11, 2014, the Chief Judge accepted the recommendation of the Settlement Judge to terminate settlement judge procedures, and designated the Honorable Philip C. Baten to preside over the evidentiary hearing.   On March 24, 2014, the Chief Judge issued an order making a substitute designation of the Honorable Jennifer Whang to preside over the evidentiary hearing.

**1.15.**  By order issued April 2, 2014, Presiding Judge Whang adopted a procedural schedule for the trial in this proceeding.  On July 11, 2014, Presiding Judge Whang issued an order modifying the procedural schedule for the trial in this proceeding.

**1.16.**  Informal settlement discussions continued during this period.  On July 30, 2014, the Duke Companies, AMP, Buckeye, East Kentucky, and Hamilton submitted to Presiding Judge Whang  an unopposed joint motion informing her that the parties had reached agreement on the terms of a negotiated resolution of the issues in these dockets, and requesting that the procedural schedule be suspended.  By order dated August 1, 2014, the Chief Judge suspended the procedural schedule to permit the preparation and filing of formal settlement documents.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein, and for other good and valuable

consideration, the receipt and sufficiency of which are hereby acknowledged, the Settling Parties, intending to be legally bound, agree as follows:

## ARTICLE II

All defined terms have the meanings set forth in this Settlement Agreement. All rules of construction and interpretation of this Settlement Agreement shall be as set forth in the PJM Tariff or PJM Agreements.

"DEOK Zone" means the DEOK Zone as set forth in the PJM Tariff.

"Internal Integration Costs" means the internal administrative costs incurred by the Duke Companies to accomplish their move from MISO into PJM.

"Legacy MTEP Costs" means all costs arising from obligations of the Duke Companies or the Wholesale Transmission Customers to pay any portion of the costs of identified transmission expansion projects included in any Midcontinent ISO Transmission Expansion Plan ("MTEP") that was approved by the MISO Board of Directors prior to the date of the Duke Companies' integration into PJM, including any such costs that arise from Multi-Value Projects, as defined in Section II.C of Attachment FF to the MISO open access transmission tariff, that were approved by the MISO Board of Directors prior to the date of the Duke Companies' integration into PJM.

"MISO" or "Midcontinent ISO" means the Midcontinent Independent System Operator, Inc. or the Midwest Independent Transmission System Operator, Inc., as it was formerly known, or the successor thereto.

"PJM" means PJM Interconnection, L.L.C., or the successor thereto.

"PJM Agreements" means the Amended and Restated Operating Agreement of PJM Interconnection, L.L.C., the Reliability Assurance Agreement

Page 7 of 20

Among Load Serving Entities in the PJM Region, and the Consolidated Transmission Owners Agreement.

"PJM Formula Rate" means PJM Tariff Attachment H-22A, which was submitted by the Duke Companies in the filing in the above-referenced Docket Nos. ER12-91-000 and ER12-92-000.

"PJM RTEP Costs" means costs defined by PJM in Schedule 12 of the PJM Tariff and charged under Schedule 12-Appendix and Schedule 12-Appendix A of the PJM Tariff.

"PJM Tariff" means the PJM Interconnection, L.L.C. Open Access Transmission Tariff.

"PJM Transition Costs" means costs identified as "Transition Costs" in the Duke Companies' filings submitted in the above-referenced proceeding and therein proposed to be included in the PJM Formula Rate, specifically, costs associated with: (1) the Duke Companies' obligation under Article Five, Section II.B of the MISO Transmission Owners' Agreement ("MISO TOA") to pay certain amounts to MISO as an exit fee; (2) the Duke Companies' agreement, approved by the Commission in Docket No. ER11-2059-000, to pay MISO $1.8 million to resolve a dispute over MISO tariff revisions proposed to address alleged adverse effects on the feasibility of Long-Term Firm Transmission Rights resulting from the withdrawal of the Duke Companies from MISO; and (3) the Duke Companies' agreement to pay PJM approximately $1 million as compensation for PJM's costs incurred in connection with the Duke Companies' transition to PJM ("PJM Integration Costs").

"Wholesale Transmission Customers" means all entities receiving wholesale transmission service from PJM for electrical load in the DEOK Zone, either directly or indirectly as members of AMP, Buckeye, East Kentucky, or IMPA.

## ARTICLE III

**3.1.** *PJM Transition Costs and Internal Integration Costs.* Effective January 1, 2012, the Duke Companies' revenue requirement for wholesale transmission service provided by PJM for electrical load in the DEOK Zone shall exclude one hundred percent (100%) of PJM Transition Costs and Internal Integration Costs. This one hundred percent (100%) exclusion of such costs shall not be subject to change at any time or for any reason.

**3.2.** *Legacy MTEP Costs*

a.     During the period beginning January 1, 2012 and through the day before the date this Settlement Agreement becomes effective in accordance with Section 4.3, the charges for wholesale transmission service for electrical load in the DEOK Zone shall exclude one hundred percent (100%) of Legacy MTEP Costs. The exclusion of one hundred percent (100%) of such costs shall not be subject to change at any time or for any reason.

b.     On and after the date this Settlement Agreement becomes effective in accordance with Section 4.3 and continuing for so long as the Duke Companies remain subject to Legacy MTEP Costs, the charges for wholesale transmission service for electrical load in the DEOK Zone shall exclude seventy percent (70%) of any Legacy MTEP Costs, and shall include thirty percent (30%) of any Legacy MTEP Costs. The Duke Companies shall maintain in effect throughout such period tariff records that reflect the exclusion of seventy percent (70%) of such costs

from, and the inclusion of thirty percent (30%) of such costs in, the charges for such wholesale transmission service. The exclusion of seventy percent (70%) and inclusion of thirty percent (30%) of such costs shall not be subject to change at any time or for any reason.

c.      Nothing herein shall affect the payment obligation of a Wholesale Transmission Customer with respect to PJM RTEP Costs included in the charges for wholesale transmission service that PJM provides in the DEOK Zone, nor shall anything herein obligate the Duke Companies to provide reimbursement to any Wholesale Transmission Customer for all or any portion of PJM RTEP Costs included in the charges for wholesale transmission service that PJM provides in the DEOK Zone.

**3.3.**   *Return on Common Equity*

a.      On and after the date this Settlement Agreement becomes effective in accordance with Section 4.3 and continuing until changed by order of the Commission, the return on common equity ("ROE") in the Duke Companies' revenue requirement for wholesale transmission service shall be a total of 11.38%, consisting of a 10.88% base cost of common equity and a 0.5% ROE adder as permitted by Commission policy for participation in a regional transmission organization (hereinafter, the "Base/RTO ROE"), subject to the rights reserved in the proviso of Section 3.3.b.

b.      The Duke Companies shall make no unilateral filing seeking an increase in the Base/RTO ROE that would become effective before June 1, 2017. No Settling Party shall make a unilateral filing seeking a reduction in the

Base/RTO ROE that would become effective before June 1, 2017, nor shall any Settling Party support a request made by any other entity seeking a reduction in the Base/RTO ROE that would become effective before June 1, 2017; provided, however, that the Settling Parties (or any of them) shall not be precluded from making or supporting a filing to eliminate the 0.5% ROE adder if the Duke Companies terminate their participation in an RTO before June 1, 2017.

     c.     Nothing herein shall affect either (i) the right of the Duke Companies to request an incentive ROE adder applicable to any specific transmission project or projects, if and as consistent with Commission policy, that would become effective before June 1, 2017, or (ii) the right of any Wholesale Transmission Customer to oppose such a request.

     **3.4**     *Tariff Provisions.*

     a.     Effective January 1, 2012, the tariff records included as Exhibit B to this Settlement Agreement shall replace and supersede the tariff records included in PJM Tariff Attachments H-22 and JJ that were filed in this proceeding on October 14, 2011 and May 24, 2012.  Not later than 30 days after the date this Settlement Agreement becomes effective in accordance with Section 4.3, the Duke Companies shall submit the tariff records included in Exhibit B to the Commission through eTariff as a compliance filing.  The Settling Parties shall not oppose or protest a filing made by the Duke Companies in conformity with this Section 3.4.a.

     b.     Effective on the date this Settlement Agreement becomes effective in accordance with Section 4.3, the tariff records included as Exhibit C to this

Settlement Agreement shall replace and supersede the tariff records included in PJM Tariff Attachments H-22 and JJ that are attached as Exhibit B to this Settlement Agreement.  Not later than 30 days after the date this Settlement Agreement becomes effective in accordance with Section 4.3, the Duke Companies shall submit the tariff records included in Exhibit C to the Commission through eTariff as a compliance filing.  The Settling Parties shall not oppose or protest a filing made by the Duke Companies in conformity with this Section 3.4.b.

**3.5.**    *Tariff Charges.*

a.    None of the Settling Parties shall initiate a proceeding for the purpose of seeking a change in the charges for Legacy MTEP Costs that are in conformance with Section 3.2, nor shall any of the Settling Parties, in any proceeding initiated by others, support a change in the charges for Legacy MTEP Costs that are in conformance with Section 3.2.

b.    No Settling Party shall initiate a proceeding for the purpose of seeking a reduction in the charges to Wholesale Transmission Customers for PJM RTEP Costs on the ground that Wholesale Transmission Customers are paying for Legacy MTEP Costs; nor shall any Settling Party, in any proceeding initiated by others, support a reduction in the charges to Wholesale Transmission Customers for PJM RTEP Costs on the ground that Wholesale Transmission Customers are paying for Legacy MTEP Costs.

**3.6.**    *Satisfaction of Claims for Recovery of Legacy MTEP Costs.*  The Duke Companies agree that payment of the amounts of any Legacy MTEP Costs included in the rates to Wholesale Transmission Customers in the PJM Tariff, as

provided for in Section 3.2, fully satisfies and discharges any claimed right of the Duke Companies to recover from Wholesale Transmission Customers Legacy MTEP Costs or any other costs, charges or fees arising from or relating to the Duke Companies' participation in MISO prior to January 1, 2012. Accordingly, the Duke Companies shall not make any filing seeking recovery from any Wholesale Transmission Customer of Legacy MTEP Costs or any other costs, charges, or fees arising from or relating to the Duke Companies' participation in MISO prior to January 1, 2012, beyond or in addition to the recovery provided for in Section 3.2.

**3.7** *Resolution of All Hold Harmless Obligations.* The Settling Parties agree that (a) the considerations provided by the Duke Companies under this Settlement Agreement to the Wholesale Transmission Customers are in resolution of "hold harmless" claims made by any Settling Party pursuant to Article V, Section 2 of the MISO TOA and resolve all claims raised by any Settling Party in these proceedings; and that (b) the obligation of the Duke Companies to provide such considerations is contingent upon this Settlement Agreement becoming effective in accordance with Section 4.3. The Duke Companies' compliance with the terms of this Settlement Agreement shall fully satisfy and discharge any and all obligations of the Duke Companies to render payment to any Settling Party according to the terms of Article V, Section 2 of the MISO TOA in connection with the Duke Companies' withdrawal from MISO, and such satisfaction and discharge shall not be affected by any amendment, substitute or successor to that provision, or any amendment, substitute or successor to the PJM Formula Rate filed in this proceeding. Each of the Settling Parties agrees not to make any protest or raise

any claim against the Duke Companies or their parents or affiliates, before any government agency or court, asserting that the Duke Companies or their parents or affiliates owe any of the Settling Parties, respectively, any further "hold harmless" or other compensation under Article V, Section 2 of the MISO TOA, or any other monies or damages of any nature in connection with the Duke Companies' withdrawal from the Midcontinent ISO.

**3.8.** *Withdrawal of Rehearing Request.* Within five (5) days of the date of this Settlement Agreement, the Duke Companies and AMP shall request that the Commission hold in abeyance their respective May 24, 2012, and October 18, 2013 requests for rehearing in this proceeding pending action on this Settlement Agreement. In the event that this Settlement Agreement becomes effective pursuant to clause (a) of the first sentence of Section 4.3, then within five (5) days of the date that this Settlement Agreement becomes effective, the Duke Companies and AMP shall withdraw their respective May 24, 2012, and October 18, 2013 requests for rehearing in this proceeding. In the event that this Settlement Agreement becomes effective pursuant to clause (b) of the first sentence of Section 4.3, then within twenty (20) days of the date that this Settlement Agreement becomes effective the Duke Companies and AMP shall withdraw their respective May 24, 2012, and October 18, 2013 requests for rehearing in this proceeding. In the event that this Settlement Agreement does not become effective pursuant to Section 4.3, then the Duke Companies and AMP may, at their individual options, withdraw their respective requests that the

Commission hold in abeyance their respective May 24, 2012, and October 18, 2013 requests for rehearing in this proceeding.

## ARTICLE IV

**4.1.**    *Scope of the Agreement.*    This Settlement Agreement constitutes the entire agreement among the Settling Parties with respect to the subject matter addressed herein, and supersedes any and all prior or contemporaneous representations, agreements, instruments and understandings between them, whether written or oral.  There are no other oral understandings, terms, or conditions, and none of the Settling Parties has relied upon any representation, express or implied, not contained in this Settlement Agreement.  Nothing in this Settlement Agreement should be construed as negating or fulfilling the obligations or responsibilities of the Duke Companies or any of the Wholesale Transmission Customers under the PJM Tariff or PJM Agreements.

**4.2.**    *Non-Severability.*    The Settling Parties agree and understand that the various provisions of this Settlement Agreement are not severable and shall not become operative unless and until this Settlement Agreement and the revised tariff records provided for herein become effective as described in Section 4.3.

**4.3.**    *Effectiveness of Settlement Agreement.*    This Settlement Agreement and the provisions hereof shall become effective upon (a) the issuance of an order by the Commission accepting or approving this Settlement Agreement without condition or modification, or (b) the issuance of an order by the Commission accepting or approving this Settlement Agreement with condition(s) or modification(s), if no Settling Party files notice with the Commission within fifteen (15) days of the approval of the Settlement Agreement stating that it objects to

Page 15 of 20

such condition(s) or modification(s). If any Settling Party files such notice, the Settlement Agreement shall be null and void and of no force or effect.

**4.4.** *Reservations.* Notwithstanding the provisions of Sections 4.2 and 4.3, the provisions of Section 3.8 (holding of request for rehearing in abeyance), Section 4.6 (confidentiality of settlement discussions), and Section 4.7 (assurances of cooperation) shall become effective upon execution of the Settlement Agreement.

**4.5.** *No Precedent.* This Settlement Agreement is submitted pursuant to Rule 602 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.602 (2014), and is inadmissible as evidence in any proceeding except a proceeding involving a claim of breach of, or an effort to enforce, this Settlement Agreement. It is further understood and agreed that this Settlement Agreement constitutes a negotiated agreement and, except as explicitly set forth herein, no Settling Party shall be deemed to have approved, accepted, agreed or consented to any principle or position in this proceeding.

**4.6.** *Settlement Discussions.* The discussions between and among the Settling Parties that have produced this Settlement Agreement have been conducted with the explicit understanding, pursuant to Rule 602 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.602 (2014), that all offers of settlement and discussions relating thereto shall be privileged and confidential, shall be without prejudice to the position of any Settling Party or participant presenting any such offer or participating in any such discussion, and

are not to be used in any manner in connection with this proceeding, any other proceeding, or otherwise, except to the extent necessary to enforce its terms.

**4.7.**    *Further Assurances*.  Each Settling Party shall cooperate with and support, and shall not take any action inconsistent with:  (i) the filing of this Settlement Agreement with the Commission, and (ii) efforts to obtain Commission acceptance or approval of this Settlement Agreement without change or condition. No Settling Party shall take any action that is inconsistent with the provisions of this Settlement Agreement.

**4.8.**    *Waiver*.  No provision of this Settlement Agreement may be waived except through a writing signed by an authorized representative of the waiving Settling Party or the waiving Settling Parties.  Waiver of any particular provision of this Settlement Agreement shall not be deemed to waive any other provision or provisions hereof.

**4.9.**    *Modifications/Standard of Review*.  Unless the Settling Parties otherwise agree in writing, any modification to this Settlement Agreement proposed by one of the Settling Parties after the Settlement Agreement has become effective in accordance with Section 4.3 shall, as between them, be subject to the "public interest" application of the just and reasonable standard of review set forth in *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.*, 350 U.S. 332 (1956) and *Federal Power Commission v. Sierra Pacific Power Co.*, 350 U.S. 348 (1956) (the *Mobile-Sierra* doctrine), as clarified in *Morgan Stanley Capital Group, Inc. v. Public Util. Dist. No. 1 of Snohomish County, Washington*, 128 S.Ct. 2733, 171 L. Ed. 2d 607 (2008) and refined in *NRG Power Mktg. v. Maine Pub.*

*Utils. Comm'n*, 130 S. Ct. 693, 700 (2010). Any modification proposed by the Commission acting *sua sponte* or by a non-Settling Party shall be subject to the just and reasonable standard.

    **4.10.** *Successors and Assigns.* This Settlement Agreement is binding upon and for the benefit of the Settling Parties and their successors and assigns.

    **4.11.** *Captions and References to Sections.* The captions in this Settlement Agreement are for convenience of reference only and are not a part of this Settlement Agreement and do not in any way limit or amplify the terms and provisions of this Settlement Agreement and shall have no effect on its interpretation. Unless otherwise indicated, references to "Sections" in this Settlement Agreement refer to sections in this Settlement Agreement.

    **4.12.** *Ambiguities Neutrally Construed.* This Settlement Agreement is the result of negotiations among, and has been reviewed by, each Settling Party and its respective counsel. Accordingly, this Settlement Agreement shall be deemed to be the product of each Settling Party, and no ambiguity shall be construed in favor of or against any Settling Party based on authorship of this Settlement Agreement.

    **4.13.** *Authorization.* Each person executing this Settlement Agreement on behalf of a Settling Party represents and warrants that he or she is duly authorized and empowered to act on behalf of, and to authorize this Settlement Agreement to be executed on behalf of, the Settling Party that he or she represents.

    **4.14.** *Notices.* All notices, demands, and other communications hereunder shall be in writing and shall be delivered to each Settling Party's "Corporate

Page 18 of 20

A-18

Official" as found on the Commission's website at http://www.ferc.gov/docs-filing/corp-off.asp or the representative(s) of each Settling Party included on the official service list in Docket Nos. ER12-91-000 and ER12-92-000.

 **4.15.** *Counterparts.* This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

 **4.16** *Termination of Prior IMPA Settlement Agreement.* Effective on the date that this Settlement Agreement becomes effective in accordance with Section 4.3, the April 5 Settlement shall be terminated, and shall be of no force or effect.

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be duly executed.

DUKE ENERGY OHIO, INC.

By: _Gary A. Morgans_    Date: _10.29.14_

DUKE ENERGY KENTUCKY, INC.

By: _Gary A. Morgans_    Date: _10.29.14_

AMERICAN MUNICIPAL POWER, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _____    Date: _____

BUCKEYE POWER, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _____    Date: _____

THE DAYTON POWER AND LIGHT COMPANY

By: _____    Date: _____

EAST KENTUCKY POWER COOPERATIVE, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _____    Date: _____

INDIANA MUNICIPAL POWER AGENCY

By: _____    Date: _____

CITY OF HAMILTON, OHIO

By: _____    Date: _____

VILLAGE OF BLANCHESTER, OHIO

By: _____    Date: _____

Page 20 of 20

A-20

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be duly executed.

DUKE ENERGY OHIO, INC.

By: _____    Date: _____

DUKE ENERGY KENTUCKY, INC.

By: _____    Date: _____

AMERICAN MUNICIPAL POWER, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _~~~signature~~~_    Date: 10/14/2014

BUCKEYE POWER, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _____    Date: _____

THE DAYTON POWER AND LIGHT COMPANY

By: _____    Date: _____

EAST KENTUCKY POWER COOPERATIVE, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _____    Date: _____

INDIANA MUNICIPAL POWER AGENCY

By: _____    Date: _____

CITY OF HAMILTON, OHIO

By: _____    Date: _____

VILLAGE OF BLANCHESTER, OHIO

By: _____    Date: _____

Page 20 of 20

A-21

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement

Agreement to be duly executed.

DUKE ENERGY OHIO, INC.

By: _____    Date: _____

DUKE ENERGY KENTUCKY, INC.

