FINAL VERSION

No. 21-4072 (consolidated with Nos. 22-3351, 23-3196,
23-3324, 23-3366, and 23-3417)

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

DAYTON POWER & LIGHT COMPANY, dba AES OHIO, *ET AL.*,
*Petitioners*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*.

*ON PETITIONS FOR REVIEW OF ORDERS OF
THE FEDERAL ENERGY REGULATORY COMMISSION*

# REPLY BRIEF OF INTERVENOR BUCKEYE POWER, INC.
# IN SUPPORT OF PETITIONER
# OFFICE OF THE OHIO CONSUMERS' COUNSEL

Cynthia S. Bogorad
David E. Pomper
Jeffrey M. Bayne
Lauren L. Springett
Spiegel & McDiarmid LLP
1875 Eye Street, NW
Suite 700
Washington, DC  20006
(202) 879-4000
cynthia.bogorad@spiegelmcd.com
david.pomper@spiegelmcd.com
jeffrey.bayne@spiegelmcd.com
lauren.springett@spiegelmcd.com

December 8, 2023
Final: December 21, 2023

*Attorneys for Intervenor Buckeye Power, Inc.*

# TABLE OF CONTENTS

                                                    <u>Page</u>

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION ............................................................................................. 1

ARGUMENT ..................................................................................................... 3

    I.      The Duke and ATSI settlements do not permanently lock in place the RTO Adders. ............................................................................................. 3

    II.     There is no legal basis for a permanent, higher standard for challenging incentives established through settlements. ............................. 6

    III.    OCC satisfied its burden under Federal Power Act section 206 with respect to Duke and ATSI, just as it did with AEP. ...................................... 9

CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

Page

**FEDERAL COURT CASES**

*Emera Maine v. FERC*, 854 F.3d 9 (D.C. Cir. 2017) ..................................................9

*Int'l Transmission Co. v. FERC*, 988 F.3d 471 (D.C. Cir. 2021) ..........................7, 8

*MISO Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022) .....................6

**FEDERAL AGENCY CASES**

*Midcontinent Indep. Sys. Operator, Inc.*, 164 FERC ¶ 61,155 (2018) .....................8

*Off. of the Ohio Consumers' Couns. v. Am. Elec. Power Serv. Corp., et al.*,
    181 FERC ¶ 61,214 (2022), *reh'g denied*, 183 FERC ¶ 61,034 (2023)..1, 2, 4, 8, 10

*Off. of the Ohio Consumers' Couns. v. Am. Elec. Power Serv. Corp. et al.*,
    183 FERC ¶ 61,034 (2023) ...............................................................1, 2, 3, 4, 8

**FEDERAL STATUTES**

16 U.S.C. § 824d................................................................................................1, 5

16 U.S.C. § 824e ...............................................................1, 2, 3, 5, 7, 8, 9, 10

16 U.S.C. § 824s .................................................................................................1, 7

16 U.S.C. § 824s(c) ................................................................................................1

16 U.S.C. § 824s(d) ...............................................................................................1

**FEDERAL ADMINISTRATIVE REGULATIONS**

18 C.F.R. § 35.35(e) .............................................................................................10

# INTRODUCTION

Federal law directs the Federal Energy Regulatory Commission ("FERC") to establish rules for "incentives" for utilities "that join[] a Transmission Organization," Federal Power Act section 219(c), 16 U.S.C. § 824s(c), subject to the Federal Power Act's requirements that rates "be just and reasonable and not unduly discriminatory or preferential," Federal Power Act section 219(d), 16 U.S.C. § 824s(d) (referencing Federal Power Act sections 205 and 206, 16 U.S.C. §§ 824d, 824e). These incentives are referred to as Regional Transmission Organization ("RTO") Adders. Consistent with Congress's intent and FERC's longstanding just-and-reasonable ratemaking standards, FERC policy allows RTO Adders only for utilities whose participation in a Transmission Organization is voluntary.

Because Ohio law requires transmission owners in that state to participate in a Transmission Organization—making that participation *not* voluntary, and thereby mooting any justification for an incentive—FERC ordered the Ohio affiliates of American Electric Power ("AEP") to remove RTO Adders from their rates. *Off. of the Ohio Consumers' Couns. v. Am. Elec. Power Serv. Corp., et al.*, 181 FERC ¶ 61,214 (2022) ("*OCC* Complaint Order") (JA464), *reh'g denied*, 183 FERC ¶ 61,034 (2023) ("*OCC* Complaint Rehearing Order") (JA575) (collectively,

1

"*OCC* Complaint Orders").[1] But FERC allowed Duke Energy Ohio, LLC ("Duke") and American Transmission Systems, Inc. ("ATSI") to continue collecting RTO Adders from customers, *even though they are subject to that same Ohio law*.

