NOS. 23-3324 and 23-3417
(Consolidated with Nos. 21-4072, 22-3351, 23-3196 and 23-3366)

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
_____

THE DAYTON POWER AND LIGHT COMPANY, ET AL.

v.

FEDERAL ENERGY REGULATORY COMMISSION
_____

ON PETITION FOR REVIEW OF ORDERS OF
THE FEDERAL ENERGY REGULATORY COMMISSION

_____

REPLY BRIEF OF
PETITIONER OFFICE OF THE OHIO CONSUMERS' COUNSEL
IN NOS. 23-3324 and 23-3417

_____

MAUREEN WILLIS
CONSUMERS' COUNSEL
Angela O'Brien
Deputy Consumers' Counsel
**Office of the Ohio Consumers'**
**Counsel**
65 East State Street, Suite 700
Columbus, Ohio 43215
(614) 466-9531 – Telephone
Angela.Obrien@occ.ohio.gov

DECEMBER 21, 2023:
FINAL REPLY BRIEF

Denise C. Goulet
Wendy Simon-Pearson
McCarter & English, LLP
1301 K Street, N.W.
Suite 1000 West
Washington, DC 20005
(202) 753-3400
dgoulet@mccarter.com
wsimonpearson@mccarter.com

*Special Counsel to the Ohio Office of*
*the Attorney General for the Office of*
*the Ohio Consumers' Counsel*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1(a) of the Federal Rules of Appellate Procedure and Circuit Rule 26.1(a) of the United States Court of Appeals for the Sixth Circuit, the Office of the Ohio Consumers' Counsel ("OCC") is not required to file a corporate disclosure statement.

OCC is a state agency that is the statutory representative of approximately 4.5 million Ohio residential utility consumers in proceedings before state and federal administrative agencies, including the Federal Energy Regulatory Commission, and the courts. No publicly held company has any ownership interest in OCC.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

SUMMARY OF ARGUMENT ................................................................3

ARGUMENT .........................................................................................4

I.  FERC ACCEPTED THE INCLUSION OF THE RTO ADDER IN ATSI'S AND DUKE'S OHIO TRANSMISSION RATES. ..........................4

II.  SETTLEMENTS CAN BE CHALLENGED ON A SINGLE-ISSUE BASIS. ..............................................................................................8

    A.  Stated values in settlements involving formula rates are challengeable on a single-issue basis. ..........................................................8

    B.  FERC policy does not require review of the overall return on equity in order to challenge a stated value in the settlements in a single-issue complaint. ...............................................................................13

III.  FERC'S REFUSAL TO ELIMINATE THE RTO ADDER FROM ATSI'S AND DUKE'S OHIO TRANSMISSION RATES IS UNDULY DISCRIMINATORY AGAINST THEIR OHIO CONSUMERS. ..............23

CONCLUSION AND PRAYER FOR RELIEF ....................................25

Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements ...............................................................27

CERTIFICATE OF SERVICE .............................................................28

# TABLE OF AUTHORITIES

**Court Cases**

*Brusco Tug & Barge Co. v. NLRB,*
  247 F.3d 273 (D.C. Cir. 2001) ........................................................................18

*Cal. Pub. Utils. Comm'n. v. FERC*,
  879 F.3d 966 ........................................... 9, 12, 14, 15, 17, 18, 19, 23

*Emera Maine v. FERC*,
  854 F.3d 9 (D.C. Cir. 2017)...........................................................11, 12

*Int'l Transmission Co. v. FERC*,
  988 F.3d 471 (D.C. Cir. 2021)...........................................................18

*Securities and Exchange Comm'n v. Chenery Corp.*,
  318 U.S. 80 (1943)..................................................................................8

*Williams Gas Processing-Gulf Coast Co. v. FERC*,
  475 F.3d 319 (D.C. Cir. 2006)...........................................................17

**Administrative Cases**

*Golden Spread Elec. Coop., Inc. v. Sw. Pub. Serv. Co.*,
  150 FERC ¶ 61,052 (2015)....................................................................9

*Office of The Ohio Consumers' Counsel v. Am. Elec. Power Serv.
  Corp., et al.*,
  181 FERC ¶ 61,214 (2022)................................. 2, 3, 5, 6, 7, 8, 11, 13, 17, 19, 21

*Office of The Ohio Consumers' Counsel v. Am. Elec. Power Serv.
  Corp., et al.*,
  183 FERC ¶ 61,034 (2023) .......................................................2, 3, 7

*Promoting Transmission Investment through Pricing Reform, Order
  No. 679,*
  FERC Stats. & Regs. ¶ 31,222 (2006) (Order No. 679") order on
  reh'g, Order No. 679-A, 117 FERC ¶ 345 (2006) ....................12, 15, 19, 24, 25

*The Dayton Power & Light Co.*,
  176 FERC ¶ 61,025 (2021).......................................................1, 14, 16

*The Dayton Power & Light Co.*,
    178 FERC ¶ 61,102 (2022) ................................................................................. 1

**Federal and State Statutes**

Federal Power Act

Section 205, 16 U.S.C. § 824d ............................................................................. 1
Section 206, 16 U.S.C. § 824e ................................................... 1 ,3, 12, 13, 14, 19
Section 219, 16 U.S.C. § 824s ................................................... 1, 3, 12, 15, 24, 25

## INTRODUCTION

The Federal Energy Regulatory Commission ("FERC") issued inconsistent orders in two separate proceedings that fail to protect all Ohio electricity consumers from paying subsidies in the form of extra profits for Ohio transmission utilities. The transmission rates of four Ohio electric transmission utilities contained an incentive, or premium, for their participation in a Regional Transmission Organization ("RTO"). Section 219 of the Federal Power Act ("FPA"), 16 U.S.C. § 824s, authorizes FERC to allow the RTO Adder in transmission utility rates as an incentive to join a Transmission Organization, or RTO. However, that statute limits FERC's authority to grant the incentives by requiring that the incentives be consistent with the just and reasonable rates requirements of FPA sections 205 and 206, 16 U.S.C. §§ 824d and 824e.

In 2020 in Docket No. ER20-1068-000, FERC found that The Dayton Power and Light Company ("DP&L"), one of the four Ohio transmission utilities, was not eligible for the RTO Adder incentive because Ohio law mandates all utilities seeking to provide transmission service in the state to join an RTO. Certified Index to the Record in Case Nos. 21-4072 *et al.,* Dayton Order, *The Dayton Power & Light Co.,* 176 FERC ¶ 61,025 (2021) ("*Dayton*"*),* JA.173; and Dayton Rehearing Order*, The Dayton Power & Light Co.,* 178 FERC ¶ 61,102 (2022) ("*Dayton Rehearing*"), JA.280. DP&L filed a Petition for Review of FERC's

ruling denying the incentive in Sixth Circuit Case Nos. 21-4072 and 22-3351.

JA.304, JA.307. OCC is an intervenor in those cases, and supports FERC's

decision denying DP&L the right to include the RTO Adder in the rates it charges

its Ohio consumers.

