**Nos. 21-4072 and 22-3351**
**(Consolidated with Nos. 23-3196, 23-3324, 23-3366, and 23-3417)**

_____

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

_____

**DAYTON POWER & LIGHT COMPANY, d/b/a AES OHIO;**
**AMERICAN ELECTRIC POWER SERVICE CORPORATION;**
**DUKE ENERGY OHIO, INC.; FIRSTENERGY SERVICE COMPANY,**
*Petitioners*,

v.

**FEDERAL ENERGY REGULATORY COMMISSION,**
*Respondent*.

_____

**On Petitions for Reviews of Orders of the**
**Federal Energy Regulatory Commission**

_____

**REPLY BRIEF OF INTERVENOR**
**PJM INTERCONNECTION, L.L.C. IN SUPPORT OF PETITIONERS**

Paul M. Flynn
Ryan J. Collins
WRIGHT & TALISMAN, P.C.
1200 G Street, N.W., Suite 600
Washington, DC  20005-3898
202-393-1200
flynn@wrightlaw.com
collins@wrightlaw.com

*Counsel for*
*PJM Interconnection, L.L.C.*

Dated: December 22, 2023

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................1

    I.    FERC's Orders on Review Unlawfully Deviate from
          Section 219 ..........................................................................................1

          A.    In Addition to Overlooking the Words of the Statute,
                FERC Tries to (but Cannot Succeed in) Precluding
                Judicial Review Claiming Collateral Attack .............................4

          B.    OCC's Textual Analysis Improperly Focuses on One
                Word to the Exclusion of the Rest of the Provision ...................7

CONCLUSION ...................................................................................................12

# TABLE OF AUTHORITIES

**COURT CASES**                                                                                    **Page**

*California Public Utilities Commission v. FERC*,
   879 F.3d 966 (9th Cir. 2018) ..................................................................5, 6

*Charboneau v. Davis*,
   U.S. App. LEXIS 31884 (9th Cir. Dec. 4, 2023) ...........................................4

*Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*,
   467 U.S. 837 (1984)..........................................................................................4

*Doe v. BlueCross BlueShield of Tennessee, Inc.*,
   926 F.3d 235 (6th Cir. 2019) ..........................................................................4

*Federal Power Commission v. Sierra Pacific Power Co.*,
   350 U.S. 348 (1956)........................................................................................11

*HCSC-Laundry v. United States*,
   450 U.S. 1 (1981)..............................................................................................9

*Morales v. Trans World Airlines*,
   504 U.S. 374 (1992).........................................................................................9

*Southern Co. Services, Inc. v. FERC*,
   416 F.3d 39 (D.C. Cir. 2005)..........................................................................5

*United States v. American Trucking Ass'n*,
   310 U.S. 534 (1940)..........................................................................................7

*Washington Market Co. v. Hoffman*,
   101 U.S. 112 (1879)..........................................................................................7

**ADMINISTRATIVE CASES**

*Office of the Ohio Consumers' Counsel v. American Electric Power
   Service Corp.*, 181 FERC ¶ 61,214 (2022), *order on reh'g*, 183
   FERC ¶ 61,034 (2023).................................................................................10

*Promoting Transmission Investment Through Pricing Reform*,
     Order No. 679, 116 FERC ¶ 61,057, *order on reh'g*,
     Order No. 679-A, 117 FERC ¶ 61,345 (2006), *order on reh'g*,
     Order No. 679-B, 119 FERC ¶ 61,062 (2007) ........................................*passim*

**STATUTES**

16 U.S.C. § 824 ................................................................................................8

16 U.S.C. § 824d ............................................................................................11

16 U.S.C. § 824e ............................................................................................11

16 U.S.C. § 824s ......................................................................................*passim*

# INTRODUCTION

"This case is about the meaning of Section 219(c)" of the Federal Power Act. Brief of Petitioners Dayton Power & Light Co., American Electric Power Service Corp., and FirstEnergy Service Co. at 34, *Dayton Power & Light Company, v. FERC*, Nos. 21-4072, et al. (6th Cir. Aug. 10, 2023) ("TO Br."). But FERC's brief wholly fails to examine its text. Rather, FERC attempts to re-frame the proceeding away from the statute and into FERC's application of Order No. 679. *See* Brief for Respondent Federal Energy Regulatory Commission at 34-41, *Dayton Power & Light Company, v. FERC*, Nos. 21-4072, et al. (6th Cir. Oct. 30, 2023) ("FERC Br."). The statute controls, not the implementing rulemaking, and FERC's application of Order No. 679 in the orders below unlawfully deviates from the statute.

