# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| AMERICAN ELECTRIC POWER SERVICE CORPORATION, ET AL., | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Case Nos. 21-4072, 22-3351, |
| | ) | 23-3196, 23-3324, |
| FEDERAL ENERGY REGULATORY COMMISSION, | ) ) ) | 23-3366, and 23-3417 (consolidated) |
| Respondent. | ) ) | |

---

## FINAL BRIEF SUBMITTED ON BEHALF OF
## THE PUBLIC UTILITIES COMMISSION OF OHIO AND ITS OFFICE OF
## THE FEDERAL ENERGY ADVOCATE

---

**Dave Yost (0056290)**
Ohio Attorney General

**John H. Jones (0051913)**
Section Chief

**Thomas G. Lindgren (0039210)**
**Lauren M. Williams (0103726)**
Assistant Attorneys General
Public Utilities Section
30 East Broad Street, 26th Floor
Columbus, Ohio 43215-3414
614.466.4395 (telephone)
866.431.4694 (facsimile)
Thomas.Lindgren@OhioAGO.gov
Lauren.Williams@OhioAGO.gov

On Behalf of the
Public Utilities Commission of Ohio
and the Public Utilities Commission of
Ohio's Office of the Federal Energy
Advocate

December 22, 2023

# TABLE OF CONTENTS

**PAGE**

STATEMENT REGARDING ORAL ARGUMENT ...............................................1

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.....2

STATEMENT OF THE ISSUE...................................................................................4

CONCISE STATEMENT OF THE CASE ............................................................4

STANDARD OF REVIEW .....................................................................................5

SUMMMARY OF THE ARGUMENT....................................................................6

ARGUMENT ...........................................................................................................7

     I.     The Federal Power Act Does Not Preempt the Ohio Statute. ...............7

     II.    The Commission Does Not Occupy the Entire Field of Electric Transmission. .......................................................................................8

     III.   The Ohio Statute Does Not Conflict with the Federal Power Act......11

CONCLUSION......................................................................................................14

CERTIFICATE OF COMPLIANCE ....................................................................16

CERTIFICATE OF SERVICE .............................................................................17

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Arizona v. United States*, 567 U.S. 387, 401-02 (2012) .........................................10

*Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762, 769 (2005) ........8

*Chamber of Commerce of the United States v. Whiting*, 563 U.S. 582, 607 (2011) ..................................................................................................................8

*Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 110 (1992) .........8

*Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 163 (2016) ...........................11

*Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ...............................................7, 8

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 536 (2012) ...........................9

*Northwest Cent. Pipeline Corp. v. State Corp. Comm'n*, 489 U.S. 493, 509 (1989) ....................................................................................................................7

*Office of the Ohio Consumers' Counsel v. American Electric Power Service Corporation, American Transmission Systems, Inc., and Duke Energy Ohio, LLC*, 181 FERC ¶ 61,214 (2022) ......................................................3, 6

*Office of the Ohio Consumers' Counsel v. American Electric Power Service Corporation, American Transmission Systems, Inc., and Duke Energy Ohio, LLC*, 182 FERC ¶ 62,095 (2023) ...........................................................3

*Office of the Ohio Consumers' Counsel v. American Electric Power Service Corporation, American Transmission Systems, Inc., and Duke Energy Ohio, LLC*, 183 FERC ¶ 61,034 (2023) ...........................................................3

*Research v. FCC*, 67 F.4th 773, 783 (6th Cir. 2023) ................................................5

*Retail Clerks International Ass'n v. Schermerhorn*, 375 U.S. 96, 103 (1963) .........7

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) ...................................8

*The Dayton Power & Light Company*, 176 FERC ¶ 62,136 (2021) .........................2

*The Dayton Power & Light Company*, 178 FERC ¶ 61,102 (2022) .........................2

*The Dayton Power and Light Company*, 172 FERC ¶ 61,140 (2020)......................4

*The Dayton Power and Light Company*, 176 FERC ¶ 61,025 (2021)......................5

**Statutes**

16 U.S.C. § 824(b) ........................................................................ 6, 7, 10, 11

16 U.S.C. § 824a(a)...........................................................................13

16 U.S.C. § 824s(c) ............................................................................2

16 U.S.C. § 825l(b) ............................................................................4

Federal Power Act § 201...................................................... 10, 11

Federal Power Act § 205.....................................................................4

Federal Power Act § 219........................................................ 1, 2, 4, 5

Federal Power Act § 312.....................................................................4