By: _____    Date: _____

AMERICAN MUNICIPAL POWER, INC., ON BEHALF OF ITSELF AND ITS
MEMBERS

By: _____    Date: _____

BUCKEYE POWER, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _*[signature]*_    Date: _10/8/14_

THE DAYTON POWER AND LIGHT COMPANY

By: _____    Date: _____

EAST KENTUCKY POWER COOPERATIVE, INC., ON BEHALF OF
ITSELF AND ITS MEMBERS

By: _____    Date: _____

INDIANA MUNICIPAL POWER AGENCY

By: _____    Date: _____

CITY OF HAMILTON, OHIO

By: _____    Date: _____

VILLAGE OF BLANCHESTER, OHIO

By: _____    Date: _____

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be duly executed.

DUKE ENERGY OHIO, INC.

By: _____    Date: _____

DUKE ENERGY KENTUCKY, INC.

By: _____    Date: _____

AMERICAN MUNICIPAL POWER, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _____    Date: _____

BUCKEYE POWER, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _____    Date: _____

THE DAYTON POWER AND LIGHT COMPANY

By: _~Randall V. Coff~_    Date: _10-16-2014_

EAST KENTUCKY POWER COOPERATIVE, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _____    Date: _____

INDIANA MUNICIPAL POWER AGENCY

By: _____    Date: _____

CITY OF HAMILTON, OHIO

By: _____    Date: _____

VILLAGE OF BLANCHESTER, OHIO

By: _____    Date: _____

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be duly executed.

DUKE ENERGY OHIO, INC.

By: _____    Date: _____

DUKE ENERGY KENTUCKY, INC.

By: _____    Date: _____

AMERICAN MUNICIPAL POWER, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _____    Date: _____

BUCKEYE POWER, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _____    Date: _____

THE DAYTON POWER AND LIGHT COMPANY

By: _____    Date: _____

EAST KENTUCKY POWER COOPERATIVE, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _Ann Coblus_    Date: _10/22/14_
     _Counsel_

INDIANA MUNICIPAL POWER AGENCY

By: _____    Date: _____

CITY OF HAMILTON, OHIO

By: _____    Date: _____

VILLAGE OF BLANCHESTER, OHIO

By: _____    Date: _____

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement

Agreement to be duly executed.

DUKE ENERGY OHIO, INC.

By: _____     Date: _____

DUKE ENERGY KENTUCKY, INC.

By: _____     Date: _____

AMERICAN MUNICIPAL POWER, INC., ON BEHALF OF ITSELF AND ITS
MEMBERS

By: _____     Date: _____

BUCKEYE POWER, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _____     Date: _____

THE DAYTON POWER AND LIGHT COMPANY

By: _____     Date: _____

EAST KENTUCKY POWER COOPERATIVE, INC., ON BEHALF OF
ITSELF AND ITS MEMBERS

By: _____     Date: _____

INDIANA MUNICIPAL POWER AGENCY

By: _Basil·Nao_____     Date: _10/10/14_ BP

CITY OF HAMILTON, OHIO

By: _____     Date: _____

VILLAGE OF BLANCHESTER, OHIO

By: _____     Date: _____

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement

Agreement to be duly executed.

DUKE ENERGY OHIO, INC.

By: _____    Date: _____

DUKE ENERGY KENTUCKY, INC.

By: _____    Date: _____

AMERICAN MUNICIPAL POWER, INC., ON BEHALF OF ITSELF AND ITS
MEMBERS

By: _____    Date: _____

BUCKEYE POWER, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _____    Date: _____

THE DAYTON POWER AND LIGHT COMPANY

By: _____    Date: _____

EAST KENTUCKY POWER COOPERATIVE, INC., ON BEHALF OF
ITSELF AND ITS MEMBERS

By: _____    Date: _____

INDIANA MUNICIPAL POWER AGENCY

By: _____    Date: _____

CITY OF HAMILTON, OHIO

By: _____ A/CM  Date: 10/23/14

VILLAGE OF BLANCHESTER, OHIO

By: _____    Date: _____

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement
Agreement to be duly executed.

DUKE ENERGY OHIO, INC.

By: _____    Date: _____

DUKE ENERGY KENTUCKY, INC.

By: _____    Date: _____

AMERICAN MUNICIPAL POWER, INC., ON BEHALF OF ITSELF AND ITS
MEMBERS

By: _____    Date: _____

BUCKEYE POWER, INC., ON BEHALF OF ITSELF AND ITS MEMBERS

By: _____    Date: _____

THE DAYTON POWER AND LIGHT COMPANY

By: _____    Date: _____

EAST KENTUCKY POWER COOPERATIVE, INC., ON BEHALF OF
ITSELF AND ITS MEMBERS

By: _____    Date: _____

INDIANA MUNICIPAL POWER AGENCY

By: _____    Date: _____

CITY OF HAMILTON, OHIO

By: _____    Date: _____

VILLAGE OF BLANCHESTER, OHIO

By: _John M. Carman act Mayor_    Date: _10-6-2014_

Page 20 of 20

A-27

**EXHIBIT A**

**NOTICE TO WHOLESALE TRANSMISSION CUSTOMERS OF DUKE ENERGY OHIO, INC. AND DUKE ENERGY KENTUCKY, INC.**

The purpose of this communication is to inform you of the following:

(1) Duke Energy Ohio, Inc. and Duke Energy Kentucky, Inc. (the "Duke Companies") made a filing with the Federal Energy Regulatory Commission ("FERC") on October 14, 2011 that will affect the rates that your company pays to PJM Interconnection, LLC for wholesale transmission service. That filing is pending before the FERC in Docket Nos. ER12-91 and ER12-92.

(2) The Duke Companies' October 14, 2011 filing was addressed by the FERC in an order issued on April 24, 2012. That order disposed of certain issues raised in connection with the October 14, 2011 filing, approved a settlement agreement entered into between the Duke Companies and Indiana Municipal Power Agency ("IMPA"), and set for hearing and settlement procedures the Duke Companies' proposed return on equity. For your reference, a copy of the April 24, 2012 order is provided as Attachment 1.

(3) The Duke Companies, American Municipal Power, Inc. ("AMP"), and the AMP member companies thereafter entered into a settlement agreement and filed it with FERC on February 4, 2013. On September 19, 2013, FERC rejected the settlement agreement.

(4) Settlement negotiations have resumed in FERC Docket Nos. ER12-91 and ER12-92 under the supervision of a FERC Administrative Law Judge. The settlement negotiations may address transmission rate matters beyond the return on equity issue specifically set for hearing and settlement procedures in the April 24, 2012 order, including the Duke Companies' recovery in rates of all or a portion of the legacy MISO Transmission Expansion Plan costs incurred by the Duke Companies.

(5) The outcome of the settlement negotiations ongoing in FERC Docket Nos. ER12-91 and ER12-92 may affect the charges your company pays to PJM Interconnection for wholesale transmission service in the Duke zone.

(6) If you wish to participate in the ongoing settlement negotiations, you must file a motion to intervene out of time with the FERC pursuant to Rule 214(b)(3) of the Commission's Rules and Regulations. A copy of Rule 214 is provided as Attachment 2.

Please advise whether your company desires to participate in the settlement negotiations by providing a written response to me by January 7, 2014. We will construe your failure to respond by that date as a decision to not participate in the negotiations.

**EXHIBIT B**

**ATTACHMENT H-22**
**Annual Transmission Rates – DEOK**
**for Network Integration Transmission Service**
**and Point-to-Point Transmission Service**

1. The Annual Transmission Revenue Requirements ("ATRR") and the rates for Network Integration Transmission Service and Point-to-Point Transmission Service are equal to the results of the formula shown in Attachment H-22A, and will be posted on the PJM website. The ATRR and the rates reflect the cost of providing transmission service over the 69 kV and higher transmission facilities of Duke Energy Ohio, Inc., and Duke Energy Kentucky, Inc. (jointly, "DEOK"). Service utilizing other DEOK facilities will be provided at rates determined on a case-by-case basis and stated in service agreements with affected customers.

2. The formula rate in this attachment shall be effective until amended by DEOK or modified by the Commission.

3. In addition to the rate set forth in paragraph 1, a Network Customer purchasing Network Integration Transmission Service shall pay for transmission congestion charges, in accordance with the provisions of the Tariff, and any amounts necessary to reimburse DEOK for any amounts payable by it as sales, excise, "Btu," carbon, value-added or similar taxes (other than taxes based upon or measured by net income) with respect to the amounts payable pursuant to the Tariff.

Formula Rate - Non-Levelized                                                    For the 12 months ended 12/31/_____

**Rate Formula Template**
Utilizing FERC Form 1 Data

DUKE ENERGY OHIO AND DUKE ENERGY KENTUCKY (DEOK)

| Line No. | | | | Total | | Allocator | | Allocated Amount |
|---|---|---|---|---|---|---|---|---|
| 1 | GROSS REVENUE REQUIREMENT    (page 3, line 29) | | | | | | | $    - |
| | REVENUE CREDITS    (Note T) | | | Total | | Allocator | | |
| 2 | Account No. 454 | (page 4, line 34) | | $    - | TP | 0.00000 | | $    - |
| 3 | Account No. 456.1 | (page 4, line 35) | | 0 | TP | 0.00000 | | 0 |
| 4a | Revenues from Grandfathered Interzonal Transactions | | | 0 | TP | 0.00000 | | 0 |
| 4b | Revenues from service provided by ISO at a discount | | | 0 | TP | 0.00000 | | 0 |
| 5a | Legacy MTEP Credit (Appendix C, page 2, line 3, col. 12) | | | 0 | | 1.00000 | | 0 |
| 5b | Firm PTP Revenue Credit Adjustment (Appendix E, line 10, col. 3) | | | 0 | | 1.00000 | | 0 |
| 6 | TOTAL REVENUE CREDITS  (sum lines 2-5b) | | | | | | | $    - |
| 7 | NET REVENUE REQUIREMENT | (line 1 minus line 6) | | | | | | $    - |
| | DIVISOR | | | | | | | |
| 8 | 1 CP  (Note A) | | | | | | | 0 |
| 9 | 12 CP  (Note B) | | | | | | | 0 |
| 10 | Reserved | | | | | | | |
| 11 | Reserved | | | | | | | |
| 12 | Reserved | | | | | | | |
| 13 | Reserved | | | | | | | |
| 14 | Reserved | | | | | | | |
| 15 | Annual Cost ($/kW/Yr) - 1 CP | (line 7 / line 8) | | $0.000 | | | | |
| 16 | Annual Cost ($/kW/Yr) - 12 CP | (line 7 / line 9) | | $0.000 | | | | |
| 17 | Network Rate ($/kW/Mo) | (line 15 / 12) | | $0.000 | | | | |
| 17a | Point-To-Point Rate ($/kW/Mo) | (line 16 / 12) | | $0.000 | | | | |
| | | | | Peak Rate | | | | Off-Peak Rate |
| 18 | Point-To-Point Rate ($/kW/Wk) | (line 16 / 52; line 16 / 52) | | $0.000 | | | | |
| 19 | Point-To-Point Rate ($/kW/Day) | (line 16 / 260; line 16 / 365) | | $0.000 | Capped at weekly rate | | | $0.000 |
| 20 | Point-To-Point Rate ($/MWh) | (line 16 / 4,160; line 16 / 8,760 * 1000) | | $0.000 | Capped at weekly and daily rate | | | $0.000 |

Attachment H-22A
Page 2 of 6

Formula Rate - Non-Levelized                                    For the 12 months ended 12/31/_____

Rate Formula Template
Utilizing FERC Form 1 Data

DUKE ENERGY OHIO AND DUKE ENERGY KENTUCKY (DEOK)

| Line No. | (1) RATE BASE: | (2) Form No. 1 Page, Line, Col. | (3) Company Total | | (4) Allocator | (5) Transmission (Col. 3 times Col. 4) |
|---|---|---|---|---|---|---|
| | GROSS PLANT IN SERVICE | | | | | |
| 1 | Production | 205.46.g | $ - | NA | | $ - |
| 2 | Transmission | 207.58.g | 0 | TP | 0.00000 | $ - |
| 3 | Distribution | 207.75.g | 0 | NA | | |
| 4 | General & Intangible | 205.5.g & 207.99.g | 0 | W/S | 0.00000 | 0 |
| 5 | Common | 356.1 | 0 | CE | 0.00000 | 0 |
| 6 | TOTAL GROSS PLANT (sum lines 1-5) | | $ - | GP= | 0.000% | $ - |
| | ACCUMULATED DEPRECIATION | | | | | |
| 7 | Production | 219.20-24.c | $ - | NA | | $ - |
| 8 | Transmission | 219.25.c | 0 | TP | 0.00000 | $ - |
| 9 | Distribution | 219.26.c | 0 | NA | | |
| 10 | General & Intangible | 219.28.c | 0 | W/S | 0.00000 | 0 |
| 11 | Common | 356.1 | 0 | CE | 0.00000 | 0 |
| 12 | TOTAL ACCUM. DEPRECIATION (sum lines 7-11) | | $ - | | | $ - |
| | NET PLANT IN SERVICE | | | | | |
| 13 | Production | (line 1 - line 7) | $ - | | | |
| 14 | Transmission | (line 2 - line 8) | 0 | | | $ - |
| 15 | Distribution | (line 3 - line 9) | 0 | | | |
| 16 | General & Intangible | (line 4 - line 10) | 0 | | | 0 |
| 17 | Common | (line 5 - line 11) | 0 | | | 0 |
| 18 | TOTAL NET PLANT (sum lines 13-17) | | $ - | NP= | 0.000% | $ - |
| | ADJUSTMENTS TO RATE BASE (Note F) | | | | | |
| 19 | Account No. 281 (enter negative) | 273.8.k | $ - | NA | zero | $ - |
| 20 | Account No. 282 (enter negative) | 275.2.k | 0 | NP | 0.00000 | 0 |
| 21 | Account No. 283 (enter negative) | 277.9.k | 0 | NP | 0.00000 | 0 |
| 22 | Account No. 190 | 234.8.c | 0 | NP | 0.00000 | 0 |
| 23 | Account No. 255 (enter negative) | 267.8.h | 0 | NP | 0.00000 | 0 |
| 24 | TOTAL ADJUSTMENTS (sum lines 19- 23) | | $ - | | | $ - |
| 25 | LAND HELD FOR FUTURE USE (Note G) | 214.x.d | $ - | TP | 0.00000 | $ - |
| | WORKING CAPITAL    (Note H) | | | | | |
| 26 | CWC | calculated | $ - | | | 0 |
| 27 | Materials & Supplies    (Note G) | 227.8.c & .16.c | 0 | TE | 0.00000 | 0 |
| 28 | Prepayments (Account 165) | 111.57.c | 0 | GP | 0.00000 | 0 |
| 29 | TOTAL WORKING CAPITAL (sum lines 26 - 28) | | $ - | | | $ - |
| 30 | RATE BASE (sum lines 18, 24, 25, & 29) | | $ - | | | $ - |

A-33

Attachment H-22A
Page 3 of 6

Formula Rate - Non-Levelized

For the 12 months ended 12/31/_____

Rate Formula Template
Utilizing FERC Form 1 Data

DUKE ENERGY OHIO AND DUKE ENERGY KENTUCKY (DEOK)

| Line No. | (1) RATE BASE | (2) Form No. 1 Page, Line, Col. | (3) Company Total | (4) Allocator | (5) Transmission (Col. 3 times Col. 4) |
|---|---|---|---|---|---|
| | O&M | | | | |
| 1 | Transmission | 321.112.b | $ - | TE | 0.00000 | $ - |
| 1a | Less LSE Expenses included in Transmission O&M Accounts (Note V) | 321.88.b, 92.b; 322.121.b | 0 | | 1.00000 | 0 |
| 1b | Less Midcontinent ISO Fees included in Transmission O&M | (Note X) | 0 | TE | 0.00000 | 0 |
| 2 | Less Account 565 | 321.96.b | 0 | TE | 0.00000 | 0 |
| 3 | A&G | 323.197.b | 0 | W/S | 0.00000 | 0 |
| 3a | Less Actual PBOP Expense | (Note E) | 0 | W/S | 0.00000 | 0 |
| 3b | Plus Fixed PBOP Expense | (Note E) | 0 | W/S | 0.00000 | 0 |
| 3c | Less PJM Integration Costs included in A&G and Internal Integration Costs included in A&G | (Note Y) | 0 | W/S | 0.00000 | 0 |
| 4 | Less FERC Annual Fees | 350.14.b | 0 | W/S | 0.00000 | 0 |
| 5 | Less EPRI & Reg. Comm. Exp. & Non-safety Advertising   (Note I) | | 0 | W/S | 0.00000 | 0 |
| 5a | Plus Transmission Related Reg. Comm. Exp.  (Note I) | | 0 | TE | 0.00000 | 0 |
| 6 | Common | 356.1 | 0 | CE | 0.00000 | 0 |
| 7 | Transmission Lease Payments | | 0 | | 1.00000 | 0 |
| 8 | TOTAL O&M (Sum lines 1, 3, 3b, 5a, 6, 7 less lines 1a, 1b, 2, 3a, 3c, 3d, 4, 5) | | $ - | | | $ - |
| | DEPRECIATION EXPENSE | | | | | |
| 9 | Transmission | 336.7.b | $ - | TP | 0.00000 | $ - |
| 10 | General | 336.10.b | 0 | W/S | 0.00000 | 0 |
| 11 | Common | 336.11.b | 0 | CE | 0.00000 | 0 |
| 12 | TOTAL DEPRECIATION (Sum lines 9 - 11)   (Note J) | | $ - | | | $ - |
| | TAXES OTHER THAN INCOME TAXES   (Note J) | | | | | |
| | LABOR RELATED | | | | | |
| 13 | Payroll | 263.i | $ - | W/S | 0.00000 | $ - |
| 14 | Highway and vehicle | 263.i | 0 | W/S | 0.00000 | 0 |
| 15 | PLANT RELATED | | | | | |
| 16 | Property | 263.i | 0 | GP | 0.00000 | 0 |
| 17 | Gross Receipts | 263.i | 0 | NA | zero | 0 |
| 18 | Other | 263.i | 0 | GP | 0.00000 | 0 |
| 19 | Payments in lieu of taxes | | 0 | GP | 0.00000 | 0 |
| 20 | TOTAL OTHER TAXES  (sum lines 13 - 19) | | $ - | | | $ - |
| | INCOME TAXES    (Note K) | | | | | |
| 21 | $T = 1 - \{[(1 - SIT) * (1 - FIT)] / (1 - SIT * FIT * p)\} =$ | | 0.000000% | | | |
| 22 | $CIT = (T/1 - T) * (1 - (WCLTD/R)) =$ where WCLTD=(page 4, line 27) and R= (page 4, line 30) and FIT, SIT & p are as given in footnote K. | | 0.000000% | | | |
| 23 | $1 / (1 - T) =$ (from line 21) | | 0.0000 | | | |
| 24 | Amortized Investment Tax Credit | 266.8.f (enter negative) | 0 | | | |
| 25 | Income Tax Calculation (line 22 * line 28) | | $ - | NA | | $ - |
| 26 | ITC adjustment (line 23 * line 24) | | 0 | NP | 0.00000 | 0 |
| 27 | Total Income Taxes | (line 25 plus line 26) | $ - | | | $ - |
| 28 | RETURN [Rate Base (page 2, line 30) * Rate of Return (page 4, line 30)] | | $ - | NA | | $ - |
| 29 | REV. REQUIREMENT  (sum lines 8, 12, 20, 27, 28) | | $ - | | | $ - |

A-34

Formula Rate - Non-Levelized                                        For the 12 months ended 12/31/_____

Rate Formula Template
Utilizing FERC Form 1 Data

DUKE ENERGY OHIO AND DUKE ENERGY KENTUCKY (DEOK)
SUPPORTING CALCULATIONS AND NOTES

| Line No. | | | | | |
|---|---|---|---|---|---|
| | **TRANSMISSION PLANT INCLUDED IN ISO RATES** | | | | |
| 1 | Total transmission plant (page 2, line 2, column 3) | | | $ | - |
| 2 | Less transmission plant excluded from ISO rates   (Note M) | | | | 0 |
| 3 | Less transmission plant included in OATT Ancillary Services   (Note N) | | | | 0 |
| 4 | Transmission plant included in ISO Rates  (line 1 less lines 2 & 3) | | | | |
| 5 | Percentage of transmission plant included in ISO Rates (line 4 divided by line 1) | | TP= | | 0.00000 |
| | **TRANSMISSION EXPENSES** | | | | |
| 6 | Total transmission expenses   (page 3, line 1, column 3) | | | $ | - |
| 7 | Less transmission expenses included in OATT Ancillary Services   (Note L) | | | | 0 |
| 8 | Included transmission expenses (line 6 less line 7) | | | | |
| | | | | | |
| 9 | Percentage of transmission expenses after adjustment (line 8 divided by line 6) | | | | 0.00000 |
| 10 | Percentage of transmission plant included in ISO Rates (line 5) | | TP | | 0.00000 |
| 11 | Percentage of transmission expenses included in ISO Rates (line 9 times line 10) | | TE= | | 0.00000 |