FERC, along with intervenors Duke and ATSI, defends the decision to allow Duke and ATSI to retain their RTO Adders mainly by noting that each first received those Adders through settlement agreements. But those settlement agreements do no prohibit subsequent rate challenges, including challenges to the RTO Adders, except during moratorium periods that have long since passed. Because the Office of the Ohio Consumers Counsel ("OCC") held off on filing its complaint until well after all moratoriums had expired, FERC was wrong to conclude that removal of the RTO Adders would disrupt the bargains struck in those settlements. While true that OCC's complaint against Duke and ATSI is subject to the requirements of Federal Power Act section 206, that is no different than the complaint against AEP that FERC granted. FERC, Duke, and ATSI identify no legal basis for providing a permanent, higher standard for complaints brought against rates established through settlement. If allowed to stand, that

---

[1] In separate orders, FERC denied a request for an RTO Adder by Dayton Power & Light Company, another utility subject to the Ohio law. Those FERC orders are the subject of petitions for review in Nos. 21-4072 and 22-3351 (which have been consolidated with OCC's petitions for review of the *OCC* Complaint Orders in Nos. 23-3324 and 23-3417).

permanent, higher standard would dramatically *undermine*, not support, FERC's policy of encouraging settlements.

Because OCC demonstrated that it is unjust and unreasonable for Duke and ATSI to continue to charge an RTO Adder for which they are not qualified—just as it did with respect to AEP—OCC's petition should be granted.

## ARGUMENT

**I.    The Duke and ATSI settlements do not permanently lock in place the RTO Adders.**

FERC and Duke argue that removing Duke's and ATSI's RTO Adders would upset the deal reached in prior settlements and "would, in effect, modify the settlement agreement by stripping out a single component." *OCC* Complaint Rehearing Order P 28 (JA587); *see also* FERC Br. at 61-63; Duke Br. At 21-23. This argument rests on a faulty premise. After moratorium periods, which have long passed, nothing in the settlements[2] bars challenges to the RTO Adders. The settlements thus no longer shield the existing rates against complaints brought under Federal Power Act section 206.

---

[2] A copy of the settlement agreement establishing Duke's rate ("Duke Settlement") is included in the Addendum to the Brief of Intervenor Duke Energy Ohio, Inc. in Support of Respondent Federal Energy Regulatory Commission in Nos. 23-3324 and 23147 ("Duke Br.") at A-23-50. A copy of the settlement agreement establishing ATSI's rate ("ATSI Settlement") is included in the Addendum to the Brief of Petitioners Dayton Power & Light Co., American Electric Power Service Corp., and FirstEnergy Service Co. at A70-A95.

3

FERC's brief, like the *OCC* Complaint Orders, entirely fails to engage with the settlement agreements' substance. For its part, Duke mischaracterizes its settlement agreement when claiming that it allows challenges to the RTO Adder only "under certain circumstances" and that "[n]othing in the settlement suggests that, now that June 2017 has passed, any stand-alone challenge to the adder is allowed." Duke Br. at 21-22. Instead, the settlement states that parties may only seek to eliminate the RTO Adder prior to June 1, 2017 if Duke terminates its participation in a Transmission Organization,³ but it imposes *no restrictions* on challenges to the "Base/RTO ROE" effective after June 1, 2017. *Id.* at A-33-34 (Duke Settlement, Art. 3.3.b). The same is true with respect to ATSI's settlement, only the relevant date is January 1, 2018. *See* Buckeye Br. at 18.⁴

Because the settlements do *not* restrict challenges brought after the stated moratorium periods, there is no merit to the claim that rate challenges after those dates are contrary to the bargain struck in the settlements. Indeed, the very

---

³ That the settlement specifically includes a provision allowing customers to seek to remove the RTO Adder if Duke were to leave a Transmission Organization prior to June 1, 2017 disproves Duke's argument that its RTO Adder is inseparable from the rest of the rate regardless of whether Duke remains eligible for the Adder.

⁴ On August 22, 2023, Buckeye Power, Inc. ("Buckeye") submitted a brief as an intervenor supporting OCC's petitions in Nos. 23-3324 and 23-3417 ("Buckeye Br."). On November 21, 2023, Buckeye submitted a joint brief with OCC as intervenors supporting FERC in Nos. 21-4072, 22-3351, 23-3196, and 23-3366 ("OCC & Buckeye Br.").

existence of such moratorium periods illustrates that settlements do not permanently fix rates. Rather, they establish rates that are in effect until the next time they are changed pursuant to the normal Federal Power Act section 205 or section 206 process once any FERC-approved moratorium expires. Tellingly, neither Duke nor ATSI claims that its settlement limits its right to seek a new return on equity now that the moratorium period has passed.