After FERC issued those orders, the Office of the Ohio Consumers' Counsel

("OCC"), Petitioner in Sixth Circuit Case Nos. 23-3324 and 23-3417, filed a

complaint with FERC in FERC Docket No. EL22-34-000 against the remaining

three Ohio transmission utilities:  American Electric Power Service Corporation

("AEP") (and its two Ohio affiliates, Ohio Power Company and AEP Ohio

Transmission Company), FirstEnergy affiliate, the American Transmission

System, Inc. ("ATSI"), and Duke Energy Ohio, LLC ("Duke").  FERC granted the

complaint as to the AEP affiliates, but denied the complaint as to ATSI and Duke.

Certified Index to the Record in Case Nos. 23-3196 *et al.*, Complaint Order, *Office*

*of The Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp., et al.,* 181 FERC

¶ 61,214 (2022), ("*Complaint Order"*), JA.464 and Complaint Rehearing Order,

*Office of The Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp., et al.*, 183

FERC ¶ 61,034 (2023) ("*Complaint Rehearing"*), JA.575.

OCC filed a Petition for Review from the Complaint Order and the

Complaint Rehearing Order, requesting that the Sixth Circuit reverse and remand

FERC's ruling allowing ATSI and Duke to keep charging their Ohio consumers for

the RTO Adder subsidy. AEP filed its own Petition for Review of those orders, alleging that FERC erred in directing it to remove the RTO Adder from its rates. OCC supports FERC's Complaint Order and Complaint Rehearing Order as it applies to AEP. The Court consolidated these cases.

## SUMMARY OF ARGUMENT

The Court should reverse and remand FERC's decision to allow ATSI, and Duke to retain in the transmission rates they charge their Ohio consumers a transmission incentive for which they are ineligible. That decision is contrary to federal law (FPA sections 206 and 219), arbitrary, capricious, and unduly discriminatory considering that FERC in the same order correctly directed two AEP Ohio transmission affiliates to remove the incentive from their Ohio transmission rates.

FERC found in the orders on review that both ATSI's and Duke's Ohio transmission rates include the incentive for participation in a RTO, referred to here as the RTO Adder, in the form of a premium added to the utilities' returns on equity. FERC also found in the orders on review for Duke that the RTO Adder is valued at 50 basis points, thus increasing the utility's equity return by 0.5%. And FERC admits in its Respondent's Brief that neither ATSI nor Duke is eligible for the RTO Adder going forward.

3

FERC's only reason for allowing ATSI and Duke to retain the RTO Adders in their rates is that FERC granted the incentive for both utilities as part of overall rate settlements.  But that reasoning does not explain why it is inappropriate to direct the utilities to remove the RTO Adder from their rates on a going-forward basis given FERC's recognition that Ohio utilities are no longer eligible for the incentive.  FERC's reasoning is an unwarranted departure from its case precedent in which it has consistently allowed challenges to stated values in settlements on a single-issue basis. Where FERC acknowledged that both the RTO Adders are in ATSI's and Duke's settlement rates, and these utilities are no longer eligible for that incentive, the Court should reverse the rulings on this issue below and direct that FERC on remand require ATSI and Duke to likewise remove the RTO Adder from their Ohio transmission rates.

## ARGUMENT

## I.    FERC ACCEPTED THE INCLUSION OF THE RTO ADDER IN ATSI'S AND DUKE'S OHIO TRANSMISSION RATES.

FERC is incorrect in arguing that its acceptance of the ATSI and Duke settlements did not grant the RTO Adders to ATSI and Duke.  FERC Br. 56 ("the Commission never granted the Participation Adder to Duke or American [ATSI]").  ATSI's argument that its settlement was a black box settlement that "left open" the question of whether it included the adder also is incorrect.  ATSI Br. 10.

FERC in its Order on the Complaint acknowledged that the stated return on equity in the ATSI settlement is "inclusive of any incentive adder for RTO participation." Complaint Order at P 65, JA.488-89. FERC also acknowledged that the Duke settlement explicitly included a 50 basis point adder to the return on equity for Duke's participation in an RTO. *Id.* Indeed, Duke, in its Answer to OCC's Complaint, admits that "FERC authorized DEO [Duke] to include the RTO Participation Adder in its transmission formula rate in 2015." Duke Answer to Complaint 16, JA.408. These settlements were not black-box settlements where all elements of the cost of service were rolled into a single settlement rate. Instead, they explicitly incorporate the RTO Adders in the stated values.

FERC did not have to guess at the stated value of the RTO Adder in either settlement. Duke's settlement explicitly states that the return on equity "shall be a total of 11.38%, consisting of a 10.88% base cost of common equity and a 0.5% ROE adder as permitted by Commission policy for participation in a regional transmission organization . . . ." Duke Br. Addendum A-33, setting out section 3.3(a) of the Duke settlement agreement.

The ATSI settlement agreement similarly sets out a total return on equity of 10.38%, which is "inclusive" of any RTO Adder. Complaint Order P 65, JA.488-89; *see also* Transmission Owners Opening Brief Addendum at A87 (setting out section II.C.1(c) and C.2 of the ATSI settlement: "ATSI's ROE [return on equity]

5

used in the formula rate shall be as follows:  for the period commencing January 1, 2016, the ROE value used in the formula rate shall be 10.38%;" and "are inclusive of any incentive adder for RTO participation").  Both OCC and Buckeye in their Opening Briefs cite to numerous cases in which FERC recognized that FirstEnergy or ATSI officials have identified the RTO Adder in ATSI's rates as 50 basis points.  OCC Opening Br. 31-34; Buckeye Opening Br. 8-10.

    FERC stated in the Complaint Order that it recognized "that ATSI's affiliates testified in other proceedings that ATSI's base ROE is 9.88%, rather than the 10.38% ROE contained in the ATSI settlement."  Complaint Order at P 65, JA.488-89.  In its Intervenor's Brief in Support of FERC in these appellate dockets, ATSI argues that FERC did not consider in those cases "whether such testimony constituted admissible, reliable, or binding evidence concerning" ATSI's settlement.  ATSI Br. 11.  But ATSI does not say that FERC's characterization of that testimony is wrong.  Instead, ATSI concedes that "[p]ursuant to statutory directive, FERC has allowed transmission owners that belong to an RTO to increase their ROE, a portion of their transmission rate, by a fixed amount of 0.50% ('the RTO Adder')."  *Id.*  3.

    No party disputed these factual findings.  It is misleading to argue that the ATSI and Duke settlement rates did not include the RTO Adder and/or that FERC could not know the value of that incentive adder because the adders were wrapped

up in the overall settlements. Both consumers and FERC had to make the record clear as to whether the utility's ROE included the RTO Adder because absent such clarity, consumers would have had no ability to prove in a future case that the utility's rates already included added profits and that such profits should not be charged to consumers a second time. OCC Opening Br. 36-37, citing OCC Rehearing at 11, JA.540.