# ARGUMENT

## I. FERC's Orders on Review Unlawfully Deviate from Section 219

Congress set national policy of supporting participation in regional transmission organizations through section 219 of the Federal Power Act. Section 219(c) is clear and unambiguous: FERC "shall . . . provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization." 16 U.S.C. § 824s(c). Congress provided an incentive for participating in regional transmission organizations "for the purpose of benefitting consumers by ensuring reliability and reducing the cost of delivered power by reducing transmission

1

congestion." 16 U.S.C. § 824s(a). Congress did not provide any eligibility condition or qualification for receipt of the incentive—only that a utility must "join." 16 U.S.C. § 824s(c). When drafting section 219, Congress was well aware of the Ohio statute at issue in this case, as it had been enacted well beforehand. Notwithstanding, Congress did not qualify how or why a utility joins a regional transmission organization—or that the joining must be voluntary—to be eligible for the incentive. However, Congress *did* make explicitly clear through the statutory text that the incentive must effectuate the purpose of "ensuring reliability and reducing the cost of delivered power by reducing transmission congestion," 16 U.S.C § 824s(a), an objective indifferent as to the reason why a utility joins. Although Congress provided in section 219(d) that all rates implementing section 219 must be just and reasonable pursuant to sections 205 and 206, as explained below, such directive relates to the level of the incentive, not whether the incentive should be granted in the first place. *I.e.*, nothing in section 219(d) authorizes FERC to essentially rewrite the statute to install a "gating" criterion on eligibility for the incentive.

FERC implemented section 219's Congressional directive in Order No. 679. *Promoting Transmission Investment Through Pricing Reform*, Order No. 679, 116 FERC ¶ 61,057, *order on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345 (2006), *order on reh'g*, Order No. 679-B, 119 FERC ¶ 61,062 (2007). As written, Order No. 679 accords with Congress's directive and correctly implements Congressional policy

2

by providing for an incentive return on equity adder ("RTO Participation Incentive") *to each* utility that joins a regional transmission organization, without any stated eligibility qualification or limitation. In particular, as in section 219(c), Order No. 679 does not require any threshold eligibility or criterion required for obtaining the RTO Participation Incentive—no criterion that would automatically preclude eligibility for any utility that joins a regional transmission organization. For over a decade, FERC applied Order No. 679 in accordance with the strictures of section 219 "without considering whether participation was voluntary." FERC Br. 39.

However, in the orders below, FERC's application of Order No. 679 has become unmoored from its statutory basis. FERC added a threshold eligibility requirement that Congress did not direct: voluntary membership. *See* TO Br. 28-36. Congress could have included that requirement, as at the time it drafted section 219 it was well aware of state statutes (including Ohio's) mandating transmission organization membership. Despite that, Congress elected *not* to limit eligibility for the incentive based on voluntariness. FERC, in effect, is rewriting the statute to say that it is required to: "provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization <u>*voluntarily when not required to do so by state law*</u>." Although FERC may now prefer the statute to read that way, that is not what Congress wrote.

3

FERC is required to implement the statute as written by Congress (including recognizing the goals of the incentives specified in section 219(a)). Rewriting the statute to include a threshold eligibility requirement is unlawful. *See Doe v. BlueCross BlueShield of Tenn. Inc.*, 926 F.3d 235, 240 (6th Cir. 2019) ("While agencies may have authority to interpret statutes, they do not have authority to rewrite them. 'If the intent of Congress is clear, that is the end of the matter.'" (quoting *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc*., 467 U.S. 837, 842, (1984))); *see also Charboneau v. Davis*, 2023 U.S. App. LEXIS 31884, at * 32 (9th Cir. Dec. 4, 2023) ("Had Congress intended to impose such a limitation, it could easily have added that simple word. But it did not do so, and we cannot rewrite the statute to insert an additional restriction that Congress omitted.").