Federal Power Act § 313(b)................................................................5

Ohio Rev. Code § 4928.12............................................................... passim

**Rules**

Federal Rules of Appellate Procedure, and Rule 15 ...................................5

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| AMERICAN ELECTRIC POWER | ) | |
| SERVICE CORPORATION, ET AL., | ) | |
| | ) | |
|     Petitioners, | ) | |
| | ) | |
|     v. | ) | |
| | ) | Case Nos. 21-4072, 22-3351, |
| | ) | 23-3196, 23-3324, |
| FEDERAL ENERGY | ) | 23-3366, and 23-3417 |
| REGULATORY COMMISSION, | ) | (consolidated) |
| | ) | |
|     Respondent. | ) | |

---

**FINAL BRIEF SUBMITTED ON BEHALF OF**
**THE PUBLIC UTILITIES COMMISSION OF OHIO AND ITS OFFICE OF**
**THE FEDERAL ENERGY ADVOCATE**

---

**STATEMENT REGARDING ORAL ARGUMENT**

Intervenors the Public Utilities Commission of Ohio ("PUCO") and the PUCO's Office of the Federal Energy Advocate ("Ohio FEA") respectfully request oral argument. These consolidated petitions for review present complex questions of first impression, including the interpretation of a federal statute (Section 219(c) of the Federal Power Act ("FPA")) and the validity of a state statute under the Supremacy Clause. The procedural history of the case is also complex as it involves two separate agency proceedings that have been consolidated for appellate review.

PUCO and Ohio FEA therefore believe oral argument would be helpful to the Court. Accordingly, PUCO and Ohio FEA respectfully request oral argument.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Under Section 219(c) of the FPA, the Federal Energy Regulatory Commission ("FERC" or "Commission") is to "provide for incentives to each transmitting utility or electric utility that joins a Transmission Organization." 16 U.S.C. § 824s(c). Pursuant to its state police powers, the Ohio legislature enacted section 4928.12 of the Ohio Revised Code, which disallows an entity to own or control transmission facilities located in the state unless it transfers control of those facilities to a qualifying transmission entity approved by the FERC.

In 2020, in FERC Docket No. ER20-1068, the Dayton Power and Light Co. ("Dayton") brought a request for approval of certain transmission rates for investment in transmission before the Commission. The FERC denied the request. Dayton, along with Duke Energy Ohio, Inc. ("Duke"), FirstEnergy Service Co. ("FirstEnergy"), and American Electric Power Service Corporation ("AEPSC") all sought rehearing, which was denied. *The Dayton Power & Light Company*, 176 FERC ¶ 62,136 (2021), JA 279; *The Dayton Power & Light Company*, 178 FERC ¶ 61,102 (2022), JA 280. All of the companies subsequently sought judicial review with this Court in November of 2021.

In February 2022, in FERC Docket No. EL22-34, the Ohio Consumers'
Counsel ("OCC") filed a Complaint asking the Commission to extend its ruling in
the Dayton case to the transmission rates of all FERC-jurisdictional public utilities
operating in Ohio. FERC issued an Order on the Complaint in December 2022,
granting the Complaint in part, and ordering Ohio Power Company and AEP Ohio
Transmission Company Inc. to remove the Regional Transmission Organization
("RTO") Adder from their rates and provide refunds for a specified period. *Office
of the Ohio Consumers' Counsel v. American Electric Power Service Corporation,
American Transmission Systems, Inc., and Duke Energy Ohio, LLC*, 181 FERC ¶
61,214 (2022), JA 464. Following this Order, both OCC and AEPSC sought
rehearing with FERC. The rehearing requests were denied on February 17, 2023,
and FERC issued an Order Addressing Arguments Raised on Rehearing on April
20, 2023. *Office of the Ohio Consumers' Counsel v. American Electric Power
Service Corporation, American Transmission Systems, Inc., and Duke Energy
Ohio, LLC*, 182 FERC ¶ 62,095 (2023), JA 574; *Office of the Ohio Consumers'
Counsel v. American Electric Power Service Corporation, American Transmission
Systems, Inc., and Duke Energy Ohio, LLC*, 183 FERC ¶ 61,034 (2023), JA 575.
Both OCC and AEPSC filed petitions for review with this Court regarding FERC
Docket No. EL22-34.

This Court has jurisdiction and venue to review these FERC orders because, as FPA Section 312 establishes, jurisdiction is proper in the "United States court of appeals for any circuit wherein the licensee or public utility to which the order relates is located." 16 U.S.C. § 825l(b).