**WAGES & SALARY ALLOCATOR  (W&S)**

| Line | | Form 1 Reference | $ | | TP | Allocation | | | |
|---|---|---|---|---|---|---|---|---|---|
| 12 | Production | 354.20.b | | 0 | 0.00 | 0 | | | |
| 13 | Transmission | 354.21.b | | 0 | 0.00 | 0 | | | |
| 14 | Distribution | 354.23.b | | 0 | 0.00 | 0 | W&S Allocator | | |
| 15 | Other | 354.24,25,26.b | | 0 | 0.00 | 0 | ($ / Allocation) | | |
| 16 | Total (sum lines 12-15) | | | 0 | | 0 | = | 0.00000 | = | WS |

**COMMON PLANT ALLOCATOR (CE)     (Note O)**

| Line | | Form 1 Reference | $ | | % Electric | | W&S Allocator | | |
|---|---|---|---|---|---|---|---|---|---|
| 17 | Electric | 200.3.c | | 0 | (line 17 / line 20) | | (line 16) | | CE |
| 18 | Gas | 201.3.d | | 0 | 0.00000 | * | 0.00000 | = | 0.00000 |
| 19 | Water | 201.3.e | | 0 | | | | | |
| 20 | Total  (sum lines 17 - 19) | | | 0 | | | | | |

**RETURN (R)**

| Line | | | $ | | | |
|---|---|---|---|---|---|---|
| 21 | | Long Term Interest (117, sum of 62.c through 67.c) | | 0 | | |
| 22 | | Preferred Dividends (118.29c) (positive number) | | 0 | | |
| | Development of Common Stock: | | | | | |
| 23 | | Proprietary Capital (112.16.c) | | 0 | | |
| 24 | | Less Preferred Stock (line 28) | | 0 | | |
| 25 | | Less Account 216.1 (112.12.c) (enter negative) | | 0 | | |
| 26 | | Common Stock  (sum lines 23-25) | | 0 | | |

| Line | | (Note P) | $ | % | Cost | Weighted | | |
|---|---|---|---|---|---|---|---|---|
| 27 | Long Term Debt (112, sum of 18.c through 21.c) | | 0 | 0% | 0.0000 | 0.0000 | = | WCLTD |
| 28 | Preferred Stock  (112.3.c) | | 0 | 0% | 0.0000 | 0.0000 | | |
| 29 | Common Stock  (line 26) | | 0 | 0% | 0.1238 | 0.0000 | | |
| 30 | Total (sum lines 27-29) | | 0 | | | 0.0000 | = | R |

**REVENUE CREDITS**

| Line | | | | Load | |
|---|---|---|---|---|---|
| 31 | ACCOUNT 447 (SALES FOR RESALE)   (Note Q) | (310-311) | | | |
| | a. Bundled Non-RQ Sales for Resale (311.x.h) | | | | 0 |
| 32 | b. Bundled Sales for Resale included in Divisor on page 1 | | | | - |
| 33 | Total of (a)-(b) | | | | 0 |
| | | | | | |
| 34 | ACCOUNT 454 (RENT FROM ELECTRIC PROPERTY)   (Note R) | | | $ | |
| 35 | ACCOUNT 456.1 (OTHER ELECTRIC REVENUES)     (Note U) | (330.x.n) | | $ | |

Attachment H-22A
Page 5 of 6

Formula Rate - Non-Levelized                                    For the 12 months ended 12/31/_____

Rate Formula Template
Utilizing FERC Form 1 Data

DUKE ENERGY OHIO AND DUKE ENERGY KENTUCKY (DEOK)

General Note:   References to pages in this formulary rate are indicated as: (page#, line#, col.#)
                        References to data from FERC Form 1 are indicated as:  #.y.x (page, line, column)

Notes:
A       DEOK 1 CP is Duke Energy Ohio ("DEO") Monthly Firm Transmission System Peak Load as reported on page 400, column b of Form 1 at the time of DEO's annual peak, plus load served by Duke Energy Kentucky at Longbranch. For years ending 12/31/2010 and 12/31/2011, this sum will be reduced by the amount of distribution load served by East Kentucky Power Cooperative via Duke Kentucky's Hebron substation. Excludes demands from grandfathered interzonal transactions and demands from service provided by ISO at a discount.

B       DEOK 12 CP is DEO Monthly Firm Transmission System Peak Load as reported on page 400, column b of Form 1 at the time of DEO's monthly peaks, plus load served by Duke Kentucky at Longbranch. For years ending 12/31/2010 and 12/31/2011, this sum will be reduced by the amount of distribution load served by East Kentucky Power Cooperative via Duke Kentucky's Hebron substation. Excludes demands from grandfathered interzonal transactions and demands from service provided by ISO at a discount.

C       Reserved
D       Reserved
E       This deduction is to remove expenses recorded by DEOK for Postretirement Benefits Other than Pensions (PBOP). PBOP expense is set forth in line 3b and is fixed until changed as the result of a filing at FERC. The fixed amount of PBOP for DEO is $2,342,494 and for Duke Energy Kentucky ("DEK") is $575,908.

F       The balances in Accounts 190, 281, 282 and 283, as adjusted by any amounts in contra accounts identified as regulatory assets or liabilities related to FASB 106 or 109. Balance of Account 255 is reduced by prior flow throughs and excluded if the utility chose to utilize amortization of tax credits against taxable income as discussed in Note K. Account 281 is not allocated.

G       Identified in Form 1 as being only transmission related.
H       Cash Working Capital assigned to transmission is one-eighth of O&M allocated to transmission at page 3, line 8, column 5. Prepayments are the electric related prepayments booked to Account No. 165 and reported on Page 111 line 57 in the Form 1.

I       Line 5 - EPRI Annual Membership Dues listed in Form 1 at 353.f, all Regulatory Commission Expenses itemized at 351.h, and non-safety related advertising included in Account 930.1. Line 5a - Regulatory Commission Expenses directly related to transmission service, ISO filings, or transmission siting itemized at 351.h.

J       Includes only FICA, unemployment, highway, property, gross receipts, and other assessments charged in the current year. Taxes related to income are excluded. Gross receipts taxes are not included in transmission revenue requirement in the Rate Formula Template, since they are recovered elsewhere.

K       The currently effective income tax rate, where FIT is the Federal income tax rate; SIT is the State income tax rate, and p = "the percentage of federal income tax deductible for state income taxes". If the utility is taxed in more than one state it must attach a work paper showing the name of each state and how the blended or composite SIT was developed. Furthermore, a utility that elected to utilize amortization of tax credits against taxable income, rather than book tax credits to Account No. 255 and reduce rate base, must reduce its income tax expense by the amount of the Amortized Investment Tax Credit (Form 1, 266.8.f) multiplied by (1/1-T) (page 3, line 26).

        Inputs Required:                    FIT =    0.00%
                                            SIT=     0.00%      (State Income Tax Rate or Composite SIT)
                                            p =      0.00%      (percent of federal income tax deductible for state purposes)
L       Removes dollar amount of transmission expenses included in the OATT ancillary services rates, including Account Nos. 561.1, 561.2, 561.3, and 561.BA.

M       Removes transmission plant determined by Commission order to be state-jurisdictional according to the seven-factor test (until Form 1 balances are adjusted to reflect application of seven-factor test).

N       Removes dollar amount of transmission plant included in the development of OATT ancillary services rates and generation step-up facilities, which are deemed to be included in OATT ancillary services. For these purposes, generation step-up facilities are those facilities at a generator substation on which there is no through-flow when the generator is shut down.

O       Enter dollar amounts.
P       Debt cost rate = long-term interest (line 21) / long term debt (line 27). Preferred cost rate = preferred dividends (line 22) / preferred outstanding (line 28). ROE will be supported in the original filing and no change in ROE may be made absent a filing with FERC. Capitalization adjusted to exclude impacts of purchase accounting.

Q       Line 33 must equal zero since all short-term power sales must be unbundled and the transmission component reflected in Account No. 456.1 and all other uses are to be included in the divisor.

R       Includes income related only to transmission facilities, such as pole attachments, rentals and special use.
S       Reserved
T       The revenues credited on page 1 lines 2-5c shall include only the amounts received directly (in the case of grandfathered agreements) or from the ISO (for service under this tariff) reflecting the Transmission Owner's integrated transmission facilities. They do not include revenues associated with FERC annual charges, gross receipts taxes, ancillary services, or facilities not included in this template (e.g., direct assignment facilities and GSUs) which are not recovered under this Rate Formula Template.

Attachment H-22A
Page 6 of 6

Formula Rate - Non-Levelized                                                    For the 12 months ended 12/31/_____

Rate Formula Template
Utilizing FERC Form 1 Data

DUKE ENERGY OHIO AND DUKE ENERGY KENTUCKY (DEOK)

General Note:   References to pages in this formulary rate are indicated as:  (page#, line#, col.#)
                              References to data from FERC Form 1 are indicated as:   #.y.x  (page, line, column)

Notes:

U    On Line 35, enter revenues from RTO settlements that are associated with NITS and firm Point-to-Point Service for which the load is
     not included in the divisor to derive Duke Energy Ohio's and Duke Energy Kentucky's zonal rates.  Exclude non-firm Point-to-Point
     revenues, revenues related to MTEP and RTEP projects, revenues from grandfathered interzonal transactions and revenues from service
     provided by ISO at a discount.

V    Account Nos. 561.4, 561.8 and 575.7 consist of RTO expenses billed to load-serving entities and are not included in Transmission
     Owner revenue requirements.

W    Reserved

X    Midcontinent ISO Fees include (1) the charges that DEOK paid to the Midcontinent ISO pursuant to the Settlement Agreement filed on
     July 29, 2011 in Docket No. ER11-2059 and (2) the exit fees that DEOK paid to the Midcontinent ISO pursuant to the Exit Fee
     Agreement filed on October 5, 2011 in Docket No. ER12-33.

Y    PJM Integration Costs are the fees that PJM assessed DEOK for the costs that PJM incurred in connection with DEOK's move into
     PJM.  Internal Integration Costs are the internal administrative costs incurred by Duke Energy Ohio and Duke Energy Kentucky to
     accomplish their move from the Midcontinent ISO into PJM.

Attachment H-22A

Appendix A
Page 1 of 1

For the 12 months ended 12/31/_____

Duke Energy Ohio and Duke Energy Kentucky
Transmission Formula Rate Revenue Requirement
Utilizing FERC Form 1 Data
For Rates Effective January 1, 2012

Schedule 1A Rate Calculation

| Line No. | | Source | Revenue Requirement |
|---|---|---|---|
| | **A. Schedule 1A Annual Revenue Requirements** | | |
| 1 | Total Load Dispatch & Scheduling (Account 561) | Attachment H-22A, Page 4, Line 7 | $ - |
| 2 | Revenue Credits for Schedule 1A - Note A | | $ - |
| 3 | Net Schedule 1A Revenue Requirement for Zone | | $ - |
| | **B. Schedule 1A Rate Calculations** | | |
| 4 | 2010  Annual MWh - Note B | (401a.22b & 24b) | - MWh |
| 5 | Schedule 1A rate $/MWh (Line 3 / Line 4) | (Line 3 / Line 4) | $0.0000 $/MWh |

Notes:

A    Revenue received pursuant to PJM Schedule 1A revenue allocation procedures for transmission service outside of DEOK's zone during the year used to calculate rates under Attachment H-22A.

B    Load expressed in MWh consistent with load used for billing under Schedule 1A for the DEOK zone.  Data from RTO settlement systems for the calendar year prior to the rate year.

Rate Formula Template
Utilizing Attachment H-22A Data

Duke Energy Ohio and Duke Energy Kentucky
RTEP – Transmission Enhancement Charges

To be completed in conjunction with Attachment H-22A

| Line No. | (1) | (2) Attachment H-22A Page, Line, Col. | (3) Transmission | (4) Allocator |
|---|---|---|---|---|
| | TRANSMISSION PLANT | | | |
| 1 | Gross Transmission Plant - Total | Sch. H-22A, p 2, line 2 col 5 (Note A) | - | |
| 2 | Net Transmission Plant - Total | Sch. H-22A, p 2, line 14 col 5 (Note B) | - | |
| | O&M EXPENSE | | | |
| 3 | Total O&M Allocated to Transmission | Sch. H-22A, p 3, line 8 col 5 | - | |
| 4 | Annual Allocation Factor for O&M | (line 3 divided by line 1 col 3) | 0.00% | 0.00% |
| | GENERAL AND COMMON (G&C) DEPRECIATION EXPENSE | | | |
| 5 | Total G&C Depreciation Expense | Sch. H-22A, p 3, lines 10 & 11, col 5 (Note H) | - | |
| 6 | Annual Allocation Factor for G&C Depreciation Expense | (line 5 divided by line 1 col 3) | 0.00% | 0.00% |
| | TAXES OTHER THAN INCOME TAXES | | | |
| 7 | Total Other Taxes | Sch. H-22A, p 3, line 20 col 5 | - | |
| 8 | Annual Allocation Factor for Other Taxes | (line 5 divided by line 1 col 3) | 0.00% | 0.00% |
| **9** | **Annual Allocation Factor for Expense** | **Sum of lines 4, 6 and 8** | | **0.00%** |
| | INCOME TAXES | | | |
| 10 | Total Income Taxes | Sch. H-22A, p 3, line 27 col 5 | - | |
| 11 | Annual Allocation Factor for Income Taxes | (line 8 divided by line 2 col 3) | 0.00% | 0.00% |
| | RETURN | | | |
| 12 | Return on Rate Base | Sch. H-22A, p 3, line 28 col 5 | - | |
| 13 | Annual Allocation Factor for Return on Rate Base | (line 10 divided by line 2 col 3) | 0.00% | 0.00% |
| **14** | **Annual Allocation Factor for Return** | **Sum of lines 11 and 13** | | **0.00%** |

Attachment H-22A
Appendix B
Page 2 of 2
For the 12 months ended 12/31/____

Rate Formula Template
Utilizing Attachment H-22A Data

Duke Energy Ohio and Duke Energy Kentucky
RTEP – Transmission Enhancement Charges

**Network Upgrade Charge Calculation By Project**

| (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (11) | (12) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Line No. | Project Name | RTEP Project Number | Project Gross Plant | Annual Allocation Factor for Expense | Annual Expense Charge | Project Net Plant | Annual Allocation Factor for Return | Annual Return Charge | Project Depreciation Expense | Annual Revenue Requirement | True-Up Adjustment | Network Upgrade Charge |
| | | | (Note C) | (Page 1 line 7) | (Col. 3 * Col. 4) | (Note D) | (Page 1 line 12) | (Col. 6 * Col. 7) | (Note E) | (Sum Col. 5, 8 & 9) | (Note F) | Sum Col. 10 & 11 (Note G) |
| 1b | | $    - | 0.00% | $0.00 | $    - | 0.00% | $0.00 | $0 | $0.00 | $    - | $0.00 |
| 1c | | $    - | 0.00% | $0.00 | $    - | 0.00% | $0.00 | $0 | $0.00 | $    - | $0.00 |
| 2 | Annual Totals | | | | | | | | $0 | $0 | | $0 |
| 3 | RTEP Transmission Enhancement Charges for Attachment H-22A, Page 1, Line 5c | | | | | | | | | | | $0 |

Notes:
A.    Gross Transmission Plant is that identified on page 2 line 2 of Attachment H-22A and includes any sub lines 2a or 2b etc. and is inclusive of any CWIP included in rate base when authorized by FERC order.
B.    Net Transmission Plant is that identified on page 2 line 14 of Attachment H-22A and includes any sub lines 14a or 14b etc. and is inclusive of any CWIP included in rate base when authorized by FERC order.
C.    Project Gross Plant is the total capital investment for the project calculated in the same method as the gross plant value in line 1 and includes CWIP in rate base if applicable.  This value includes subsequent capital investments required to maintain the facilities to their original capabilities.
D.    Project Net Plant is the Project Gross Plant Identified in Column 3 less the associated Accumulated Depreciation.
E.    Project Depreciation Expense is the actual value booked for the project and included in the Depreciation Expense in Attachment H-22A page 3 line 12.
F.    True-Up Adjustment is included pursuant to a FERC approved methodology if applicable.
G.    The Network Upgrade Charge is the value to be used in Schedule 26.
H.    The Total General and Common Depreciation Expense excludes any depreciation expense directly associated with a project and thereby included in page 2 column 9.

Attachment H-22A
Appendix C
Page 1 of 2
For the 12 months ended 12/31/_____

Rate Formula Template
Utilizing Attachment H-22A Data

Duke Energy Ohio and Duke Energy Kentucky
Legacy MTEP Credit

To be completed in conjunction with Attachment H-22A

| | | (1) | (2) | (3) | (4) |
|---|---|---|---|---|---|
| Line No. | | | Attachment H-22A Page, Line, Col. | Transmission | Allocator |
| | **TRANSMISSION PLANT** | | | | |
| 1 | Gross Transmission Plant - Total | | Sch. H-22A, p 2, line 2 col 5 (Note A) | - | |
| 2 | Net Transmission Plant - Total | | Sch. H-22A, p 2, line 14 col 5 (Note B) | - | |
| | **O&M EXPENSE** | | | | |
| 3 | Total O&M Allocated to Transmission | | Sch. H-22A, p 3, line 8 col 5 | - | |
| 4 | Annual Allocation Factor for O&M | | (line 3 divided by line 1 col 3) | 0.00% | 0.00% |
| | **GENERAL AND COMMON (G&C) DEPRECIATION EXPENSE** | | | | |
| 5 | Total G&C Depreciation Expense | | Sch. H-22A, p 3, lines 10 & 11, col 5 (Note H) | - | |
| 6 | Annual Allocation Factor for G&C Depreciation Expense | | (line 5 divided by line 1 col 3) | 0.00% | 0.00% |
| | **TAXES OTHER THAN INCOME TAXES** | | | | |
| 7 | Total Other Taxes | | Sch. H-22A, p 3, line 20 col 5 | - | |
| 8 | Annual Allocation Factor for Other Taxes | | (line 5 divided by line 1 col 3) | 0.00% | 0.00% |
| **9** | **Annual Allocation Factor for Expense** | | **Sum of lines 4, 6 and 8** | | **0.00%** |
| | **INCOME TAXES** | | | | |
| 10 | Total Income Taxes | | Sch. H-22A, p 3, line 27 col 5 | - | |
| 11 | Annual Allocation Factor for Income Taxes | | (line 8 divided by line 2 col 3) | 0.00% | 0.00% |
| | **RETURN** | | | | |
| 12 | Return on Rate Base | | Sch. H-22A, p 3, line 28 col 5 | - | |
| 13 | Annual Allocation Factor for Return on Rate Base | | (line 10 divided by line 2 col 3) | 0.00% | 0.00% |
| **14** | **Annual Allocation Factor for Return** | | **Sum of lines 11 and 13** | | **0.00%** |

A-41

Attachment H-22A
Appendix C
Page 2 of 2
For the 12 months ended 12/31/_____

Rate Formula Template
Utilizing Attachment H-22A Data

Duke Energy Ohio and Duke Energy Kentucky
Legacy MTEP Credit

**Network Upgrade Charge Calculation By Project**

| | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (11) | (12) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Line No. | Project Name | MTEP Project Number | Project Gross Plant | Annual Allocation Factor for Expense | Annual Expense Charge | Project Net Plant | Annual Allocation Factor for Return | Annual Return Charge | Project Depreciation Expense | Annual Revenue Requirement | True-Up Adjustment | Network Upgrade Charge |
| | | | (Note C) | (Page 1 line 7) | (Col. 3 * Col. 4) | (Note D) | (Page 1 line 12) | (Col. 6 * Col. 7) | (Note E) | (Sum Col. 5, 8 & 9) | (Note F) | Sum Col. 10 & 11 (Note G) |
| 1b | | $    - | 0.00% | $0.00 | $    - | 0.00% | $0.00 | $0 | $0.00 | $    - | $0.00 |
| 1c | | $    - | 0.00% | $0.00 | $    - | 0.00% | $0.00 | $0 | $0.00 | $    - | $0.00 |
| 2 | Annual Totals | | | | | | | | | $0 | $0 | $0 |
| 3 | Legacy MTEP Credit for Attachment H-22A, Page 1, Line 5a | | | | | | | | | | | $0 |

Notes:
A.    Gross Transmission Plant is that identified on page 2 line 2 of Attachment H-22A and includes any sub lines 2a or 2b etc. and is inclusive of any CWIP included in rate base when authorized by FERC order.
B.    Net Transmission Plant is that identified on page 2 line 14 of Attachment H-22A and includes any sub lines 14a or 14b etc. and is inclusive of any CWIP included in rate base when authorized by FERC order.
C.    Project Gross Plant is the total capital investment for the project calculated in the same method as the gross plant value in line 1 and includes CWIP in rate base if applicable.  This value includes subsequent capital investments required to maintain the facilities to their original capabilities.
D.    Project Net Plant is the Project Gross Plant Identified in Column 3 less the associated Accumulated Depreciation.
E.    Project Depreciation Expense is the actual value booked for the project and included in the Depreciation Expense in Attachment H-22A page 3 line 12.
F.    True-Up Adjustment is included pursuant to a FERC approved methodology if applicable.
G.    The Network Upgrade Charge is the value to be used in Schedule 26.
H.    The Total General and Common Depreciation Expense excludes any depreciation expense directly associated with a project and thereby included in page 2 column 9.