Indeed, despite other statements in its brief suggesting that the settlement limits challenges after June 1, 2017, Duke concedes that "default law" applies after this date. In other words, any restrictions on challenges to Duke's RTO Adder no longer exists. The proper application of the default law (Federal Power Act section 206) permits FERC to remove incentive-based rate treatment from utilities that no longer qualify for such treatment. *See* Buckeye Br. at 10-12; OCC & Buckeye Br. at 30-34; *infra* Part III.

Finally, Duke devotes a substantial portion of its brief to describing its decision to "forgo millions and potentially billions of dollars that it was otherwise seeking to recover" by settling. Duke Br. at 8; *see generally id.* at 6-13. These claims are irrelevant and should be disregarded. FERC never found the rate Duke initially sought to be just and reasonable, and there is no reason to assume that Duke would have fully recovered the amount it initially sought had there not been

5

a settlement.[5] The settlement is what FERC accepted as just and reasonable, and that settlement *permits* challenges to the "Base/RTO ROE" after 2017.

## II. There is no legal basis for a permanent, higher standard for challenging incentives established through settlements.

Buckeye previously explained that neither the Federal Power Act nor the Commission's regulations allow an otherwise unlawful incentive-based rate treatment to remain in rates merely because the incentive originated as part of a settlement. Buckeye Br. at 13-14. Buckeye noted that if such immunizing were the rule, a utility that became ineligible for an RTO Adder, because it ceased participating in any Transmission Organization, might continue to charge customers that Adder anyway. *See id*. at 14.

In response, Duke notes that if it were to leave the Transmission Organization in which it currently participates (PJM), it would have to file a new replacement rate, triggering review and potential challenges. Duke Br. at 20-21.[6]

---

[5] For instance, Duke notes that it "first asked for 12.38% [return on equity]—the same [return] it had as a part of [Midcontinent Independent System Operator, Inc. ('MISO')] before it switched to [PJM Interconnection, L.L.C. ('PJM')]." Duke Br. at 8. But that 12.38 percent MISO return on equity value was found to be *unjust and unreasonable*. *See MISO Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022) (reviewing orders in which FERC made that unchallenged finding).

[6] Duke also notes that "[u]nder Buckeye's own theory of the case, Duke cannot leave an RTO." Duke Br. at 20 n.1. To be clear, this is not just Buckeye's theory. Duke has not challenged FERC's conclusion that Ohio law *requires* its participation in a Transmission Organization (despite being a petitioner in these consolidated cases, as well as an intervenor in AEP's petition), nor have any of the

6

But that misses the point. While it is true that a new rate filing may be required in the particular circumstance of Duke leaving PJM, that is not so in all instances where a utility loses eligibility for incentive-based rate treatment. Because not all losses of incentive eligibility will be accompanied by a new rate filing, Duke's argument provides no basis for indefinitely shielding incentives established through settlements from complaints brought under Federal Power Act section 206.

     For instance, a state may pass a law mandating Transmission Organization participation. If a utility were previously voluntarily participating in a Transmission Organization, that participation would now be involuntary, and it would no longer be eligible for an RTO Adder under Federal Power Act section 219 and FERC policy. This ineligibility would not require the utility to file a new rate. Consider also *International Transmission Company v. FERC*, 988 F.3d 471 (D.C. Cir. 2021), where FERC reduced an incentive adder for independent transmission companies in response to a complaint brought by customers that demonstrated the relevant transmission companies were no longer fully independent. Under FERC's reading, supported by Duke, a different transmission company could keep its full independence-based incentive adder even after no

---

other Transmission Owner Petitioners. Buckeye's hypothetical referred to utilities in states that do not mandate RTO participation, as those are the only utilities that could lawfully leave an RTO.

longer being fully independent, provided that this adder was first adopted as part of a settlement. Duke's position produces a nonsensical and non-statutory outcome.

In any event, the issue here is not the various procedural vehicles in which incentives issues may be raised. Rather, it is the substantive standard relevant to FERC's review of OCC's complaint with respect to Duke and ATSI. As discussed above in Part I, the settlements allows challenges to the RTO Adders after the relevant moratorium periods have passed. And as discussed in Part III below, OCC satisfied the requirements of Federal Power Act section 206 with respect to its complaint against Duke and ATSI.