If ATSI or Duke had filed with FERC after entering into their settlements requesting that FERC increase their transmission rates to include the RTO Adder incentive, customers would have argued that both were already receiving the RTO Adder through their settlement rates. Thus, ATSI's claim that "[e]ven if OCC is right that the language of ATSI's agreement prevents ATSI from seeking an RTO Adder, that does not mean that ATSI is already recovering an RTO Adder . . ." makes no sense  ATSI Br. 14. The settlement could only prevent ATSI from later seeking the RTO Adder in its rates if the settlement rates already included the Adder. The settlement either included the RTO Adder for ATSI or it did not. The language of ATSI's settlement states that it did.

The Court should not and cannot ignore that FERC's factual findings determine that both the ATSI and the Duke settlements included the RTO Adder. Complaint Order P 65, JA.488-89. Neither FERC's Complaint Order nor the Complaint Rehearing Order state that the RTO is not in ATSI's rates. Therefore,

7

FERC's argument that the RTO Adder is not in ATSI's rates cannot be the basis for the Court affirming the orders. *See Securities and Exchange Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based"). As FERC states in its Brief, "[t]he Commission's factual findings are conclusive if supported by substantial evidence." FERC BR. 33, citing *Ky. Utils. Co. v. FERC*, 766 F.2d 239, 241 (6th Cir. 1985).

FERC explicitly acknowledged in the Complaint Order that both the ATSI and Duke settlements included RTO Adders. Complaint Order P 65, JA.488-89. Both ATSI's and Duke's settlement rates reflected a change in their authorized transmission rates and those changes could only go into effect if FERC accepted them. OCC Opening Br. 29-31, citing *Okla. Gas & Elec. Co. v. FERC*, 11 F.4th 821 (D.C. Cir. 2021). The Court should rely on these factual findings to guide its opinion in this case.

## II.    SETTLEMENTS CAN BE CHALLENGED ON A SINGLE-ISSUE BASIS.

### A.    Stated values in settlements involving formula rates are challengeable on a single-issue basis.

The Court also should reject FERC's excuse that an order directing ATSI and Duke to remove the RTO Adder from their rates going forward would undermine "the certainty provided to settling parties and would be inconsistent

8

with Commission longstanding policy of promoting settlements." FERC Br. 63.
FERC ignores that it routinely allows challenges to individual components in
settlements where those components are stated values in the settlement itself. *See,
e.g.*, OCC Opening Br. 44-45, citing *N.C. Elec. Membership Corp. v. Duke Energy
Carolinas, LLC*, 155 FERC ¶ 61,048(2016) ("*N.C. Elec. Membership*") and
*Golden Spread Elec. Coop., Inc. v. Sw. Pub. Serv. Co.*, 150 FERC ¶ 61,052 (2015)
("*Golden Spread*") (each allowing single-issue FPA section 206 challenges to the
stated return on equity component in a formula rate that previously had been set by
settlement).

     FERC relies on the compromise process in settlements as the basis for its
policy that challenges to the settlement must contest the overall settlement because
it does not "evaluate individual components of a settled rate." FERC Br. 57. Yet,
FERC in its Orders and Brief fails to mention that it routinely departs from its
general policy of requiring that those challenging a black-box settlement to
demonstrate that the overall settlement rates are unjust and unreasonable where
certain components are stated values in the settlement. OCC Opening Br. 41-47,
citing *N.C. Elec. Membership*, 155 FERC ¶ 61,048 and *Golden Spread*, 150 FERC
¶ 61,052. FERC recognized the lawfulness of single-issue challenges to stated
values in settlements in characterizing the Ninth Circuit's holding in *Cal. Pub.
Utils. Comm'n. v. FERC,* 879 F.3d 966, 980 (9th Cir. 2018 ("*CPUC*"), as follows:

"where the Commission had previously approved rate settlements that included a Participation Adder, with this disclaimer of precedential effect, those approvals did not preclude parties from challenging utility's entitlement to the Adder in later proceedings."  FERC Br. 58.

Any argument that an entity challenging a settlement must challenge the overall settlement rate is also belied by FERC's recognition in its Brief that OCC had to "make a threshold showing that the overall returns on equity had become unjust and unreasonable."  FERC. Br. 64.  This statement implicitly acknowledges that an entity challenging a settlement need not show that the overall settlement rates are unjust and unreasonable in order to succeed in a challenge to an individual component in a settlement, *i.e.,* return on equity.  In other words, FERC here admits in its Brief that OCC can challenge a single stated value in a settlement without challenging the overall settlement.

Thus, FERC's argument that the overall return on equity has to be challenged in lieu of challenging a single component of the overall return also falls short.  If a stated value such as the return on equity in a settlement can be challenged in a single-issue, FPA section 206 complaint filing, then logic would dictate that any individual component of that stated value that is also a stated value in the settlement likewise should be subject to challenge on a single-issue basis. This is especially true where FERC has stated that it determines "a utility's

10

eligibility for the RTO Adder separately from its analysis of the utility's base ROE, subject to the total ROE including the RTO Adder remaining within the zone of reasonableness." OCC Opening Br. 38, citing Complaint Order P 61, JA.485; *see also* Complaint Order P 77, JA.493 ("The Commission's decision pertaining to the RTO Adder is *irrelevant* to a utility's base ROE and financial integrity, credit ratings, and ability to attract investment.") (emphasis added).

The Court also should ignore Duke's argument that "any challenge to the settlement ROE must be made to the justness and reasonableness of the *overall* ROE." Duke Br. 22 (emphasis in original). These arguments are based on Duke's untenable reading of *Emera Maine v. FERC,* 854 F.3d 9 (D.C. Cir. 2017) ("*Emera Maine").* Duke Br. 24.

OCC and Buckeye Power, Inc. explained in their Intervenors' Brief in Support of FERC that *Emera Maine* does not limit the manner in which a rate challenger can demonstrate that the existing return on equity is unjust and unreasonable to just a demonstration that the overall equity return is outside the zone of reasonableness. OCC/Buckeye Intervenors' Brief in Support of FERC 31, *The Dayton Power & Light Co. et al. v. FERC*, Sixth Circuit Case Nos. 21-4072 *et al.*, ECF No. 46. The D.C. Circuit Court of Appeals stated that "while showing that the existing rate is entirely outside of the zone of reasonableness may illustrate that the existing rate is unlawful . . . that is not the *only* way in which FERC can

satisfy its burden under section 206." *Emera Maine*, 854 F.3d at 24 (emphasis in original, underlining added).

The Court found instead that "[w]hether a rate, even one within the zone of reasonableness, is unlawful depends on the particular circumstances of the case." *Id.* at 23.  The circumstances of the case here compel a finding that OCC properly challenged the justness and reasonableness of the RTO Adder without challenging the overall return on equity.  OCC demonstrated that the continued inclusion of the RTO Adder in ATSI's and Duke's Ohio transmission rates is no longer lawful and thus no longer just and reasonable in light of the Ohio transmission utilities' ineligibility for the RTO Adder under the Ninth Circuit's opinion in *CPUC*, FPA section 219, Order No. 679,[1] and the Ohio law.  OCC demonstrated in the Complaint that it is *per se* unjust and unreasonable to allow ATSI and Duke to continue to inflate their transmission rates to their Ohio transmission customers where they are not eligible for the RTO Adder under federal and state laws, and FERC policy.