### A. In Addition to Overlooking the Words of the Statute, FERC Tries to (but Cannot Succeed in) Precluding Judicial Review Claiming Collateral Attack.

The Transmission Owner Petitioners provided a detailed textual analysis of section 219(c), TO Br. 28-36, but FERC's responsive brief wholly fails to engage with the words of the statute. FERC attempts to sidestep a textual analysis by claiming parties are foreclosed from challenging FERC's application of Order No. 679 now because no party sought judicial review of Order No. 679 when it was issued over 15 years ago. This argument ignores that FERC has just *now* changed

how its implements Order No. 679 by adding a voluntariness requirement not stated in the rulemaking.

Common sense and due process require that parties must be on notice of a rule before they can challenge it. *See Southern Co. Servs., Inc. v. FERC*, 416 F.3d 39, 44 (D.C. Cir. 2005) ("The question of whether [petitioner] is collaterally attacking prior orders depends on whether those orders gave 'sufficient notice' of the rule to which [petitioner] now objects."). FERC's words in Order No. 679 and its actions applying Order No. 679 in the years leading up to the orders on appeal provided no notice that a utility must join a transmission organization voluntarily in order to be eligible for the RTO Participation Incentive. In fact, Order No. 679 declined to adopt a voluntariness requirement despite requests to do so. TO Br. 35 (citing Order No. 679 at PP 316, 326-27; Order No. 679-A at PP 83, 86). And, as FERC acknowledges, "in the decade following [Order No. 679], [FERC] routinely granted the [RTO] Participation [Incentive] without considering whether participation was voluntary." FERC Br. 39.

The lack of notice is not surprising given FERC was unaware of a voluntariness requirement in Order No. 679 until it was suggested by the Court of Appeals for the Ninth Circuit in *California Public Utilities Commission v. FERC*, 879 F.3d 966 (9th Cir. 2018) ("*Cal. PUC*"). Notably, the *Cal. PUC* court did *not* find a voluntariness requirement in Order No. 679, *see Cal. PUC*, 879 F.3d at 974;

5

rather, the court only found that FERC's orders were arbitrary and capricious for failing to engage with challengers' argument that involuntariness may preclude grant of the RTO Participation Incentive. *See id.* at 979 (FERC's grant of RTO Participation Incentives "without any case-specific inquiry into the circumstances of [utility's] membership" made "[t]he orders on review . . . arbitrary and capricious."). In short, *Cal. PUC* does not stand for the rewrite of the statute that FERC claims— indeed, the court did not even examine section 219. Rather, it reversed on the procedural grounds that FERC did not engage with the arguments raised by challengers.

The lack of notice about FERC's about-face is fatal to FERC's claims that the Transmission Owner Petitioners' challenge to FERC's voluntariness requirement is an impermissible "collateral attack" on Order No. 679, and that the Transmission Owner Petitioners' appeal is therefore precluded, because "[n]o party sought judicial review of Order No. 679." FERC Br. 36-38.

Moreover, while agencies are permitted to deviate from past practice, they must explain their reasons for doing so and parties are allowed to challenge the lawfulness of such deviation. Here, there is no question that FERC has changed course and added a voluntariness requirement where FERC previously imposed no such requirement. Thus, FERC is wrong that parties may not challenge the lawfulness of FERC's action in this case as inconsistent with section 219.