## STATEMENT OF THE ISSUE

Whether section 4928.12 of the Ohio Revised Code is preempted by the Federal Power Act.

## CONCISE STATEMENT OF THE CASE

On February 25, 2020, pursuant to Sections 205 and 219 of the FPA, Dayton submitted a request for approval of certain rate incentives for investment in transmission projects. In its Incentive Rate Application, Dayton requested a 50-basis-point Return on Equity Adder for RTO membership be included in the rates charged to electric customers. The Public Utilities Commission of Ohio's Office of the Federal Energy Advocate and OCC protested Dayton's request for the RTO Adder, arguing that the incentive was unnecessary and unlawful.

On August 17, 2020, the Commission granted in part and denied in part Dayton's RTO Adder request because the Commission found that the adder may be unjust, unreasonable, unduly discriminatory, or otherwise unlawful. *The Dayton Power and Light Company*, 172 FERC ¶ 61,140 (2020) at P 2, JA 97. FERC

subsequently scheduled a hearing to explore whether Dayton had shown that its membership in the RTO aligned with the purpose contemplated by Congress in the FPA. After the hearing, the Commission determined that Dayton did not qualify for the 50-basis-point RTO Adder because it found that the Ohio statute *required* RTO membership and an FPA Section 219 adder can only be obtained by entities that join RTOs *voluntarily*. *The Dayton Power and Light Company*, 176 FERC ¶ 61,025 (2021), JA 173.

The Petitioners brought this appeal pursuant to Section 313(b) of the FPA, Rule 15(a) of the Federal Rules of Appellate Procedure, and Rule 15 of the Circuit Rules of the United States Court of Appeals for the Sixth Circuit. The PUCO and Ohio FEA filed timely Motions for Leave to Intervene due to the potential impact of this decision on the transmission rates of Ohio retail electric service consumers.

## STANDARD OF REVIEW

This Court reviews questions of law *de novo* and federal preemption is purely a question of law. *Consumers' Research v. FCC*, 67 F.4th 773, 783 (6th Cir. 2023). This Court should not defer to FERC's interpretation because in its decision, the Commission declined to address the constitutional issue of preemption because that issue goes beyond the jurisdiction of the Commission. *Office of the Ohio Consumers' Counsel v. American Electric Power Service*

*Corporation, American Transmission Systems, Inc., and Duke Energy Ohio, LLC*,

181 FERC ¶ 61,214 (2022) at P 84, JA 497.

## SUMMMARY OF THE ARGUMENT

The regulation of electricity is a shared function between the states and the federal government, with states retaining the power to regulate how entities function and operate within the state. The state of Ohio, along with other states employing a similar regulatory structure, has crafted statutes to ensure electric generation, transmission, and distribution function as a reliable and cost-effective system not only for customers, but also for the companies that are involved in the provision of power and electric service. This landscape was exactly what the Ohio legislature envisioned with the enactment of section 4928.12 of the Ohio Revised Code, wherein it required transmission facility-owning entities to hand over control of their facilities to a qualifying, FERC-approved transmission operator.

Because the federal government and states work in tandem to ensure a reliable electric grid across the country, the FERC is required to leave explicit regulatory channels to the states. *See* 16 U.S.C. § 824(b). By this state authority, the Ohio legislature enacted statutes that *complement* the federal regulations to ensure dependable and safe electric transmission service throughout the state. Contrary to the contention of Petitioners Dayton, AEPSC, and FirstEnergy ("Petitioners") in their brief filed with this Court on July 31, 2023, and corrected

on August 10, 2023, the Ohio statute is neither field preempted nor conflict preempted. Congress does not occupy the entire field of electric transmission and the Ohio law does not frustrate the federal policy. Thus, if this Court finds the record sufficient to consider the preemption argument put forth by Petitioners, the Ohio law should be upheld.

## ARGUMENT

### I.    The Federal Power Act Does Not Preempt the Ohio Statute.

The FPA neither regulates the entire field of electric transmission nor conflicts directly with section 4928.12 of the Ohio Revised Code. As explained below, the FPA explicitly leaves to the states a number of regulatory pathways for overseeing electric transmission, generation, and distribution within intrastate commerce. *See* 16 U.S.C. § 824(b). To perform the statutory scrutiny required of this Court, the Supreme Court put forth the central idea that "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Retail Clerks International Ass'n v. Schermerhorn*, 375 U.S. 96, 103 (1963)).