DUKE ENERGY OHIO, INC.
DEPRECIATION RATES

| FERC Account Number (A) | Company Account Number (B) | Description (C) | Actual Accrual Rates (D) % |
|---|---|---|---|
| | | **Wholly Owned Transmission Plant** | |
| 350 | 3403 | Rights of Way | 1.54 |
| 352 | 3420 | Structures & Improvements | 1.90 |
| 352 | 3424 | Structures & Improvements - Duke Ohio - Loc. in Ky. | 1.90 |
| 353 | 3430 | Station Equipment | 1.44 |
| 353 | 3434 | Station Equipment - Duke Ohio - Loc. in Ky. | 1.44 |
| 354 | 3440 | Towers & Fixtures | 1.85 |
| 354 | 3444 | Towers & Fixtures - Duke Ohio - Loc. in Ky. | 1.85 |
| 355 | 3450 | Poles & Fixtures | 2.31 |
| 355 | 3454 | Poles & Fixtures - Duke Ohio - Loc. in Ky. | 2.31 |
| 356 | 3460 | Overhead Conductors & Devices | 1.91 |
| 356 | 3464 | Overhead Conductors & Devices - Duke Ohio - Loc. in Ky. | 1.91 |
| 357 | 3470 | Underground Conduit | 1.43 |
| 358 | 3480 | Underground Conductors & Devices | 2.37 |
| | | **Commonly Owned Transmission Plant - CCD Projects** | |
| 352 | 3421 | Structures & Improvements - CCD Projects | 2.50 |
| 352 | 3425 | Structures & Improvements - CCD Projects | 2.50 |
| 353 | 3431 | Station Equipment - CCD Projects | 1.44 |
| 353 | 3432 | Station Equipment - CCD Projects | 1.44 |
| 353 | 3435 | Station Equipment - CCD Projects | 1.44 |
| 353 | 3437 | Station Equipment - CCD Projects | 1.44 |
| 354 | 3441 | Towers & Fixtures - CCD Projects | 3.00 |
| 354 | 3442 | Towers & Fixtures - CCD Projects | 3.00 |
| 354 | 3445 | Towers & Fixtures - CCD Projects | 3.00 |
| 354 | 3446 | Towers & Fixtures - CCD Projects - Loc. In Ky. | 3.00 |
| 354 | 3448 | Towers & Fixtures - CCD Projects | 3.00 |
| 355 | 3451 | Poles & Fixtures - CCD Projects | 3.00 |
| 355 | 3455 | Poles & Fixtures - CCD Projects | 3.00 |
| 356 | 3461 | Overhead Conductors & Devices - CCD Projects | 2.50 |
| 356 | 3462 | Overhead Conductors & Devices - CCD Projects | 2.50 |
| 356 | 3465 | Overhead Conductors & Devices - CCD Projects | 2.50 |
| 356 | 3466 | Overhead Conductors & Devices - CCD Projects - Loc. In Ky. | 2.50 |
| | | **Commonly Owned Transmission Plant - CD Projects** | |
| 352 | 3423 | Structures & Improvements - CD Projects | 2.50 |
| 353 | 3433 | Station Equipment - CD Projects | 1.44 |
| 353 | 3438 | Station Equipment - CD Projects | 1.44 |
| 354 | 3447 | Towers & Fixtures - CD Projects | 3.00 |
| 356 | 3467 | Overhead Conductors & Devices - CD Projects | 2.50 |
| | | **General and Intagible Plant** | |
| 303 | 3030 | Miscellaneous Intangible Plant | 20.00 |
| 389 | 3890 | Land and Land Rights | N/A |
| 390 | 3900 | Structures and Improvements | 2.50 |
| 391 | 3910 | Office Furniture and Equipment | 2.00 |
| 391 | 3911 | Electronic Data Processing Equipment | 20.00 |
| 391 | 3920 | Transportation Equipment | 8.33 |
| 391 | 3921 | Trailers | 4.25 |
| 392 | 3940 | Tools, Shop & Garage Equipment | 4.00 |
| 392 | 3950 | Laboratory Equipment | 6.67 |
| 393 | 3960 | Power Operated Equipment | 5.88 |
| 393 | 3970 | Communication Equipment | 6.67 |
| 394 | 3980 | Miscellaneous Equipment | 5.00 |

Attachment H-22A
Appendix D
Page 2 of 2

DUKE ENERGY KENTUCKY, INC.
DEPRECIATION RATES

| FERC Account Number (A) | Company Account Number (B) | Description (C) | Actual Accrual Rates (D) |
|---|---|---|---|
| | | | % |
| | | **Transmission Plant** | |
| 350 | 3501 | Rights of Way | 1.48 |
| 352 | 3520 | Structures &  Improvements | 0.41 |
| 353 | 3530 | Station Equipment | 2.25 |
| 353 | 3532 | Station Equipment - Major | 2.77 |
| 353 | 3535 | Station Equipment – Electronic | 9.55 |
| 355 | 3550 | Poles & Fixtures | 2.28 |
| 356 | 3560 | Overhead Conductors & Devices | 2.31 |
| | | **General and Intangible Plant** | 20.00 |
| 303 | 3030 | Miscellaneous Intangible Plant | 1.77 |
| 390 | 3900 | Land and Land Rights | 18.56 |
| 391 | 39110 | Structures and Improvements | 6.53 |
| 392 | 3921 | Electronic Data Processing Equipment | 4.14 |
| 394 | 3940 | Transportation Equipment | 6.93 |
| 397 | 3970 | Stores Equipment | |

Attachment H-22A
Appendix E
Page 1
For the 12 months ended 12/31/_____

Rate Formula Template
Utilizing Attachment H-22A Data

Duke Energy Ohio and Duke Energy Kentucky
Firm PTP Service Revenue Credit Adjustment Calculation

To be completed in conjunction with Attachment H-22A

| No. | (1) | (2)<br>Reference | (3)<br>Company Total |
|---|---|---|---|
| | **REVENUE CREDIT TRUE-UP** | | |
| 1 | Difference Between Revenue Received In PJM vs. Midcontinent ISO | (Note A) | $0 |
| | **ACCUMULATED BALANCE OF REVENUE CREDIT TRUE-UP** | | |
| 2 | Accumulated Balance of Deferral | (Note B) | $0 |
| 3 | Income Tax Rate for Deferral Calculation | (Note C) | 0.00% |
| 4 | Deferred Income Taxes on Accumulated Deferral (line 2 * line 3) | | $0 |
| 5 | Accumulated Deferral for Carrying Cost Calculation (Line 2 - Line 4) | | $0 |
| | **INCOME TAXES** | | |
| 6 | CIT = (T/(1-T)) * (1 - (WCLTD/R)) | Attachment H-22, page 3, line 22 | 0.00% |
| 7 | Income Taxes (Line 6 * Line 9) | | $0 |
| | **CARRYING COST ON DEFERRAL** | | |
| 8 | FERC Refund Rate | (Note D) | 0.00% |
| 9 | Carrying Cost (Line 5 * Line 8) | | $0 |
| 10 | Revenue Credit Adjustment (Line 1 + Line 7 + Line 9) | | $0 |

Notes
A.     From Appendix E, Workpaper, Column (4).
B.     Accumulated balance of deferral as of December 31st of the year prior to effective date of new rates.
C.     Effective deferred tax rate during applicable test year.
D.     FERC Refund Rate is the approved rate as of December 31 of calendar prior to the rate year (see 18 C.F.R. Section 35.19a).

Attachment H-22A
Appendix E
Workpaper

Duke Energy Ohio and Duke Energy Kentucky

Worksheet for Firm PTP Service Revenue Credit Adjustment Calculation

| (1) | (2) | (3) | (4) = (2) - (3) | (5) | (6) = (4) - (5) | (7) = Prior month's Balance + (6) |
|---|---|---|---|---|---|---|
| Period | Actual Firm PTP Service Revenue Included in Test Year Rate Calculation (Note A) | Actual Firm PTP Service Revenue Received from PJM (Note B) | Difference Between Revenue Received and Amount in Rates Excluding True Up | Monthly True-Up Adjustment Included In H-22A Net Revenue Requirement (Note C) | Amount Deferred for Future Recovery | Accumulated Balance of Deferred Firm PTP Service Revenue Credit Adjustment |
| Jan-12 | $ - | $ - | $ - | | $ - | - |
| Feb-12 | - | - | - | | - | - |
| Mar-12 | - | - | - | | - | - |
| Apr-12 | - | - | - | | - | - |
| May-12 | - | - | - | | - | - |
| Jun-12 | - | - | - | | - | - |
| Jul-12 | - | - | - | | - | - |
| Aug-12 | - | - | - | | - | - |
| Sep-12 | - | - | - | | - | - |
| Oct-12 | - | - | - | | - | - |
| Nov-12 | - | - | - | | - | - |
| Dec-12 | - | - | - | | - | - |
| **Total** | | | $ - | | $ - | - |
| Jan-13 | - | - | - | | $ - | - |
| Feb-13 | - | - | - | | - | - |
| Mar-13 | - | - | - | | - | - |
| Apr-13 | - | - | - | | - | - |
| May-13 | - | - | - | | - | - |
| Jun-13 | | | - | | - | - |
| Jul-13 | | | - | | - | - |
| Aug-13 | | | - | | - | - |
| Sep-13 | | | - | | - | - |
| Oct-13 | | | - | | - | - |
| Nov-13 | | | - | | - | - |
| Dec-13 | | | - | | - | $ - |
| **Total** | | | $ - | | $ - | - |
| Jan-14 | | | $ - | | $ - | $ - |
| Feb-14 | | | - | | - | - |
| Mar-14 | | | - | | - | - |
| Apr-14 | | | - | | - | - |
| May-14 | | | - | | - | - |
| Jun-14 | | | - | | - | - |
| Jul-14 | | | - | | - | - |
| Aug-14 | | | - | | - | - |
| Sep-14 | | | - | | - | - |
| Oct-14 | | | - | | - | - |
| Nov-14 | | | - | | - | - |
| Dec-14 | | | - | | - | $ - |
| **Total** | | | $ - | | $ - | - |
| Jan-15 | | | $ - | | $ - | $ - |
| Feb-15 | | | - | | - | - |
| Mar-15 | | | - | | - | - |
| Apr-15 | | | - | | - | - |
| May-15 | | | - | | - | $ - |
| **Total** | | | $ - | | $ - | |

Notes:
A.  Monthly Firm PTP service revenue from Midcontinent ISO during test year applicable to currently effectives NITS and PTP service rates.
B.  Actual monthly Firm PTP service revenue received from PJM during current period.
C.  Recovery of deferral begins with the first period for billing rates approved using a test year for Attachment H-22A that includes actual operations in PJM.
    The recovery of the amounts deferred between January 1, 2012, and December 31, 2012, will begin on June 1, 2013, and will end on May 31, 2014.
    The recovery of the amounts deferred between January 1, 2013 and May 31, 2013, will begin on June 1, 2014, and will end on May 31, 2015.

A-46

**ATTACHMENT H-22B**
**DEOK FORMULA RATE IMPLEMENTATION PROTOCOLS**

**Definitions**

"Annual Transmission Revenue Requirements" means the result produced by populating the Formula Rate Template with data as provided by the Formula Rate.

"Annual Update" means the posting and informational filing submitted by DEOK on or before May 15 of each year that sets forth the DEOK Cost of Service ("COS") for the subsequent Rate Year.

"Discovery Period" means the period after each annual Publication Date to serve information requests on DEOK as provided in Section 2.b below.

"DEOK" means Duke Energy Kentucky, Inc., and Duke Energy Ohio, Inc.

"First Rate Year" means the period that begins on January 1, 2012, and ends on May 31, 2012.

"Formal Challenge" means a challenge to an Annual Update submitted to the Federal Energy Regulatory Commission ("FERC") as provided in Section 3.a below.

"Formula Rate" means these Formula Rate Implementation Protocols (to be included as Attachment H-22B of the PJM Interconnection, L.L.C. ("PJM"), FERC Electric Tariff ("PJM Tariff")) and the Formula Rate Template.

"Formula Rate Template" means the collection of formulae, and worksheets, unpopulated with any data, to be included as Attachment H-22A of the PJM Tariff.

"Interested Party" means any person or entity having standing under Section 206 of the Federal Power Act ("FPA") with respect to the Annual Update.

"Material Changes" means (i) material changes in DEOK's accounting policies and practices, (ii) changes in FERC's Uniform System of Accounts ("USofA"), (iii) changes in FERC Form No. 1 reporting requirements as applicable, or (iv) changes in the FERC's accounting policies and practices, which change causes a result under the Formula Rate different from the result under the Formula Rate as calculated without such change.

"Preliminary Challenge" means a written challenge to the Annual Update submitted to DEOK as provided in Section 2.a below.

"Protocols" means these Formula Rate Implementation Protocols (to be included as Attachment H-22B of the PJM Tariff).

"Publication Date" means the date on which the Annual Update is posted under the provisions of Section 1.b below.

"Rate Year" means the twelve consecutive month period that begins on June 1 and continues through May 31 of the subsequent calendar year except for the First Rate Year.

"Review Period" means the period during which Interested Parties may review the calculations in the Annual Update as provided in Section 2.a below.

**Section 1**    **Annual Updates**

a.    Beginning with the Rate Year that commences on June 1, 2012, and during each Rate Year thereafter, the Annual Transmission Revenue Requirement calculated in accordance with Attachment H-22A and the Network Integration Transmission Service and Point-to-Point rates derived therefrom shall be applicable to transmission services provided by PJM for the DEOK zone during the Rate Year.

b.    On or before May 15, 2012, and on or before May 15 of each succeeding Rate Year, DEOK shall recalculate its Annual Transmission Revenue Requirement, producing the "Annual Update" for the upcoming Rate Year, and:
  (i)    post such Annual Update on PJM's Internet website (via a link to the Transmission Services page or a similar successor page) as both a .pdf (Portable Document Format) document and a fully-functioning Excel file;
  (ii)   submit such Annual Update as an informational filing with the FERC;
  (iii)  provide contact information for inquiries concerning the Annual Update;
  (iv)   send an email or other similar electronic communication to all Interested Parties that have previously requested such notification through procedures to be established by DEOK that informs the recipient that the Annual Update is available and that provides the Uniform Resource Locator or other similar identifying location information from which the Annual Update can be obtained.

c.    If the date for making the Annual Update posting/filing should fall on a weekend or a holiday recognized by the FERC, then the posting/filing shall be due on the next business day.

d.    The date on which the last of the events listed in Section 1.b or 1.c occurs shall be that year's "Publication Date."

e.    Within two business days of the Publication Date, DEOK shall also provide notice on PJM's Internet website (via a link to the Transmission Services page or a similar successor page) of the time, date and location of an open meeting among interested parties ("Annual Meeting"). This Annual Meeting shall (i) permit DEOK to explain and clarify its Annual Update and (ii) provide interested parties an opportunity to seek information and clarifications from DEOK about the Annual Update. The Annual Meeting shall take place no sooner than ten (10) days after posting of the notice and no later than thirty (30) days after the Publication Date.

f.    Inputs to the Formula Rate are based on DEOK's books, which reflect:
  (i)    the FERC's Uniform System of Accounts, and

        (ii)    applicable FERC Form No. 1[1] as each exists as of the later of the date of DEOK's initial filing of the Formula Rate or the last day of the calendar year immediately preceding the effective date of the most recent revision to the Formula Rate.

g.    The Annual Update for the Rate Year:

        (i)    shall, to the extent specified in the Formula Rate, be based upon DEOK's FERC Form No. 1 data for the most recent calendar year, and to the extent specified in the Formula Rate, be based upon the books and records of DEOK consistent with Section 1.f above;

        (ii)    shall, as and to the extent specified in the Formula Rate, provide the formula rate calculations and all inputs thereto, as well as supporting documentation for data not otherwise available in the FERC Form No. 1 that are used in the Formula Rate;[2]

        (iii)    shall provide sufficient information[3] to enable customers to replicate the calculation of the formula results from FERC Form No. 1 and other applicable accounting inputs and to compare that calculation to that of prior years, including all workpapers necessary to explain any changes made since the last update, and to include as applicable:

                (1)    a copy of the FERC Form No. 1 used for the update if it is not otherwise publicly available;

                (2)    identification of any changes in the formula references to the FERC Form No. 1;

                (3)    identification of all adjustments made to the FERC Form No. 1 data in determining formula inputs, including relevant footnotes to the FERC Form No. 1 and any adjustments not shown in a FERC Form No. 1 footnote;

---

[1].    If the referenced form is superseded, the successor form(s) shall be utilized and supplemented as necessary to provide equivalent information as that provided in the superseded form. If the referenced form(s) is (are) discontinued, equivalent information as that provided in the discontinued form(s) shall be utilized.

[2].    It is the intent of the Formula Rate, including the supporting explanations and allocations described therein, that each input to the Formula Rate will be either taken directly from the FERC Form No. 1 for the most recent calendar year or reconcilable to the FERC Form No. 1 by the application of clearly identified and supported information provided by DEOK with the Annual Update. Where the reconciliation is provided through a worksheet included in the filed Formula Rate Template, the inputs to the worksheet must meet this transparency standard, and doing so will satisfy this transparency requirement for the amounts that are output from the worksheet and input to the main body of the Formula Rate.

[3].    As appropriate, competitively sensitive information may be provided only to those persons bound by the terms of a suitable confidentiality agreement or protective order.

    (4)    a reconciliation of annual and monthly peak demands shown on the FERC Form 1 and annual and monthly peak demands used in the formula in sufficient detail to enable transparent reconciliation of these two measures;

    (5)    a description of those factors influencing any change in the annual revenue requirement, including an identification of any respects in which charges under the formula rate materially differ from the preceding Annual Update (e.g., due to changes in accounting procedures, the purchase or sale of major assets, or other such significant changes) and identification of the major reason(s) for the differences, if any, between the Annual Update and the prior year's Annual Update; and

    (6)    any changes to the data inputs made as a result of a reconciliation made under Section 4 below.

    (iv)    shall describe material changes, if any, in DEOK's accounting policies, practices and procedures from those in effect for the calendar year upon which the immediately preceding Annual Update was based that could or did affect the charges under the Formula Rate ("Material Accounting Changes");[4]

    (v)    shall be subject to challenge and review only in accordance with the procedures set forth in this Attachment H-22B, as to the appropriateness of the input data, the prudence of the costs and expenditures included for recovery in the Annual Update, and the application of the Formula Rate according to its terms and the procedures in this Attachment H-22B (including terms and procedures related to challenges concerning Material Accounting Changes);

    (vi)    except as provided for in Section 1.j below, shall not seek to modify the Formula Rate and shall not be subject to challenge by anyone for the purpose of modifying the Formula Rate (i.e., all such modifications to the Formula Rate will require, as applicable, a Federal Power Act ("FPA") Section 205 or Section 206 filing).

h.    Formula Rate inputs for rate of return on common equity, depreciation rates and Post-Employment Benefits Other Than Pensions ("PBOP") shall be stated values until changed pursuant to an FPA Section 205 or 206 filing made effective by the Commission. An application under Section 205 or Section 206 to modify stated values for depreciation rates or PBOP expense under the Formula Rate or Protocols shall not open review of other components of the Formula Rate or Protocols.

i.    Extraordinary property losses recorded in FERC Account 182.1 shall be amortized for Formula Rate purposes pursuant to a Section 205 or 206 filing made effective by the Commission.