Finally, none of the briefs submitted by FERC, Duke, and ATSI regarding OCC's petition address the perverse incentives created by FERC's treatment of Duke's and ATSI's Adders. FERC's reliance on its policy of encouraging settlements is misplaced here because the *OCC* Complaint Orders *discourage* settlements. FERC routinely revisits incentives to ensure that utilities still qualify for the higher rates they charge customers. *See, e.g.*, *Int'l Transmission Co.*, 988 F.3d at 480-84 (upholding FERC's reduction of an incentive adder for independent transmission companies where FERC found the level of independence had been reduced); *Midcontinent Indep. Sys. Operator, Inc.*, 164 FERC ¶ 61,155, P 54 (2018) ("We find that it is not appropriate . . . to implement at this time the 150 basis point ROE incentive for investment in new transmission that the Commission

8

previously granted . . . ."). But if incentives are shielded against customer challenges or Commission review when established through settlements, customers will be hesitant to ever agree to settlements involving incentives—lest an incentive be locked in place even after the utility loses eligibility to charge it.

### III. OCC satisfied its burden under Federal Power Act section 206 with respect to Duke and ATSI, just as it did with AEP.

Both FERC and Duke claim that OCC failed to show that Duke's and ATSI's "overall returns on equity had become unjust and unreasonable." FERC Br. at 64; *see also* Duke Br. at 23-29. While it is true that Federal Power Act section 206 requires a threshold showing that an existing rate is unjust and unreasonable, that does not mean that OCC needed to show that Duke's and ATSI's overall rates or returns on equity were beyond a zone of reasonableness.

Buckeye and OCC previously explained the requirements of Federal Power Act section 206. Buckeye Br. at 10-12; OCC & Buckeye Br. at 30-34. As the D.C. Circuit expressly held: "while showing that the existing rate is entirely outside the zone of reasonableness may illustrate that the existing rate is unlawful . . . that is not the *only* way in which FERC can satisfy its burden under section 206" of finding an existing rate unlawful. *Emera Maine v. FERC*, 854 F.3d 9, 24 (D.C. Cir. 2017) (citation omitted). The D.C. Circuit specifically rejected the contention that "FERC must show that an existing rate is 'entirely outside the zone of

9

reasonableness' before it can exercise its section 206 authority to change that rate." *Id*. at 22-23.

Here, FERC's policy is that utilities are eligible for RTO Adders only when their participation is voluntary. *OCC* Complaint Order P 63 (JA487) ("[T]he Commission's incentives policy . . . requires a showing of voluntary membership in a Transmission Organization . . . ."). OCC demonstrated that (1) Ohio law mandates RTO participation, and (2) Duke's and ATSI's participation in a Transmission Organization is therefore not voluntary. Because an RTO Adder results in "a return on equity that is higher than the return on equity the Commission might otherwise allow," 18 C.F.R. § 35.35(e), OCC demonstrated that Duke's and ATSI's overall rates were inflated by an inapplicable Adder and therefore are necessarily unjust and unreasonable. FERC's removal of AEP's Adder confirms that this demonstration satisfies the requirements of Federal Power Act section 206.

## CONCLUSION

The Court should vacate and remand FERC's decision to leave the RTO Adders in Duke's and ATSI's rates, with directions that FERC order the utilities to remove the RTO Adder from their rates and provide refunds to the full extent allowed under Federal Power Act section 206, 16 U.S.C. § 824e.

|  |  |
|---|---|
|  | */s/ Cynthia S. Bogorad* |
|  | Cynthia S. Bogorad |
|  | David E. Pomper |
|  | Jeffrey M. Bayne |
|  | Lauren L. Springett |
|  |  |
|  | *Attorneys for Buckeye Power, Inc.* |

Law Offices of:
   SPIEGEL & MCDIARMID LLP
   1875 Eye Street, NW
   Suite 700
   Washington, DC  20006
   (202) 879-4000

11

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), and this Court's July 12, 2023 order, because it contains 2,241 words (of the 4,550 words allotted for an Intervenor reply brief in support of Petitioner) as determined by the word-counting feature of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. Rule 32(f) and Sixth Circuit Rule 32(b)(1).

2. This brief complies with the typeface requirements of Fed. R. App. P. Rule 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated this 8th day of December, 2023 (Final: December 21, 2023).

                                                                */s/ Cynthia S. Bogorad*
                                                                Cynthia S. Bogorad

                                                                SPIEGEL & MCDIARMID LLP
                                                                1875 Eye Street, NW
                                                                Suite 700
                                                                Washington, DC  20006
                                                                (202) 879-4000

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused the foregoing document to be served upon each person designated on the official service list compiled by the Secretary in this proceeding.

Dated this 8th day of December, 2023 (Final: December 21, 2023).

/s/ *Cynthia S. Bogorad*
Cynthia S. Bogorad

SPIEGEL & MCDIARMID LLP
1875 Eye Street, NW
Suite 700
Washington, DC  20006
(202) 879-4000