OCC properly challenged a stated value in the ATSI and Duke formula rate settlements in a FPA section 206 case based on a clarification of the law in the Ninth Circuit's 2018 opinion in *CPUC*.  The ATSI and Duke settlements

[1] *Promoting Transmission Investment through Pricing Reform*, Order No. 679, FERC Stats. & Regs. ¶ 31,222 (2006) (Order No. 679"), *order on reh'g*, Order No. 679-A, 117 FERC ¶ 345 (2006).

specifically set out stated values for the overall return, the return on equity, and an RTO Adder. Complaint Order PP 9-10, 65, JA.468, 488-89___. FERC and the Courts have made clear that a party can challenge a stated value incorporated in a settlement without challenging the overall justness and reasonableness of the settlement rate, the overall rate of return, or the overall return on equity.

**B.    FERC policy does not require review of the overall return on equity in order to challenge a stated value in the settlements in a single-issue complaint.**

Settlements do not extend into perpetuity. Nothing in FPA section 206 limits challenges only to a utility's rates that are set in adjudicated rate cases. Parties often lawfully file challenges to settlement rates under the FPA section 206 complaint procedure.

Here, OCC demonstrated in the Complaint that continuing to charge Ohio consumers millions of dollars annually to provide an incentive for the Ohio transmission utilities to do what they are already required to do by Ohio law is fundamentally unjust and unreasonable. The Complaint raises the legal question of whether the Ohio transmission owners, including ATSI and Duke are s*till eligible* for the RTO Adder in their Ohio transmission rates going forward. OCC raised the same legal question with respect to DP&L and AEP. FERC answered the question in the negative for those two utilities.

FERC also admitted in its Brief that ATSI and Duke are not entitled to the RTO Adders "for the purpose of any future rate cases," finding that "they too would be subject to the precedential effect of the *Dayton* orders."  FERC Br. 66.  It is illogical, arbitrary, and capricious for FERC to admit that ATSI and Duke are ineligible for the RTO Adders going forward and admit that the adders are in their rates, and then refuse to direct them to remove the RTO Adders from their Ohio transmission rates.  The fact that ATSI's and Duke's rates were set by settlement does not change the answer to the fundamental questions of whether (a) ATSI and Duke are eligible for the RTO Adders going forward; and (b) whether the RTO Adders are in their Ohio transmission rates.

Duke seeks to divert the Court's attention from these main questions.  Duke states that  "[n]o one in 2014 argued that the big-picture deal struck was unfair.  Nor does anyone argue *now* that the big-picture deal struck is unjust or unreasonable."  Duke Br. 13 (emphasis in original).  OCC is not arguing that FERC was wrong in accepting the 2014 settlement.  This is not an appeal about charges that were included in past rates.  Instead, OCC seeks to change the rates prospectively from the date of the filing of the Complaint, as allowed by FPA section 206.  The question before the Court is whether Duke and ATSI are still eligible today for the RTO Adder in their rates given the intervening guidance from the Ninth Circuit Court of Appeals in *CPUC*.

The Court should not be misled by Duke's inapplicable analogy that a settlement is like a chocolate chip cookie in which the chips (here, the RTO Adders) are baked into the cookie and OCC now seeks to have the chips "pulled out." Duke Br. 1-2. That analogy is based on the incorrect premise that nothing has changed since Duke first baked its cookies in 2014. But something has changed. In 2018, the Ninth Circuit found that FPA section 219, FERC Order No. 679 and long-standing case law impose a voluntariness requirement on utilities seeking transmission rate incentives, including RTO Adder incentive. *CPUC,* 879 F.3d at 978.

A more apt analogy would have been if Duke had included the fact that a subsequent legal opinion issued after Duke first started making the chocolate chip cookies in 2014 has now made clear that Ohio law bans the use of chocolate chips in cookies. OCC is not seeking to have the chocolate chips removed from the cookies baked in 2014. Rather, OCC argues that based on Ohio law, chocolate chips should no longer be included in cookies baked from the date of the filing of the Complaint forward because a Ninth Circuit opinion clarified that FERC now must consider whether Ohio law bans the use of chocolate chips.

There also is no merit in Duke's argument that its settlement provided for a challenge to the RTO Adder only until June 2017, and not thereafter, and only if Duke left PJM. Duke Br. 10-11. That argument is belied by the language of the

settlement.  The agreement is included in Duke's Intervenor's Brief in Support of FERC as an Addendum. Section 3.3(b) of that settlement provides that no party shall challenge the settlement prior to June 1, 2017.  Duke Br. Addendum A-33-34. [ECF No. 45] However, that provision then sets out one exemption: "provided, however, that the Settling Parties (or any of them) shall not be precluded from making or supporting a filing to eliminate the 0.5% ROE Adder if the Duke Companies terminate their participation in an RTO before June 1, 2017."  Duke Br. Addendum A-34.

In other words, no party could challenge the settlement prior to June 1, 2017 unless the Duke Companies left PJM prior to that point in time.  While this language would have limited any challenges to the RTO Adder prior to the June 1, 2017 date only to situations in which Duke left PJM, nothing in the settlement prohibits any party from challenging the settlement for any reason after that date. Duke's implication that parties can only challenge the RTO Adder now if Duke leaves PJM does not make sense considering that the Ohio law mandates the participation of all Ohio transmission utilities in a RTO regardless of whether that RTO is PJM or some other RTO.  Certified Index to the Record in Case Nos. 21-4072 *et al.*, Dayton Order P 54, 57, JA.197, JA.198.

Moreover, if Duke's interpretation were correct that the settlement limits any challenges to the RTO Adder to the pre-June 1, 2017 period, that would suggest

16

that the RTO Adder cannot be challenged today, even if Duke were to leave an RTO. That interpretation makes no sense and any such prohibition is not in the settlement itself. OCC filed its challenge in February 2022, long after the expiration of the limitation in Duke's settlement.

The Court also should dismiss ATSI's argument that OCC failed to show that "FERC has ever disturbed a comprehensive settlement agreement, simply because FERC took a new position on a legal issue." ATSI Br. 7. ATSI is incorrect that FERC simply "took a new position on a legal issue" in the orders on review. There also is no merit in ATSI's statement that "a settlement agreement means little if it lasts only until an agency changes its mind." *Id.* 7-8. These statements imply that any decision to eliminate the RTO Adder from ATSI's and Duke's transmission rates would be an arbitrary and capricious change to those settlement agreements. But FERC properly found there are changed circumstances when considering these questions for AEP and DP&L. FERC found these Ohio transmission utilities were no longer eligible for the incentive that allowed them to include the RTO Adder in their Ohio transmission rates based on the Ninth Circuit's intervening ruling in *CPUC*. Complaint Order P 63, JA.487.