6

### B. OCC's Textual Analysis Improperly Focuses on One Word to the Exclusion of the Rest of the Provision.

In contrast to FERC's silence on the statute, the Office of the Ohio Consumers' Counsel ("OCC") (in its status as an intervenor in support of FERC) attempts a textual analysis of section 219. But OCC myopically focuses on the word "incentive," seeking to extract a "voluntariness" requirement from it while ignoring the rest of section 219. Intervenors' Brief, in Support of Respondent FERC, of Office of the Ohio Consumers' Counsel and Buckeye Power, Inc. at 5-7, *Dayton Power & Light Company v. FERC*, Nos. 21-4072, et al. (6th Cir. Nov. 21, 2023) ("OCC Intervenor Br."). "It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word." *Wash. Market Co. v. Hoffman*, 101 U.S. 112, 115 (1879); *see also United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542 (1940) ("In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress."). Thus, any textual analysis must look at the entire section, including that Congress specified the incentives should be provided "to each transmitting utility or electric utility that joins a Transmission Organization," 16 U.S.C. § 824s(c), and should be designed to "benefit[] consumers by ensuring reliability and reducing the cost of delivered power by reducing transmission congestion." 16 U.S.C. § 824(a). OCC fails to grapple with the plain meaning of "to each" and "utility that joins," nor does OCC demonstrate how those words would

7

be consistent with a voluntariness requirement. In any event, OCC could not meet that burden as section 219(c)'s text that "*each* . . . utility that joins" provides no flexibility or discretion for FERC to establish a voluntariness requirement. TO Br. 29. Nor does OCC attempt to square its sweeping argument that Congress sought to encourage for transmission organization membership for the benefit of consumers, *see* 16 U.S.C. § 824(a)—a benefit unrelated to whether such membership is voluntary.

OCC asserts that section 219 includes an "overarching just and reasonable requirement" that constrains grant of the RTO Participation Incentive. OCC Intervenor Br. 7. However, OCC overstates the role of the just and reasonable standard in section 219. The Federal Power Act's just and reasonable standard is not a wild card that can trump clear a Congressional directive "to provide for incentives to each . . . utility that joins a Transmission Organization." 16 U.S.C. § 824s(c). Section 219 invokes the just and reasonable standard only in section 219(d) and only to limit the "rates" implementing the RTO Participation Incentive to the just and reasonable and not unduly discriminatory standards in sections 205 and 206. There is no other mention of "just and reasonable" in section 219; no qualification that FERC must determine whether *grant* of the incentive would be just and reasonable. Rather, in section 219(d), Congress constrained the *level* of the incentive rate, not the eligibility for it, to accord with the Federal Power Act's

8

general ratemaking provisions. In the orders below, FERC did not quibble with the level of the RTO Participation Incentive granted to the parties—it instead crafted a whole new eligibility requirement for the RTO Participation Incentive.

Moreover, section 219(d) reflects the fact that the Federal Power Act's just and reasonable standard is confined to matters under sections 205 and 206 and does not leak into other provisions. The general requirement that rates be just and reasonable cannot override the specific provisions in section 219(c) that "each utility that joins" a regional transmission organization is eligible for the RTO Participation Incentive. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general."); *HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981) (the specific governs the general "particularly when the two are interrelated and closely positioned, both in fact being parts of [the same statutory scheme]").

Further, with regard to this aspect of section 219, FERC's implementation comports with Congress's intent that the just and reasonable standard applies to rates only. FERC applies the just and reasonable standard only to the rates resulting from grant of the RTO Participation Incentive by not allowing a utility's return on equity, with the RTO Participation Incentive, to exceed the top end of the zone of reasonableness. *See, e.g.*, Order No. 679 at P 2 ("[A]n incentive rate of return sought by an applicant must be within a range of reasonable returns and the rate proposal as

a whole must be within the zone of reasonableness before it will be approved."). FERC applied this practice in one of the orders below. *See Office of the Ohio Consumers' Counsel v. Am. Elec. Power Serv. Corp.*, 181 FERC ¶ 61,214, at P 61 (2022) (JA485-JA486) ("[T]he total [return on equity ("ROE")] including the RTO [Participation Incentive] [must] remain[] within the zone of reasonableness."), *order on reh'g*, 183 FERC ¶ 61,034 (2023) (JA575-JA598). Indeed, Order No. 679 specifically declined to adopt a specific RTO Participation Incentive level that would be applied in all cases so as to allow FERC to ensure that a utility's overall ROE (base plus adder) does not exceed the top of the zone of reasonableness. *See* Order No. 679 at P 93 ("Incentive-based ROEs, like other incentives offered in this Rule, are to be filed with the Commission for approval before rates that reflect such incentives can be charged. Accordingly, because the approved ROE, including the impact of an incentive, will be within the zone of reasonableness, we consider this provision consistent with section 205 of the [Federal Power Act]. We will not create specific ROE adders (e.g., 100 basis points); the Commission has always considered a range of returns in determining the appropriate ROE and we see no reason to depart from this practice.").