In order to determine whether a federal law preempts state law, courts look to congressional intent. *Northwest Cent. Pipeline Corp. v. State Corp. Comm'n*, 489 U.S. 493, 509 (1989). Understanding the congressional intent requires a court to first examine the plain text of the statute and then, if it finds that the meaning

remains ambiguous, to look outside of the plain text and scrutinize the legislative history. *Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762, 769 (2005). The precedents established by the Supreme Court demonstrate that a "high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." *Chamber of Commerce of the United States v. Whiting*, 563 U.S. 582, 607 (2011); *see also Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 110 (1992) (Kennedy, J., concurring in part and concurring in the judgment).

A state law may be preempted by an act of the federal government when: (1) Congress has regulated so comprehensively in a particular field as to not leave any room for the state to legislate; or (2) the state law at issue directly conflicts with the federal statute in a way that makes it impossible to comply with one or both of the regulations. *Rice v. Santa Fe Elevator Corp*., 331 U.S. 218, 230 (1947). Both of these factors will be discussed in depth below.

## II.    The Commission Does Not Occupy the Entire Field of Electric Transmission.

When Congress has chosen to regulate in an area which has been historically left to the states, courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc.,* 518 U.S. at 485. The term

"police power" as used by the Supreme Court refers to a state's general power to promote and regulate public health, safety, and welfare. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 536 (2012).

In order to find that a Federal Act preempts a state statute, it must be the "clear and manifest purpose of Congress" to occupy the entire field of regulation. *Rice* at 230; *see also Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 163 (2016). Moreover, a state statute may only be preempted when "[t]he scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," and the Act touches "a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice* at 230. Congress has not taken steps to completely occupy the field of electric transmission regulation here.

To make certain what is meant by "occupy[ing] an entire field of regulation," it is helpful to examine what regulatory schemes courts *have* determined occupy an entire field. *Hughes*, 578 U.S. at 163. In *Rice v. Santa Fe Elevator Corp.*, the language of the federal Warehouse Act explicitly created a statutory scheme whereby the federal government created essentially federally licensed warehouses and left no authority to the states to enact even complementary regulations. *Rice* at 221-22. In *Rice*, the Supreme Court ultimately

found that the Act preempted certain state laws because of the wide-reaching nature of the Act and the congressional intent to regulate vastly in the agriculture sphere. *Id*.

More recently, in *Arizona v. United States*, a provision of the Immigration and Nationality Act requiring undocumented individuals to carry an alien registration document preempted a state criminal statute. *Arizona v. United States*, 567 U.S. 387, 401-02 (2012). The Court there once again found that the Act represented a "comprehensive" regulatory scheme that occupied the *entire field* of alien registration. *Id*. at 400.

Unlike the regulatory scheme contemplated by the Court in *Rice* and *Arizona*, the FPA leaves open several facets of electric transmission regulation to the states. By leaving select regulatory authority to the states within the FPA, Congress has given the states autonomy over intrastate electric transmission. Section 201(b) of the FPA grants FERC exclusive jurisdiction over facilities used in *interstate* electric transmission but explicitly reserves for the states regulatory authority over "facilities used for the generation of electric energy" and "facilities used in local distribution or only for the transmission of electric energy in intrastate commerce, or over facilities for the transmission of electric energy consumed wholly by the transmitter." 16 U.S.C. § 824(b)(1).

Although the Supreme Court recognized that this section of the FPA granted FERC exclusive control over wholesale sales in the interstate market and interstate transmission, these aspects of the U.S. electrical grid do not account for the entire electric transmission and generation regulatory field. *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 163 (2016).

By allowing states to regulate not just intrastate electric transmission but also transmission of electric energy that is wholly consumed by the transmitter, the federal government has left the door open for permissive state regulation within the transmission regime. *See* 16 U.S.C. § 824(b). Thereby including these state specific powers in the plain language of FPA Section 201, Congress's regulation in the energy arena is not so dominant as to leave for the states no room to supplement it. This is precisely what the state of Ohio did here; it has supplemented the federal regulation using its police power to facilitate the orderly management of electric transmission throughout the state to protect the health and welfare of its citizens. As the analysis exemplifies, the state and federal statutes can and do coexist because this field is not entirely occupied by the Commission. For this reason, the Ohio statute is not field preempted.