---

[4]    Such notice may incorporate by reference applicable disclosure statements filed with the Securities and Exchange Commission ("SEC").

j.     Any change to the underlying Uniform System of Accounts or FERC Form No. 1 as described in Section 1.f above shall be grounds for a presumption that the application of the Formula Rate shall be modified to restore the balance of the Formula Rate as accepted by the FERC (the intent being to prevent such changes in these underlying Uniform System of Accounts or FERC Form No. 1 from causing an automatic shift in the charges calculated under the Formula Rate without input from other interested parties). Any interested party seeking changes to the application of the Formula Rate due to a change in the Uniform System of Accounts or FERC Form No. 1 as described in Section 1.f, shall first raise the matter with DEOK.

**Section 2     Annual Review Procedures**

Each Annual Update shall be subject to the following review procedures ("Annual Review Procedures"):

a.     Interested parties shall have up to one hundred eighty (180) days after the Publication Date (unless such period is extended with the written consent of DEOK or by FERC Order) to review the inputs, supporting explanations, allocations and calculations ("Review Period") and to notify DEOK in writing, which may be made electronically, of any specific challenges, including challenges related to the rate treatment of Material Accounting Changes, to the application of the Formula Rate and to changes to the Uniform System of Accounts or FERC Form No. 1 as described in Section 1.f, above, ("Preliminary Challenge").   Failure to make a Preliminary Challenge or Formal Challenge with respect to an Annual Update shall preclude use of these procedures with respect to that Annual Update but shall not bar a subsequent Preliminary Challenge or Formal Challenge related to a subsequent Annual Update to the extent such Challenge affects the subsequent Annual Update.

b.     Interested Parties shall have up to one hundred fifty (150) days after each annual Publication Date (unless such period is extended with the written consent of DEOK or by FERC Order) to serve reasonable information requests on DEOK.  Such information requests shall be limited to what is necessary to determine if DEOK has properly applied the Formula Rate, the requirements and procedures of this Attachment H-22B, and the prudence of the costs and expenditures included for recovery in the Annual Update, and shall not otherwise be directed to ascertaining whether the Formula Rate is just and reasonable.

c.     DEOK shall make a good faith effort to respond to information requests pertaining to the Annual Update within fifteen (15) business days of receipt of such requests. Notwithstanding anything to the contrary contained in these Protocols, with respect to any information requests received by DEOK within the Discovery Period and for which DEOK is unable to provide a response within fifteen (15) business days after the end of the Discovery Period, the Review Period shall be extended day-for-day until DEOK's response is provided.

d.      To the extent DEOK and any interested party(ies) are unable to resolve disputes related to information requests submitted in accordance with these Annual Review Procedures, DEOK or any interested party may petition the FERC to appoint an Administrative Law Judge as a discovery master. The discovery master shall have the power to issue binding orders to resolve discovery disputes and compel the production of discovery, as appropriate, in accordance with the Annual Review Procedures and consistent with the FERC's discovery rules.

e.      Preliminary Challenges shall be subject to the resolution procedures and limitations in Section 3. Formal Challenges shall be filed pursuant to these Protocols and shall include the information required under 18 C.F.R. § 385.206 (b) (1), (2), (3), (4), and (7).

f.      Preliminary or Formal Challenges related to Material Changes are not intended to serve as a means of pursuing other objections to the Formula Rate. Failure to make a Preliminary Challenge or Formal Challenge with respect to an Annual Update shall preclude use of these procedures with respect to that Annual Update but shall not preclude a subsequent Preliminary Challenge or Formal Challenge related to a subsequent Annual Update to the extent such Challenge affects the subsequent Annual Update.

g.      In any proceeding initiated to address a Preliminary or Formal Challenge or *sua sponte* by the FERC, a party or parties seeking to modify the Formula Rate in any respect shall bear the applicable burden under the FPA.

**Section 3      Resolution of Challenges**

a.      If DEOK and any interested party(ies) have not resolved any Preliminary Challenge to the Annual Update within twenty-one (21) days after the Review Period, an interested party shall have an additional twenty-one (21) days (unless such period is extended with the written consent of DEOK to continue efforts to resolve the Preliminary Challenge) to make a Formal Challenge with the FERC, which shall be served on DEOK by electronic service on the date of such filing. However, there shall be no need to make a Formal Challenge or to await conclusion of the time periods in Section 2 if the FERC already has initiated a proceeding to consider the Annual Update.  Parties shall make a good faith effort to raise all issues in a Preliminary Challenge prior to filing a Formal Challenge; provided, however, that a Preliminary Challenge shall not be a prerequisite for bringing a Formal Challenge. Failure to notify DEOK of an issue with respect to an Annual Update shall not preclude an Interested Party from pursuing such issues in a Preliminary Challenge or Formal Challenge.

b.      Any response by DEOK to a Formal Challenge must be submitted to the FERC within twenty (20) days of the date of the filing of the Formal Challenge, and shall be served on the filing party(ies) by electronic service on the date of such filing.

c.      In any proceeding initiated by the FERC concerning the Annual Update or in response to a Formal Challenge, DEOK shall bear the burden, consistent with Section 205 of the

Federal Power Act, of proving that it has correctly applied the terms of the Formula Rate, consistent with Section 1.g(v), and that it followed the applicable requirements and procedures in this Attachment H-22B, in that year's Annual Update. Nothing herein is intended to alter the burdens applied by the Commission with respect to prudence challenges.

d.    Subject to judicial review of FERC orders, each Annual Update shall become final as to the Annual Transmission Revenue Requirement calculated for the Rate Year for which the Annual Update was calculated and no longer subject to challenge pursuant to these Protocols or by any other means by the FERC or any other entity on the later to occur of (i) passage of the twenty-one (21) day period (or extended period, if applicable) for making a Formal Challenge if no such challenge has been made and the FERC has not initiated a proceeding to consider the Annual Update, or (ii) a final FERC order issued in response to a Formal Challenge or a proceeding initiated by the FERC to consider the Annual Update.

e.    Nothing herein shall be deemed to limit in any way the right of DEOK to file unilaterally, pursuant to FPA Section 205 and the regulations thereunder, to change the Formula Rate or any of its inputs (including, but not limited to, rate of return and transmission incentive rate treatment), or to replace the Formula Rate with a stated rate, or the right of any other party to request such changes pursuant to Section 206 of the Federal Power Act and the regulations thereunder. These Protocols in no way limit the rights of DEOK or any Interested Party to initiate a proceeding at the FERC at any time with respect to the Formula Rate or any Annual Update consistent with the party's full rights under the FPA, including Sections 205, 206 and 306, and the FERC's regulations.

f.    Subject to Section 2.e above, it is recognized that resolution of Formal Challenges concerning Material Accounting Changes or related to the Uniform System of Accounts or FERC Form No. 1 as described above may necessitate adjustments to the Formula Rate input data for the applicable Annual Update or changes to the Formula Rate to achieve a just and reasonable end result consistent with the intent of the Formula Rate.

g.    In making or resolving any Preliminary or Formal Challenge under this Section, a party may rely on all information provided by DEOK, including information provided under the terms of a confidentiality agreement or protective order; provided, however, that parties receiving such information pursuant to a confidentiality agreement or protective order shall be bound by the restrictions placed by such agreement or order on disclosure or use of confidential information.

**Section 4    Changes to Annual Informational Filings**

a.    Notice. If any changes are required to be made to the Annual Update, whether because of changes made under these Protocols, due to revisions made to a prior year's FERC Form No. 1 report of Duke Energy Kentucky, Inc., or Duke Energy Ohio, Inc., or

input data used for a Rate Year or calendar year that would have affected the Annual Update for that Rate Year or calendar year, or as the result of any FERC proceeding to consider a prior year's Annual Update, DEOK shall promptly notify the Interested Parties, file a correction to the Annual Update with the FERC as an amended informational filing describing the change(s) and the cost impact, and provide a copy of the amended informational filing to PJM for prompt posting by PJM.

b.      Necessary Changes When Made.  Except as provided for below in Section 4.c, any corrections or revisions to the inputs and resulting rates that are required as a result of a change reported in Section 4.a shall be reflected in the next Annual Update, including any resulting refunds or surcharges for corrected past charges which shall be made with interest as per section 35.19a of the Commission's regulations.

c.      Changes Made During the Review Period.  Unless otherwise agreed by DEOK and the Interested Parties, a correction made under Section 4.a prior to the time determined for filing of a Formal Complaint shall reset the performance dates under Sections 2 and 3 of these Protocols for Interested Party Annual Review, and the revised dates shall run from the posting date(s) for each of the corrections.  The scope of the Annual Review shall then be limited to the aspects of the Formula Rate affected by the corrections.

P

**ATTACHMENT JJ**
**MTEP PROJECT COST RECOVERY FOR DEOK ZONE**

**I.  Definitions**

      A.     DEOK – Duke Energy Ohio, Inc., and Duke Energy Kentucky, Inc.

      B.     Midwest ISO or MISO – The Midwest Independent Transmission System Operator, Inc.

      C.     Midwest ISO Tariff – The Midwest ISO's Open Access Transmission, Energy, and Operating Reserve Markets Tariff.

      D.     [Reserved]

      E.     MTEP – The Midwest ISO Transmission Expansion Plan established pursuant to Attachment FF of the Midwest ISO Tariff.

      F.     MTEP Project – A transmission project constructed by DEOK pursuant to Attachment FF of the Midwest ISO Tariff.

**II.  Introduction and Purpose**

This Attachment JJ addresses the manner in which the PJM Office of the Interconnection will distribute to Duke Energy Ohio, Inc. on behalf of DEOK the revenues received from the Midwest ISO for the cost of MTEP Projects constructed by DEOK.

**III.**  [Reserved]

**IV.  DEOK MTEP Project Revenue Requirements Allocated to Midwest ISO Zones**

   **A.  Derivation of Annual Revenue Requirements**

     Under the methodology provided under Attachment H–22 to this Tariff, DEOK will periodically update the Annual Revenue Requirements for MTEP Projects constructed by DEOK.  No later than May 1 each year, DEOK shall provide these updated revenue requirements to the Midwest ISO for the upcoming June 1 – May 31 rate year.

   **B.  Allocation of Annual Revenue Requirements to Midwest ISO Zones**

     The portion of the Annual Revenue Requirements derived under Section IV.A that will be recovered from transmission customers taking transmission service in the Midwest ISO shall be calculated by the Midwest ISO in accordance with the Midwest ISO Tariff.

A-55

**C. Monthly Revenue Requirements Owed from the Midwest ISO Zones**

Each month, and pursuant to agreed-upon settlement procedures, the Midwest ISO shall remit an amount to the PJM Office of the Interconnection from revenues collected by the Midwest ISO in proportion to DEOK's annual pro-rata share of the total Network Upgrade Charge as described in the Midwest ISO Schedule 38.

**D. Revenue Distribution from Payments Made by Transmission Customers in the Midwest ISO**

Pursuant to agreed-upon settlement procedures, PJM shall credit to Duke Energy Ohio's account (on behalf of DEOK) in the subsequent month the amount of revenue requirements that the Midwest ISO remits to PJM pursuant to Section IV.C for the prior month.

**EXHIBIT C**

**ATTACHMENT H-22**
**Annual Transmission Rates – DEOK**
**for Network Integration Transmission Service**
**and Point-to-Point Transmission Service**

1.  The Annual Transmission Revenue Requirements ("ATRR") and the rates for Network
    Integration Transmission Service and Point-to-Point Transmission Service are equal to the
    results of the formula shown in Attachment H-22A, and will be posted on the PJM website.
    The ATRR and the rates reflect the cost of providing transmission service over the 69 kV and
    higher transmission facilities of Duke Energy Ohio, Inc., and Duke Energy Kentucky, Inc.
    (jointly, "DEOK"). Service utilizing other DEOK facilities will be provided at rates
    determined on a case-by-case basis and stated in service agreements with affected customers.

2.  The formula rate in this attachment shall be effective until amended by DEOK or modified
    by the Commission.

3.  In addition to the rate set forth in paragraph 1, a Network Customer purchasing Network
    Integration Transmission Service shall pay for transmission congestion charges, in
    accordance with the provisions of the Tariff, and any amounts necessary to reimburse DEOK
    for any amounts payable by it as sales, excise, "Btu," carbon, value-added or similar taxes
    (other than taxes based upon or measured by net income) with respect to the amounts payable
    pursuant to the Tariff.

Attachment H-22A
Page 1 of 6

Formula Rate - Non-Levelized                                  For the 12 months ended 12/31/_____

**Rate Formula Template**
Utilizing FERC Form 1 Data

DUKE ENERGY OHIO AND DUKE ENERGY KENTUCKY (DEOK)

| Line No. | | | | Total | | Allocator | | Allocated Amount |
|---|---|---|---|---|---|---|---|---|
| 1 | GROSS REVENUE REQUIREMENT   (page 3, line 29) | | | | | | | $        - |
| | REVENUE CREDITS    (Note T) | | | | | | | |
| 2 | Account No. 454 | (page 4, line 34) | | $        - | TP | 0.00000 | | $        - |
| 3 | Account No. 456.1 | (page 4, line 35) | | 0 | TP | 0.00000 | | 0 |
| 4a | Revenues from Grandfathered Interzonal Transactions | | | 0 | TP | 0.00000 | | 0 |
| 4b | Revenues from service provided by ISO at a discount | | | 0 | TP | 0.00000 | | 0 |
| 5a | Legacy MTEP Credit (Appendix C, page 2, line 3, col. 12) | | | 0 | | 1.00000 | | 0 |
| 5b | Firm PTP Revenue Credit Adjustment (Appendix E, line 10, col. 3) | | | 0 | | 1.00000 | | 0 |
| 6 | TOTAL REVENUE CREDITS  (sum lines 2-5b) | | | | | | | $        - |
| 7 | NET REVENUE REQUIREMENT | (line 1 minus line 6) | | | | | | $        - |
| | DIVISOR | | | | | | | |
| 8 | 1 CP   (Note A) | | | | | | | 0 |
| 9 | 12 CP  (Note B) | | | | | | | 0 |
| 10 | Reserved | | | | | | | |
| 11 | Reserved | | | | | | | |
| 12 | Reserved | | | | | | | |
| 13 | Reserved | | | | | | | |
| 14 | Reserved | | | | | | | |
| 15 | Annual Cost ($/kW/Yr) - 1 CP | (line 7 / line 8) | | $0.000 | | | | |
| 16 | Annual Cost ($/kW/Yr) - 12 CP | (line 7 / line 9) | | $0.000 | | | | |
| 17 | Network Rate ($/kW/Mo) | (line 15 / 12) | | $0.000 | | | | |
| 17a | Point-To-Point Rate ($/kW/Mo) | (line 16 / 12) | | $0.000 | | | | |
| | | | Peak Rate | | | | Off-Peak Rate | |
| 18 | Point-To-Point Rate ($/kW/Wk) | (line 16 / 52; line 16 / 52) | $0.000 | | | | | |
| 19 | Point-To-Point Rate ($/kW/Day) | (line 16 / 260; line 16 / 365) | $0.000 | Capped at weekly rate | | | $0.000 | |
| 20 | Point-To-Point Rate ($/MWh) | (line 16 / 4,160; line 16 / 8,760 * 1000) | $0.000 | Capped at weekly and daily rate | | | $0.000 | |

Formula Rate - Non-Levelized                                    For the 12 months ended 12/31/_____

Rate Formula Template
Utilizing FERC Form 1 Data

DUKE ENERGY OHIO AND DUKE ENERGY KENTUCKY (DEOK)

| Line No. | RATE BASE: | (1)<br>Form No. 1 Page,<br>Line, Col. | (2) | (3)<br>Company<br>Total | | (4)<br>Allocator | (5)<br>Transmission (Col. 3<br>times Col. 4) | |
|---|---|---|---|---|---|---|---|---|
| | GROSS PLANT IN SERVICE | | | | | | | |
| 1 | Production | 205.46.g | | $ | - | NA | | |
| 2 | Transmission | 207.58.g | | | 0 | TP | 0.00000 | $ | - |
| 3 | Distribution | 207.75.g | | | 0 | NA | | |
| 4 | General & Intangible | 205.5.g & 207.99.g | | | 0 | W/S | 0.00000 | | 0 |
| 5 | Common | 356.1 | | | 0 | CE | 0.00000 | | 0 |
| 6 | TOTAL GROSS PLANT (sum lines 1-5) | | | $ | - | GP= | 0.000% | $ | - |
| | ACCUMULATED DEPRECIATION | | | | | | | |
| 7 | Production | 219.20-24.c | | $ | - | NA | | |
| 8 | Transmission | 219.25.c | | | 0 | TP | 0.00000 | $ | - |
| 9 | Distribution | 219.26.c | | | 0 | NA | | |
| 10 | General & Intangible | 219.28.c | | | 0 | W/S | 0.00000 | | 0 |
| 11 | Common | 356.1 | | | 0 | CE | 0.00000 | | 0 |
| 12 | TOTAL ACCUM. DEPRECIATION (sum lines 7-11) | | | $ | - | | | $ | - |
| | NET PLANT IN SERVICE | | | | | | | |
| 13 | Production | (line 1 - line 7) | | $ | - | | | | |
| 14 | Transmission | (line 2 - line 8) | | | 0 | | | $ | - |
| 15 | Distribution | (line 3 - line 9) | | | 0 | | | | |
| 16 | General & Intangible | (line 4 - line 10) | | | 0 | | | | 0 |
| 17 | Common | (line 5 - line 11) | | | 0 | | | | 0 |
| 18 | TOTAL NET PLANT (sum lines 13-17) | | | $ | - | NP= | 0.000% | $ | - |
| | ADJUSTMENTS TO RATE BASE (Note F) | | | | | | | |
| 19 | Account No. 281 (enter negative) | 273.8.k | | $ | - | NA | zero | $ | - |
| 20 | Account No. 282 (enter negative) | 275.2.k | | | 0 | NP | 0.00000 | | 0 |
| 21 | Account No. 283 (enter negative) | 277.9.k | | | 0 | NP | 0.00000 | | 0 |
| 22 | Account No. 190 | 234.8.c | | | 0 | NP | 0.00000 | | 0 |
| 23 | Account No. 255 (enter negative) | 267.8.h | | | 0 | NP | 0.00000 | | 0 |
| 24 | TOTAL ADJUSTMENTS (sum lines 19-23) | | | $ | - | | | $ | - |
| 25 | LAND HELD FOR FUTURE USE (Note G) | 214.x.d | | $ | - | TP | 0.00000 | $ | - |
| | WORKING CAPITAL (Note H) | | | | | | | |
| 26 | CWC | calculated | | $ | - | | | | 0 |
| 27 | Materials & Supplies (Note G) | 227.8.c & .16.c | | | 0 | TE | 0.00000 | | 0 |
| 28 | Prepayments (Account 165) | 111.57.c | | | 0 | GP | 0.00000 | | 0 |
| 29 | TOTAL WORKING CAPITAL (sum lines 26 - 28) | | | $ - | | | | $ | - |
| 30 | RATE BASE (sum lines 18, 24, 25, & 29) | | | $ | - | | | $ | - |

Attachment H-22A
Page 3 of 6

Formula Rate - Non-Levelized                                    For the 12 months ended 12/31/_____