The courts have long held that an agency can change its mind so long as it sets out a reasonable explanation for the change. *Williams Gas Processing-Gulf Coast Co. v. FERC*, 475 F.3d 319, 326 (D.C. Cir. 2006) ("*Williams Gas*

*Processing*") citing *Brusco Tug & Barge Co. v. NLRB*, 247 F.3d 273, 278 (D.C. Cir. 2001) ("*Brusco Tug & Barge*") ("[I]t is 'axiomatic that [agency action] must either be consistent with prior [action] or offer a reasoned basis for its departure from precedent.'") (additional citations omitted).  FERC set forth a well-reasoned basis for its decision to deny the RTO Adder to DP&L and to direct AEP to remove the RTO Adder from its Ohio transmission rates.

FERC's decision to excuse ATSI and Duke from this same fate simply because their transmission rates were set by settlement is fundamentally flawed considering that they too are subject to the same Ohio law.  The Ninth Circuit issued its opinion in *CPUC* in 2018, several years after FERC accepted the ATSI and Duke settlements in 2015.  *CPUC* provided FERC new guidance regarding eligibility for transmission rate incentives in transmission rates.  This is a fundamental change in circumstances that warrants FERC's reassessment of whether ATSI and Duke remain eligible for the RTO Adders today and going-forward.

Duke further incorrectly argues that *Int'l Transmission Co. v. FERC*, 988 F.3d 471 (D.C. Cir. 2021) ("*International Transmission*") is inapplicable to the facts in this case because FERC granted the RTO Adder in *International Transmission* in a single-issue, stand-alone case rather than as part of a settlement.  Duke Br. 25-26.  OCC demonstrated in its Opening Brief that the form of

18

proceeding in which FERC granted the incentive is irrelevant, as Order No. 679 allows transmission utilities to seek the incentive in either a stand-alone (single-issue) proceeding or in a rate case under FPA section 205.  OCC Opening Br. 29-31; *see also* OCC Rehearing Request 10, JA.539, citing Order 679 P 76.  DP&L and AEP used the stand-alone approach to requesting the RTO Adder.  Complaint Order P 62, JA.486.  ATSI and Duke used the rate case approach to seeking the RTO Adder.  *Id.* P 64, JA.488.  It therefore is proper for FERC to reassess their eligibility for the RTO Adders in a FPA section 206 single-issue complaint challenge to those settlements.  To find otherwise would discourage consumers from settling cases involving transmission rate incentives because they would never be able to challenge the grant of the incentives in future cases.

The Court likewise should place no weight on ATSI's argument that "the same legal arguments that FERC has now accepted (subject to this Court's pending review) were not only available at the time of ATSI's 2015 rate settlement, but were actively being litigated at FERC."  ATSI Br. 17, citing *CPUC*, 879 F.3d at 972.  ATSI does not cite to any legal precedent for the presumption that a litigant in one case *must* raise any issues being litigated in other cases before FERC at approximately the same time in order to maintain its FPA section 206 rights to challenge the justness and reasonableness of a rate.  The FPA section 206 right to challenge a settlement in the future on a particular issue is not waived simply by

the failure of an entity to challenge the issue in the underlying settlement process if that issue is being litigated in other proceedings at FERC.

This is especially true where, as here, there has been a change in circumstances, *i.e.,* the issuance of clarifying legal guidance by a Circuit Court of Appeals. A change in law is a change in circumstance warranting reconsideration of a prior grant of approval for a particular stated value in a transmission formula rate. Neither FERC nor the Ohio Transmission Utilities cite to any judicial precedent for their allegation that only a change in facts can justify a single-issue change to a stated value in a settlement.

FERC, ATSI, and Duke all argue that FERC could not properly guess at the trade-offs made in the ATSI and Duke settlements in order to disentangle the RTO Adder from all other components of those black box settlements. FERC Br. 62; ATSI Br. 17; Duke Br. 27-28. The fact that there may have been trade-offs during the settlement process is irrelevant when challenging a stated value in a settlement proceeding. It is akin to saying that a complainant has to challenge the overall bargain reflected in the settlement – a premise that is not true when stated values are involved.

Moreover, this argument ignores the fact that FERC did not have to guess at the trade-offs in the Duke settlement proceedings to determine the value of the RTO Adder included in the rates. The Duke settlement explicitly states the value

20

of the RTO Adder.  Complaint Order P 65, JA.488-89; *see also* Duke Br.

Addendum at A-33 (quoting Section 3.3 of the Duke Settlement which states that

the return on equity will be a "total of 11.38%, consisting of a 10.88% base cost of

common equity and a 0.5% ROE adder as permitted by Commission policy for

participation in a regional transmission organization.").  Whether there were trade-

offs in the settlement that justified allowing the RTO Adder in rates over the past

eight or nine years is irrelevant to the question of whether the utilities remain

eligible for the RTO Adder today and going forward.

Nor should the Court give any weight to ATSI's reliance on a case that

states "when a party makes a deliberate, strategic choice to settle, a court cannot

relieve him of the choice simply because his assessment of the consequences was

incorrect."  ATSI Br. 13-14.  OCC did not ask FERC to reassess the overall

bargain of the parties, or even reassess whether the settlement itself was fair and in

the public interest.  OCC asked only that FERC reassess ATSI's and Duke's on-

going eligibility for the RTO Adder based on the Ninth Circuit's guidance

clarifying the eligibility requirements for that incentive.

The Court also should give no weight to Duke's argument that under the

settlement agreement, its customers "achieved certainty that the 2012-2014 Multi-

Value Projects costs would never flow through to them at all, and certainly going

forward that no more than 30 percent of those future costs would flow through to

them, either." Duke Br. 10-11. Duke opines that customers "received their benefit under the settlement," while "Duke assumed the risk of billions in Multi-Value Project Costs." *Id.* 12-13. As noted, the trade-offs during the settlement process are irrelevant to the question of whether the utilities remain eligible for the incentive going forward.

Moreover, the Court cannot rely on Duke's recounting of the benefits to consumers from its settlement as evidence that the overall bargain in the settlement should not be disrupted on a going-forward basis. Duke admits that "[y]ears later, this Court ruled that MISO [the Midcontinent Independent System Operator, Inc.] could not inflict most of those costs onto Duke . . . ." Duke Br. 13. Thus, one of the alleged significant benefits for consumers and risks to Duke of the Duke settlement – the avoidance of paying for Duke's exit fees incurred when it left MISO– ultimately rendered no value to consumers. Duke itself was able to avoid that risk.

Finally, the Court also should reject Duke's claim that "when the dust settles, no customer should care much about individual rate components." Duke Br. 15. The "individual rate component" at issue here – the RTO Adder – is costing Ohio ratepayers more than $26 million annually to incentivize behavior already mandated by Ohio law. Ohio consumers care very much about the going-forward unjustness and unreasonableness of that "individual rate component."