Accordingly, OCC's recitation of caselaw to support the notion that "incentive-based rates are just and reasonable only when they materially affect voluntary, prospective behavior," OCC Intervenor Br. 8-10, is misplaced. In those

cases, FERC (or its predecessor agency) sought to further its own policy objectives by inducing specific behavior through its general ratemaking authority under Federal Power Act sections 205 or 206, or the analogous provisions under the Natural Gas Act.[1]  OCC Intervenor Br. 8-10.  Notably, in each instance, the issue related to the application of the just and reasonable standard and not a discrete Congressional directive, like the one presented in section 219.  In contrast, in section 219(d), Congress directed only that the just and reasonable standard apply to the "*rates approved under the rules adopted pursuant to this section,*" *i.e.*, rates resulting from grant of the RTO Participation Incentive.  16 U.S.C. § 824s(d) (emphasis added).

Section 219(d)'s focus on rates cannot be read as Congress granting FERC *carte blanche* to qualify the eligibility for the incentive Congress directed FERC to provide in section 219(c) or erode the goals set forth in the rest of section 219.  And, FERC's approach of adjusting the level of the RTO Participation Incentive so as not to exceed the zone of reasonableness allows the resulting rate to be just and reasonable in accordance with sections 205 and 206.  FERC's "policy" pronouncement that a voluntariness requirement is somehow linked to section 219(d)'s requirement that the resulting rates meet section 205's just and reasonable

---

[1] Federal Power Act sections 205 and 206, 16 U.S.C. §§ 824d & 824e, "are in all material respects substantially identical to the equivalent provisions of the Natural Gas Act." *Fed. Power Comm'n v. Sierra Pac. Power Co.*, 350 U.S. 348, 353 (1956).

requirement, *see* FERC Br. 41, is not faithful to the statutory construction. The statute, not FERC policy, is what controls.

## CONCLUSION

For the foregoing reasons, the Court should grant the Transmission Owner Petitioners' petitions for review.

Respectfully submitted,

*/s/ Ryan J. Collins*
Paul M. Flynn
Ryan J. Collins
WRIGHT & TALISMAN, P.C.
1200 G Street, N.W., Suite 600
Washington, DC 20005-3898
202-393-1200
flynn@wrightlaw.com
collins@wrightlaw.com

*Counsel for*
*PJM Interconnection, L.L.C.*

December 22, 2023

12

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Rules 32(a)(5)-(7) and 32(g)(1) of the Federal Rules of Appellate Procedure and 6 Cir. R. 32(a), the undersigned certifies that the foregoing brief complies with the applicable type-volume limitations. The brief was prepared using a proportionally spaced type (Times New Roman, 14 point) and contains 2,745 words, excluding the parts of the brief exempted by FRAP 32(f) and 6 Cir. R. 32(b)(1). This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word 2016) used to prepare the brief.

*/s/ Ryan J. Collins*
Ryan J. Collins
WRIGHT & TALISMAN, P.C.
1200 G St., N.W., Suite 600
Washington, DC 20005-3898
(202) 393-1200
collins@wrightlaw.com

**Counsel for**
**PJM Interconnection, L.L.C.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of December 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

>*/s/ Ryan J. Collins*
>Ryan J. Collins
>WRIGHT & TALISMAN, P.C.
>1200 G St., N.W., Suite 600
>Washington, DC 20005-3898
>(202) 393-1200
>collins@wrightlaw.com
>
>**Counsel for**
>**PJM Interconnection, L.L.C.**