## III.    The Ohio Statute Does Not Conflict with the Federal Power Act.

The Ohio statute is not conflict preempted, as Petitioners contend, because the Ohio legislature required membership in a qualifying transmission entity, and

in so doing, gave the option for that entity to be an RTO or another FERC-approved, qualifying transmission entity. Ohio Rev. Code § 4928.12(A). At the present time, PJM Interconnection, L.L.C. ("PJM") is a FERC-approved transmission entity that meets Ohio's statutory criteria and is the only such entity serving as an RTO in Ohio. Therefore, the membership of Petitioners (or their transmission facility-owning affiliates) in PJM is consistent with Ohio law under the current circumstances. This Court has previously held that conflict preemption arises when it is impossible to comply with both state and federal regulations or in instances where "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149, 164 (2014) (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). Furthermore, this analysis of what constitutes a "sufficient obstacle" was found to be up to the court's judgment and should be based on the examination of the entire federal statute and informed by the Act's "purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

Section 4928.12(A) of the Ohio Revised Code requires entities that own or control transmission facilities in the state of Ohio to turn over control of those facilities to "one *or more* qualifying transmission entities." Ohio Rev. Code § 4928.12(A) (emphasis added). By setting forth criteria for any qualifying

transmission entity under this statute, the Ohio legislature is providing generality in the statute and allowing that there could be more than one qualifying transmission operator as long as that operator complies with standards set forth in the statute and is approved by the FERC. This flexibility comports with the "full purposes and objectives" of the FPA. *Crosby* at 372-73.

Furthermore, conflict preemption occurs and the state law must yield to the regulation of Congress only "[i]f the purpose of the act cannot otherwise be accomplished." *Crosby* at 373 (quoting *Savage v. Jones*, 225 U.S. 501, 533 (1912)). The FPA is an extensive piece of federal legislation and comprises more than just the section at issue here. The primary purpose of the FPA is to "encourage the orderly development of plentiful supplies of electricity … at reasonable prices" and that is precisely what the Ohio statute works to accomplish. *NAACP v. FPC*, 425 U.S. 662, 670 (1976). In the same section laying out Congress's intent to create regional transmission districts for the voluntary interconnection and coordination of electric facilities, the Act also sets out a procedure for states to weigh in on RTO district creation and present the state's views. 16 U.S.C. § 824a(a). In the FPA, Congress explicitly stated that the Commission "shall afford each such State commission reasonable opportunity to present its views and recommendations, and shall receive and consider such views

and recommendations" when deciding boundaries for newly created RTO districts. *Id.*

From the very beginning of the FPA in 1920, states have been a vital part of coordinating electric transmission interconnection and a state law furthering that policy does not frustrate a congressional purpose. Thus, the Ohio statute, which effectively requires membership in PJM under the current circumstances, is not conflict preempted because it neither makes it impossible to comply with the FPA nor does the statute present an obstacle to a congressional policy.

## CONCLUSION

This Court should find that section 4928.12 of the Ohio Revised Code is not preempted by the Federal Power Act.

Respectfully submitted,

**Dave Yost (0056290)**
Ohio Attorney General

**John H. Jones (0051913)**
Section Chief

*/s/ Thomas G. Lindgren*
**Thomas G. Lindgren (0039210)**
**Lauren M. Williams (0103726)**
Assistant Attorneys General
Public Utilities Section
30 East Broad Street, 26th Floor
Columbus, Ohio 43215-3414
614.466.4395 (telephone)
866.431.4694 (facsimile)
Thomas.Lindgren@OhioAGO.gov
Lauren.Williams@OhioAGO.gov

**On Behalf of the**
**Public Utilities Commission of Ohio**
**and the Public Utilities Commission of**
**Ohio's Office of the Federal Energy**
**Advocate**

## CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(a)(7)(B), (f), and (g), and this Court's July 12, 2023 Order, I certify that the Brief for the Public Utilities Commission of Ohio and Its Office of the Federal Energy Advocate has been prepared in a proportionally spaced typeface (using Microsoft Word, in 14-point Times New Roman) and contains 3,758 words, not including the tables of contents and authorities, the glossary, the certificates of counsel, and the addendum.


/s/ *Thomas G. Lindgren*
**Thomas G. Lindgren**
**Assistant Attorney General**

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and Circuit Rule 25(f), I hereby certify that on December 22, 2023, I caused the foregoing correspondence to be electrically filed with the Clerk of the Court by using the Court's CM/ECF system. All registered counsel will be served by the Court's CM/ECF system.