Rate Formula Template
Utilizing FERC Form 1 Data

DUKE ENERGY OHIO AND DUKE ENERGY KENTUCKY (DEOK)

| Line No. | (1) RATE BASE | (2) Form No. 1 Page, Line, Col. | (3) Company Total | | (4) Allocator | (5) Transmission (Col. 3 times Col. 4) | |
|---|---|---|---|---|---|---|---|
| | O&M | | | | | | |
| 1 | Transmission | 321.112.b | $ | - | TE | 0.00000 | $ | - |
| 1a | Less LSE Expenses included in Transmission O&M Accounts (Note V) | 321.88.b, 92.b; 322.121.b | | 0 | | 1.00000 | | 0 |
| 1b | Less Midcontinent ISO Fees included in Transmission O&M | (Note X) | | 0 | TE | 0.00000 | | 0 |
| 2 | Less Account 565 | 321.96.b | | 0 | TE | 0.00000 | | 0 |
| 3 | A&G | 323.197.b | | 0 | W/S | 0.00000 | | 0 |
| 3a | Less Actual PBOP Expense | (Note E) | | 0 | W/S | 0.00000 | | 0 |
| 3b | Plus Fixed PBOP Expense | (Note E) | | 0 | W/S | 0.00000 | | 0 |
| 3c | Less PJM Integration Costs included in A&G and Internal Integration Costs included in A&G | (Note Y) | | 0 | W/S | 0.00000 | | 0 |
| 4 | Less FERC Annual Fees | 350.14.b | | 0 | W/S | 0.00000 | | 0 |
| 5 | Less EPRI & Reg. Comm. Exp. & Non-safety Advertising  (Note I) | | | 0 | W/S | 0.00000 | | 0 |
| 5a | Plus Transmission Related Reg. Comm. Exp.  (Note I) | | | 0 | TE | 0.00000 | | 0 |
| 6 | Common | 356.1 | | 0 | CE | 0.00000 | | 0 |
| 7 | Transmission Lease Payments | | | 0 | | 1.00000 | | 0 |
| 8 | TOTAL O&M (Sum lines 1, 3, 3b, 5a, 6, 7 less lines 1a, 1b, 2, 3a, 3c, 3d, 4, 5) | | $ | - | | | $ | - |
| | DEPRECIATION EXPENSE | | | | | | | |
| 9 | Transmission | 336.7.b | $ | - | TP | 0.00000 | $ | - |
| 10 | General | 336.10.b | | 0 | W/S | 0.00000 | | 0 |
| 11 | Common | 336.11.b | | 0 | CE | 0.00000 | | 0 |
| 12 | TOTAL DEPRECIATION (Sum lines 9 - 11) | | $ | - | | | $ | - |
| | TAXES OTHER THAN INCOME TAXES    (Note J) | | | | | | | |
| | LABOR RELATED | | | | | | | |
| 13 | Payroll | 263.i | $ | - | W/S | 0.00000 | $ | - |
| 14 | Highway and vehicle | 263.i | | 0 | W/S | 0.00000 | | 0 |
| 15 | PLANT RELATED | | | | | | | |
| 16 | Property | 263.i | | 0 | GP | 0.00000 | | 0 |
| 17 | Gross Receipts | 263.i | | 0 | NA | zero | | 0 |
| 18 | Other | 263.i | | 0 | GP | 0.00000 | | 0 |
| 19 | Payments in lieu of taxes | | | 0 | GP | 0.00000 | | 0 |
| 20 | TOTAL OTHER TAXES (sum lines 13 - 19) | | $ | - | | | $ | - |
| 21 | INCOME TAXES     (Note K) T=1 - {[(1 - SIT) * (1 - FIT)] / (1 - SIT * FIT * p)} = | | | 0.000000% | | | | |
| 22 | CIT=(T/1-T) * (1-(WCLTD/R)) = | | | 0.000000% | | | | |
| | where WCLTD=(page 4, line 27) and R= (page 4, line 30) and FIT, SIT & p are as given in footnote K. | | | | | | | |
| 23 | 1 / (1 - T)  = (from line 21) | | | 0.0000 | | | | |
| 24 | Amortized Investment Tax Credit | 266.8.f (enter negative) | | 0 | | | | |
| 25 | Income Tax Calculation (line 22 * line 28) | | $ | - | NA | | $ | - |
| 26 | ITC adjustment (line 23 * line 24) | | | 0 | NP | 0.00000 | | 0 |
| 27 | Total Income Taxes | (line 25 plus line 26) | $ | - | | | $ | - |
| 28 | RETURN [Rate Base (page 2, line 30) * Rate of Return (page 4, line 30)] | | $ | - | NA | | $ | - |
| 29 | REV. REQUIREMENT  (sum lines 8, 12, 20, 27, 28) | | $ | - | | | $ | - |

Formula Rate - Non-Levelized

For the 12 months ended 12/31/_____

Rate Formula Template
Utilizing FERC Form 1 Data

DUKE ENERGY OHIO AND DUKE ENERGY KENTUCKY (DEOK)
SUPPORTING CALCULATIONS AND NOTES

| Line No. | TRANSMISSION PLANT INCLUDED IN ISO RATES | Form 1 Reference | $ | TP | Allocation | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | Total transmission plant (page 2, line 2, column 3) | | | | | | $ | - |
| 2 | Less transmission plant excluded from ISO rates   (Note M) | | | | | | | 0 |
| 3 | Less transmission plant included in OATT Ancillary Services   (Note N) | | | | | | | 0 |
| 4 | Transmission plant included in ISO Rates  (line 1 less lines 2 & 3) | | | | | | $ | - |
| 5 | Percentage of transmission plant included in ISO Rates (line 4 divided by line 1) | | | | | TP= | | 0.00000 |
| | TRANSMISSION EXPENSES | | | | | | | |
| 6 | Total transmission expenses   (page 3, line 1, column 3) | | | | | | $ | - |
| 7 | Less transmission expenses included in OATT Ancillary Services   (Note L) | | | | | | | 0 |
| 8 | Included transmission expenses (line 6 less line 7) | | | | | | $ | - |
| 9 | Percentage of transmission expenses after adjustment (line 8 divided by line 6) | | | | | | | 0.00000 |
| 10 | Percentage of transmission plant included in ISO Rates (line 5) | | | | | TP | | 0.00000 |
| 11 | Percentage of transmission expenses included in ISO Rates (line 9 times line 10) | | | | | TE= | | 0.00000 |

| | WAGES & SALARY ALLOCATOR  (W&S) | Form 1 Reference | $ | TP | Allocation | | | |
|---|---|---|---|---|---|---|---|---|
| 12 | Production | 354.20.b | 0 | 0.00 | | 0 | | |
| 13 | Transmission | 354.21.b | 0 | 0.00 | | 0 | | |
| 14 | Distribution | 354.23.b | 0 | 0.00 | | 0 | | |
| 15 | Other | 354.24,25,26.b | 0 | 0.00 | | 0 | W&S Allocator | |
| 16 | Total  (sum lines 12-15) | | 0 | | | 0 = | ($ / Allocation) 0.00000 = | WS |

| | COMMON PLANT ALLOCATOR (CE)   (Note O) | | $ | | % Electric | | W&S Allocator | |
|---|---|---|---|---|---|---|---|---|
| | | | | | (line 17 / line 20) | | (line 16) | CE |
| 17 | Electric | 200.3.c | 0 | | 0 | | | |
| 18 | Gas | 201.3.d | 0 | | 0.00000  * | 0.00000 = | 0.00000 | |
| 19 | Water | 201.3.e | 0 | | | | | |
| 20 | Total  (sum lines 17 - 19) | | 0 | | | | | |

| | RETURN (R) | | $ | | | | | |
|---|---|---|---|---|---|---|---|---|
| 21 | | Long Term Interest (117, sum of 62.c through 67.c) | | | | | 0 | |
| 22 | | Preferred Dividends (118.29c) (positive number) | | | | | 0 | |
| | Development of Common Stock: | | | | | | | |
| 23 | | Proprietary Capital (112.16.c) | | | | | 0 | |
| 24 | | Less Preferred Stock (line 28) | | | | | 0 | |
| 25 | | Less Account 216.1 (112.12.c) (enter negative) | | | | | 0 | |
| 26 | | Common Stock  (sum lines 23-25) | | | | | 0 | |
| | | (Note P) | $ | % | Cost | Weighted | | |
| 27 | Long Term Debt (112, sum of 18.c through 21.c) | | 0 | 0% | 0.0000 | | 0.0000 = | WCLTD |
| 28 | Preferred Stock (112.3.c) | | 0 | 0% | 0.0000 | | 0.0000 | |
| 29 | Common Stock  (line 26) | | 0 | 0% | 0.1138 | | 0.0000 | |
| 30 | Total  (sum lines 27-29) | | 0 | | | | 0.0000 = | R |

| | REVENUE CREDITS | | | | Load | | | |
|---|---|---|---|---|---|---|---|---|
| 31 | ACCOUNT 447 (SALES FOR RESALE)   (Note Q) | (310-311) | | | | | | |
| | a. Bundled Non-RQ Sales for Resale (311.x.h) | | | | | | 0 | |
| 32 | b. Bundled Sales for Resale included in Divisor on page 1 | | | | | | - | |
| 33 | Total of (a)-(b) | | | | | | 0 | |
| 34 | ACCOUNT 454 (RENT FROM ELECTRIC PROPERTY)    (Note R) | | | | | $ | - | |
| 35 | ACCOUNT 456.1 (OTHER ELECTRIC REVENUES)     (Note U) | (330.x.n) | | | | $ | - | |

Attachment H-22A
Page 5 of 6

Formula Rate - Non-Levelized                                    For the 12 months ended 12/31/____

Rate Formula Template
Utilizing FERC Form 1 Data

DUKE ENERGY OHIO AND DUKE ENERGY KENTUCKY (DEOK)

General Note:  References to pages in this formulary rate are indicated as:  (page#, line#, col.#)
               References to data from FERC Form 1 are indicated as:  #.y.x  (page, line, column)
Notes:
A    DEOK 1 CP is Duke Energy Ohio ("DEO") Monthly Firm Transmission System Peak Load as reported on page 400, column b of Form
     1 at the time of DEO's annual peak, plus load served by Duke Energy Kentucky at Longbranch. For years ending 12/31/2010 and
     12/31/2011, this sum will be reduced by the amount of distribution load served by East Kentucky Power Cooperative via Duke
     Kentucky's Hebron substation.  Excludes demands from grandfathered interzonal transactions and demands from service provided by
     ISO at a discount.
B    DEOK 12 CP is DEO Monthly Firm Transmission System Peak Load as reported on page 400, column b of Form 1 at the time of
     DEO's monthly peaks, plus load served by Duke Kentucky at Longbranch.  For years ending 12/31/2010 and 12/31/2011, this sum will
     be reduced by the amount of distribution load served by East Kentucky Power Cooperative via Duke Kentucky's Hebron substation.
     Excludes demands from grandfathered interzonal transactions and demands from service provided by ISO at a discount.
C    Reserved
D    Reserved
E    This deduction is to remove expenses recorded by DEOK for Postretirement Benefits Other than Pensions (PBOP). PBOP expense is
     set forth in line 3b and is fixed until changed as the result of a filing at FERC.  The fixed amount of PBOP for DEO is $2,342,494 and
     for Duke Energy Kentucky ("DEK") is $575,908.
F    The balances in Accounts 190, 281, 282 and 283, as adjusted by any amounts in contra accounts identified as regulatory assets or
     liabilities related to FASB 106 or 109.  Balance of Account 255 is reduced by prior flow throughs and excluded if the utility chose to
     utilize amortization of tax credits against taxable income as discussed in Note K.  Account 281 is not allocated.
G    Identified in Form 1 as being only transmission related.
H    Cash Working Capital assigned to transmission is one-eighth of O&M allocated to transmission at page 3, line 8, column 5.
     Prepayments are the electric related prepayments booked to Account No. 165 and reported on Page 111 line 57 in the Form 1.
I    Line 5 - EPRI Annual Membership Dues listed in Form 1 at 353.f, all Regulatory Commission Expenses itemized at 351.h, and non-
     safety related advertising included in Account 930.1.  Line 5a - Regulatory Commission Expenses directly related to transmission
     service, ISO filings, or transmission siting itemized at 351.h.
J    Includes only FICA, unemployment, highway, property, gross receipts, and other assessments charged in the current year.  Taxes
     related to income are excluded. Gross receipts taxes are not included in transmission revenue requirement in the Rate Formula
     Template, since they are recovered elsewhere.
K    The currently effective income tax rate, where FIT is the Federal income tax rate; SIT is the State income tax rate, and p = "the
     percentage of federal income tax deductible for state income taxes".  If the utility is taxed in more than one state it must attach a work
     paper showing the name of each state and how the blended or composite SIT was developed.  Furthermore, a utility that elected to
     utilize amortization of tax credits against taxable income, rather than book tax credits to Account No. 255 and reduce rate base, must
     reduce its income tax expense by the amount of the Amortized Investment Tax Credit (Form 1, 266.8.f) multiplied by (1/1-T) (page 3,
     line 26).
         Inputs Required:                          FIT =    0.00%
                                                    SIT=     0.00%      (State Income Tax Rate or Composite SIT)
                                                    p =      0.00%      (percent of federal income tax deductible for state purposes)
L    Removes dollar amount of transmission expenses included in the OATT ancillary services rates, including Account Nos. 561.1, 561.2,
     561.3, and 561.BA.
M    Removes transmission plant determined by Commission order to be state-jurisdictional according to the seven-factor test (until Form 1
     balances are adjusted to reflect application of seven-factor test).
N    Removes dollar amount of transmission plant included in the development of OATT ancillary services rates and generation step-up
     facilities, which are deemed to be included in OATT ancillary services.  For these purposes, generation step-up facilities are those
     facilities at a generator substation on which there is no through-flow when the generator is shut down.
O    Enter dollar amounts.
P    Debt cost rate = long-term interest (line 21) / long term debt (line 27).  Preferred cost rate = preferred dividends (line 22) / preferred
     outstanding (line 28).  ROE will be supported in the original filing and no change in ROE may be made absent a filing with FERC.
     Capitalization adjusted to exclude impacts of purchase accounting.
Q    Line 33 must equal zero since all short-term power sales must be unbundled and the transmission component reflected in Account No.
     456.1 and all other uses are to be included in the divisor.
R    Includes income related only to transmission facilities, such as pole attachments, rentals and special use.
S    Reserved
T    The revenues credited on page 1 lines 2-5c shall include only the amounts received directly (in the case of grandfathered agreements)
     or from the ISO (for service under this tariff) reflecting the Transmission Owner's integrated transmission facilities.  They do not
     include revenues associated with FERC annual charges, gross receipts taxes, ancillary services, or facilities not included in this
     template (e.g., direct assignment facilities and GSUs) which are not recovered under this Rate Formula Template.

A-63

Attachment H-22A
Page 6 of 6

Formula Rate - Non-Levelized                                     For the 12 months ended 12/31/_____

Rate Formula Template
Utilizing FERC Form 1 Data

DUKE ENERGY OHIO AND DUKE ENERGY KENTUCKY (DEOK)

General Note:   References to pages in this formulary rate are indicated as:  (page#, line#, col.#)
_____   References to data from FERC Form 1 are indicated as:   #.y.x  (page, line, column)

Notes:

U     On Line 35, enter revenues from RTO settlements that are associated with NITS and firm Point-to-Point Service for which the load is
        not included in the divisor to derive Duke Energy Ohio's and Duke Energy Kentucky's zonal rates.  Exclude non-firm Point-to-Point
        revenues, revenues related to MTEP and RTEP projects, revenues from grandfathered interzonal transactions and revenues from service
        provided by ISO at a discount.

V     Account Nos. 561.4, 561.8 and 575.7 consist of RTO expenses billed to load-serving entities and are not included in Transmission
        Owner revenue requirements.

W    Reserved

X     Midcontinent ISO Fees include (1) the charges that DEOK paid to the Midcontinent ISO pursuant to the Settlement Agreement filed on
        July 29, 2011 in Docket No. ER11-2059 and (2) the exit fees that DEOK paid to the Midcontinent ISO pursuant to the Exit Fee
        Agreement filed on October 5, 2011 in Docket No. ER12-33.

Y     PJM Integration Costs are the fees that PJM assessed DEOK for the costs that PJM incurred in connection with DEOK's move into
        PJM.  Internal Integration Costs are the internal administrative costs incurred by Duke Energy Ohio and Duke Energy Kentucky to
        accomplish their move from the Midcontinent ISO into PJM.

Attachment H-22A

Appendix A<br>Page 1 of 1

For the 12 months ended 12/31/_____

Duke Energy Ohio and Duke Energy Kentucky<br>
Transmission Formula Rate Revenue Requirement<br>
Utilizing FERC Form 1 Data<br>
For Rates Effective January 1, 2012<br>
<br>
Schedule 1A Rate Calculation

| Line No. | | Source | Revenue Requirement |
|---|---|---|---|
| A. | Schedule 1A Annual Revenue Requirements | | |
| 1 | Total Load Dispatch & Scheduling (Account 561) | Attachment H-22A, Page 4, Line 7 | $          - |
| 2 | Revenue Credits for Schedule 1A - Note A | | $          - |
| 3 | Net Schedule 1A Revenue Requirement for Zone | | $          - |
| B. | Schedule 1A Rate Calculations | | |
| 4 | 2010  Annual MWh - Note B | (401a.22b & 24b) | -  MWh |
| 5 | Schedule 1A rate $/MWh (Line 3 / Line 4) | (Line 3 / Line 4) | $0.0000  $/MWh |

Notes:

A    Revenue received pursuant to PJM Schedule 1A revenue allocation procedures for transmission service outside of DEOK's zone during the year used to calculate rates under Attachment H-22A.

B    Load expressed in MWh consistent with load used for billing under Schedule 1A for the DEOK zone.  Data from RTO settlement systems for the calendar year prior to the rate year.

A-65

Attachment H-22A<br>
Appendix B<br>
Page 1 of 2<br>
For the 12 months ended 12/31/_____

Rate Formula Template<br>
Utilizing Attachment H-22A Data<br>
<br>
Duke Energy Ohio and Duke Energy Kentucky<br>
RTEP – Transmission Enhancement Charges<br>
<br>
To be completed in conjunction with Attachment H-22A

| Line No. | (1) | (2) Attachment H-22A Page, Line, Col. | (3) Transmission | (4) Allocator |
|---|---|---|---|---|
| | TRANSMISSION PLANT | | | |
| 1 | Gross Transmission Plant - Total | Sch. H-22A, p 2, line 2 col 5 (Note A) | - | |
| 2 | Net Transmission Plant - Total | Sch. H-22A, p 2, line 14 col 5 (Note B) | - | |
| | O&M EXPENSE | | | |
| 3 | Total O&M Allocated to Transmission | Sch. H-22A, p 3, line 8 col 5 | - | |
| 4 | Annual Allocation Factor for O&M | (line 3 divided by line 1 col 3) | 0.00% | 0.00% |
| | GENERAL AND COMMON (G&C) DEPRECIATION EXPENSE | | | |
| 5 | Total G&C Depreciation Expense | Sch. H-22A, p 3, lines 10 & 11, col 5 (Note H) | - | |
| 6 | Annual Allocation Factor for G&C Depreciation Expense | (line 5 divided by line 1 col 3) | 0.00% | 0.00% |
| | TAXES OTHER THAN INCOME TAXES | | | |
| 7 | Total Other Taxes | Sch. H-22A, p 3, line 20 col 5 | - | |
| 8 | Annual Allocation Factor for Other Taxes | (line 5 divided by line 1 col 3) | 0.00% | 0.00% |
| **9** | **Annual Allocation Factor for Expense** | **Sum of lines 4, 6 and 8** | | **0.00%** |
| | INCOME TAXES | | | |
| 10 | Total Income Taxes | Sch. H-22A, p 3, line 27 col 5 | - | |
| 11 | Annual Allocation Factor for Income Taxes | (line 8 divided by line 2 col 3) | 0.00% | 0.00% |
| | RETURN | | | |
| 12 | Return on Rate Base | Sch. H-22A, p 3, line 28 col 5 | - | |
| 13 | Annual Allocation Factor for Return on Rate Base | (line 10 divided by line 2 col 3) | 0.00% | 0.00% |
| **14** | **Annual Allocation Factor for Return** | **Sum of lines 11 and 13** | | **0.00%** |

A-66

Attachment H-22A<br>
Appendix B<br>
Page 2 of 2<br>
For the 12 months ended 12/31/_____

Rate Formula Template
Utilizing Attachment H-22A Data

Duke Energy Ohio and Duke Energy Kentucky
RTEP – Transmission Enhancement Charges

**Network Upgrade Charge Calculation By Project**

| | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (11) | (12) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Line No. | Project Name | RTEP Project Number | Project Gross Plant | Annual Allocation Factor for Expense | Annual Expense Charge | Project Net Plant | Annual Allocation Factor for Return | Annual Return Charge | Project Depreciation Expense | Annual Revenue Requirement | True-Up Adjustment | Network Upgrade Charge |
| | | | (Note C) | (Page 1 line 7) | (Col. 3 * Col. 4) | (Note D) | (Page 1 line 12) | (Col. 6 * Col. 7) | (Note E) | (Sum Col. 5, 8 & 9) | (Note F) | Sum Col. 10 & 11 (Note G) |
| 1b | | | $  - | 0.00% | $0.00 | $  - | 0.00% | $0.00 | $0 | $0.00 | $  - | $0.00 |
| 1c | | | $  - | 0.00% | $0.00 | $  - | 0.00% | $0.00 | $0 | $0.00 | $  - | $0.00 |
| 2 | Annual Totals | | | | | | | | | $0 | $0 | $0 |
| 3 | RTEP Transmission Enhancement Charges for Attachment H-22A, Page 1, Line 5c | | | | | | | | | | | $0 |

Notes:
A.  Gross Transmission Plant is that identified on page 2 line 2 of Attachment H-22A and includes any sub lines 2a or 2b etc. and is inclusive of any CWIP included in rate base when authorized by FERC order.
B.  Net Transmission Plant is that identified on page 2 line 14 of Attachment H-22A and includes any sub lines 14a or 14b etc. and is inclusive of any CWIP included in rate base when authorized by FERC order.
C.  Project Gross Plant is the total capital investment for the project calculated in the same method as the gross plant value in line 1 and includes CWIP in rate base if applicable.  This value includes subsequent capital investments required to maintain the facilities to their original capabilities.
D.  Project Net Plant is the Project Gross Plant Identified in Column 3 less the associated Accumulated Depreciation.
E.  Project Depreciation Expense is the actual value booked for the project and included in the Depreciation Expense in Attachment H-22A page 3 line 12.
F.  True-Up Adjustment is included pursuant to a FERC approved methodology if applicable.
G.  The Network Upgrade Charge is the value to be used in Schedule 26.
H.  The Total General and Common Depreciation Expense excludes any depreciation expense directly associated with a project and thereby included in page 2 column 9.