22

Congress also cares. The Ninth Circuit recognized that Congress only authorized FERC to provide RTO Adders when (1) they act as incentives, and (2) are just and reasonable (which, under precedent, means they are needed to induce action). *CPUC*, 879 F.3d at 978.

FERC policy makes clear that stated values in settlements can be challenged in the future on a single-issue basis. There simply is no law or policy that prohibits a consumer from later challenging the inclusion of an RTO Adder in rates on a prospective basis, especially when intervening case law made clear that the utility is no longer eligible for that incentive under federal and state statutes and FERC policy.

## III. FERC'S REFUSAL TO ELIMINATE THE RTO ADDER FROM ATSI'S AND DUKE'S OHIO TRANSMISSION RATES IS UNDULY DISCRIMINATORY AGAINST THEIR OHIO CONSUMERS.

FERC incorrectly argues that it is not unduly discriminatory "that some customers will continue pay Participation [RTO] Adders to Duke and American [ATSI] (as well as to other transmission owners in PJM whose participation is not required by state law)." FERC Br. 65-66. But ATSI and Duke are not like other transmission owners in PJM "whose participation is not required by state law." ATSI and Duke, like AEP and DP&L, are subject to Ohio law that mandates their participation in an RTO. FERC should have compared ATSI and Duke to other Ohio transmission utilities, *i.e.*, AEP and DP&L, for purposes of determining

23

whether undue discrimination exists rather than comparing them to other PJM transmission owners not subject to such a state law.

The Court also should give no weight to Duke's argument that payment of the RTO Adder by some customers in Ohio is not discriminatory because "rate disparities based on settlements are not unduly discriminatory." Duke Br. 16. FERC's acceptance of settlements that include the RTO Adder does not override the fact that ATSI and Duke are ineligible for the incentive under FPA section 219, Order No. 679 and Ohio law. OCC is challenging the on-going reasonableness of continuing to allow these Ohio transmission utilities to retain the RTO Adders in their rates when FERC ruled that (a) RTO participation must be voluntary; and (b) Ohio mandates RTO participation by all Ohio transmission utilities. If AEP and Dayton are ineligible for the adder under Ohio law, so too are ATSI and Duke.

The Court also should reject Duke's argument that transmission owners in PJM all have different overall ROEs, and thus its Ohio transmission rates are not unduly discriminatory. Duke Br. 17-18. OCC did not challenge the unduly discriminatory nature of Duke's return on equity because it was different from other transmission owners in PJM. OCC challenged the RTO Adder in Duke's rates because it was not fair for some Ohio customers to pay a premium for an the unnecessary incentive when FERC determined that other customers in Ohio do not have to pay that premium because of the Ohio law mandate. All four Ohio

24

transmission utilities are similarly-situated – none is eligible for the RTO Adder under FPA section 219, Order No. 679, and Ohio law.  It is unduly discriminatory for FERC to require some, but not all, of these utilities to remove the incentive for which they are ineligible from Ohio consumer transmission rates.

## CONCLUSION AND PRAYER FOR RELIEF

OCC requests that the Court grant OCC's Petitions for Review in Case Nos. 23-3324 and 23-3417, and remand the portion of FERC's order in Docket No. EL22-34-000 below with directions to remove the RTO Adder from all transmission rates charged to Ohio consumers.

*/s/ Denise C. Goulet*
Denise C. Goulet
Wendy Simon-Pearson
McCarter & English, LLP
1301 K Street, NW, Suite 1000 West
Washington, DC 20005
(202) 753-3400
dgoulet@mccarter.com
wsimonpearson@mccarter.com

Special Counsel to the Ohio Office of the Attorney General for the Office of the Ohio Consumers' Counsel

Denise C. Goulet is Admitted to the United States Court of Appeals for the Sixth Circuit
D.C. Bar # 496559

MAUREEN WILLIS
CONSUMERS' COUNSEL

25

Angela O'Brien, Deputy Consumers' Counsel
**Office of the Ohio Consumers' Counsel** 65 East
State Street, Suite 700
Columbus, Ohio 43215
(614) 466-9531 – Telephone
angela.obrien@occ.ohio.gov

INITIAL REPLY BRIEF: December 8, 2023
FINAL REPLY BRIEF:  December 21, 2023

## Certificate of Compliance With Type-Volume Limit,
## Typeface Requirements, and Type-Style Requirements

1.    This brief complies with the type-volume limitation of Federal Rules of

Appellate Procedure "(Fed. R. App. P.") 32(a)(7)(B) because it contains 6,039

words (of the 6,500 words allotted Petitioners for Reply Briefs in this case) as

determined by the word-counting feature of Microsoft Word, excluding the

parts of the brief exempted by Fed. R. App. P. Rule 32(f) and Sixth Circuit Rule

32(b)(1).

2.    This brief complies with the typeface requirements of Fed. R. App. P. Rule

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

this brief has been prepared in a proportionally spaced typeface using Microsoft

Word 2010 in Times New Roman 14-point font.

> */s/ Denise C. Goulet*
> Denise C. Goulet
> McCarter & English, LLP
> 1301 K Street, N.W.
> Suite 1000 West
> Washington, D.C. 20005
> (202) 753-3400
> dgoulet@mccarter.com
>
> Special Counsel to the Ohio Office of the
> Attorney General for the Office of the Ohio
> Consumers' Counsel

Dated:  December 8, 2023
FINAL REPLY BRIEF:  December 21, 2023

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing will be made electronically via

CM/ECF system. All participants in the case are registered CM/ECF users and will

be served by the appellate CM/ECF system.

Dated this 8th day of December, 2023.
FINAL REPLY BRIEF:  December 21, 2023.

/s/Denise C. Goulet

Denise C. Goulet
McCarter & English, LLP
1301 K Street, N.W.
Suite 1000 West
Washington, D.C. 20005
(202) 753-3400
dgoulet@mccarter.com

Special Counsel to the Ohio Office of the
Attorney General for the Office of the Ohio
Consumers' Counsel

28

**NOS. 23-3324 and 23-3417**
**(Consolidated with Nos. 21-4072, 22-3351, 23-3196 and 23-3366)**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

―――――――――

**THE DAYTON POWER AND LIGHT COMPANY, ET AL.,**

**v.**

**FEDERAL ENERGY REGULATORY COMMISSION**

―――――――――

**ON PETITION FOR REVIEW OF ORDERS OF**
**THE FEDERAL ENERGY REGULATORY COMMISSION**

―――――――――

**REPLY BRIEF OF PETITIONER**
**OFFICE OF THE OHIO CONSUMERS' COUNSEL**
**IN NOS. 23-3324 AND 23-3417**

**ADDENDUM**

# ADDENDUM

**Statutes**

1.  Federal Power Act

    a.  Section 205, Rates and Charges, Schedules
        16 U.S.C. § 824d . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . 1

    b.  Section 206, Power of Commission To Fix Rates and Charges,
        16 .S.C. § 824e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    c.  Section 219, 16 U.S.C. § 824s,  Transmission Infrastructure
        Investment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Designation of Relevant FERC Documents for Joint Appendix**

# Federal Power Act, Section 205, 16 U.S.C. § 824d

**(a) JUST AND REASONABLE RATES**

All rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges shall be just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful.