Rate Formula Template
Utilizing Attachment H-22A Data

Duke Energy Ohio and Duke Energy Kentucky
Legacy MTEP Credit

To be completed in conjunction with Attachment H-22A

| | (1) | (2) | (3) | (4) |
|---|---|---|---|---|
| Line No. | | Attachment H-22A Page, Line, Col. | Transmission | Allocator |
| | **TRANSMISSION PLANT** | | | |
| 1 | Gross Transmission Plant - Total | Sch. H-22A, p 2, line 2 col 5 (Note A) | - | |
| 2 | Net Transmission Plant - Total | Sch. H-22A, p 2, line 14 col 5 (Note B) | - | |
| | **O&M EXPENSE** | | | |
| 3 | Total O&M Allocated to Transmission | Sch. H-22A, p 3, line 8 col 5 | - | |
| 4 | Annual Allocation Factor for O&M | (line 3 divided by line 1 col 3) | 0.00% | 0.00% |
| | **GENERAL AND COMMON (G&C) DEPRECIATION EXPENSE** | | | |
| 5 | Total G&C Depreciation Expense | Sch. H-22A, p 3, lines 10 & 11, col 5 (Note H) | - | |
| 6 | Annual Allocation Factor for G&C Depreciation Expense | (line 5 divided by line 1 col 3) | 0.00% | 0.00% |
| | **TAXES OTHER THAN INCOME TAXES** | | | |
| 7 | Total Other Taxes | Sch. H-22A, p 3, line 20 col 5 | - | |
| 8 | Annual Allocation Factor for Other Taxes | (line 5 divided by line 1 col 3) | 0.00% | 0.00% |
| **9** | **Annual Allocation Factor for Expense** | **Sum of lines 4, 6 and 8** | | **0.00%** |
| | **INCOME TAXES** | | | |
| 10 | Total Income Taxes | Sch. H-22A, p 3, line 27 col 5 | - | |
| 11 | Annual Allocation Factor for Income Taxes | (line 8 divided by line 2 col 3) | 0.00% | 0.00% |
| | **RETURN** | | | |
| 12 | Return on Rate Base | Sch. H-22A, p 3, line 28 col 5 | - | |
| 13 | Annual Allocation Factor for Return on Rate Base | (line 10 divided by line 2 col 3) | 0.00% | 0.00% |
| **14** | **Annual Allocation Factor for Return** | **Sum of lines 11 and 13** | | **0.00%** |

Rate Formula Template
Utilizing Attachment H-22A Data

Duke Energy Ohio and Duke Energy Kentucky
Legacy MTEP Credit

**Network Upgrade Charge Calculation By Project**

| | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (11) | (12) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Line No. | Project Name | MTEP Project Number | Project Gross Plant | Annual Allocation Factor for Expense | Annual Expense Charge | Project Net Plant | Annual Allocation Factor for Return | Annual Return Charge | Project Depreciation Expense | Annual Revenue Requirement | True-Up Adjustment | Network Upgrade Charge |
| | | | (Note C) | (Page 1 line 7) | (Col. 3 * Col. 4) | (Note D) | (Page 1 line 12) | (Col. 6 * Col. 7) | (Note E) | (Sum Col. 5, 8 & 9) | (Note F) | Sum Col. 10 & 11 (Note G) |
| 1b | | $   - | 0.00% | $0.00 | $   - | 0.00% | $0.00 | $0 | $0.00 | $   - | $0.00 |
| 1c | | $   - | 0.00% | $0.00 | $   - | 0.00% | $0.00 | $0 | $0.00 | $   - | $0.00 |
| 2 | Annual Totals | | | | | | | | | $0 | $0 | $0 |
| 3 | Legacy MTEP Credit for Attachment H-22A, Page 1, Line 5a | | | | | | | | | | | $0 |

Notes:
A.    Gross Transmission Plant is that identified on page 2 line 2 of Attachment H-22A and includes any sub lines 2a or 2b etc. and is inclusive of any CWIP included in rate base when authorized by FERC order.
B.    Net Transmission Plant is that identified on page 2 line 14 of Attachment H-22A and includes any sub lines 14a or 14b etc. and is inclusive of any CWIP included in rate base when authorized by FERC order.
C.    Project Gross Plant is the total capital investment for the project calculated in the same method as the gross plant value in line 1 and includes CWIP in rate base if applicable.  This value includes subsequent capital investments required to maintain the facilities to their original capabilities.
D.    Project Net Plant is the Project Gross Plant Identified in Column 3 less the associated Accumulated Depreciation.
E.    Project Depreciation Expense is the actual value booked for the project and included in the Depreciation Expense in Attachment H-22A page 3 line 12.
F.    True-Up Adjustment is included pursuant to a FERC approved methodology if applicable.
G.    The Network Upgrade Charge is the value to be used in Schedule 26.
H.    The Total General and Common Depreciation Expense excludes any depreciation expense directly associated with a project and thereby included in page 2 column 9.

DUKE ENERGY OHIO, INC.
DEPRECIATION RATES

| FERC Account Number (A) | Company Account Number (B) | Description (C) | Actual Accrual Rates (D) % |
|---|---|---|---|
| | | **Wholly Owned Transmission Plant** | |
| 350 | 3403 | Rights of Way | 1.54 |
| 352 | 3420 | Structures &  Improvements | 1.90 |
| 352 | 3424 | Structures &  Improvements - Duke Ohio - Loc. in Ky. | 1.90 |
| 353 | 3430 | Station Equipment | 1.44 |
| 353 | 3434 | Station Equipment - Duke Ohio - Loc. in Ky. | 1.44 |
| 354 | 3440 | Towers & Fixtures | 1.85 |
| 354 | 3444 | Towers & Fixtures - Duke Ohio - Loc. in Ky. | 1.85 |
| 355 | 3450 | Poles & Fixtures | 2.31 |
| 355 | 3454 | Poles & Fixtures - Duke Ohio - Loc. in Ky. | 2.31 |
| 356 | 3460 | Overhead Conductors & Devices | 1.91 |
| 356 | 3464 | Overhead Conductors & Devices - Duke Ohio - Loc. in Ky. | 1.91 |
| 357 | 3470 | Underground Conduit | 1.43 |
| 358 | 3480 | Underground Conductors & Devices | 2.37 |
| | | **Commonly Owned Transmission Plant - CCD Projects** | |
| 352 | 3421 | Structures &  Improvements - CCD Projects | 2.50 |
| 352 | 3425 | Structures &  Improvements - CCD Projects | 2.50 |
| 353 | 3431 | Station Equipment - CCD Projects | 1.44 |
| 353 | 3432 | Station Equipment - CCD Projects | 1.44 |
| 353 | 3435 | Station Equipment - CCD Projects | 1.44 |
| 353 | 3437 | Station Equipment - CCD Projects | 1.44 |
| 354 | 3441 | Towers & Fixtures - CCD Projects | 3.00 |
| 354 | 3442 | Towers & Fixtures - CCD Projects | 3.00 |
| 354 | 3445 | Towers & Fixtures - CCD Projects | 3.00 |
| 354 | 3446 | Towers & Fixtures - CCD Projects - Loc. In Ky. | 3.00 |
| 354 | 3448 | Towers & Fixtures - CCD Projects | 3.00 |
| 355 | 3451 | Poles & Fixtures - CCD Projects | 3.00 |
| 355 | 3455 | Poles & Fixtures - CCD Projects | 3.00 |
| 356 | 3461 | Overhead Conductors & Devices - CCD Projects | 2.50 |
| 356 | 3462 | Overhead Conductors & Devices - CCD Projects | 2.50 |
| 356 | 3465 | Overhead Conductors & Devices - CCD Projects | 2.50 |
| 356 | 3466 | Overhead Conductors & Devices - CCD Projects - Loc. In Ky. | 2.50 |
| | | **Commonly Owned Transmission Plant - CD Projects** | |
| 352 | 3423 | Structures &  Improvements - CD Projects | 2.50 |
| 353 | 3433 | Station Equipment - CD Projects | 1.44 |
| 353 | 3438 | Station Equipment - CD Projects | 1.44 |
| 354 | 3447 | Towers & Fixtures - CD Projects | 3.00 |
| 356 | 3467 | Overhead Conductors & Devices - CD Projects | 2.50 |
| | | **General and Intagible Plant** | |
| 303 | 3030 | Miscellaneous Intangible Plant | 20.00 |
| 389 | 3890 | Land and Land Rights | N/A |
| 390 | 3900 | Structures and Improvements | 2.50 |
| 391 | 3910 | Office Furniture and Equipment | 2.00 |
| 391 | 3911 | Electronic Data Processing Equipment | 20.00 |
| 391 | 3920 | Transportation Equipment | 8.33 |
| 391 | 3921 | Trailers | 4.25 |
| 392 | 3940 | Tools, Shop & Garage Equipment | 4.00 |
| 392 | 3950 | Laboratory Equipment | 6.67 |
| 393 | 3960 | Power Operated Equipment | 5.88 |
| 393 | 3970 | Communication Equipment | 6.67 |
| 394 | 3980 | Miscellaneous Equipment | 5.00 |

DUKE ENERGY KENTUCKY, INC.
DEPRECIATION RATES

| FERC Account Number (A) | Company Account Number (B) | Description (C) | Actual Accrual Rates (D) % |
|---|---|---|---|
| | | **Transmission Plant** | |
| 350 | 3501 | Rights of Way | 1.48 |
| 352 | 3520 | Structures & Improvements | 0.41 |
| 353 | 3530 | Station Equipment | 2.25 |
| 353 | 3532 | Station Equipment - Major | 2.77 |
| 353 | 3535 | Station Equipment – Electronic | 9.55 |
| 355 | 3550 | Poles & Fixtures | 2.28 |
| 356 | 3560 | Overhead Conductors & Devices | 2.31 |
| | | **General and Intangible Plant** | 20.00 |
| 303 | 3030 | Miscellaneous Intangible Plant | 1.77 |
| 390 | 3900 | Land and Land Rights | 18.56 |
| 391 | 39110 | Structures and Improvements | 6.53 |
| 392 | 3921 | Electronic Data Processing Equipment | 4.14 |
| 394 | 3940 | Transportation Equipment | 6.93 |
| 397 | 3970 | Stores Equipment | |

Rate Formula Template
Utilizing Attachment H-22A Data

Duke Energy Ohio and Duke Energy Kentucky
Firm PTP Service Revenue Credit Adjustment Calculation

To be completed in conjunction with Attachment H-22A

| No. | | (1) | (2) Reference | (3) Company Total |
|---|---|---|---|---|
| | **REVENUE CREDIT TRUE-UP** | | | |
| 1 | Difference Between Revenue Received In PJM vs. Midcontinent ISO | | (Note A) | $0 |
| | **ACCUMULATED BALANCE OF REVENUE CREDIT TRUE-UP** | | | |
| 2 | Accumulated Balance of Deferral | | (Note B) | $0 |
| 3 | Income Tax Rate for Deferral Calculation | | (Note C) | 0.00% |
| 4 | Deferred Income Taxes on Accumulated Deferral (line 2 * line 3) | | | $0 |
| 5 | Accumulated Deferral for Carrying Cost Calculation (Line 2 - Line 4) | | | $0 |
| | **INCOME TAXES** | | | |
| 6 | CIT = (T/(1-T)) * (1 - (WCLTD/R)) | | Attachment H-22, page 3, line 22 | 0.00% |
| 7 | Income Taxes (Line 6 * Line 9) | | | $0 |
| | **CARRYING COST ON DEFERRAL** | | | |
| 8 | FERC Refund Rate | | (Note D) | 0.00% |
| 9 | Carrying Cost (Line 5 * Line 8) | | | $0 |
| 10 | Revenue Credit Adjustment (Line 1 + Line 7 + Line 9) | | | $0 |

Notes
A.  From Appendix E, Workpaper, Column (4).
B.  Accumulated balance of deferral as of December 31st of the year prior to effective date of new rates.
C.  Effective deferred tax rate during applicable test year.
D.  FERC Refund Rate is the approved rate as of December 31 of calendar prior to the rate year (see 18 C.F.R. Section 35.19a).

Attachment H-22A
Appendix E
Workpaper

Duke Energy Ohio and Duke Energy Kentucky

Worksheet for Firm PTP Service Revenue Credit Adjustment Calculation

| (1) Period | (2) Actual Firm PTP Service Revenue Included in Test Year Rate Calculation (Note A) | | (3) Actual Firm PTP Service Revenue Received from PJM (Note B) | | (4) = (2) - (3) Difference Between Revenue Received and Amount in Rates Excluding True Up | | (5) Monthly True-Up Adjustment Included In H-22A Net Revenue Requirement (Note C) | (6) = (4) - (5) Amount Deferred for Future Recovery | | (7) = Prior month's Balance + (6) Accumulated Balance of Deferred Firm PTP Service Revenue Credit Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|
| Jan-12 | $ | - | $ | - | $ | - | | $ | - | - |
| Feb-12 | | - | | - | | - | | | - | - |
| Mar-12 | | - | | - | | - | | | - | - |
| Apr-12 | | - | | - | | - | | | - | - |
| May-12 | | - | | - | | - | | | - | - |
| Jun-12 | | - | | - | | - | | | - | - |
| Jul-12 | | - | | - | | - | | | - | - |
| Aug-12 | | - | | - | | - | | | - | - |
| Sep-12 | | - | | - | | - | | | - | - |
| Oct-12 | | - | | - | | - | | | - | - |
| Nov-12 | | - | | - | | - | | | - | - |
| Dec-12 | | - | | - | | - | | | - | - |
| **Total** | | | | | $ | - | | $ | - | |
| | | | | | | | | | | |
| Jan-13 | | - | | - | | - | | $ | - | |
| Feb-13 | | - | | - | | - | | | - | |
| Mar-13 | | - | | - | | - | | | - | |
| Apr-13 | | - | | - | | - | | | - | |
| May-13 | | - | | - | | - | | | - | |
| Jun-13 | | | | | | - | | | - | |
| Jul-13 | | | | | | | | | - | |
| Aug-13 | | | | | | | | | - | |
| Sep-13 | | | | | | | | | - | |
| Oct-13 | | | | | | | | | - | |
| Nov-13 | | | | | | | | | - | |
| Dec-13 | | | | | | | - | | - | - |
| **Total** | | | | | $ | - | $ | $ | - | |
| | | | | | | | | | | |
| Jan-14 | | | | | $ | - | $ | | - | - |
| Feb-14 | | | | | | | | | - | |
| Mar-14 | | | | | | | | | - | |
| Apr-14 | | | | | | | | | - | |
| May-14 | | | | | | | | | - | |
| Jun-14 | | | | | | | | | - | |
| Jul-14 | | | | | | | | | - | |
| Aug-14 | | | | | | | | | - | |
| Sep-14 | | | | | | | | | - | |
| Oct-14 | | | | | | | | | - | |
| Nov-14 | | | | | | | | | - | |
| Dec-14 | | | | | | | | | - | - |
| **Total** | | | | | $ | - | $ | | - | |
| | | | | | | | | | | |
| Jan-15 | | | | | $ | - | $ | | - | - |
| Feb-15 | | | | | | | | | - | |
| Mar-15 | | | | | | | | | - | |
| Apr-15 | | | | | | | | | - | |
| May-15 | | | | | | | - | | - | - |
| **Total** | | | | | $ | - | $ | | | |

Notes:
A. Monthly Firm PTP service revenue from Midcontinent ISO during test year applicable to currently effectives NITS and PTP service rates.
B. Actual monthly Firm PTP service revenue received from PJM during current period.
C. Recovery of deferral begins with the first period for billing rates approved using a test year for Attachment H-22A that includes actual operations in PJM.
The recovery of the amounts deferred between January 1, 2012, and December 31, 2012, will begin on June 1, 2013, and will end on May 31, 2014.
The recovery of the amounts deferred between January 1, 2013, and May 31, 2013, will begin on June 1, 2014, and will end on May 31, 2015.

**ATTACHMENT H-22B**
**DEOK FORMULA RATE IMPLEMENTATION PROTOCOLS**

<u>Definitions</u>

"Annual Transmission Revenue Requirements" means the result produced by populating the Formula Rate Template with data as provided by the Formula Rate.

"Annual Update" means the posting and informational filing submitted by DEOK on or before May 15 of each year that sets forth the DEOK Cost of Service ("COS") for the subsequent Rate Year.

"Discovery Period" means the period after each annual Publication Date to serve information requests on DEOK as provided in Section 2.b below.

"DEOK" means Duke Energy Kentucky, Inc., and Duke Energy Ohio, Inc.

"First Rate Year" means the period that begins on January 1, 2012, and ends on May 31, 2012.

"Formal Challenge" means a challenge to an Annual Update submitted to the Federal Energy Regulatory Commission ("FERC") as provided in Section 3.a below.

"Formula Rate" means these Formula Rate Implementation Protocols (to be included as Attachment H-22B of the PJM Interconnection, L.L.C. ("PJM"), FERC Electric Tariff ("PJM Tariff")) and the Formula Rate Template.

"Formula Rate Template" means the collection of formulae, and worksheets, unpopulated with any data, to be included as Attachment H-22A of the PJM Tariff.

"Interested Party" means any person or entity having standing under Section 206 of the Federal Power Act ("FPA") with respect to the Annual Update.

"Material Changes" means (i) material changes in DEOK's accounting policies and practices, (ii) changes in FERC's Uniform System of Accounts ("USofA"), (iii) changes in FERC Form No. 1 reporting requirements as applicable, or (iv) changes in the FERC's accounting policies and practices, which change causes a result under the Formula Rate different from the result under the Formula Rate as calculated without such change.

"Preliminary Challenge" means a written challenge to the Annual Update submitted to DEOK as provided in Section 2.a below.

"Protocols" means these Formula Rate Implementation Protocols (to be included as Attachment H-22B of the PJM Tariff).

"Publication Date" means the date on which the Annual Update is posted under the provisions of Section 1.b below.

A-74

"Rate Year" means the twelve consecutive month period that begins on June 1 and continues through May 31 of the subsequent calendar year except for the First Rate Year.

"Review Period" means the period during which Interested Parties may review the calculations in the Annual Update as provided in Section 2.a below.