**(b) PREFERENCE OR ADVANTAGE UNLAWFUL**

No public utility shall, with respect to any transmission or sale subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service.

**(c) SCHEDULES**

Under such rules and regulations as the Commission may prescribe, every public utility shall file with the Commission, within such time and in such form as the Commission may designate, and shall keep open in convenient form and place for public inspection schedules showing all rates and charges for any transmission or sale subject to the jurisdiction of the Commission, and the classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services.

**(d) NOTICE REQUIRED FOR RATE CHANGES**

Unless the Commission otherwise orders, no change shall be made by any public utility in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after sixty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the sixty days' notice herein

provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

**(e) SUSPENSION OF NEW RATES; HEARINGS; FIVE-MONTH PERIOD**

Whenever any such new schedule is filed the Commission shall have authority, either upon complaint or upon its own initiative without complaint, at once, and, if it so orders, without answer or formal pleading by the public utility, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the public utility affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect; and after full hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made at the expiration of such five months, the proposed change of rate, charge, classification, or service shall go into effect at the end of such period, but in case of a proposed increased rate or charge, the Commission may by order require the interested public utility or public utilities to keep accurate account in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts are paid, and upon completion of the hearing and decision may by further order require such public utility or public utilities to refund, with interest, to the persons in whose behalf such amounts were paid, such portion of such increased rates or charges as by its decision shall be found not justified. At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the public utility, and the Commission shall give to the hearing and decision of such questions preference over other questions pending before it and decide the same as speedily as possible.

**(f) REVIEW OF AUTOMATIC ADJUSTMENT CLAUSES AND PUBLIC UTILITY PRACTICES; ACTION BY COMMISSION; "AUTOMATIC ADJUSTMENT CLAUSE" DEFINED**

(1)  Not later than 2 years after November 9, 1978, and not less often than every 4 years thereafter, the Commission shall make a thorough

review of automatic adjustment clauses in public utility rate schedules to examine—

**(A)**   whether or not each such clause effectively provides incentives for efficient use of resources (including economical purchase and use of fuel and electric energy), and

**(B)**   whether any such clause reflects any costs other than costs which are—

**(i)**    subject to periodic fluctuations and

**(ii)**   not susceptible to precise determinations in rate cases prior to the time such costs are incurred.

Such review may take place in individual rate proceedings or in generic or other separate proceedings applicable to one or more utilities.

**(2)**   Not less frequently than every 2 years, in rate proceedings or in generic or other separate proceedings, the Commission shall review, with respect to each public utility, practices under any automatic adjustment clauses of such utility to insure efficient use of resources (including economical purchase and use of fuel and electric energy) under such clauses.

**(3)**   The Commission may, on its own motion or upon complaint, after an opportunity for an evidentiary hearing, order a public utility to—

**(A)**   modify the terms and provisions of any automatic adjustment clause, or

**(B)**   cease any practice in connection with the clause, if such clause or practice does not result in the economical purchase and use of fuel, electric energy, or other items, the cost of which is included in any rate schedule under an automatic adjustment clause.

**(4)**   As used in this subsection, the term "automatic adjustment clause" means a provision of a rate schedule which provides for increases or decreases (or both), without prior hearing, in rates reflecting increases or decreases (or both) in costs incurred by an electric utility. Such term does not include any rate which takes effect subject to refund and subject to a later determination of the appropriate amount of such rate.

**(g) INACTION OF COMMISSIONERS**

> **(1)   IN GENERAL**
>
> With respect to a change described in subsection (d), if the Commission permits the 60-day period established therein to expire without issuing an order accepting or denying the change because the Commissioners are divided two against two as to the lawfulness of the change, as a result of vacancy, incapacity, or recusal on the Commission, or if the Commission lacks a quorum—
>
> > **(A)**   the failure to issue an order accepting or denying the change by the Commission shall be considered to be an order issued by the Commission accepting the change for purposes of section 825l(a) of this title; and
> >
> > **(B)**   each Commissioner shall add to the record of the Commission a written statement explaining the views of the Commissioner with respect to the change.
>
> **(2)   APPEAL**
>
> If, pursuant to this subsection, a person seeks a rehearing under section 825l(a) of this title, and the Commission fails to act on the merits of the rehearing request by the date that is 30 days after the date of the rehearing request because the Commissioners are divided two against two, as a result of vacancy, incapacity, or recusal on the Commission, or if the Commission lacks a quorum, such person may appeal under section 825l(b) of this title.

## Federal Power Act Section 206, 16 U.S.C. § 824e

**(a)** **UNJUST OR PREFERENTIAL RATES, ETC.; STATEMENT OF REASONS FOR CHANGES; HEARING; SPECIFICATION OF ISSUES**

Whenever the Commission, after a hearing held upon its own motion or upon complaint, shall find that any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order. Any complaint or motion of the Commission to initiate a proceeding under this section shall state the change or changes to be made in the rate, charge, classification, rule, regulation, practice, or contract then in force, and the reasons for any proposed change or changes therein. If, after review of any motion or complaint and answer, the Commission shall decide to hold a hearing, it shall fix by order the time and place of such hearing and shall specify the issues to be adjudicated.

**(b)** **REFUND EFFECTIVE DATE; PREFERENTIAL PROCEEDINGS; STATEMENT OF REASONS FOR DELAY; BURDEN OF PROOF; SCOPE OF REFUND ORDER; REFUND ORDERS IN CASES OF DILATORY BEHAVIOR; INTEREST**

Whenever the Commission institutes a proceeding under this section, the Commission shall establish a refund effective date. In the case of a proceeding instituted on complaint, the refund effective date shall not be earlier than the date of the filing of such complaint nor later than 5 months after the filing of such complaint. In the case of a proceeding instituted by the Commission on its own motion, the refund effective date shall not be earlier than the date of the publication by the Commission of notice of its intention to initiate such proceeding nor later than 5 months after the publication date. Upon institution of a proceeding under this section, the Commission shall give to the decision of such proceeding the same preference as provided under section 824d of this title and otherwise act as speedily as possible. If no final decision is rendered by the conclusion of the 180-day period commencing upon initiation of a proceeding pursuant to this section, the Commission shall state the reasons why it has failed to do so and shall state its best estimate as to when it reasonably expects to make such decision. In any proceeding under this section, the burden of proof to show that any rate, charge, classification, rule, regulation, practice, or contract is unjust, unreasonable, unduly discriminatory, or preferential shall be upon the Commission or the complainant. At the conclusion of any proceeding under

this section, the Commission may order refunds of any amounts paid, for the period subsequent to the refund effective date through a date fifteen months after such refund effective date, in excess of those which would have been paid under the just and reasonable rate, charge, classification, rule, regulation, practice, or contract which the Commission orders to be thereafter observed and in force: Provided, That if the proceeding is not concluded within fifteen months after the refund effective date and if the Commission determines at the conclusion of the proceeding that the proceeding was not resolved within the fifteen-month period primarily because of dilatory behavior by the public utility, the Commission may order refunds of any or all amounts paid for the period subsequent to the refund effective date and prior to the conclusion of the proceeding. The refunds shall be made, with interest, to those persons who have paid those rates or charges which are the subject of the proceeding.