**Section 1**      **Annual Updates**

a.   Beginning with the Rate Year that commences on June 1, 2012, and during each Rate Year thereafter, the Annual Transmission Revenue Requirement calculated in accordance with Attachment H-22A and the Network Integration Transmission Service and Point-to-Point rates derived therefrom shall be applicable to transmission services provided by PJM for the DEOK zone during the Rate Year.

b.   On or before May 15, 2012, and on or before May 15 of each succeeding Rate Year, DEOK shall recalculate its Annual Transmission Revenue Requirement, producing the "Annual Update" for the upcoming Rate Year, and:
   (i)    post such Annual Update on PJM's Internet website (via a link to the Transmission Services page or a similar successor page) as both a .pdf (Portable Document Format) document and a fully-functioning Excel file;
   (ii)   submit such Annual Update as an informational filing with the FERC;
   (iii)  provide contact information for inquiries concerning the Annual Update;
   (iv)   send an email or other similar electronic communication to all Interested Parties that have previously requested such notification through procedures to be established by DEOK that informs the recipient that the Annual Update is available and that provides the Uniform Resource Locator or other similar identifying location information from which the Annual Update can be obtained.

c.   If the date for making the Annual Update posting/filing should fall on a weekend or a holiday recognized by the FERC, then the posting/filing shall be due on the next business day.

d.   The date on which the last of the events listed in Section 1.b or 1.c occurs shall be that year's "Publication Date."

e.   Within two business days of the Publication Date, DEOK shall also provide notice on PJM's Internet website (via a link to the Transmission Services page or a similar successor page) of the time, date and location of an open meeting among interested parties ("Annual Meeting"). This Annual Meeting shall (i) permit DEOK to explain and clarify its Annual Update and (ii) provide interested parties an opportunity to seek information and clarifications from DEOK about the Annual Update. The Annual Meeting shall take place no sooner than ten (10) days after posting of the notice and no later than thirty (30) days after the Publication Date.

f.   Inputs to the Formula Rate are based on DEOK's books, which reflect:
   (i)    the FERC's Uniform System of Accounts, and

    (ii)    applicable FERC Form No. 1[1] as each exists as of the later of the date of DEOK's initial filing of the Formula Rate or the last day of the calendar year immediately preceding the effective date of the most recent revision to the Formula Rate.

g.    The Annual Update for the Rate Year:

    (i)    shall, to the extent specified in the Formula Rate, be based upon DEOK's FERC Form No. 1 data for the most recent calendar year, and to the extent specified in the Formula Rate, be based upon the books and records of DEOK consistent with Section 1.f above;

    (ii)    shall, as and to the extent specified in the Formula Rate, provide the formula rate calculations and all inputs thereto, as well as supporting documentation for data not otherwise available in the FERC Form No. 1 that are used in the Formula Rate;[2]

    (iii)    shall provide sufficient information[3] to enable customers to replicate the calculation of the formula results from FERC Form No. 1 and other applicable accounting inputs and to compare that calculation to that of prior years, including all workpapers necessary to explain any changes made since the last update, and to include as applicable:

        (1)    a copy of the FERC Form No. 1 used for the update if it is not otherwise publicly available;

        (2)    identification of any changes in the formula references to the FERC Form No. 1;

        (3)    identification of all adjustments made to the FERC Form No. 1 data in determining formula inputs, including relevant footnotes to the FERC Form No. 1 and any adjustments not shown in a FERC Form No. 1 footnote;

---

[1].    If the referenced form is superseded, the successor form(s) shall be utilized and supplemented as necessary to provide equivalent information as that provided in the superseded form. If the referenced form(s) is (are) discontinued, equivalent information as that provided in the discontinued form(s) shall be utilized.

[2].    It is the intent of the Formula Rate, including the supporting explanations and allocations described therein, that each input to the Formula Rate will be either taken directly from the FERC Form No. 1 for the most recent calendar year or reconcilable to the FERC Form No. 1 by the application of clearly identified and supported information provided by DEOK with the Annual Update. Where the reconciliation is provided through a worksheet included in the filed Formula Rate Template, the inputs to the worksheet must meet this transparency standard, and doing so will satisfy this transparency requirement for the amounts that are output from the worksheet and input to the main body of the Formula Rate.

[3].    As appropriate, competitively sensitive information may be provided only to those persons bound by the terms of a suitable confidentiality agreement or protective order.

       (4)    a reconciliation of annual and monthly peak demands shown on the FERC Form 1 and annual and monthly peak demands used in the formula in sufficient detail to enable transparent reconciliation of these two measures;

       (5)    a description of those factors influencing any change in the annual revenue requirement, including an identification of any respects in which charges under the formula rate materially differ from the preceding Annual Update (e.g., due to changes in accounting procedures, the purchase or sale of major assets, or other such significant changes) and identification of the major reason(s) for the differences, if any, between the Annual Update and the prior year's Annual Update; and

       (6)    any changes to the data inputs made as a result of a reconciliation made under Section 4 below.

   (iv)    shall describe material changes, if any, in DEOK's accounting policies, practices and procedures from those in effect for the calendar year upon which the immediately preceding Annual Update was based that could or did affect the charges under the Formula Rate ("Material Accounting Changes");[4]

   (v)    shall be subject to challenge and review only in accordance with the procedures set forth in this Attachment H-22B, as to the appropriateness of the input data, the prudence of the costs and expenditures included for recovery in the Annual Update, and the application of the Formula Rate according to its terms and the procedures in this Attachment H-22B (including terms and procedures related to challenges concerning Material Accounting Changes);

   (vi)    except as provided for in Section 1.j below, shall not seek to modify the Formula Rate and shall not be subject to challenge by anyone for the purpose of modifying the Formula Rate (i.e., all such modifications to the Formula Rate will require, as applicable, a Federal Power Act ("FPA") Section 205 or Section 206 filing).

h.    Formula Rate inputs for rate of return on common equity, depreciation rates and Post-Employment Benefits Other Than Pensions ("PBOP") shall be stated values until changed pursuant to an FPA Section 205 or 206 filing made effective by the Commission. An application under Section 205 or Section 206 to modify stated values for depreciation rates or PBOP expense under the Formula Rate or Protocols shall not open review of other components of the Formula Rate or Protocols.

i.    Extraordinary property losses recorded in FERC Account 182.1 shall be amortized for Formula Rate purposes pursuant to a Section 205 or 206 filing made effective by the Commission.

---

[4]    Such notice may incorporate by reference applicable disclosure statements filed with the Securities and Exchange Commission ("SEC").

j.    Any change to the underlying Uniform System of Accounts or FERC Form No. 1 as described in Section 1.f above shall be grounds for a presumption that the application of the Formula Rate shall be modified to restore the balance of the Formula Rate as accepted by the FERC (the intent being to prevent such changes in these underlying Uniform System of Accounts or FERC Form No. 1 from causing an automatic shift in the charges calculated under the Formula Rate without input from other interested parties). Any interested party seeking changes to the application of the Formula Rate due to a change in the Uniform System of Accounts or FERC Form No. 1 as described in Section 1.f, shall first raise the matter with DEOK.

**Section 2      Annual Review Procedures**

Each Annual Update shall be subject to the following review procedures ("Annual Review Procedures"):

a.    Interested parties shall have up to one hundred eighty (180) days after the Publication Date (unless such period is extended with the written consent of DEOK or by FERC Order) to review the inputs, supporting explanations, allocations and calculations ("Review Period") and to notify DEOK in writing, which may be made electronically, of any specific challenges, including challenges related to the rate treatment of Material Accounting Changes, to the application of the Formula Rate and to changes to the Uniform System of Accounts or FERC Form No. 1 as described in Section 1.f, above, ("Preliminary Challenge").   Failure to make a Preliminary Challenge or Formal Challenge with respect to an Annual Update shall preclude use of these procedures with respect to that Annual Update but shall not bar a subsequent Preliminary Challenge or Formal Challenge related to a subsequent Annual Update to the extent such Challenge affects the subsequent Annual Update.

b.    Interested Parties shall have up to one hundred fifty (150) days after each annual Publication Date (unless such period is extended with the written consent of DEOK or by FERC Order) to serve reasonable information requests on DEOK.  Such information requests shall be limited to what is necessary to determine if DEOK has properly applied the Formula Rate, the requirements and procedures of this Attachment H-22B, and the prudence of the costs and expenditures included for recovery in the Annual Update, and shall not otherwise be directed to ascertaining whether the Formula Rate is just and reasonable.

c.    DEOK shall make a good faith effort to respond to information requests pertaining to the Annual Update within fifteen (15) business days of receipt of such requests. Notwithstanding anything to the contrary contained in these Protocols, with respect to any information requests received by DEOK within the Discovery Period and for which DEOK is unable to provide a response within fifteen (15) business days after the end of the Discovery Period, the Review Period shall be extended day-for-day until DEOK's response is provided.

d.  To the extent DEOK and any interested party(ies) are unable to resolve disputes related to information requests submitted in accordance with these Annual Review Procedures, DEOK or any interested party may petition the FERC to appoint an Administrative Law Judge as a discovery master. The discovery master shall have the power to issue binding orders to resolve discovery disputes and compel the production of discovery, as appropriate, in accordance with the Annual Review Procedures and consistent with the FERC's discovery rules.

e.  Preliminary Challenges shall be subject to the resolution procedures and limitations in Section 3. Formal Challenges shall be filed pursuant to these Protocols and shall include the information required under 18 C.F.R. § 385.206 (b) (1), (2), (3), (4), and (7).

f.  Preliminary or Formal Challenges related to Material Changes are not intended to serve as a means of pursuing other objections to the Formula Rate. Failure to make a Preliminary Challenge or Formal Challenge with respect to an Annual Update shall preclude use of these procedures with respect to that Annual Update but shall not preclude a subsequent Preliminary Challenge or Formal Challenge related to a subsequent Annual Update to the extent such Challenge affects the subsequent Annual Update.

g.  In any proceeding initiated to address a Preliminary or Formal Challenge or *sua sponte* by the FERC, a party or parties seeking to modify the Formula Rate in any respect shall bear the applicable burden under the FPA.

**Section 3      Resolution of Challenges**

a.  If DEOK and any interested party(ies) have not resolved any Preliminary Challenge to the Annual Update within twenty-one (21) days after the Review Period, an interested party shall have an additional twenty-one (21) days (unless such period is extended with the written consent of DEOK to continue efforts to resolve the Preliminary Challenge) to make a Formal Challenge with the FERC, which shall be served on DEOK by electronic service on the date of such filing. However, there shall be no need to make a Formal Challenge or to await conclusion of the time periods in Section 2 if the FERC already has initiated a proceeding to consider the Annual Update. Parties shall make a good faith effort to raise all issues in a Preliminary Challenge prior to filing a Formal Challenge; provided, however, that a Preliminary Challenge shall not be a prerequisite for bringing a Formal Challenge. Failure to notify DEOK of an issue with respect to an Annual Update shall not preclude an Interested Party from pursuing such issues in a Preliminary Challenge or Formal Challenge.

b.  Any response by DEOK to a Formal Challenge must be submitted to the FERC within twenty (20) days of the date of the filing of the Formal Challenge, and shall be served on the filing party(ies) by electronic service on the date of such filing.

c.  In any proceeding initiated by the FERC concerning the Annual Update or in response to a Formal Challenge, DEOK shall bear the burden, consistent with Section 205 of the

Federal Power Act, of proving that it has correctly applied the terms of the Formula Rate, consistent with Section 1.g(v), and that it followed the applicable requirements and procedures in this Attachment H-22B, in that year's Annual Update. Nothing herein is intended to alter the burdens applied by the Commission with respect to prudence challenges.

d.    Subject to judicial review of FERC orders, each Annual Update shall become final as to the Annual Transmission Revenue Requirement calculated for the Rate Year for which the Annual Update was calculated and no longer subject to challenge pursuant to these Protocols or by any other means by the FERC or any other entity on the later to occur of (i) passage of the twenty-one (21) day period (or extended period, if applicable) for making a Formal Challenge if no such challenge has been made and the FERC has not initiated a proceeding to consider the Annual Update, or (ii) a final FERC order issued in response to a Formal Challenge or a proceeding initiated by the FERC to consider the Annual Update.

e.    Nothing herein shall be deemed to limit in any way the right of DEOK to file unilaterally, pursuant to FPA Section 205 and the regulations thereunder, to change the Formula Rate or any of its inputs (including, but not limited to, rate of return and transmission incentive rate treatment), or to replace the Formula Rate with a stated rate, or the right of any other party to request such changes pursuant to Section 206 of the Federal Power Act and the regulations thereunder. These Protocols in no way limit the rights of DEOK or any Interested Party to initiate a proceeding at the FERC at any time with respect to the Formula Rate or any Annual Update consistent with the party's full rights under the FPA, including Sections 205, 206 and 306, and the FERC's regulations.

f.    Subject to Section 2.e above, it is recognized that resolution of Formal Challenges concerning Material Accounting Changes or related to the Uniform System of Accounts or FERC Form No. 1 as described above may necessitate adjustments to the Formula Rate input data for the applicable Annual Update or changes to the Formula Rate to achieve a just and reasonable end result consistent with the intent of the Formula Rate.

g.    In making or resolving any Preliminary or Formal Challenge under this Section, a party may rely on all information provided by DEOK, including information provided under the terms of a confidentiality agreement or protective order; provided, however, that parties receiving such information pursuant to a confidentiality agreement or protective order shall be bound by the restrictions placed by such agreement or order on disclosure or use of confidential information.

**Section 4**    **Changes to Annual Informational Filings**

a.    Notice. If any changes are required to be made to the Annual Update, whether because of changes made under these Protocols, due to revisions made to a prior year's FERC Form No. 1 report of Duke Energy Kentucky, Inc., or Duke Energy Ohio, Inc., or

input data used for a Rate Year or calendar year that would have affected the Annual Update for that Rate Year or calendar year, or as the result of any FERC proceeding to consider a prior year's Annual Update, DEOK shall promptly notify the Interested Parties, file a correction to the Annual Update with the FERC as an amended informational filing describing the change(s) and the cost impact, and provide a copy of the amended informational filing to PJM for prompt posting by PJM.

b.     Necessary Changes When Made.  Except as provided for below in Section 4.c, any corrections or revisions to the inputs and resulting rates that are required as a result of a change reported in Section 4.a shall be reflected in the next Annual Update, including any resulting refunds or surcharges for corrected past charges which shall be made with interest as per section 35.19a of the Commission's regulations.

c.     Changes Made During the Review Period.  Unless otherwise agreed by DEOK and the Interested Parties, a correction made under Section 4.a prior to the time determined for filing of a Formal Complaint shall reset the performance dates under Sections 2 and 3 of these Protocols for Interested Party Annual Review, and the revised dates shall run from the posting date(s) for each of the corrections.  The scope of the Annual Review shall then be limited to the aspects of the Formula Rate affected by the corrections.

P

**ATTACHMENT JJ**
**MTEP PROJECT COST RECOVERY FOR DEOK ZONE**

## I. Definitions

      A.      DEOK – Duke Energy Ohio, Inc., and Duke Energy Kentucky, Inc.

      B.      Midcontinent ISO or MISO – The Midcontinent Independent System Operator, Inc.

      C.      Midcontinent ISO Tariff – The Midcontinent ISO's Open Access Transmission, Energy, and Operating Reserve Markets Tariff.

      D.      Midcontinent ISO Transmission Owner – Any transmission owner in the Midcontinent ISO, including any independent transmission company, responsible for the construction of MTEP Projects under Attachment FF of the Midcontinent ISO Tariff.

      E.      MTEP – The Midcontinent ISO Transmission Expansion Plan established pursuant to Attachment FF of the Midcontinent ISO Tariff.

      F.      MTEP Project – A transmission project constructed by DEOK or by Midcontinent ISO Transmission Owners pursuant to Attachment FF of the Midcontinent ISO Tariff for which all or a portion of the revenue requirement is allocated to DEOK pursuant to the Midcontinent ISO Tariff.

      G.      Network Service Peak Load – A Network Service Transmission Customer's share of the previous year's DEOK zonal peak load (1 CP).

## II. Introduction and Purpose

Transmission Customers taking transmission service for deliveries in the DEOK Zone shall pay a portion of the cost of MTEP Projects constructed by Midcontinent ISO Transmission Owners. This Attachment JJ sets forth the method by which Transmission Customers taking transmission service for deliveries into the DEOK Zone are charged for the cost of MTEP Projects constructed by Midcontinent ISO Transmission Owners. This Attachment also sets forth the method by which the PJM Office of the Interconnection will transmit to the Midcontinent ISO the revenues received from Transmission Customers taking transmission service for deliveries into the DEOK Zone for the cost of MTEP Projects to be constructed by Midcontinent ISO Transmission Owners. Finally, it addresses the manner in which the PJM Office of the Interconnection will distribute to Duke Energy Ohio, Inc. on behalf of DEOK the revenues received from the Midcontinent ISO for the cost of MTEP Projects constructed by DEOK.

## III. MTEP Project Revenue Requirements Allocated to DEOK Zone

### A. Recovery of Annual Revenue Requirements for Midcontinent ISO Transmission Owners' MTEP Projects

Each month, and pursuant to agreed-upon settlement procedures, PJM shall bill each Network Customer in the DEOK Zone thirty percent (30%) of the Network Customer's monthly share of the revenue requirements allocated to DEOK for MTEP Projects constructed by the Midcontinent ISO Transmission Owners, as determined in accordance with the Midcontinent ISO Tariff and as billed by the Midcontinent ISO to PJM, and shall bill the balance of such revenue requirements to Duke Energy Ohio, Inc. (on behalf of DEOK). For charges associated with Midcontinent ISO Tariff Schedule 38 (or successor schedule), a Network Customer's share of such revenue requirements shall be based on its Network Service Peak Load within the DEOK Zone divided by the total Network Service Peak Load within the DEOK Zone. For charges associated with Midcontinent ISO Tariff Schedule 39 (or successor schedule), the Network Customer's charge in any month shall be based upon the methodology set forth in Schedule 39, as it may be amended from time to time, applied to the energy withdrawals of the Network Customer in that month rather than to the energy withdrawals of a Withdrawing Transmission Owner (as such term is defined in Schedule 39).

**B. Revenue Distribution from Payments Made by Transmission Customers in DEOK Zone; Shortfall in Payment**

Each month, and pursuant to agreed-upon settlement procedures, the PJM Office of the Interconnection shall remit to the Midcontinent ISO the revenue requirements allocated to DEOK for MTEP Projects constructed by the Midcontinent ISO Transmission Owners, as set forth in Section III.A. In addition, in the event that the revenues received by PJM from a Network Customer pursuant to Section III.A. are less than the Network Customer's share of such revenue requirements as calculated pursuant to Section III.A. ("Shortfall"), and PJM makes up such Shortfall in its remittance to the Midcontinent ISO, (a) PJM shall apply such Shortfall to the financial settlement of Duke Energy Ohio, Inc.'s account (on behalf of DEOK), and (b) such Network Customer shall thereafter be obligated to remit such Shortfall directly to DEOK instead of to PJM, together with any Late Payment Charges that would otherwise be due to PJMSettlement under Section 7.1A of this Tariff. DEOK shall have all rights to seek recovery of such Shortfall directly from the Network Customer, and such rights shall be enforceable by DEOK at FERC and in any court of competent jurisdiction. DEOK shall be a third party beneficiary under the Network Customer's service agreement with PJM for the limited purpose of seeking recovery of such Shortfall.

## IV. DEOK MTEP Project Revenue Requirements Allocated to Midcontinent ISO Zones

### A. Derivation of Annual Revenue Requirements

Under the methodology provided under Attachment H–22 to this Tariff, DEOK will periodically update the Annual Revenue Requirements for MTEP Projects constructed by DEOK. No later than May 15 each year, DEOK shall provide these updated revenue requirements to the Midcontinent ISO for the upcoming June 1 – May 31 rate year.

### B. Allocation of Annual Revenue Requirements to Midcontinent ISO Zones

The portion of the Annual Revenue Requirements derived under Section IV.A that will be recovered from transmission customers taking transmission service in the Midcontinent ISO shall be calculated by the Midcontinent ISO in accordance with the Midcontinent ISO Tariff.

**C. Monthly Revenue Requirements Owed from the Midcontinent ISO Zones**

Each month, and pursuant to agreed-upon settlement procedures, the Midcontinent ISO shall remit an amount to the PJM Office of the Interconnection from revenues collected by the Midcontinent ISO in proportion to DEOK's annual pro-rata share of the total Network Upgrade Charge as described in the Midcontinent ISO Schedule 38.

**D. Revenue Distribution from Payments Made by Transmission Customers in the Midcontinent ISO**

Pursuant to agreed-upon settlement procedures, PJM shall credit to Duke Energy Ohio, Inc.'s account (on behalf of DEOK) in the subsequent month the amount of revenue requirements that the Midcontinent ISO remits to PJM pursuant to Section IV.C for the prior month.