**(c)** **REFUND CONSIDERATIONS; SHIFTING COSTS; REDUCTION IN REVENUES; "ELECTRIC UTILITY COMPANIES" AND "REGISTERED HOLDING COMPANY" DEFINED**

Notwithstanding subsection (b), in a proceeding commenced under this section involving two or more electric utility companies of a registered holding company, refunds which might otherwise be payable under subsection (b) shall not be ordered to the extent that such refunds would result from any portion of a Commission order that (1) requires a decrease in system production or transmission costs to be paid by one or more of such electric companies; and (2) is based upon a determination that the amount of such decrease should be paid through an increase in the costs to be paid by other electric utility companies of such registered holding company: Provided, That refunds, in whole or in part, may be ordered by the Commission if it determines that the registered holding company would not experience any reduction in revenues which results from an inability of an electric utility company of the holding company to recover such increase in costs for the period between the refund effective date and the effective date of the Commission's order. For purposes of this subsection, the terms "electric utility companies" and "registered holding company" shall have the same meanings as provided in the Public Utility Holding Company Act of 1935, as amended.

**(d)** **INVESTIGATION OF COSTS**

The Commission upon its own motion, or upon the request of any State commission whenever it can do so without prejudice to the efficient and proper conduct of its affairs, may investigate and determine the cost of the production or transmission of electric energy by means of facilities under the jurisdiction of the Commission in

cases where the Commission has no authority to establish a rate governing the sale of such energy.

**(e)    SHORT-TERM SALES**

  **(1)**  In this subsection:

    **(A)**  The term "short-term sale" means an agreement for the sale of electric energy at wholesale in interstate commerce that is for a period of 31 days or less (excluding monthly contracts subject to automatic renewal).

    **(B)**  The term "applicable Commission rule" means a Commission rule applicable to sales at wholesale by public utilities that the Commission determines after notice and comment should also be applicable to entities subject to this subsection.

  **(2)**  If an entity described in section 824(f) of this title voluntarily makes a short-term sale of electric energy through an organized market in which the rates for the sale are established by Commission-approved tariff (rather than by contract) and the sale violates the terms of the tariff or applicable Commission rules in effect at the time of the sale, the entity shall be subject to the refund authority of the Commission under this section with respect to the violation.

  **(3)** This section shall not apply to—

    **(A)**  any entity that sells in total (including affiliates of the entity) less than 8,000,000 megawatt hours of electricity per year; or

    **(B)**  an electric cooperative.

  **(4)**

    **(A)**  The Commission shall have refund authority under paragraph (2) with respect to a voluntary short term sale of electric energy by the Bonneville Power Administration only if the sale is at an unjust and unreasonable rate.

    **(B)**  The Commission may order a refund under subparagraph (A) only for short-term sales made by the Bonneville Power Administration at rates that are higher than the highest just and reasonable rate charged by any other entity for a short-term sale of electric energy in the same

geographic market for the same, or most nearly comparable, period as the sale by the Bonneville Power Administration.

**(C)** In the case of any Federal power marketing agency or the Tennessee Valley Authority, the Commission shall not assert or exercise any regulatory authority or power under paragraph (2) other than the ordering of refunds to achieve a just and reasonable rate.

# FEDERAL POWER ACT, SECTION 219, 16 U.S.C. § 824s
# TRANSMISSION INFRASTRUCTURE INVESTMENT

**(a) RULEMAKING REQUIREMENT**

Not later than 1 year after August 8, 2005, the Commission shall establish, by rule, incentive-based (including performance-based) rate treatments for the transmission of electric energy in interstate commerce by public utilities for the purpose of benefitting consumers by ensuring reliability and reducing the cost of delivered power by reducing transmission congestion.

**(b) CONTENTS** The rule shall—

**(1)** promote reliable and economically efficient transmission and generation of electricity by promoting capital investment in the enlargement, improvement, maintenance, and operation of all facilities for the transmission of electric energy in interstate commerce, regardless of the ownership of the facilities;

**(2)** provide a return on equity that attracts new investment in transmission facilities (including related transmission technologies);

**(3)** encourage deployment of transmission technologies and other measures to increase the capacity and efficiency of existing transmission facilities and improve the operation of the facilities; and

**(4)** allow recovery of—

**(A)** all prudently incurred costs necessary to comply with mandatory reliability standards issued pursuant to section 824o of this title; and
**(B)** all prudently incurred costs related to transmission infrastructure development pursuant to section 824p of this title.

**(c) INCENTIVES**

In the rule issued under this section, the Commission shall, to the extent within its jurisdiction, provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization. The Commission shall ensure that any costs recoverable pursuant to this subsection may be recovered by such utility through the transmission rates charged by such utility or through the transmission rates

charged by the Transmission Organization that provides transmission service to such utility.

**(d)** JUST AND REASONABLE RATES

All rates approved under the rules adopted pursuant to this section, including any revisions to the rules, are subject to the requirements of sections 824d and 824e of this title that all rates, charges, terms, and conditions be just and reasonable and not unduly discriminatory or preferential.

# DESIGNATION OF RELEVANT FERC DOCUMENTS
# FOR JOINT APPENDIX

**Sixth Circuit Court Case Nos. 23-3196, 23-3324, 23-3366 and 23-341**
**FERC Docket No. EL23-34-000**

| Record Entry No. From Certified Index to the Record | Description | Pages |
|---|---|---|
| R.20 | Answer to Complaint of Duke Energy Ohio, Inc. – Office of the Ohio Consumers' Counsel v. American Electric Power Service Corp., *et al.* (Mar. 31, 2022) | All |
| R.39 | Order on Complaint, *Office of the Ohio Consumers' Counsel v. American Electric Power Service Corp., et al.,* 181 FERC ¶ 61,214 (2022) | All |
| R.41 | Ohio Consumers' Counsel's Request for Rehearing (Jan. 17, 2023) | All |
| R.49 | Order Addressing Arguments Raised on Rehearing, *Office of the Ohio Consumers' Counsel v. American Electric Power Service Corp., et al.,* 183 FERC ¶ 61,034 (2023) | All |

**Sixth Circuit Case Nos. 21-4072 and 22-3351**
**FERC Docket No. ER20-1068-000**

| Record Entry No. From Certified Index to the Record | Description | Pages |
|---|---|---|
| R.42 | Order on Paper Hearing, *The Dayton Power and Light Co.,* 176 FERC ¶ 61,025 (2021) | All |
| R.51 | Order on Rehearing, The Dayton Power and Light Co., 178 FERC ¶ 61,102 (2022) | All |